# EXHIBIT B



OCTOBER 2005

# STANDARD & POOR'S RATINGS SERVICES

# CODE OF CONDUCT

## TABLE OF CONTENTS

| | | |
|---|---|---|
| | INTRODUCTION .................................................................................................. | 1 |
| | WHAT ARE RATINGS .......................................................................................... | 1 |
| 1. | QUALITY AND INTEGRITY OF THE RATING PROCESS ......................... | 2 |
| | A.   QUALITY OF THE RATING PROCESS ............................................................. | 2 |
| | B.   MONITORING AND UPDATING ...................................................................... | 3 |
| | C.   INTEGRITY OF THE RATING PROCESS .......................................................... | 4 |
| 2. | INDEPENDENCE AND AVOIDANCE OF CONFLICTS OF INTEREST ... | 5 |
| | A.   GENERAL ....................................................................................................... | 5 |
| | B.   RATINGS SERVICES' PROCEDURES AND POLICIES ..................................... | 6 |
| | C.   ANALYST AND EMPLOYEE INDEPENDENCE .................................................. | 6 |
| 3. | RESPONSIBILITIES TO THE INVESTING PUBLIC AND ISSUERS ....... | 8 |
| | A.   TRANSPARENCY AND TIMELINESS OF RATINGS DISCLOSURE ................... | 8 |
| | B.   THE TREATMENT OF CONFIDENTIAL INFORMATION ................................. | 9 |
| 4. | ENFORCEMENT OF CODE AND COMMUNICATION WITH MARKET PARTICIPANTS .................................................................................................. | 10 |
| | A.   GENERAL ....................................................................................................... | 10 |
| 5. | DEFINITIONS ................................................................................................ | 12 |
| 6. | IOSCO CODE OF CONDUCT FUNDAMENTALS FOR CREDIT RATING AGENCIES ................................................................................................ | 14 |

**Introduction**

Standard & Poor's Ratings Services' mission is to provide high-quality, objective, independent, and rigorous analytical information to the marketplace. In order to achieve its mission, Ratings Services strives for analytic excellence at all times, evaluates its rating criteria, methodologies and procedures on a regular basis, and modifies or enhances them as necessary to respond to the needs of the global capital markets.

Ratings Services endeavors to conduct the rating and surveillance processes in a manner that is transparent and credible and that also ensures that the integrity and independence of such processes are not compromised by conflicts of interest, abuse of confidential information or other undue influences.

This Code of Conduct (the "Code") replaces the Standard & Poor's Ratings Services Code of Practices and Procedures dated September 2004. Ratings Services has adopted this Code in order to further align its policies and procedures with Code of Conduct Fundamentals for Credit Rating Agencies (the "IOSCO Code") published in December 2004 by the International Organization of Securities Commissions ("IOSCO"). As requested by the IOSCO Code, exceptions to the IOSCO Code are set forth in Section 6 of this Code.

**In order to disclose this Code to the public, this Code is available without charge to the public on Standard & Poor's public website, www.standardandpoors.com. However, by making this Code available to the public, Ratings Services does not assume any responsibility or liability to any third party arising out of or relating to this Code. This Code shall not form a part of any contract with any third party and no third party shall have any right (contractual or otherwise) to enforce any of this Code's provisions, either directly or indirectly. Ratings Services in its sole discretion may revise this Code to reflect changes in market, legal and regulatory circumstances and changes to Ratings Services' controls, policies and procedures.**

Ratings Services expects all employees to comply with this Code and the related policies and procedures. Any exceptions to this Code or the related policies and procedures should be approved in writing by the Executive Vice President in charge of Ratings Services who shall be responsible for the interpretation of this Code and the related policies and procedures.

**Failure to comply with this Code and the related policies and procedures could be sufficient reason for disciplinary action, including discharge and possible legal sanctions.**

Capitalized terms used herein are defined in Section 5 of this Code.

**What are Ratings**

Ratings are current opinions regarding the future creditworthiness of issuers or issues. Ratings are based on information supplied to Ratings Services by the issuer or its agents and information obtained by Ratings Services from other sources it considers

reliable. Ratings Services relies on the issuer, its accountants, counsel, advisors and other experts for the accuracy, completeness and timeliness of the information submitted in connection with the rating and surveillance processes.

Ratings do not constitute investment, financial or other advice. Ratings are not recommendations to purchase, hold or sell a particular security or to make any other investment decision. Ratings and other opinions do not comment on the suitability of an investment for a particular investor and should not be relied on when making any investment decision. Ratings Services does not act as an investment, financial, or other advisor to, and does not have a fiduciary relationship with, an issuer, investor or any other person.

Ratings Services is not obligated to perform any due diligence or independent verification of any information submitted to, or obtained by, Ratings Services in connection with the rating and surveillance processes. Ratings Services does not perform an audit and does not undertake to verify that the information submitted to, or obtained by, Ratings Services is complete. Ratings are not verifiable statements of fact. The assignment of a rating to an issuer or an issue by Ratings Services should not be viewed as a guarantee of the accuracy, completeness, or timeliness of the information relied on in connection with the rating or the results obtained from the use of such information.

Ratings Services reserves the right at any time to suspend, modify, lower, raise, or withdraw a rating or place a rating on CreditWatch in accordance with its policies and procedures.

## 1.  QUALITY AND INTEGRITY OF THE RATING PROCESS

### A.  Quality of the Rating Process

1.1   Each rating shall be based on a thorough analysis of all information known to Ratings Services and believed by Ratings Services to be relevant to its analysis according to Ratings Services' established criteria and methodology.

1.2   Ratings Services shall use rating criteria and methodologies that take into consideration Ratings Services' goal of maintaining rigorous analysis and systematic processes, and, where possible, result in ratings that can be subjected to some form of objective validation based on historical experience.

1.3   In assessing the creditworthiness of an issuer or issue, Analysts involved in the preparation or review of any Rating Action shall use criteria and methodologies established by Ratings Services.  Analysts shall consistently apply the then existing rating criteria and methodologies in the analytical process for any Rating Action, in each case, as determined by Ratings Services.

1.4 Credit ratings shall be assigned by a vote of a rating committee comprised of Analysts and not by any individual Analyst. Ratings shall reflect all information known, and believed to be relevant, to the rating committee, consistent with Ratings Services' established criteria and methodologies. Ratings Services shall use Analysts who, individually or collectively, have the appropriate knowledge and experience in developing a rating opinion for the type of credit being applied.

1.5 Ratings Services shall maintain internal records to support its credit opinions for a reasonable period of time or in accordance with applicable law.

1.6 Ratings Services and its Analysts shall take steps to avoid publishing any credit analyses or reports that contain misrepresentations or are otherwise misleading as to the general creditworthiness of an issuer or issue.

1.7 Ratings Services shall endeavor to devote sufficient resources to perform credible credit assessments for all issuers and issues it rates. When deciding whether to rate or continue rating an issuer or issue, Ratings Services shall assess whether it is able to devote sufficient Analysts with sufficient skill sets to make a credible credit assessment, and whether its Analysts likely will have access to sufficient information needed in order to make such an assessment.

1.8 Ratings Services shall endeavor to structure its rating teams of Analysts in a manner that promotes continuity and the high quality and integrity of the rating process.

**B.   Monitoring and Updating**

1.9 In accordance with Ratings Services' established policies and procedures for surveillance, unless the issuer requests a rating without surveillance, once a rating is assigned Ratings Services shall monitor on an ongoing basis and update the rating by:

a. regularly reviewing the issuer's creditworthiness;

b. initiating a review of the status of the rating upon becoming aware of any information that might reasonably be expected to result in a Rating Action (including withdrawal of a rating), consistent with the applicable rating criteria and methodology; and,

c. updating on a timely basis the rating, as appropriate, based on the results of such review.

    1.10    Where Ratings Services makes its ratings available to the public, Ratings Services shall publicly announce if it withdraws a rating from an issuer or issue. Where Ratings Services' ratings are provided only to its subscribers, Ratings Services shall announce to its subscribers if it withdraws a rating from an issuer or issue. In both cases, any publications by Ratings Services of the withdrawn rating shall indicate that the rating was withdrawn and also indicate the rating of the issuer or issue immediately preceding the withdrawal.

**C.    Integrity of the Rating Process**

    1.11    Ratings Services and its employees shall comply with all applicable laws and regulations governing Ratings Services' activities in each jurisdiction in which it operates.

    1.12    Ratings Services and its employees shall deal fairly and honestly with issuers, investors, other market participants, and the public.

    1.13    Analysts shall be held to high standards of integrity, and Ratings Services shall not employ individuals where there is evidence that they have compromised integrity.

    1.14    Ratings Services and its Analysts shall not, either implicitly or explicitly, give any assurance or guarantee of a particular rating prior to the determination of the rating by the applicable rating committee. This does not preclude Ratings Services from developing prospective assessments used in structured finance and similar transactions.

    1.15    The Executive Vice President in charge of Ratings Services shall have overall responsibility for the design and implementation of, and compliance with, this Code and the related policies and procedures and also compliance with any laws applicable to Ratings Services.

    1.16    An employee who becomes aware of any conduct by another employee or entity under common control with Ratings Services in violation of this Code, the related policies and procedures, any law applicable to Ratings Services or that is unethical has a responsibility to promptly report such conduct to (i) in the case of analytical matters, the employee's direct manager, a member of the Analytics Policy Board, or an executive managing director or the general counsel of Ratings Services and (ii) in the case of all other matters, the Global Regulatory Affairs Department. Any employee's manager, member of the Analytics Policy Board, executive managing director or the general counsel of Ratings Services or member of the Global Regulatory Affairs Department who receives such a report from an employee shall take appropriate action, as determined by the laws and regulations of the applicable jurisdiction and the applicable

rules and guidelines set forth by Ratings Services. Ratings Services prohibits any form of retaliation against an employee who in good faith reports such conduct or who in good faith assists in the investigation of such conduct. An employee that retaliates against another employee for either of these reasons shall be subject to disciplinary action up to and including termination.

1.17   An employee may report conduct that is in violation of this Code, the related policies and procedures, any law applicable to Ratings Services or that is unethical by calling The McGraw-Hill Companies Employee Hotline, which is available to employees worldwide and provides a confidential way of reporting such conduct.

1.18   In order to maintain Ratings Services' independence, objectivity and credibility, Ratings Services shall maintain complete editorial control at all times over Rating Actions and all other materials it disseminates to the public, including, but not limited to, rating definitions and criteria, reports, research updates, studies, commentaries, media releases, rating opinions or any other information relating to its ratings. Ratings Services' editorial control shall include decisions as to when, or even if, any Rating Actions and such other materials and information should be disseminated.

## 2.   INDEPENDENCE AND AVOIDANCE OF CONFLICTS OF INTEREST

### A.   General

2.1   Ratings Services shall not forbear or refrain from taking a Rating Action, if appropriate, based on the potential effect (economic, political, or otherwise) of the Rating Action on Ratings Services, an issuer, an investor, or other market participant.

2.2   Ratings Services and its Analysts shall use care and analytic judgment to maintain both the substance and appearance of independence and objectivity.

2.3   The determination of a rating by a rating committee shall be based only on factors known to the rating committee that are believed by it to be relevant to the credit analysis.

2.4   Ratings assigned by Ratings Services to an issuer or issue shall not be affected by the existence of, or potential for, a business relationship between Ratings Services (or any Non-Ratings Business) and the issuer (or its affiliates) or any other party, or the non-existence of such a relationship.

2.5   Ratings Services shall ensure that ancillary business operations which do not necessarily present conflicts of interest with Ratings Services' rating business have in place procedures and mechanisms designed to minimize

>   the likelihood that conflicts of interest will arise.  Rating Services shall establish a firewall policy governing firewalls and operations between Ratings Services and Non-Ratings Businesses to effectively manage conflicts of interest.

>   **B.**   **Ratings Services' Procedures and Policies**

>   2.6   Ratings Services shall adopt written internal procedures and mechanisms to (1) identify, and (2) eliminate, or manage and disclose, as appropriate, any actual or potential conflicts of interest that may influence the opinions and analyses Ratings Services makes or the judgment and analyses of Analysts. Ratings Services shall disclose such conflict avoidance and management measures without charge to the public on Standard & Poor's public website, www.standardandpoors.com.

>   2.7   Ratings Services' disclosures of actual and potential conflicts of interest should be complete, timely, clear, concise, specific and prominent.

>   2.8   Ratings Services shall disclose the general nature of its compensation arrangements with rated entities.  Where Ratings Services receives from a rated entity compensation unrelated to its ratings service, such as compensation for consulting services, Ratings Services shall disclose the proportion that such non-rating fees constitute against the fees Ratings Services receives from the entity for ratings services.

>   2.9   Ratings Services and its employees shall not engage in any Securities trading presenting conflicts of interest with Ratings Services' rating activities.

>   2.10   In instances where rated entities (e.g., governments) have, or are simultaneously pursuing, oversight functions related to Ratings Services, Ratings Services shall use different employees to conduct its Rating Actions than those employees involved in its oversight issues.

>   **C.**   **Analyst and Employee Independence**

>   2.11   Reporting lines for Analysts and their compensation arrangements shall be structured to eliminate or effectively manage actual and potential conflicts of interest.  An Analyst shall not be compensated or evaluated on the basis of the amount of revenue that Ratings Services derives from issuers or issues that the Analyst rates or with which the Analyst regularly interacts.

>   2.12   Ratings Services shall not have Analysts who are directly involved in the rating process initiate, or participate in, discussions regarding fees or payments with any entity they rate.

2.13 No Analyst shall participate in or otherwise influence the determination of a rating in a rating committee for any particular issuer or issue if:

    a. The Analyst or a member of the Analyst's Immediate Family owns Securities of the rated entity;

    b. The Analyst or a member of the Analyst's Immediate Family owns Securities of any entity related to a rated entity, the ownership of which may cause or may be perceived as causing a conflict of interest;

    c. Within the six months immediately preceding the date of the meeting of the rating committee, the Analyst has had a recent employment or other significant business relationship with the rated entity that may cause or may be perceived as causing a conflict of interest;

    d. The Analyst has an Immediate Family member that currently works for the rated entity; or

    e. The Analyst has, or had within the six months immediately preceding the date of the meeting of the rating committee, any other relationship with the rated entity or any related entity thereof that may cause or may be perceived as causing a conflict of interest.

2.14 Analysts and anyone involved in the rating process (or any member of their Immediate Family) shall not buy or sell or engage in any transaction in any Security based on a security issued, guaranteed, or otherwise supported by any entity within such Analyst's area of primary analytical responsibility, except as permitted under Ratings Services' internal securities trading policy.

2.15 Employees are prohibited from soliciting money, gifts or favors from anyone with whom Ratings Services does business and are prohibited from accepting gifts offered in the form of cash or any gifts exceeding a minimal monetary value.

2.16 Subject to applicable law, any Analyst who becomes involved in any personal relationship that creates the potential for any real or apparent conflict of interest, shall disclose such relationship to the appropriate manager or officer of Ratings Services.

### 3. RESPONSIBILITIES TO THE INVESTING PUBLIC AND ISSUERS

#### A. Transparency and Timeliness of Ratings Disclosure

3.1     Ratings Services shall distribute in a timely manner its Ratings Actions regarding the issuers and issues it rates.

3.2     Ratings Services shall publicly disclose its policies for distributing ratings, reports and updates.

3.3     Ratings Services shall indicate with each of its ratings when the rating was last changed.

3.4     Ratings Services shall make Rating Actions available to the public without charge. Rating Actions shall be disseminated via real time posts on Standard & Poor's public website, www.standardandpoors.com, and through a wire feed to the news media as well as via electronic or print subscription services. The public shall be able to obtain a current public rating for any issuer or issue without charge.  Rating Actions and the short explanation of the basis for the Rating Action, if any, shall remain on Standard & Poor's public website for a minimum of twenty-four hours. Upon the request of an issuer, and in Ratings Services' sole discretion, Ratings Services may agree to keep a rating confidential, and evidence this agreement in the engagement letter with the issuer. If a rating is already public, a subsequent Rating Action shall also be public.

3.5     Ratings Services shall publish sufficient information about its procedures, methodologies and assumptions (including financial statement adjustments that deviate materially from those contained in the issuer's published financial statements) so that outside parties can understand how a rating was arrived at by Ratings Services.  This information will include (but not be limited to) the meaning of each rating category and the definition of default or recovery, and the time horizon Ratings Services used when making a rating decision.

3.6     When publishing a rating, Ratings Services shall explain in its press releases and reports, if any, the key elements underlying the rating, subject to any restrictions imposed by applicable confidentiality agreements and any applicable laws regarding the release of Confidential Information.

3.7     Where feasible and appropriate, prior to issuing or revising a rating, Ratings Services shall inform the issuer of the critical information and principal considerations upon which a rating is based and, if appropriate, afford the issuer an opportunity to clarify any likely factual misperceptions or other matters that Ratings Services would wish to be made aware of in order to produce a credible  rating.  Ratings Services shall duly evaluate

the response. Where in particular circumstances Ratings Services has not informed the issuer prior to issuing or revising a rating, Ratings Services shall inform the issuer as soon as practical thereafter.

3.8 Ratings Services shall conduct periodic default and transition studies on its ratings. Ratings Services' default and transition studies shall contain information as to the bases of its default analyses, key assumptions and methodologies, all of which shall be designed to demonstrate to the marketplace the performance of its credit ratings and track record. Default and transition studies shall be conducted annually and may be conducted on a more frequent basis if appropriate for a particular market. The default and transition studies shall be available without charge to the public on Standard & Poor's public website, www.standardandpoors.com.

3.9 Unsolicited ratings are ratings assigned by Ratings Services without the full participation of issuers in the rating process. Ratings Services reserves the right, in its sole discretion, to issue ratings without the full participation of issuers in the rating process if Ratings Services believes (i) there is a meaningful credit market or investor interest served by the publication of such a rating, and (ii) it has sufficient information to support adequate analysis and, if applicable, ongoing surveillance. Ratings Services shall indicate if a rating is an unsolicited rating. In some cases, issuers may provide limited information to Ratings Services and Ratings Services would still consider those ratings to be unsolicited ratings. Ratings Services shall disclose its policies and procedures regarding unsolicited ratings without charge to the public on Standard & Poor's public website, www.standardandpoors.com.

3.10 Ratings Services shall make material modifications to its methodologies and significant practices, procedures, and processes available without charge to the public on Standard & Poor's public website, www.standardandpoors.com. Where feasible and appropriate, disclosure of such material modifications shall be made prior to their going into effect. Ratings Services shall carefully consider the various uses of ratings before modifying its methodologies, practices, procedures and processes.

B. **The Treatment of Confidential Information**

3.11 Ratings Services and its employees shall protect the confidentiality of Confidential Information communicated to them by an issuer or its agents. Unless otherwise permitted by an agreement with the issuer, Ratings Services and its employees shall refrain from disclosing Confidential Information in press releases, through research conferences, conversations with investors, other issuers, or any other persons. Notwithstanding the foregoing, Ratings Services shall not be restricted from: (a) publishing any Rating Action or other opinion regarding a particular issuer or issue which

      incorporates Confidential Information without specifically disclosing it; or (b) using third party contractors or agents bound by appropriate confidentiality obligations to assist in any aspect of the rating process or related business activities.

3.12    Ratings Services shall use Confidential Information only for purposes related to its rating activities or otherwise in accordance with any confidentiality agreements with the issuer.

3.13    Employees shall take all reasonable measures to protect all property and records belonging to or in possession of Ratings Services from fraud, theft or misuse.

3.14    Employees shall not engage in transactions in Securities when they possess Confidential Information concerning the issuer of such Security.

3.15    Employees shall familiarize themselves with the internal securities trading policies maintained by Ratings Services, and are required to periodically certify their compliance as required by such policies.

3.16    Employees shall not disclose any non-public information about Rating Actions or possible future Rating Actions, except to related issuers and their designated agents.

3.17    Employees shall not share Confidential Information entrusted to Ratings Services with employees of any Non-Ratings Business without the prior written consent of the issuer. Except for legitimate business reasons arising in connection with the delivery of ratings or related products, employees shall not share Confidential Information with other employees of Ratings Services.

3.18    Ratings Services' employees shall not use or share Confidential Information for the purpose of trading Securities, or for any other purpose except the conduct of Ratings Services' business.

**4.    ENFORCEMENT OF CODE AND COMMUNICATION WITH MARKET PARTICIPANTS**

**A.    General**

4.1    The Executive Vice President in charge of Ratings Services has determined that the Analytics Policy Board and the executive managing directors of Ratings Services shall be responsible for enforcing this Code and the related policies and procedures to the extent provisions herein and therein relate to analytical matters and the Global Regulatory Affairs

        Department shall be responsible for enforcing all other provisions of this Code and the related policies and procedures.

4.2    The Senior Policy Officer of Ratings Services and regional designees shall be responsible for communicating with market participants and the public about any questions, concerns or complaints that Ratings Services may receive. The Senior Policy Officer and regional designees shall help to ensure that Ratings Services' officers and management are informed of those issues that Ratings Services' officers and management would want to be made aware of when setting Ratings Services' policies

## 5. DEFINITIONS

For purposes of this Code, the terms set forth below shall have the following meanings:

**"Analyst"** shall mean, with respect to any issuer or issue, an employee who (i) has been assigned to determine and vote on ratings relating to such issuer or issue` and (ii) is not involved in any commercial discussions with such issuer or relating to such issue.

**"Analytics Policy Board"** shall mean a group of experienced credit rating staff from around the world representing Ratings Services' diverse field of expertise in credit analysis that is chaired by the Chief Credit Officer of Ratings Services.

**"Code"** shall have the meaning set forth in the Introduction.

**"Confidential Information"** shall mean information received by Ratings Services from an issuer or its accountants, attorneys, or other agents which has been marked "Proprietary and Confidential" or in respect of which Ratings Services has received from the issuer specific written notice of its proprietary and confidential nature. Notwithstanding the foregoing, information disclosed by the issuer or its accountants, attorneys, or other agents shall not be deemed to be Confidential Information if such information (i) was substantially known by Ratings Services at the time of such disclosure, (ii) was known to the public at the time of such disclosure, (iii) becomes known to the public (other than by Ratings Services' act) subsequent to such disclosure, (iv) is disclosed lawfully to Ratings Services by a third party subsequent to such disclosure, (v) is developed independently by Ratings Services without reference to the Confidential Information, (vi) is approved in writing by the issuer for public disclosure, or (vii) is required to be disclosed by any law, rule or regulation or is disclosed at the request of any governmental agency or authority.

**"Immediate Family"** shall mean an employee's spouse, domestic partner, minor child, stepchild, grandchild, parent, stepparent, grandparent, sibling, mother-or-father-in-law, sister- or brother-in-law, and son- or daughter-in-law, including adoptive and guardian relationships, in each case, sharing the same household as the employee, and any entity or trust owned or controlled by a person named above.

**"IOSCO"** shall have the meaning set forth in the Introduction.

**"IOSCO Code"** shall have the meaning set forth in the Introduction.

**"Non-Ratings Business"** shall mean all segments and operating groups of The McGraw-Hill Companies, Inc. as well as segments and operating groups of McGraw-Hill Companies subsidiaries, other than Ratings Services.

**"Rating Action"** shall mean any initial rating, any change, withdrawal, or suspension of an existing rating, any CreditWatch action or the assignment of a new Outlook.

**"Security"** shall mean any stock, note, bond, debenture, limited partnership interest, limited liability company interest, investment contract, shares of funds or other financial instrument commonly known as a security and also includes any put or call option, or any other derivative instrument, relating to a Security. For the purposes of this Code, a Security shall not include the following:

(i) futures, with the exception of single stock futures;

(ii) personal insurance policies, such as homeowners, life, auto, disability, and individual annuity policies;

(iii) deposits in and certificates of deposit of banks, savings and loans, and credit unions;

(iv) ownership in a housing co-op, property owners association, or similar not-for-profit association or corporation related to the ownership or enjoyment of the property;

(v) investments in any retirement plan, employee stock purchase plan, or savings and investment plan sponsored by The McGraw-Hill Companies, Inc., any former employer of a Ratings Services' employee, or by any current or former employer of a member of the employee's Immediate Family if the employee or Immediate Family member cannot direct the plan's investment specific Securities;

(vi) ownership of a partnership interest, membership interest or stock in an LLC, or similar interest that is an integral part of a person's employment in such partnership or LLC;

(vii) open-end mutual fund shares, unless (a) the fund is advised or sub-advised by any unit of Standard & Poor's or (b) the Ratings Services' employee works in Fund Ratings and Evaluations;

(viii) U.S. Treasury securities and direct obligations of the U.S. government, unless the Ratings Services' employee works in U.S. Sovereign Finance; or

(ix) if the Ratings Services' employee is in an office outside of the U.S., any direct obligation of the national or federal government of the country in which the employee's office is located, and obligations the principal and interest on which are fully guaranteed by the national or federal government of the country in which the employee's office is located, unless the employee works in Sovereign Finance in that country.

### 6.     IOSCO CODE OF CONDUCT FUNDAMENTALS FOR CREDIT RATING AGENCIES

Ratings Services fully supports the essential purpose of the IOSCO Code, which is to promote investor protection by safeguarding the integrity of the rating process. Ratings Services believes that the Code is consistent with the IOSCO Code and appropriately implements IOSCO's Statement of Principles Regarding the Activities of Credit Rating Agencies published in September 2003.

There are two areas in which the provisions of the Code differ from the provisions of the IOSCO Code: (i) Ratings Services operation and legal separation and (ii) the rating process for an unsolicited ratings.  Notwithstanding these differences, Ratings Services believes that the independence, integrity, credibility and objectivity of the rating and surveillance processes is not affected and, therefore, the IOSCO Code's essential purpose will be achieved.

Rating Services operates in multiple global locations, in each case, as a division or a representative of a division of The McGraw-Hill Companies, Inc. or a subsidiary thereof. The McGraw-Hill Companies, Inc. provides shared services to all of its segments, units or divisions, including legal, information technology, human resources and finance functions.  In addition, Standard & Poor's may provide shared services for publishing, modeling, data, sales and communication and marketing functions.  In many cases, shared or support services are performed by personnel dedicated to Ratings Services. Ratings Services has implemented a firewall policy to ensure that the rating and surveillance processes are not compromised by conflicts of interest, abuse of confidential information or any other improper influence.

Ratings Services believes that ratings must be credible and must be based on information available from all sources, including information received from issuers that may affect unsolicited ratings. Ratings Services issues unsolicited ratings only when it believes that it has sufficient information to be able to reach a robust credit opinion. Ratings Services uses the following disclaimer for all of its unsolicited ratings:  "This rating(s) was initiated by Standard & Poor's Ratings Services and may be based solely on publicly available information and/or may not involve the participation of the issuer's management."  Ratings Services does not believe that it is necessary to differentiate between unsolicited ratings that were issued without any participation by the issuer and an unsolicited rating that involved issuer participation.  The disclaimer identifies unsolicited ratings without adding a level of complexity that may be misleading to investors.