1          **UNITED STATES DISTRICT COURT**

2          **CENTRAL DISTRICT OF CALIFORNIA**

3       **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4                    – – – – – – –

5    Securities and Exchange          )
     Commission,                      )
6                                      )
               Plaintiff,             )
7                                      )
          vs.                         ) No. SACV 09-0818 DOC
8                                      )      Item 8, Volume I
     Medical Capital Holdings, Inc.,  )
9                                      )
               Defendant.             )
10   _____)

11

12

13

14           REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                  Hearing on Motions

16                 Santa Ana, California

17                 Friday, April 2, 2010

18

19

20

21   Debbie Gale, CSR 9472, RPR, CCRR
     Federal Official Court Reporter
22   United States District Court
     411 West 4th Street, Room 1-053
23   Santa Ana, California 92701
     (714) 558-8141

24

25   09cv0818 SEC 2010-04-02 Item 8V1

1   **APPEARANCES OF COUNSEL:**

2

3   FOR THE SECURITIES AND EXCHANGE COMMISSION:

4
            SECURITIES AND EXCHANGE COMMISSION
5           BY:  John B. Bulgozdy
                 Attorney at Law
6           5670 Wilshire Blvd
            11th Floor
7           Los Angeles, California 90036
            323-965-3998
8

9   FOR THE RECEIVER THOMAS A. SEAMAN:

10

11          ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
            BY:  Michael R. Farrell
12               Attorney at law
            515 South Figueroa Street
13          8th Floor
            Los Angeles, California 90071
14          213-622-5555

15
            ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
16          BY:  Edward G. Fates
                 Attorney at Law
17          501 West Broadway
            15th Floor
18          San Diego, California 92101
            619-233-1155
19

20   ALSO PRESENT:

21          Thomas A. Seaman, Receiver

22

23

24

25

DEBBIE GALE, U.S. COURT REPORTER

1    **APPEARANCES OF COUNSEL (Continued):**

2

     FOR PRIME HEALTHCARE (overbidder):

3

4            PRIME HEALTHCARE MANAGEMENT, INC.
             BY:  Michael J. Sarrao
5                 General Counsel
             3300 East Guasti Road
6            3rd Floor
             Ontario, California 91761
7            909-235-4307

8

     ALSO PRESENT:

9

             Dr. Prem Reddy

10

11

     FOR INTEGRATED HEALTHCARE HOLDINGS, INC.:

12

13           ENTERPRISE COUNSEL GROUP
             BY:  David A. Robinson
14                Benjamin P. Pugh
                  Attorneys at law
15           Five Park Plaza
             Suite 450
16           Irvine, California 92614
             949-833-8553

17

18           REED SMITH LLP
             BY:  Allen Z. Sussman
19                Attorney at law
             355 South Grand Avenue
20           Suite 2900
             Los Angeles, California 90071
21           213-457-8030

22

     ALSO PRESENT:

23

             Ken Westbrook

24

25

1    **APPEARANCES OF COUNSEL (Continued):**

2

3      FOR KPC Resolution:

4              STUTMAN TREISTER & GLATT
               BY:  Gary E. Klausner
5                   Attorney at law
               1901 Avenue of the Stars
6              Twelfth Floor
               Los Angeles, California 90067
7              310-228-5735

8

     ALSO PRESENT:
9
               Dr. Chaudhuri
10

11

       FOR SILVER POINT FINANCE:
12

13             MILBANK, TWEED, HADLEY & McCLOY LLP
               BY:  Abhilsah M. Raval
14                  Attorney at Law
               One Chase Manhattan Plaza
15             New York, New York 10005
               212-530-5123
16

17

18

19

20

21

22

23

24

25

1    **APPEARANCES OF COUNSEL (Continued):**

2

3    FOR DEFENDANTS SIDNEY M. FIELD and JOSEPH J. LAMPARIELLO:

4

              GREENBERG TRAURIG, LLP
5             BY:  Wayne Gross
                   Michael A. Piazza
6                  Attorneys at Law
              3161 Michelson Drive
7             Suite 1000
              Irvine, California 92612
8             949-732-6500

9

10   ALSO PRESENT:

11            BIENERT, MILLER, WEITZEL & KATZMAN
              BY:  Thomas H. Bienert, Jr.
12                 Attorney at Law
              115 Avenida Miramar
13            San Clemente, California 92672
              949-369-3700
14

15

16

17

18

19

20

21

22

23

24

25

SACV 09-0818 DOC – 4/2/2010 – Item 8, Volume I

6

**I N D E X**

| PROCEEDINGS | PAGE |
|---|---|
| Motion for Release of Attorneys Fees | 12 |
| Statement by Mr. Bienert | 13 |
| Statement by Mr. Farrell (for Receiver) | 26 |
| Statement by Mr. Klausner | 29 |
| Further statement by Mr. Raval | 36 |
| Statement by Mr. Robinson | 40 |
| Statement by Mr. Piazza | 46 |

|       |    |                                                        |
|-------|----|--------------------------------------------------------|
|       | 1  | **SANTA ANA, CALIFORNIA, MONDAY, SEPTEMBER 10, 2012**  |
|       | 2  | **Item 13, Volume I**                                  |
|       | 3  | (9:27 a.m.)                                            |
| 09:27 | 4  | THE COURT:  Matter of SEC v. Medical Capital.          |
| 09:27 | 5  | MR. GROSS:  Wayne Gross and Mike Piazza from           |
| 09:27 | 6  | Greenberg Traurig, on behalf of Sid Field and Joseph   |
| 09:27 | 7  | Lampariello.                                           |
| 09:27 | 8  | MR. PIAZZA:  Good morning, Your Honor.                 |
| 09:27 | 9  | THE COURT:  Good morning.  How are both of you         |
| 09:27 | 10 | today?                                                 |
| 09:27 | 11 | MR. PIAZZA:  Good.  Thank you.                         |
| 09:27 | 12 | THE COURT:  Where would you like to be seated?         |
| 09:27 | 13 | I'm kinda visual, so why don't you just take the first |
| 09:27 | 14 | chair.  Where's your client, Mr. Lampariello?          |
| 09:27 | 15 | MR. GROSS:  Mr. Field's here.                          |
| 09:27 | 16 | THE COURT:  Well, who's your client?                   |
| 09:27 | 17 | MR. GROSS:  This is our client right here.             |
| 09:27 | 18 | *(Indicating.)*                                        |
| 09:27 | 19 | Mr. Lampariello couldn't make it this morning, but     |
| 09:27 | 20 | Mr. Field's in attendance.                             |
| 09:27 | 21 | THE COURT:  Little tied up?                            |
| 09:27 | 22 | Mr. Fields, why don't you come on up here and just     |
| 09:27 | 23 | have a seat on the first row near your counsel.  That way |
| 09:27 | 24 | we've got a visual.                                    |
| 09:27 | 25 | Counsel?                                               |

DEBBIE GALE, U.S. COURT REPORTER

SACV 09-0818 DOC - 4/2/2010 - Item 8, Volume I

8

| | | |
|---|---|---|
| 09:27 | 1 | MR. BULGOZDY:  Good morning, Your Honor.  John |
| 09:28 | 2 | Bulgozdy for the United States Securities and Exchange |
| 09:28 | 3 | Commission. |
| 09:28 | 4 | THE COURT:  Pleasure.  How are you today? |
| 09:28 | 5 | MR. BULGOZDY:  Nice to see you, Judge. |
| 09:28 | 6 | MR. FARRELL:  Good morning, Your Honor.  Mike |
| 09:28 | 7 | Farrell on behalf of Thomas Seaman, the Receiver. |
| 09:28 | 8 | THE COURT:  And the Receiver, where's the |
| 09:28 | 9 | gentleman? |
| 09:28 | 10 | THE RECEIVER:  Thomas Seaman. |
| 09:28 | 11 | MR. FATES:  Good morning, Your Honor.  "Ted" Fates |
| 09:28 | 12 | also on behalf of the Receiver. |
| 09:28 | 13 | THE COURT:  Thank you very much. |
| 09:28 | 14 | MR. SARRAO:  Good morning, Your Honor Michael |
| 09:28 | 15 | Sarrao on behalf of overbidder, Prime Healthcare Services, |
| 09:28 | 16 | Inc. |
| 09:28 | 17 | THE COURT:  Pleasure to see you.  And who's your |
| 09:28 | 18 | client? |
| 09:28 | 19 | MR. SARRAO:  I have -- Dr. Reddy is with me. |
| 09:28 | 20 | THE COURT:  Well, let's cluster them together.  In |
| 09:28 | 21 | other words, I want to be able to... |
| 09:28 | 22 | And who's your client?  Is it Mr. Chaudhuri? |
| 09:28 | 23 | Client, Counsel?  Who's your client? |
| 09:28 | 24 | MR. SARRAO:  Dr. Reddy. |
| 09:28 | 25 | THE COURT:  Dr. Reddy.  Thank you very much. |

9

| | | |
|---|---|---|
| 09:28 | 1 | Doctor, why don't you come on up here. |
| 09:28 | 2 | Counsel? |
| 09:28 | 3 | MR. ROBINSON:  Good morning, Your Honor.  David |
| 09:28 | 4 | Robinson on behalf of I.H.H.I. |
| 09:28 | 5 | THE COURT:  Pleasure.  How are you today? |
| 09:28 | 6 | MR. ROBINSON:  Fine, Your Honor. |
| 09:28 | 7 | Where would you like us? |
| 09:28 | 8 | THE COURT:  Well, how many are you? |
| 09:29 | 9 | MR. ROBINSON:  There are just two. |
| 09:29 | 10 | THE COURT:  Who is the other one? |
| 09:29 | 11 | MR. ROBINSON:  This gentleman here.  *(Indicating.)* |
| 09:29 | 12 | Actually, Your Honor, I'd like to also advise the |
| 09:29 | 13 | Court that a number of members of the Board of Directors, |
| 09:29 | 14 | the CEO, Ken Westbrook, and the CEOs of the hospitals are |
| 09:29 | 15 | also present in court. |
| 09:29 | 16 | THE COURT:  Well, let's just take counsel to begin |
| 09:29 | 17 | with. |
| 09:29 | 18 | MR. ROBINSON:  Thank you. |
| 09:29 | 19 | THE COURT:  Counsel, what's your appearance? |
| 09:29 | 20 | MR. PUGH:  Good morning, Your Honor.  Benjamin |
| 09:29 | 21 | Pugh, also for IHHI. |
| 09:29 | 22 | THE COURT:  Now, where are the members of your |
| 09:29 | 23 | group located? |
| 09:29 | 24 | MR. ROBINSON:  Essentially here. |
| 09:29 | 25 | THE COURT:  Let's get them all together in one big |

| | | |
|---|---|---|
| 09:29 | 1 | herd.  Herd them up, Counsel.  That way you can discuss this |
| 09:29 | 2 | anytime you want to.  I'm going to move you all to one side |
| 09:29 | 3 | of the courtroom, so, if counsel wants to come back and talk |
| 09:29 | 4 | to you privately, there aren't a lot of other parties |
| 09:29 | 5 | surrounding you at any time.  That at your convenience -- I |
| 09:29 | 6 | really don't care, but if counsel wants to talk to you, it |
| 09:30 | 7 | may take some time to talk to all of you.  And I don't know |
| 09:30 | 8 | if there needs to be conversations. |
| 09:30 | 9 | Counsel? |
| 09:30 | 10 | MR. SUSSMAN:  Your Honor, Allen Sussman from |
| 09:30 | 11 | ReedSmith.  I'm corporate counsel to Integrated Healthcare |
| 09:30 | 12 | Holdings. |
| 09:30 | 13 | THE COURT:  Thank you very much.  So, Counsel, I'm |
| 09:30 | 14 | going to put all three of you together.  Okay? |
| 09:30 | 15 | MR. SUSSMAN:  Okay. |
| 09:30 | 16 | THE COURT:  Counsel? |
| 09:30 | 17 | MR. KLAUSNER:  Morning, Judge Carter.  I'm Gary |
| 09:30 | 18 | Klausner.  I'm a member of Stutman, Treister & Glatt.  We |
| 09:30 | 19 | are counsel for KPC Resolution Company.  We're the |
| 09:30 | 20 | purchaser.  We do have a small contingent here, so we're |
| 09:30 | 21 | happy to go where the Judge would like. |
| 09:30 | 22 | THE COURT:  Show me who those people are. |
| 09:30 | 23 | MR. KLAUSNER:  Right back here, Your Honor.  I |
| 09:30 | 24 | also have Dr. Chaudhuri, who is the principal of KPC. |
| 09:30 | 25 | THE COURT:  Thank you.  I got that turned around, |

SACV 09-0818 DOC - 4/2/2010 - Item 8, Volume I

11

| | | |
|---|---|---|
| 09:30 | 1 | and I apologize. |
| 09:30 | 2 | Well, I don't care where you're seated, just as |
| 09:30 | 3 | long as you have access to your clients without going around |
| 09:30 | 4 | the courtroom, you know?  So I'm trying to cluster you.  You |
| 09:30 | 5 | don't have to get together, but I'd just recommend you be in |
| 09:30 | 6 | one location. |
| 09:30 | 7 | MR. KLAUSNER:  I'll just -- I'll have them stay |
| 09:30 | 8 | where they are now. |
| 09:30 | 9 | THE COURT:  Okay. |
| 09:30 | 10 | MR. KLAUSNER:  Thank you. |
| 09:30 | 11 | Any other appearances? |
| 09:31 | 12 | MR. RAVAL:  Good morning, Your Honor.  Abby |
| 09:31 | 13 | Raval -- Milbank, Tweed, Hadley & McCloy -- on behalf of |
| 09:31 | 14 | Silver Point Finance, which is a partner with KPC and was a |
| 09:31 | 15 | former bidder for these assets as well. |
| 09:31 | 16 | THE COURT:  Okay.  Thank you very much.  Pleasure. |
| 09:31 | 17 | Well, we're going to take a brief recess because |
| 09:31 | 18 | we've been in session since 7:30 and the court reporter |
| 09:31 | 19 | needs a brief break.  But I would say we'd be back within |
| 09:31 | 20 | 20 minutes.  Okay? |
| 09:31 | 21 | We'll see you at that time. |
| 09:31 | 22 | *(Recess held at 9:31 a.m.)* |
| 10:48 | 23 | *(Proceedings resumed at 10:48 a.m.)* |
| 10:48 | 24 | THE COURT:  Counsel, we're back on the record. |
| 10:48 | 25 | And we're going to take the Motion for Release of |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:48 | 1 | Attorneys Fees first, Counsel.  I would like to hear from |
| 10:48 | 2 | counsel in that matter. |
| 10:48 | 3 | MR. GROSS:  Thank you, Your Honor. |
| 10:48 | 4 | THE COURT:  And just your appearance. |
| 10:48 | 5 | MR. GROSS:  Yes. |
| 10:48 | 6 | THE COURT:  I certainly know who you are, but -- |
| 10:48 | 7 | MR. GROSS:  Wayne Gross from Greenberg Traurig on |
| 10:48 | 8 | behalf of Mr. Field. |
| 10:48 | 9 | **MOTION FOR RELEASE OF ATTORNEYS FEES** |
| 10:48 | 10 | MR. GROSS:  I represent a former CEO who ran a |
| 10:48 | 11 | company that had 200 employees and more than 2000 clients. |
| 10:48 | 12 | He's facing his darkest hour.  He, along with |
| 10:48 | 13 | Mr. Lampariello, are facing a very complex SEC civil case, |
| 10:48 | 14 | as Your Honor knows, and now faces a very significant |
| 10:48 | 15 | Department of Justice criminal investigation. |
| 10:49 | 16 | He is in desperate need of effective legal |
| 10:49 | 17 | representation on both the SEC side, which he currently has, |
| 10:49 | 18 | but now, and more imperative, is that he get effective |
| 10:49 | 19 | representation on the criminal side.  So what we've asked |
| 10:49 | 20 | Your Honor to consider is to partially lift the freeze so |
| 10:49 | 21 | that he can get that representation at this very critical |
| 10:49 | 22 | time. |
| 10:49 | 23 | And Mr. Bienert, on behalf of Mr. Lampariello, |
| 10:49 | 24 | would like to make the same request. |
| 10:49 | 25 | Mr. Bienert. *(Indicates.)* |

| | | |
|---|---|---|
| 10:49 | 1 | THE COURT:  All right.  Thank you. |
| 10:49 | 2 | Mr. Bienert? |
| 10:49 | 3 | MR. BIENERT:  That's correct, Your Honor. |
| 10:49 | 4 | **STATEMENT BY MR. BIENERT** |
| 10:49 | 5 | MR. BIENERT:  And I'm obviously not a party to the |
| 10:49 | 6 | case, but if there were fees for retention on the criminal |
| 10:49 | 7 | side, would likely become his counsel. |
| 10:49 | 8 | And the main thing that I would want to stress in |
| 10:49 | 9 | terms of the pleading, which I didn't write, but I certainly |
| 10:49 | 10 | was aware of and know its contents -- and what I'm looking |
| 10:49 | 11 | for is -- just thinking more in terms of the amount of time |
| 10:49 | 12 | that would be necessary in the short-term to try to |
| 10:49 | 13 | effectively get arms around the case in order to be able to |
| 10:50 | 14 | continue a dialogue with the U.S. Attorney as to where this |
| 10:50 | 15 | case is going and how it should proceed -- and the bottom |
| 10:50 | 16 | line on the matter is, as I understand it, there are |
| 10:50 | 17 | hundreds of employees from the entity; there are thousands |
| 10:50 | 18 | of clients; and, of course, there are hundreds of thousands |
| 10:50 | 19 | of pages of documents that are in the possession of the |
| 10:50 | 20 | Receiver. |
| 10:50 | 21 | My sense of things -- and, frankly, I have not |
| 10:50 | 22 | been in the case to be able to really know how to go about |
| 10:50 | 23 | it or see what is practically available, quickly but if that |
| 10:50 | 24 | is the case, it would likely take, for the next, say, two |
| 10:50 | 25 | months, a good bit of my time, a good bit -- and by "my |

10:50  1    time," I would say maybe as much as half but certainly not

10:50  2    more than that -- I would think it would take most of the

10:50  3    working time of an associate of my firm, and most of the

10:50  4    working time of a paralegal of my firm in order to try to

10:50  5    get through information from witnesses, get through,

10:51  6    hopefully, documents -- although we would, hopefully, be

10:51  7    able to make an arrangement through the U.S. Attorneys

10:51  8    Office or the Receiver to review some documents in a

10:51  9    structured environment where the receiver and its counsel

10:51  10   were comfortable that things were staying where they should,

10:51  11   et cetera, in order to get to some of the issues in the case

10:51  12   and be able to give effective representation.

10:51  13       So simply based on just sort of a "man hours"

10:51  14   assessment, it strikes me that this would be something that

10:51  15   would be in the ballpark of 75 percent of a couple of

10:51  16   attorneys' time for a few months, as well as probably 80 to

10:51  17   90 percent of a paralegal's time in my office.

10:51  18       Having just perused the filings that are out

10:51  19   there, it's my understanding that, for example, Receiver's

10:51  20   counsel has submitted to the Court upwards of $800,000 in

10:51  21   billings for approval -- and I don't believe they've been

10:51  22   approved yet -- but for work done in the last three and a

10:51  23   half months.  And the reason I think that's significant is,

10:51  24   the bottom line here is there are a lot of things to be

10:51  25   looked at and a lot of work to be done.

| 10:52 | 1 | I think that it is something that is being pursued |
| 10:52 | 2 | sort of in the interest of making the best, most economical |
| 10:52 | 3 | use of the time, and then, therefore, fees to try to bring |
| 10:52 | 4 | the criminal side of things to a head sooner rather than |
| 10:52 | 5 | later.  As I'm sure Your Honor is aware, a lot of these |
| 10:52 | 6 | criminal cases -- especially, when there's a parallel civil |
| 10:52 | 7 | proceedings, can go on for well over -- in the approximate |
| 10:52 | 8 | range, over a year or more. |
| 10:52 | 9 | THE COURT:  Sure. |
| 10:52 | 10 | MR. BIENERT:  And the goal here is to come in at |
| 10:52 | 11 | what I think is a fairly late stage -- because there's been |
| 10:52 | 12 | a lot going on the civil and the SEC side -- and spend a |
| 10:52 | 13 | couple of intensive months to kinda know where we are and |
| 10:52 | 14 | where this thing is going. |
| 10:52 | 15 | Frankly, I have no way of knowing where that is |
| 10:52 | 16 | because we haven't gotten into the case yet.  But when I |
| 10:52 | 17 | just look at the size and scope of what's to be done, I |
| 10:52 | 18 | think the request for basically a senior attorney, a junior |
| 10:52 | 19 | or mid-level attorney, and a paralegal for most of a couple |
| 10:52 | 20 | of months is reasonable. |
| 10:52 | 21 | So on that basis, we would submit. |
| 10:52 | 22 | I do -- one thing that I do think is a good point |
| 10:53 | 23 | raised by -- I think it's the SEC's counsel -- in the |
| 10:53 | 24 | Opposition is the fact that they haven't seen a |
| 10:53 | 25 | justification or an explanation for why the money is needed |

10:53  1    out of the Receiver's funds, as opposed to personal funds.

10:53  2    I would just leave the Court with this:

10:53  3           My understanding is that there have been some

10:53  4    submissions by Mr. Lampariello and Mr. Fields *(sic)* and

10:53  5    others about finances, but I certainly haven't personally

10:53  6    put together one with my client for this submission.  And to

10:53  7    the degree that that were a significant factor in

10:53  8    Your Honor's ruling, then I would certainly be prepared to,

10:53  9    and offer to, make a supplemental filing that lays out more

10:53  10   the financial side as to why we don't believe that

10:53  11   Mr. Lampariello has sufficient funds for a fair and adequate

10:53  12   representation here and would be asking for funds from the

10:53  13   Court.

10:53  14          On that, I would submit.

10:53  15          MR. GROSS:  One more point, Your Honor.

10:53  16          Documents are going to be key to this, and we're

10:53  17   going to need those -- to look at those documents quickly.

10:54  18   The Receiver is in possession of those documents, so we may

10:54  19   be seeking Your Honor's help in setting up a mechanism --

10:54  20   we're certainly going to try to work with the Receiver --

10:54  21   but setting up a mechanism to make sure that we can gain

10:54  22   access to those documents.

10:54  23          THE COURT:  Ms. Waier is here, I think, from the

10:54  24   United States Attorney's Office.  She was here earlier,

10:54  25   anyway.

10:54  1        MR. GROSS:  She's no longer here.

10:54  2        THE COURT:  No longer present.  All right.

10:54  3        It has come to the Court's attention that

10:54  4   apparently each of your potential clients, Mr. Lampariello

10:54  5   and Mr. Fields, may be under investigation and may be

10:54  6   targets.  The Court knows no criminal case yet has been

10:54  7   filed; therefore, the only thing before the Court is -- I'm

10:54  8   going to refer to as the SEC action.

10:54  9        First of all, let me say to both you and

10:54  10  Mr. Bienert, Mr. Gross, that this Court would be honored to

10:54  11  have you as counsel if this comes to fruition, if criminal

10:54  12  matters are filed.  You're both renowned in your field, and

10:54  13  I think your clients would have the very best

10:55  14  representation.

10:55  15       By the same token, I've previously expressed some

10:55  16  deep concerns about taking moneys from the amounts the

10:55  17  Receiver is desperately trying to catalogue and to account

10:55  18  for.  I'm not satisfied, at least on what I'm going to call

10:55  19  the civil side, the SEC side, that the Court has an

10:55  20  indication of what is not available in terms of personal

10:55  21  assets to begin with and, therefore, I'm a little reluctant

10:55  22  to "rob Peter to pay Paul," in a sense.

10:55  23       I don't like the idea of taking it, at least at

10:55  24  this time, from the civil side over to the criminal side,

10:55  25  well-understanding the Sixth Amendment right to counsel,

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 10:56 | 1 | without a much better understanding of what the personal |
| 10:56 | 2 | assets are of your clients and what their ability is to help |
| 10:56 | 3 | contribute to their own defense, if they want to go by way |
| 10:56 | 4 | of private counsel. |
| 10:56 | 5 | The law gives the Court great discretion.  The |
| 10:56 | 6 | Court's not required to release wrongfully obtained funds |
| 10:56 | 7 | from a freeze for a defendant to use to pay for costs of the |
| 10:56 | 8 | defense.  I'm citing *Caplin v. Drysdale, Charter v.* |
| 10:56 | 9 | *United States,* 491 U.S. 617 at 626 U.S. Supreme Court |
| 10:56 | 10 | (1989).  The Court has stated: |
| 10:56 | 11 | "A defendant has no Sixth Amendment |
| 10:56 | 12 | right to spend another person's money |
| 10:56 | 13 | for services rendered by an attorney, |
| 10:56 | 14 | even if those funds are the only -- that |
| 10:56 | 15 | the defendant will be able to retain the |
| 10:56 | 16 | attorney of his choice.  A robbery |
| 10:56 | 17 | suspect, for example, has no Sixth |
| 10:56 | 18 | Amendment right to use funds he's stolen |
| 10:56 | 19 | from a bank to retain an attorney to |
| 10:56 | 20 | defend him if he's apprehended." |
| 10:56 | 21 | In *SEC v. Grossman*, it's well-established in the |
| 10:57 | 22 | Southern District of New York, that there's no right for use |
| 10:57 | 23 | of the money for other -- of others for legal services.  And |
| 10:57 | 24 | the Ninth Circuit has also held that it is not an abuse of |
| 10:57 | 25 | discretion for a district court to refuse to release funds |

| | | |
|---|---|---|
| 10:57 | 1 | for legal expenses when the frozen assets fall far short of |
| 10:57 | 2 | the amount needed to satisfy a judgment. |
| 10:57 | 3 | And in *Noble Medals*, the Ninth Circuit also |
| 10:57 | 4 | stated: |
| 10:57 | 5 | "We do not intimate that attorney fee |
| 10:57 | 6 | applications may always be denied where |
| 10:57 | 7 | the assets are insufficient to cover the |
| 10:57 | 8 | claims.  Discretion may be exercised by |
| 10:57 | 9 | the district court in light of the fact |
| 10:57 | 10 | that wrongdoing is not yet proved when |
| 10:57 | 11 | the application for attorneys fees is |
| 10:57 | 12 | made.  In exercising this discretion, |
| 10:57 | 13 | courts consider factors such as whether |
| 10:57 | 14 | the frozen assets include personal |
| 10:57 | 15 | assets that have been shown to be |
| 10:57 | 16 | obtained legally and whether, without a |
| 10:57 | 17 | release of funds, the defendant will |
| 10:57 | 18 | have no ability to retain counsel at |
| 10:57 | 19 | all." |
| 10:57 | 20 | Let me say, once again, I would strongly welcome |
| 10:57 | 21 | both you and Mr. Bienert in this matter, but I'm not |
| 10:58 | 22 | satisfied of the accounting on the civil side, thus far.  It |
| 10:58 | 23 | appears to me that the Receiver has been chasing assets and |
| 10:58 | 24 | has had to uncover assets, and there hasn't been the |
| 10:58 | 25 | willingness to disclose up to this point that the Court |

| | | |
|---|---|---|
| 10:58 | 1 | would expect would bring fruition to the criminal side. |
| 10:58 | 2 | Therefore, in all likelihood, if criminal matters |
| 10:58 | 3 | were filed at this time, I would appoint the Public Defender |
| 10:58 | 4 | if they didn't have assets.  In other words, you do have an |
| 10:58 | 5 | opportunity to submit a forthright, complete, candid |
| 10:58 | 6 | accounting, which you haven't had the opportunity to do so |
| 10:58 | 7 | far.  And that's far different than the civil side, where |
| 10:58 | 8 | oftentimes the Receiver is chasing funds and the game really |
| 10:58 | 9 | becomes those being pursued aren't disclosing as readily as |
| 10:58 | 10 | they should. |
| 10:58 | 11 | So I leave that to each of you gentlemen.  Let me |
| 10:58 | 12 | take that under submission.  And I'll certainly put whatever |
| 10:58 | 13 | my thoughts are in writing after I've more fully thought |
| 10:58 | 14 | this matter through. |
| 10:58 | 15 | But certainly I do want counsel of choice.  I do |
| 10:58 | 16 | want the best representation, if criminal matters are filed. |
| 10:59 | 17 | I do recognize that early intervention may be appropriate. |
| 10:59 | 18 | By the same token, weighing that against the civil assets |
| 10:59 | 19 | involved, et cetera, right now that has to be my primary |
| 10:59 | 20 | concern, because that's the only thing before the Court.  I |
| 10:59 | 21 | just have a civil filing. |
| 10:59 | 22 | I have civil people who are being harmed, so I |
| 10:59 | 23 | can't look ahead to if the United States Attorney's Office |
| 10:59 | 24 | will file, when they file, what the asset disclosure is, |
| 10:59 | 25 | what the personal assets are -- you know, all those things |

SACV 09-0818 DOC - 4/2/2010 - Item 8, Volume I

21

| | | |
|---|---|---|
| 10:59 | 1 | are premature. |
| 10:59 | 2 | So, gentlemen, I want to thank you for your |
| 10:59 | 3 | appearance. |
| 10:59 | 4 | MR. GROSS:  Thank you, Your Honor. |
| 10:59 | 5 | THE COURT:  Hopefully, we'll see you in the |
| 10:59 | 6 | future. |
| 10:59 | 7 | MR. BIENERT:  Thank you, Your Honor. |
| 11:00 | 8 | *(Pause in the proceedings 11:00 a.m.)* |
| 11:15 | 9 | *(Proceedings resumed at 11:15 a.m.)* |
| 11:15 | 10 | THE COURT:  All right.  Then, Counsel, back to the |
| 11:15 | 11 | SEC matter. |
| 11:16 | 12 | Counsel, this concerns the bidding process and the |
| 11:16 | 13 | offer by IHHI, who's represented once again by? |
| 11:16 | 14 | MR. ROBINSON:  Good morning, Your Honor.  David |
| 11:16 | 15 | Robinson and Ben Pugh. |
| 11:16 | 16 | THE COURT:  And the Prime Health was represented |
| 11:16 | 17 | by? |
| 11:16 | 18 | MR. SARRAO:  Michael Sarrao, Your Honor. |
| 11:16 | 19 | THE COURT:  And along with KPC Resolution Company |
| 11:16 | 20 | is -- where are you located? |
| 11:16 | 21 | MR. KLAUSNER:  That's me, Your Honor.  We're |
| 11:16 | 22 | actually the purchaser, KPC Resolution.  I'm Gary Klausner. |
| 11:16 | 23 | THE COURT:  Who's working with Silver Point? |
| 11:16 | 24 | MR. RAVAL:  Good morning, Your Honor.  Abby Raval |
| 11:16 | 25 | with Milbank, Tweed. |

11:16     1          THE COURT:  Okay.  Let me begin with Prime

11:16     2     Healthcare for a moment.  Although your bid's $58 million,

11:17     3     the Court was rather explicit about what it expected.  And

11:17     4     I'm concerned that the representation that you brought

11:17     5     forward, the submission of a bank statement, does not comply

11:17     6     with the bidding procedure that I had set up.

11:17     7          You'd always thought that was too onerous.  I'd

11:17     8     rejected that argument on a prior occasion, and I reject it

11:17     9     again.  What the Court cannot afford to do is get into a

11:17    10     situation where, in a sense, that this isn't, quote/unquote,

11:17    11     a done deal, and get down the line for some period of time,

11:17    12     and then have Prime Healthcare, or any other entity,

11:17    13     suddenly say, "I just can't quite comply with this."

11:17    14          And the reason for that is, now, when we go back

11:17    15     into a bidding process, the bidder is in a position of

11:17    16     knowing that the $58 million fell through, so the 55 million

11:18    17     that was initially offered may not be forthcoming.  It may

11:18    18     be a much lower bid.

11:18    19          By the same token, let me say, concerning the

11:18    20     $55 million bid, I'm a little concerned about what I

11:18    21     perceive to be the windfall.  I know the Receiver's given

11:18    22     the Court input about the $12 million being resolved.

11:18    23          Just a moment.

11:18    24          And I don't know how else to refer to it, but

11:19    25     there's a -- depending upon whether the Court applies the

11:19  1   12.1 million with the 73.6 million, for about 85.7 million,

11:19  2   or whether the Court takes the figure of 73 million,

11:19  3   regardless, the 55 million seems to give a windfall

11:19  4   that's -- although a separate corporate entity, the primary

11:19  5   investor is still Dr. Chaudhuri, I believe, who has a

11:19  6   substantial holding in IHHI.

11:19  7          So, given all that, Counsel, the lectern's yours.

11:19  8          MR. SARRAO:  Thank you, Your Honor.  Again,

11:19  9   Michael Sarrao for Prime Healthcare Services.

11:19  10          First, as to the ability to perform.  Your concern

11:19  11   that we would bid 58 million, or perhaps more than

11:19  12   58 million, not be --

11:19  13          THE COURT:  I'm not concerned you'd bid more than

11:19  14   58 million.  You bid 58 million.

11:19  15          I'm concerned about your ability to comply, and,

11:19  16   quite frankly, thumbing my order.  I was very explicit about

11:19  17   what I expected.

11:20  18          MR. SARRAO:  The Receiver -- the purchase

11:20  19   agreement provides for the auction process to be modified by

11:20  20   the Receiver without a Court order.  That's part of the

11:20  21   purchase agreement.  It was signed by KPC Resolution

11:20  22   Company, as well as the purchase agreement signed by us.  We

11:20  23   believe it was reasonable to show the ability to perform.

11:20  24          The letter of credit, which, as far as I can tell,

11:20  25   the KPC Resolution Company was never required to provide, is

11:20  1    an onerous term to the extent that you have to pay

11:20  2    letter-of-credit fees --

11:20  3              THE COURT:  I think that's *de minimis* compared to

11:20  4    what you're dealing with, Counsel.  That's something that

11:20  5    you could easily do and solidify for a bid of $58 million.

11:20  6    You're dealing with what I call "chump change."

11:20  7              MR. SARRAO:  The other issue, Your Honor, is we

11:20  8    provided the Receiver not only bank statements but letters

11:20  9    from our bank that confirms we have the funds.  The closing

11:20  10   is contemplated --

11:20  11             THE COURT:  Why didn't you simply comply with my

11:20  12   bidding procedure?  You could have easily done that.  I

11:20  13   think the fees would have been *de minimis* compared to the

11:20  14   amounts of money involved, quite frankly.  And I can give

11:20  15   you till Monday or Tuesday to do that.

11:21  16             MR. SARRAO:  That's fine, Your Honor.  If that's

11:21  17   what you want us to do to comply, we can --

11:21  18             THE COURT:  No, no.  I was very clear.  That's

11:21  19   what I ordered you to do.  That is my procedure.  You've

11:21  20   chosen to go around that, and I'm not going to accept that

11:21  21   in a few moments.

11:21  22             Now, I would love to get $58 million in an overbid

11:21  23   if it was solidified.  That's $3 million more than is being

11:21  24   bid.  It also doesn't look like a windfall.

11:21  25             But, unless also you're going to comply with this

SACV 09-0818 DOC - 4/2/2010 - Item 8, Volume I

25

| | | |
|---|---|---|
| 11:21 | 1 | and do it very shortly, I'm gonna deny your request. |
| 11:21 | 2 | MR. SARRAO:  We'll absolutely comply with the |
| 11:21 | 3 | order and submit a letter of credit, Your Honor, if that |
| 11:21 | 4 | allows the bidding to go forward and the receivership to |
| 11:21 | 5 | receive more -- |
| 11:21 | 6 | THE COURT:  Why wasn't that done before? |
| 11:21 | 7 | MR. SARRAO:  We didn't -- we believed -- in |
| 11:21 | 8 | talking with the Receiver, we believed that showing the |
| 11:21 | 9 | ability to perform would be sufficient to allow Your Honor |
| 11:21 | 10 | to consider a higher bid, Your Honor. |
| 11:21 | 11 | THE COURT:  It's not. |
| 11:21 | 12 | MR. SARRAO:  If you need -- |
| 11:21 | 13 | THE COURT:  I want this nailed down. |
| 11:21 | 14 | MR. SARRAO:  We need to post a letter of credit -- |
| 11:21 | 15 | we've already submitted a cashier's check for 2 million.  So |
| 11:21 | 16 | if you want a letter of credit for $56 million, we will |
| 11:21 | 17 | provide a letter of credit. |
| 11:21 | 18 | THE COURT:  I want a cashier check for 56 million. |
| 11:21 | 19 | MR. SARRAO:  A cashier's check for -- |
| 11:21 | 20 | THE COURT:  A cashier's check for $56 million. |
| 11:21 | 21 | That's exactly what I want.  That was the terms of my |
| 11:21 | 22 | overbid. |
| 11:22 | 23 | MR. SARRAO:  I believe, Your Honor, the order was |
| 11:22 | 24 | a cashier's check or a letter of credit.  I think we could |
| 11:22 | 25 | do a cashier check, an escrow deposit, or a letter of |

DEBBIE GALE, U.S. COURT REPORTER

```
11:22    1    credit.  We're happy to do either one you want.

11:22    2            THE COURT:  Cashier's check.

11:22    3            Now, let me hear from the Receiver for just a

11:22    4    moment.

11:22    5            STATEMENT BY MR. FARRELL

11:22    6            MR. FARRELL:  Good morning, Your Honor.  Mike

11:22    7    Farrell for the Receiver.

11:22    8            Just to clarify, I don't believe any conversation

11:22    9    took place where we said that the Receiver could override

11:22   10    the Court's order.  What we did tell Prime was that, if a

11:22   11    noncompliant overbid were received, we would view that as a

11:22   12    material event that we would just alert the Court to.  And

11:22   13    we filed the notice pointing out the deficiencies and how it

11:22   14    failed to comply with the Court's order.

11:22   15            THE COURT:  Yeah.  I'm concerned about also the

11:22   16    perception that what we have is at least a valid

11:22   17    $73.6 million loan that you basically get in a repurchase,

11:23   18    although a separate entity, of $55 million.  I mean, it

11:23   19    just -- it's unwholesome.

11:23   20            MR. FARRELL:  Understood, Your Honor.

11:23   21            THE COURT:  By the same token, I recognize that

11:23   22    these are two separate, quote/unquote, "legal entities."

11:23   23    But one of the primary investors in IHH (sic) is one of the

11:23   24    primary investors at KPC.  So you have a very interesting

11:23   25    situation, where there appears to be a windfall.
```

DEBBIE GALE, U.S. COURT REPORTER

11:23  1          Now, I'm not against that.  That may make good
11:23  2   economic sense.  And I think that your recommendation to the
11:23  3   Court, unless there's going to be compliance by Prime, you
11:23  4   know, with what I need, is a good recommendation.  And at
11:23  5   the end of the day, I may have accepted this and let IHHI
11:23  6   take the -- well, prevail.
11:23  7          But right now, it appears to me, if the cashier's
11:23  8   check is forthcoming, and there's every intent to comply.
11:23  9   And there's any misunderstanding on Prime's part --
11:23  10  certainly it's $3 million more; it relieves the impression
11:24  11  of a windfall.  But I want that done, I mean, post haste.
11:24  12  They knew to begin with, from my impression.  And whatever
11:24  13  that confusion was, I'm not going to get into that.
11:24  14          MR. FARRELL:  Fair enough, Your Honor.
11:24  15          THE COURT:  So -- but that doesn't mean that IHHI
11:24  16  shouldn't have -- be allowed then to come back and bid one
11:24  17  final time.  In other words, I'm not cutting IHHI out.  And
11:24  18  I'm probably willing to do this at a discount.
11:24  19          I was just taken back by the $55 million.
11:24  20  Although, I think it makes good economic sense, I didn't
11:24  21  like the impression of it.
11:24  22          But, certainly, Prime's ready to perform and to
11:24  23  bring a cashier's check for $56 million plus the $2 million
11:24  24  that they've deposited --
11:24  25          MR. SARRAO:  And we are, Your Honor.

SACV 09-0818 DOC - 4/2/2010 - Item 8, Volume I

28

| 11:24 | 1 | THE COURT:  What time period do you need?  It |
| 11:24 | 2 | doesn't have to be -- |
| 11:24 | 3 | MR. SARRAO:  I suspect that good Friday might be |
| 11:24 | 4 | an issue. |
| 11:24 | 5 | THE COURT:  Yeah, it is an issue, and I'm not |
| 11:24 | 6 | going to rush you out there.  But I'm thinking by next |
| 11:24 | 7 | Wednesday would give you sufficient time. |
| 11:24 | 8 | MR. SARRAO:  I don't think there would be any |
| 11:24 | 9 | issue, frankly. |
| 11:24 | 10 | THE COURT:  Next Wednesday. |
| 11:24 | 11 | Why don't you submit that to the Receiver.  Why |
| 11:24 | 12 | don't I give a period of time to IHHI.  They may still get a |
| 11:24 | 13 | windfall. |
| 11:25 | 14 | So, for all you folks with IHHI, I'm not against |
| 11:25 | 15 | this -- you know, a decreased amount.  Okay? |
| 11:25 | 16 | MR. ROBINSON:  Your Honor, if I may -- |
| 11:25 | 17 | THE COURT:  Come on up here so we can hear you. |
| 11:25 | 18 | MR. ROBINSON:  Sorry.  David Robinson.  Thank you, |
| 11:25 | 19 | Your Honor.  David Robinson again for IHHI. |
| 11:25 | 20 | We're actually the hospital borrower, not the |
| 11:25 | 21 | purchaser.  It's KPC that's -- |
| 11:25 | 22 | THE COURT:  I apologize. |
| 11:25 | 23 | MR. ROBINSON:  I just wanted to clear that up. |
| 11:25 | 24 | Thank you, Your Honor. |
| 11:25 | 25 | THE COURT:  Thank you very much.  I keep saying |

| | | |
|---|---|---|
| 11:25 | 1 | IHHI.  I apologize.  I mean KPC. |
| 11:25 | 2 | MR. KLAUSNER:  Your Honor, I'm Gary Klausner.  I |
| 11:25 | 3 | wanted a moment to address the Court, if possible? |
| 11:25 | 4 | THE COURT:  Certainly. |
| 11:25 | 5 | **STATEMENT BY MR. KLAUSNER** |
| 11:25 | 6 | MR. KLAUSNER:  I represent the purchaser, KPC.  I |
| 11:25 | 7 | just think there are two points I want to make. |
| 11:25 | 8 | First of all, the $55 million does not really |
| 11:25 | 9 | reflect a gross discount off of the face value of the loan |
| 11:25 | 10 | that's being sold.  The $55 million is accompanied by a |
| 11:25 | 11 | release of the Receiver and the receivership estate by IHHI. |
| 11:26 | 12 | So the proposal -- |
| 11:26 | 13 | THE COURT:  $12.1 million. |
| 11:26 | 14 | MR. KLAUSNER:  -- it's -- |
| 11:26 | 15 | THE COURT:  The $12.1 million. |
| 11:26 | 16 | MR. KLAUSNER:  Well, plus compensatory and |
| 11:26 | 17 | punitive damages. |
| 11:26 | 18 | If this -- if the holder of this loan, whoever it |
| 11:26 | 19 | is, sought to enforce it against IHHI, they would be |
| 11:26 | 20 | confronted with a barrage of litigation, numerous defenses |
| 11:26 | 21 | and offsets.  So this loan doesn't have a $73 million value |
| 11:26 | 22 | in any marketplace. |
| 11:26 | 23 | Secondly -- and Mr. Robinson, if you'd like to, can |
| 11:26 | 24 | address the subject of the release and the value of the |
| 11:26 | 25 | release because, in our view, it's clearly worth |

| | | |
|---|---|---|
| 11:26 | 1 | substantially more than the differential between the |
| 11:26 | 2 | $55 million that our client has committed to, and the |
| 11:26 | 3 | purportedly $58 million that Prime has committed to. |
| 11:26 | 4 | The releases were -- the release of this estate, of |
| 11:26 | 5 | the various claims and causes of action that would be |
| 11:26 | 6 | asserted against this estate by IHHI -- |
| 11:26 | 7 | THE COURT:  Let's just take your figures.  Do you |
| 11:26 | 8 | have a piece of paper and pencil in front you? |
| 11:27 | 9 | MR. KLAUSNER:  Yes, sir. |
| 11:27 | 10 | THE COURT:  Okay.  First credit facility of |
| 11:27 | 11 | $35 million, correct? |
| 11:27 | 12 | MR. KLAUSNER:  Correct. |
| 11:27 | 13 | THE COURT:  Okay.  First credit facility of |
| 11:27 | 14 | $45 million, which is the loan on the account. |
| 11:27 | 15 | Second credit facility of 10.7 million, term loan. |
| 11:27 | 16 | Third credit facility of 50 million, loan on |
| 11:27 | 17 | account. |
| 11:27 | 18 | The total owed that the Receiver represented to the |
| 11:27 | 19 | Court was $73,646,352.31. |
| 11:27 | 20 | Correct? |
| 11:27 | 21 | MR. KLAUSNER:  That's correct. |
| 11:27 | 22 | THE COURT:  Now that accounted, though -- the |
| 11:27 | 23 | Receiver assumed that -- the $12.1 million in that.  So |
| 11:28 | 24 | really, it's -- another way of thinking of this is it's |
| 11:28 | 25 | either $73 million, minus 55 million -- |

| | | |
|---|---|---|
| 11:28 | 1 | Would you subtract that for me.  How much is that? |
| 11:28 | 2 | UNIDENTIFIED SPEAKER:  $18 million, Your Honor. |
| 11:28 | 3 | THE COURT:  Okay.  Now take the 12.1 million, add |
| 11:28 | 4 | it to the 73 million.  You come out with about 85.7 million, |
| 11:28 | 5 | in rough figures. |
| 11:28 | 6 | Deduct $55 million from that.  What is that? |
| 11:28 | 7 | MR. KLAUSNER:  About 30 million, Your Honor. |
| 11:28 | 8 | THE COURT:  Okay.  Now the argument could be that |
| 11:28 | 9 | although Silver Point, et cetera, KPC are separate countries |
| 11:28 | 10 | *(sic),* that Dr. Chaudhuri is still obviously intimately |
| 11:28 | 11 | involved with both, and that's about anywhere from an 18- to |
| 11:28 | 12 | $30 million windfall. |
| 11:28 | 13 | MR. KLAUSNER:  I wouldn't call it -- I'm sorry. |
| 11:28 | 14 | THE COURT:  Okay.  We'll call it something else. |
| 11:28 | 15 | "Benefit." |
| 11:29 | 16 | MR. KLAUSNER:  I think there are two ways of |
| 11:29 | 17 | looking at this, Your Honor. |
| 11:29 | 18 | First of all, there's a question of what is the |
| 11:29 | 19 | amount that this loan could be enforced at, if the holder of |
| 11:29 | 20 | this loan actually sought to enforce it.  Giving credit not |
| 11:29 | 21 | only to the over-sweep, but to the damage claims that were |
| 11:29 | 22 | created by the wrongdoing of MedCap.  So whoever holds this |
| 11:29 | 23 | loan is going to be subject to whatever defenses or offsets |
| 11:29 | 24 | would otherwise exist with regard to claims against -- for |
| 11:29 | 25 | wrongdoing by MedCap. |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 11:29 | 1 | And indeed, IHHI is just another victim of MedCap. |
| 11:29 | 2 | And they would be asserting claims in the receivership |
| 11:29 | 3 | estate for fraud, lender liability, breach of contract.  So |
| 11:29 | 4 | it's appropriate for the Receiver to take into account two |
| 11:29 | 5 | things: |
| 11:29 | 6 | One, the discounted value of the loan in the hands |
| 11:29 | 7 | of whoever is going to collect it.  Because whoever is going |
| 11:29 | 8 | to buy this loan has to recognize that the enforceability of |
| 11:30 | 9 | this loan is subject to defenses. |
| 11:30 | 10 | Secondly, the Receiver has to take into account |
| 11:30 | 11 | potential claims by IHHI against the receivership estate, |
| 11:30 | 12 | which are affirmative recovery claims based upon the |
| 11:30 | 13 | wrongdoing of MedCap's officers. |
| 11:30 | 14 | So the Receiver has taken into account those |
| 11:30 | 15 | factors and has bargained for a price reflective of the true |
| 11:30 | 16 | value of these loans.  I mean, the Receiver has subjected |
| 11:30 | 17 | the loans to market forces.  This is what the market has |
| 11:30 | 18 | provided to the Receiver.  So I think we have two issues |
| 11:30 | 19 | here: |
| 11:30 | 20 | One is, is the Receiver getting fair value, which I |
| 11:30 | 21 | think is important for you to ultimately find. |
| 11:30 | 22 | Second issue is, is whether our client, KPC, should |
| 11:31 | 23 | be required to engage in a competitive bid process with |
| 11:31 | 24 | Prime. |
| 11:31 | 25 | And I think there are two separate issues.  I think |

33

| | | |
|---|---|---|
| 11:31 | 1 | the Court needs to be satisfied that the purchase price that |
| 11:31 | 2 | our client has agreed to pay, which is $55 million, in |
| 11:31 | 3 | addition -- |
| 11:31 | 4 | THE COURT:  That's what I'm not satisfied with. |
| 11:31 | 5 | MR. KLAUSNER:  Well, I think, then, we can -- we |
| 11:31 | 6 | will address that issue. |
| 11:31 | 7 | THE COURT:  In other words, if we reach that |
| 11:31 | 8 | threshold -- if it was a little bit higher, I think I might |
| 11:31 | 9 | make the ruling today and move on.  I didn't expect that you |
| 11:31 | 10 | would close the gap to $73 million. |
| 11:31 | 11 | 55 million, quite frankly, is too low, in my |
| 11:31 | 12 | opinion -- |
| 11:31 | 13 | MR. KLAUSNER:  Well -- |
| 11:31 | 14 | THE COURT:  -- and that's the threshold problem |
| 11:31 | 15 | you're having with me. |
| 11:31 | 16 | MR. KLAUSNER:  -- if I could make a suggestion? |
| 11:31 | 17 | I'd like to do the following. |
| 11:31 | 18 | THE COURT:  I'm open to all suggestions. |
| 11:31 | 19 | MR. KLAUSNER:  All right. |
| 11:31 | 20 | I think that, first and foremost, our client should |
| 11:31 | 21 | not be obligated to bid against Prime.  And I'm happy to |
| 11:31 | 22 | argue that point. |
| 11:31 | 23 | THE COURT:  Okay. |
| 11:31 | 24 | MR. KLAUSNER:  Assuming you reach that conclusion. |
| 11:31 | 25 | THE COURT:  In other words, sealed bids? |

SACV 09-0818 DOC - 4/2/2010 - Item 8, Volume I

34

11:31  1         MR. KLAUSNER:  Sealed or unsealed.  I don't think

11:31  2    Prime has qualified.  I don't think they should be allowed

11:31  3    to participate.

11:32  4         Assuming you agree with us, and that would be after

11:32  5    you've heard argument, then what I think I'd like to suggest

11:32  6    is that we meet with the Receiver and we review the terms of

11:32  7    our purchase and we see if we can bridge whatever gap there

11:32  8    exists in terms of the Court, or at least give you an

11:32  9    explanation.

11:32 10         THE COURT:  It wouldn't take much.  It's just a

11:32 11    little too low, frankly.

11:32 12         MR. KLAUSNER:  But before we do that, I would like

11:32 13    to clear the decks on Prime, 'cause -- I appreciate the fact

11:32 14    that the Court was willing to give them until next week to

11:32 15    do what you're -- quote, what you required them to do this

11:32 16    past week; but I'd like to argue against that, if I may.

11:32 17         THE COURT:  Sure.

11:32 18         MR. KLAUSNER:  The -- there's no -- I did make

11:32 19    some notes.  Just give me one second.  The -- there is no

11:32 20    issue that Prime did not abide by your order.

11:32 21         THE COURT:  I've already resolved that, Counsel.

11:32 22    They did not abide by my order.

11:32 23         MR. KLAUSNER:  Well, I want to make an argument in

11:32 24    favor of not giving them the opportunity to do this after

11:33 25    the fact.

DEBBIE GALE, U.S. COURT REPORTER

11:33   1          THE COURT:  There was a little bit of confusion,

11:33   2    according to Prime, with their conversation with the

11:33   3    Receiver.  And I'll never get a clear record about that

11:33   4    'cause I wasn't there.  It wasn't on the record.  And that's

11:33   5    what leaves me a little bit tipsy.

11:33   6          If Prime later is able to come back and say, "Gee,

11:33   7    we were willing to pay this money, but there was a little

11:33   8    bit of confusion," it doesn't leave me with a very clear

11:33   9    record.

11:33   10          MR. KLAUSNER:  I don't think there was any

11:33   11    confusion.  And the Receiver can correct me if I'm wrong.  I

11:33   12    don't think the Receiver ever indicated to Prime that the

11:33   13    Receiver would consider an offer that did not meet the terms

11:33   14    of this Court's order.

11:33   15          THE COURT:  No.  All the Receiver would say was

11:33   16    that they would apprise the Court, which is his

11:33   17    responsibility.  He must apprise me of all the offers

11:33   18    regardless.  That's all he's done.

11:33   19          MR. KLAUSNER:  And I think that our client has a

11:33   20    right to have this Court enforce the terms of its own order.

11:33   21          THE COURT:  Not if the Court's not satisfied with

11:33   22    the $55 million, Counsel.  In other words, you have to reach

11:33   23    that threshold requirement, and that's what you're

11:33   24    forgetting.

11:34   25          I don't know that I even need to put you into a

| | | |
|---|---|---|
| 11:34 | 1 | bidding position with Prime.  You've got an opportunity to |
| 11:34 | 2 | rectify that if you want to.  $55 million is too low. |
| 11:34 | 3 | Do you hear that? |
| 11:34 | 4 | MR. KLAUSNER:  I do, Your Honor. |
| 11:34 | 5 | THE COURT:  Okay.  Now, it doesn't take much more, |
| 11:34 | 6 | frankly, and Prime can be out of this very quickly. |
| 11:34 | 7 | MR. KLAUSNER:  Well, would you suggest that we |
| 11:34 | 8 | take a break at this point? |
| 11:34 | 9 | THE COURT:  I would suggest we take a break. |
| 11:34 | 10 | MR. KLAUSNER:  Okay. |
| 11:34 | 11 | THE COURT:  Now, I want to hear from Prime, of |
| 11:34 | 12 | course.  See how anxious they are.  There they are. |
| 11:34 | 13 | MR. KLAUSNER:  This is not Prime. |
| 11:34 | 14 | THE COURT:  Why is he jumping up? |
| 11:34 | 15 | MR. KLAUSNER:  This is Silver Point.  He's our |
| 11:34 | 16 | funding source. |
| 11:34 | 17 | THE COURT:  Okay.  Mr. Silver Point.  I'm kidding |
| 11:34 | 18 | you.  Silver Point. |
| 11:34 | 19 | **FURTHER STATEMENT BY MR. RAVAL** |
| 11:34 | 20 | MR. RAVAL:  Yes, Your Honor.  Abby Raval from |
| 11:34 | 21 | Milbank, Tweed, Hadley & McCloy.  Thank you, Your Honor, for |
| 11:34 | 22 | a few minutes. |
| 11:34 | 23 | I understand that Silver Point is not a technically |
| 11:34 | 24 | a party in interest; it's not presently a bidder -- |
| 11:34 | 25 | THE COURT:  No.  But Mr. Chaudhuri is intimately |

| | | |
|---|---|---|
| 11:34 | 1 | involved with both companies.  I know that you're two |
| 11:34 | 2 | separate companies.  It's still a windfall. |
| 11:34 | 3 | MR. RAVAL:  Not true. |
| 11:34 | 4 | THE COURT:  All right. |
| 11:34 | 5 | MR. RAVAL:  Which is why I wanted to speak to you. |
| 11:34 | 6 | Silver Point is a multi-strategy hedge fund |
| 11:34 | 7 | headquartered in Connecticut.  It has about $7 billion -- in |
| 11:35 | 8 | excess of $7 billion of assets under management.  It has no |
| 11:35 | 9 | relationship with Mr. Chaudhuri, other than a purely |
| 11:35 | 10 | economic one. |
| 11:35 | 11 | Silver Point started diligence-ing, purchasing |
| 11:35 | 12 | these loans last year, not knowing Mr. Chaudhuri, having |
| 11:35 | 13 | heard about IHHI, having heard about MedCap through their |
| 11:35 | 14 | various analyzes.  Silver Point approached Mr. Seamans *(sic)* |
| 11:35 | 15 | and the Receiver with an LOI, a letter of intent, for a |
| 11:35 | 16 | $50 million bid. |
| 11:35 | 17 | Silver Point, just so you know, is in the business |
| 11:35 | 18 | of buying distressed assets.  They buy distressed companies, |
| 11:35 | 19 | distressed loans, at deeply distressed levels, with the hope |
| 11:35 | 20 | that things improve, or they get some -- some other -- some |
| 11:35 | 21 | other sort of recovery whether it be through a bankruptcy or |
| 11:35 | 22 | other sort of insolvency process.  That $50 million LOI was |
| 11:35 | 23 | rejected as too low. |
| 11:36 | 24 | Silver Point then had a conversation with |
| 11:36 | 25 | Mr. Seaman, or his attorneys, stating that they would bid |

11:36  1  $58 million, no releases.

11:36  2          THE COURT:  What was unclear about the overbid

11:36  3  process?  What was unclear about my --

11:36  4          MR. RAVAL:  Your Honor, this -- this is --

11:36  5          THE COURT:  Do you fully understand the position

11:36  6  you put a Court in, in accepting a bid that is not what I

11:36  7  call nailed down, that doesn't come to fruition?  If it

11:36  8  falls through, it actually decreases the bids that the Court

11:36  9  will receive in the future because the person who made the

11:36  10  original bid saw that what I call that "fall through," they

11:36  11  don't offer $55 million again.  They offer 450 or 50-.  I'm

11:36  12  not gonna take that chance.  This is gonna be nailed down

11:36  13  today.

11:36  14          MR. RAVAL:  Your Honor, what I -- Silver Point's

11:36  15  bid of $58 million was rejected, as I understand it, in

11:36  16  favor of the $55 million bid that became --

11:36  17          THE COURT:  No.  Your process.

11:36  18          I would accept $58 million or $60 million.  But you

11:36  19  didn't put cash up in hand, Counsel.  I don't see a

11:37  20  cashier's check.

11:37  21          MR. RAVAL:  Your Honor, if I can explain a little

11:37  22  bit?

11:37  23          THE COURT:  Show me the money.

11:37  24          MR. RAVAL:  Your Honor, I -- if you like, I can

11:37  25  show you the money right now.

| | | |
|---|---|---|
| 11:37 | 1 | THE COURT:  Okay.  Everybody wants to see it.  All |
| 11:37 | 2 | counsel are clustering around here. |
| 11:37 | 3 | MR. RAVAL:  Your Honor, I'm not trying to make a |
| 11:37 | 4 | competing offer.  What I'm trying to explain is, "A," Silver |
| 11:37 | 5 | Point has nothing to do with Mr. Chaudhuri; Silver Point was |
| 11:37 | 6 | brought to the forefront of Mr. Chaudhuri's attention by a |
| 11:37 | 7 | third party, Corbin Capital. |
| 11:37 | 8 | Corbin Capital is -- |
| 11:37 | 9 | THE COURT:  I understand the business very well. |
| 11:37 | 10 | Venture capital.  I understand that. |
| 11:37 | 11 | Do you know of a company called Shamrock? |
| 11:37 | 12 | MR. RAVAL:  Yes. |
| 11:37 | 13 | THE COURT:  My son-in-law is there.  That's what |
| 11:37 | 14 | they do, Counsel.  So I know your business very, very well. |
| 11:37 | 15 | MR. RAVAL:  Your Honor, maybe I'm confusing you. |
| 11:37 | 16 | Silver -- first, as a matter of an insider getting |
| 11:37 | 17 | this, Silver Point, through -- will be funding principally |
| 11:37 | 18 | all of Mr. Chaudhuri's funding for this.  Okay?  There's |
| 11:37 | 19 | very little capital that he's expending.  Silver Point will |
| 11:38 | 20 | be the lender of record, the owner of these loans.  Silver |
| 11:38 | 21 | Point will grant a relatively small economic participation |
| 11:38 | 22 | in these loans to KPC. |
| 11:38 | 23 | The counter-party to IHHI on this loan will be |
| 11:38 | 24 | Silver Point.  Silver Point has no obligations to KPC to do |
| 11:38 | 25 | anything other than protect Silver Point's own interests. |

DEBBIE GALE, U.S. COURT REPORTER

| | | |
|---|---|---|
| 11:38 | 1 | So to say, Your Honor, that Silver Point is an insider or |
| 11:38 | 2 | somehow related to IHHI and Dr. Chaudhuri, as a factual |
| 11:38 | 3 | matter, is incorrect. |
| 11:38 | 4 | Why I went into the bids, Your Honor -- the bids |
| 11:38 | 5 | that Silver Point had made -- was not to suggest that Silver |
| 11:38 | 6 | Point wants to bid right now.  In deed, it has signed an |
| 11:38 | 7 | executed commitment letter with Dr. Chaudhuri's entity, KPC, |
| 11:38 | 8 | to be its funding source.  It's not going to be a separate |
| 11:38 | 9 | bidder. |
| 11:38 | 10 | What I's *(sic)* meaning to suggest, Your Honor, is |
| 11:38 | 11 | provide you with some market indications as to what Silver |
| 11:38 | 12 | Point -- which has been doing this business ten years -- |
| 11:38 | 13 | would value this independently. |
| 11:38 | 14 | You can also take into account that no one else has |
| 11:38 | 15 | shown up for this.  At some point there's an auction, and |
| 11:39 | 16 | you have to question whether or not it should be sold or |
| 11:39 | 17 | not. |
| 11:39 | 18 | THE COURT:  It's too low, Counsel. |
| 11:39 | 19 | MR. ROBINSON:  Your Honor, may I be heard? |
| 11:39 | 20 | THE COURT:  Yes. |
| 11:39 | 21 | **STATEMENT BY MR. ROBINSON** |
| 11:39 | 22 | MR. ROBINSON:  Again, David Robinson on behalf of |
| 11:39 | 23 | the hospitals, or the borrowers, Your Honor, or IHHI. |
| 11:39 | 24 | First of all, Your Honor, I wanted to clarify that |
| 11:39 | 25 | the amount that has been calculated is by the Receiver's own |

| | | |
|---|---|---|
| 11:39 | 1 | analysis.  And I'm referring to their reply to the prior |
| 11:39 | 2 | attempt to modify Your Honor's overbid procedures, which was |
| 11:39 | 3 | rejected. |
| 11:39 | 4 | It indicates that the amounts that Your Honor |
| 11:39 | 5 | recited in the record a little while ago are not accurate. |
| 11:39 | 6 | The actual amount that's outstanding on the 10.7 is a little |
| 11:39 | 7 | less than 6 million. |
| 11:39 | 8 | THE COURT:  Just a moment, Counsel. |
| 11:40 | 9 | MR. ROBINSON:  Yes, Your Honor. |
| 11:40 | 10 | THE COURT:  Just one minute. |
| 11:40 | 11 | On the 10.7 million, it's $5,968,268.02. |
| 11:40 | 12 | MR. ROBINSON:  Precisely, Your Honor. |
| 11:40 | 13 | THE COURT:  On the 35 million it's -- on the |
| 11:40 | 14 | 45 million LOC, it's $30,031,371.55. |
| 11:40 | 15 | MR. ROBINSON:  Precisely. |
| 11:40 | 16 | THE COURT:  On the 50 million LOC, it's |
| 11:40 | 17 | $7,353,287.29. |
| 11:40 | 18 | MR. ROBINSON:  And you'll notice that latter |
| 11:40 | 19 | number was not an addition but rather a subtraction. |
| 11:40 | 20 | THE COURT:  Right, right. |
| 11:40 | 21 | MR. ROBINSON:  And that's what I really wanted to |
| 11:40 | 22 | draw the Court's attention to. |
| 11:40 | 23 | THE COURT:  Right. |
| 11:40 | 24 | MR. ROBINSON:  That is a component of the 12.1 |
| 11:40 | 25 | that was over-swept or, frankly, embezzled by the defendants |

| | |
|---|---|
| 11:40 | 1 |
| 11:40 | 2 |
| 11:40 | 3 |
| 11:41 | 4 |
| 11:41 | 5 |

11:40   1   in this case.  That was taken out of my client's pocket.  At

11:40   2   the very same time, Your Honor -- and this is what I wanted

11:40   3   to make sure the Court understood -- the defendants' ceased

11:41   4   all funding of these hospitals.  The impact of that cannot

11:41   5   be understated.

11:41   6        It has -- in fact, Your Honor, the best

11:41   7   illustration of that is Judge Gregory Lewis, over in the

11:41   8   Orange County Superior Court, is waiting for our report

11:41   9   because some of the creditors who have in fact obtained

11:41   10  judgments for the debts that IHHI was not entitled -- or in

11:41   11  a position to pay, have obtained judgments and are seeking

11:41   12  writ of execution -- are seeking an immediate access to the

11:41   13  company's still very, very precarious funds.  The company is

11:41   14  on a precipice.  It is living, literally, day to day.  And

11:41   15  it is very much dependent upon a favorable resolution of

11:41   16  this matter.

11:41   17       The value of the release also, Your Honor, is not

11:41   18  simply the $12.1 million that was previously discussed.  And

11:41   19  that's another very, very important point.  The corollary

11:41   20  impact on the company's ability to pay its debt, the

11:41   21  interest expense, the mounted debt over time, as the

11:42   22  Receiver himself has stated in the same document -- and I'm

11:42   23  referring to Docket 178 in this Court's file, at page 6 --

11:42   24  according to the Receiver:

11:42   25            "Therefore, if IHHI prevailed in any

11:42  1              such litigation, the net loss to the

11:42  2              receivership estate could easily exceed

11:42  3              20 million."

11:42  4         And then the Receiver, in the same page, goes on to

11:42  5    say that the benefit -- the primary benefit of the KPC

11:42  6    offer -- which is why my client has joined in support of the

11:42  7    receivership's motion -- is that:

11:42  8              "The proposed sale provides for an

11:42  9              immediate all cash recovery of

11:42  10             55 million and a release by IHHI."

11:42  11        IHHI is -- and I don't know, Your Honor, and I do

11:42  12   apologize that we were only able to get it together and file

11:42  13   it with the Court late yesterday, because we only learned of

11:42  14   Prime's overbid, but the briefing that we attempted to

11:43  15   provide the Court was to show why IHHI is willing to provide

11:43  16   that release, because we are getting a great deal of

11:43  17   concession to, in fact, put at least another 7- to

11:43  18   $10 million into these four hospitals immediately.

11:43  19        We are, in fact, no longer gonna be put on the

11:43  20   precipice of loans which are at this moment due to expire in

11:43  21   six months.  We are given a three-year extension of that

11:43  22   maturity date.  In other words, this deal is, very simply, a

11:43  23   lifeline to those four hospitals.

11:43  24        So, in addition to the economic benefit, quite

11:43  25   frankly, there is no comparison about what's hanging in the

11:43   1   balance, as opposed to the difference between a $58 million

11:43   2   bid and a $55 million bid.

11:43   3            THE COURT:  Did you hear the message I sent?

11:43   4            What's the message that you just listened carefully

11:43   5   to me send?

11:43   6            MR. ROBINSON:  That it was not enough.

11:43   7            THE COURT:  Thank you.

11:43   8            MR. ROBINSON:  Thank you, Your Honor.

11:43   9            THE COURT:  It could be rectified very, very

11:44  10   quickly, Counsel.

11:44  11            MR. KLAUSNER:  Thank you.

11:44  12            THE COURT:  In other words, it could come out to

11:44  13   your favor, but not at 55 million.

11:44  14            MR. ROBINSON:  I understand, Your Honor.

11:44  15            MR. SARRAO:  Your Honor, Michael Sarrao for Prime

11:44  16   Healthcare.  One question.

11:44  17            We had bid 58 million.  I understand we didn't

11:44  18   comply with the order.  We're prepared to bid more.  We

11:44  19   contemplated there would be an auction process today.

11:44  20            Are you going to allow or proceed with an auction?

11:44  21            THE COURT:  I don't know yet.  I'm waiting to get

11:44  22   input back on that 55 million first.  I want to see if

11:44  23   they're really serious or if they're gonna freeze it at

11:44  24   55 million.  That'll answer my questions --

11:44  25            MR. SARRAO:  I just want to make clear:  We're

11:44  1    prepared to go above 58,000,000.

11:44  2         THE COURT:  Well, we'll see about that.  In other

11:44  3    words, if they come back in good faith, you may be out of

11:44  4    the ballpark today.  I don't know how else to say that.

11:44  5         In other words, if they come back in good faith, if

11:44  6    they've heard my message, and they get off that $55 million

11:44  7    and get to a reasonable amount, I may not allow you to go

11:44  8    into an overbid process.  This may not get competitive at

11:44  9    all.  In other words, I don't mind a small windfall going

11:44  10   back.

11:44  11        And it is a windfall, quite frankly, regardless how

11:44  12   counsel frames that.  But, therefore, I've got a resolution.

11:44  13   I've got it today.  You didn't follow my instructions.  But

11:45  14   not at $55 million.

11:45  15        And, apparently, no counsel have heard that so far,

11:45  16   so hopefully some wisdom will overtake counsel.

11:45  17        An I'll reconvene -- when, Counsel?  At what time?

11:45  18   What time?

11:45  19        3:00 o'clock.

11:45  20         MR. PIAZZA:  Your Honor, may I say one thing

11:45  21   quickly?

11:45  22         THE COURT:  3:00 o'clock.

11:45  23        Oh, I'm sorry.  I hadn't heard from you.  Counsel,

11:45  24   my apologies.  You hadn't spoken and I didn't see you.

       25

| | | |
|---|---|---|
| 11:45 | 1 | **STATEMENT BY MR. PIAZZA** |
| 11:45 | 2 | MR. PIAZZA:  I've been quiet.  Thank you.  Mike |
| 11:45 | 3 | Piazza for the individual defendants.  One point. |
| 11:45 | 4 | We're talking about the value of these assets, and |
| 11:45 | 5 | the Court is concerned about a windfall.  I've heard no |
| 11:45 | 6 | discussion and no factoring in of the value to the hospitals |
| 11:45 | 7 | that they'll receive this year for the bed tax, which we |
| 11:45 | 8 | estimate in the range of 40- to $46 million for their |
| 11:45 | 9 | treatment of Medi-Cal patients.  I think that should be |
| 11:45 | 10 | factored in and taken into account in terms of the value of |
| 11:45 | 11 | these assets. |
| 11:45 | 12 | THE COURT:  Thank you very much.  Very valuable |
| 11:45 | 13 | input. |
| 11:45 | 14 | Counsel? |
| 11:45 | 15 | MR. KLAUSNER:  One quick suggestion, Your Honor? |
| 11:45 | 16 | We may be able to work something out with the |
| 11:45 | 17 | receiver earlier than 3:00 o'clock. |
| 11:45 | 18 | THE COURT:  I'll go through lunch. |
| 11:46 | 19 | MR. KLAUSNER:  I was going to suggest we come back |
| 11:46 | 20 | at 12:30 or 1:00 o'clock. |
| 11:46 | 21 | THE COURT:  How about 1:00 o'clock? |
| 11:46 | 22 | MR. KLAUSNER:  We'll be back at 1:00 o'clock. |
| 11:46 | 23 | Thank you very much. |
| 11:46 | 24 | THE COURT:  Okay. |
| 11:46 | 25 | Now, Counsel, you wanted to speak? |

| | | |
|---|---|---|
| 11:46 | 1 | MR. RAVAL:  Your Honor, on behalf of Silver Point, |
| 11:46 | 2 | I apologize if I misspoke.  We weren't trying to get into an |
| 11:46 | 3 | overbid at this late juncture.  I just wanted to explain the |
| 11:46 | 4 | nature of the relationship. |
| 11:46 | 5 | THE COURT:  You know, I have to say this to KPC |
| 11:46 | 6 | and to Silver Point.  It's really in your hands.  You have |
| 11:46 | 7 | all the ability to rectify this quickly. |
| 11:47 | 8 | $55 million, no. |
| 11:47 | 9 | MR. RAVAL:  Your Honor, we completely understand. |
| 11:47 | 10 | THE COURT:  No. |
| 11:47 | 11 | MR. RAVAL:  We understand. |
| 11:47 | 12 | MR. KLAUSNER:  Thank you. |
| 11:47 | 13 | MR. SARRAO:  Your Honor, could we start at 1:30? |
| 11:47 | 14 | And we'll bring a cashier's check by 1:30. |
| 11:47 | 15 | THE COURT:  No.  I'll accept the fact that you'll |
| 11:47 | 16 | have a cashier's check for 56 million. |
| 11:47 | 17 | MR. SARRAO:  Okay.  Thank you. |
| 11:47 | 18 | THE COURT:  I don't know if I'm going to allow an |
| 11:47 | 19 | overbid, if they're reasonable from KPC's... |
| 11:47 | 20 | MR. SARRAO:  Thank you, Your Honor. |
| 11:47 | 21 | *(Lunch recess held at 11:47 a.m.)* |
| 11:48 | 22 | *(Further proceedings reported by Maria Dellaneve* |
| 11:48 | 23 | *in Volume II.)* |
| 11:48 | 24 | -oOo- |
| 11:48 | 25 | |

DEBBIE GALE, U.S. COURT REPORTER

-oOo-


CERTIFICATE


        I hereby certify that pursuant to Section 753,
Title 28, United States Code, the foregoing is a true and
correct transcript of the stenographically reported
proceedings held in the above-entitled matter and that the
transcript page format is in conformance with the
regulations of the Judicial Conference of the United States.


Date:  August 9, 2013



                              /s/ Debbie Gale
                        _____
                        DEBBIE GALE, U.S. COURT REPORTER
                        CSR NO. 9472, RPR, CCRR