William Michael Cunningham, PRO SE
5308 Ludlow Drive
Temple Hills, MD 20748
202-455-0430



UNITED STATES DISTRICT COURT FOR

THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:13-cv00779-DOC- JCG |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE** |
| vs. | Hearing Date: Ex Parte |
| MCGRAW-HILL COMPANIES, INC., | Time: N/A |
| and STANDARD & POOR'S | Judge: Hon. David O. Carter |
| FINANCIAL SERVICES, LLC, ET. | Courtroom: 9D, Santa Ana |
| AL., | |
| Defendant(s) | |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. Introduction**

This memorandum supports the Motion of William Michael Cunningham ("WMC"), a citizen of the United States of America, to intervene as a matter of right in an action that the U.S. Department of Justice, acting on behalf of the United States of America, (Plaintiff) has brought against McGraw-Hill Companies, Inc., and Standard & Poor's Financial Services LLC, et. al., ("Defendants") under 12 U.S.C. § 1833a; 18 U.S.C. §§ 1341, 1343 & 1344. In the alternative, WMC moves for permissive intervention pursuant to Federal Rule of Civil Procedure Rule 24(b) or for permission to submit a Brief Amicus Curiae in this matter. WMC also moves for a waiver from the Court of all defects in this filing.

1. William Michael Cunningham (WMC) respectfully submits this memorandum in support of his motion.
2. William Michael Cunningham registered with the U.S. Securities and Exchange Commission as an Investment Advisor on February 2, 1990. He registered with the D.C. Public Service Commission as an Investment Advisor on January 28, 1994.
3. WMC holds an MA in Economics and an MBA in Finance, both from the University of Chicago in Chicago, Illinois.
4. WMC manages an investment advisory and research firm, Creative Investment Research, Inc. The firm creates socially responsible investments, provides socially responsible investment advisory services, and sought designation as a Nationally Recognized Statistical Rating Organization ("NRSRO") in November, 1997 and in December, 2003. Defendant S&P is designated an NRSRO.
5. Over the past 30 years, WMC has sought to protect the public by working with Federal regulatory agencies, including the Federal Reserve Board (FRB), the Securities and Exchange Commission (SEC), the Federal Deposit Insurance Corporation (FDIC), the Financial Crisis Inquiry Commission (FCIC), the U.S. Department of Justice (DOJ), the Consumer Financial Protection Bureau (CFPB), the Federal Housing Finance Agency (FHFA), the Department of Commerce (Minority Business Development Agency) and the US Treasury, as an employee or as a contractor. Despite his education and experience, all offers to provide consulting services and all employment applications have been denied[1] (due to age, racial and class discrimination.) Further attempts to work with these institutions would be futile.

---

[1] He has submitted over three hundred unsolicited proposals, solicited proposals and employment applications. All have been rejected.

WMC's understanding of capital markets is based on firsthand knowledge obtained in a number of positions at a diverse set of major financial institutions. He served as Senior Sales Representative for Data Resources, Inc., a McGraw Hill company. He was Senior Investment Analyst for an insurance company. WMC was an Institutional Sales Representative in the Fixed Income and Futures and Options Group for a leading Wall Street firm. WMC also served as Director of Investor Relations for a New York Stock Exchange-traded firm. On November 16, 1995, he launched one of the first investment advisor websites.

WMC has long been concerned with the integrity of the securities markets:

- WMC designed one of the first mortgage security backed by home mortgage loans to low and moderate income persons and originated by minority-owned institutions. (See: *Security Backed Exclusively by Minority Loans*, The American Banker. Friday, December 2, 1994. Online at http://www.minoritybank.com/cirm24.html)

- On June 15, 2000, WMC testified before the House Financial Services Committee of the U.S. Congress on H.R. 3703, the Housing Finance Regulatory Improvement Act. He testified on ways to improve the supervision and regulation of government sponsored enterprises, Fannie Mae and Freddie Mac, or GSE's. See: http://www.creativeinvest.com/fnma/fnmapr16.html

- In 2001, WMC helped design a refinancing plan for victims of predatory lending that led to the creation of targeted community development investments. (See: http://www.socialfunds.com/news/article.cgi?sfArticleId=682)

- On December 22, 2003, statistical models created by WMC and using the Fully Adjusted Return ® Methodology signaled the probability of system-wide economic and market failure. (See page 6: http://www.sec.gov/rules/proposed/s71903/wmccir122203.pdf)

- On Monday, April 11, 2005, WMC testified before Judge William H. Pauley III in the U.S. District Court for the Southern District of New York on behalf of the public at a fairness hearing regarding the $1.4 billion dollar Global Research Analyst Settlement. See: http://www.creativeinvest.com/sri/fairness.html
- In 2005, WMC served as an expert witness for homeowners in a case against PMI Group, Credit Suisse First Boston, Moody's, Standard and Poor's, Fairbanks Capital Corporation, Select Portfolio Servicing, US Bank National Association, as Trustee of CSFB ABS Series 2002-HEI, et. al., in the New Jersey Superior Court Law Division - Monmouth County. His testimony sought to establish that the corporate parties listed above were in fact responsible for facilitating unfair and predatory lending practices.
- On December 22, 2005, WMC met with Ms. Elaine M. Hartmann of the Division of Market Regulation at the U.S. Securities and Exchange Commission. At that meeting, he issued a strongly worded warning that system-wide economic and market failure was a growing possibility.
- On February 6, 2006, statistical models WMC created using the Fully Adjusted Return ® Methodology confirmed that system-wide economic and market failure was a growing possibility. (See page 2: http://www.sec.gov/rules/proposed/s71005/wcunningham5867.pdf)
- On June 18, 2009, WMC testified before the House Ways and Means Select Revenue Measures Subcommittee at a joint hearing with the Subcommittee on Domestic Monetary Policy and Technology of the Financial Services Committee: Testimony on the New Markets Tax Credit Program. He suggested ways to improve the program. See: http://www.novoco.com/new_markets/resource_files/advocacy/cunningham_testimony_061809.pdf

- On Wednesday, January 13, 2010 and Monday, June 14, 2010, WMC wrote to Mr. Phil Angelides, Chairman, Financial Crisis Inquiry Commission, to submit testimony and comments to the Commission.
- On July 19, 2010, WMC testified on behalf of the public at the Joint Interagency Public CRA hearings: "The Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation and the Office of the Comptroller of the Currency jointly held public hearings on modernizing the regulations that implement the Community Reinvestment Act (CRA)." See: http://www.fdic.gov/CRAhearings/Individual_Presentations.pdf
- On January 25, 2012, WMC submitted a "Friend of the Court" brief in a case before the United States Court of Appeals for the Second Circuit (Case 11-5227). The case concerns the rejection, by a Federal Judge, of a settlement agreed to by the United States Securities & Exchange Commission (SEC) and Citigroup Global Markets Inc. (Citigroup), the latter accused of securities fraud. As a friend to the Court, Mr. Cunningham provides an independent, objective and unbiased view in support of broad public interests. His education and experience have uniquely positioned him to provide objective, independent research and opinions concerning the issues central to the case. The "Friend of the Court" brief concludes by noting that "markets have become less stable. Faulty regulatory practices and collusion have moved regulators and lawmakers..in the direction of supporting suppliers to the financial service marketplace. A decision by the (Appeals) Court in favor of the SEC and Citigroup will further strengthen this support, to the detriment of market institutions and the public. My economic models show the global economy remains at risk."

WMC has long been concerned with the "process of determining whose credit ratings should be used and the level of oversight to apply to such credit rating

agencies." In November, 1997 and, again in December, 2003, WMC wrote to the Division of Market Regulation at the Securities and Exchange Commission, on behalf of WMC and Creative Investment Research, Inc. (CIR) to request that CIR be considered a nationally recognized statistical rating organization ("NRSRO"). WMC requested this status only with respect to rating securities issued by financial institutions owned by women and minorities. WMC never received a reply from the Commission. ~~We have attached a copy of a letter sent to Ms. Nazareth, Director, Division of Market Regulation, Securities and Exchange Commission, as Appendix 1.~~

## II. INTEREST OF THE PROPOSED INTERVENOR

WMC's property interest in the case centers on the status of Defendant S&P as an NRSRO and rests on WMC's 1997 and 2003 applications to receive that status. Approved NRSRO applications are options giving one the right, but not the obligation, to issue and receive compensation for credit ratings on any financial instrument. It is the NRSRO designation that gives the Defendant's credit ratings authority. Indeed, without NRSRO status, the Defendant's ratings would have limited weight or meaning, since institutional security purchasers are *required* to consult NRSRO ratings[2] BY CUSTOM, LAW AND REGULATION. While NRSRO status gives ratings added value, by law[3] this designation is to be granted only in the public interest. Inadequate consideration of the public interest by both the Securities and Exchange Commission, the entity that grants NRSRO designation, and the U.S. Department of Justice, agent for the Plaintiff, has clearly damaged the public[4], investors and WMC, and also proves that the Plaintiff cannot adequately

---

[2] See: http://www.calpers.ca.gov/eip-docs/investments/policies/invo-risk-mang/sec-lend-monitor.pdf
[3] See: PUBLIC LAW 109-291—SEPT. 29, 2006 120 STAT. 1327.
[4] One cannot be legally responsible for protecting the public, have the public experience a *$17 trillion* dollar loss, bring action based, in part, on that loss, and claim to have competently protected the public interest. Further, a

represent WMC's interest. This justifies intervention as of right under Rule 24(a)(2).

Further, under current practices, Plaintiff United States of America's agent, the U.S. Department of Justice ("DOJ"), settles with corporate violators, and does not seek jail time in financial fraud cases involving large, nonminority corporations. This protects the monetary interest of a narrow set of non-minority persons, short circuits the justice process, fails to protect the interest of both the proposed intervener and the general public, does little to protect victims of other financial crimes, and damages the Country's long term economic prospects. It also eliminates any opportunity for interested parties to comment as Amicus Curiae, since these settlements are rarely reviewed by an Appeals Court. This strategy also leads to recidivism, as noted in WMC's brief.

Were Plaintiff DOJ to pursue the charges at issue in this case in a manner that protects the public, they would request an immediate suspension of Defendant S&P's NRSRO status. If the case is successful, Defendant S&P will be required to forfeit NRSRO status, at least temporarily. If the case is unsuccessful the damage to the public caused by the Defendant's actions remains, and justifies the marketplace requiring Defendant S&P to forfeit NRSRO status, at least temporarily. Thus, the legal right, granted by the Plaintiff, to call oneself an NRSRO is at the center of this case but Plaintiff has not requested even a temporary suspension. This implies that NRSRO status is not likely to be revoked, given the Plaintiff's faulty prosecution strategy. This lowers the probability that WMC will be able to exercise his NRSRO option, thereby damaging his interest.

---

statistical review of Plaintiff DOJ prosecution data shows that were Defendants owned and managed by African American males, it is far more likely, statistically, that DOJ would pursue jail time for management.

If the Defendant is required to suspend or forfeit NRSRO status, not only would there be room for an additional NRSRO, but the renewed commitment to the rule of law on the part of the Plaintiff this signals would increase the probability that WMC will be able to exercise an NRSRO option, given his work on marketplace ethics. This work increases the value of WMC's NRSRO option. WMC is in a higher probability position to exercise an NRSRO option than most, given his specific and unique knowledge and experience with the NRSRO designation process, and given his background and education.

WMC's interest in this matter stems from his role as a holder of an NRSRO option, his background as an economist and his status as a citizen of the United States. He has no financial connection to any of the parties in this case: no one contributed money to fund preparing or submitting the brief.

This leaves Mr. Cunningham no option but to appeal to this Court in order to have his interest and his independent, objective technical knowledge and experience given proper consideration.

### III. Argument

Rule 24(a)(2) governs motions for intervention as of right. The Rule provides:

On timely motion, the court must permit anyone to intervene who ... claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). Under this Circuit's precedent, an applicant must be granted leave to intervene if (1) it has an interest in the action; (2) the action potentially impairs that interest; (3) the applicant is not adequately represented by existing parties to the action; and (4) the motion to intervene is timely. See Karsner

v. Lothian, 532 F.3d 876, 885 (D.C. Cir. 2008); Fund for Animals, Inc. v. Norton, 322 F.3d 728, 731 (D.C. Cir. 2003). In addition, a movant seeking leave to intervene under Rule 24(a)(2) must have standing under Article III of the Constitution. See, e.g., Bldg. & Constr. Trades Dep't v. Reich, 40 F.3d 1275, 1282 (D.C. Cir. 1994).

WMC meets each of these requirements. His experience as current or potential holder of an NRSRO option gives him a concrete interest in this case sufficient to satisfy both Article III and Rule 24(a)(2); given the incompetent prosecution strategy pursued by the Plaintiff, that interest may be impaired by this action; the Agent for the only existing Plaintiff, a compromised and racially biased government agency, cannot adequately represent WMC's interest as an African American who is a current or potential holder of an NRSRO option; and the application for intervention is timely. WMC is therefore entitled to intervene as of right under Rule 24(a)(2).

**Conclusion**

For the reasons above, I respectfully submit that the Court should grant leave to file the proposed brief.

Respectfully submitted,

Dated this 30th day of September, 2013

By: _____

William Michael Cunningham, PRO SE
5308 Ludlow Drive
Temple Hills, MD 20748
202-455-0430