KEKER & VAN NEST LLP
JOHN KEKER (SBN 49092)
jkeker@kvn.com
ELLIOT R. PETERS (SBN 158708)
epeters@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:   415 397 7188

CAHILL GORDON & REINDEL LLP
FLOYD ABRAMS
fabrams@cahill.com
S. PENNY WINDLE
pwindle@cahill.com
80 Pine Street
New York, New York  10005-1702
Telephone: 212 701 3000
Facsimile: 212 269 5420

KELLER RACKAUCKAS LLP
JENNIFER L. KELLER (SBN 84412)
keller@kruzlaw.com
18300 Von Karman Avenue, Suite 930
Irvine, CA 92612
Telephone: 949 476 8700
Facsimile: 949 476 0900

Attorneys for Defendants MCGRAW-HILL COMPANIES, INC., and
STANDARD & POOR'S FINANCIAL SERVICES LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MCGRAW-HILL COMPANIES, INC.<br>and STANDARD & POOR'S<br>FINANCIAL SERVICES LLC,<br><br>Defendants. | Case No. CV13-779 DOC (JCGx)<br><br>**DEFENDANTS' OPPOSITION TO MOTION TO INTERVENE OF WILLIAM MICHAEL CUNNINGHAM, PRO SE** |

786247.01

## I.   Introduction

*Pro se* would-be intervenor William Michael Cunningham seeks to intervene in this case despite the fact that he has no knowledge of the facts underlying the Government's allegations, has no particularized relationship with the parties or the issues in dispute, and has no stake in the outcome.  On the contrary, Mr. Cunningham apparently seeks to intervene so that he might offer his views on credit rating agencies in general, and because ten years ago he applied for—and was denied—status as a Nationally Recognized Statistical Rating Organization ("NRSRO").  But the fact that an individual has views relating to case does not entitle that individual to intervene.  Intervention here would distract from the issues in dispute, would further complicate an already complicated case, and would serve no cognizable interest.

## II.   Factual Background

The facts underlying this case have been set forth in numerous pleadings and papers; only a summary review of the facts pertinent to this opposition will be recited here.

### A.   The Lawsuit

The Department of Justice filed its Complaint in this matter on February 4, 2013.  *See* Docket No. 1.  The Complaint alleges four claims for relief under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA").  *See* 12 U.S.C. § 1833a.  Pursuant to the Court's Initial Scheduling Order, the Government is currently engaged in discovery designed to narrow the scope of its case by identifying the particular RMBS and CDOs and affected financial institutions that will serve as the basis for the Government's proof at trial. The Court has ordered the Government to serve S&P with a supplemental disclosure by November 18, 2013, identifying such RMBS, CDOs, financial institutions, and the allegedly associated losses.

1

786247.01

### B.     Proposed-Intervenor William Michael Cunningham

S&P first learned of Mr. Cunningham's desire to intervene in this matter via an email sent on September 30, 2013.  The email requested that the parties inform Mr. Cunningham whether they would oppose his motion.  The email further provided five attachments, including both a Notice of Motion and a purported Ex Parte Application.  S&P informed Mr. Cunningham it opposed the motion.  S&P has received no further substantive communications from Mr. Cunningham.

S&P received notice that Mr. Cunningham had filed a motion to intervene via the Court's ECF system on October 16, 2013.  *See* Docket No. 63-67.  As the Court is aware, Mr. Cunningham's filing contained errors resulting in a Notice of Document Discrepancies, and on October 11, the Court permitted the documents to be filed as of the date the documents were received by the Clerk.  *See* Docket No. 62.  Notice of the filing was distributed via ECF on October 16, 2013.  The filed papers appear to indicate that the motion would be heard on an *ex parte* basis, but also indicate elsewhere that a hearing might be set.

Mr. Cunningham identifies himself as a manager of an investment advisory and research firm.  Mem. at 2 (Docket No. 64).  Mr. Cunningham is neither an employee of S&P nor the Government.  He represents that he has submitted over three hundred proposals to provide consulting services and employment applications to government regulatory agencies and institutions, and "[a]ll have been rejected."  *Id.* at 2 n.1.

In 1997 and 2003, Mr. Cunningham wrote to the SEC and requested that his investment advisory and research firm be granted NRSRO status "only with respect to rating securities issued by financial institutions owned by women and minorities."  Mem. at 6 (Docket No. 64).  He "never received a reply from the Commission."  *Id.*  Mr. Cunningham apparently believes that this denial of NRSRO status ten years ago entitles him to intervene in this matter.

786247.01

## III.   Argument

Federal Rule of Civil Procedure 24 provides standards for both intervention as-of-right and permissive intervention.  In this case, neither mandatory nor permissive intervention is appropriate.

### A.   Mr. Cunningham is not entitled to intervention as of right.

In the absence of a statutory right to intervene (which Mr. Cunningham does not and cannot identify), a proposed intervenor as of right must show that

> (1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest.

*Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (internal quotation marks and citation omitted).  Moreover, "an applicant seeking to intervene has the burden to show that these four elements are met." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).  Mr. Cunningham has not and cannot satisfy this high burden.

### 1.   The Motion to Intervene is not timely.

"Timeliness is the threshold requirement for intervention." *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990).  "If the court finds that the motion to intervene was not timely, it need not reach any of the remaining elements of Rule 24." *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996).  As noted above, the Complaint in this action was filed on February 4, 2013.  Without explanation or justification, Mr. Cunningham has waited more than eight months to file his motion to intervene.  The parties have already engaged in preliminary discovery and the Government's supplemental identification of securities is due in less than a month.  Intervention at this stage would risk further delaying progress in this case, which counsels against intervention. *See Montana Wilderness*, 647 F.3d

3

at 897 (identifying "disruption or delay in the proceedings" as evidence of an untimely motion).  Even if Mr. Cunningham were able to identify grounds justifying his right to intervene—which he cannot—his motion is untimely and should be denied on that basis alone.

### 2. Mr. Cunningham has no protectable interest in the subject matter of this action.

A would-be intervenor must show a "significant protectable interest" in the action in order to intervene as of right. *Donnelley v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) (internal quotation marks and citation omitted).   The Ninth Circuit has explained that an applicant "has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *Id.* "An applicant generally satisfies the 'relationship' requirement only if the resolution of the plaintiff's claims actually will affect the applicant." *Id.* at 410.

Here, Mr. Cunningham asserts that he has a "property interest in the case" that "rests on [his] 1997 and 2003 applications to receive [NRSRO] status." Mem. at 6 (Docket No. 64).  While the factual basis of his pleadings are unclear, Mr. Cunningham apparently also believes that the fact that the Government "has not requested even a temporary suspension" of S&P's NRSRO status is somehow relevant to his 1997 and 2003 NRSRO applications. *Id.* at 7.  He suggests that because S&P's "NRSRO status is not likely to be revoked," the Government's requested relief correspondingly "lowers the probability that [Mr. Cunningham] will be able to exercise his NRSRO option, thereby damaging his interest." *Id.* The remainder of Mr. Cunningham's submission, however, reflects that he has no "NRSRO" option. *Id.* at 6.  Mr. Cunningham has no pending NRSRO application and has not submitted such an application since 2003.  Moreover, even if Mr. Cunningham did have an active application outstanding, there is no basis to believe (and Mr. Cunningham certainly provides none) that S&P's status as an NRSRO

4

1 | somehow "lowers the probability" that Mr. Cunningham will secure NRSRO

2 | status. The Ninth Circuit has explained that where an intervenor's "interest is

3 | several degrees removed from . . . the backbone of [the] litigation," intervention is

4 | inappropriate. *United States v. Alisal Water Corp.*, 370 F.3d 915, 920 (9th Cir.

5 | 2004). Mr. Cunningham's interests are more than just "several degrees removed;"

6 | he has no such interests.

### 3. The outcome of this case will not "impair or impede" Mr. Cunningham's interests in any way.

Even if Mr. Cunningham's interest in operating an NRSRO was sufficiently related to this case, his assertion that suspension or revocation of S&P's NRSRO status would make "room for an additional NRSRO[s]" is factually incorrect. As an initial matter, the Securities and Exchange Commission ("SEC"), which regulates NRSROS and oversees the NRSRO application process, is not even a party to this case. Further, there are no limits on how many entities may be recognized as NRSROs, and there is no basis to conclude (and Mr. Cunningham offers none) that any result in this case would affect any application he has made to be accorded that status or that he might make in the future. The most recent of his applications appears to have been made in 2003, before any time period of relevance to this case, and S&P is aware of no such application pending at this time. And in any event, Mr. Cunningham's desire to gain a particular regulatory status has nothing to do with anything in this case. This is a fraud case, brought by the Department of Justice against a single NRSRO. Mr. Cunningham has no knowledge of the facts or circumstances relating to the Government's allegations, and his apparent desire to operate an NRSRO is irrelevant.

As the Ninth Circuit has observed, where a would-be intervenor has "other means by which [it] may protect its interest," intervention is not appropriate. *Alisal Water Corp.*, 370 F.3d at 921. SEC regulations provide an application process for entities wishing to become NRSROs. Whether Mr. Cunningham's

business satisfies those regulations is in no way at issue in this case.  Thus, this lawsuit is not the proper forum to adjudicate the fate of Mr. Cunningham's ratings business.

### 4. The Federal Government is presumed to adequately represent the interests of U.S. citizens.

"Where the government is acting on behalf of a constituency it represents, as it is here, this court assumes that the government will adequately represent that constituency.  In order to overcome this presumption, the would-be intervenor must make a very compelling showing that the government will not adequately represent its interest." *Gonzales v. Arizona*, 485 F.3d 1041, 1052 (9th Cir. 2007) (internal quotation marks and citations omitted).  Moreover, "[u]nder well-settled precedent in this circuit, where an applicant for intervention and an existing party have the same *ultimate objective*, a presumption of adequacy of representation arises." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th Cir. 1997) (emphasis added) (internal quotation marks and citation omitted).

Mr. Cunningham's conclusory assertion that the Department of Justice cannot adequately protect his interests—if any—in this case falls far below the "very compelling showing" required to support intervention.  As a practical matter, this Court cannot permit intervention by all individuals who disagree with particular aspects of the Government's case.

### B. Mr. Cunningham is not entitled to permissive intervention.

Rule 24 provides for permissive intervention where the proposed intervenor either (1) "is given a conditional right to intervene by a federal statute," or (2) "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. Proc. 24(b)(1).  Rule 24 further directs the Court to "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  As for the first ground, Mr. Cunningham has failed to identify any statute that grants him a conditional right to intervene.  FIRREA itself

OPPOSITION TO MOTION TO INTERVENE OF WILLIAM MICHAEL CUNNINGHAM, PRO SE
CASE NO.  CV13-779 DOC (JCGx)

786247.01

1  does not contemplate the intervention of private citizens in an action brought by

2  the Attorney General.

3       As for the second ground, Mr. Cunningham similarly fails to show that he

4  has a "claim or defense that shares with the main action a common question of law

5  or fact." As noted above, the Government's case alleges that ratings made by S&P

6  with regard to an as-yet undefined set of securities were fraudulent. As S&P has

7  previously informed the Court, the evidence will show that S&P's ratings were all

8  offered in good faith, were analytically sound in light of the information available

9  at the time, and were in no way fraudulent. The Government disagrees. Whether

10  S&P or the Government will prevail on these issues has nothing to do with whether

11  Mr. Cunningham should be operating an NRSRO.

12       The Ninth Circuit has also held that "judicial economy is a relevant

13  consideration in deciding a motion for permissive intervention." *Venegas v.*

14  *Skaggs*, 867 F.2d 527, 531 (9th Cir. 1989). While it is unclear exactly what issues

15  Mr. Cunningham intends to raise in this matter, given the absence of any

16  substantial overlap of facts or legal issues, it is unavoidable that the orderly

17  progress of this already complicated case will be threatened by the inclusion of an

18  intervenor.

19  **IV.   Conclusion**

20       Mr. Cunningham's *pro se* motion to intervene should be denied because he

21  has failed to meet the standard for either intervention as of right or permissive

22  intervention. Given that Mr. Cunningham's desire to operate an NRSRO has no

23  bearing on any of the facts or issues at stake in this case, he comes before this

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

7

786247.01

1 | Court seeking to intervene based on nothing more than his views on ratings
2 | agencies.  As a practical matter this Court cannot permit any individual so inclined
3 | to intervene in this matter.
4 |
5 | Dated:      October 18, 2013                KEKER & VAN NEST LLP
6 |
7 |
8 | By: /s/ *John W. Keker*
     John W. Keker
9 |
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

OPPOSITION TO MOTION TO INTERVENE OF WILLIAM MICHAEL CUNNINGHAM, PRO SE
CASE NO.  CV13-779 DOC (JCGx)

786247.01