William Michael Cunningham, PRO SE
5308 Ludlow Drive
Temple Hills, MD 20748
202-455-0430



### UNITED STATES DISTRICT COURT FOR

### THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> MCGRAW-HILL COMPANIES, INC., and STANDARD & POOR'S FINANCIAL SERVICES, LLC, Et. Al., <br><br> Defendant(s) | Case No.: 2:13-cv00779-DOC- JCG <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO FILE A BRIEF AMICUS CURIAE** <br><br> Hearing Date: <br> Time: <br> Judge: Hon. David O. Carter <br> Courtroom: 9D, Santa Ana |

### MEMORANDUM OF POINTS AND AUTHORITIES

### I. Introduction

This memorandum supports the Motion of William Michael Cunningham ("WMC"), an economist and citizen of the United States of America, to submit a Brief Amicus Curiae in an action that the U.S. Department of Justice, acting on behalf of the United States of America (Plaintiff), has brought against McGraw-Hill Companies, Inc., and Standard & Poor's Financial Services LLC, et. al., ("Defendants") under 12 U.S.C. § 1833a; 18 U.S.C. §§ 1341, 1343 & 1344. WMC also moves for a waiver from the Court of all defects in this filing.

## II. Interest of the Proposed Amicus

### Background

William Michael Cunningham registered with the U.S. Securities and Exchange Commission as an Investment Advisor on February 2, 1990. He registered with the D.C. Public Service Commission as an Investment Advisor on January 28, 1994. WMC holds an MA in Economics and an MBA in Finance, both from the University of Chicago in Chicago, Illinois.

WMC is an economist who manages an investment advisory and research firm, Creative Investment Research, Inc. He creates socially responsible investments, provides socially responsible investment advisory services, and sought designation as a Nationally Recognized Statistical Rating Organization ("NRSRO") in November, 1997 and in December, 2003. Defendant S&P is designated an NRSRO.

WMC's understanding of capital markets is based on firsthand knowledge obtained in a number of positions at a diverse set of major financial institutions. He served as Senior Sales Representative for Data Resources, Inc., a McGraw Hill company. He was Senior Investment Analyst for an insurance company. WMC was an Institutional Sales Representative in the Fixed Income and Futures and Options Group for a leading Wall Street firm. WMC also served as Director of Investor Relations for a New York Stock Exchange-traded firm. On November 16, 1995, he launched one of the first investment advisor websites. WMC has long been concerned with the integrity of the securities markets:

- On July 3, 1993, WMC wrote to SEC Commissioner Mary Schapiro to notify the Commission about a certain, specific investing "scam." A timely warning was not issued to the investing public, members of the public were

damaged, and the SEC launched retaliatory regulatory actions *against Mr. Cunningham.*

- WMC designed the first mortgage security backed by home mortgage loans to low and moderate income persons and originated by minority-owned institutions. (See: *Security Backed Exclusively by Minority Loans*, The American Banker. Friday, December 2, 1994 at http://www.minoritybank.com/cirm24.html)

- In October, 1995, the Washington Gas Light (WGL) Company retained WMC to create mortgage-backed securities (MBS) consisting of one to four family residential home loans originated by minority-owned financial institutions serving areas of high social need in the WGL service territory. Mr. Cunningham developed a completely original approach to the analysis of the MBS market that involved geocoding and mapping, for the first time, the location of every loan in an MBS pool and tying that location to social data. A sample map WMC created in 1997 for this process is attached as Appendix A. He brought his idea to Countrywide Home Mortgage Loans, who proved to be a firm of questionable ethics. In addition to violating copyright and confidentiality agreements concerning this proprietary MBS product and process, Countrywide attempted to overcharge for several of these pools. Mr. Cunningham was able to reduce the price by 6/32nds, benefiting WGL. Countrywide went on to use WMC's processes, without permission, to create predatory lending practices.

- On April 30, 1997, in Case 97-1256 at the US Court of Appeals for the DC Circuit, Mr. Cunningham opposed the merger of Citigroup and Travelers and the elimination of the Glass–Steagall Act.[1]

---

[1] United States Court of Appeals FOR THE DISTRICT OF COLUMBIA CIRCUIT. No. 97-1256 William Michael Cunningham, APPELLANT v. Board of Governors of the Federal Reserve System, Appellee. Decided April 30, 1997.

- On June 15, 2000, WMC testified before the House Financial Services Committee of the U.S. Congress on H.R. 3703, the Housing Finance Regulatory Improvement Act on ways to improve the supervision and regulation of government sponsored enterprises, Fannie Mae and Freddie Mac. See: http://www.creativeinvest.com/fnma/fnmapr16.html
- In 2001, WMC designed a refinancing plan for victims of predatory lending. (See: http://www.socialfunds.com/news/article.cgi?sfArticleId=682)
- On December 22, 2003 and February 6, 2006, statistical models created by WMC using the Fully Adjusted Return ® Methodology signaled the probability of system-wide economic and market failure. (See page 6: http://www.sec.gov/rules/proposed/s71903/wmccir122203.pdf and page 2: http://www.sec.gov/rules/proposed/s71005/wcunningham5867.pdf)
- On Monday, April 11, 2005, WMC testified before Judge William H. Pauley III in the U.S. District Court for the Southern District of New York on behalf of the public at a fairness hearing regarding the $1.4 billion dollar Global Research Analyst Settlement. See: http://www.creativeinvest.com/sri/fairness.html
- In 2005, WMC served as an expert witness for homeowners in a case against PMI Group, Credit Suisse First Boston, Moody's, Standard and Poor's, Fairbanks Capital Corporation, Select Portfolio Servicing, US Bank National Association, as Trustee of CSFB ABS Series 2002-HEI, et. al., in the New Jersey Superior Court Law Division - Monmouth County. His testimony established that the corporate parties listed above, including the defendant, were in fact responsible for facilitating unfair and predatory lending practices.
- On December 22, 2005, WMC issued a strongly worded warning that system-wide economic and market failure was a growing possibility in a meeting with Ms. Elaine M. Hartmann of the Division of Market Regulation at the SEC.

- On June 18, 2009, WMC testified before the House Ways and Means Select Revenue Measures Subcommittee at a joint hearing with the Subcommittee on Domestic Monetary Policy and Technology of the Financial Services Committee concerning ways to improve the New Markets Tax Credit Program. See: http://www.novoco.com/new_markets/resource_files/advocacy/cunningham_testimony_061809.pdf
- On July 19, 2010, WMC testified on behalf of the public at the Joint Interagency Public CRA hearings. See: http://www.fdic.gov/CRAhearings/Individual_Presentations.pdf
- On January 25, 2012, WMC submitted a "Friend of the Court" brief in a case before the United States Court of Appeals for the Second Circuit (Case 11-5227). As a friend to the Court, Mr. Cunningham provides an independent, objective and unbiased view in support of broad public interests. His education and experience have uniquely positioned him to provide objective, independent research and opinions concerning the issues central to the case.

WMC has long been concerned with the "process of determining whose credit ratings should be used and the level of oversight to apply to such credit rating agencies." In November, 1997 and, again in December, 2003, WMC wrote to the Division of Market Regulation at the Securities and Exchange Commission, on behalf of WMC and Creative Investment Research, Inc. (CIR) to request that CIR be considered a nationally recognized statistical rating organization ("NRSRO"). WMC requested this status only with respect to rating securities issued by financial institutions owned by women and minorities. WMC never received a reply from the Commission. We have attached a copy of a letter sent to Ms. Nazareth, Director, Division of Market Regulation, Securities and Exchange Commission, as Appendix 1.

As this record shows, over the past 30 years, WMC has sought to protect the public by working with Federal regulatory agencies, including the Federal Reserve Board (FRB), the Securities and Exchange Commission (SEC), the Federal Deposit Insurance Corporation (FDIC), the Financial Crisis Inquiry Commission (FCIC), the U.S. Department of Justice (DOJ), the Consumer Financial Protection Bureau (CFPB), the Federal Housing Finance Agency (FHFA), the Department of Commerce (Minority Business Development Agency) and the US Treasury, as an employee or as a contractor. Despite his education and experience, all offers to provide consulting services and all employment applications have been denied[2] (due to age, racial and class discrimination.) Further attempts to work with these institutions would be futile.[3] This leaves Mr. Cunningham no option but to appeal to this Court in order to have his interest and his independent, objective technical knowledge and experience given consideration. Mr. Cunningham's interest in this matter stems from his role as an economist and an expert in marketplace ethics and rests upon his status as a citizen of the United States.[4]

WMC's interest also stems from the status of Defendant S&P as an NRSRO. It is the NRSRO designation that gives the Defendant's credit ratings authority. Indeed, without NRSRO status, the Defendant's ratings would have limited weight or meaning, since institutional security purchasers are *required* to consult NRSRO

---

[2] He has submitted over three hundred unsolicited proposals, solicited proposals and employment applications. All have been rejected.

[3] Mr. Cunningham invokes the Futile Gesture (McDonnell Douglas) Doctrine. He 1.) is a member of a protected class. 2). he applied for and was qualified for NRSRO status. 3.) he was rejected despite his qualifications and 4.) as this case shows, other less competent applicants received the designation after Mr. Cunningham was rejected. See: Dominguez-Curry v. Nevada Transp. Dept., 424 F.3rd 1027, 1037 (9th Cir. 2005)

[4] In its' November 7th Order Denying Motion to Intervene, this Court concluded that Mr. Cunningham "appears to be an engaged citizen…" and even questioned this. Mr. Cunningham's broad experience working with a wide range of financial institutions, his 1997 economic forecast showing that ethical problems would give rise to systemwide financial damage, his testimonies before the U.S. Congress, his testimonies in Federal Court and his education were not cited. One wonders if a white economist with similar education and experience would be considered merely "an engaged citizen." Unfortunately, there are no economists, of any race, with Mr. Cunningham's track record, so a direct comparison is not possible.

ratings[5] *BY CUSTOM, LAW AND REGULATION*. While NRSRO status gives ratings added value, by law[6] this designation is to be granted only in the public interest. Significant barriers to entry exist, as noted by the Congress of the United States in the Credit Rating Agency Reform Act of 2006.[7] As Mr. Cunningham shows in his brief, given the industry's monopoly-like structure, inadequate consideration of the public interest by both the Securities and Exchange Commission, the entity that grants NRSRO designation, and the U.S. Department of Justice, agent for the Plaintiff, has clearly damaged the public[8] and investors. Under current practices, Plaintiff United States of America's agent, the U.S. Department of Justice ("DOJ"), settles with corporate violators, and does not seek jail time in financial fraud cases involving large, nonminority corporations. This protects the monetary interest of a narrow set of non-minority persons, short circuits the justice process, fails to protect the interest of both the proposed intervener and the general public, does little to protect victims of other financial crimes, and damages the Country's long term economic prospects. It also eliminates any opportunity for interested parties to comment as Amicus Curiae, since these settlements are rarely reviewed by an Appeals Court. This strategy also leads to recidivism.

Were Plaintiff DOJ to pursue the charges at issue in this case in a manner that protects the public, they would request an immediate suspension of Defendant S&P's NRSRO status. The legal right, granted by the Plaintiff, to call oneself an

---

[5] See: http://www.calpers.ca.gov/eip-docs/investments/policies/invo-risk-mang/sec-lend-monitor.pdf
[6] See: PUBLIC LAW 109–291—SEPT. 29, 2006 120 STAT. 1327.
[7] See Pub.L. 109-291: "the 2 largest credit rating agencies serve the vast majority of the market, and additional competition is in the public interest.."
[8] One cannot be legally responsible for protecting the public, have the public experience a *$19 trillion* dollar loss, bring action based, in part, on that loss, and claim to have competently protected the public interest. Further, a statistical review of Plaintiff DOJ prosecution data shows that were Defendants owned and managed by African American males, it is far more likely, statistically, that DOJ would pursue jail time for management.

NRSRO is at the center of this case but Plaintiff has not requested even a temporary suspension. The NRSRO industry is organized as an oligopoly.[9] If the Defendant is required to suspend or forfeit NRSRO status, not only would there be room for additional NRSRO's but the renewed commitment to competition on the part of the Plaintiff this signals would lower the probability that another financial crisis will occur. The public would be better protected.

Finally, the Agent for the only existing Plaintiff, is a compromised and racially biased government agency, cannot adequately represent the interests of African Americans in this matter. Mr. Cunningham is an African American. Plaintiff will not make arguments that link market and NRSRO practices to racial bias nor will it make arguments concerning the justification for removing NRSRO registration based on the legal requirement that an NRSRO have the ability "to operate independently of economic pressures or control.." These are "necessary element(s) to the proceedings that will be neglected" without this brief.[10]

WMC has no financial connection to any of the parties in this case: no one contributed money to fund preparing or submitting the brief.

### III. Argument

As noted by Charles R. Nesson, William F. Weld Professor of Law at Harvard Law School and Director of the Berkman Center for Internet & Society in a motion to support the filing of an amicus curiae brief in Case No.: 00 Civ. 0277 (LAK): "'Federal courts have discretion to permit participation of amici where such participation will not prejudice any party and may be of assistance to the court.'

---

[9] The industry is an oligopoly, characterized by higher than normal prices and profits, lower quality and quantity of output. Significant barriers to entry also exist, as shown by both Mr. Cunningham's experience and by the 2012 SUMMARY REPORT OF COMMISSION STAFF'S EXAMINATIONS OF EACH NATIONALLY RECOGNIZED STATISTICAL RATING ORGANIZATION. Report of the Staff of the U.S. Securities and Exchange Commission. November 2012.

[10] See: *Racial Bias in Securitization and Community Lending* http://twisri.blogspot.com/2009/08/wells-fargo-sued-for-racially-biased.html

Strougo v. Scudder, Stevens & Clark, Inc., 1997 WL 473566 (S.D.N.Y. Aug. 18, 1997) (citing Vulcan Society of New York City Fire Dep't, Inc. v. Civil Service Comm'n, 490 F.2d 387, 391 (2d Cir. 1973)). See also: Zell/Merrill Lynch Real Estate Opportunity Partners Limited Partnership III v. Rockefeller Center Properties, Inc., 1996 WL 120672 (S.D.N.Y. March 19, 1996) (granting amicus leave to appear and argue, citing cases 'uniform in support of a district court's broad discretion to permit or deny amici appearances'); United States v. Gotti, 755 F.Supp. 1157, 1158 (E.D.N.Y 1991) (amici can 'provide supplementary assistance to existing counsel and insur[e]a complete and plenary presentation of difficult issues so that the court may reach a proper decision')."

## Conclusion

Under current corporate prosecution practices, Plaintiff U.S. Department of Justice ("DOJ") limits any opportunity for interested parties to appear as Amicus Curiae, since settlements are rarely reviewed by an Appeals Court.

For the reasons above, I respectfully submit that the Court should grant leave to file the proposed brief amicus curiae.

Dated: December 6, 2013

Respectfully submitted,

/S/

/William Michael Cunningham/ Pro Se

Economist and Social Investing Advisor

5308 Ludlow Drive

Temple Hills, MD 20748

(866) 867-3795

**APPENDIX A**



# APPENDIX 1

Monday, December 22, 2003

Ms. Annette L. Nazareth
Director, Division of Market Regulation
Securities and Exchange Commission
450 Fifth Street, N.W.
Washington, DC 20549

Re: Creative Investment Research, Inc.

Dear Ms. Nazareth:

We submit this letter on behalf of Creative Investment Research, Inc. (CIR) to request that the firm be considered a nationally recognized statistical rating organization ("NRSRO") for purposes of paragraphs (c)(2)(vi)(E), (F), and (H) of Rule 15c3-1 under the Securities Exchange Act of 1934 (17 CFR Sec. 240.15c3-1). We request this status only with respect to rating financial institutions owned by women and minorities.

In support of this request, we refer you and your staff to information we have provided establishing that the firm:

1. Is known in the United States as an issuer of ratings of minority-owned financial institutions;

2. Has the financial resources and staffing to guarantee that it can issue reliable evaluations of the financial and social performance of minority-owned financial institutions. (As recent events have shown, we suggest the ability "to operate independently of economic pressures or control by the companies it rates" is moot. We are a fully independent firm.)

3. Uses a proprietary rating procedure, the Fully Adjusted Return$^{TM}$ Methodolgy, a system designed to ensure reliable and truthful evaluations;

4. Has senior level access at minority-owned financial institutions; and

5. "Has and enforces internal procedures to prevent misuse of non-public information."

In light of the foregoing, we respectfully ask you to grant CIR the NRSRO status requested.

If you need additional information, please contact me.

Thank you,


William Michael Cunningham
Social Investing Adviser