# Exhibit 1

(Cardona Declaration)

Bernard M. Hollander
Daniel R. Hunter
Aaron B. Kahn
Department of Justice, Antitrust Division
1444 U. S. Court House
Los Angeles, California 90012
Telephone: 688:2500

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Civil Action No. 72-821-LTL |
| Plaintiff, ) | |
| v. ) | Filed: April 14, 1972 |
| AMERICAN BROADCASTING ) | (Equitable Relief |
| COMPANIES, INC., ) | Complaint for Viola- |
| Defendant. ) | tion of Sections 1 & 2 |
| ) | of the Sherman Act |

## COMPLAINT

The United States of America, by its attorneys, acting under the direction of the Attorney General of the United States, brings this action against the defendant named herein and complains and alleges as follows:

I.

### JURISDICTION AND VENUE

1. This complaint is filed and this action is instituted under Section 4 of the Act of Congress of July 2, 1890, c. 647, 26 Stat. 209 (15 U.S.C. §4), as amended, commonly known as the Sherman Act, in order to prevent and restrain the continuing violation by the defendant, as hereinafter alleged, of Sections 1 and 2 of said Act (15 U.S.C. §§ 1, 2).

2. The defendant, American Broadcasting Companies, Inc., whose West Coast Studios and offices are in Los Angeles,

California, transacts business within the Central District of California.

## II
## DEFINITIONS

3. As used herein:

(a) "Affiliate" means a television station which has an affiliation agreement with American Broadcasting Companies, Inc., pursuant to which it receives television programs and advertising messages for broadcast, and receives compensation for the use of its time and facilities.

(b) "Prime evening hours" are the hours from 6:00 p.m. to 11:00 p.m. in the Eastern time zone of the United States.

(c) "Television entertainment programs" means all programs shown on television other than news, public affairs, documentary, or sports programs.

(d) "Outside program supplier" means a producer or supplier of television entertainment programs other than a television network.

## III
## DEFENDANT

4. American Broadcasting Companies, Inc. (hereinafter ABC) is hereby named as defendant. ABC is a corporation organized and existing under the laws of the State of New York. ABC owns and operates commercial television stations in five of the nation's leading television markets (New York City, Los Angeles, Chicago, Detroit and San Francisco). ABC is engaged, among other things, in the operation of the ABC Television

2

Network, which furnishes television programs and related advertising messages to approximately 150 affiliates located throughout the United States and to the television stations which are owned and operated by ABC. ABC remits part of the revenues it receives from advertisers to its affiliates. ABC itself produces some of the programs broadcast on its television network. ABC also owns various financial interests in programs produced by others and broadcast on its television network.

5. Although ABC is primarily engaged in television and radio network broadcasting, it is also engaged in the following activities, among others:

    (a) Production of motion picture feature films, through its wholly owned subsidiary, ABC Pictures Corporation and through ABC Circle Films, a new division or subsidiary organized in 1970;

    (b) Motion picture exhibition through the largest motion picture theater chain in the United States, comprised of about 418 theaters in 31 states owned by ABC subsidiaries;

    (c) Manufacture, distribution and sale of phonograph records through its wholly owned subsidiary, ABC Records, Inc.

## IV

### TRADE AND COMMERCE

#### A. Interstate Commerce

6. Television programs and related advertising messages, filmed and live, are conveyed by program suppliers and networks across State lines to television stations throughout the United States, from which stations said programs are transmitted across State lines to viewers. A continuous stream of interstate commerce and the use of interstate means of communication results

therefrom, including the collection and payment of fees, voluminous written and frequent verbal communications, and substantial amounts of advertising copy, recordings, transcriptions, films, contracts and checks.

7. Commercial television programs are created and produced by television networks, outside program suppliers, television stations, and by motion picture studios, which supply feature films and other programs for television broadcast. In 1969, the three nationwide commercial television networks (ABC, Columbia Broadcasting System (CBS) and National Broadcasting Company (NBC)) spent more than $840,000,000 for television programs, of which ABC spent more than $275,000,000. In 1969, total television broadcasting revenues for the aforementioned three networks were in excess of $1,510,000,000, of which ABC received more than $410,000,000.

B. Television Programming

8. There are approximately 696 television stations in the United States which broadcast commercial television programs. Of these, about 150 stations have network affiliation agreements with ABC. During prime evening hours, when television viewing is at its peak, most of these stations depend upon ABC for virtually all of their television programming. A television program cannot reach the audiences of such stations during prime evening hours unless it is transmitted by ABC over the ABC Television Network.

9. The value of any television program to its producer, and to an advertiser whose message is broadcast in conjunction with it, depends in large part on the number of television viewers who see the program and observe the commercial messages. The largest television audiences in the United States are readily available only to those producers whose programs are carried by the ABC, CBS or NBC television networks, and to those advertisers

4

whose commercial messages are broadcast during said programs, and the right to broadcast such programs and commercial messages on any of these three television networks can be purchased only from them.

10. Many advertisers formerly were able to purchase air time from networks (including ABC) and to purchase television entertainment programs from outside program suppliers for broadcast during such air time. Such advertisers constituted a substantial market for outside program suppliers. Now, however, the networks (including ABC) generally will not offer to sell air time to advertisers except for their commercial messages which are broadcast in conjunction with television entertainment programs already selected and placed in schedules by the networks. As a result, the three nationwide commercial television networks (ABC, CBS, and NBC) constitute the primary market for television entertainment programs.

11. Most of the prime time television entertainment programs broadcast on the ABC Television Network are programs which have either been produced by ABC itself or with respect to which ABC owns a right or interest in addition to a license to broadcast. In 1957, such programs constituted about 31 per cent of the television entertainment programs broadcast on the ABC Television Network during prime time evening hours. By 1967, this figure had increased to 86 per cent, or 93 per cent if feature films are excluded.

12. The commercial value of a television entertainment program is not exhausted by its first network showing. Frequently thereafter a program is distributed to individual television stations in the United States for non-network broadcast. In addition, it may be distributed to foreign television stations while it is appearing over a domestic television network. The distribution of a television program to individual stations for

5

non-network broadcast is known as syndication. ABC has obtained syndication, and other valuable subsidiary program rights, as well as a share of the profits produced by such rights, with respect to a substantial number of television entertainment programs produced by others and broadcast on the ABC Television Network.

13. The use of motion picture feature films as prime time television entertainment programs has shown a marked increase in recent years. In the early nineteen sixties, the three nationwide commercial television networks began using feature films in prime time. By the 1967-1968 season, each network carried motion picture feature films on two nights a week, generally from 9:00 to 11:00 p.m. EST, and feature films were thus available to television network audiences six nights a week. This practice has continued through the 1968-1969 and 1969-1970 seasons.

14. In August 1967, ABC announced plans to produce feature-length motion picture films and to distribute those films for exhibition in motion picture theaters and for exhibition on the ABC Television Network. In effectuation of these plans:

    (a) ABC has, through ABC Circle Films, and ABC Pictures Corporation, been engaged in the production of feature films;

    (b) ABC allocated an estimated $30,000,000 as its 1967 budget for the production of feature films;

    (c) ABC has contracted with numerous individuals experienced in the production of, the creation of, and acting in, feature films;

    (d) ABC has produced more than 25 feature films;

    (e) ABC has entered into a distribution contract with Cinerama, Inc., producer and distributor

6

of feature films, whose principal stock-
holder also owns and controls one of the
largest chains of motion picture theaters
in the United States, for exclusive dis-
tribution in the United States of most
theatrical motion picture films produced
by ABC.

In 1967, CBS also announced plans to produce feature-length motion picture films and to distribute those films for exhibition in motion picture theaters and for exhibition on the CBS Television Network. In 1966, NBC contracted with MCA, Inc., for the production of motion picture feature films for exhibition on the NBC Television Network.

15. The successful production of both television entertainment programs and feature films depends to a large degree on the utilization of skilled writers, actors, directors, producers and related talent. Only the three nationwide commercial television networks can assure such talent both television and theatrical exposure for the talent and its product. In addition, because of their control over access to their affiliates, the networks are in a unique position to assure themselves of nationwide television network revenues for feature films which they produce, after those films have completed theatrical runs.

V

OFFENSES CHARGED

16. For many years prior to the date hereof and continuing up to and including the date of filing of this complaint, defendant ABC has engaged in a combination with its owned and operated television stations, ABC Circle Films, ABC Pictures Corporation, the ABC affiliates, Cinerama, Inc., and others, and has entered into contracts, in unreasonable restraint of trade and commerce

7

in television entertainment programs exhibited on the ABC Television Network during prime evening hours, in violation of Section 1 of the Sherman Act.

17. For many years prior to the date hereof and continuing up to and including the date of filing of this complaint, defendant ABC has engaged in a combination with its owned and operated television stations, ABC Circle Films, ABC Pictures Corporation, the ABC affiliates, Cinerama, Inc., and others to monopolize, has attempted to monopolize and has monopolized the trade and commerce in television entertainment programs exhibited on the ABC Television Network during prime evening hours, in violation of Section 2 of the Sherman Act.

18. Pursuant to said offenses, defendant ABC:

(a) has used its control over access to the broadcasting time of the ABC Television Network during prime evening hours;

    (i) To exclude television entertainment programs in which ABC has no ownership interest from broadcast on the ABC Television Network during prime evening time;

    (ii) To compel outside program suppliers to grant to it financial interests in television entertainment programs produced by them;

    (iii) To refuse to offer program time alone to advertisers and other outside program suppliers;

    (iv) To control the prices paid by ABC for television exhibition rights to motion picture feature films

      distributed by non-network motion picture distributors;

  (v) To obtain a competitive advantage over other producers and distributors of television entertainment programs and of motion picture feature films; and

(b) has entered into a contract with Cinerama, Inc., for exclusive distribution in the United States of most theatrical motion picture films produced by ABC.

19. The offenses alleged in this complaint are continuing and will continue unless the relief hereinafter prayed for is granted.

## VI

### EFFECTS

20. The effects of the aforesaid offenses, among others, have been and are as follows:

(a) Ownership and control of television entertainment programs broadcast during prime evening hours on the ABC Television Network has been concentrated in defendant ABC;

(b) Competition in the production, distribution and sale of television entertainment programs, including feature films, has been unreasonably restrained;

(c) Competition in the sale of television entertainment programs to the ABC Television Network by outside program suppliers of said programs has been unreasonably restrained;

(d) The viewing public has been deprived of the benefits of free and open competition in the

broadcasting of television entertainment programs.

## PRAYER

WHEREFORE, the plaintiff prays:

1. That the offenses described in paragraph 16 of this complaint be adjudged and decreed to be in violation of Section 1 of the Sherman Act.

2. That the offenses described in paragraph 17 of this complaint be adjudged and decreed to be in violation of Section 2 of the Sherman Act.

3. That the defendant ABC be prohibited from obtaining any interest (except for the first-run right of exhibition) in television entertainment programs produced by others, including feature films.

4. That the defendant ABC be prohibited from engaging in syndication of any television entertainment programs.

5. That the defendant ABC be prohibited from transmitting for exhibition over the ABC Television Network any television entertainment programs, including feature films, produced by the defendant ABC or any other commercial television network, and from allowing any television entertainment programs produced by ABC to be transmitted over any other commercial television network.

6. That the defendant ABC be prohibited from using its control of access to the broadcasting time of the ABC Television Network, the ABC owned and operated television stations or the ABC affiliates, to foreclose competition or obtain an unfair competitive advantage in any other field.

7. That the plaintiff have such other relief by way of divorcement, divestiture, reorganization and injunction with respect to the business and properties of the defendant ABC as the Court may consider necessary or appropriate to dissipate the effects of the defendant's unlawful activities as hereinbefore alleged in this complaint, and to restore competitive conditions to the television entertainment program industry.

8. That plaintiff have such other and further relief as the nature of the case may require and the Court may deem just and proper.

9. That the plaintiff recover the costs of this action.

_____
RICHARD G. KLEINDIENST
Acting Attorney General

_____
WALKER B. COMEGYS
Acting Assistant Attorney General

_____
BADDIA J. RASHID

_____
JAMES J. COYLE
Attorneys, Department of Justice

_____
GERALD A. CONNELL
Attorney, Department of Justice

_____
BERNARD M. HOLLANDER
Attorney, Department of Justice

_____
DANIEL R. HUNTER

_____
AARON B. KAHN
Attorneys, Department of Justice