# Exhibit 2

(Cardona Declaration)

Bernard M. Hollander
Daniel R. Hunter
Aaron B. Kahn
Department of Justice, Antitrust Division
1444 U.S. Court House
Los Angeles, California 90012
Telephone: 688-2500

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Civil Action No. _____ |
| Plaintiff, | ) |
| | ) Filed: April 14, 1972 |
| v. | ) |
| | ) (Equitable Relief. |
| COLUMBIA BROADCASTING SYSTEM, INC. | ) Complaint for Viola- |
| and | ) tion of Sections 1 & |
| VIACOM INTERNATIONAL, INC., | ) 2 of the Sherman Act) |
| Defendants. | ) |

## COMPLAINT

The United States of America, by its attorneys, acting under the direction of the Attorney General of the United States, brings this action against the defendants named herein and complains and alleges as follows:

I

JURISDICTION AND VENUE

1. This complaint is filed and this action is instituted under Section 4 of the Act of Congress of July 2, 1890, c. 647, 26 Stat. 209 (15 U.S.C. §4), as amended, commonly known as the Sherman Act, in order to prevent and restrain the continuing violation by the defendants, as hereinafter alleged, of Sections 1 and 2 of said Act (15 U.S.C. §§1, 2).

2. The defendant, Columbia Broadcasting System, Inc., whose West Coast studios and offices are in Los Angeles, California, transacts business within the Central District of

California.

3. The defendant, Viacom International, Inc., transacts business within the Central District of California.

## II
## DEFINITIONS

4. As used herein:

    (a) "Affiliate" means a television station which has an affiliation agreement with Columbia Broadcasting System, Inc., pursuant to which it receives television programs and advertising messages for broadcast, and receives compensation for the use of its time and facilities.

    (b) "Prime evening hours" are the hours from 6:00 p.m. to 11:00 p.m. in the Eastern time zone of the United States.

    (c) "Television entertainment programs" means all programs shown on television other than news, public affairs, documentary, or sports programs.

    (d) "Outside program supplier" means a producer or supplier of television entertainment programs other than a television network.

## III
## DEFENDANTS

5. Columbia Broadcasting System, Inc. (hereinafter CBS) is hereby named as a defendant. CBS is a corporation organized and existing under the laws of the State of New York. CBS owns and operates commercial television stations in five of the nation's leading television markets (New York City, Los Angeles, Chicago, Philadelphia and St. Louis).

2

1  CBS is engaged, among other things, in the operation of the
2  CBS Television Network, which furnishes television programs
3  and related advertising messages to approximately 200
4  affiliates located throughout the United States and to the
5  television stations which are owned and operated by CBS.
6  CBS remits part of the revenues it receives from advertisers
7  to its affiliates. CBS itself produces some of the programs
8  broadcast on its television network. CBS also owns various
9  financial interests in programs produced by others and
10 broadcast on its television network.
11      6. Although CBS is primarily engaged in television
12 and radio network broadcasting, it is also engaged in
13 the following activities, among others:
14          (a) Production of motion picture feature films,
15              through Cinema Center Films, a division of
16              CBS established in March 1967;
17          (b) Manufacture, distribution and sale of
18              phonograph records through CBS Records,
19              a division of CBS, the largest producer,
20              manufacturer and distributor of phonograph
21              records in the United States;
22          (c) Publishing through Holt, Rinehart and Winston,
23              Inc., a wholly-owned subsidiary;
24     7. Viacom International, Inc. (hereinafter referred to
25 as Viacom) is hereby named as a defendant. Viacom is a
26 corporation organized and existing under the laws of the
27 State of Delaware. It is engaged, among other things, in
28 operating the former television program syndication business
29 of CBS and the CATV systems formerly owned by CBS. Viacom
30 generated revenues in excess of $19,000,000 in 1970. Viacom
31 was created by distributing Viacom shares to the shareholders
32 of CBS. At the time of its formation Viacom was substantially

owned by the same stockholders as the defendant CBS.

## IV

## TRADE AND COMMERCE

### A. Interstate Commerce

8. Television programs and related advertising messages, filmed and live, are conveyed by program suppliers and networks across State lines to television stations throughout the United States, from which stations said programs are transmitted across State lines to viewers. A continuous stream of interstate commerce and the use of interstate means of communication results therefrom, including the collection and payment of fees, voluminous written and frequent verbal communications, and substantial amounts of advertising copy, recordings, transcriptions, films, contracts and checks.

9. Commercial television programs are created and produced by television networks, outside program suppliers, television stations, and by motion picture studios, which supply feature films and other programs for television broadcast. In 1969, the three nationwide commercial television networks (CBS, National Broadcasting Company (NBC) and American Broadcasting Companies (ABC)) spent more than $840,000,000 for television programs, of which CBS spent more than $250,000,000. In 1969, total television broadcasting revenues for the aforementioned three networks were in excess of $1,510,000,000, of which CBS received more than $520,000,000.

### B. Television Programming

10. There are approximately 696 television stations in the United States which broadcast commercial television programs. Of these, about 200 stations have network affiliation agreements with CBS. During prime evening hours, when television viewing is at its peak, most of these stations

4

depend upon CBS for virtually all of their television programming. A television program cannot reach the audiences of such stations during prime evening hours unless it is transmitted by CBS over the CBS Television Network.

11. The value of any television program to its producer, and to an advertiser whose message is broadcast in conjunction with it, depends in large part on the number of television viewers who see the program and observe the commercial messages. The largest television audiences in the United States are readily available only to those producers whose programs are carried by the CBS, NBC or ABC television networks, and to those advertisers whose commercial messages are broadcast during said programs, and the right to broadcast such programs and commercial messages on any of these three television networks can be purchased only from them.

12. Many advertisers formerly were able to purchase air time from networks (including CBS) and to purchase television entertainment programs from outside program suppliers for broadcast during such air time. Such advertisers constituted a substantial market for outside program suppliers. Now, however, the networks (including CBS) generally will not offer to sell air time to advertisers except for their commercial messages which are broadcast in conjunction with television entertainment programs already selected and placed in schedules by the networks. As a result, the three nationwide commercial television networks (CBS, NBC, and ABC) constitute the primary market for television entertainment programs.

13. Most of the prime time television entertainment programs broadcast on the CBS Television Network are programs which have either been produced by CBS itself or with respect

5

to which CBS obtained a right or interest in addition to a license to broadcast. In 1957, such programs constituted about 49 percent of the television entertainment programs broadcast on the CBS Television Network during prime time evening hours. By 1967, this figure had increased to 68 percent, or 73 percent if feature films are excluded.

14. The commercial value of a television entertainment program is not exhausted by its first network showing. Frequently thereafter a program is distributed to individual television stations in the United States for non-network broadcast. In addition, it may be distributed to foreign television stations while it is appearing over a domestic television network. The distribution of a television program to individual stations for non-network broadcast is known as syndication. CBS has obtained syndication, and other valuable subsidiary program rights, as well as a share of the profits produced by such rights, with respect to a substantial number of television entertainment programs produced by others and broadcast on the CBS Television Network.

15. The use of motion picture feature films as prime time television entertainment programs has shown a marked increase in recent years. In the early nineteen sixties, the three nationwide commercial television networks began using feature films in prime time. By the 1967-1968 season, each network carried motion picture feature films on two nights a week, generally from 9:00 to 11:00 p.m. EST, and feature films were thus available to television network audiences six nights a week. This practice has continued through the 1968-1969 and 1969-1970 seasons.

16. In March 1967, CBS announced plans to produce feature-length motion picture films and to distribute those films for exhibition in motion picture theaters and

for exhibition on the CBS Television Network. In effectuation of these plans:

  (a) CBS has formed a new division, Cinema Center Films (initially, CBS Theatrical Films, Inc.), to engage in the production of feature films;

  (b) CBS allocated an estimated $60,000,000 as its first year budget for the production of feature films;

  (c) CBS has contracted with numerous individuals experienced in the production of, the creation of, and acting in, feature films;

  (d) CBS has acquired from Republic Corporation a 70-acre film center (studios and facilities lot) in North Hollywood, California, for $9,500,000;

  (e) CBS has produced more than 20 feature films;

  (f) CBS has entered into a six year distribution contract with National General Corporation (National General), a producer and distributor of feature films and owner and operator of the second largest chain of motion picture theaters in the United States, for exclusive distribution in the United States of all theatrical motion picture films produced by CBS.

In 1967, ABC also announced plans to produce feature-length motion picture films and to distribute those films for exhibition in motion picture theaters and for exhibition on the ABC Television Network. In 1966, NBC contracted with MCA, Inc., for the production of motion picture feature films for exhibition on the NBC Television Network.

  17. The successful production of both television

entertainment programs and feature films depends to a large degree on the utilization of skilled writers, actors, directors, producers and related talent. Only the three nationwide commercial television networks can assure such talent both television and theatrical exposure for the talent and its product. In addition, because of their control over access to their affiliates, the networks are in a unique position to assure themselves of nationwide television network revenues for feature films which they produce after those films have completed theatrical runs.

## V
## OFFENSES CHARGED

18. For many years prior to the date hereof and continuing up to and including the date of filing of this complaint, defendant CBS has engaged in a combination with its owned and operated television stations, defendant Viacom, the CBS affiliates, National General Corporation and others, and has entered into contracts, in unreasonable restraint of trade and commerce in television entertainment programs exhibited on the CBS Television Network during prime evening hours, in violation of Section 1 of the Sherman Act.

19. For many years prior to the date hereof and continuing up to and including the date of filing of this complaint, defendant CBS has engaged in a combination with its owned and operated television stations, defendant Viacom, the CBS affiliates, National General Corporation and others to monopolize, has attempted to monopolize and has monopolized the trade and commerce in television entertainment programs exhibited on the CBS Television Network during prime evening hours, in violation of Section 2 of the Sherman Act.

20. Pursuant to said offenses, defendant CBS:

    (a) has used its control over access to the broadcasting

8

time of the CBS Television Network during prime evening hours:

 (i) To exclude television entertainment programs in which CBS has no ownership interest from broadcast on the CBS Television Network during prime evening time;

 (ii) To compel outside program suppliers to grant to it financial interests in television entertainment programs produced by them;

 (iii) To refuse to offer program time alone to advertisers and other outside program suppliers;

 (iv) To control the prices paid by CBS for television exhibition rights to motion picture feature films distributed by non-network motion picture distributors;

 (v) To obtain a competitive advantage over other producers and distributors of television entertainment programs and of motion picture feature films; and

(b) has entered into a contract with National General, the owner and operator of the second largest chain of theaters in the United States, for exclusive distribution in the United States of all theatrical motion picture films produced by CBS.

21. The offenses alleged in this complaint are continuing and will continue unless the relief hereinafter prayed for is granted.

## VI

## EFFECTS

22. The effects of the aforesaid offenses, among others, have been and are as follows:

9

(a) Ownership and control of television entertainment programs broadcast during prime evening hours on the CBS Television Network has been concentrated in defendant CBS;

(b) Competition in the production, distribution and sale of television entertainment programs, including feature films, has been unreasonably restrained;

(c) Competition in the sale of television entertainment programs to the CBS Television Network by outside program suppliers of said programs has been unreasonably restrained;

(d) The viewing public has been deprived of the benefits of free and open competition in the broadcasting of television entertainment programs.

## PRAYER

WHEREFORE, the plaintiff prays:

1. That the offenses described in paragraph 18 of this complaint be adjudged and decreed to be in violation of Section 1 of the Sherman Act.

2. That the offenses described in paragraph 19 of this complaint be adjudged and decreed to be in violation of Section 2 of the Sherman Act.

3. That the defendant CBS be prohibited from obtaining any interest (except for the first-run right of exhibition) in television entertainment programs produced by others, including feature films.

4. That the defendant CBS be prohibited from engaging in syndication of any television entertainment programs.

5. That the defendant CBS be prohibited from transmitting for exhibition over the CBS Television Network any

television entertainment programs, including feature films, produced by the defendant CBS or any other commercial television network, and from allowing any television entertainment programs produced by CBS to be transmitted over any other commercial television network.

6. That the defendant CBS be prohibited from using its control of access to the broadcasting time of the CBS Television Network, the CBS owned and operated television stations or the CBS affiliates, to foreclose competition or obtain an unfair competitive advantage in any other field.

7. That the plaintiff have such other relief by way of divorcement, divestiture, reorganization and injunction with respect to the business and properties of the defendants CBS and Viacom as the Court may consider necessary or appropriate to dissipate the effects of the defendants' unlawful activities as hereinbefore alleged in this complaint, and to restore competitive conditions to the television entertainment program industry.

8. That plaintiff have such other and further relief as the nature of the case may require and the Court may deem just and proper.

9. That the plaintiff recover the costs of this action.

_____
RICHARD G. KLEINDIENST
Acting Attorney General

_____
WALKER B. COMEGYS
Acting Assistant Attorney General

_____
BADDIA J. RASHID

_____
JAMES J. COYLE
Attorneys, Department of Justice

_____
GERALD A. CONNELL
Attorney, Department of Justice

_____
BERNARD M. HOLLANDER
Attorney, Department of Justice

_____
DANIEL R. HUNTER

_____
AARON B. KAHN
Attorneys, Department of Justice