# Exhibit 9

(Cardona Declaration)

Reproduced from the holdings of the National Archives at Riverside

1

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

— — —

HONORABLE ROBERT J. KELLEHER, JUDGE PRESIDING

— — —

| | |
|---|---|
| UNITED STATES OF AMERICA,　　　　　) | |
| 　　　　　　　Plaintiff,　　) | |
| 　　　　　　　　　　　　　) | Civil Action |
| 　　vs.　　　　　　　) | |
| 　　　　　　　　　　　　　) | No. 72-819-RJK |
| NATIONAL BROADCASTING COMPANY, INC.,　) | |
| 　　　　　　　Defendant.　　) | |
| | |
| UNITED STATES OF AMERICA,　　　　　) | |
| 　　　　　　　Plaintiff,　　) | |
| 　　　　　　　　　　　　　) | Civil Action |
| 　　vs.　　　　　　　) | |
| 　　　　　　　　　　　　　) | No. 72-820-RJK |
| COLUMBIA BROADCASTING SYSTEM, INC.,　) | |
| 　　　　　　　Defendant.　　) | |
| | |
| UNITED STATES OF AMERICA,　　　　　) | |
| 　　　　　　　Plaintiff,　　) | |
| 　　　　　　　　　　　　　) | Civil Action |
| 　　vs.　　　　　　　) | |
| 　　　　　　　　　　　　　) | |
| AMERICAN BROADCASTING COMPANIES, INC., ) | No. 72-821-RJK |
| 　　　　　　　Defendant.　　) | |

— — —

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

　　　　　　　　　　　　Tuesday, November 12, 1974

FILED

NOV 2 5 1980

CLERK, U. S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

　　　　　　EDWARD NEWLANDER
　　　　　　Official Reporter
　　　　442-C United States Court House
　　　　Los Angeles, California　90012
　　　　　　Telephone 622-3232

— — —

Reproduced from the holdings of the National Archives at Riverside

2

1    APPEARANCES:

2      In behalf of plaintiff:    BERNARD M. HOLLANDER

3                                 HARRY G. SKLARSKY

                                   BARRY J. KAPLAN

4                                 JAMES A. GILBERT

                                    Antitrust Division

5                                    Department of Justice

                                    1444 U. S. Court House

6                                    Los Angeles, California 90012

7      In behalf of defendant NBC:  SCHNADER HARRISON SEGAL & LEWIS

                                   by:  JEROME J. SHESTACK

8                                        PETER S. GREENBERG

                                   1719 Packard Building

9                                   Philadelphia, Pennsylvania 19102

                                      and

10                                GIBSON DUNN & CRUTCHER

                                 by:   JOHN J. HANSON

11                              515 South Flower Street

                                Los Angeles, California 90071

12                                 and

13                          CORYDON  B. DUNHAM

                          30 Rockefeller Plaza

14                          New York, New York 10029

15      In behalf of defendant CBS:  CRAVATH SWAINE & MOORE

                                 by:  ROBERT S. RIFKIND

16                                      DOUGLAS D. BROADWATER

                                   STEVEN M. EDWARDS

17                                HOWARD W. GOLDSTEIN

                                 One Chase Manhattan Plaza

18                              New York, New York 10005

                                 and

19                          O'MELVENY & MYERS

                              by: ROBERT S. DRAPER

20                        611 West Sixth Street

                        Los Angeles, California 90017

21                             and

                        JOHN A. APPEL

22                        51 West 52nd Street

                        New York, New York 10019

23

24

25

Reproduced from the holdings of the *National Archives at Riverside*

3

1    APPEARANCES (Cont'd):

2      In behalf of defendant ABC:    BERGSON BORKLAND MARGOLIS & ADLER

3                                                     by: HERBERT A. BERGSON

                                                       JAMES R. LOFTIS, III

4                                                        ROBERT W. DeVOS, JR.

                                               21 Dupont Circle, N.W.

5                                                Washington, D.C. 20036

                                                     and

6                                                LILLICK McHOSE WHEAT ADAMS

                                               & CHARLES

7                                                by: DAVID B. TOY

                                               611 West Sixth Street

8                                                Los Angeles, California 90017

9                                        - - -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Reproduced from the holdings of the *National Archives at Riverside*

4

1  LOS ANGELES, CALIFORNIA; TUESDAY, NOVEMBER 12, 1974; 10:00 A.M.

2                    - - -

3        THE CLERK:  Item 2 on the calendar.  Civil-72-819-RJK,

4  Civil-72-820-RJK and Civil-72-821, United States of America

5  vs. NBC, CBS and ABC.

6        THE COURT:  I take it, Gentlemen, that you have

7  already noted with the clerk the appearances of counsel,

8  and that has been indicated to the court.

9        Perhaps as the court reads the appearances as they

10  are here noted you would respectively stand.

11        Mr. Hollander.

12        MR. HOLLANDER:  Yes, your Honor.

13        THE COURT:  Mr. Sklarsky.

14        Very well.

15        And Mr. Kaplan.

16        Mr. Gilbert also - all for the government.

17        In behalf of defendant NBC: Mr. Shestack.

18        MR. SHESTACK:  Good morning, your Honor.

19        THE COURT:  And Peter S. Greenberg.

20        And John J. Hanson.

21        MR. HANSON:  Here, your Honor.

22        THE COURT:  And Mr. Corydon Dunham.

23        MR. DUNHAM:  Good morning, your Honor.

24        THE COURT:  For the defendant CBS:  Mr. Rifkind.

25        MR. RIFKIND:  Your Honor.

Reproduced from the holdings of the National Archives at Riverside

1     THE COURT:  Mr. Douglas Broadwater.

2     MR. BROADWATER:  Yes, your Honor.

3     THE COURT:  And Mr. Steven M. Edwards.

4     Mr. Howard Goldstein.

5     MR. GOLDSTEIN:  Good morning, your Honor.

6     THE COURT:  Also Robert S. Draper.

7     MR. DRAPER:  Good morning, your Honor.

8     THE COURT:  John A. Appel.

9     MR. APPEL:  Your Honor.

10    THE COURT:  In behalf of defendant ABC:  Mr. Herbert

11    Bergson.

12    MR. BERGSON:  Your Honor.

13    THE COURT:  Mr. James R. Loftis.

14    MR. LOFTIS:  Good morning, your Honor.

15    THE COURT:  Mr. Robert DeVos.

16    MR. DE VOS:  Good morning, your Honor.

17    THE COURT:  And David B. Toy.

18    MR. TOY:  Good morning, your Honor.

19    THE COURT:  From the numbers of those participating

20    perhaps it is just as well we went over from yesterday until

21    today.  The courtroom was about this crowded, and you would

22    have perhaps overcrowded it.

23    There are motions to dismiss on the calendar for

24    hearing, filed on behalf of each defendant.

25    The court has read all that has been submitted

Reproduced from the holdings of the National Archives at Riverside

1   in writing in support of and in opposition to those respective

2   motions, and also everything submitted in writing in opposition

3   thereto.

4          There has also been lodged with the court this

5   morning a purported or proposed copy of an order of Judge

6   Richey in the United States District Court for the District

7   of Columbia, which has reference to a prior order of restraint

8   issued by him, purporting to modify that prior restraining

9   order in accordance with the terms of a certain agreement

10   that was entered into between the special prosecutor, Mr.

11   Nixon through his attorney, and other persons purporting

12   to act on behalf of the government, all of which had to do

13   with the general subject of what could, should and would

14   be done with respect to various documents and materials and

15   things which were apparently claimed as to title by the former

16   President and which apparently were reposed in the White

17   House or perhaps elsewhere in a government facility, and

18   which order -- if it was signed, and I am going to inquire

19   shortly if it was -- has the effect, as the court understands

20   it, of effecting some change upon that which was permissible

21   to be done by certain persons with respect to those materials

22   to which the agreement and the order refer.

23          Nowhere does this court understand that the

24   proceedings in that court or the agreement which  was the

25    subject of the purported order of that court touches upon

Reproduced from the holdings of the National Archives at Riverside

1   the claims or interests of these parties to this lawsuit

2   in and to and about the things covered by the agreement and

3   the order.

4           Now, Mr. Hollander, first of all, was that order

5   signed by Judge Richey?

6           MR. HOLLANDER:  No, your Honor.  It was merely

7   proposed, lodged with the court yesterday for argument, either

8   Thursday or Friday.  I am not certain which, but I will find

9   out for your Honor.

10          THE COURT:  Well, was that proceeding had yesterday

11  and concluded yesterday before Judge Richey?

12          MR. HOLLANDER:  No, your Honor.  The motion, the

13  proposed agreement and the brief-memorandum in support were

14  filed jointly by the special prosecutor and the other defendants,

15  Mr. Buchen, head of the secret service and Mr. Sampson.

16  That is a unilateral agreement.  Mr. Miller has not yet been

17  heard from on behalf of counsel for the President.

18          The judge has not acted on it and will not act

19  on it, I presume, until he has had a hearing.

20          THE COURT:  Well, what if anything was had by way

21  of proceedings before Judge Richey yesterday relating to

22  that matter?

23          MR. HOLLANDER:  Nothing, your Honor, as far as

24  I know.  Merely lodged these pleadings with the court, and

25  I wanted your Honor and defendants to be aware of this, because

Reproduced from the holdings of the *National Archives at Riverside*

8

1   it seemed to me that obviously they should know about it,

2   the defendants should know about it and your Honor should

3   know about it.

4           THE COURT:  All right.

5           You might then perhaps address yourself, Mr. Holland-

6   er, to some questions that arise in the court's mind at the

7   present posture of things.

8           MR. HOLLANDER:  Yes, your Honor.

9           THE COURT:  Without any regard to what agreements

10   or contracts there may have been entered into by anyone,

11   this court is of the view that any materials, whatever they

12   may be -- subject of course to privileges that might be assert-

13   ed and be valid -- which are within the control of the plainti

14   plaintiff in this case, which is the United States of America,

15   that those materials, without any regard to any such agreements

16   or claims of other persons, are properly reachable by the

17   process of this court in connection with the prosecution

18   of the three cases which are here before this court.

19           Are you of any different view, or is the government,

20   in that respect, Mr. Hollander?

21           MR. HOLLANDER:  Well, first let me say, your Honor,

22   that I assured you in August and I reiterate my assurance

23   that nothing has been changed as far as the possession, custody

24   or control of those documents.  I assured you that the White

25   House was on notice and that everyone was on notice that

Reproduced from the holdings of the National Archives at Riverside

9

1  they were not to be touched and they have not -- I don't

2  mean touched.  They were not to be moved, and they have not

3  been.

4          Judge Richey's supplemental order, which your Honor

5  will find attached to our memorandum in opposition to the

6  motion to dismiss -- that was the second order in a chain --

7  reiterates that the documents will not be transferred, and

8  nothing in this unilateral agreement between the special

9  prosecutor and counsel for the President and others will

10  change that, as far as I am concerned.

11          THE COURT:  Well, is that an answer to the court's

12  question?

13          MR. HOLLANDER:  Your Honor, I think there are grave

14  questions, as I have expressed to your Honor, as to whether

15  this whole issue is relevant, and I know that you temporarily

16  or tentatively decided to go ahead with the discovery.

17          Our position in this motion, your Honor, is that

18  everything possible has been done up to the point we reached

19  where we answered interrogatories.

20          THE COURT:  All right.

21          The court's understanding then of your answer is

22  this:  That all of the materials with which we are here concern-

23  ed remain within the control of the government, and that

24  it is the government's position that regardless of any of

25  these agreements that have been referred to between Mr. Nixon

Reproduced from the holdings of the *National Archives at Riverside*

**10**

1    and whomever it may be and regardless of all other actions

2    or proceedings or contemplations that have been had between

3    others those materials with which this suit is concerned

4    remain within the custody of the plaintiff.

5         MR. HOLLANDER:  They are certainly within the custody

6    and possession.  Control I have some question about, but

7    your Honor understands me.  They are certainly within our

8    possession and custody, as they were in August.

9         THE COURT:  Very well.  And I think you fairly

10   reflect what was at least discussed and expressed in the

11   meeting in August, even if it was not, as it was not, the

12   subject of any order, as to what the continuing situation

13   would be, and the court now understands that that is the

14   continuing situation.

15        The court understands from the defendants' motions

16   that the government nevertheless asserts that it is either

17   unable to or refuses to comply with some requested or demanded

18   production of materials because of agreements or other

19   occurrences that have taken place.

20        Is that not involved before the court at this time?

21        MR. HOLLANDER:  Our position is, your Honor, that

22   we couldn't go any further with indexing that your Honor

23   ordered us to do at this point, because we did not have access

24   to the documents because of the continuing controversy, plus

25   the fact that it has been the consistent procedure --despite

Reproduced from the holdings of the National Archives at Riverside

1    what I believe is a misunderstanding of defendants -- that

2    this has not been required.

3           The procedure, your Honor, has required in every

4    instance where documents have been produced that they be

5    specified with particularity and, furthermore, that counsel

6    for Mr. Nixon has given permission -- not only given permission --

7    has first made a search and then has given permission if

8    he did not want to raise an objection to raise privilege,

9    has given permission for them to be produced, as Mr. Miller

10   outlined in the transcript which was referred to by Mr. Rifkind,

11   I think mistakenly.  I think he got a misunderstanding from

12   it.  That was the procedure; and if there was an objection

13   or privilege raised on the part of counsel for former President

14   Nixon then the documents would be produced to the court,

15   but with the privilege asserted.

16          THE COURT:  Well, see if the court follows what

17   you are saying down to this point: that although, as has

18   been clearly expressed and understood, the government has

19   control, dominion, possession of these documents, that

20   nevertheless there is somehow some inability of access on

21   the part of the government.

22          Is that what you are saying?

23          MR. HOLLANDER:  They are in an uncontested control,

24   but there has been a problem of access and it has prevented

25   us from complying any further.  We --

Reproduced from the holdings of the National Archives at Riverside

12

1       THE COURT:  Well, all right.  Let's see.

2       Who is that stands in the way of the government

3  in its seeking access?

4       MR. HOLLANDER:  Excuse me.  I misspoke myself.

5  I said they are in the uncontested control. They are not

6  in the uncontested control, is what I meant to say just a

7  minute ago.

8       Now, excuse me, your Honor.  You asked me --

9       THE COURT:  What stands in the way of the government's

10  access?

11       MR. HOLLANDER:  Your Honor, following the procedures,

12  the opinion of the attorney general and the Nixon-Sampson

13  agreement, which has not been changed except to freeze the

14  status quo by Judge Richey in preventing the transfer of

15  any documents, we put Mr. Nixon's attorney and himself on

16  notice of your Honor's order on September 10 and we have

17  not received and had not received any permission under that

18  agreement for access.

19       Let me state again that it has been --

20       THE COURT:  I want to stop at that point, Mr. Hollan-

21  der.

22       It is the government's position, I take it, that

23  the control you have is a limited control and it cannot be

24  exercised by the government with respect to those documents.

25       MR. HOLLANDER:  At this point, your Honor, --

Reproduced from the holdings of the National Archives at Riverside

13

1      THE COURT:  Why not?

2      MR. HOLLANDER:  Well, --

3      THE COURT:  Because of the agreement with the adminis-

4  trator of General Services Administration?

5      MR. HOLLANDER:  No, your Honor.  Because of former

6  President Nixon's asserted rights, and they have been asserted

7  in every case in opposition -- he has consistently opposed

8  any search by anyone.  Now, this is what your Honor ordered

9  us to do, was to have a search conducted, to index; and that

10  has not been done.

11      I should tell your Honor too there are several

12  factual misunderstandings in defendants' statement:  No.

13  1, that there is a large team of archivists going through

14  and indexing the documents.  That is not so.

15      What is so is that a team of archivists has inventori-

16  ed physically so and so many boxes are in such and such a

17  room.  If there are labels on the boxes they will say, "Chrono-

18  logically from so and so to so and so."  They will indicate

19  the source.  Like this may have come from Mr. Coulson's office,

20  or this may have come from somebody else's office.

21      There has been no, to my knowledge -- and I am

22  sure it is correct -- no indexing by subject matter of the

23  type that would be required to carry out your Honor's order.

24      THE COURT:  All right.

25      The court at least tends to this view:  that if

Reproduced from the holdings of the National Archives at Riverside

14

1   you as party to a lawsuit pending in this court in fact have

2   possession or the power or dominion over documents or things

3   you may not refuse a demand made upon you, properly made,

4   by the other side to that lawsuit to produce the documents

5   for the mere fact that some other person claims title or

6   the right to possession thereto.

7          Are you of a different view in that regard?

8          MR. HOLLANDER:  Yes, your Honor. I am of the view

9   that there is a veryserious legal question here as to whether

10  we can perform, and the Supreme Court in the case of United

11  States v. Nixon, while it permitted access to tapes that

12  were specifically designated by the special prosecutor, made

13  a large point of the fact that it was a criminal proceeding

14  and the evidence was needed for a criminal proceeding, and

15  they reserved on the question of whether in civil litigation

16  they would have breached the confidentiality of the President's

17  office; and for that reason I think there is quite a serious

18  legal question as to whether we can perform.

19         THE COURT:  Well, the court in that case could

20  quite properly reserve on that question, because that question

21  was not before that court.  But it is before this court.

22         MR. HOLLANDER:  Yes, sir.

23         THE COURT:  And are you of the view that the documents

24  or the things are not subject to compulsion to produce in

25  the government's hands because of the claim of ownership

Reproduced from the holdings of the National Archives at Riverside

**15**

1    on the part of Mr. Nixon?

2          MR. HOLLANDER:  I say that that is a substantial

3    legal question which has not yet been decided, your Honor,

4    and about which we have serious doubts under the cirumstances.

5    These are extraordinary circumstances, your Honor.  We are

6    not talking about a corporation and its executtives.

7          Defendants' cases spoke to the question of a corpora-

8    te officer and whether his papers were subject to subpoena.

9    That of course is the only kind of case they could refer

10   to, because there is no case that has the extraordinary situat

11   situation involved here, where the President of the United

12   States has been held, at least by the opinion of the attorney

13   general which so far has not been contested but by which

14   obviously I must be guided, that these papers, all of them,

15   are the personal property of the President.

16          Now, obviously, with a corporation you have a differ-

17   ent --

18          THE COURT:  Hold on, Mr. Hollander.

19          The only difference is that there might then be

20   a privilege which is the privilege of Mr. Nixon and which,

21   I take it then you suggest, would have to be honored by the

22   government.

23          MR. HOLLANDER:  Well, at least your Honor would

24   have to hear whether there was such a privilege before we

25   could move any further.  Any production in this case was

Reproduced from the holdings of the National Archives at Riverside

**16**

1   not ordered, your Honor.

2          I must suggest to you that what you said was --

3   we were trying to work out some procedure whereby we might

4   ascertain where the documents were and if there were any

5   such documents that were responsive, and so forth and so

6   on, before we went any further, and your Honor would have

7   a further look after we made this effort; and we have made

8   this effort.

9          May I suggest, your Honor, that the situation that

10  faced us last May, if that's when it was, was quite different

11  in all our points of view.  I think we had a different point

12  of view about what was obtainable and what wasn't, even though

13  at that time I recall saying to your Honor I will gladly

14  take on for the Department of Justice the problem of searching

15  and indexing these documents, and I thought it was quite

16  proper and I have no question about that, and we did so.

17         We really turned the place upside down to find

18  every possible scrap that might bear on this, and I say that

19  goes to good faith.

20         The cases hold uniformly, your Honor, contrary

21  to what the defendants say, that a dismissal cannot take

22  place unless there is a wilful violation of a court's order;

23  and I say we have not wilfully done anything here except

24  to comply to the best of our abilities.

25         THE COURT:  Well, it seems to the court that what

Reproduced from the holdings of the National Archives at Riverside

17

1   you are saying is not that the existence of an agreement

2   between Mr. Nixon and anyone else has the effect of at least

3   raising a question of the requirement or obligation of the

4   government to produce, but rather that, without regard to

5   the agreement but for other reasons, there may exist a privilege

6   with regard to items in the government's control which the

7   government must recognize or first have determined before

8   it would feel it was in a position to produce.

9           Is that your position?

10          MR. HOLLANDER:  That is correct, your Honor.

11          If you will recall your order, you asked us to

12  specify which documents we would assert the privilege as

13  to, and we couldn't very well do that because we did not

14  have access to the documents.

15          I would point out one more thing, if I might, --

16          THE COURT:  Well, here --

17          MR. HOLLANDER:  Excuse me.

18          THE COURT:  There is another difficulty that doesn't

19  seem to clarify itself in what is being discussed.

20          The court understands that with respect to the

21  question before us, without wholly seeking to delineate that

22  question but speaking in the most broad and general terms

23  with respect to documents and things, that the government

24  has been unable to identify certain documents by reason of

25  the agreement made by the government with Mr. Nixon.

Reproduced from the holdings of the National Archives at Riverside

18

1    Is that also the Government's position?

2    MR. HOLLANDER:  Mr. Kaplan reminds me that it is

3    not by the agreement, your Honor, but, as your Honor pointed

4    out a minute ago, because of the rights that Mr. Nixon may

5    have to raise privilege, and that was dealt with by the Supreme

6    Court - the normal concern that a district court or a court

7    of appeals or the Supreme Court will give to the President

8    in the assertion of confidential privilege.

9    THE COURT:  Well, I take it then we are refined

10   down to this point, that there admittedly are in existence

11   many documents and things which are within the control of

12   the government, in its custody, --

13   Don't shake your head --

14   If you want to participate in this, Mr. Kaplan,

15   you can do so.  Take a recess and you can confer with Mr.

16   Hollander.  But headshaking is always a disruptive thing.

17   You can disagree with the court or with anyone

18   else you want to, but just don't demonstrate.

19   MR. KAPLAN:  I'm sorry, your Honor.

20   THE COURT:  That although there are documents and

21   things which are within the custody of the government and

22   it has the power to produce, that nevertheless with respect

23   to those things the government declines to look at them or

24   identify them by reason of some asserted privilege which

25   is referred to in an agreement between the government and

Reproduced from the holdings of the National Archives at Riverside

19

1    Mr. Nixon.

2            MR. HOLLANDER:  No, that is not quite it, your

3    Honor.

4            As I mentioned to you before, it has been the consist-

5    ent position of Mr. Miller, counsel for the President, that

6    no one may make a search of these documents except the President

7    counsel, rather -- or his agents, and that is the way it

8    has been going.  That is why I wanted to point out to your

9    Honor that there was a misapprehension on the part of the

10   defendants.  And I have every reason to believe that would

11   be his position here, because it has been his consistent

12   position.

13           So it is not something that is ephemeral or that

14   I am drawing out of the air.  It is what has happened in

15   every one of these cases, and I don't see any reason to assume

16   anything different here.  And the President has been put

17   on notice, and Mr. --

18           THE COURT:  Well, you have asserted what Mr. Miller's

19   position is.  What is the government's position?

20           MR. HOLLANDER:  Well, the government's position,

21   your Honor, is that this is a substantial question of law,

22   and we just can't go charging in, because we are not like

23   a bailee in a commercial case where we are a bank and we

24   happen to hold somebody's documents.  This is a question

25   of whether Mr. Nixon's constitutional rights may be violated

Reproduced from the holdings of the National Archives at Riverside

20

1    by what we do, and we can't lightly go in.

2              THE COURT:  And if this court were to make

3    an order upon the custodian, which would be I take it some

4    agent of the plaintiff in this case, to produce that you

5    would feel obliged to assert Mr. Nixon's privilege.

6              MR. HOLLANDER:  No, your Honor.

7              THE COURT:  What would you do?

8              MR. HOLLANDER:  I would have him -- I would say

9    that he is an indispensible party and he has a right to assert

10   the constitutional privilege -- not the privilege, but the

11   constitutional position of the President, what his constitution-

12   al rights are if any, and whether there is any privilege.

13   That is the least we ought to know before we go ahead.

14             THE COURT:  Well, I take it then that your position

15   is that the government has recognized the existence of a

16   claim or a possible claim of privilege with regard to these

17   items to the point where it has refused to pursue some identity

18   process or identifying process with regard to those items,

19   because to do so would be an intrusion upon Mr. Nixon's

20   privilege.

21             MR. HOLLANDER:  Your Honor, I think it appropriate

22   for me to hand up to the court and to the clerk and to the

23   defendants a letter from Mr. Miller which I solicited because

24   I felt your Honor would press about this, as to whether this

25   was something the government was asserting for Mr. Nixon,

Reproduced from the holdings of the National Archives at Riverside

21

1  and Mr. Miller points out in his letter that while he has

2  not had a chance to confer with his client his consistent

3  position has been that no one -- but no one -- can make a

4  search of these documents, and he assumes that this -- I

5  am characterizing this, of course -- he assumes that this

6  would be his position in this case.  So that I am not just

7  dreaming this up, your Honor.

8  THE COURT:  Oh, there is no intimation by anything

9  the court has said that you are dreaming up anything.  The

10  court is attempting merely to get to an accurate understanding

11  of what the government's position is.  And you clarify it

12  by that statement.

13  You recognize the claim of privilege made by Mr.

14  Nixon to the point where, although the government has control

15  of the documents and physically is in a position to look

16  at them, that nevertheless your understanding of Mr. Nixon's

17  claim of privilege is that you are thereby barred, prevented,

18  from identifying or examining those documents unless and

19  until some proper order of the court compels you so to do.

20  Is that a fair statement of the government's position?

21  MR. HOLLANDER:  I don't mean to quibble with your

22  Honor, but I would like to avoid the use of the word "control"

23  because I think as long as this legal question exists we

24  do not have the kind of control that is required --

25  THE COURT:  Oh, even a --

Reproduced from the holdings of the National Archives at Riverside

22

1     MR. HOLLANDER:  I don't mean to quibble.

2     THE COURT:  Even a thief has control of what he

3  has in his possession, doesn't he?  He can throw it away,

4  burn it, deliver it to someone else.  Control has reference

5  to your ability to lay your hands upon and do something with.

6  Isn't that all that control means?

7     MR. HOLLANDER:  Well, your Honor, I don't look

8  on the government in that sense.  I think we have a higher

9  duty than a thief, and I think that it is important that

10  that be recognized and that's what we're trying to do here,

11  your Honor.

12     THE COURT:  That has nothing to do --  Your duty

13  may be something very different.  We are not talking at all

14  about duty.  We are talking about the control, which is a

15  physical matter, is it not?

16     MR. HOLLANDER:  If that is what your Honor means,

17  yes, we have physical control over the documents.

18     THE COURT:  But you will not exercise your power

19  or control to identify these documents because of your recogni-

20  oftion of the assertion of privilege by Mr. Nixon.  Is that

21  not a statement of your position?

22     MR. HOLLANDER:  That is completely fair, except

23  that he has not asserted it yet.

24     THE COURT:  Well, you understand him to be of that

25  position, and it always has been, and you say and anticipate

Reproduced from the holdings of the National Archives at Riverside

23

1   and understand that that is the asserted position here.

2           MR. HOLLANDER:  That is my understanding of it.

3           THE COURT:  All right.

4           And I suppose that if we pursue this then it would

5   pose for this court's determination the question of whether

6   the privilege properly exists and properly operates as a

7   bar to the government in exercising its control.

8           MR. HOLLANDER:  Well, I think that is probably

9   true.  I would say to your Honor the government feels it

10  has done everything physically possible to comply with your

11  Honor's order, that if --

12          THE COURT:  Not physically.  Hold on.

13          MR. HOLLANDER:  Excuse me.  Not physically.

14          THE COURT:  Certainly not physically, but the

15  documents are just as if they are in your back pocket, aren't

16  they, at this moment, in terms of physical ability?

17          MR. HOLLANDER:  Yes, your Honor.  I misspoke myself.

18  We have done everything that we think we legally can to comply

19  with your Honor's order.

20          THE COURT:  All right.

21          I take it that the response that was made then

22  to the interrogatories is inaccurate insofar as it is stated

23  that pursuant to the Nixon-Sampson agreement "the files in

24  question are not within the custody or control of the White

25  House."

Case 2:13-cv-00779-DOC-JCG   Document 106-10   Filed 02/17/14   Page 25 of 65   Page ID #:2688

Reproduced from the holdings of the National Archives at Riverside

1    MR. HOLLANDER:  I believe that we were quoting --

2    Yes.  I think we were quoting from the agreement, and I think

3    we were also quoting a position taken by counsel for the

4    President when we pushed him for an answer as to what --

5         THE COURT:  Yes, but is this not the response the

6    government makes by adopting that language and saying that

7    the files in question are not within the custody and control

8    of the plaintiff?

9         MR. HOLLANDER:  Well, as your Honor is defining

10   it I agree with you, that they are within our physical custody

11   and control.  So that if that is what your Honor read from

12   that I agree, that is not a correct statement.

13        THE COURT:  I don't look upon it as a quibble.

14        Isn't that a necessary view to take?  Isn't it

15   the only view that may be taken?

16        MR. HOLLANDER:  That they are within our physical

17   control and custody.  Yes, your Honor, I agree.

18        THE COURT:  Well, that they are within your custody

19   and control by any definition known to those words.

20        MR. HOLLANDER:  No, your Honor, that is where you

21   and I part.  I think the word "control" implies that we can

22   legally do what your Honor has asked us to do, and I am stating

23   to you in all candor that I think there is a substantial

24   legal question here.

25        THE COURT:  All right.

Reproduced from the holdings of the National Archives at Riverside

25

1  I think perhaps we ought to hear from the defendants

2  as to how the court ought to treat that question, which is,

3  it now appears to the court, refined into a rather narrow

4  one, and that is: the claim of privilege being put forward

5  for the purposes of the proceeding here, what does the court

6  do about that?

7  MR. RIFKIND: Your Honor, if I may work up to that

8  by a couple of short steps.

9  I think the question gets much narrower and simpler

10  than that. I have been sitting here listening to Mr. Hollander

11  and at the same time reading the brief filed by the Department

12  of Justice yesterday in Washington, the document which I

13  take it your Honor has.

14  THE COURT: No, I haven't seen the brief. I have

15  seen the proposed order and I have seen the proposed agreement --

16  MR. BERGSON: I will hand up my copy.

17  MR. RIFKIND: I understood from the clerk, your

18  Honor, that a copy was given to you.

19  THE COURT: Maybe so; but in any event I haven't

20  read it.

21  MR. RIFKIND: Well, I would like to speak to that

22  in just a minute.

23  MR. BERGSON: May I hand that up to your Honor?

24  THE COURT: Yes.

25  Very well.

Reproduced from the holdings of the National Archives at Riverside

**26**

1    MR. RIFKIND: First of all, we are dealing here

2  only with answers to interrogatories, and the purpose of

3  those interrogatories, which your Honor suggested as a matter

4  of fact at our conference in May, was precisely to identify

5  questions of privilege, not to resolve them, but to lay on

6  the table whatever issues of privilege might arise.

7    No documents under the outstanding order are to

8  be turned over to the defendants -- simply an identification

9  of the documents and an assertion, if any is to be made,

10  of the privilege, or of any privilege. So it is hard to

11  see that any privilege of Mr. Nixon or anyone else is involved

12  in anything that is to be given to the defendants.

13    THE COURT: Well, let's stop at that point and

14  see if the court understands what the government's position

15  is in that regard. It is much like the assertion of any

16  privilege: it has to be very carefully guarded in what one

17  does with it, or it is waived.

18    I take it the government's position is that to

19  pursue this process of identification of what documents there

20  are which fall under a claim of privilege by Mr. Nixon is

21  to intrude upon and invade and destroy the privilege.

22    Don't you understand their position to be that?

23    MR. RIFKIND: I can understand that. There is

24  the problem of unraveling the privilege, or taking a peak

25  under the tent.

Reproduced from the holdings of the National Archives at Riverside

2.8

1    I think that problem is laid aside by Mr. Nixon

2  himself, because in the action which he brought specifically

3  to enforce the Nixon-Sampson agreement protecting these

4  documents his counsel has taken the position, "We do not

5  seek to bar compliance with any outstanding discovery order

6  in pending civil or criminal ligiation."

7    But I think Mr. Nixon didn't seem worried about

8  it.

   THE COURT:
9    Did it go so far as to embrace outstanding civil

10  proceedings or only investigations of and proceedings related

11  to criminal matters?

12    MR. RIFKIND:  He refers in his brief to

13    "not seeking any relief that would preclude such

14    production or disclosure as may be necessary to

15    comply with subpoenas duces tecum or other court

16    orders issued prior to the time of the filing of

17    the complaint in this action,"

18  and in the paragraph in which he makes that statement he

19  specifically refers to this litigation and other civil

20  litigation between the government and some oil companies.

21    So it seems to me Mr. Nixon and his counsel, Mr.

22  Miller, have adverted to this situation and whatever they

23  thought their rights were they decided it wasn't worth the

24  candle to fight for them in this regard.

25    I don't think that is dispositive of anything,

Reproduced from the holdings of the National Archives at Riverside

28

1  but it suggests, I think, that Mr. Hollander is being

2  extraordinarily, and again I think unnecessarily, solicitous

3  of a position that hasn't been asserted.

4          But I am more concerned, as Mr. Hollander described

5  the position of the United States, the plaintiff here, with

6  respect to these documents and what the government thought

7  its rights were, to compare his remarks here and in his brief

8  with the remarks filed in the memorandum which Mr. Bergson

9  just handed to me, your Honor, yesterday, signed by an assistant

10 attorney general and a whole slew of deputy assistants and

11 the special prosecutor jointly before Judge Richey in Washing-

12 ton, and I would just like to read to you -- because I assume

13 you have not had a chance to look at it -- a couple of portions

14 of that statement.

15          "The United States, in the pursuit of its

16          constitutional duties and responsibilities,"

17 says this government brief on page 8,

18          "has a supervening interest in the Nixon presidential

19          materials when access to those materials is impor-

20          tant  to ongoing governmental functions.  The Nixon-

21          Sampson letter agreement was intended to accommodate

22          this interest, and, indeed, to the extent that it

23          does not, it cannot bind the United States."

24          ". . .  There can be no dispute that ownership

25          by the President of property created by government

Reproduced from the holdings of the National Archives at Riverside

29

employees in the course of their official duties on

government time and through the use of government

facilities is contrary to normal legal principles

and is based largely on historical tradition and

precedent.  There is nothing in that history, however,

that supports, much less compels, the conclusion that

the government's right of access terminates when

the President leaves office.  It would be startling,

indeed, if the government could not demand use

of those materials necessary to the continued

functioning of the Executive Branch."

THE COURT:  Mr. Rifkind, it would appear to the court

from your statement and the expressed views of Mr. Miller,

as you state them --

MR. RIFKIND:  Your Honor, I was reading from the

Department of Justice's paper.

THE COURT:  Yes.

MR. RIFKIND:  I'm sorry.

THE COURT:  From whatever source you came upon

them, as you put them to the court -- that it constitutes

a difference with what Mr. Hollander's views as here expressed

are.  It is suggested by you from sources to which you attribute

these matters that there is no claim of privilege by Mr.

Nixon with respect to the government's proceeding to identify

documents in this case.

Case 2:13-cv-00779-DOC-JCG  Document 106-10  Filed 02/17/14  Page 31 of 65  Page ID #:2694

Reproduced from the holdings of the National Archives at Riverside

1   Isn't that what you say you understand the government
2   to understand Mr. Miller's position to be?
3       MR. RIFKIND:  I understand Mr. Miller's position
4   to be that he has not sought any relief in a pending action
5   in which he might seek such relief vis a vis answering interrog-
6   atories in this case.
7       THE COURT:  I thought you went further than that.
8   You said not only has he not undertaken so to do as of now,
9   but that his expressed views indicate to you that he wouldn't.
10      MR. RIFKIND:  I think that's right.
11      THE COURT:  Well, all right.
12      Let's see if the government's --
13      Mr. Hollander, --
14      MR. HOLLANDER:  Your Honor, I would like --
15      THE COURT:  -- what is there available to indicate
16  to you the position of Mr. Nixon?
17      MR. HOLLANDER:  The letter I handed up to your
18  Honor makes it quite clear to me.
19      But I would like to go on further than that.  I
20  would like to point out that what Mr. Rifkind read to you
21  from the brief of the United States, the memorandum of the
22  United States, signed by an assistant attorney general, clearly
23  not on one but on a number of occasions he points out that
24  what is being talked about here is the duty of the government
25  not to stand in the way of a special prosecutor, who has

Reproduced from the holdings of the National Archives at Riverside

31

1  unique powers, according to the Supreme Court in U. S. v.

2  Nixon, to conduct ongoing criminal investigations and

3  prosecutions.  Criminal investigations and prosecutions.

4  That is repeated not once, but I'll bet five times throughout

5  here.  I can refer your Honor to a few pages, and you can

6  see it.

7          Page 11 is the first one.  It says:

8          "Similarly, a relatively small portion of

9      the Nixon presidential materials are presently

10     needed, or may be needed, by the United States

11     in connection with ongoing criminal investigations."

12     And it goes on to say:

13         "To deprive the government of the possession

14     of these materials at this time, or to restrict

15     access to the materials by its agents, would severely

16     hamper if not defeat the government's ability to

17     exercise its paramount rights as a sovereign under

18     Folsom v. Marsh and to fulfill its obligations

19     in criminal investigations and prosecutions."

20     THE COURT:  You have answered the question.

21         The court would indicate that it does not understand

22  that the Supreme Court or any other court has in anything

23  referred to so far addressed itself to the question of whether

24  there is a difference in a civil case such as this from a

25  criminal case with regard to the power of the court to order

Reproduced from the holdings of the National Archives at Riverside

1   the production of these documents; and yet that is a question

2   which may very well be posed to this court.

3        It does appear, Mr. Rifkind, that the letter of

4   November 8, which the court has just at this moment quickly

5   perused and examined for the first time, being a letter from

6   Herbert J. Miller, Jr., addressed to Honorable Thomas E.

7   Kauper, Assistant Attorney General, does make rather clear

8   that the counsel to Mr. Nixon is of the view that there is

9   some inviolability that attaches to those documents which

10   are in the custody of the government.

11        MR. RIFKIND:  I must say I read it very quickly

12   too, your Honor.

13        As I understood it, and that would be consistent

14   with my understanding of what has been going on, what Mr.

15   Miller is saying essentially is, "I, Mr. Miller, would have

16   to participate on behalf of Mr. Nixon in a search for the

17   documents, and that would be very burdensome."

18        That is the procedure that has been described to

19   Judge Richey, that representatives of the government and

20   representatives of Mr. Nixon have jointly up till now gone

21   through these files to find what was needed for the special

22   prosecutor, and so on, and I refer you to --

23        MR. HOLLANDER:  Excuse me.

24        May I rise to a question of fact.  It is precisely

25   that fact which I pointed out to your Honor that Mr. Rifkind

Reproduced from the holdings of the National Archives at Riverside

1   is under a misapprehension.  This is not true.  No search

2   to this date, your Honor, has been permitted, except by counsel

3   for Mr. Nixon or his agents; and while it is true that counsel

4   for Mr. Buchen has been present he has not been allowed to

5   look at the contents of any document.  That is my understanding,

6   on knowledge and believe, and I represent it to your Honor.

7           THE COURT:  I take it then that regardless of whom

8   else may have conducted a search, the government has undertaken

9   and conducted no search of these documents for indexing purposes

10  or identification purposes.

11          Is that what you are saying?

12          MR. HOLLANDER:  What I am saying, your Honor, is

13  the initial search has had to be made in each case by Mr.

14  Miller or his representative --  Yes, that is correct.

15          THE COURT:  All right.

16          MR. HOLLANDER:  Nobody has been allowed to look

17  at the contents of any document without his permission.

18  That is my understanding.

19          THE COURT:  The court's inquiry is whether it is

20  not a fact, upon your statement, that there has been no search

21  conducted by the government of these materials for the purposes

22  of identification.

23          MR. HOLLANDER:  As far as -- To yesterday, until

24  this motion was filed, and whatever action Judge Richey may

Reproduced from the holdings of the National Archives at Riverside

34

1    take.  That is my understanding.  There has been no search

2    of the type that would be required in this case.  That is

3    my understanding.

4         THE COURT:  No activities have been undertaken

5    or exerted by the government by way of review or search or

6    look at the documents for the purposes of identification

7    thereof?

8         MR. RIFKIND:  Your Honor, --

9         MR. HOLLANDER:  Only after subpoenas for specific

10   documents; for example, the ones in U. S. v. Nixon, the tapes

11   that had been identified by the special prosecutor.  They

12   were sought out and --

13        THE COURT:  Hold on.

14        The court is inquiring concerning the order of

15   this court, which has reference to the conduct of some identi-

16   fication process.  Nothing has been done, I take it, under

17   that order to conduct some identification process of documents.

18   Is the court correct in its understanding to that effect?

19        MR. HOLLANDER:  All I can answer, your Honor, depends

20   on the statement of Mr. Buchen, counsel for the President.

21   We submit to your Honor that since Mr. Nixon's resignation

22   nothing has been done.  I can't tell you what --

23        THE COURT:  That may relate to the reasons why --

24   good, bad or indifferent reasons.

25        MR. HOLLANDER:  Yes.

Case 2:13-cv-00779-DOC-JCG   Document 106-10   Filed 02/17/14   Page 36 of 65   Page ID #:2699

Reproduced from the holdings of the National Archives at Riverside

35

1   THE COURT:  But what is the fact as to whether

2   the government has conducted any identification process under

3   the order of this court?

4   MR. HOLLANDER:  As far as I know, it has not, your

5   Honor.

6   THE COURT:  All right.

7   MR. HOLLANDER:  Except in the Department of Justice;

8   and that, your Honor, is laid out in the answers to inter-

9   rogatories.  We did that search very thoroughly, as I pointed

10  out to your Honor.

11  THE COURT:  Well, that has reference not to the

12  documents which are under discussion in some legal proceedings

13  as between Mr. Nixon and the government, I take it.

14  MR. HOLLANDER:  That is correct, your Honor.

15  THE COURT:  All right.

16  MR. HOLLANDER:  But you will recall, I think, that

17  your Honor said that we would have to show -- I think --

18  if there was any basis for their claim of improper motive

19  or purpose, we would have to show some nexus between the

20  Department of Justice and the White House; and all I am saying

21  is that it certainly should be considered by your Honor that

22  a search of the Department of Justice documents reveals no

23  such thing and, furthermore, an affidavit by the present

24  attorney general tells your Honor that he has examined the

25  basic documents and found that these cases are valid and

EDWARD NEWLANDER, OFFICAL REPORTER

Reproduced from the holdings of the National Archives at Riverside

**36**

1    meritorious.

2         THE COURT:  If only as a matter of curiosity, has

3    the government -- and I suppose that inquiry has particular

4    reference to the Department of Justice as counsel in this

5    case and as a part of the government -- undertaken to inject

6    into the proceedings before Judge Richey the matters connected

7    therewith which are involved in this lawsuit?

8         MR. HOLLANDER:  I think they have made him aware

9    of these matters, but I don't think that it has been injected,

10   no, your Honor.

11        THE COURT:  The court gets the impression that

12   all that has transpired in the action before Judge Richey

13   concerning what should or should not be done with or about

14   those documents relates solely to their availability to the

15   special prosecutor.

16        Is the court correct in its understanding to that

17   effect?

18        MR. HOLLANDER:  No, I believe there are other civil

19   parties that are seeking production too.

20        I may have misspoken myself a minute ago, your

21   Honor, when I answered that nothing had been done in the

22   search for documents, or the indexing of documents, under

23   this case, and that is true.  But when you say "the government"

24   I must include the special prosecutor, and the special prosecut-

25   or has informed your Honor in the memorandum that he did

Reproduced from the holdings of the National Archives at Riverside

37

make an investigation of this very charge and has found no

evidence to support any improper motivation and has closed

the case.

I think that is relevant to your Honor's consideration

also.

THE COURT:  Well, he says something a little different

from that, as the court reads his report.

In any event, what the court at the moment is inquir-

ing into is whether the problems with which we are concerned,

as they relate to the socalled Nixon documents, is made a

part of or brought into the case pending before Judge Richey.

Would you say Yes, that there is someone there before Judge

Richey making known that and perhaps asserting claims with

respect to the government's problems in this case, as

distinguished from those which the special prosecutor has

with regard to those documents?

MR. HOLLANDER:  I don't think that I could answer

that with a Yes, your Honor, although I would say that certain-

ly we have been in contact with the civil division, which

is handling the case, and they are aware of the problems

posed by your Honor's order.  But I do not think those have

been brought to his attention, because those are not specifical-

ly before the court; and I believe, if I am not mistaken,

that this is the only order that requires indexing.

THE COURT:  Well, isn't that a forum in which perhaps

Reproduced from the holdings of the *National Archives at Riverside*

**38**

1  these questions ought to be brought to issue and determined?

2  hyWhy isn't that inquiry made by Judge Richey into the question

3  of privilege or custody or control or delivery to other parties

4  as it arises before him in connection with the special prosecut-

5  or's activies?  Why isn't that properly broadened so as to

6  bring before that tribunal the broader questions of whether

7  that custody of the government should yield to demands other

8  than the prosecutor's, to-wit, subpoenas or other process

9  in other cases?

10  MR. HOLLANDER:  He is considering that very point,

11  your Honor, because, as I mentioned to you, there are other

12  civil parties that are seeking production.

13  I think Mr. McCord, I think the Democratic National

14  Committee -- the Oliver case, I believe --those are civil

15  cases and do involve this.

16  THE COURT:  All right.

17  MR. HOLLANDER:  I would like, if I might, to point

18  out to your Honor that it is our position and has been all

19  along that this is in effect a side show.  All this is doing

20  is keeping your Honor from getting to the merits of this

21  case.

22  THE COURT:  That happens in lawsuits all the time.

23  MR. HOLLANDER:  I know, your Honor.

24  THE COURT:  And properly so.  What is the matter

25  with side shows?

Reproduced from the holdings of the National Archives at Riverside

39

1     MR. HOLLANDER:  Well, I think the matter with side

2 shows is where they get to be tactics that stop -- Well,

3 let me start again.

4     This is a suit for injunction, your Honor, to stop

5 practices which we allege are restraining trade.  Now, every

6 day that goes past without that relief there is a continuing

7 offense, and it is going on.  That's --

8     THE COURT:  And you really want to get at that.

9     MR. HOLLANDER:  I really want to get at that; yes,

10 your Honor.

11     THE COURT:  What would happen if you dismissed

12 this lawsuit and filed another one tomorrow?

13     MR. HOLLANDER:  Well, we probably will have lost

14 some ground, I suppose, in pretrial, and everything.  It

15 could be done.  I think in effect Attorney General Saxbe

16 has told your Honor that he thinks these cases are meritorious

17 and should go to trial, and I don't see any reason why we

18 should have to dismiss this case when we have done absolutely

19 nothing wilful.  The only basis for dismissal -- Well, that

20 is the only basis for dismissal, under numerous cases.

21     THE COURT:  Well, that might be the only basis

22 upon which a court might order a dismissal, but that wasn't

23 the court's question.

24     If you are so anxious to get at the merits of these

25 lawsuits and you don't like side shows are you not in a position

Case 2:13-cv-00779-DOC-JCG   Document 106-10   Filed 02/17/14   Page 41 of 65   Page ID #:2704
Reproduced from the holdings of the National Archives at Riverside

1    to put an end to this side show by dismissing these cases

2    today and filing them again tomorrow?

3            MR. HOLLANDER:  What would your Honor's reaction

4    be if we did that?

5            THE COURT:  Oh, I don't express reactions ever.

6    I just rule on things.

7            MR. HOLLANDER:  It is certainly something we will

8    consider, your Honor.  I'm --

9            THE COURT:  Let's see.

10           What is the defendants' position, Mr. Rifkind?

11   Suppose these actions were dismissed today and refiled tomorrow?

12   What would happen to the side show?

13           MR. RIFKIND:  The answer is, your Honor, that we

14   would be entitled to explore whether an independent and proper

15   decision had been made to commence the new action or whether

16   the new action wasn't precisely a tactic in the continuation

17   of the old suit.

18           An ocean liner goes by and it brings in its wake

19   a lot of flotsom and jetsam that washes along behind.  If

20   that second lawsuit is just a piece of wood floating around

21   behind this lawsuit I don't think it is an independent lawsuit.

22           THE COURT:  But after the ship gets into port and

23   turns around it leaves the flotsam and jetsam behind, doesn't

24   it, when it starts a new voyage?

25           MR. RIFKIND:  Well, I don't think the ship has

Reproduced from the holdings of the National Archives at Riverside

41

1    come to port.  I don't --

2            THE COURT:  Well, --

3            MR. RIFKIND:  I am not saying that the suit oughtn't

4    to be dismissed.  I think it ought to be dismissed.  I don't

5    think the government ought to be able to harass us to death

6    by bringing new lawsuits continuously.  Obviously, --

7            THE COURT:  Well, Mr. Saxbe is of the categorical

8    view that in the pursuit of his duties if the question were

9    put to him anew as of now it would be his determination that

10    these lawsuits should be filed.

11            Isn't that perfectly clear from his statement?

12            MR. RIFKIND:  I would like to say one word to that,

13    and then Mr. Shestack would like to say a word.

14            I think, your Honor, when you read the brief which

15    was filed by the Department yesterday before Judge Richey

16    you are forced to come to the conclusion that in substance

17    Mr. Saxby has been overruled, and I will tell you why.

18            The agreement that was filed before Judge Richey

19    yesterday and the brief that was filed in its support say

20    in substance this:  No matter whether or not Mr. Nixon has

21    title or property interest in these papers, and no matter

22    whether or not he has some claim of privilege vis-a-vis the

23    rest of them, the executive, the plaintiff, the United States,

24    has a supervening, irresistible power of access to those

25    papers for its own purposes wherever at least the President

Reproduced from the holdings of the National Archives at Riverside

42

1    of the United States so chooses; and the agreement recites

2    that Mr. Ford has so chosen with respect to the work of the

3    special prosecutor, because, he says and quite properly I

4    suppose, that that is very important work.

5        I think implicit in that, implicit in the fact --

6    which I do not doubt -- that Mr. Hollander has not had access

7    to the papers in question, even though Mr. Buchen in the

8    White House does have access to them, does have control and

9    possession of them, the fact that Mr. Hollander has not had

10   access to them is a determination by the plaintiff that,

11   all things considered, these suits are not important, and

12   that it would rather that they be dismissed than that they

13   be required to identify and produce these documents.

14       THE COURT:  Oh, no, that doesn't follow at all.

15   There is a strong implication at least, if not a representation,

16   that no one in the White House has taken a look at these,

17   that their respect for those papers is such that they don't

18   want to violate the privilege of Mr. Nixon.

19       MR. HOLLANDER:  Your Honor, those representationS

20   I think are totally wide of the factual mark.

21       I would like to read you just one sentence from

22   the special prosecutor's counsel, Mr. Kreindler, in the

23   transcript, which I will hand up, before Judge Richey.  Mr.

24   Kreindler, a lawyer for the United States, says:

25           "We would have no objection to retaining the

Reproduced from the holdings of the National Archives at Riverside

43

1    status quo" --

2 this is on October 22.

3         MR. HOLLANDER:  Excuse me.  What page are you reading

4 from?

5         MR. RIFKIND:  Page 128.

6         "-- and, as Mr. Miller just informed you, that

7         consists of somebody from Mr. Buchen's office and

8         someone from Mr. Miller's office conducting these

9         searches jointly.  That status quo is fine with us."

10        So that there is simply no question that pursuant

11 to some governmental purposes Mr. Buchen's representatives

12 had conducted jointly searches with Mr. Nixon's representatives.

13        I would like to add one other thought.  In the --

14        THE COURT:  Of course, that is something different

15 from what the court understood you previously to indicate,

16 and that was that pursuant to the control that the White

17 House has Mr. Buchen has been dipping his fingers into those

18 files and asserting and exercising the control and custody

19 that he has.  That is very different from having, agreeably

20 to Mr. Nixon, participated with Mr. Nixon's agent in a review

21 of those documents, if that is the meaning of what you read.

22        In any event, what difference does it make for

23 the purposes of this lawsuit?

24        Suppose the lawsuit were first started today.

25 Would you have any issue in the case with respect to what

Reproduced from the holdings of the National Archives at Riverside

1   may or may not have been said between Mr. Nixon or anyone

2   in the White House and the Department of Justice?

3           MR. RIFKIND:  Mr. Shestack would like to speak

4   to that point, your Honor.

5           THE COURT:  All right.

6           Mr. Shestack.

7           MR. SHESTACK:  Your Honor raised a very intriguing

8   possibility on the question of whether the government would

9   file a suit tomorrow if your Honor dismissed this suit today.

10  I was intrigued by that same question.  I asked Mr. Hollander

11  if, as a result of Mr. Saxbe's affidavit, Mr. Saxbe had made

12  a determination to file a suit promptly if this suit were

13  dismissed, and Mr. Hollander said he didn't know, apparently

14  Mr. Saxbe had made no such determination.

15          I would suggest to your Honor that no suit would

16  be likely to be filed.

17          Your Honor had pointed out in an early part of

18  the decision some time ago that two of the three main points

19  raised in this suit were already covered by an order of the

20  FCC.  Other aspects are under the continuing jurisdiction

21  of the FCC.

22          I would assume that a proper determination by the

23  government would reach the conclusion that it was the suit

24  was the side show and not the tactics; and no suit would

25  be brought after --

Reproduced from the holdings of the National Archives at Riverside

45

1  THE COURT: But why does this court concern itself

2 in any way with whether Mr. Saxbe in the exercise of his

3 discretion after a dismissal here did file new suits? Why

4 would this court be in any way concerned with that?

5  MR. SHESTACK: I think your Honor would not be

6 concerned. If your Honor dismissed it then it would be up

7 to the government to make a determination as to what it is

8 going to do at that point. It may want to sit down with

9 counsel, it may want to follow an earlier suggestion your

10 Honor made about going to the FCC. I don't think it is your

11 Honor's concern once your Honor dismisses this suit.

12  THE COURT: All right.

13  What is the posture of discovery by the defendants

14 at this date? What has been done in pursuit of the defendants'

15 discovery?

16  MR. SHESTACK: I think that all of the defendants

17 have been pursuing discovery. Speaking for NBC, your Honor,

18 we are well along in our discovery. We had received an

19 extension of time from the government and we --

20  THE COURT: All right. What have you done? Have

21 you taken some depositions?

22  MR. SHESTACK: No, your Honor. We have been going

23 through documents in response to interrogatories, identifying

24 our documents, gathering them together, made some documents

25 already available, made a whole roomful of documents available

Reproduced from the holdings of the National Archives at Riverside

46

1    for the government's perusal, --

2              THE COURT:  I am going to inquire of the government

3    in that respect.

4              What has the defendant done by way of discovery

5    in this case on issues other than your separate defense?

6              MR. SHESTACK:  Some of the defendants have filed

7    interrogatories, your Honor, going to various of the issues

8    in the case.  No depositions taken as yet.

9              THE COURT:  And those interrogatories have not

10   yet been answered?

11             MR. SHESTACK:  Some of them have been answered.

12             THE COURT:  All right.

13             MR. HOLLANDER:  Excuse me.  All of them have been

14   answered.

15             THE COURT:  What is the posture of the government's

16   discovery on the merits?

17             MR. HOLLANDER:  Your Honor, as you recall, a week

18   or so after the cases were filed we lodged a request for

19   production, and when your Honor made his order in July you

20   ordered production at the same time that we were to answer

21   interrogatories.

22             We answered the interrogatories, and after

23   consultation with defendants they told us uniformly they

24   were not through but they had documents available, and we

25   were talking about arrangements of where we should look at

Reproduced from the holdings of the National Archives at Riverside

1   them.  We decided among ourselves that until we got this

2   thing out of the way we would give them forty-five days more

3   to complete it.  So we haven't tried to do two things at

4   once.

5          THE COURT:  Well, I take it that the responses

6   given respectively by the two sides to the lawsuit indicate

7   that if these cases were dismissed today and recommenced

8   tomorrow or soon as a practical matter there would not be

9   any significant time lag as far as prosecution of the cases,

10  particular reference being had to discovery, would it?

11         MR. HOLLANDER:  I think it would, your Honor, and

12  I would urge you, if you are considering that course, that

13  if the dismissal be made it be made on the basis we originally

14  posed, that our discovery that you have ordered is on an

15  issue which is irrelevant and immaterial and not on the basis

16  of --

17         THE COURT:  Oh, no, no.

18         MR. HOLLANDER:  I don't know what you are suggesting

19  here --

20         THE COURT:  The court was seeking to make an inquiry

21  of both sides as to what discovery has so far been pursued,

22  respectively, on the merits of the lawsuit as distinguished

23  from the separate defense; and I take it from the responses

24  given that no significant loss of time or of work would result

25  if the cases were dismissed and recommenced forthwith.

Reproduced from the holdings of the *National Archives at Riverside*

1    Are you of any different view in that regard?

2    MR. HOLLANDER:  May I take a minute to confer,

3    your Honor?

4    THE COURT:  Yes, you  may.

5    And perhaps the defendants would want to make a

6    response to that.

7    (Pause.)

8    MR. HOLLANDER:  If it were dismissed on the basis

9    of irrelevancy and immateriality and, your Honor, --

10    THE COURT:  No.  Hold on.  Wait.

11    It wouldn't be dismissed on the basis of relevancy

12    or materiality --

13    MR. HOLLANDER:  I don't want a voluntary dismissal,

14    your Honor.

15    THE COURT:  What is that?

16    MR. HOLLANDER:  I can't court a voluntary dismissal.

17    If what your Honor is suggesting is that the same orders

18    for production would exist and that we would not lose the

19    orders that your Honor has given, that is, going back to

20    the fifties and the selected years, as a practical matter

21    I suppose it wouldn't make any difference.  But if we would

22    lose what we have gained here, and it has taken two years

23    to get to this point, I will be very reluctant to --

24    THE COURT:  The court would anticipate, as a practical

25    matter, that there would be little if any loss of time in

Reproduced from the holdings of the National Archives at Riverside

1    the prosecution of the newly filed suits, because the time

2    and effort that have gone into discovery on the merits on

3    each side would redound to the benefit of each side who had

4    pursued such discovery; and, hence, as a practical matter,

5    it wouldn't make a great deal of difference in time.

6           MR. HOLLANDER:  It wouldn't make a great deal of

7    difference, your Honor, unless the defendants told your Honor

8    on the record that they were going to raise the same defenses

9    of improper motive and purpose,  as Mr. Rifkind suggested,

10   and just say this was a sham, that we were refiling it with

11   a new attorney general, but it was a sham and everybody was

12   just carrying on the same old conspiracy that they alleged.

13          THE COURT:  We would decide that one pretty quickly,

14   I would rather think.

15          MR. BERGSON:  May I be heard on that, your Honor?

16          THE COURT:  Yes, sir.  Mr. Bergson.

17          MR. BERGSON:  If this case is dismissed and if

18   a new suit is brought it would seem to me that it would have

19   to be brought on the basis of facts existing today.  This

20   is an equity suit, seeking to enjoin, as the attorney general

21   says, continuing violations.

22          It would appear to me that by failing to comply

23   with your Honor's order to produce the list from the White

24   House they have made an election to abandon the case that

25   they brought; and I have no question whatsoever that we would

Case 2:13-cv-00779-DOC-JCG   Document 106-10   Filed 02/17/14   Page 51 of 65   Page ID #:2714
Reproduced from the holdings of the National Archives at Riverside

1    get no antitrust immunity for the future by any dismissal

2    of this action.  But I think that a dismissal of this action

3    at this time cuts off past conduct and --

4            THE COURT:  Why?  Why would that be?

5            MR. BERGSON:  Because the purpose of the action

6    is to enjoin a contining violation.  What are the continuing

7    violations here?

8            THE COURT:  Well, that would be the same whether

9    the present suit resulted in a decree of this court or a

10   new suit did it.  All it could do would be to look toward

11   the future, wouldn't it?

12           MR. BERGSON:  But actions which are continuing

13   as of the day after the dismissal of this case was entered,

14   I think they have made their election, so far as this case

15   is concerned.

16           I bit the bullet and did that myself when I was

17   assistant attorney general.  I was the assistant attorney

18   general in charge of the antitrust division at the time the

19   Cotton Valley case was brought.

20           THE COURT:  That is known to the court, Mr. Bergson,

21   but --

22           MR. BERGSON:  And we bit the bullet in that case

23   and we said as a matter of governmental policy we were not

24   going to turn over FBI reports, and in those days FBI reports

25   were in a little different status than at this time.

Reproduced from the holdings of the National Archives at Riverside

1   THE COURT:  Yes, but that continued to be a matter

2   the court deemed to be properly available to the defendants.

3   If this case now is commenced, recommenced, these issues

4   as to which the government has, as you put it that way, been

5   reluctant to disclose --

6   MR. BERGSON:  Oh, no, your Honor.  I --

7   THE COURT:  -- it would be something different,

8   because it would no longer have any relevance to the merits

9   of the lawsuit and would not relate to any defenses.

10  MR. BERGSON:  I am afraid I haven't made myself

11  clear, your Honor.

12  I am not saying that we would have any right now

13  to claim that these suits were brought for an impermissible

14  purpose, such as are alleged in our affirmative defenses

15  which the government has moved to strike and you have refused

16  to strike.  I agree with that.  Of course we can't make that

17  claim now.  We would assume that this case, if it were brought,

18  when it was brought would be an honestly brought case and

19  not brought for any impermissible purpose.

20  I am talking about the merits of the case and the

21  impact of the discovery that has already taken place so far

22  as the case that is about to brought is concerned.

23  THE COURT:  I take it, Mr. Bergson, you are suggesting

24  that discovery has looked into past activity which would

25  not be relevant to the newly commenced lawsuit.

Reproduced from the holdings of the National Archives at Riverside

52

1          MR. BERGSON:  Exactly.

2          THE COURT:  How could that be?  Why not?

3          MR. BERGSON:  Because, No. 1, as Mr. Shestack pointed

4   out, and as your Honor pointed out in his opinion, we are

5   charged with extorting syndication rights.  Under the Federal

6   Communication rules we can't extort syndication rights even

7   if we wanted to.  Now, there hasn't been a syndicated program

8   by any of the networks since 1971.

9          THE COURT:  You would be able to make that contention

10  in the pending lawsuit too, would you not, just as much as

11  you would in the newly commenced lawsuit?

12         MR. BERGSON:  But it seems to me, your Honor, that

13  the newly commenced lawsuit -- and there are Supreme Court

14  cases on this; there is the Lawler case, for example, which

15  was a case where there had been a prior settlement.  The

16  court said, "Of course, you can bring an action for anything

17  that transpired after the prior settlement, but you cannot

18  bring back into the lawsuit that which happened prior to

19  the settlement."

20         THE COURT:  I take it because the settlement embraced

21  those items.

22         MR. BERGSON:  But here, your Honor, I think this

23  ruling embraces those items, because I --

24         THE COURT:  If it is the result of the court's

25  ruling the court will make it very clear in its ruling that

Reproduced from the holdings of the National Archives at Riverside

53

1    it didn't.

2            MR. BERGSON:  But it would seem to me, your Honor,

3    that a dismissal here on the basis of the --and I say this

4    advisedly -- wilful failure to comply with your Honor's order

5    should be a bar to any action based on anything that transpired

6    prior to that order.

7            THE COURT:  Well, it would be only if the court

8    in the exercise of its discretion under rule 37 determined

9    that it was a dismissal with prejudice.  This court has reposed

10   in it the inherent power, if the dismissal is ordered as

11   a sanction, to do so on such terms as are just; and this

12   court would not on this record make any determination that

13   a dismissal with prejudice would be an appropriate sanction

14   to impose against the government.  That appears compellingly

15   clear.

16           The court here has the power under the rules to

17   make such orders in regard to the failure as are just and,

18   among others, it recites what can, and it is the usual situation

19   in which the recital   of those is not to exclude others.

20   The court entertains no doubt of its power and ability under

21   the rules to accomplish a dismissal without prejudice.

22           Mr. Rifkind.

23           MR. RIFKIND:  May I speak to that for just a moment?

24           We are ready, willing and able to go forward and

25   defend this lawsuit.  If we defend it and we prevail, either

Reproduced from the holdings of the National Archives at Riverside

1   on the grounds of one or another of the affirmative defenses

2   or because the government failed to prove its case, then

3   whatever consequences would flow from that judgment would

4   redound to our advantage.  That judgment even under those

5   circumstances would not constitute, of course, a license

6   to violate the antitrust laws in perpetuity, as Mr. Hollander

7   suggests.  But whatever advantages flow from it we would

8   be entitled to.

9           I don't see why, when the government has, I submit,

10  voluntarily chosen not to comply with your Honor's order

11  and thereby deprived us of a right to defend the case that

12  they should be rewarded by the opportunity to bring a new

13  action tomorrow on a Chinese copy of this complaint and we

14  should be deprived of that advantage.

15          THE COURT:  Well, you ought to be deprived of a

16  defense which isn't yours to have, and in a lawsuit commenced

17  today it clearly would not be a defense available to you;

18  and the court does not view the course followed by the

19  government as being so culpable or --

20          MR. RIFKIND:  Your Honor, I don't mean to suggest --

21          THE COURT:  -- or otherwise with regard to what

22  they were ordered to do as to warrant any severe sanction

23  against the government.

24          MR. RIFKIND:  May I say two things?

25          First, I do not mean to suggest -- because I don't

Reproduced from the holdings of the National Archives at Riverside

1   know it to be the fact -- that the government's position

2   has been wrongful in the sense of some malicious intent.

3   That isn't what wilful or voluntary means in the context

4   of rule 37.  The cases are quite clear it means voluntary,

5   it means intentional, whether for a good purpose or bad,

6   and the purpose may be perfectly good here.

7           Secondly, --

8           THE COURT:  Mr. Rifkind, there is no sense in arguing

9   that matter, because it is so self-evident to the court that

10  the discretion reposed in the court with regard to motions

11  to dismiss for voluntary action on the part of the other

12  side in failing to do what it was supposed to do brings into

13  play an evaluation of things that relate wholly to nonvoluntary

14  aspects.

15          There are pretty bad voluntary things and there

16  are not so bad voluntary things, and this court has to make

17  a determination, in measuring a sanction if it comes to do

18  so, of the quality of the act.

19          MR. RIFKIND:  Your Honor, I have no doubt that

20  the matter is reposed in the court's discretion..  I would

21  urge that in exercising that discretion the court weigh serious-

22  ly the fact, if it be the fact, that the defenses involved

23  assert a first amendment violation.  They assert that we

24  are being harassed and intimidated, that suit was brought

25  to harass us and intimidate us in the exercise of a value

Reproduced from the holdings of the National Archives at Riverside

1   as important and indeed as supreme as the freedom of the

2   press and freedom of speech, and that the reinstitution of

3   this suit tomorrow by a technical refiling of a Chinese copy

4   of the complaint would permit that harassment to succeed.

5       THE COURT:  Well, the court would expect it not

6   to be a Chinese copy but an English copy, and it would be

7   looked upon by the court exactly as if it were first even

8   thought of by an attorney general without any regard to what

9   other attorneys general might have done under or not under

10  the influence of another administration; and, hence, the

11  court is unable to view the situation that you suggest that

12  it would constitute by any view a harassment of the defendants

13  in the exercise of first amendment rights.  It doesn't fall

14  within that category at all.

15      Mr. Bergson has indicated rather clearly that it

16  is his view that another suit started would not be infected

17  with the vice claimed in the presently pending suits, in

18  the sense that that affirmative defense of motive would not

19  be available.

20      Are you of any different view, Mr. Rifkind?

21      MR. RIFKIND:  I'm sorry.  I missed your Honor's

22  question.  I beg your pardon.

23      THE COURT:  Well, it could probably be better stated

24  in any event.

25      Mr. Bergson seems to indicate that a new suit commenced

Reproduced from the holdings of the National Archives at Riverside

1   after dismissal of this would not afford to the defendants

2   the affirmative defense of motivation, which has been the

3   subject of this case.

4            Are you of any different view?

5            MR. RIFKIND:  Yes.  But only, I think, in slight

6   measure.

7            I think that we would be entitled to explore the

8   question whether the next suit was the fruit of the poisonous

9   tree or, indeed, a wholly independent determination.

10           In other words, your Honor, there is a normal proced-

11  ure in the Department of Justice.  Antitrust complaints are

12  not filed like that.  Normally speaking, prospective defendants

13  are invited in, they are invited to discuss the merits of

14  the matter before an action is brought.  There would be some

15  indication as to what was going on, if they were following

16  their customary procedures. Normally it is analyzed by a

17  lot of people, based on contemporary facts.

18           I don't know whether Mr. Saxbe has conducted such

19  an independent determination.  He says he has read the historic-

20  al file, which goes back quite a few years.

21           If it is a kneejerk reaction to this case we would

22  urge that we are entitled to make the same defense, if the

23  second action was a maneuver of the first action and was

24  tainted by it.

25           If it is in fact independent then it is in fact

Reproduced from the holdings of the National Archives at Riverside

1    independent and I think they are entitled to go forward with

2    it without reference to the defense.

3            THE COURT:  All right.

4            Mr. Shestack, what is your view in that regard?

5            MR. SHESTACK:  Your Honor, I think my view is that

6    I feel so strongly that the suit itself is not a good one

7    on the merits I would have confidence that we can sit down

8    with Mr. Saxbe and persuade him not to institute a new action

9    after we review the current state of the industry and what

10   has happened in the FCC.

11           THE COURT:  Well, you sound by that statement just

12   as anxious as Mr. Hollander expressed himself to be to get

13   at the merits of the matter.  Isn't that what you are saying?

14           MR. SHESTACK:  I think we would be anxious to get

15   at the merits certainly with the attorney general, and I

16   think Mr. Hollander would not preclude the idea of sitting

17   down with the attorney general and to discuss the desirability

18   or the advisability or need for a new suit at this time.

19           THE COURT:  Well, I am sure he wouldn't if the

20   attorney general said he wanted to sit down.

21           MR. SHESTACK:  Well, to me, your Honor, it would

22   be a measure of the good faith of that office.  After the

23   circumstances of his case I would assume that almost as a

24   matter of obvious fact the attorney general would want to

25   sit down and discuss it, in view of the history of the case.

Reproduced from the holdings of the National Archives at Riverside

1      THE COURT:  It appears to the court that, taking

2  the overall and appropriate and proper view of all that is

3  here involved, that the government either does or does not

4  have a positon undder the antitrust laws which it wishes

5  to vindicate on the merits, and that the defendants have

6  a view that theirs is a defensible position on the merits.

7  That is the usual grist of the mill for lawsuits; and that

8  has relation solely to the merits; and it is a regrettable

9  thing to have the merits, consideration of and determination

10  on the merits, defeated for other reasons.

11      Sometimes those other reasons supervene, though,

12  in their importance, and this defense that was here asserted

13  may well have been that kind of a defense and if it were

14  pursued it might have prevailed.

15      But it does seem that what should be done here

16  is to allow the merits to be litigated or at least resolved,

17  with or without further pursuit of the lawsuits or of lawsuits;

18  and t seem that if that were done certainly a court ought

19  to be inventive enough and counsel ought to be cooperative

20  enough to see that whatever has been done heretofore on the

21  merits would not be wasted motion in new suits if they were

22  brought.

23      The only matters, I take it, that are before the

24  court are the three motions to dismiss.  The court is satisfied

25  that on this record it could make a finding of the sort necessary

Reproduced from the holdings of the National Archives at Riverside

60

1  to support under rule 37(b)(2), (a) and (c), and particularly

2  (c), an order of dismissal without prejudice, and the court

3  indicates it is disposed so to do.

4  It will not rule at this time but upon completion

5  of these proceedings will take a submission on each of the

6  motions.

7  Does any of the defendants have anything to add

8  to what has been said so far?

9  MR. BERGSON:  So far as ABC is concerned, your

10  Honor, I think the matter has been thoroughly aired.

11  MR. RIFKIND:  I subscribe to that, your Honor.

12  MR. SHESTACK:  I agree.

13  THE COURT:  Does the government wish to be heard

14  further in any respect?

15  MR. HOLLANDER:  Only, your Honor, in the respect

16  that I don't wish to imply by my silence that I agree with

17  Mr. Bergson one percent.  In other words, that if these cases

18  were brought tomorrow they would involve the same violations,

19  they would be, as your Honor pointed out, English --

20  THE COURT:  Of course, we don't need to get into

21  that, though, Mr. Hollander, because that is anticipatory,

22  at the very least.

23  MR. HOLLANDER:  Yes, your Honor.

24  THE COURT:  You gentlemen might have some interesting

25  discussion over lunch on that score and you might come to

Reproduced from the holdings of the National Archives at Riverside

1    some agreement mutually. But that is something that is not

2    here involved in what is before the court at the moment.

3              Anything further?

4              MR. HOLLANDER: Excuse me just a moment, your Honor.

5                  (Pause.)

6              MR. HOLLANDER: I think, your Honor, we have nothing

7    further to say.

8              THE COURT: There is one thought that occurs to

9    the court.

10             The plaintiff is unable under the rules, as the

11   court understands them, to effectuate a voluntary dismissal

12   except upon stipulation of the parties, each defendant being

13   in agreement thereto. I take it from what you have stated,

14   Mr. Rifkind, that you have some expectation if dismissal

15   were accomplished and new suits filed of pursuing the same

16   affirmative defense of motivation on what you have chosen

17   to describe as the fruit of the poisoned tree, and that --

18             MR. RIFKIND: Obviously depending, your Honor,

19   on when, where and under what circumstances the complaint

20   were filed.

21             THE COURT: Well, that came to mind as a consideration

22   in this regard -- and I suppose it is fair to put this --

23   whether there is a disposition on the part of all parties

24   to stipulate to a dismissal.

25             Would you be in a position to respond to that,

Reproduced from the holdings of the National Archives at Riverside

1    Mr. Rifkind?

2            MR. RIFKIND:  I think that is something we would

3    probably like to caucus about and perhaps consult together.

4            MR. HOLLANDER:  I would only want to stipulate,

5    your Honor, if it were understood that there wouldn't be

6    a second side show involved in the next case.

7            THE COURT:  Oh, you can't ask that.  Side shows

8    are a part of the trial of lawsuits, and defendants -- I

9    assume you are referring to affirmative defenses -- Lawyers

10   assert affirmative defenses and create, if you wish, side

11   shows all the time; and either they have something or they

12   don't.  If they think they do they are in a position to pursue

13   it; and it would seem to the court unreasonable on the part

14   of the government to assert some condition to any such stipula-

15   tion that the defendants would waive anything.

16           Well, that is anticipatory also.  It's a possibility.

17           MR. HOLLANDER:  May I just respond for a second,

18   your Honor?

19           THE COURT:  Yes, sir.

20           MR. HOLLANDER:  What I had in mind was, if the

21   case were brought tomorrow before your Honor and they raised

22   the question, aside from the fruit of the tree, that they

23   therefore had to have discovery in the department, as was

24   indicated by Mr. Rifkind, as to the circumstances under which

25   the attorney general brought the case, we would be just exchanging

Reproduced from the holdings of the National Archives at Riverside

1   one side show for another and your Honor wouldn't have gained

2   what I understand you have been trying to gain; and that

3   is all I am trying to point out, your Honor.

4          THE COURT:  That is a matter that the court would

5   have to rule on when and if it came before the court.  There

6   is no question about that.

7          Anything further, Gentlemen?

8          Very well.

9          We stand adjourned.

10         Each of the matters stands under submission.

11                        - - -

Reproduced from the holdings of the National Archives at Riverside

64

1   IN THE UNITED STATES DISTRICT COURT

2   FOR THE CENTRAL DISTRICT OF CALIFORNIA

3                   - - -

4   HONORABLE ROBERT J. KELLEHER, JUDGE PRESIDING

5                   - - -

6   UNITED STATES OF AMERICA,                )
                        Plaintiff,           )
7                                            )   Civil Action
                vs.                          )
8                                            )   No. 72-819-RJK
    NATIONAL BROADCASTING COMPANY, INC.,     )
9                       Defendant.           )

10  UNITED STATES OF AMERICA,                )
                        Plaintiff,           )
11                                           )   Civil Action
                vs.                          )
12                                           )   No. 72-820-RJK
    COLUMBIA BROADCASTING SYSTEM, INC.,      )
13                      Defendant.           )

14  UNITED STATES OF AMERICA,                )
                        Plaintiff,           )
15              vs.                          )   Civil Action
                                             )
16  AMERICAN BROADCASTING COMPANIES, INC., ) No. 72-821-RJK
                        Defendant.           )

17                  - - -

18  REPORTER'S CERTIFICATE

19          I, Edward Newlander, do hereby certify that I

20  reported the proceedings herein on Tuesday, November 12, 1974,

21  and that the foregoing is a full, true and accurate transcript

22  thereof.

23          Los Angeles, California; November 13, 1974.

24

25
                            Official Reporter
                            United States District Court
                            Central District of California

EDWARD NEWLANDER, OFFICAL REPORTER

                - - -