# Exhibit 12

(Cardona Declaration)

KEKER & VAN NEST LLP
JOHN KEKER (SBN 49092)
jkeker@kvn.com
ELLIOT R. PETERS (SBN 158708)
epeters@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:   415 397 7188

CAHILL GORDON & REINDEL LLP
FLOYD ABRAMS (*pro hac vice*)
fabrams@cahill.com
S. PENNY WINDLE (*pro hac vice*)
pwindle@cahill.com
80 Pine Street
New York, New York 10005-1702
Telephone: 212 701 3000
Facsimile: 212 269 5420

KELLER RACKAUCKAS LLP
JENNIFER L. KELLER (SBN 84412)
keller@krlawllp.com
18500 Von Karman Avenue, Suite 560
Irvine, CA 92612
Telephone: 949 476 8700
Facsimile: 949 476 0900

Attorneys for Defendants THE MCGRAW-HILL COMPANIES, INC., and STANDARD & POOR'S FINANCIAL SERVICES LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>MCGRAW-HILL COMPANIES, INC. and STANDARD & POOR'S FINANCIAL SERVICES LLC,<br><br>                              Defendants. | Case No. CV13-779 DOC (JCGx)<br><br>**DEFENDANTS' NOTICE OF REQUEST FOR PRODUCTION OF DOCUMENTS** |

TO THE UNITED STATES OF AMERICA AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to Rule 45 of the Federal Rules of Civil Procedure, a subpoena (a copy of which is attached) will be served upon the Board of Governors of the Federal Reserve System commanding the production of documents as set forth in Schedule A attached thereto, pursuant to the definitions and instructions set forth in Schedule A, on or before September 26, 2013.

Dated:     August 26, 2013
               New York, New York

By: _____
S. Penny Windle

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Columbia

| | | |
|---|---|---|
| United States of America | ) | |
| Plaintiff | ) | |
| v. | ) | Civil Action No.   CV 13-779 DOC (JCGx) |
| McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services LLC | ) ) | (If the action is pending in another district, state where: |
| Defendant | ) | Central District of California    ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   Secretary of the Board, Board of Governors of the Federal Reserve System
20th and C Streets, NW  Washington, DC 20551

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: Documents responsive to the Requests set forth at Schedule A, which should be produced to the attention of S. Penny Windle of Cahill Gordon & Reindel LLP at the address set forth below.

| Place: Cahill Gordon & Reindel LLP<br>1990 K Street, NW  Suite 950<br>Washington, DC 20006 | Date and Time:<br>09/26/2013 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   08/26/2013

CLERK OF COURT

OR   /s/ *[signature]*

Signature of Clerk or Deputy Clerk          Attorney's signature

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* McGraw Hill Financial, Inc. and Standard & Poor's Financial Services LLC           , who issues or requests this subpoena, are:

S. Penny Windle, Cahill Gordon & Reindel LLP
80 Pine Street, New York, NY 10005
pwindle@cahill.com/212-701-3000

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. CV 13-779 DOC (JCGx)

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____
was received by me on *(date)* _____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of
$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   **(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
   **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:
   **(i)** fails to allow a reasonable time to comply;
   **(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
   **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
   **(i)** disclosing a trade secret or other confidential research, development, or commercial information;
   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
   **(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   **(i)** expressly make the claim; and
   **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## SCHEDULE A

I. DEFINITIONS

1. "CDO" means collateralized-debt obligation.

2. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

3. "Complaint" means the February 4, 2013 Complaint filed against McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services LLC, *United States v. McGraw-Hill Cos.*, No. 2:13-cv-00779 (JCGx) (C.D. Cal.), ECF No. 1.

4. The term "document" and "documents" shall be construed in the broadest sense allowed by Rule 34 of the Federal Rules of Civil Procedure, and includes, but is not limited to, any writings, drawings, graphs, charts, photographs, phonograph records, tape recordings, notes, diaries, calendars, books, papers, accounts, electronic or videotape recordings, and any computer-generated, computer-stored, or electronically stored matter from which information can be obtained and translated, if necessary, into reasonable useable form. This includes preliminary versions, drafts, and revisions.

5. "DOJ" means the U.S. Department of Justice.

6. "FIRREA" means Section 951 of the Financial Institutions Reform, Recovery and Enforcement Act, codified at 12 U.S.C. § 1833a.

7. The term "FIRREA Investigation" means the investigation conducted by Plaintiff United States of America culminating in the filing of the Complaint.

8. "FOMC" means the Federal Open Market Committee.

9. The term "including" means including but not limited to.

...

10. "NRSRO" means Nationally Recognized Statistical Rating Organization, as defined in 15 USC § 78c(a)(62).

11. The term "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all documents and information that would be excluded if such word were not so construed.

12. The term "relating to" means relating to, referring to, concerning, describing, pertaining to, evidencing, reflecting, regarding, constituting, involving, or touching upon in any way. Each of these terms may be used interchangeably herein and will be treated as encompassing all these meanings.

13. "RMBS" means residential mortgage-backed securities.

14. "S&P" means McGraw Hill Financial, Inc. (formerly known as The McGraw-Hill Companies, Inc.), Standard & Poor's Financial Services LLC, and Standard & Poor's Ratings Services.

15. "SEC" means the U.S. Securities & Exchange Commission.

16. "Treasury" means the U.S. Department of the Treasury.

17. "You" or "Your" means the Board of Governors of the Federal Reserve System, including each of the Board Members and each of its employees or agents, including advisors acting or purporting to act on its behalf.

18. Words in the singular include the plural, and words in the plural include the singular. "Each" and "any" are both singular and plural.

19. Words in the past tense include the present, and words in the present tense include the past.

II. <u>INSTRUCTIONS</u>

    1.    If a document is withheld on the ground of privilege or otherwise, please prepare a privilege log in compliance with Rule 45 of the Federal Rules of Civil Procedure.

    2.    Notwithstanding the assertion of any objections to the document requests set forth below, You shall produce all documents responsive to all parts of each request to which objection is not made.

    3.    If portions of documents are withheld on the basis of privilege or otherwise, the withheld portions must be stamped with the word "redacted," the remainder of the document must be produced, and the information requested in Instruction Nos. 1-2, above, shall be provided with respect to the redacted or withheld portion of the document.

    4.    If any document responsive to the document requests set forth below has been destroyed, lost, discarded or is otherwise not capable of being produced, please identify each such document and provide for each (a) the author(s) thereof; (b) the recipient(s) thereof; (c) the subject matter thereof; (d) the date of the document; (e) the document's length; (f) the date on which the document was lost or destroyed; and (g) if the document was destroyed, the reason(s) for its destruction, the manner of its destruction, and the identity of the person(s) requesting, authorizing and performing the destruction.

    5.    In response to the document requests set forth below, You shall produce all documents in Your possession, custody or control and all documents in the possession, custody or control of any of Your agents, attorneys or representatives, regardless of the location of such documents.

III. DOCUMENTS TO BE PRODUCED

    1.    All documents reviewed, considered by and/or supplied to Ben S. Bernanke, Chairman of the Board of Governors of the Federal Reserve System, in connection with preparing, making or reviewing each of the following statements:

    a.    A statement at a meeting of the Federal Open Market Committee on March 20-21, 2007: "The housing market is, of course, central to near-term developments. The central scenario that housing will stabilize sometime during the middle of the year remains intact, but there have been a few negative innovations. We've noted the subprime issues and the possibility of foreclosures, reduced confidence, and tightened credit terms, and I've also noted that reports from builders about the spring selling season have not been particularly upbeat, in general. At the same time, we continue to see rough stability in sales, starts, and permits. The effects of the decline in subprime lending may have already been mostly seen, since that has slowed from last fall. Mortgage rates, of course, remain quite low, and the labor market is a key determinant of housing demand and of mortgage delinquencies, particularly cross-sectionally. Across the country, there's a very close correlation between foreclosure rates and state unemployment rates. So long as the labor market remains strong, I would think that the general health of the housing market would be improving. The housing market, I think, will follow the same scenario, but there are a few negative innovations."

    b.    A statement before the Joint Economic Committee of the U.S. Congress on March 28, 2007: "At this juncture, however, the impact on the broader economy and financial markets of the problems in the subprime market seems likely to be contained."

    c.    A statement at the Federal Reserve Bank of Chicago's 43rd Annual Conference on Bank Structure and Competition on May 17, 2007: "All that said, given the fundamental factors in place that should support the demand for housing, we believe the effect of the troubles in the subprime sector on the broader housing market will likely be limited, and we do not expect significant spillovers from the subprime market to the rest of the economy or to the financial system."

    d.    A statement at a meeting of the Federal Open Market Committee on October 30-31, 2007: "Let me try to summarize this discussion. It is a little harder than usual. Broadly, the macroeconomic news came in slightly better than expected during the intermeeting period. Housing has been very weak, as expected; but consumption, investment, and net exports were relatively strong in recent months. In the aggregate data, there is yet no clear sign of a spillover from housing. Most participants expect several weak quarters followed by recovery later next year."

    e.    A statement referenced in the article, "Anatomy of a Meltdown," published in The New Yorker on December 1, 2008: "I and others were mistaken early on in saying that the subprime crisis would be contained. The causal relationship between

4

the housing problem and the broad financial system was very complex and difficult to predict."

  f. A statement before the U.S. Senate Banking Committee on December 3, 2009: "I did not anticipate a crisis of this magnitude and severity."

2. Documents sufficient to identify each of the individuals, by name and employing entity, involved in (i) preparing, (ii) reviewing or (iii) discussing with Chairman Bernanke, any of the statements in Request 1 (a)-(f) (before or after the statement was made), including, but not limited to, individuals who provided documents or other information reviewed, referenced, relied upon or used in connection with the preparation or review of any such statements.

3. As to each individual identified by the document responses to Request 2 and as to Chairman Bernanke himself, all documents prepared, reviewed or received by that individual through December 31, 2009, constituting, containing or referring to:

  a. any subsequent comments made or received with respect to any of the statements identified in Request 1, above;

  b. the expected performance of the U.S. residential housing market in any portion of the period 2004-2008;

  c. any prediction of a decline in home prices to occur in 2007 and/or 2008, and any response to any such prediction;

  d. the expected performance of non-prime residential mortgages originated or securitized in any portion of the period 2004-2008;

  e. the expected performance of RMBS and/or CDOs exposed to RMBS issued in any portion of the period 2004-2008;

  f. any assessment, discussion or analysis of the ratings issued by any NRSRO with respect to RMBS and/or CDOs exposed to RMBS issued in any portion of the period 2004-2008;

  g. any comparison of the performance of ratings issued by different NRSROs in any portion of the period 2004-2008, whenever such comparisons were prepared;

  h. any identification of factors considered or to be considered at any time in the period 2004-2008 in evaluating the expected and/or actual performance of (i)

the United States residential housing market generally; (ii) non-prime residential mortgages; (iii) RMBS or (iv) CDOs exposed to RMBS.

4. All documents reviewed, considered by and/or supplied to Timothy Geithner, then-President of the Federal Reserve Bank of New York, in connection with preparing, making or reviewing each of the following statements:

a. A statement at a meeting of the Federal Open Market Committee on January 30-31, 2007: "Let me just go through the principal questions briefly. Is the worst behind us in both housing and autos? Probably, but we can't be sure yet. If we get some negative shock to income—to demand growth—we're still vulnerable to a more adverse adjustment in housing prices with potentially substantially negative effects on growth, in part because of the greater leverage now on household balance sheets. How strong does the economy look outside autos and housing? Pretty strong, it seems. We see no troubling signs of weakness, despite the disappointment on some aspects of investment spending."

b. A statement at a meeting of the Federal Open Market Committee on June 27-28, 2007: "With financial markets, we are at a delicate moment. The losses in subprime are still working their way through the system. Rating agencies are likely to downgrade a larger share of past issues, more than they have already. The marks that people show indicate that both hedge funds and dealers in a lot of this stuff may still have a way to go to catch up with the movement in market prices. This dynamic itself could induce a further reduction in willingness to finance new mortgages. You could see pockets of losses in the system, liquidity pressures in hedge funds and their counterparties, and further forced liquidations. It is possible that we will still have a bunch of that effect ahead of us, even if no big negative shock to demand occurs and induces a broader distress in consumer credit. We could also see it spread to commercial real estate. We could see a broader pullback from CDOs and CLOs as well, either from a general erosion of faith in the rating models—as Bill said, it is a possibility— or from just concerns about liquidity in those instruments. We could see a sharp, substantial widening of credit spreads provoked by an unanticipated default or two or just a general reassessment of risk at current prices."

c. A statement at a meeting of the Federal Open Market Committee on October 30-31, 2007: "Housing prices are still obviously sliding down. We don't really claim to know much about where they're going to end up or where we are in that process, but it seems that they are falling and probably at an accelerating rate."

5. Documents sufficient to identify each of the individuals, by name and employing entity, involved in the (i) preparing, (ii) reviewing or (iii) discussing with Mr. Geithner, any of the statements in Request 4 (a)-(c) (before or after the statement was made), including, but

not limited to, individuals who provided documents or other information reviewed, referenced, relied upon or used in connection with the preparation or review of any such statements.

      6.    As to each individual identified by the document responses to Request 5 and as to Mr. Geithner himself, all documents prepared, reviewed and/or received by that individual through December 31, 2009, constituting, containing or referring to:

      a.    any subsequent comments made or received with respect to any of the statements identified in Request 4, above;

      b.    the expected performance of the U.S. residential housing market in any portion of the period 2004-2008;

      c.    any prediction of a decline in home prices to occur in 2007 and/or 2008, and any response to any such prediction;

      d.    the expected performance of non-prime residential mortgages originated or securitized in any portion of the period 2004-2008;

      e.    the expected performance of RMBS and/or CDOs exposed to RMBS issued in any portion of the period 2004-2008;

      f.    any assessment, discussion or analysis of the ratings issued by any NRSRO with respect to RMBS and/or CDOs exposed to RMBS issued in any portion of the period 2004-2008;

      g.    any comparison of the performance of ratings issued by different NRSROs in any portion of the period 2004-2008, whenever such comparisons were prepared;

      h.    any identification of factors considered or to be considered at any time in the period 2004-2008 in evaluating the expected and/or actual performance of (i) the United States residential housing market generally; (ii) non-prime residential mortgages; (iii) RMBS or (iv) CDOs exposed to RMBS.

      7.    Transcripts of each meeting of the FOMC from January 1, 2004 through December 31, 2008.

      8.    All documents, including any Beige Books, Greenbooks, Bluebooks, Agendas, Policy Statements, Minutes, Summary of Economic Projections (including the underlying individual economic projections), prepared, circulated and/or reviewed in connection with

each meeting of the FOMC from January 1, 2004 through December 31, 2008, to the extent not publicly released.

9. Documents sufficient to identify each of the individuals, by name and employing entity, involved in the (i) preparing, (ii) considering or (iii) discussing any documents or information responsive to Request 8 relating to any speaker or presentation at the meetings concerning performance of the U.S. residential housing market.

10. As to each individual identified by the document responses to Request 9, all documents prepared, reviewed and/or received by that individual through December 31, 2009 constituting, containing or referring to:

    a. the expected performance of the U.S. residential housing market in any portion of the period 2004-2008;

    b. any prediction of a decline in home prices to occur in 2007 and/or 2008, and any response to any such prediction;

    c. the expected performance of non-prime residential mortgages originated or securitized in any portion of the period 2004-2008;

    d. the expected performance of RMBS and/or CDOs exposed to RMBS issued in any portion of the period 2004-2008;

    e. any assessment, discussion or analysis of the ratings issued by any NRSRO with respect to RMBS and/or CDOs exposed to RMBS issued in any portion of the period 2004-2008;

    f. any comparison of the performance of ratings issued by different NRSROs in any portion of the period 2004-2008, whenever such comparisons were prepared;

    g. any identification of factors considered or to be considered at any time in the period 2004-2008 in evaluating the expected and/or actual performance of (i) the United States residential housing market generally; (ii) non-prime residential mortgages; (iii) RMBS or (iv) CDOs exposed to RMBS.

11. All documents relating to, consisting of or reflecting any evaluation, assessment, study, finding or analysis made by You between 2004 and 2008 concerning any credit opinion (including any outlook and/or CreditWatch action or the like) by any NRSRO with respect to (i) any RMBS; and/or (ii) any CDO backed by RMBS.

12. All documents relating to, consisting of or reflecting any evaluation, assessment, study, finding or analysis made by You between 2004 and 2008 regarding the independence of any NRSRO.

13. All documents relating to, consisting of or reflecting any evaluation, assessment, study, finding or analysis made by or for You concerning credit ratings issued with respect to RMBS and/or CDOs exposed to RMBS issued between 2004 and 2008, relating to:

    a. the accuracy of the ratings of any NRSRO;

    b. the existence of perceived conflicts of interest of any NRSRO in its ratings;

    c. the meaning, use and/or performance of ratings issued by any NRSRO;

    d. the advisability of any institution or individual relying on ratings of any NRSRO;

    e. communications with any NRSRO as to items (a)-(d) above;

    f. the relative performance of various NRSROs.

14. All documents reflecting communications between You and any NRSRO relating to credit ratings issued with respect to RMBS and/or CDOs exposed to RMBS issued between 2004 and 2008.

15. All communications between You and (i) the DOJ, (ii) the SEC, (iii) Treasury, and/or (iv) any State Attorney General concerning:

    a. the expected performance of the U.S. residential housing market in any portion of the period 2004-2008;

  b. any prediction of a decline in home prices to occur in 2007 and/or 2008, and any response to any such prediction;

  c. the expected performance of non-prime residential mortgages originated or securitized in any portion of the period 2004-2008;

  d. the expected performance of RMBS and/or CDOs exposed to RMBS issued in any portion of the period 2004-2008;

  e. any assessment, discussion or analysis of the ratings issued by any NRSRO with respect to RMBS and/or CDOs exposed to RMBS issued in any portion of the period 2004-2008;

  f. any comparison of the performance of ratings issued by different NRSROs in any portion of the period 2004-2008, whenever such comparisons were prepared;

  g. any identification of factors considered or to be considered at any time in the period 2004-2008 in evaluating the expected and/or actual performance of (i) the United States residential housing market generally; (ii) non-prime residential mortgages; (iii) RMBS; or (iv) CDOs exposed to RMBS;

  h. S&P;

  i. any investigation of any NRSRO and/or the possibility of civil or criminal actions, sanctions or other possible steps of any kind leading to adverse consequences of any kind against any NRSRO.

  16. All documents and communications relating to Your knowledge or awareness, whenever acquired, of instances between 2004 and 2008 of residential mortgage loan origination fraud, including but not limited to complaints and investigations relating to the practices of any issuer, arranger, sponsor, underwriter or seller of RMBS or CDOs.

  17. All documents relating to S&P and received at any time from any employees in any Executive Department, the DOJ and/or the SEC relating to the period 2004-2008.

  18. All documents relating to the FIRREA Investigation and received from any employees in any Executive Department, the DOJ and/or the SEC.