# Exhibit 15

(Cardona Declaration)

# United States Department of Justice

## United States Attorney's Office
## Central District of California

*George S. Cardona*
*Phone: (213) 894-8323*
*E-mail: george.s.cardona@usdoj.gov*

*United States Courthouse*
*312 North Spring Street, 12th Floor*
*Los Angeles, California 90012*

October 1, 2013

**VIA E-MAIL**

John W. Keker
Keker & Van Nest LLP
633 Battery Street
San Francisco, California 94111-1809
Phone: (415) 391-5400
E-mail: jkeker@kvn.com

Re: United States v. McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services LLC, Case No. CV 13-00779-DOC (JCGx)

Dear Mr. Keker:

I write to follow up on our lengthy telephone conference this morning in which we discussed a variety of topics related to discovery requests pending in the above-captioned case.[1] Set out below are various matters on which we reached agreement and/or on which there remain outstanding requests for follow-up information.

(1) With respect to non-parties who (i) produce documents in response to the subpoenas issued to them in connection with this case by the United States pursuant to Fed. R. Civ. P. 45 but (ii) are not receiving any documents produced in discovery in this case, we agreed that the documents these non-parties produce may be subject to the protections accorded by the Protective Order in place in this case without requiring that these non-parties sign on to the Protective Order.

(2) With respect to the draft Rule 502(d) order that I emailed to you on Monday, September 30, 2013, you will get me your comments, and we will then discuss further if necessary before submitting a final proposed order to the court.

(3) With respect to possible Rule 30(b)(6) depositions of certain financial institutions, we advised you that we are looking at the week of October 28, 2013, to try and schedule two depositions. Tentatively, we believe one would be of Bank of America. The other remains to be determined after we receive additional documents in response to our Rule 45 subpoenas. We

[1] This was the third in a series of calls we have had to discuss pending discovery requests, including, in particular, Defendants' First Request for Production of Documents. The other calls were on September 6, 2013, and September 20, 2013.

also discussed the possibility of one or two additional depositions being scheduled for the next week, the week of November 4, 2013. We agreed to try and identify, and get you the documents relating to, the financial institutions to be deposed as quickly as we can. You agreed to check your schedules and let us know which dates during those weeks would work for scheduling of the depositions.

(4) With respect to the United States' First Request for Production of Documents, you agreed to our request that you prioritize requests 1-3 and indicated that you believed you would be able to produce certain core documents responsive to these requests (e.g., deal files, collateral lists, model runs, credit committee documents) promptly and in sufficient time for us to review them prior to our supplemental disclosures currently due November 18, 2013. With respect to email communications that might fall within requests 1-3, and with respect to requests 4-9, we indicated our understanding that additional time would be required, and that we would discuss further at a later time. With respect to request 9, we agreed that you would look for documents responsive to this request, and that we would look to see if we could locate in the documents we previously obtained from you in the course of the FIRREA investigation[2] an example of the type of document we are looking for and provide you with this example.

(5) With respect to Defendants' First Request for Production of Documents, I advised you that, in general, our goal was to get to a position where we could produce as much as possible in response to your requests while narrowing any disputes to those where we had truly insurmountable differences. I advised you that we were still talking with various federal agencies and Department of Justice ("DOJ") components to arrive at final positions with respect to your requests. With the caveat that our positions remained tentative and were being provided for discussion purposes only, I then went through your requests in detail, outlining in general terms our tentative positions and the issues we had identified with certain of the requests. Without repeating the entirety of our discussion, set out below are the areas in which one or the other of us agreed to consider providing additional information to assist in determining our respective positions on your requests:

(a) With respect to requests 1-3, which seek transcripts, summaries, notes, recordings, and videos of witness interviews and depositions: (i) we advised you that we believed that we had already provided you with those videos that were taken of sworn statements provided by witnesses in the FIRREA investigation – you agreed to check to confirm that this was the case, and to let us know which videos you have so we can confirm whether or not you in fact have received them all; and (ii) you agreed to consider whether you would provide us with a list of those witnesses you already know we interviewed during the FIRREA investigation, with us agreeing to then consider identifying for you whether we have notes and interview memoranda relating to those witnesses that we are declining to produce.

---

[2] As used throughout, "FIRREA investigation" refers to the United States' investigation of S&P conducted pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989.

(b) With respect to request 4, which seeks DOJ policies, practices, and procedures governing creation, use or retention of transcripts, summaries, notes, recordings, and videos of witness interviews and depositions, you agreed to consider whether you would provide us with additional information regarding what in particular you are looking for and why this is relevant.

(c) With respect to requests 5-15, 19-20, 40, 41, and 46-50, all of which seek, in different ways, documents gathered by DOJ in the FIRREA investigation, we noted our intention to provide you with as many of the gathered documents as we could, as well as the FIRREA subpoenas we issued to third-parties and our communications with those third-parties relating to those FIRREA subpoenas. We also noted, however, that certain of the documents gathered in the FIRREA investigation had been provided to DOJ subject to requests for confidentiality, and to the extent the source of the documents objected to our production of documents to you, we could not simply produce the documents. With this as background we agreed: (i) in accordance with requests we have received from several entities who produced documents in connection with the FIRREA investigation, to address confidentiality concerns and seek to forestall objections to production of documents to you, we will send you a letter seeking your agreement, in writing, that you will treat documents obtained in the FIRREA investigation that we produce to you pursuant to your document requests as covered by the Protective Order in place in this case despite the fact that those documents are not marked in accordance with the requirements of the Protective Order (this letter will follow separately); and (ii) to the extent that, despite this measure, we receive objections to production of documents to you, we will notify you of the objections and discuss with you how to proceed on a case-by-case basis.

(d) With respect to request 21, which seeks documents referencing the term "Alchemy," you agreed to consider our requests that you (i) provide us with additional information regarding your theory of relevance and (ii) narrow this request to reduce the burden of searching large volumes of hardcopy and email documents.

(e) With respect to requests 22-24, 25-27, and 28-30, which seek documents from, respectively, Treasury, the Board of Governors of the Federal Reserve System and Federal Open Market Committee, and the Federal Reserve Bank of New York: (i) we advised you that it remains our view that, with the exception of Treasury, the remaining entities are either independent regulatory entities or non-governmental entities from which documents are appropriately sought by way of Rule 45 subpoenas as opposed to a Rule 34 request to the United States as plaintiff; (ii) we explained that we did not think this position was inconsistent with that taken by DOJ in *Starr International Company, Inc. v. United States*, No. 11-cv-00779-TCW (Fed. Cl.); (iii) we noted that you had already served Rule 45 subpoenas on these entities (other than Treasury) and received back letters indicating a willingness on the part of those entities to discuss the subpoenas with you and see if any agreement could be reached regarding production; (iv) on behalf of Treasury, which is subject to your Rule 34 request, we indicated a willingness to engage in similar discussions; and (v) as a matter of practicality and convenience, we offered to assist in facilitating any discussions with the other entities. With this as background, you agreed to consider our request that you identify specific types of non-privileged documents of particular relevance not available from another source that you seek with these requests.

(f) With respect to requests 31 and 32, which seek assessments and studies of NRSRO independence and NRSRO credit ratings of RMBS and CDOs, you agreed to consider our request that you let us know if you are aware of any such assessments and studies other than those performed by the SEC, Senate Permanent Subcommittee, and FCIC, or provide us with other guidance that would narrow the request and assist in identifying any other relevant assessments and studies. With respect to the SEC and Senate subcommittee assessments, we advised you that non-public documents would have to be sought from those entities by way of Rule 45 subpoena, but that as a matter of practicality and convenience we were willing to assist in facilitating discussions regarding any such subpoenas. With respect to FCIC, we advised you that it no longer existed and that its records (approximately 550 boxes of hardcopy documents and more than 16 Terabytes of electronic data) had been transferred to NARA. You agreed to consider our request for additional information to narrow your requests so that we could work with NARA to determine whether meaningful searches of this volume of material could be done.

(g) With respect to requests 33, 34, 35, and 53, which seek documents relating to the decisions to investigate and file a complaint against S&P and your claim that these decisions were motivated by S&P's downgrade of the United States' credit rating, we advised you that we believed all or the vast majority of the documents sought would be privileged, and that we did not believe you had made the showing required to obtain discovery on your asserted First Amendment retaliation defense. You agreed to consider our request that you advise us if there was another asserted basis for relevance with respect to these documents. Subject to your identification of any such additional basis, we agreed that we would put in writing our final position with respect to these requests so that we could determine whether we had reached an impasse and needed to seek a ruling from the court.

(h) With respect to requests 36-40, 44, and 46, which seek documents relating to other potential investigations of NRSROs and the securitization of RMBS and CDOs, we advised you that we were still consulting with other DOJ components and other government agencies to determine our positions. We advised you that in connection with RMBS/CDO securitization investigations of which we were aware, there was a huge volume of electronic data (on the order of 22 Terabytes). You agreed to consider our request that you provide additional information to narrow your requests in order to assist us in formulating our final positions on those requests.

(i) With respect to requests 42 and 43, which seek documents relating to our communications with the SEC and State Attorneys General, we noted issues with relevance, overbreadth, and burden, and we advised you that: (i) with respect to documents in the possession only of the SEC and/or the states, those documents would need to be sought by way of Rule 45 subpoena; and (ii) that to the extent such documents were in our possession, any privileges or protections applicable to those documents would be preserved either by statute (15 U.S.C. § 78x(f), with respect to the SEC) or by the joint investigation/ common interest doctrine (with respect to the States). With this as background, you agreed to consider our request that you identify specific types of documents of particular relevance not available from another source and not categorically privileged or otherwise protected that you seek with these requests.

(j) With respect to request 45, which seeks documents relating to the United States' knowledge of mortgage fraud during the period 2004 to 2008, we noted issues with respect to relevance, overbreadth, and burden, explaining, in particular, that this would encompass a huge volume of documents, potentially involving every mortgage fraud investigation pending in every district in the country during the specified time period. With this as background, you agreed to consider our request that you provide additional information to narrow the request.

(k) With respect to requests 51 and 52, which seek documents relating to Gene Sperling, Director of the National Economic Council, and Timothy Geithner, during his term as Secretary of the Treasury, we noted issues with respect to relevance, overbreadth, and burden, explaining, in particular, that these requests potentially implicated the presidential communications privilege and the heighted standards for discovery addressed to the Executive Office of the President. With this as background, you agreed to consider our request that you provide additional information regarding the relevance of these requests and to narrow these requests.

(l) We agreed to schedule another call to further discuss the issues raised above for October 9, 2013, at 10:00 am PDT (1:00 pm EDT), with the understanding that you would cancel the call if you determined that you would not be providing any of the information we had requested.

(m) We agreed that we would provide our formal written response to your First Request for Documents as quickly as possible after our October 9, 2013 call, or after being advised that you had canceled the call.

Please let us know if you believe anything summarized above is inaccurate. We look forward to further discussions during the scheduled October 9 call.

Sincerely,

George S. Cardona
Chief Assistant United States Attorney
Central District of California