# Exhibit 16

(Cardona Declaration)

LAW OFFICES
## KEKER & VAN NEST
LLP

633 BATTERY STREET
SAN FRANCISCO, CA 94111-1809
TELEPHONE (415) 391-5400
FAX (415) 397-7188

JOHN W. KEKER
jkeker@kvn.com

October 8, 2013

**VIA ELECTRONIC MAIL**

George S. Cardona
Chief Assistant United States Attorney
United States Attorney's Office
Central District of California
Room 7516 Federal Building
300 North Los Angeles Street
Los Angeles, CA 90012

Re:   *United States of America v. McGraw Hill Companies, Inc. and Standard & Poor's Financial Services LLC*, Case No. CV13-00779-DOC (JCGx)

Dear George:

      We write ahead of our scheduled call tomorrow to respond preliminarily to the issues raised on our last call and your letter of October 1. In some cases we have follow up questions for you that we hope to discuss on the call tomorrow. We expect to send a more comprehensive response on these issues following our call.

      1.    We have provided you a signed copy of the letter agreement regarding the confidential treatment of certain documents produced by third parties during the FIRREA investigation. To ensure we know which documents require confidential treatment, we have also requested that you identify the documents by Bates numbers.

      2.    We have provided our response to your comments on the draft Rule 502(d) order. We can discuss it further tomorrow if necessary.

      3.    You have indicated that you intend to take Rule 30(b)(6) depositions of "certain financial institutions" including Bank of America during the week of October 28 and possibly also during the week of November 4. We will make ourselves available for any depositions that you may schedule during those weeks. As we noted on our prior call, we have not received from you any documents produced in response to the United States' Rule 45 subpoena to Bank of America. You stated that your interest in taking Bank of America's deposition arises from documents already in your possession. We asked that you produce those documents as soon as possible, and more than a week later we have not received anything. Please produce

786126.01

George S. Cardona
October 8, 2013
Page 2

immediately all documents currently in your possession from any financial institution that you will seek to depose in the initial phase of discovery, and please advise as soon as possible what the topics of your Rule 30(b)(6) requests will be.

    4.    We are working to provide as complete a response as possible to the priority items in your Rule 34 request to Standard & Poor's by the return date. In particular, we are gathering centrally-maintained deal files and records relating to the deals identified in those requests. We have also begun work on the additional requests, with the understanding that those are likely to require a longer time (particularly to the extent they require significant email review and production).

    5.    The balance of your October 1 letter discusses various requests made by S&P in its Rule 34 requests to the United States, to which we have the following preliminary responses and questions:

    a.    Requests 1-3:

        i.    Included in the attached document is a list of the videos that we have received from you to date. You agreed to review this list and confirm to us that we have in fact received all videos of sworn testimony taken during the FIRREA investigation.

        ii.    You have advised that you believe you do not possess transcripts or near-transcripts of any interviews other than those that have already been produced, and have asked us to identify any individuals that we know gave an interview or testimony. In the first instance, we believe that the real-time notes taken by Michael Nash, or another investigator, during witness interviews are likely to contain a transcript-like record of at least portions of those interviews. To the extent that any such notes exist with respect to interviews of any of the individuals for whom you have produced sworn testimony (Exhibit A to our Rule 34 Requests) or have identified on your Rule 26(a)(1)(A) disclosures, we do not believe that any assertion of privilege is appropriate. With respect to witnesses that do not appear on either of those lists, we will provide you with a list of witnesses we understand have given an interview during the FIRREA investigation, which we may need to supplement over time.

    b.    Request 4: You informed us on our October 1 call that you believe any responsive policies or procedures are publicly available. We ask that you identify any such policies or procedures (public or not) that govern the activities specified in our request. Examples of what we seek to obtain include: (i) identification of any policies or procedures relating to the retention of such materials, so we can assess whether any potentially relevant materials may have been destroyed, (ii) identification of any policies pertaining to the permissible uses of such materials, including the propriety of sharing such material with third

George S. Cardona
October 8, 2013
Page 3

        parties for their private use, and (iii) identification of any policies or privileges concerning the use of non-lawyers to record factual information obtained during the investigation.

c. Requests 5-13, 19-20, 40, 46-49: Your response with respect to these requests has to date focused exclusively on materials gathered "in the FIRREA investigation" of S&P. Your reading of the scope of most of these requests is too narrow. S&P seeks responsive documents not solely from the material gathered in the FIRREA investigation of S&P, but from any source including other investigations, inquiries or fact-finding conducted by DOJ, members of the Financial Fraud Task Force or other departments, agencies, bureaus and other sub-divisions of the Executive Branch. These requests call for a search of materials held by other components of DOJ as well as other relevant government entities and divisions. For example, according to statements made in pending litigation and the media, the members of the Financial Fraud Task Force and/or the RMBS Working Group are conducting more than a dozen investigations and/or litigations concerning the provision of false information to S&P in connection with the rating of RMBS and/or CDOs that are at issue in this lawsuit. In the first instance, we believe your response to these requests should at least include inquiries of the members of the Financial Fraud Task Force, the RMBS Working Group, HUD (including OFHEO), Treasury and the OCC, and we can re-visit inquiries of the other entities and divisions referenced in the requests thereafter.

d. Request 21: We understand from our October 1 call that you believe a search of all documents involving the code phrase "Project Alchemy" would be extremely broad and burdensome, involving large quantities of documents and electronic information. In order to help us narrow the scope and burden posed by this request, we ask that you identify (i) the date on which the phrase was first put into use, (ii) who selected the code phrase, and (iii) an identification of what the phrase refers to (our understanding is that the phrase referred specifically to your FIRREA investigation of Standard & Poor's, but we would like to confirm this).

e. Requests 22-30: On our October 1 call, you stated that you do not believe that the entities covered by these requests, other than Treasury, are entities from which documents are appropriately sought by way of Rule 34 requests to the United States. We disagree and believe that the United States at least includes the Board of Governors and FOMC, as the DOJ argued (at least with respect to the Board of Governors) in *Starr International v. United States*. Nonetheless, you stated that you believe your position is consistent with the position taken by the United States in *Starr*. We fail to see how the two positions could be consistent and ask that you explain that position further on tomorrow's call. You also asked that we identify specific types of documents that we are seeking with these requests. Examples of responsive documents include documents relating to residential mortgage delinquency and loss data, reports on residential mortgage fraud and

786126.01

George S. Cardona
October 8, 2013
Page 4

        economic projections relating to the residential housing and residential mortgage markets.

f.    Requests 31-32: You have asked S&P to identify any responsive assessments or studies that have been conducted other than those conducted by the Senate Permanent Subcommittee on Investigations, the SEC or the FCIC. We believe that the requests reach inquiries made by many other agents of the United States and not just these three large inquiries. For example, we have identified the following studies that appear to contain responsive material: (i) *Policy Statement on Financial Markets* (President's Working Group on Financial Markets, March 2008); (ii) *2010 Economic Report of the President* (Council of Economic Advisors, February 2010); (iii) *So That's Operational Risk* (Douglas Robertson, Office of the Comptroller the Currency, March 2011); and (iv) *Regulation of Rating Agencies* (Edward Altman, et al., September 2010 (submitted as part of a panel discussion hosted by the OCC, FDIC, and Board of Governors of the Federal Reserve System titled "Roundtable Discussion of Alternatives to the use of Credit Ratings and Standards under the Dodd-Frank Act" in November 2010)). On our call tomorrow, we would like to hear whether the United States has made any inquiry in an effort to respond to these requests with respect to any other potentially responsive assessments or studies, and specifically which departments and agencies have been queried.

g.    Requests 33-35 and 53: On our October 1 call, you stated that you believe we are required to make a "showing" in order to obtain discovery on our asserted defense relating to retaliation. We do not agree, and we ask that you set forth that position in writing, as you stated you would, which will enable us to respond more substantively on the merits. In addition, it is not clear that any search has been conducted by the United States to determine whether any responsive materials exist, whether they are in fact privileged, what privilege is asserted, and whether any non-privileged materials have been identified.

h.    Requests 36-40, 44 and 46. You advised during our October 1 call that material responsive to this request is extremely voluminous ("on the order of 22 Terabytes") and have asked us to consider ways that the requests could be narrowed. We responded that we would like to see in the first instance the subpoenas issued in the relevant investigations and the cover letters accompanying document productions. These materials are responsive to the subpoena and would assist us in narrowing the scope of materials to be produced. Any indices or lists of the categories of materials obtained in these investigations would also be helpful. We have not yet received any such material in response to our Rule 34 Requests.

i.    Requests 42 and 43: We requested, during our prior call, that the United States agree to produce any factual non-privileged materials responsive to these requests

786126.01

George S. Cardona
October 8, 2013
Page 5

    already in its possession. We do not believe there is any disagreement on that front, and expect the production of such material as soon as possible. To the extent responsive material is in your possession but is asserted to be privileged, we request identification of that material so that we can assess the claim of privilege and consider any possible narrowing of the requests.

j. Request 45: You have asked for additional information regarding this request because you believe it could potentially encompass a "huge volume of documents." As a first step, in order to enable us to consider narrowing the scope of this request, we believe that the United States should determine whether any reports, studies or similar analysis was conducted by any of the following entities during the 2004 to 2008 time frame concerning mortgage loan origination fraud: DOJ, FBI, HUD (including OFHEO), OCC, Treasury, and the Board of Governors. (We intentionally refer to reports, studies, or analyses to make clear that the inquiries in this letter focus on relatively formal work and not on anecdotal reports or emails at this time).

k. Requests 51 and 52: You have raised issues of relevance, overbreadth and burden of the materials sought in these requests, which relate to statements by Gene Sperling or Timothy Geithner concerning potential adverse actions against Standard & Poor's or The McGraw-Hill Companies. We believe that the relevance of any material responsive to these requests to S&P's defenses in this case is self-evident. The requests are quite specific as to custodian, topic and time period and we are not aware of any basis for a claim of overbreadth or burden. If you believe that there are likely to be voluminous materials responsive to these requests, we ask you to identify the scope of those materials so that we can consider any burden claim. Finally, you have asserted that the requests "potentially implicate the presidential communications privilege." If this privilege is actually being asserted, we request an identification of the material to which it allegedly applies.

We look forward to discussing these matters further tomorrow.

          Very truly yours,

          JOHN W. KEKER

JWK:mls
Enclosure

cc: Floyd Abrams
   Penny Windle
   Jennifer Keller

786126.01