# **Exhibit 20**

(Cardona Declaration)

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 2:13-cv-00779-DOC-JCG |
| MCGRAW-HILL COMPANIES, INC. and STANDARD & POOR'S FINANCIAL SERVICES LLC | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                         Federal Home Loan Bank of Atlanta
                    1475 Peachtree St., N.E., Atlanta, GA 30309

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Documents responsive to the Requests set forth at Schedule A.

| Place: 1475 Peachtree St., N.E. Atlanta, GA 30309 | Date and Time: 02/18/2014 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   01/14/2014

CLERK OF COURT

                                                                OR

_____                    *Steven K. Taylor /pm*
*Signature of Clerk or Deputy Clerk*                    _____
                                                                *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* The McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services LLC        , who issues or requests this subpoena, are:

Steven K. Taylor, Keker & Van Nest LLP, 633 Battery St., San Francisco, CA 94111 (staylor@kvn.com/415-773-6622)

### Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   2:13-cv-00779-DOC-JCG

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____                    on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____0.00_____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Schedule A to Subpoena to the Federal Home Loan Bank of Atlanta

I.   DEFINITIONS

     1.     "Action" means this action captioned *United States* v. *McGraw-Hill Cos.*, No. 2:13-cv-00779-DOC (JCGx), pending in the United States District Court for the Central District of California.

     2.     "CDO" means collateralized-debt obligation.

     3.     The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

     4.     The terms "document" and "documents" shall be construed in the broadest sense allowed by Rule 34 of the Federal Rules of Civil Procedure, and include, but are not limited to, any writings, drawings, graphs, charts, photographs, phonograph records, tape recordings, notes, diaries, calendars, books, papers, accounts, electronic or videotape recordings, and any computer-generated, computer-stored, or electronically stored matter from which information can be obtained and translated, if necessary, into reasonable useable form. This includes preliminary versions, drafts, and revisions.

     5.     "FIRREA" means Section 951 of the Financial Institutions Reform, Recovery and Enforcement Act, codified at 12 U.S.C. § 1833a.

     6.     "FHFA" means the Federal Housing Finance Agency and its predecessor agencies, the Office of Federal Housing Enterprise Oversight, the Federal Housing Finance Board, and the GSE mission office at the Department of Housing and Urban Development, including any employees, agents, advisors or other persons acting or purporting to act on its or their behalf.

     7.     "FHFB" means Federal Housing Finance Board.

8.    The term "Government Designated RMBS and CDOs" refers to any issued tranches or classes associated with any transactions designated by the United States as at issue in this Action.  The current list of RMBS and CDOs designated by the United States is annexed hereto as Exhibit 1.

9.    The term "including" means including but not limited to.

10.    "NRSRO" means Nationally Recognized Statistical Rating Organization, as defined in 15 USC § 78c(a)(62).

11.    The term "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all documents and information that would be excluded if such word were not so construed.

12.    The term "policies" means any rule, procedure, guideline, practice or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly.

13.    The term "relating to" means relating to, referring to, concerning, describing, pertaining to, evidencing, reflecting, regarding, constituting, involving, or touching upon in any way.  Each of these terms may be used interchangeably herein and will be treated as encompassing all these meanings.

14.    "RMBS" means residential mortgage-backed securities.

15.    "S&P" means McGraw Hill Financial, Inc. (formerly known as The McGraw-Hill Companies, Inc.), Standard & Poor's Financial Services LLC, and Standard & Poor's Ratings Services.

16.     The term "Securities" means any issued tranches or classes associated with the following transactions: Bear Stearns ARM Trust 2004-12; Countrywide Alternative Loan Trust 2005-58; CHL Mortgage Pass-Through Trust 2007-HYB2; Countrywide Alternative Loan Trust 2007-12T1; and Countrywide Alternative Loan Trust 2005-70CB.

17.     "United States" means any agency, bureau or other sub-division of the Executive Branch of the federal government or any independent federal agency.

18.     The terms "You" and "Your" refer to the entity to which this subpoena is addressed; its predecessors and/or successors, including all merged predecessor and successor corporations; its parent corporations; any other past or present subsidiary, affiliate or d/b/a; and all current and former directors, officers, principals, partners, employees, agents, representatives, or other persons acting for or on behalf thereof.

19.     Words in the singular include the plural, and words in the plural include the singular. "Each" and "any" are both singular and plural.

20.     Words in the past tense include the present, and words in the present tense include the past.

## II. INSTRUCTIONS

1.     If a document is withheld on the ground of privilege or otherwise, please prepare a privilege log in compliance with Rule 45 of the Federal Rules of Civil Procedure.

2.     Notwithstanding the assertion of any objections to the document requests set forth below, You shall produce all documents responsive to all parts of each request to which objection is not made.

3.     If portions of documents are withheld on the basis of privilege or otherwise, the withheld portions must be stamped with the word "redacted," the remainder of the doc-

ument must be produced, and the information requested in Instruction No.1, above, shall be provided with respect to the redacted or withheld portion of the document.

4.      If any document responsive to the document requests set forth below has been destroyed, or lost, discarded or is otherwise not capable of being produced, please identify each such document and provide for each (a) the author(s) thereof; (b) the recipient(s) thereof; (c) the subject matter thereof; (d) the date of the document; (e) the document's length; (f) the date on which the document was lost or destroyed; and (g) if the document was destroyed, the reason(s) for its destruction, the manner of its destruction, and the identity of the person(s) requesting, authorizing and performing the destruction.

5.      In response to the document requests set forth below, You shall produce all documents in Your possession, custody or control and all documents in the possession, custody or control of any of Your agents, attorneys or representatives, regardless of the location of such documents.

6.      If any document or documents responsive to these requests have been previously produced by You to the United States in response to (a) any investigative demands issued by the United States pursuant to FIRREA or (b) any subpoenas issued by the United States in this Action, as an initial matter please produce documents sufficient to identify: (1) the subpoena(s) in response to which the earlier production was made, including the documents or information requested; (2) any objections asserted in response to the subpoenas and the ultimate disposition of such objections; (3) the Bates numbers or other descriptive label sufficient to identify, by subpoena, the documents You produced in response to each subpoena; and (4) the number and section of the specific request(s) in this subpoena to which particular documents or ranges of documents previously produced are responsive.

4

7.     Unless otherwise stated in a specific request, the documents requested are all documents: (a) prepared or received in the period January 1, 2004 through December 31, 2008, or (b) relating to the period January 1, 2004 through December 31, 2008 (whenever prepared).

8.     This is a continuing request for production of documents. If, after making your initial productions, you obtain or become aware of any further documents responsive to this request, you are requested to produce such additional documents promptly.

## III.   DOCUMENTS TO BE PRODUCED

1.     Directories and organizational charts sufficient to identify Your executive leadership, corporate structure (including operating units, subsidiaries, subdivisions, committees, including any committees or other groups responsible for considering or approving Your acquisition of securities, including RMBS and CDOs, and the relationships and reporting structure between and among them) and management responsibilities.

2.     Any policies relating to the destruction and/or retention of documents, files, electronically stored documents, e-mail and other electronic files.

3.     Any policies relating to investments or investment decisions made by You or on Your behalf, including but not limited to policies relating to (a) investment objectives; (b) permissible investments; (c) risk analysis or risk evaluation with respect to the purchase, holding or sale of mortgage-backed securities; (d) risk tolerance with respect to the purchase, holding or sale of mortgage-backed securities; (e) due diligence with respect to the purchase, holding or sale of mortgage-backed securities; (f) the use of risk consultants with respect to the purchase, holding or sale of mortgage-backed securities; (g) the process by which investment decisions are made and/or approved; and (h) the role, if any, of credit ratings in investment decisions.

5

4. Any policies relating to risk assessment and management, including but not limited to any policies adopted or implemented in connection with FHFB Advisory Bulletin 2005-AB-05 (concerning Risk Management Oversight).

5. Any policies relating to nontraditional and subprime residential mortgage loans, including but not limited to any policies adopted or implemented in connection with FHFB Advisory Bulletin 2007-AB-01, which states that "the Bank cannot rely solely on investment ratings of the securities, as ratings of certain products may be untested over a credit cycle and ratings can be a lagging indicator of credit risk."

6. Any documents relating to policies concerning the validation and documentation of internally developed and vendor provided models, whether used and managed in-house by You or externally by the vendor, including but not limited to any policies adopted or implemented in connection with FHFB Advisory Bulletin 2006-AB-02, FHFA Advisory Bulletin 2009-AB-03, and/or FHFA Advisory Bulletin 2013-AB-07.

7. Documents sufficient to identify all persons, including both employees of You and outside advisors, who were involved on Your behalf in any decision to buy, hold or sell the Securities, or in any due diligence, investigation, analysis or evaluation performed by You or on Your behalf concerning the Securities.

8. Documents sufficient to identify all persons, including both employees of You and outside advisors, whose job responsibilities, tasks or deliberations included the consideration, evaluation, acquisition, valuation, disposition, accounting or treatment of (a) residential mortgage loans, (b) RMBS and/or (c) CDOs backed by RMBS.

9.    Documents sufficient to identify all persons, including both employees of You and outside advisors, responsible for developing, approving and/or implementing Your investment strategy and/or investment management policies.

10.    Documents sufficient to identify all persons, including both employees of You and outside advisors, responsible for credit analysis with respect to the purchase, holding or sale of RMBS and/or CDOs backed by RMBS.

11.    Documents sufficient to identify all persons, including both employees of You and outside advisors, responsible for assessing risk and risk management with respect to the purchase, holding or sale of RMBS and/or CDOs backed by RMBS.

12.    Documents sufficient to identify any of the Government Designated RMBS and CDOs You considered, evaluated, and/or analyzed, but ultimately did not purchase or hold.

13.    Any documents relating to internal communications between or among Your employees, officers, and directors regarding the Securities, including but not limited to the credit ratings on the Securities.

14.    Any documents relating to any communications between You, or any persons acting on Your behalf, and anyone else regarding the Securities, including but not limited to the credit ratings on the Securities.

15.    Any documents relating to any communications between any NRSRO, or any of their current or former employees, on the one hand, and You, or any persons acting on Your behalf, on the other hand, including but not limited to communications, if any, relating to the Securities.

16.     Any documents relating to the ratings assigned by any NRSRO to the Securities.

17.     Any documents relating to Your decision to invest in the Securities, including but not limited to, (a) all documents relating to any investigation and evaluation of the risks of investing in the Securities, including any due diligence of the Securities; and (b) all documents relating to the policies, procedures, or guidelines controlling, limiting, or otherwise influencing any decision by You to acquire the Securities.

18.     Any documents prepared by, provided to, or otherwise obtained by You in connection with the purchase of the Securities, including all agreements entered into by You in connection with the Securities.

19.     Any documents relating to Your retention or Your considering of the retention of any advisor in connection with the purchase or consideration of purchase (a) of the Securities or (b) of any other investments in RMBS and/or CDOs backed by RMBS.

20.     Any documents relating to Your decision(s) to retain or sell the Securities, including but not limited to all documents You referred to or relied on when determining whether to retain or sell the Securities.

21.     Any documents relating to questions, comments, analysis, criticism, or commentary by any third parties, including any regulatory or governmental agency, regarding Your investments or decisions to invest in RMBS and/or CDOs backed by RMBS, including but not limited to Your investment and decision to invest in the Securities.

22.     Any audit reports, assessments or other evaluations made or received by You, whenever prepared, relating to Your investments in the Securities.

8

23.     Any analyses, assessments or evaluations relating to Your decision not to purchase or hold any of the Government Designated RMBS and CDOs.

24.     Any documents relating to any credit analysis made or received by You regarding Your RMBS and/or CDO portfolio.

25.     Any documents relating to Your use of, access to or validation of any NRSRO's proprietary models used in rating RMBS, including but not limited to S&P's Loan Evaluation and Estimate of Loss System ("LEVELS").

26.     Any documents relating to Your use of, access to or validation of any NRSRO's proprietary models used in rating CDOs, including but not limited to S&P's CDO Evaluator.

27.     Any documents, to the present time and on a continuing basis, relating to any effect stemming from Your exposure to, acquisition, retention, or disposal of the Securities, including but not limited to, any financial reports, charts, or models reflecting any gains or losses, whether realized or unrealized, sustained by You as a result of Your exposure to, acquisition, retention, or disposal of the Securities.

28.     Any documents, to the present time and on a continuing basis, relating to any losses to You that resulted, whether directly or indirectly, from Your exposure to, acquisition, retention, or disposal of the Securities, including but not limited to documents relating to the amounts of such losses and the means by which those losses resulted, whether directly or indirectly, from Your exposure to, acquisition, retention, or disposal of the Securities. As used in this request, "directly or indirectly" includes, but is not limited to, warehouse lines of credit used to purchase pieces of the transaction, liquidity puts or liquidity facilities extended to the transaction, credit default swaps referencing the transaction, guarantees of support to subsidiaries and

affiliates that took losses from the transaction, or any other instrument or agreement that exposed You and/or any federally insured affiliates to risk of loss resulting from the transaction.

29.    Any documents, to the present time and on a continuing basis, relating to Your accounting treatment, valuation, or sale of the Securities.

30.    Any documents from 2004 to the present relating to any litigation, threatened litigation or assertion of any legal claims concerning the Securities, whether initiated by You or by another party.

31.    Any documents from 2004 to the present relating to communications between You and any governmental entity, whether federal or state, regarding the Securities.

32.    Any other documents in Your possession, custody or control relating to the Securities.

33.    Any reports, studies, or other analyses performed, created, received or disseminated by You regarding the U.S. residential housing market in any portion of the period 2004-2008, including but not limited to reports, studies, or other analyses relating to mortgage fraud by borrowers, loan brokers or loan originators; deterioration of loan underwriting standards; or the decline in the housing market.

34.    Any reports, studies, or other analyses performed, created, received or disseminated by You relating to Your knowledge or awareness of instances of fraud or deceptive practices relating to RMBS or CDOs backed by RMBS, including but not limited to reports, studies, or other analyses relating to complaints and investigations relating to the practices of any issuer, arranger, sponsor, underwriter or seller of RMBS or CDOs.

35.    Any documents referring to or concerning independence or objectivity of one or more NRSROs.

10

36.    Any evaluations, assessments, studies, findings or analyses made or received by You from 2004 to the present relating to the independence or objectivity of any NRSRO, including but not limited to S&P.

37.    Any evaluations, assessments, studies, findings or analyses made or received by You from 2004 to the present relating to S&P.

38.    Any evaluations, assessments, studies, findings or analyses made or received by You from 2004 to the present concerning credit ratings issued with respect to RMBS and/or CDOs backed by RMBS issued between 2004 and 2008, relating to:

    a.    the accuracy of the ratings of any NRSRO;

    b.    the existence of perceived conflicts of interest of any NRSRO in its ratings;

    c.    the meaning, use and/or performance of ratings issued by any NRSRO;

    d.    the advisability of any institution or individual relying on ratings of any NRSRO;

    e.    the relative performance of various NRSROs.

39.    Any documents in Your possession, custody or control relating to the practices of NRSROs with respect to:

    a.    policies concerning the updating of CDO ratings, including the incorporation of the actual or projected changes in ratings or ratings methodologies with respect to the classes of underlying securities to which CDOs are exposed;

    b.    policies concerning the updating of RMBS ratings, including the incorporation of the actual or projected changes in ratings or ratings methodologies with respect to the classes of underlying assets to which RMBS are exposed;

    c.    the timing of changes in rating methodologies and analytical models implemented in 2007 relating to changing perceptions of the performance of the U.S. residential housing market;

    d.    policies related to addressing any perceived conflicts of interest in connection with rating structured finance securities;

e.      the development and updating of rating methodologies and analytical models used in the ratings process;

f.      accounting for the deterioration in the performance of non-prime RMBS when issuing new ratings on structured finance securities or surveilling existing ratings on structured finance securities;

g.      the utilization of loan level data in rating RMBS and CDOs backed by RMBS.

40.      Any documents relating to any communication between You and any NRSRO regarding any rating of You or any affiliated fund, entity or debt issuances.

41.      Any documents relating to meetings of any internal committee, working group, or task force related in any manner to the consideration, evaluation, acquisition, valuation, disposition, accounting or treatment of U.S. residential mortgage loans or mortgage-backed securities, or related to any consideration, evaluation, summary or analysis of the RMBS subprime market, including meeting agendas, meeting minutes or transcripts, all notes taken during meetings, all documents created in preparation for meetings, and all documents presented to or relied upon by committee members during meetings.

42.      Any evaluations, assessments, studies, findings or analyses made or received by You from 2004 to the present relating to:

a.      the expected performance of the U.S. residential housing market in any portion of the period 2004-2008;

b.      any prediction of a decline in home prices to occur in 2007 and/or 2008, and any response to any such prediction;

c.      the expected performance of non-prime residential mortgages originated or securitized in any portion of the period 2004-2008;

d.      the expected performance of RMBS and/or CDOs backed by RMBS issued in any portion of the period 2004-2008;

e.      any identification of factors considered or to be considered at any time in the period 2004-2008 in evaluating the expected and/or actual performance of (i)

12

the United States residential housing market generally; (ii) non-prime residential mort-
gages; (iii) RMBS; or (iv) CDOs backed by RMBS.

     43.    Any documents relating to any communications between You and the

FHFA concerning:

        a.    the expected performance of the U.S. residential housing market in
any portion of the period 2004-2008;

        b.    any prediction of a decline in home prices to occur in 2007 and/or
2008, and any response to any such prediction;

        c.    the expected performance of non-prime residential mortgages orig-
inated or securitized in any portion of the period 2004-2008;

        d.    the expected performance of RMBS and/or CDOs backed by
RMBS issued in any portion of the period 2004-2008;

        e.    any identification of factors considered or to be considered at any
time in the period 2004-2008 in evaluating the expected and/or actual performance of (i)
the United States residential housing market generally; (ii) non-prime residential mort-
gages; (iii) RMBS; or (iv) CDOs backed by RMBS;

        f.    S&P;

        g.    any investigation of any NRSRO and/or the possibility of civil or
criminal actions, sanctions or other possible steps of any kind leading to adverse conse-
quences of any kind against any NRSRO.

     44.    Any documents relating to any communications between You and the

FHFA concerning:

        a.    the accuracy of the ratings of any NRSRO;

        b.    the existence of perceived conflicts of interest of any NRSRO in its
ratings;

        c.    the meaning, use and/or performance of ratings issued by any
NRSRO;

        d.    the advisability of relying on ratings of any NRSRO;

        e.    the relative performance of various NRSROs;

        f.    Your policies governing the purchase, holding or sale of residential
mortgage loans or private label mortgage-backed securities, whether as investments or

13

collateral, including but not limited to policies concerning risk management and/or credit assessment;

g.      Your policies relating to the role, if any, of credit ratings in investment decisions;

h.      Your personnel or committees whose function, tasks or deliberations touched on the consideration, evaluation, acquisition, valuation, disposition, accounting or treatment of residential mortgage loans or private label mortgage-backed securities, whether as investments or collateral.

45.      Any documents relating to the ratings assigned to You by the FHFA in accordance with the Federal Home Loan Bank Rating System, for the years 2004 through 2008, concerning credit risk, the adequacy of risk management policies and corporate governance.

46.      Any other documents prepared or received by You in connection with the FHFA's supervision of You for the years 2004 to 2008 relating to Your credit risk, the adequacy of risk management policies and corporate governance, including but not limited to any Alert Letters, Pre-Examination Analysis Memoranda, Scope of Examination Memoranda, Findings Memoranda, Conclusions Memoranda, Workpapers, and Reports of Examination.

47.      Any documents that You contend support the allegations in the complaint in *Federal Home Loan Bank of Atlanta* v. *Countrywide Financial Corporation et al.*, No. 11EV011779G (Fulton County, Georgia), including but not limited to Your analysis of losses, if any, resulting from the Securities.

48.      Any documents produced or received by You in discovery in the litigation captioned *Federal Home Loan Bank of Atlanta* v. *Countrywide Financial Corporation et al.*, No. No. 11EV011779G (Fulton County, Georgia), together with (a) copies of all document requests and/or subpoenas served by or upon You; (b) documents, correspondence, motion papers and/or court orders sufficient to identify the ultimate resolution of any objections to those requests; and

(c) copies of any logs or schedules identifying documents withheld from production for any reason.