# Exhibit 24

(Cardona Declaration)

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  2:13-cv-00779-DOC-JCG |
| MCGRAW-HILL COMPANIES, INC. and STANDARD & POOR'S FINANCIAL SERVICES LLC | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:     Federal Deposit Insurance Corporation, Attention: Stan Ivie, Regional Director
        25 Jessie Street at Ecker Square, Suite 2300, San Francisco, California 94105-2780

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Documents responsive to the Requests set forth at Schedule A.

| Place:  Keller Rackauckas LLP | Date and Time: |
|---|---|
| 18300 Von Karman Ave., Suite 930 Irvine, California 92612-1057 | 03/18/2014 10:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   01/17/2014

CLERK OF COURT

                                                        OR    _____

_____                              *Attorney's signature*
*Signature of Clerk or Deputy Clerk*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   The McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services LLC _____ , who issues or requests this subpoena, are:

Floyd Abrams, Cahill Gordon & Reindel LLP, 80 Pine St., New York, NY 10005 (fabrams@cahill.com/212-701-3000)

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   2:13-cv-00779-DOC-JCG

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____                     _____
                                                          *Server's signature*

                                          _____
                                                          *Printed name and title*

                                          _____
                                                          *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A to Subpoena to Federal Insurance Deposit Corporation

I. DEFINITIONS

  1. "Action" means this action captioned *United States* v. *McGraw-Hill Cos.*, No. 2:13-cv-00779-DOC (JCGx), pending in the United States District Court for the Central District of California.

  2. "Bank" means any financial institution regulated by the FDIC, including any parent, subsidiaries, affiliates or predecessors, and any employees, agents or advisors or other persons acting or purporting to act on its behalf.

  3. "CDO" means collateralized-debt obligation.

  4. "Change in Outlook" means the April 18, 2011 action by Standard & Poor's Ratings Services changing its long-term outlook on the sovereign credit rating for Plaintiff, the United States of America, from stable to negative.

  5. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

  6. "CreditWatch Action" means the July 14, 2011 action by Standard & Poor's Ratings Services placing the long-term and short-term sovereign credit ratings for Plaintiff, the United States of America, on CreditWatch with negative implications.

  7. The terms "document" and "documents" shall be construed in the broadest sense allowed by Rule 34 of the Federal Rules of Civil Procedure, and include, but are not limited to, any writings, drawings, graphs, charts, photographs, phonograph records, tape recordings, notes, diaries, calendars, books, papers, accounts, electronic or videotape recordings, and any computer-generated, computer-stored, or electronically stored matter from which infor-

mation can be obtained and translated, if necessary, into reasonable useable form. This includes preliminary versions, drafts, and revisions.

8.    "DOJ" means the United States Department of Justice, including any employees, agents, advisors or other persons acting or purporting to act on its behalf.

9.    "Downgrade" means the August 5, 2011 action by Standard & Poor's Ratings Services changing its long-term sovereign credit rating on Plaintiff, the United States of America, from AAA to AA+.

10.    "FCIC" means the Financial Crisis Inquiry Commission, including any employees, agents, advisors or other persons acting or purporting to act on its behalf.

11.    "FDIC" means the Federal Deposit Insurance Corporation, including any employees, agents, advisors or other persons acting or purporting to act on its behalf.

12.    "Government Designated Entities" means any Bank regulated by the FDIC and designated by Plaintiff United States of America as at issue in this Action. The current list of such entities designated by the United States is annexed hereto as Exhibit 1.

13.    "Government Designated RMBS and CDOs" refers to any issued tranches or classes associated with any transactions designated by Plaintiff United States of America as at issue in this Action. The current list of RMBS and CDOs designated by the United States is annexed hereto as Exhibit 2.

14.    The term "including" means including but not limited to.

15.    The term "investment" means any financial interest in a security, including, but not limited to the purchase, warehousing and/or provision of a liquidity backstop.

16.    "NRSRO" means Nationally Recognized Statistical Rating Organization, as defined in 15 USC § 78c(a)(62).

17.     The term "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all documents and information that would be excluded if such word were not so construed.

18.     The term "policies" means any rule, procedure, guideline, practice or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly.

19.     The term "relating to" means relating to, referring to, concerning, describing, pertaining to, evidencing, reflecting, regarding, constituting, involving, or touching upon in any way. Each of these terms may be used interchangeably herein and will be treated as encompassing all these meanings.

20.     "RMBS" means residential mortgage-backed securities.

21.     "S&P" means McGraw Hill Financial, Inc. (formerly known as The McGraw-Hill Companies, Inc.), Standard & Poor's Financial Services LLC, and Standard & Poor's Ratings Services.

22.     "Treasury" means the United States Department of the Treasury, including any employees, agents, advisors or other persons acting or purporting to act on its behalf.

23.     "United States" means any agency, bureau or other sub-division of the Executive Branch of the federal government or any independent federal agency.

24.     "You" or "Your" means the Federal Deposit Insurance Corporation, including any employees, agents, advisors or other persons acting or purporting to act on its or their behalf.

25.     Words in the singular include the plural, and words in the plural include the singular. "Each" and "any" are both singular and plural.

3

26.     Words in the past tense include the present, and words in the present tense include the past.

II.   <u>INSTRUCTIONS</u>

1.     If a document is withheld on the ground of privilege or otherwise, please prepare a privilege log in compliance with Rule 45 of the Federal Rules of Civil Procedure.

2.     Notwithstanding the assertion of any objections to the document requests set forth below, You shall produce all documents responsive to all parts of each request to which objection is not made.

3.     If portions of documents are withheld on the basis of privilege or otherwise, the withheld portions must be stamped with the word "redacted," the remainder of the document must be produced, and the information requested in Instruction No. 1, above, shall be provided with respect to the redacted or withheld portion of the document.

4.     If any document responsive to the document requests set forth below has been destroyed, lost, discarded or is otherwise not capable of being produced, please identify each such document and provide for each (a) the author(s) thereof; (b) the recipient(s) thereof; (c) the subject matter thereof; (d) the date of the document; (e) the document's length; (f) the date on which the document was lost or destroyed; and (g) if the document was destroyed, the reason(s) for its destruction, the manner of its destruction, and the identity of the person(s) requesting, authorizing and performing the destruction.

5.     In response to the document requests set forth below, You shall produce all documents in Your possession, custody or control and all documents in the possession, custody or control of any of Your agents, attorneys or representatives, regardless of the location of such documents.

4

6.    Unless otherwise stated in a specific request, the documents requested are all documents: (a) prepared or received in the period January 1, 2004 through December 31, 2008; or (b) relating to the period January 1, 2004 through December 31, 2008 (whenever prepared).

7.    This is a continuing request for production of documents.  If, after making your initial productions, you obtain or become aware of any further documents responsive to this request, you are requested to produce such additional documents promptly.

III.    <u>DOCUMENTS TO BE PRODUCED</u>

1.    Directories and organizational charts sufficient to identify Your organizational structure (including operating units, subdivisions, and committees, including but not limited to any committees or other groups with oversight over investment risks on the part of the Banks supervised by You, and the relationships and reporting structure between and among them) and management responsibilities.

2.    Documents sufficient to identify each person who participated in examinations, inquiries, reviews, investigations, or enforcement actions by You of any Government Designated Entity from 2004 to the present.

3.    Documents sufficient to identify each person who participated in Your assessment of risks involved in purchasing, issuing and arranging transactions involving RMBS or CDOs backed by RMBS between 2004 and the present.

4.    Documents sufficient to identify the regulatory requirements, responsibilities, duties and obligations of or restrictions on Banks in effect during any portion of the period 2004-2008 with respect to investments in RMBS or CDOs backed by RMBS.

5

5.      Documents sufficient to identify the regulatory requirements, responsibilities, duties and obligations of or restrictions on Banks in effect during any portion of the period 2004-2008  with respect to the use of credit ratings issued by NRSROs.

6.      Documents sufficient to identify and describe Your policies and regulations with respect to the oversight of Banks relating to:

        a.   investments in RMBS or CDOs backed by RMBS;

        b.   the use of credit ratings issued by NRSROs.

7.      Any documents relating to any request by any Government Designated Entity for waiver, exception and/or exemption from credit risk management requirements, responsibilities, duties, obligations or restrictions with respect to investments in RMBS or CDOs backed by RMBS, including requirements concerning the use of credit ratings issued by any NRSROs, or any response to such a request.

8.      Any reports, evaluations, assessments, studies, findings or analyses made by or for You or received by You relating to any or all of the Government Designated Entities concerning credit risk, the adequacy of risk management policies and corporate governance, including but not limited to examinations, material loss reviews, failed bank reviews or audits from 2004 to the present.

9.      Documents sufficient to identify any weaknesses You identified in any Government Designated Entity's risk management systems, compliance management systems, and/or corporate governance from 2004 to the present, including but not limited to material loss reviews, Risk Profiles, Scope Memoranda, examination workpapers, and reports of examination.

10.     Documents sufficient to identify Your policies relating to the retention and/or destruction of documents, files, electronically stored documents, e-mail and other electronic files from 2004 to the present.

11.     Any reports, evaluations, assessments, studies, findings or analyses made by or for You or received by You from 2004 to the present relating to:

  a.     the expected performance of the U.S. residential housing market in any portion of the period 2004-2008;

  b.     any prediction of a decline in home prices to occur in 2007 and/or 2008, and any response to any such prediction;

  c.     the expected performance of non-prime residential mortgages originated or securitized in any portion of the period 2004-2008;

  d.     the expected performance of RMBS and/or CDOs backed by RMBS issued in any portion of the period 2004-2008;

  e.     any identification of factors considered or to be considered at any time in the period 2004-2008 in evaluating the expected and/or actual performance of (i) the U.S. residential housing market generally; (ii) non-prime residential mortgages; (iii) RMBS; or (iv) CDOs backed by RMBS;

  f.     the increase in mortgage fraud by borrowers, loan brokers or loan originators, deterioration of underwriting standards, or the decline in the U.S. residential housing market;

  g.  S&P;

  h.     any investigation of any NRSRO and/or the possibility of civil or criminal actions, sanctions or other possible steps of any kind that could lead to adverse consequences of any kind against any NRSRO.

12.     Any communications or documents relating to communications between You and any Government Designated Entity relating to:

  a.     the expected performance of the U.S. residential housing market in any portion of the period 2004-2008;

7

b.     any prediction of a decline in home prices to occur in 2007 and/or 2008, and any response to any such prediction;

c.     the expected performance of non-prime residential mortgages originated or securitized in any portion of the period 2004-2008;

d.     the expected performance of RMBS and/or CDOs backed by RMBS issued in any portion of the period 2004-2008;

e.     any identification of factors considered or to be considered at any time in the period 2004-2008 in evaluating the expected and/or actual performance of (i) the U.S. residential housing market generally; (ii) non-prime residential mortgages; (iii) RMBS; or (iv) CDOs backed by RMBS.

f.     the increase in mortgage fraud by borrowers, loan brokers or loan originators, deterioration of underwriting standards, or the decline in the U.S. residential housing market;

g.     S&P;

h.     any investigation of any NRSRO and/or the possibility of civil or criminal actions, sanctions or other possible steps of any kind that could lead to adverse consequences of any kind against any NRSRO.

13.     Any communications or documents relating to communications between

You and the United States, including but not limited to the DOJ and/or Treasury, relating to:

a.     the expected performance of the U.S. residential housing market in any portion of the period 2004-2008;

b.     any prediction of a decline in home prices to occur in 2007 and/or 2008, and any response to any such prediction;

c.     the expected performance of non-prime residential mortgages originated or securitized in any portion of the period 2004-2008;

d.     the expected performance of RMBS and/or CDOs backed by RMBS issued in any portion of the period 2004-2008;

e.     any identification of factors considered or to be considered at any time in the period 2004-2008 in evaluating the expected and/or actual performance of (i) the U.S. residential housing market generally; (ii) non-prime residential mortgages; (iii) RMBS; or (iv) CDOs backed by RMBS;

8

      f.     the increase in mortgage fraud by borrowers, loan brokers or loan originators, deterioration of underwriting standards, or the decline in the U.S. residential housing market;

      g.     any assessment, discussion or analysis of the ratings issued by any NRSRO with respect to RMBS and/or CDOs backed by RMBS issued in any portion of the period 2004-2008;

      h.     any comparison of the performance of ratings issued by different NRSROs in any portion of the period 2004-2008, whenever such comparisons were prepared;

      i.     S&P;

      j.     any investigation of any NRSRO and/or the possibility of civil or criminal actions, sanctions or other possible steps of any kind that could lead to adverse consequences of any kind against any NRSRO.

14.     Any reports, evaluations, assessments, studies or findings made by or for You or received by You from 2004 to the present concerning fraud or deceptive practices by any Bank relating to RMBS and/or CDOs backed by RMBS issued between 2004 and 2008.

15.     Any reports, evaluations, assessments, studies, or findings made by or for You or received by You from 2004 to the present concerning instances of residential mortgage loan origination fraud and relating to the practices of any Bank between 2004 and 2008.

16.     Any documents relating to Your investigation of or action against any director or officer of any Government Designated Entity in connection with alleged fraud, negligence, mismanagement, and/or failure to comply with applicable rules or policies from 2004 to the present.

17.     Any documents relating to Your investigation, analysis or review from 2004 to the present of any Government Designated RMBS and CDOs.

9

18.    Any documents relating to any review by You of the decision to invest in any Government Designated RMBS and CDOs by any Government Designated Entity, including but not limited to:

> a.    any Government Designated Entity's policies governing the purchase, holding or sale of residential mortgage loans or private label mortgage-backed securities, whether as investments or collateral, including but not limited to policies concerning risk management and/or credit assessment;
>
> b.    any Government Designated Entity's policies relating to the role, if any, of credit ratings in investment decisions;
>
> c.    any Government Designated Entity's personnel or committees whose function, tasks or deliberations touched on the consideration, evaluation, acquisition, valuation, disposition, accounting or treatment of residential mortgage loans or private label mortgage-backed securities, whether as investments or collateral;
>
> d.    any Government Designated Entity's role as an arranger or issuer of RMBS and/or CDOs backed by RMBS.

19.    Any reports, evaluations, assessments, studies, findings or analyses made by or for You or received by You relating to any Government Designated Entity's investment in RMBS and/or CDOs backed by RMBS from 2004 to the present, including but not limited to:

> a.    any documents relating to the Government Designated Entity's decision to invest in any RMBS or CDOs backed by RMBS;
>
> b.    any documents relating to the involvement of any third-party, including but not limited to any NRSRO, investment bank, auditor, regulatory authority, placement agent, investor, customer or any employee of such third-party, in the securitization, management, issuance, sale or distribution of any RMBS or CDOs backed by RMBS;
>
> c.    any documents relating to a Government Designated Entity's investigation and evaluation of the risks associated with RMBS or CDOs backed by RMBS;
>
> d.    any documents relating to a Government Designated Entity's retention of any advisors in connection with the actual or potential purchase of RMBS or CDOs backed by RMBS;
>
> e.    any documents relating to the role of credit ratings in a Government Designated Entity's investment decisions.

10

20.    Any reports, evaluations, assessments, studies, findings or analyses made by or for You or received by You relating to any gain, loss or other financial effect by or on any Government Designated Entity, including but not limited to:

a.    any documents purporting to quantify the gain, loss or other financial effect;

b.    any documents relating to the existence and amount of any insurance coverage against any such loss;

c.    any documents relating to factors or causes that contributed to the loss;

d.    any documents relating to inquiries, reviews, investigations, or enforcement actions relating to the loss;

e.    any document whereby a financial effect on any such Government Designated Entity was not denominated as a gain or loss.

21.    Any reports, evaluations, assessments, studies, findings or analyses made by or for You or received by You relating to any gain, loss or other financial effect by or on any Bank that resulted from any investment in RMBS and/or CDOs backed by RMBS, as well as:

a.    any documents relating to Your analysis or evaluation of a Bank's gain, loss or other financial effect resulting from any investment in RMBS and/or CDOs backed by RMBS;

b.    the investment policies of any such Bank;

c.    any evaluations, assessments, studies, findings, or analyses of such Bank's investment practices;

d.    any evaluations, assessments, studies, findings or analyses made of the OCC's or any other regulator's oversight of such Bank;

e.    any evaluations, assessments, studies, findings or analyses made by You from 2004 to the present evaluating investments made by any Bank from 2004 to 2008;

f.    any document whereby a financial effect on any such Bank was not denominated as a gain or loss.

11

22.     Any reports, evaluations, assessments, studies, findings or analyses of Your oversight or the oversight of any other regulatory authority of a Government Designated Entity including but not limited to the extent to which staffing resources were available.

23.     Any documents referring to or concerning independence or objectivity of one or more NRSROs.

24.     Any reports, evaluations, assessments, studies, findings or analyses made by or for You or received by You from 2004 to the present concerning credit ratings issued with respect to RMBS and/or CDOs backed by RMBS issued between 2004 and 2008, relating to:

       a.     the accuracy of the ratings issued by any NRSRO;

       b.     the existence of perceived conflicts of interest of any NRSRO in its ratings;

       c.     the meaning, use and/or performance of ratings issued by any NRSRO;

       d.     the advisability of any institution or individual relying on ratings issued by any NRSRO;

       e.     the relative performance of NRSROs or any NRSRO.

25.     Any documents made by or for You or received by You relating to the practices of NRSROs with respect to:

       a.     policies concerning the updating of CDO ratings, including the incorporation of the actual or projected changes in ratings or ratings methodologies with respect to the classes of underlying securities to which CDOs are exposed;

       b.     policies concerning the updating of RMBS ratings, including the incorporation of the actual or projected changes in ratings or ratings methodologies with respect to the underlying assets to which RMBS are exposed;

       c.     the timing of changes in rating methodologies and analytical models implemented in 2007 relating to changing perceptions of the performance of the U.S. residential housing market;

        d.     policies related to addressing any perceived conflicts of interest in connection with rating structured finance securities;

        e.     the development and updating of rating methodologies and analytical models used in the ratings process;

        f.     accounting for the deterioration in the performance of non-prime RMBS when issuing new ratings on structured finance securities or surveilling existing ratings on structured finance securities;

        g.     the utilization of loan level data in rating RMBS and CDOs backed by RMBS.

26.     Any communications or documents relating to communications between You and any NRSRO relating to credit ratings issued with respect to RMBS and/or CDOs backed by RMBS issued between 2004 and 2008.

27.     Any documents sent or received by You, whether internal or external, relating to S&P's credit rating of the United States of America, or the Downgrade, or the Credit-Watch Action, or the Change in Outlook between 2011 and the present.

28.     Any communications or documents relating to communications between You and any Government Designated Entity relating to:

        a.     the accuracy of the ratings issued by any NRSRO;

        b.     the existence of perceived conflicts of interest of any NRSRO in its ratings;

        c.     the meaning, use and/or performance of ratings issued by any NRSRO;

        d.     the advisability of any institution or individual relying on ratings issued by any NRSRO;

        e.     the relative performance of NRSROs or any NRSRO.

29.     Any documents You reviewed or consulted in connection with the preparation of the "Guidance on Nontraditional Mortgage Product Risks" (October 4, 2006).

30.     Any documents You reviewed or consulted in connection with the preparation of the "Statement on Subprime Mortgage Lending" (July 10, 2007).

31.     Any documents You reviewed or consulted in connection with the preparation of the "Interagency Statement on Sound Practices Concerning Elevated Risk Complex Structured Finance Activities" (January 5, 2007), including documents relating to the following statement:

> Most structured finance transactions, such as standard public mortgage-backed securities transactions . . . and hedging type transactions involving "plain vanilla" derivatives or collateralized debt obligations, are familiar to participants in the financial markets, have well-established track records, and typically would not be considered CSFTs [complex structured finance activities] for the purpose of the Final Statement.

32.     Any documents relating to the ratings or rankings assigned by You to any Government Designated Entity, including but not limited to the Capital adequacy, Asset quality, Management, Earnings, and Liquidity, and Sensitivity to market risk (CAMELS) rating system, the Uniform Financial Institutions Rating System,  and the rating system included in FDIC's Examination Supplement on Current Underwriting Standards, for the years 2004 through 2008, concerning credit risk, the adequacy of risk management policies and corporate governance.

33.     Any documents relating to Your inquiries, reviews, investigations, or enforcement actions from 2004 to the present concerning any Government Designated Entity for fraud or deceptive practices relating to RMBS and/or CDOs backed by RMBS issued between 2004 and 2008.

34.     Any reports, evaluations, assessments, studies or findings made by or for You or received by You from 2004 to the present concerning the role of any Bank as the arranger or issuer of RMBS or CDOs backed by RMBS.

14

35.     Any documents relating to Your inquiries, reviews, investigations, or enforcement actions from 2004 to the present concerning any Government Designated Entity with regard to instances of residential mortgage loan origination fraud between 2004 and 2008

36.     Any transcripts, summaries, notes, or audio or video recordings of depositions or interviews, whether such depositions or interviews were conducted under oath or not, of any individuals in connection with  the subject matter of Requests 14 through 17 and Requests 33 and 35.

37.     Any documents You sent to or received from any other department, agency, or sub-division of the executive branch of the United States government relating to Requests 14 through 17 and Requests 33 and 35.

38.     Any documents You sent to or received from the FCIC.

39.     Any documents reviewed, considered by and/or supplied to You in assessing whether credit ratings issued by NRSROs were a suitable "proxy" for supervisory classification definitions, as discussed in the "Uniform Agreement on the Classifications of Assets and Appraisal of Securities Held by Banks and Thrifts" (June 15, 2004).

40.     Any reports, evaluations, assessments, studies, findings or analyses made by or for You or received by You relating to any Government Designated Entity's use of credit ratings issued by NRSROs in lieu of conducting a due diligence investigation in connection with an investment in RMBS and/or CDOs backed by RMBS.

41.     Documents sufficient to identify actions that You have taken in response to negative trends in credit risk and underwriting standards identified in the 2007 *FDIC Quarterly* article, "The Case for Loan Modification," with foreward from Sheila C. Baird, *e.g.*, "Residential mortgage credit quality continues to weaken, with both delinquencies and charge-offs on

15

the rise at FDIC-insured institutions" and "Poor underwriting and abuses in the subprime mortgage market are exerting a significant negative impact on the housing markets and the U.S. economy," and in the FDIC's 2006 Economic Outlook Roundtable, *e.g.*, "lenders have loosened their underwriting standards," including guidance and proposals for regulation.

42.    Any reports or studies conducted by or for You from 2004 to the present related to Your surveys of any Bank's credit risk or underwriting standards, including the Examination Supplement on Current Underwriting Standards and the Credit and Consumer Products/Services Survey.

43.    Documents sufficient to identify economic working papers written by or received by You from 2004 to the present concerning the U.S. residential housing market, residential mortgage loan origination fraud, and RMBS and/or CDOs backed by RMBS issued between 2004 and 2008.

44.    Any supervisory guidance sent by You concerning any Government Designated Entity's investments in RMBS and/or CDOs between 2004 and the present.

45.    Any documents or other information reviewed, considered and/or relied upon by You in making the following statements in the article "Enhancing Transparency in the Structured Finance Market" in the Summer 2008 issue of *Supervisory Insights*:

  a.   "Longstanding supervisory guidance specifies that while banks can consider credit ratings as a factor in the risk management process, ratings should not be the sole factor considered when evaluating the risks of investing in securities."

  b.   "High credit ratings should not be viewed as a substitute for adequate due diligence on the part of the bank or for adequate supervision by the examiner."

  c.   "Credit ratings should not be used as a substitute for pre-purchase due diligence or as a proxy for ongoing risk monitoring for banks with positions in complex securities."

16

d.   "Credit ratings do not capture all of the risks which should be considered during the risk management process, such as loss given default, the potential for downgrade (also known as ratings volatility risk), market liquidity, and price discovery. In many types of structured finance securities, these "other" risks can be material and can be the source of a significant degree of losses. The analysis of complex securities, such as CDOs, is particularly difficult, and potential buyers should be aware that the rating agencies and others may underestimate difficult-to-measure risk factors, such as correlation."

e.   "Banks should conduct pre-acquisition and periodic analysis of the price sensitivity of securities. Risk factors include, but are not limited to, changing interest rates, credit risk deterioration, and reduced liquidity and marketability. Banks should anticipate difficulty when attempting to price illiquid and complex securities, and should limit concentrations of such holdings."

f.   "The interagency Policy Statement emphasizes management's need to understand the risks and cash-flow characteristics of its investments, particularly for products that have unusual, leveraged, or highly variable cash flows. The Policy Statement also states that banks must identify and measure risks, prior to acquisition and periodically after the purchase of securities, and that management should conduct its own in-house pre-acquisition analyses, or to the extent possible, make use of specific third-party analyses that are independent of the seller or counterparty."

17