# Exhibit 25

(Cardona Declaration)

# CAHILL GORDON & REINDEL LLP
## EIGHTY PINE STREET
## NEW YORK, NY 10005-1702

| | | | |
|---|---|---|---|
| FLOYD ABRAMS | CHARLES A. GILMAN | | ANN S. MAKICH | HOWARD G. SLOANE |
| L. HOWARD ADAMS | STEPHEN A. GREENE | | JONATHAN I. MARK | JOSIAH M. SLOTNICK |
| ROBERT A. ALESSI | JASON M. HALL | | BRIAN T. MARKLEY | RICHARD A. STIEGLITZ JR. |
| HELENE R. BANKS | WILLIAM M. HARTNETT | | WILLIAM J. MILLER | SUSANNA M. SUH |
| ANIRUDH BANSAL | CRAIG M. HOROWITZ | | NOAH B. NEWITZ | ANTHONY K. TAMA |
| LANDIS C. BEST | DOUGLAS S. HOROWITZ | | MICHAEL J. OHLER | JONATHAN D. THIER |
| SUSAN BUCKLEY | TIMOTHY B. HOWELL | | ATHY A. O'KEEFFE | JOHN A. TRIPODORO |
| KEVIN J. BURKE | DAVID G. JANUSZEWSKI | | DAVID R. OWEN | GLENN J. WALDRIP, JR. |
| JAMES J. CLARK | ELAI KATZ | | JOHN PAPACHRISTOS | HERBERT S. WASHER |
| BENJAMIN J. COHEN | THOMAS J. KAVALER | | LUIS R. PENALVER | MICHAEL B. WEISS |
| STUART G. DOWNING | BRIAN S. KELLEHER | | DEAN RINGEL | S. PENNY WINDLE |
| ADAM M. DWORKIN | DAVID N. KELLEY | | JAMES ROBINSON | COREY WRIGHT |
| JENNIFER B. EZRING | CHÉRIE R. KISER* | | THORN ROSENTHAL | DANIEL J. ZUBKOFF |
| JOAN MURTAGH FRANKEL | EDWARD P. KRUGMAN | | TAMMY L. ROY | ADAM ZUROFSKY |
| JONATHAN J. FRANKEL | JOEL KURTZBERG | | JONATHAN A. SCHAFFZIN | |
| BART FRIEDMAN | ALIZA R. LEVINE | | JOHN SCHUSTER | |
| CIRO A. GAMBONI | JOEL H. LEVITIN | | MICHAEL A. SHERMAN | *ADMITTED IN DC ONLY |
| WILLIAM B. GANNETT | GEOFFREY E. LIEBMANN | | DARREN SILVER | |

TELEPHONE: (212) 701-3000
FACSIMILE: (212) 269-5420

———

1990 K STREET, N.W.
WASHINGTON, DC 20006-1181
(202) 862-8900
FAX: (202) 862-8958

———

AUGUSTINE HOUSE
6A AUSTIN FRIARS
LONDON, ENGLAND EC2N 2HA
(011) 44.20.7920.9800
FAX: (011) 44.20.7920.9825

———

WRITER'S DIRECT NUMBER

(212) 701-3521

January 17, 2014

Re:   FHFA / Request for Information pursuant to 12 C.F.R. § 1215 et seq.

Dear Mr. Pollard:

Pursuant to 12 C.F.R. § 1215 et seq., we hereby request the information described in Attachment A to this letter to be used in connection with our representation of The McGraw Hill Companies, Inc. and Standard & Poor's Financial Services LLC (collectively, "S&P"),[1] in the matter captioned *United States* v. *McGraw-Hill Cos.*, No. 2:13-cv-00779-DOC (JCGx) (C.D. Cal.) (the "Action").[2]  A copy of the complaint filed by the United States in the Action is Attachment B.

The United States has alleged that from at least September 2004 through at least October 2007, S&P engaged in a scheme to defraud investors, including federally insured financial institutions, in two types of structured debt securities, Residential Mortgage Backed Securities ("RMBS") and Collateralized Debt Obligations ("CDOs").  In particular, the United States alleges that: (a) from September 2004 through October 2007, S&P limited, adjusted, and delayed updates to the ratings criteria and analytical models it used to assess the credit risks posed by RMBS and CDOs, weakening those criteria and models from what S&P's own analysts believed was necessary to make them more accurate; and (b) from March 2007 through October 2007, despite knowing that the credit risks posed by non-prime RMBS were significantly increasing, S&P knowingly

---

[1] As of May 1, 2013, The McGraw-Hill Companies, Inc. was renamed McGraw Hill Financial, Inc.

[2] As a courtesy, we are prepared to delay a subpoena for 30 days to allow you to consider this request through your administrative process.  We are doing so without waiving our position that such administrative request is inapplicable in the face of a subpoena issued by a United States District Court pursuant to Rule 45 of the Federal Rules of Civil Procedure.  Such inapplicability is all the more clear in light of the fact that such reduced process would be utilized to procure evidence to defend against a claim brought by the United States.  If we do not receive a full response to this request by February 18, 2014, we will serve a subpoena and seek judicial relief, explicitly challenging the contention, advanced on your behalf by counsel for the United States, that such subpoena is not effective.

CAHILL GORDON & REINDEL LLP

- 2 -

disregarded the true extent of those credit risks when rating CDOs exposed to those non-prime RMBS, and, as a result, issued CDO ratings that it knew did not reflect the true credit risks of those CDOs. The United States contends that these actions suggest S&P falsely represented that its credit ratings of RMBS and CDO tranches were objective, independent, and uninfluenced by any conflicts of interest that might compromise S&P's analytic judgment.

The information requested in Attachment A is highly relevant to the subject matter of this Action and critical to the defense of S&P. First, we seek comparisons and/or assessments made by or on behalf of the Federal Housing Finance Agency ("FHFA") of the ratings issued by different NRSROs, and communications within the FHFA and between the FHFA and other entities concerning S&P and/or the specific market factors at issue in this Action. Such assessments and communications bear directly on the understanding of the market and federal regulators as to the role and performance of S&P and S&P's ratings as put at issue by the United States. Additionally, we are seeking documents related to the FHFA's investigations of fraud concerning RMBS and CDOs. These materials bear on whether S&P's ratings were in fact false and will demonstrate how factors such as fraud by issuers and arrangers contributed to the losses suffered on the investments designated by the United States as at issue in this Action. We also seek information in the possession of the FHFA that relates specifically to S&P's rating actions with respect to U.S. government debt, which bears directly on our affirmative defense of unconstitutional retaliation for the exercise of First Amendment rights.

We are also pursuing certain Examination Reports, and related materials, issued by the FHFA concerning Federal Home Loan Bank ("FHLB") Atlanta, FHLB Chicago and FHLB Seattle—three financial institutions designated by the United States as affected by the conduct of S&P alleged in this Action. Materials relating to FHLB Atlanta, FHLB Chicago and FHLB Seattle's investment guidelines, risk management practices, and in particular their compliance with FHFA guidance, advisory bulletins, and regulations, are vital to our ability to mount a full and fair defense in opposition to the United States. We expect that this information will bear on the position that S&P's actions were not the cause of the alleged losses suffered by FHLB Atlanta, FHLB Chicago and FHLB Seattle.

Materials produced in this Action may be designated for confidential treatment pursuant to a Protective Order entered in the U.S. District Court for the Central District of California (the "Protective Order"). The Protective Order will adequately preserve the confidentiality of any information provided by the FHFA, and we attach a copy for your consideration. *See* Attachment C.

Because of the rigorous discovery schedule in place, we would appreciate your earliest possible response. We also enclose contact information for counsel for all other parties in this Action pursuant to 12 C.F.R. § 1215.8(g). *See* Attachment D.

If you have any questions concerning this request, please contact me by telephone at the number set forth above.

CAHILL GORDON & REINDEL LLP

- 3 -

Very truly yours,

Dean Ringel

Alfred M. Pollard, Esq.
General Counsel
Federal Housing Finance Agency
Constitution Center, Eighth Floor
400 Seventh Street, SW
Washington, DC 20024

Attachments

BY FEDEX

cc:     George S. Cardona, Esq.
        Assistant U.S. Attorney
        Office of the U. S. Attorney
        United States Courthouse
        312 North Spring Street 12th Floor
        Los Angeles, CA 90012

# Attachment A

## Attachment A to Request to Federal Housing Finance Agency

I. DEFINITIONS

      1.    "Action" means this action captioned *United States* v. *McGraw-Hill Cos.*, No. 2:13-cv-00779-DOC (JCGx), pending in the United States District Court for the Central District of California.

      2.    "CDO" means collateralized-debt obligation.

      3.    "Change in Outlook" means the April 18, 2011 action by Standard & Poor's Ratings Services changing its long-term outlook on the sovereign credit rating for Plaintiff, the United States of America, from stable to negative.

      4.    The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

      5.    "CreditWatch Action" means the July 14, 2011 action by Standard & Poor's Ratings Services placing the long-term and short-term sovereign credit ratings for Plaintiff, the United States of America, on CreditWatch with negative implications.

      6.    The terms "document" and "documents" shall be construed in the broadest sense allowed by Rule 34 of the Federal Rules of Civil Procedure, and include, but are not limited to, any writings, drawings, graphs, charts, photographs, phonograph records, tape recordings, notes, diaries, calendars, books, papers, accounts, electronic or videotape recordings, and any computer-generated, computer-stored, or electronically stored matter from which information can be obtained and translated, if necessary, into reasonable, useable form. This includes preliminary versions, drafts, and revisions.

      7.    "DOJ" means the United States Department of Justice, including any employees, agents, advisors or other persons acting or purporting to act on its behalf.

8.    "Downgrade" means the August 5, 2011 action by Standard & Poor's Ratings Services changing its long-term sovereign credit rating on Plaintiff, the United States of America, from AAA to AA+.

9.    "FHFA Fraud Litigation" means any litigation commenced by FHFA relating to allegations of fraud, misrepresentations, omissions, or deceptive practices on the part of any issuer, arranger, sponsor, underwriter or seller of RMBS or CDOs, including but not limited to the list of litigations annexed hereto as Exhibit I.

10.    "FHFB" means Federal Housing Finance Board.

11.    "FHLB Atlanta" means the Federal Home Loan Bank of Atlanta, including any employees, agents, advisors or other persons acting or purporting to act on its behalf.

12.    "FHLB Chicago" means the Federal Home Loan Bank of Chicago, including any employees, agents, advisors or other persons acting or purporting to act on its behalf.

13.    "FHLB Seattle" means the Federal Home Loan Bank of Seattle, including any employees, agents, advisors or other persons acting or purporting to act on its behalf.

14.    "FHLBank" means any bank established under the authority of the Federal Home Loan Bank Act (12 U.S.C. § 1421) and subject to the supervision and regulation of the FHFA, including any employees, agents, advisors or other persons acting or purporting to act on its behalf.

15.    "Government Designated FHLBank" means any FHLBank designated by Plaintiff United States of America as at issue in this Action.  The current list of FHLBanks designated by the United States consists of: FHLB Atlanta, FHLB Chicago and FHLB Seattle.

16.    "Government Designated RMBS and CDOs" refers to any issued tranches or classes associated with any transactions designated by Plaintiff United States of America as at

issue in this Action. The current list of RMBS and CDOs designated by the United States is annexed hereto as Exhibit II.

17.     The term "including" means including but not limited to.

18.     The term "investment" means any financial interest in a security, including but not limited to the purchase, warehousing and/or provision of a liquidity backstop.

19.     "NRSRO" means Nationally Recognized Statistical Rating Organization, as defined in 15 USC § 78c(a)(62).

20.     "OFHEO" means the Office of Federal Housing Enterprise Oversight.

21.     The term "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all documents and information that would be excluded if such word were not so construed.

22.     The term "policies" means any rule, procedure, guideline, practice or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly.

23.     The term "relating to" means relating to, referring to, concerning, describing, pertaining to, evidencing, reflecting, regarding, constituting, involving, or touching upon in any way. Each of these terms may be used interchangeably herein and will be treated as encompassing all these meanings.

24.     "RMBS" means residential mortgage-backed securities.

25.     "S&P" means McGraw Hill Financial, Inc. (formerly known as The McGraw-Hill Companies, Inc.), Standard & Poor's Financial Services LLC, and Standard & Poor's Ratings Services.

26.     "Treasury" means the United States Department of the Treasury, including any employees, agents, advisors or other persons acting or purporting to act on its behalf.

27.     "United States" means any agency, bureau or other sub-division of the Executive Branch of the federal government or any independent federal agency.

28.     "You," "Your," or "FHFA" means the Federal Housing Finance Agency and its predecessor agencies, the Office of Federal Housing Enterprise Oversight, the Federal Housing Finance Board, and the GSE mission office at the Department of Housing and Urban Development, including any employees, agents, advisors or other persons acting or purporting to act on its or their behalf.

29.     Words in the singular include the plural, and words in the plural include the singular.  "Each" and "any" are both singular and plural.

30.     Words in the past tense include the present, and words in the present tense include the past.

II.   <u>INSTRUCTIONS</u>

1.     If a document is withheld on the ground of privilege or otherwise, please prepare a privilege log in compliance with Rule 45 of the Federal Rules of Civil Procedure.

2.     Notwithstanding the assertion of any objections to the document requests set forth below, You shall produce all documents responsive to all parts of each request to which objection is not made.

3.     If portions of documents are withheld on the basis of privilege or otherwise, the withheld portions must be stamped with the word "redacted," the remainder of the document must be produced, and the information requested in Instruction No. 1, above, shall be provided with respect to the redacted or withheld portion of the document.

4.      If any document responsive to the document requests set forth below has been destroyed, lost, discarded or is otherwise not capable of being produced, please identify each such document and provide for each (a) the author(s) thereof; (b) the recipient(s) thereof; (c) the subject matter thereof; (d) the date of the document; (e) the document's length; (f) the date on which the document was lost or destroyed; and (g) if the document was destroyed, the reason(s) for its destruction, the manner of its destruction, and the identity of the person(s) requesting, authorizing and performing the destruction.

5.      In response to the document requests set forth below, You shall produce all documents in Your possession, custody or control and all documents in the possession, custody or control of any of Your agents, attorneys or representatives, regardless of the location of such documents.

6.      Unless otherwise stated in a specific request, the documents requested are all documents: (a) prepared or received in the period January 1, 2004 through December 31, 2008; or (b) relating to the period January 1, 2004 through December 31, 2008 (whenever prepared).

7.      This is a continuing request for production of documents. If, after making your initial productions, you obtain or become aware of any further documents responsive to this request, you are requested to produce such additional documents promptly.

III.   <u>DOCUMENTS TO BE PRODUCED</u>

1.      Directories and organizational charts sufficient to identify Your organizational structure (including operating units, subdivisions, and committees, including but not limited to any committees or other groups with oversight over investment risks on the part of the

5

FHLBanks, and the relationships and reporting structure between and among them) and management responsibilities.

2.      Documents sufficient to identify each person who participated in examinations, inquiries, reviews, investigations, or enforcement actions by You of any Government Designated FHLBank from 2004 to the present.

3.      Documents sufficient to identify each person and/or department from 2004 to the present at the FHFA responsible for:

a.      establishing policies and regulations for the oversight of FHLBanks;

b.      enforcement of policies and regulations applicable to FHLBanks;

c.      establishing policies for FHLBank investment guidelines;

d.      enforcement of policies for FHLBank investment guidelines.

4.      Documents sufficient to identify the regulatory requirements, responsibilities, duties and obligations of or restrictions on FHLBanks in effect during any portion of the period 2004-2008 with respect to investments in RMBS or CDOs backed by RMBS.

5.      Documents sufficient to identify the regulatory requirements, responsibilities, duties and obligations of or restrictions on FHLBanks in effect during any portion of the period 2004-2008 with respect to the use of credit ratings issued by NRSROs.

6.      Documents sufficient to identify and describe Your policies and regulations with respect to the oversight of FHLBanks relating to:

a.      investments in RMBS or CDOs backed by RMBS;

b.      the use of credit ratings issued by NRSROs.

7.      Any documents relating to any request by any Government Designated FHLBank for waiver, exception and/or exemption from credit risk management requirements,

6

responsibilities, duties, obligations or restrictions with respect to investments in RMBS or CDOs backed by RMBS, including requirements concerning the use of credit ratings issued by any NRSROs, or any response to such a request.

8.      Any reports, evaluations, assessments, studies, findings or analyses made by or for You or received by You relating to any or all of the Government Designated FHLBanks concerning credit risk, the adequacy of risk management policies and corporate governance from 2004 to the present.

9.      Documents sufficient to identify any weaknesses You identified in any Government Designated FHLBank's risk management systems, compliance management systems, and/or corporate governance from 2004 to the present.

10.      Documents sufficient to identify Your policies relating to the retention and/or destruction of documents, files, electronically stored documents, e-mail and other electronic files from 2004 to the present.

11.      Any reports, evaluations, assessments, studies, findings or analyses made by or for You or received by You from 2004 to the present relating to:

       a.      the expected performance of the U.S. residential housing market in any portion of the period 2004-2008;

       b.      any prediction of a decline in home prices to occur in 2007 and/or 2008, and any response to any such prediction;

       c.      the expected performance of non-prime residential mortgages originated or securitized in any portion of the period 2004-2008;

       d.      the expected performance of RMBS and/or CDOs backed by RMBS issued in any portion of the period 2004-2008;

       e.      any identification of factors considered or to be considered at any time in the period 2004-2008 in evaluating the expected and/or actual performance of (i) the U.S. residential housing market generally; (ii) non-prime residential mortgages; (iii) RMBS; or (iv) CDOs backed by RMBS;

        f.      the increase in mortgage fraud by borrowers, loan brokers or loan originators, deterioration of underwriting standards, or the decline in the U.S. residential housing market;

        g.      S&P;

        h.      any investigation of any NRSRO and/or the possibility of civil or criminal actions, sanctions or other possible steps of any kind that could lead to adverse consequences of any kind against any NRSRO.

      12.     Any communications or documents relating to communications between

You and any Government Designated FHLBank relating to:

        a.      the expected performance of the U.S. residential housing market in any portion of the period 2004-2008;

        b.      any prediction of a decline in home prices to occur in 2007 and/or 2008, and any response to any such prediction;

        c.      the expected performance of non-prime residential mortgages originated or securitized in any portion of the period 2004-2008;

        d.      the expected performance of RMBS and/or CDOs backed by RMBS issued in any portion of the period 2004-2008;

        e.      any identification of factors considered or to be considered at any time in the period 2004-2008 in evaluating the expected and/or actual performance of (i) the U.S. residential housing market generally; (ii) non-prime residential mortgages; (iii) RMBS; or (iv) CDOs backed by RMBS;

        f.      the increase in mortgage fraud by borrowers, loan brokers or loan originators, deterioration of underwriting standards, or the decline in the U.S. residential housing market;

        g.      S&P;

        h.      any investigation of any NRSRO and/or the possibility of civil or criminal actions, sanctions or other possible steps of any kind that could lead to adverse consequences of any kind against any NRSRO.

      13.     Any communications or documents relating to communications between

You and the United States, including but not limited to the DOJ and/or Treasury, relating to:

        a.      the expected performance of the U.S. residential housing market in any portion of the period 2004-2008;

   b.  any prediction of a decline in home prices to occur in 2007 and/or 2008, and any response to any such prediction;

   c.  the expected performance of non-prime residential mortgages originated or securitized in any portion of the period 2004-2008;

   d.  the expected performance of RMBS and/or CDOs backed by RMBS issued in any portion of the period 2004-2008;

   e.  any identification of factors considered or to be considered at any time in the period 2004-2008 in evaluating the expected and/or actual performance of (i) the U.S. residential housing market generally; (ii) non-prime residential mortgages; (iii) RMBS; or (iv) CDOs backed by RMBS;

   f.  the increase in mortgage fraud by borrowers, loan brokers or loan originators, deterioration of underwriting standards, or the decline in the U.S. residential housing market;

   g.  any assessment, discussion or analysis of the ratings issued by any NRSRO with respect to RMBS and/or CDOs backed by RMBS issued in any portion of the period 2004-2008;

   h.  any comparison of the performance of ratings issued by different NRSROs in any portion of the period 2004-2008, whenever such comparisons were prepared;

   i.  S&P;

   j.  any investigation of any NRSRO and/or the possibility of civil or criminal actions, sanctions or other possible steps of any kind that could lead to adverse consequences of any kind against any NRSRO.

   14.  Any documents relating to Your investigation from 2004 to the present of any Government Designated FHLBank for fraud, deceptive practices or mismanagement relating to RMBS and/or CDOs backed by RMBS issued between 2004 and 2008.

   15.  Any documents from 2004 to the present relating to Your knowledge or awareness of instances of residential mortgage loan origination fraud, including but not limited to complaints and/or investigations relating to the practices of any Government Designated FHLBank.

16.     Any documents relating to Your investigation of or action against any director or officer of any Government Designated FHLBank in connection with alleged fraud, negligence, mismanagement and/or failure to comply with applicable rules or policies from 2004 to the present.

17.     Any documents relating to Your investigation, analysis or review from 2004 to the present of any Government Designated RMBS and CDOs.

18.     Any documents produced or received by You in discovery in any FHFA Fraud Litigation, together with (a) copies of all document requests and/or subpoenas served by or upon You; (b) documents, correspondence, motion papers and/or court orders sufficient to identify the ultimate resolution of any objections to those requests; and (c) copies of any logs or schedules identifying documents withheld from production for any reason.

19.     Any documents relating to any review by You of the decision to invest in any Government Designated RMBS and CDOs by any Government Designated FHLBank, including but not limited to:

       a.     any Government Designated FHLBank's policies governing the purchase, holding or sale of residential mortgage loans or private label mortgage-backed securities, whether as investments or collateral, including but not limited to policies concerning risk management and/or credit assessment;

       b.     any Government Designated FHLBank's policies relating to the role, if any, of credit ratings in investment decisions;

       c.     any Government Designated FHLBank's personnel or committees whose function, tasks or deliberations touched on the consideration, evaluation, acquisition, valuation, disposition, accounting or treatment of residential mortgage loans or private label mortgage-backed securities, whether as investments or collateral.

20.     Any reports, evaluations, assessments, studies, findings or analyses made by or for You or received by You relating to any Government Designated FHLBank's invest-

ment in RMBS and/or CDOs backed by RMBS from 2004 to the present, including but not limited to:

      a.    any documents relating to a Government Designated FHLBank's decision to invest in any RMBS or CDOs backed by RMBS;

      b.    any documents relating to the involvement of any third-party, including but not limited to any NRSRO, investment bank, auditor, regulatory authority, placement agent, investor, customer or any employee of such third-party, in the securitization, management, issuance, sale or distribution of any RMBS or CDOs backed by RMBS;

      c.    any documents relating to a Government Designated FHLBank's investigation and evaluation of the risks associated with RMBS or CDOs backed by RMBS;

      d.    any documents relating to a Government Designated FHLBank's retention of any advisors in connection with the actual or potential purchase of RMBS or CDOs backed by RMBS;

      e.    any documents relating to a Government Designated FHLBank's communication with any other FHLBank concerning the actual or potential purchase of RMBS or CDOs backed by RMBS;

      f.    any documents relating to the role of credit ratings in a Government Designated FHLBank's investment decisions.

    21.    Any reports, evaluations, assessments, studies, findings or analyses made by or for You or received by You relating to any gain, loss or other financial effect by or on any Government Designated FHLBank, including but not limited to:

      a.    any documents purporting to quantify the gain, loss or other financial effect;

      b.    any documents relating to any effort to receive compensation for any such loss from another entity or fund;

      c.    any documents relating to the existence and amount of any insurance coverage against any such loss;

      d.    any documents relating to factors or causes that contributed to the loss;

11

      e.    any documents relating to inquiries, reviews, investigations, or enforcement actions relating to the loss;

      f.    any document whereby a financial effect on any such Government Designated FHLBank was not denominated as a gain or loss.

      22.    Any report, evaluation, assessment, study, finding or analysis made by or for You or received by You relating to any gain, loss or other financial effect by or on any FHLBank that resulted from any investment in RMBS or CDOs backed by RMBS, including but not limited to:

      a.    any documents relating to Your analysis or evaluation of a FHLBank's gain, loss or other financial effect resulting from any investment in RMBS or CDOs backed by RMBS;

      b.    the investment policies of any such FHLBank;

      c.    any evaluation, assessment, study, finding or analysis of such FHLBank's investment practices;

      d.    any evaluation, assessment, study, finding or analysis made of the FHFA's or any other regulator's oversight of such FHLBank;

      e.    any evaluation, assessment, study, finding or analysis made by You from 2004 to the present evaluating investments made by any FHLBank from 2004 to 2008;

      f.    any document whereby a financial effect on any such FHLBank was not denominated as a gain or loss.

      23.    Any reports, evaluations, assessments, studies, findings or analyses of Your oversight or the oversight of any other regulatory authority of a Government Designated FHLBank including but not limited to the extent to which staffing resources were available.

      24.    Any documents referring to or concerning independence or objectivity of one or more NRSROs.

25.     Any reports, evaluations, assessments, studies, findings or analyses made by or for You or received by You from 2004 to the present concerning credit ratings issued with respect to RMBS and/or CDOs backed by RMBS issued between 2004 and 2008, relating to:

  a.      the accuracy of the ratings issued by any NRSRO;

  b.      the existence of perceived conflicts of interest of any NRSRO in its ratings;

  c.      the meaning, use and/or performance of ratings issued by any NRSRO;

  d.      the advisability of any institution or individual relying on ratings issued by any NRSRO;

  e.      the relative performance of NRSROs or any NRSRO.

26.     Any documents made by or for You or received by You relating to the practices of NRSROs with respect to:

  a.      policies concerning the updating of CDO ratings, including the incorporation of the actual or projected changes in ratings or ratings methodologies with respect to the classes of underlying securities to which CDOs are exposed;

  b.      policies concerning the updating of RMBS ratings, including the incorporation of the actual or projected changes in ratings or ratings methodologies with respect to the classes of underlying assets to which RMBS are exposed;

  c.      the timing of changes in rating methodologies and analytical models implemented in 2007 relating to changing perceptions of the performance of the U.S. residential housing market;

  d.      policies related to addressing any perceived conflicts of interest in connection with rating structured finance securities;

  e.      the development and updating of rating methodologies and analytical models used in the ratings process;

  f.      accounting for the deterioration in the performance of non-prime RMBS when issuing new ratings on structured finance securities or surveilling existing ratings on structured finance securities;

  g.      the utilization of loan level data in rating RMBS and CDOs backed by RMBS.

27.     Any communications or documents relating to communications between You and any NRSRO relating to credit ratings issued with respect to RMBS and/or CDOs backed by RMBS issued between 2004 and 2008.

28.     Any documents sent or received by You, whether internal or external, relating to S&P's credit rating of the United States of America, or the Downgrade, or the Credit-Watch Action, or the Change in Outlook between 2011 and the present.

29.     Any communications or documents relating to communications between You and any Government Designated FHLBank relating to:

   a.     the accuracy of the ratings issued by any NRSRO;

   b.     the existence of perceived conflicts of interest of any NRSRO in its ratings;

   c.     the meaning, use and/or performance of ratings issued by any NRSRO;

   d.     the advisability of any institution or individual relying on ratings issued by any NRSRO;

   e.     the relative performance of NRSROs or any NRSRO.

30.     Any documents relating to Your:

   a.     knowledge or awareness of the experience, expertise and/or performance of any Government Designated FHLBank in assessing RMBS or CDO investments;

   b.     knowledge or awareness of any Government Designated FHLBank's knowledge, understanding or awareness of the U.S. RMBS and/or CDO market;

   c.     instructions, suggestions or advice to any Government Designated FHLBank to maintain, alter or abrogate its investment policies.

31.     Any documents relating to the ratings assigned by You to any Government Designated FHLBank in accordance with the Federal Home Loan Bank Rating System, for the

14

years 2004 through 2008, concerning credit risk, the adequacy of risk management policies and corporate governance.

32.     Any documents relating to Your annual Report to Congress, for the years 2004 through 2008, concerning any Government Designated FHLBank, including but not limited to all documents reviewed, considered by and/or supplied to You in connection with preparing, making or reviewing each of the following statements:

a.     A statement in the FHFA's 2008 Report to Congress: "Some FHLBanks paid insufficient attention to the credit risk associated with PLS and relied too heavily on credit ratings in making investment decisions.  Many did not adjust their retained earnings targets in response to deterioration in the credit quality of their PLS holdings. Some were slow to adopt policies with respect to the acceptance of subprime or nontraditional mortgage loans as collateral for advances."

b.     A statement in the FHFA's 2008 Report to Congress concerning FHLB Atlanta: "Credit risk management is weak but improving. The FHLBank has weak positions in mortgage backed securities credit, supplemental mortgage insurance credit protection on its mortgage portfolio, and advance collateral. Management experience is limited—the chief credit officer has only been in the position since December 2007."

c.     A statement in the FHFA's 2008 Report to Congress concerning FHLB Chicago: "Overall, the FHLBank demonstrated some improvement in risk management and cost controls in 2008, but it is considered to be less than satisfactory overall."

d.     A statement in the FHFA's 2008 Report to Congress concerning FHLB Seattle: "Governance is unsatisfactory. The Board of Directors and management did not respond promptly or with appropriate strategies to the elevated credit risks posed by the PLS portfolio. The Board depended too heavily on NRSRO ratings, and its investment choices, policies, and monitoring are poor."

33.     Those portions of any transcripts, meeting minutes and/or agendas for the meetings of (a) the FHFB Board of Directors from 2004 through 2008 and (b) the Federal Housing Finance Oversight Board from July 30, 3008 to the present relating to the Government Designated FHLBanks.

15

34.     Any documents You reviewed or consulted in connection with the preparation of Advisory Bulletin 2007-AB-01 and Advisory Bulletin 2008-AB-02 concerning Nontraditional and Subprime Residential Mortgage Loans.

35.     Any documents You reviewed or consulted in connection with the preparation of Advisory Bulletin 2006-AB-02 and Advisory Bulletin 2009-AB-03 concerning Validation and Documentation of Models and Related Controls on Internal Processes.

36.     Any documents You reviewed or consulted in connection with the preparation of Federal Housing Finance Board Supervisory Action No. 2007-SUP-01 and Federal Housing Finance Board Supervisory Action No. 2008-SUP-01 against FHLB Chicago.

37.     Any documents relating to the finding in FHFB Resolution 2007-30 that "the 2007 examination revealed that the Federal Home Loan Bank of Chicago (Chicago Bank) has engaged in unsafe and unsound practices with respect to its capital management and market risk management."

38.     Any other documents prepared or received by You in connection with Your supervision of the Government Designated FHLBanks for the years 2004 to 2008 relating to the Government Designated FHLBanks' credit risk, the adequacy of risk management policies and corporate governance, including but not limited to any Alert Letters, Pre-Examination Analysis Memoranda, Scope of Examination Memoranda, Findings Memoranda, Conclusions Memoranda, Workpapers, and Reports of Examination.

39.     Any documents reviewed by and/or supplied to James B. Lockhart III, then-Director of the FHFA, in connection with the following:

        a.      A statement at the Urban Land Institute Terwilliger Center Annual Forum on May 7, 2009: "During the boom times, virtually everyone involved in home mortgage lending—builders, borrowers, brokers, Realtors®, lenders, mortgage insurers, credit rating agencies, the Enterprises, other secondary market investors, and yes, we reg-

16

ulators—failed to fully appreciate the likelihood of a severe house price correction. The pricing models of Fannie Mae and Freddie Mac, for example, assumed that house prices would just continue to go up."