# **Exhibit 26**

(Cardona Declaration)

# KEKER & VAN NEST LLP

633 Battery Street
San Francisco, CA 94111-1809

415 391 5400
kvn.com

Paven Malhotra
(415) 676-2238
pmalhotra@kvn.com

January 17, 2014

VIA FEDERAL EXPRESS

Ms. Elizabeth Whitehead
Director, Region 5
National Credit Union Administration
Region 5 – Tempe
1230 W. Washington Street, Suite 301
Tempe, AZ 85281

Re:   NCUA / Request for Documents Pursuant to Federal Rule of Civil Procedure 45

Dear Ms. Whitehead:

Enclosed please find a subpoena in the matter captioned *United States* v. *McGraw-Hill Cos.*, No. 2:13-cv-00779-DOC (JCGx)(C.D. Cal.) (the "Action"). The subpoena is Attachment A to this letter. A copy of the complaint served by the United States in the Action is Attachment B. The subpoena has been issued on behalf of our clients, The McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services LLC (collectively, "S&P").[1] We provide this letter to you as a courtesy in connection with your review of the subpoena. (The letter also provides information called for under 12 C.F.R. § 792 et seq., although production of the documents is required independent of those rules, under terms of the subpoena.) We have sent a copy of the subpoena to the NCUA's General Counsel and, as some of the requested materials may be under the control of the NCUA's Office of the Inspector General, *see, e.g.*, Attachment A, Document Requests 16 and 43-44, we have also sent a copy to the OIG's Office.

The United States has alleged that from at least September 2004 through at least October 2007, S&P engaged in a scheme to defraud investors, including federally insured financial institutions, in two types of structured debt securities, Residential Mortgage Backed Securities ("RMBS") and Collateralized Debt Obligations ("CDOs"). In particular, the United States alleges that: (a) from September 2004 through October 2007, S&P limited, adjusted, and delayed updates to the ratings criteria and analytical models it used to assess the credit risks posed by RMBS and CDOs, weakening those criteria and models from what S&P's own analysts believed was necessary to make them more accurate; and (b) from March 2007 through October 2007, despite

---

[1] As of May 1, 2013, The McGraw-Hill Companies, Inc. was renamed McGraw Hill Financial, Inc.

Ms. Elizabeth Whitehead
January 17, 2014
Page 2

knowing that the credit risks posed by non-prime RMBS were significantly increasing, S&P disregarded the true extent of those credit risks when rating CDOs exposed to those non-prime RMBS, and, as a result, issued CDO ratings that it knew did not reflect the true credit risks of those CDOs. The United States contends that these actions suggest S&P falsely represented that its credit ratings of RMBS and CDO tranches were objective, independent, and uninfluenced by any conflicts of interest that might compromise S&P's analytic judgment.

The information requested in Attachment A is highly relevant to the subject matter of this Action and critical to the defense of S&P. Our requests seek documents and other materials in the possession of the National Credit Union Administration (the "NCUA") concerning the alleged effect S&P's actions had on the credit unions designated and put at issue by the United States ("Government Designated Credit Unions") and the role played by other factors, including systemic risks and the actions of third parties relating to RMBS and CDOs backed by RMBS. In particular, S&P seeks information concerning: (a) the NCUA's oversight of the Government Designated Credit Unions with respect to managing credit risk and the use of credit ratings in the investment process; (b) the Government Designated Credit Unions' investment policies and decision to invest in the securities at issue in this action; (c) the alleged losses suffered by the Government Designated Credit Unions; and (d) NCUA's lawsuits, investigations and settlements concerning the entities and individuals it alleges played a role in the losses suffered by the Government Designated Credit Unions. As reflected in the NCUA's conclusions in its Material Loss Reports, these materials will be important in ascertaining the extent to which losses suffered by any Government Designated Credit Union were the result of mismanagement or inadequate oversight. We also seek information in the possession of the NCUA that relates specifically to S&P's rating actions with respect to U.S. government debt, which bears directly on S&P's affirmative defense of unconstitutional retaliation for the exercise of First Amendment rights.

To date, we have been unable to obtain this information from any other party, person or entity. We respectfully submit that our clients' right to defend themselves, coupled with the public's interest in accurate judicial fact finding, warrant disclosure of this information and documents sought.

Materials produced in this Action may be designated for confidential treatment pursuant to a Protective Order entered in the U.S. District Court for the Central District of California (the "Protective Order"). The Protective Order will adequately preserve the confidentiality of any information provided by the NCUA, and we attach a copy for your consideration. *See* Attachment C.

Ms. Elizabeth Whitehead
January 17, 2014
Page 3


In light of the discovery schedule in place in the Action we seek a response within 45 days. If you have any questions concerning this request, please contact me by telephone at the number set forth above.

Very truly yours,

Paven Malhotra

PM:js

enclosures

cc :   Mr. Michael McKenna
       General Counsel
       National Credit Union Administration
       Office of the General Counsel
       1775 Duke St.
       Alexandria, VA 22314-3428

       Mr. James Hagen
       Inspector General
       National Credit Union Administration
       Office of the Inspector General
       1775 Duke Street
       Alexandria, VA 22314-3428

       George S. Cardona, Esq.
       Assistant U.S. Attorney
       Office of the U. S. Attorney
       United States Courthouse
       312 North Spring Street 12th Floor
       Los Angeles, CA 90012

# Attachment A

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Central District of California

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   2:13-cv-00779-DOC-JCG |
| MCGRAW-HILL COMPANIES, INC. and STANDARD & POOR'S FINANCIAL SERVICES LLC | ) ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:         National Credit Union Administration, Attention: Elizabeth Whitehead, Director
            Region 5 - Tempe, 1230 W. Washington Street, Suite 301, Tempe, AZ 85281

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Documents responsive to the Requests set forth at Schedule A.

| Place: Keller Rackauckas LLP 18300 Von Karman Ave., Suite 930 Irvine, California 92612-1057 | Date and Time: 03/03/2014 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      01/17/2014

*CLERK OF COURT*

                                                                OR      *Paven Malhotra* nsy

_____                                       _____
    *Signature of Clerk or Deputy Clerk*                                          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   The McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services LLC              , who issues or requests this subpoena, are:

Paven Malhotra, Keker & Van Nest LLP, 633 Battery St., San Francisco, CA 94111 pmalhotra@kvn.com 415.676.2238

**Notice to the person who issues or requests this subpoena**

A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  2:13-cv-00779-DOC-JCG

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
   **(i)** is a party or a party's officer; or
   **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
   **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
   **(i)** fails to allow a reasonable time to comply;
   **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
   **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
   **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   **(i)** expressly make the claim; and
   **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**Schedule A to the Subpoena to the National Credit Union Administration**

I.  DEFINITIONS

1.      "Action" means this action captioned *United States* v. *McGraw-Hill Cos.*, No. 2:13-cv-00779-DOC (JCGx), pending in the United States District Court for the Central District of California.

2.      "CDO" means collateralized-debt obligation.

3.      "Change in Outlook" means the April 18, 2011 action by Standard & Poor's Ratings Services changing its long-term outlook on the sovereign credit rating for Plaintiff, the United States of America, from stable to negative.

4.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

5.      "CreditWatch Action" means the July 14, 2011 action by Standard & Poor's Ratings Services placing the long-term and short-term sovereign credit ratings for Plaintiff, the United States of America, on CreditWatch with negative implications.

6.      "Credit Union" means any state or federal credit union regulated by You, including any corporate or natural person credit union, and any of their predecessors, successors, assigns, subsidiaries, affiliates, employees or agents.

7.      The terms "document" and "documents" shall be construed in the broadest sense allowed by Rule 34 of the Federal Rules of Civil Procedure, and include, but are not limited to, any writings, drawings, graphs, charts, photographs, phonograph records, tape recordings, notes, diaries, calendars, books, papers, accounts, electronic or videotape recordings, and any computer-generated, computer-stored, or electronically stored matter from which infor-

mation can be obtained and translated, if necessary, into reasonable, useable form.  This includes preliminary versions, drafts, and revisions.

8.     "DOJ" means the United States Department of Justice, including any employees, agents, advisors or other persons acting or purporting to act on its behalf.

9.     "Downgrade" means the August 5, 2011 action by Standard & Poor's Ratings Services changing its long-term sovereign credit rating on Plaintiff, the United States of America, from AAA to AA+.

10.     "Government Designated Credit Union" means any state or federal Credit Union, including any corporate or natural person credit union, designated by Plaintiff United States of America as at issue in this Action.  The current list of such entities designated by the United States consists of: Eastern Financial Florida Credit Union, Members United Federal Credit Union, Southwest Corporate Federal Credit Union, U.S. Central Federal Credit Union, and Western Corporate Federal Credit Union.  As used herein, the term "Government Designated Credit Union" includes all predecessors, successors, assigns, subsidiaries, affiliates, employees or agents of such entities.

11.     "Government Designated RMBS and CDOs" refers to any issued tranches or classes associated with any transactions designated by Plaintiff United States of America as at issue in this Action.  The current list of RMBS and CDOs designated by the United States is annexed hereto as Exhibit I.

12.     The term "including" means including but not limited to.

13.     The term "investment" means any financial interest in a security, including but not limited to the purchase, warehousing and/or provision of a liquidity backstop.

14.     "NCUA Fraud Litigation" means any litigation commenced by NCUA relating to allegations of fraud, misrepresentations, omissions, or deceptive practices on the part of any issuer, arranger, sponsor, underwriter or seller of RMBS or CDOs, including but not limited to the list of litigations annexed hereto as Exhibit II.

15.     "NCUA Fraud Settlement" means any settlement of a claim asserted by NCUA relating to allegations of fraud, misrepresentations, omissions, or deceptive practices on the part of any issuer, arranger, sponsor, underwriter or seller of RMBS or CDOs, including but not limited to the settlements of claims NCUA asserted against: Bank of America, Citigroup, Deutsche Bank Securities and HSBC.

16.     "NRSRO" means Nationally Recognized Statistical Rating Organization, as defined in 15 USC § 78c(a)(62).

17.     The term "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all documents and information that would be excluded if such word were not so construed.

18.     The term "policies" means any rule, procedure, guideline, practice or course of conduct, whether formal or informal, written or unwritten, recorded or unrecorded, which was recognized or followed, explicitly or implicitly.

19.     The term "relating to" means relating to, referring to, concerning, describing, pertaining to, evidencing, reflecting, regarding, constituting, involving, or touching upon in any way.  Each of these terms may be used interchangeably herein and will be treated as encompassing all these meanings.

20.     "RMBS" means residential mortgage-backed securities.

3

21.     "S&P" means McGraw Hill Financial, Inc. (formerly known as The McGraw-Hill Companies, Inc.), Standard & Poor's Financial Services LLC, and Standard & Poor's Ratings Services.

22.     "Treasury" means the United States Department of the Treasury, including any employees, agents, advisors or other persons acting or purporting to act on its behalf.

23.     "United States" means any agency, bureau or other sub-division of the Executive Branch of the federal government or any independent federal agency.

24.     "You," "Your," or "NCUA" means the National Credit Union Administration, including the Board of the NCUA, any departments, offices (including the Office of Inspector General, "OIG"), employees, agents, advisors (including but not limited to Crowe Horwath LLP) or other persons acting or purporting to act on its or their behalf.

25.     Words in the singular include the plural, and words in the plural include the singular.  "Each" and "any" are both singular and plural.

26.     Words in the past tense include the present, and words in the present tense include the past.

II.    <u>INSTRUCTIONS</u>

1.     If a document is withheld on the ground of privilege or otherwise, please prepare a privilege log in compliance with Rule 45 of the Federal Rules of Civil Procedure.

2.     Notwithstanding the assertion of any objections to the document requests set forth below, You shall produce all documents responsive to all parts of each request to which objection is not made.

3.     If portions of documents are withheld on the basis of privilege or otherwise, the withheld portions must be stamped with the word "redacted," the remainder of the doc-

4

ument must be produced, and the information requested in Instruction No.1, above, shall be provided with respect to the redacted or withheld portion of the document.

4.      If any document responsive to the document requests set forth below has been destroyed, lost, discarded or is otherwise not capable of being produced, please identify each such document and provide for each (a) the author(s) thereof; (b) the recipient(s) thereof; (c) the subject matter thereof; (d) the date of the document; (e) the document's length; (f) the date on which the document was lost or destroyed; and (g) if the document was destroyed, the reason(s) for its destruction, the manner of its destruction, and the identity of the person(s) requesting, authorizing and performing the destruction.

5.      In response to the document requests set forth below, You shall produce all documents in Your possession, custody or control and all documents in the possession, custody or control of any of Your agents, attorneys or representatives, regardless of the location of such documents.  This subpoena does not seek the production of documents that may be in the NCUA's possession, custody or control solely in its capacity as custodian of documents of a closed Credit Union.  S&P expressly reserves, and neither waives nor intends to waive, the right to serve one or more additional subpoenas seeking the production of documents held by the NCUA in its capacity as custodian for the documents of a closed Credit Union.

6.      Unless otherwise stated in a specific request, the documents requested are all documents (a) prepared or received in the period January 1, 2004 through December 31, 2008; or (b) relating to the period January 1, 2004 through December 31, 2008 (whenever prepared).

7.      This is a continuing request for production of documents. If, after making your initial productions, you obtain or become aware of any further documents responsive to this request, you are requested to produce such additional documents promptly.

III.   <u>DOCUMENTS TO BE PRODUCED</u>

1.      Directories and organizational charts sufficient to identify Your organizational structure (including operating units, subdivisions and committees, including but not limited to any committees or other groups with oversight over investment risks on the part of the Credit Unions supervised by you, and the relationships and reporting structure between and among them) and management responsibilities.

2.      Documents sufficient to identify each person who participated in examinations, inquiries, reviews, investigations, or enforcement actions by You of any Government Designated Credit Union from 2004 to the present.

3.      Documents sufficient to identify each person and/or department from 2004 to the present at the NCUA responsible for:

a.      establishing policies and regulations for the oversight of Credit Unions;

b.      enforcement of policies and regulations applicable to Credit Unions;

c.      establishing policies for Credit Union investment guidelines;

d.      enforcement of policies for Credit Union investment guidelines.

4.      Documents sufficient to identify the regulatory requirements, responsibilities, duties and obligations of or restrictions on Credit Unions in effect during any portion of the period 2004-2008 with respect to investments in RMBS or CDOs backed by RMBS.

6

5.      Documents sufficient to identify the regulatory requirements, responsibilities, duties and obligations of or restrictions on Credit Unions in effect during any portion of the period 2004-2008 with respect to the use of credit ratings issued by NRSROs.

6.      Documents sufficient to identify and describe Your policies and regulations with respect to the oversight of Credit Unions relating to:

      a.   investments in RMBS or CDOs backed by RMBS;

      b.   the use of credit ratings issued by NRSROs.

7.      Any documents relating to any request by any Government Designated Credit Union for waiver, exception and/or exemption from credit risk management requirements, responsibilities, duties, obligations or restrictions with respect to investments in RMBS or CDOs backed by RMBS, including requirements concerning the use of credit ratings issued by any NRSROs, or any response to such a request.

8.      Any reports, evaluations, assessments, studies, findings or analyses made by or for You or received by You relating to any or all of the Government Designated Credit Unions concerning credit risk, the adequacy of risk management policies and corporate governance from 2004 to the present.

9.      Documents sufficient to identify any weaknesses You identified in any Government Designated Credit Union's risk management systems, compliance management systems, and/or corporate governance from 2004 to the present, including but not limited to Capital Adequacy, Asset Quality, Management Earnings, and Asset/Liability Management (CAMEL), Corporate Risk Information System (CRIS) and any other comparable ratings or rankings assigned by You to any Government Designated Credit Union, material loss reviews, Risk Profiles, Scope Memoranda, examination workpapers, and reports of examination.

10.     Documents sufficient to identify Your policies relating to the retention and/or destruction of documents, files, electronically stored documents, e-mail and other electronic files from 2004 to the present.

11.     Any reports, evaluations, assessments, studies, findings or analyses made by or for You or received by You from 2004 to the present relating to:

      a.     the expected performance of the U.S. residential housing market in any portion of the period 2004-2008;

      b.     any prediction of a decline in home prices to occur in 2007 and/or 2008, and any response to any such prediction;

      c.     the expected performance of non-prime residential mortgages originated or securitized in any portion of the period 2004-2008;

      d.     the expected performance of RMBS and/or CDOs backed by RMBS issued in any portion of the period 2004-2008;

      e.     any identification of factors considered or to be considered at any time in the period 2004-2008 in evaluating the expected and/or actual performance of (i) the U.S. residential housing market generally; (ii) non-prime residential mortgages; (iii) RMBS; or (iv) CDOs backed by RMBS;

      f.     the increase in mortgage fraud by borrowers, loan brokers or loan originators, deterioration of underwriting standards, or the decline in the U.S. residential housing market;

      g.     S&P;

      h.     any investigation of any NRSRO and/or the possibility of civil or criminal actions, sanctions or other possible steps of any kind that could lead to adverse consequences of any kind against any NRSRO.

12.     Any communications or documents relating to communications between You and any Government Designated Credit Union relating to:

      a.     the expected performance of the U.S. residential housing market in any portion of the period 2004-2008;

      b.     any prediction of a decline in home prices to occur in 2007 and/or 2008, and any response to any such prediction;

       c.     the expected performance of non-prime residential mortgages originated or securitized in any portion of the period 2004-2008;

       d.     the expected performance of RMBS and/or CDOs backed by RMBS issued in any portion of the period 2004-2008;

       e.     any identification of factors considered or to be considered at any time in the period 2004-2008 in evaluating the expected and/or actual performance of (i) the U.S. residential housing market generally; (ii) non-prime residential mortgages; (iii) RMBS; or (iv) CDOs backed by RMBS;

       f.     the increase in mortgage fraud by borrowers, loan brokers or loan originators, deterioration of underwriting standards, or the decline in the U.S. residential housing market;

       g.     S&P;

       h.     any investigation of any NRSRO and/or the possibility of civil or criminal actions, sanctions or other possible steps of any kind that could lead to adverse consequences of any kind against any NRSRO.

       13.     Any communications or documents relating to communications between You and the United States, including but not limited to the DOJ and/or Treasury, relating to:

       a.     the expected performance of the U.S. residential housing market in any portion of the period 2004-2008;

       b.     any prediction of a decline in home prices to occur in 2007 and/or 2008, and any response to any such prediction;

       c.     the expected performance of non-prime residential mortgages originated or securitized in any portion of the period 2004-2008;

       d.     the expected performance of RMBS and/or CDOs backed by RMBS issued in any portion of the period 2004-2008;

       e.     any identification of factors considered or to be considered at any time in the period 2004-2008 in evaluating the expected and/or actual performance of (i) the U.S. residential housing market generally; (ii) non-prime residential mortgages; (iii) RMBS; or (iv) CDOs backed by RMBS;

       f.     the increase in mortgage fraud by borrowers, loan brokers or loan originators, deterioration of underwriting standards, or the decline in the U.S. residential housing market;

g.      any assessment, discussion or analysis of the ratings issued by any NRSRO with respect to RMBS and/or CDOs backed by RMBS issued in any portion of the period 2004-2008;

h.      any comparison of the performance of ratings issued by different NRSROs in any portion of the period 2004-2008, whenever such comparisons were prepared;

i.      S&P;

j.      any investigation of any NRSRO and/or the possibility of civil or criminal actions, sanctions or other possible steps of any kind that could lead to adverse consequences of any kind against any NRSRO.

14.     Any documents relating to Your investigation from 2004 to the present of any Government Designated Credit Union for fraud, deceptive practices or mismanagement relating to RMBS and/or CDOs backed by RMBS issued between 2004 and 2008.

15.     Any documents from 2004 to the present relating to Your knowledge or awareness of instances of residential mortgage loan origination fraud, including but not limited to complaints and investigations relating to the practices of any Government Designated Credit Union.

16.     Any documents relating to Your investigation of or action against any director or officer of any Government Designated Credit Union in connection with alleged fraud, negligence, mismanagement and/or failure to comply with applicable rules or policies from 2004 to the present.

17.     Any documents relating to any investigation, analysis or review by You of any Government Designated RMBS and CDOs, including but not limited to documents relating to investigations that culminated in any NCUA Fraud Litigation or NCUA Fraud Settlement.

18.     Any documents produced or received by You in discovery in any NCUA Fraud Litigation together with (a) copies of all document requests and/or subpoenas served by or

10

upon You; (b) documents, correspondence, motion papers and/or court orders sufficient to identify the ultimate resolution of any objections to those requests; and (c) copies of any logs or schedules identifying documents withheld from production for any reason.

19.      Any documents relating to any review by You of the decision to invest in any Government Designated RMBS and CDOs by any Government Designated Credit Union including but not limited to:

a.      any Government Designated Credit Union's policies governing the purchase, holding or sale of residential mortgage loans or private label mortgage-backed securities, whether as investments or collateral, including but not limited to policies concerning risk management and/or credit assessment;

b.      any Government Designated Credit Union's policies relating to the role, if any, of credit ratings in investment decisions;

c.      any Government Designated Credit Union's personnel or committees whose function, tasks or deliberations touched on the consideration, evaluation, acquisition, valuation, disposition, accounting or treatment of residential mortgage loans or private label mortgage-backed securities, whether as investments or collateral.

20.      Any reports, evaluations, assessments, studies, findings or analyses made by or for You or received by You relating to any Government Designated Credit Union's investment in RMBS and/or CDOs backed by RMBS from 2004 to the present, including but not limited to:

a.      any documents relating to the Government Designated Credit Union's decision to invest in any RMBS or CDOs backed by RMBS;

b.      any documents relating to the involvement of any third-party, including but not limited to any NRSRO, investment bank, auditor, regulatory authority, placement agent, investor, customer or any employee of such third-party, in the securitization, management, issuance, sale or distribution of any RMBS or CDOs backed by RMBS;

c.      any documents relating to a Government Designated Credit Union's investigation and evaluation of the risks associated with RMBS or CDOs backed by RMBS;

11

d.      any documents relating to a Government Designated Credit Union's retention of any advisors in connection with the actual or potential purchase of RMBS or CDOs backed by RMBS;

e.      any documents relating to a Government Designated Credit Union's communication with any other natural or corporate Credit Union concerning the actual or potential purchase of RMBS or CDOs backed by RMBS;

f.      any documents relating to the role of credit ratings in a Government Designated Credit Union's investment decisions.

21.     Any reports, evaluations, assessments, studies, findings or analyses made by or for You or received by You relating to any gain, loss or other financial effect by or on any Government Designated Credit Union, including but not limited to:

a.      any documents purporting to quantify the gain, loss or other financial effect;

b.      any documents relating to any effort to receive compensation for any such loss from another entity or fund, including but not limited to the Central Liquidity Fund, National Credit Union Share Insurance Fund or Temporary Corporate Credit Union Stabilization Fund;

c.      any documents relating to the existence and amount of any insurance coverage against any such loss;

d.      any documents relating to factors or causes that contributed to the loss;

e.      any documents relating to inquiries, reviews, investigations, or enforcement actions relating to the loss;

f.      any document whereby a financial effect on any such Government Designated Credit Union was not denominated as a gain or loss.

22.     Any report, evaluation, assessment, study, finding or analysis made by or for You or received by You relating to any gain, loss or other financial effect by or on any Credit Union that resulted from any investment in RMBS or CDOs backed by RMBS as well as:

a.      any documents relating to Your analysis or evaluation of a Credit Union's gain, loss or other financial effect resulting from any investment in RMBS or CDOs backed by RMBS;

12

b.      the investment policies of any such Credit Union;

c.      any evaluation, assessment, study, finding or analysis of such Credit Union's investment practices;

d.      any evaluation, assessment, study, finding or analysis made of the NCUA's or any other regulator's oversight of such Credit Union;

e.      any evaluation, assessment, study, finding or analysis made by You from 2004 to the present evaluating investments made by any Credit Union form 2004 to 2008;

f.      any document whereby a financial effect on any such Credit Union was not denominated as a gain or loss.

23.    Any reports, evaluations, assessments, studies, findings or analyses of Your oversight or the oversight of any other regulatory authority of a Government Designated Credit Union including but not limited to the extent to which staffing resources were available.

24.    Any documents referring to or concerning independence or objectivity of one or more NRSROs.

25.    Any reports, evaluations, assessments, studies, findings or analyses made by or for You or received by You from 2004 to the present concerning credit ratings issued with respect to RMBS and/or CDOs backed by RMBS issued between 2004 and 2008, relating to:

a.      the accuracy of the ratings issued by any NRSRO;

b.      the existence of perceived conflicts of interest of any NRSRO in its ratings;

c.      the meaning, use and/or performance of ratings issued by any NRSRO;

d.      the advisability of any institution or individual relying on ratings issued by any NRSRO;

e.      the relative performance of NRSROs or any NRSRO.

26.    Any documents made by or for You or received by You relating to the practices of NRSROs with respect to:

13

a.       policies concerning the updating of CDO ratings, including the incorporation of the actual or projected changes in ratings or ratings methodologies with respect to the classes of underlying securities to which CDOs are exposed;

b.       policies concerning the updating of RMBS ratings, including the incorporation of the actual or projected changes in ratings or ratings methodologies with respect to the classes of underlying assets to which RMBS are exposed;

c.       the timing of changes in rating methodologies and analytical models implemented in 2007 relating to changing perceptions of the performance of the U.S. residential housing market;

d.       policies related to addressing any perceived conflicts of interest in connection with rating structured finance securities;

e.       the development and updating of rating methodologies and analytical models used in the ratings process;

f.       accounting for the deterioration in the performance of non-prime RMBS when issuing new ratings on structured finance securities or surveilling existing ratings on structured finance securities;

g.       the utilization of loan level data in rating RMBS and CDOs backed by RMBS.

27.     Any communications or documents relating to communications between You and any NRSRO relating to credit ratings issued with respect to RMBS and/or CDOs backed by RMBS issued between 2004 and 2008.

28.     Any documents sent or received by You, whether internal or external, relating to S&P's credit rating of the United States of America, or the Downgrade, or the Credit-Watch Action, or the Change in Outlook between 2011 and the present.

29.     Any communications or documents relating to communications between You and any Government Designated Credit Union concerning:

a.       the accuracy of the ratings issued by any NRSRO;

b.       the existence of perceived conflicts of interest of any NRSRO in its ratings;

14

      c.     the meaning, use and/or performance of ratings issued by any NRSRO;

      d.     the advisability of any institution or individual relying on ratings issued by any NRSRO;

      e.     the relative performance of NRSROs or any NRSRO.

30.     Any documents relating to Your:

      a.     knowledge or awareness of the experience, expertise and/or performance of any Government Designated Credit Union in assessing RMBS or CDO investments;

      b.     knowledge or awareness of any Government Designated Credit Union's knowledge, understanding or awareness of the U.S. RMBS and/or CDO market;

      c.     instructions, suggestions or advice to any Government Designated Credit Union to maintain, alter or abrogate its investment policies.

31.     Documents sufficient to show (a) Your policies regarding the rating or ranking of Credit Unions pursuant to CAMEL ratings, CRIS and/or any other comparable rating or ranking system; (b) the assignment, and explanation for such an assignment, of any rating or ranking to any Government Designated Credit Union, including but not limited to CAMEL and/or CRIS ratings; and (c) any document reviewed or consulted to arrive at any rating or ranking to any Government Designated Credit Union, including but not limited to CAMEL and/or CRIS ratings.

32.     Documents sufficient to show any evaluation by you of the risk management systems, compliance management systems, and/or corporate governance of any Government Designated Credit Union.

33.     Documents sufficient to show the policies from 2004 to the present, of the Central Liquidity Fund, National Credit Union Share Insurance Fund, Temporary Corporate

15

Credit Union Stabilization Fund or any other such entity or fund with respect to a Credit Union's gain, loss or other financial effect.

34.     Any Government Designated Credit Union's communications with the Central Liquidity Fund, National Credit Union Share Insurance Fund, Temporary Corporate Credit Union Stabilization Fund or any other such entity or fund from 2004 to the present.

35.     Documents sufficient to show the policies from 2004 to the present, of Your "Corporate System Resolution Program" and "NCUA Guaranteed Note Program," referenced on Your website at http://www.ncua.gov/Resources/Corps/NGN/Pages/default.aspx, with respect to any Credit Union's gain, loss or financial effect.

36.     Any Government Designated Credit Union's communications with Your Corporate System Resolution Program and NCUA Guaranteed Note Program from 2004 to the present.

37.     Documents sufficient to show Your policies applicable to the securitization, issuance, sale or use of assets owned by any Government Designated Credit Union from 2004 to the present, including but not limited to "Legacy Assets" referenced on Your website at http://www.ncua.gov/Resources/Corps/NGN/Pages/default.aspx.

38.     Any documents relating to:

a.     the ratings or Your views of the ratings of: (i) assets owned by any Government Designated Credit Union and subsequently securitized or sold from 2004 to the present, including but not limited to Legacy Assets; and (ii) any securitization of any Legacy Asset, or any asset previously owned by any Government Designated Credit Union, from 2004 to the present.

b.     the securitization, sale or use of RMBS or CDO assets from 2004 to the present owned by any Government Designated Credit Union, including but not limited to Legacy Assets.

16

39.     Documents sufficient to show Your policies and regulations applicable to the merging, liquidating and/or placing into conservatorship of any Credit Union, from 2004 to the present.

40.      Any documents including but not limited to any merger agreements and/or other documents relating to the merging, liquidating and/or placing into conservatorship of any Government Designated Credit Union, from 2004 to the Present.

41.     Documents sufficient to show Your policies and regulations regarding Material Loss Reviews and/or investigations of Credit Unions.

42.     Any documents relating to any investigation, inquiry, audit or review of a Government Designated Credit Union Credit Union, including but not limited to the investigations that led to the production of the Material Loss Reviews for Eastern Financial Florida Credit Union (Report #OIG-10-04, dated May 5, 2010), Members United Corporate Federal Credit Union (Report #OIG-11-01, dated May 4, 2011),  Southwest Corporate Federal Credit Union (Report #OIG-11-10, dated  Sept. 22, 2011), U.S. Central Federal Credit Union (Report #OIG-10-17 dated Oct. 18, 2010), and Western Corporate Federal Credit Union (Report #OIG-10-19, dated Nov. 16, 2010).

43.     Any documents that You reviewed or consulted in connection with the following statements:

        a.     "Third parties who originated, securitized and rated the RMBS were a material factor in contributing to Members United's losses and the subsequent losses to the Temporary Corporate Credit Union Stabilization Fund."  Material Loss Review of Members United Corporate Federal Credit Union, Report #OIG-11-01 (May 4, 2011), National Credit Union Administration Office of Inspector General, at 34.

        b.     "Third parties who originated, securitized and rated the underlying residential mortgages and securities were a material contributing factor to Southwest's losses and the subsequent losses to the Temporary Corporate Credit Union Stabilization Fund."  Material Loss Review of Southwest Corporate Federal Credit Union, Report

17

#OIG-11-10 (Sept. 22, 2011), National Credit Union Administration Office of Inspector General, at 41.

           c.      "Third party conduct was a material factor in contributing to U.S. Central losses and the subsequent loss to the National Credit Union Share Insurance Fund."  Material Loss Review of U.S. Central Federal Credit Union, Report #OIG-10-17, (Oct. 18, 2010), National Credit Union Administration Office of Inspector General, at 30.

           d.      "Third parties who originated, securitized and rated the underlying residential mortgages and securities were a material factor in contributing to WesCorp's losses and the subsequent losses to the National Credit Union Share Insurance Fund." Material Loss Review of Western Corporate Federal Credit Union, Report #OIG-10-19, (Nov. 16, 2010), National Credit Union Administration Office of Inspector General, at 40.

        44.      Documents sufficient (a) to identify the current location, whether physical, electronic or otherwise, of any documents, records or other material of any Government Designated Credit Union and (b) to disclose whether such Credit Union, You or some other entity has custody and/or control of such documents.