# **Exhibit 32**

(Cardona Declaration)

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| *Plaintiff* | ) |
| v. | ) |
| MCGRAW-HILL COMPANIES, INC. and | ) |
| STANDARD & POOR'S FINANCIAL SERVICES LLC | ) |
| *Defendant* | ) |

Civil Action No.   2:13-cv-00779-DOC-JCG

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                    Timothy F. Geithner

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Documents responsive to the Requests set forth at Schedule A.

| Place: Cahill Gordon & Reindel LLP<br>80 Pine Street<br>New York, NY 10005 | Date and Time:<br><br>03/10/2014 10:00 am |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g) (relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     02/07/2014

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                  *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   The McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services LLC        , who issues or requests this subpoena, are:

Floyd Abrams, Cahill Gordon & Reindel LLP, 80 Pine St., New York, NY 10005 (fabrams@cahill.com/212-701-3000)

## Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  2:13-cv-00779-DOC-JCG

### PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Schedule A to Subpoena to Timothy F. Geithner

I.   DEFINITIONS

      1.      "Action" means this action captioned *United States* v. *McGraw-Hill Cos.*, No. 2:13-cv-00779-DOC (JCGx), pending in the United States District Court for the Central District of California.

      2.      "Calendar" means the calendar of former Secretary of the Treasury Timothy Geithner publicly released by the United States Department of the Treasury at http://www.treasury.gov/FOIA/Pages/calendars.aspx.  Excerpts from the Calendar are annexed hereto as follows: Exhibit 1 (8/5/2011 – 8/8/2011); Exhibit 2 (4/13/2011); Exhibit 3 (4/17/2011 – 4/19/2011); and Exhibit 4 (7/13/2011 – 7/15/2011).

      3.      "Change in Outlook" means the April 18, 2011 action by Standard & Poor's Ratings Services changing its long-term outlook on the sovereign credit rating for Plaintiff, the United States of America, from stable to negative.

      4.      The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

      5.      "CreditWatch Action" means the July 14, 2011 action by Standard & Poor's Ratings Services placing the long-term and short-term sovereign credit ratings for Plaintiff, the United States of America, on CreditWatch with negative implications.

      6.      The terms "document" and "documents" shall be construed in the broadest sense allowed by Rule 34 of the Federal Rules of Civil Procedure, and include, but are not limited to, any writings, drawings, graphs, charts, photographs, phonograph records, audio or video recordings, notes, diaries, calendars, books, papers, accounts, and any computer-generated, computer-stored, or electronically stored matter from which information can be obtained and trans-

lated, if necessary, into reasonably useable form.  This includes preliminary versions, drafts, and revisions.

7.      "DOJ" means the United States Department of Justice, including any employees, agents, advisors or other persons acting or purporting to act on its behalf.

8.      "Downgrade" means the August 5, 2011 action by Standard & Poor's Ratings Services changing its long-term sovereign credit rating on Plaintiff, the United States of America, from AAA to AA+.

9.      "FBI" means the Federal Bureau of Investigation, including any employees, agents, advisors or other persons acting or purporting to act on its behalf.

10.      The term "including" means including but not limited to.

11.      The term "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all documents and information that would be excluded if such word were not so construed.

12.      The term "relating to" means relating to, referring to, concerning, describing, pertaining to, evidencing, reflecting, regarding, constituting, involving, or touching upon in any way.  Each of these terms may be used interchangeably herein and will be treated as encompassing all these meanings.

13.      "S&P" means McGraw Hill Financial, Inc. (formerly known as The McGraw-Hill Companies, Inc.), Standard & Poor's Financial Services LLC, and Standard & Poor's Ratings Services.

14.      "SEC" means the United States Securities and Exchange Commission, including any employees, agents, advisors or other persons acting or purporting to act on its behalf.

15.     "Treasury" means the United States Department of the Treasury, including any employees, agents, advisors or other persons acting or purporting to act on its behalf.

16.     "United States" means any agency, bureau or other sub-division of the Executive Branch of the federal government or any independent federal agency.

17.     "You" or "Your" means Timothy Geithner or other persons acting or purporting to act on his behalf.

18.     Words in the singular include the plural, and words in the plural include the singular.  "Each" and "any" are both singular and plural.

19.     Words in the past tense include the present, and words in the present tense include the past.

II.   INSTRUCTIONS

1.     If a document is withheld on the ground of privilege or otherwise, please prepare a privilege log in compliance with Rule 45 of the Federal Rules of Civil Procedure.

2.     Notwithstanding the assertion of any objections to the document requests set forth below, You shall produce all documents responsive to all parts of each request to which objection is not made.

3.     If portions of documents are withheld on the basis of privilege or otherwise, the withheld portions must be stamped with the word "redacted," the remainder of the document must be produced, and the information requested in Instruction No. 1 above shall be provided with respect to the redacted or withheld portion of the document.

4.     If any document responsive to the document requests set forth below has been destroyed, lost, discarded or is otherwise not capable of being produced, please identify each such document and provide for each (a) the author(s) thereof; (b) the recipient(s) thereof; (c) the subject matter thereof; (d) the date of the document; (e) the document's length; (f) the

date on which the document was lost or destroyed; and (g) if the document was destroyed, the reason(s) for its destruction, the manner of its destruction, and the identity of the person(s) requesting, authorizing and performing the destruction.

        5.     In response to the document requests set forth below, You shall produce all documents in Your possession, custody or control and all documents in the possession, custody or control of any of Your agents, attorneys or representatives, regardless of the location of such documents.

        6.     This is a continuing request for production of documents.  If, after making Your initial productions, You obtain or become aware of any further documents responsive to this request, You are requested to produce such additional documents promptly.

III.   <u>DOCUMENTS TO BE PRODUCED</u>

        1.     Any documents relating to the call identified on the Calendar at Exhibit 1 as "Call to Terry McGraw, McGraw Publishing" on August 8, 2011, between 10:15 AM and 10:25 AM.

        2.     Any documents relating to any other communications between You and Mr. McGraw in the period 2011 to 2013.

        3.     Any documents relating to the call identified on the Calendar at Exhibit 1 as "Call to Terri Checki" on August 5, 2011, between 7:10 PM and 7:20 PM.

        4.     Any documents relating to any other communications between You and Mr. Checki in the period August 5, 2011 to August 8, 2011.

        5.     Any documents relating to communications between You and any other person concerning the communications between You and Mr. McGraw or You and Mr. Checki referenced in Requests 1 through 4.

4

6.      Any audio or video recordings, call logs, calendar entries, notes or memoranda, whether created in connection with Your official duties or otherwise, relating to the communications between You and Mr. McGraw or You and Mr. Checki referenced in Requests 1 through 4.

7.      Documents sufficient to identify any person (in addition to those named in the Calendar) who participated in, listened in on, recorded, and/or logged the communications between You and Mr. McGraw or You and Mr. Checki referenced in Requests 1 through 4.

8.      Documents sufficient to identify any person with whom You communicated about the communications between You and Mr. McGraw or You and Mr. Checki referenced in Requests 1 through 4.

9.      Any documents relating to the meeting between You and S&P identified on the Calendar at Exhibit 2 as "Meeting with S&P, Secretary's Large Conference Room" on April 13, 2011, between 4:10 PM and 4:45 PM.

10.      Any audio or video recordings, call logs, calendar entries, notes or memoranda, whether created in connection with Your official duties or otherwise, relating to the meeting between You and S&P referenced in Request 9.

11.      Documents sufficient to identify any person who participated in, listened in on, recorded, and/or logged the meeting between You and S&P referenced in Request 9.

12.      Any documents relating to any communications occurring between April 17, 2011 and April 19, 2011 between You and any of the following individuals (as identified in the Calendar at Exhibit 3) concerning the Change in Outlook:

    a.      Vice President Biden
    b.      Bill Daley
    c.      David Plouffe
    d.      Hank Paulson

5

e.    Gene Sperling
f.    Dan Tarullo

13.    Any documents relating to any communications occurring between July 13, 2011 and July 15, 2011 between You and any of the following individuals (as identified in the Calendar at Exhibit 4) concerning the CreditWatch Action:

a.    Vice President Biden
b.    Bill Daley
c.    Jack Lew
d.    Rob Nabors
e.    Bruce Reed
f.    Bob Rubin
g.    Michelle Smith
h.    Gene Sperling
i.    Dan Tarullo

14.    Any documents relating to any communications occurring between August 5, 2011 and August 8, 2011 between You and any of the following individuals (as identified in the Calendar at Exhibit 1) concerning the Downgrade:

a.    Jay Carney
b.    Bill Daley
c.    Jon Favreau
d.    Jason Furman
e.    Jeffrey Goldstein
f.    Jack Lew
g.    Michelle Smith
h.    Gene Sperling
i.    Larry Summers

15.    Any documents relating to any communications between You and Chairman Bernanke referring to S&P occurring between: (1) April 17, 2011 and April 19, 2011; (2) July 13, 2011 and July 15, 2011; or (3) August 5, 2011 and August 8, 2011.

16.    Any documents relating to any communications between You and President Obama relating to S&P or reactions to the Downgrade, occurring between August 5, 2011 and August 8, 2011, including but not limited to those identified in the Calendar at Exhibit 1 as

6

occurring: (1) on August 7, 2011, between 2:30 PM and 3:30 PM; (2) on August 8, 2011, between 9:30 AM and 10:10 AM; or (3) on August 8, 2011, between 4:00 PM and 4:15 PM.

17.      Any audio or video recordings, call logs, calendar entries, notes or memoranda, whether created in connection with Your official duties or otherwise, relating to the communications referenced in Requests 12 through 16.

18.      Documents sufficient to identify any person (in addition to those named in the Calendar) who participated in, listened in on, recorded, and/or logged the communications referenced in Requests 12 through 16.

19.      Any documents reflecting records of telephone calls involving You relating to the Downgrade or S&P between August 1, 2011 and August 31, 2011.

20.      Any documents relating to communications between You and Raymond W. McDaniel, Jr., Mark E. Almeida, Richard Cantor or Warren Buffett, from January 1, 2011 through the end of Your term as Secretary of the United States Department of the Treasury, concerning sovereign credit ratings of Plaintiff, the United States of America.

21.      Any documents relating to communications from April 1, 2011 to the present between You and Mr. Checki concerning (a) the Change in Outlook, (b) the CreditWatch Action, (c) the Downgrade, and/or (d) S&P.

22.      Any documents relating to communications between You and Mr. Checki from the date You left the Federal Reserve Bank of New York to the present in which You requested that Mr. Checki convey Your views or opinions to another person.

23.      Any documents relating to communications between You and any employee of the Federal Reserve Bank of New York concerning S&P between August 5, 2011 and August 8, 2011.

7

24. Any documents relating to communications between You and the SEC concerning S&P from August 4, 2011 to the present.

25. Any documents in Your possession relating to communications between the SEC and any other person concerning S&P from August 4, 2011 to the present.

26. Any documents relating to communications between You and the DOJ, including the FBI, concerning S&P from August 4, 2011 to the present.

27. Any documents in Your possession relating to communications between the DOJ, including the FBI, and any other person concerning S&P from August 4, 2011 to the present.

28. Any documents created, received or forwarded by You from August 4, 2011 to the present, concerning the possibility of civil or criminal actions or sanctions against S&P or other steps of any kind which could lead to adverse consequences for S&P.

29. Documents sufficient to identify any person with whom You communicated about the possibility of civil or criminal actions or sanctions against S&P or other steps of any kind which could lead to adverse consequences for S&P from August 4, 2011 to the present.

30. Any documents reviewed, considered by and/or supplied to You in connection with preparing, making or reviewing Your statement on April 19, 2011 that there was "no risk" of a downgrade for the sovereign credit rating of Plaintiff, the United States of America.

31. Any documents reviewed, considered by and/or supplied to You in connection with preparing, making or reviewing the following statements on August 7, 2011:

    a. "I think S&P has shown really terrible judgment and they've handled themselves very poorly. And they've shown a stunning lack of knowledge about basic U.S. fiscal budget math. And I think they drew exactly the wrong conclusion from this budget agreement."

b.      "And the judgment by S&P - - changed nothing.  It added nothing to what people know about this country.  Again, there's no risk the U.S. would never meet its obligations."

c.      "[J]ust look at the quality of judgments they've made in the past."

32.     Documents sufficient to identify each of the individuals, by name and employing entity, involved in the (i) preparing, (ii) reviewing or (iii) discussing with You any of the statements in Request 31 (a)-(c) (before or after the statement was made), including, but not limited to, individuals who provided documents or other information reviewed, referenced, relied upon or used in connection with the preparation or review of any such statements.

33.     Any documents relating to communications between You and President Obama relating to President Obama's statement in an August 8, 2011 address that "we will always be a triple-A country."

34.     Any documents, including manuscripts, notes, drafts, audio or video recordings, interviews or transcripts of interviews, relating to or constituting all or any portion of Your forthcoming book that relates to any discussions of rating action with respect to United States debt by any credit rating agency or any discussion in any context of S&P.

35.     Documents sufficient to identify any person at the United States, including Treasury, who reviewed, provided clearance, or approved all or any portion of Your forthcoming book that relates to any discussions of rating action with respect to United States debt by any credit rating agency or any discussion in any context of S&P.

36.     Any documents relating to communications between You and the United States, including Treasury, concerning the review, clearance, or approval of all or any portion of Your forthcoming book that relates to any discussions of rating action with respect to United States debt by any credit rating agency or any discussion in any context of S&P.

9

37.    Any documents reviewed, considered by and/or supplied to You in connection with preparing, making or reviewing each of the following statements:

a.    A statement at a meeting of the Federal Open Market Committee on January 30-31, 2007: "Let me just go through the principal questions briefly. Is the worst behind us in both housing and autos? Probably, but we can't be sure yet. If we get some negative shock to income—to demand growth—we're still vulnerable to a more adverse adjustment in housing prices with potentially substantially negative effects on growth, in part because of the greater leverage now on household balance sheets. How strong does the economy look outside autos and housing? Pretty strong, it seems. We see no troubling signs of weakness, despite the disappointment on some aspects of investment spending."

b.    A statement at a meeting of the Federal Open Market Committee on June 27-28, 2007: "With financial markets, we are at a delicate moment. The losses in subprime are still working their way through the system. Rating agencies are likely to downgrade a larger share of past issues, more than they have already. The marks that people show indicate that both hedge funds and dealers in a lot of this stuff may still have a way to go to catch up with the movement in market prices. This dynamic itself could induce a further reduction in willingness to finance new mortgages. You could see pockets of losses in the system, liquidity pressures in hedge funds and their counterparties, and further forced liquidations. It is possible that we will still have a bunch of that effect ahead of us, even if no big negative shock to demand occurs and induces a broader distress in consumer credit. We could also see it spread to commercial real estate. We could see a broader pullback from CDOs and CLOs as well, either from a general erosion of faith in the rating models—as Bill said, it is a possibility— or from just concerns about liquidity in those instruments. We could see a sharp, substantial widening of credit spreads provoked by an unanticipated default or two or just a general reassessment of risk at current prices."

c.    A statement at a meeting of the Federal Open Market Committee on October 30-31, 2007: "Housing prices are still obviously sliding down. We don't really claim to know much about where they're going to end up or where we are in that process, but it seems that they are falling and probably at an accelerating rate."

38.    Documents sufficient to identify each of the individuals, by name and employing entity, involved in the (i) preparing, (ii) reviewing or (iii) discussing with You any of the statements in Request 37 (a)-(c) (before or after the statement was made), including, but not limited to, individuals who provided documents or other information reviewed, referenced, relied upon or used in connection with the preparation or review of any such statements.

39.    Any documents relating to policies applicable to You through the end of Your term as Secretary of the United States Department of the Treasury as to the retention and/or destruction of documents, files, electronically stored documents, e-mail and other electronic files.

40.    Any document constituting instructions relating to the preservation of documents that You received in connection with this Action.