1   STUART DELERY
    Assistant Attorney General
2   MAAME EWUSI-MENSAH FRIMPONG
       (CA Bar No. 222986)
3   ARTHUR R. GOLDBERG
    MICHAEL S. BLUME
4   JAMES T. NELSON
    BRADLEY COHEN
5   JENNIE KNEEDLER
    SONDRA L. MILLS (CA Bar No. 090723)
6   THOMAS D. ZIMPLEMAN
    United States Department of Justice, Civil Division
7      P.O. Box 261, Ben Franklin Station
       Washington, D.C. 20044
8      Telephone: (202) 616-2376
       Facsimile: (202) 514-8742
9      Email: James.Nelson2@usdoj.gov

10  ANDRÉ BIROTTE JR.
    United States Attorney
11  GEORGE S. CARDONA (CA Bar No. 135439)
    LEON W. WEIDMAN (CA Bar No. 104078)
12  ANOIEL KHORSHID (CA Bar No. 223912)
    RICHARD E. ROBINSON (CA Bar No. 090840)
13  Assistant United States Attorneys
       Room 7516 Federal Building
14     300 N. Los Angeles St.
       Los Angeles, California 90012
15     Telephone: (213) 894-8323/6086
       Facsimile: (213) 894-7819
16     Email: George.S.Cardona@usdoj.gov / Anoiel.Khorshid@usdoj.gov

17  Attorneys for Plaintiff
    United States of America

18

19                  UNITED STATES DISTRICT COURT

20             FOR THE CENTRAL DISTRICT OF CALIFORNIA

21                      SOUTHERN DIVISION

| | |
|---|---|
| 22  UNITED STATES OF AMERICA, | No. 2:13-cv-00779-DOC (JCGx) |
| 23          Plaintiff, | [REDACTED] UNITED STATES' REPLY IN SUPPORT OF CROSS-MOTION FOR PROTECTIVE ORDER AND TO STRIKE DEFENSE |
| 24              v. | |
| 25  MCGRAW-HILL COMPANIES, INC., and STANDARD & POOR'S | Date: March 11, 2014 7:30 a.m. |
| 26  FINANCIAL SERVICES LLC, | Location: Courtroom 9D Judge: Hon. David O. Carter |
| 27          Defendants. | |
| 28 | |

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.    INTRODUCTION   . . . . . . . . . . . . . . . . . . . . . . . .  1

II.   THE COURT SHOULD GRANT THE REQUESTED PROTECTIVE ORDER
      BECAUSE S&P HAS NOT MADE THE REQUIRED PRELIMINARY SHOWING
      FOR DISCOVERY ON ITS ALLEGED FIRST AMENDMENT RETALIATION
      DEFENSE . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

III.  THE COURT SHOULD STRIKE S&P'S FIRST AMENDMENT RETALIATION
      DEFENSE . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IV.   CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . 14

**TABLE OF AUTHORITIES**

**CASES** **PAGE**

*Attorney General of the U.S. v. Irish People, Inc.*,
        684 F.2d 928 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . 3

*Cheney v. U.S. Dist. Court for Dist. of Columbia*,
        542 U.S. 367 (2004) . . . . . . . . . . . . . . . . . . . 10, 12

*Church of Scientology v. Commissioner of Internal Revenue*,
        823 F.2d 1310 (9th Cir. 1987) . . . . . . . . . . . . . . . . 3

*Dodson v. Strategic Restaurants Acquisition Co. II, LLC*,
        289 F.R.D. 595 (E.D. Cal. 2013) . . . . . . . . . . . . . . 14

*Enough for Everyone, Inc. v. Provo Craft & Novelty, Inc.*,
        2012 WL 177576 (C.D. Cal. Jan. 20, 2012) . . . . . . . . 13, 14

*Figueroa v. Marshalls of CA, LLC*,
        2012 WL 1424400 (C.D. Cal. Apr. 23, 2012) . . . . . . . . 13-14

*Figueroa v. Stater Bros. Markets, Inc.*,
        2013 WL 4758231 (C.D. Cal. Sep. 3, 2013) . . . . . . . . . . 14

*Hartman v. Moore*,
        547 U.S. 250 (2006) . . . . . . . . . . . . . . . . . . . . . 5

*Hayne v. Green Ford Sales, Inc.*,
        263 F.R.D. 647 (D. Kan. 2009) . . . . . . . . . . . . . . . 14

*Huskey v. City of San Jose*,
        204 F.3d 893 (9th Cir. 2000) . . . . . . . . . . . . . . . 5-6

*In re USA*,
        624 F.3d 1368 (11th Cir. 2010) . . . . . . . . . . . . . . . 9

*Karme v. Commissioner of Internal Revenue*,
        673 F.2d 1062 (9th Cir. 1982) . . . . . . . . . . . . . . . . 3

*Oregon Laborers-Employers Trust Funds v. Pacific Fence & Wire Co.*,
        726 F. Supp. 786 (D. Or. 1989) . . . . . . . . . . . . . . . 13

*Simmons v. Navajo Cnty.*,
        609 F.3d 1011 (9th Cir. 2010) . . . . . . . . . . . . . . . 14

*Thomas v. Cate*,
        715 F. Supp. 2d 1012 (E.D. Cal. 2010) . . . . . . . . . . . . 9

*United States v. ABC*,
        No. 72-821 (C.D. Cal. 1974) . . . . . . . . . . . . . . . . . 4

*United States v. Am. Elec. Power Serv. Corp.*,
        258 F. Supp. 2d 804 (S.D. Ohio 2003) . . . . . . . . . . . . 3

**TABLE OF AUTHORITIES (cont.)**

**CASES**                                                                                          **PAGE**

*United States v. Armstrong*,
     517 U.S. 456 (1996) . . . . . . . . . . . . . . . . . . . passim

*United States v. Bass*,
     536 U.S. 862 (2002) (per curiam) . . . . . . . . . . . . . . 3

*United States v. CBS*,
     No. 72-820 (C.D. Cal. 1974) . . . . . . . . . . . . . . . . . 4

*United States v. Jones*,
     159 F.3d 969 (6th Cir. 1998) . . . . . . . . . . . . . . . . 7

*United States v. Lewis*,
     517 F.3d 20 (1st Cir. 2008) . . . . . . . . . . . . . . . . . 8

*United States v. Morgan*,
     313 U.S. 409 (1941) . . . . . . . . . . . . . . . . . . . . . 9

*United States v. NBC*,
     No. 72-819 (C.D. Cal. 1974) . . . . . . . . . . . . . . . . . 4

*United States v. Nixon*,
     418 U.S. 683 (1974) . . . . . . . . . . . . . . . . . . . . 12

*United States v. One 1985 Mercedes*,
     917 F.2d 415 (9th Cir. 1990) . . . . . . . . . . . . . . . . 3

*United States v. Thorpe*,
     471 F.3d 652 (6th Cir. 2006) . . . . . . . . . . . . . . . . 7

*United States v. Wang*,
     404 F. Supp. 2d 1155 (N.D. Cal. 2005) . . . . . . . . . . . 13

*Vogel v. Huntington Oaks Delaware Partners, LLC*,
     291 F.R.D. 438 (C.D. Cal. 2013) . . . . . . . . . . . . . 13, 14

*Williams v. Jader Fuel Co., Inc.*,
     944 F.2d 1388 (7th Cir. 1991) . . . . . . . . . . . . . . . 12

**STATUTES, RULES, AND REGULATIONS**                                                    **PAGE**

Fed. R. Civ. P. 12(f) . . . . . . . . . . . . . . . . . . . . . 12

31 C.F.R. § 1.11 . . . . . . . . . . . . . . . . . . . . . . . . 9

Central District of California Local Rule 6-1 . . . . . . . . . . 13

Central District of California Local Rule 7-4 . . . . . . . . . . 13

Central District of California Local Rule 7-5 . . . . . . . . . . 13

**I.      INTRODUCTION**

Disregarding Supreme Court and Ninth Circuit precedent to the contrary, S&P continues to insist that simply alleging First Amendment retaliation as a defense entitles it to wide-ranging discovery throughout the Executive Branch, including the Executive Office of the President.  This is simply not the law.  Before being entitled to any discovery on its alleged retaliation defense, S&P must satisfy a rigorous standard by making a preliminary showing sufficient to overcome the presumption of regularity attached to DOJ's decision to pursue this civil enforcement action.

S&P fails to make the necessary showing because the facts on which it relies do not in any way support the required showing that S&P's 2011 downgrade of the United States' credit rating was the motivation for DOJ's filing of this case, which was based on an investigation that began in November 2009, almost two years prior to the downgrade, and did not occur until February 2013, almost two years later.  Other than DOJ's filing occurring after the downgrade (as a matter of law alone insufficient to support the required nexus), S&P relies on two sources to support its alleged retaliation defense: (1) an affidavit from S&P CEO Harold McGraw describing an August 2011 phone call with then Treasury Secretary Geithner; and (2) Secretary Geithner's calendar entries for the periods around S&P's April 2011 revised outlook, July 2011 CreditWatch, and August 2011 downgrade.  Neither provides any support for S&P's allegations of retaliation.  The August 7 call, as recounted by the McGraw affidavit, focused on a $2 trillion error in S&P's calculations in support of its downgrade of the United States' credit rating.  Even accepting the affidavit's description of this call, it provides no

1   support for S&P's allegations because nothing in the call suggests

2   any connection to DOJ's investigation or subsequent filing of this

3   action.  Nor do Secretary Geithner's calendar entries provide any

4   support for S&P's allegations.  The entries, which show a series of

5   scheduled calls or meetings with high ranking government and banking

6   officials, are hardly out of the ordinary for one in Secretary

7   Geithner's position, and provide no indication that he had any

8   involvement in DOJ's already long-pending investigation of S&P, much

9   less the filing of the Complaint that occurred almost two years

10  later.

11      S&P's failure to make the required showing means that under the

12  law it is not entitled to discovery on its asserted First Amendment

13  retaliation defense.  Accordingly, the court should grant the

14  government's cross-motion for a protective order precluding S&P from

15  seeking any further discovery regarding that defense.  Similarly, in

16  the absence of even the threshold showing required to justify

17  discovery, there is no basis for permitting S&P to further pursue

18  this defense, and the court should therefore grant the government's

19  cross-motion and strike the defense.

20  **II.   THE COURT SHOULD GRANT THE REQUESTED PROTECTIVE ORDER BECAUSE**
        **S&P HAS NOT MADE THE REQUIRED PRELIMINARY SHOWING FOR DISCOVERY**
21      **ON ITS ALLEGED FIRST AMENDMENT RETALIATION DEFENSE**

22      Under Supreme Court precedent, discovery into the government's

23  motives for bringing a prosecution is proper only when the defendant

24  first satisfies a "rigorous standard," overcoming "the presumption

25  of regularity [which] supports [] prosecutorial decisions" by making

26  a preliminary showing that the enforcement action "had a

27  discriminatory effect and that it was motivated by a discriminatory

28  purpose."  *United States v. Armstrong*, 517 U.S. 456, 464-65, 468

1  (1996) (internal quotations omitted); see also *United States v.*

2  *Bass*, 536 U.S. 862, 863-64 (2002) (per curiam) (where defendant

3  failed to make required threshold showing, discovery order was

4  "contrary to *Armstrong* and threatens the 'performance of a core

5  executive constitutional function'").  Under Ninth Circuit

6  precedent, the same rigorous standards apply to selective

7  prosecution defenses raised in civil enforcement actions brought by

8  the United States.  *See Church of Scientology v. Commissioner of*

9  *Internal Revenue*, 823 F.2d 1310, 1320-21 (9th Cir. 1987) (rejecting

10  claim of discriminatory selection as defense to IRS notice of

11  deficiency); *Karme v. Commissioner of Internal Revenue*, 673 F.2d

12  1062, 1063-64 (9th Cir. 1982) (district court properly struck claim

13  of selective prosecution as defense to IRS deficiency assessment);

14  *United States v. One 1985 Mercedes*, 917 F.2d 415, 421 (9th Cir.

15  1990) (in asset forfeiture proceeding, applying criminal standard to

16  permit discovery only after "prima facie showing of a likelihood of

17  vindictiveness by some evidence tending to show the essential

18  elements of the defense").[1]

19

20  [1] As discussed in footnote 3 of the government's cross-motion
   (Dkt. 106) (hereafter "Cross-Motion"), while some courts have
21  declined even to recognize selective prosecution as a defense to
   civil enforcement actions (as opposed to criminal prosecutions),
22  other courts accepting (or assuming) that selective prosecution may
   be asserted as a defense to civil enforcement actions have similarly
23  required a preliminary showing as to both prongs of the defense
   before permitting discovery to proceed. *See Attorney General of the*
24  *U.S. v. Irish People, Inc.*, 684 F.2d 928, 932 n.8, 947-48 (D.C. Cir.
25  1982) (defendant must make "colorable showing of each prong of the
   defense in order to be entitled to discovery"); *United States v. Am.*
26  *Elec. Power Serv. Corp.*, 258 F. Supp. 2d 804, 807-08 (S.D. Ohio
   2003) ("*Irish People, Inc.* is at least some authority that a
27  selective enforcement defense may be raised in civil enforcement
28  cases, but it is also clear from that case that a colorable showing
   is required to pursue the defense, even at the discovery stage").

3

1    S&P insists that this showing is not required but does not

2 address, much less distinguish, any of the relevant Ninth Circuit

3 cases.  Instead, S&P maintains its reliance on *United States v. NBC*,

4 No. 72-819 (C.D. Cal. 1974), *United States v. CBS*, No. 72-820 (C.D.

5 Cal. 1974), and *United States v. ABC*, No. 72-821 (C.D. Cal. 1974)

6 (collectively "*NBC*"), arguing that these cases demonstrate that S&P

7 is entitled to discovery simply by pleading First Amendment

8 retaliation as an affirmative defense.  As the government argues in

9 its cross-motion, *NBC* stands for no such thing.  Indeed, after

10 citing Supreme Court and Ninth Circuit precedents addressing the

11 standards for selective prosecution defenses in criminal cases,

12 Cardona Decl., Exh. 4 at 8-10 (Dkt. 106-5 at 21-23), the networks in

13 *NBC* provided an extensive factual showing (largely uncontroverted)

14 that ultimately supported the discovery ordered in those cases.  *Id.*

15 at 22-37 (Dkt. 106-5 at 35-50).[2]  Rather than acknowledge the Ninth

16 Circuit cases -- or address the dramatic differences between the

17 factual showing made by the networks in *NBC* and the facts offered by

18    [2] S&P argues that the passage in the networks' brief citing the
19 criminal selective prosecution standards "does not relate to
discovery and the defendants in that brief were specific that when a
20 motion to strike is denied, the availability of potentially relevant
discovery is clear."  S&P Reply at 7 n.3.  The networks did,
21 however, apply the selective prosecution standards in discussing the
factual showings that they believed sufficient to justify both the
22 pleading of their defense and subsequent discovery on that defense,
a factual showing far stronger than anything here.  They prefaced
23 that discussion with the following:

24    We show below that those facts are not controverted by the
       Government's affidavits.  We also show that they appear to
25    present a triable issue.  We do not, however, suggest that the
       defenses are conclusively established at this preliminary
26    stage, prior to any discovery.  <u>We suggest only that the facts
       provide ample warrant for the defenses and for the discovery we</u>
27    <u>have sought.</u>

28 Cardona Decl., Exh. 4 at 22 (Dkt. 106-5 at 35) (emphasis added).

1  S&P here -- S&P continues to insist that *no* preliminary showing is

2  required,  S&P Reply (Dkt. 114) (hereafter "S&P Reply") at 4 & n.2,

3  and that both the government's insistence to the contrary and its

4  challenge to the sufficiency of the limited facts on which S&P

5  relies are unwarranted and "turn[] the civil discovery process on

6  its head."  S&P Reply at 9-11.  These positions are demonstrably

7  inconsistent with the governing cases.

8      Under those precedents, it is S&P's burden to make a

9  preliminary showing, a burden it cannot shift by asserting that the

10  United States "does not dispute" the claims presented in the McGraw

11  affidavit.  S&P Reply at 5.  That assertion does not accurately

12  capture the government's position.  For purposes of its pleadings on

13  this cross-motion, the government has assumed for the sake of

14  argument the accuracy of the McGraw affidavit's account of two brief

15  August 2011 conversations, one with then Executive Vice President of

16  the New York Federal Reserve Terrence J. Checki, and the other with

17  then Treasury Secretary Timothy F. Geithner.  But even assuming the

18  affidavit's account of these calls is accurate, neither the

19  affidavit nor any of the other facts on which S&P relies provide

20  support for the required causal connection between S&P's downgrade

21  of the United States and DOJ's filing of this lawsuit.  Cross-Motion

22  at 10-13; *see Hartman v. Moore*, 547 U.S. 250, 260, 263-64 (2006)

23  (because unconstitutional motive must be "but for" cause of

24  retaliatory conduct, "[s]ome sort of allegation ... is needed both

25  to bridge the gap between the nonprosecuting government agent's

26  motive and the prosecutor's action, and to address the presumption

27  of prosecutorial regularity"); *Huskey v. City of San Jose*, 204 F.3d

28  893, 899 (9th Cir. 2000) (finding plaintiff failed to demonstrate

1  required "nexus" between statements and later alleged retaliatory

2  action, and cautioning courts not "to engage in the logical fallacy

3  of post hoc, ergo proper hoc, literally, 'after this, therefore

4  because of this'") (internal citation omitted).

5      The McGraw affidavit alleges that his conversation with

6  Secretary Geithner in August 2011 focused on a $2 trillion math

7  error in S&P's work relating to its downgrade announcement.  That

8  the Treasury Secretary would contact S&P's CEO about an error of

9  this magnitude underlying an action of significant potential

10 consequence to the United States' fisc should come as no surprise.

11 Distinctly lacking from the McGraw affidavit is anything linking the

12 call to either the then-pending DOJ investigation, or the subsequent

13 filing of this lawsuit, an action that did not occur until almost

14 two years later and was undertaken by DOJ, a different Executive

15 Branch agency.[3]  Nor do the entries in Secretary Geithner's calendar

16 repeatedly cited by S&P provide any such link.  Not surprisingly,

17 these calendar entries list scheduled meetings and calls between

18 Secretary Geithner and a number of high-ranking government and

19 banking officials around the April 2011 revised outlook, July 2011

20 CreditWatch, and August 2011 downgrade.  They also reflect that

21 Secretary Geithner was scheduled to meet with the President on an

22 almost daily basis around this time -- see the calendar entries for

23 April 12, April 14, April 18, and July 12, 2011.  But they provide

24 no indication that any of these meetings or calls related to DOJ's

25

26 [3] The McGraw affidavit does not refer to the pending DOJ
   investigation, and its vague statement about a "response" from the
   government is McGraw's alone -- it does not purport to be a direct

27 quotation from Secretary Geithner.  Moreover, Treasury's response to
   S&P's downgrade of the United States' credit rating, and the $2

28 trillion error it believed under lay this downgrade, is a matter of
   public record.  *See* Cross-Motion at 12 n.12.

1   then-pending investigation of S&P.  Nor do they provide support for

2   S&P's speculation that "the highest echelons of the Executive Branch

3   (and outside the DOJ) influenced, or even directed, the Government's

4   decision to file this case in retaliation for First Amendment-

5   protected criticism of which those officials disapproved."  S&P

6   Reply at 11.[4]

7      Wholly unsupported references to machinations at "the highest

8   echelons of the Executive Branch" do not suffice to overcome the

9   presumption of regularity that accompanies DOJ's enforcement

10  decisions, nor do they justify discovery regarding its decision to

11  file what has already been found to be a well-pleaded and sufficient

12  Complaint.[5]  S&P has not identified any evidence to support a causal

13

14      [4] S&P contends that it has presented "facts raising a powerful
    inference of retaliatory animus directed towards the exercise of its
    First Amendment rights," citing as support the Sixth Circuit's
15  decision in *United States v. Jones*, 159 F.3d 969, 978 (6th Cir.
    1998).  S&P Reply at 7 n.3.  As the Sixth Circuit itself has
16  recognized, with respect to the required threshold showing of
    discriminatory intent, *Jones* can provide little guidance "because
17  that case involved racial animus so blatant that the evidence of it,
    in the court's opinion, was sufficient to meet not only the 'some
18  evidence' discovery threshold but the higher prima facie merits
    standard as well."  *United States v. Thorpe*, 471 F.3d 652, 660 (6th
19  Cir. 2006) (noting that in *Jones*, "the officers who arrested Jones
    and his wife had, among other things, made and worn T-shirts
20  depicting the two African-American suspects at the time of their
    arrest and later, while Jones was in jail awaiting trial, sent Jones
21  a postcard of an African-American woman with bananas on her head").
    The facts presented in *Jones* thus related to the arresting officers
22  directly involved in the prosecution and overwhelmingly supported a
    finding of their racial animus.  To the contrary, the facts on which
23  S&P relies neither relate to an official directly involved in DOJ's
    filing of the Complaint nor provide a substantial basis for
24  inferring that official held any improper retaliatory animus.

25      [5] A claim of retaliatory prosecution "is not a defense on the
    merits . . . itself, but an independent assertion that the
26  prosecutor has brought the charge for reasons forbidden by the
    Constitution."  *Armstrong*, 517 U.S. at 463.  Precisely because it is
27  a collateral attack independent and separate from whether defendants
    are liable for violations of alleged criminal predicates, those
28  defendants bear the burden of justifying discovery with a factual
    showing (not just allegations) sufficient to overcome the

7

1  nexus between its downgrade of the United States' credit rating and

2  DOJ's filing of the Complaint.[6]  Instead, it proposes a wide-ranging

3

4  presumption of regularity attached to the Executive's filing
   decisions.  Contrary to S&P's suggestion, S&P Reply at 3, 9-10, in

5  assessing whether the required threshold showing for discovery has
   been made, it is entirely appropriate for the court to consider and

6  weigh both the plausibility of the inferences S&P seeks to have
   drawn from the facts it presents and any contradictory facts

7  identified by the government.  *See, e.g., United States v. Lewis*,
   517 F.3d 20, 27-28 (1st Cir. 2008) (noting that "equivalency of the

8  evidence against each prospective defendant" is relevant in
   assessing whether defendants are "similarly situated," and in

9  rejecting defendant's claim that all other defendants who committed
   "same basic crime" were "similarly situated," considering evidence

10 offered by government regarding defendant's "possible terrorist
   connections").

11     [6] As discussed in the government's cross-motion at 3 & 9-10, S&P
    also fails to show that DOJ has singled it out from any similarly

12 situated credit rating agency.  S&P accuses the government of
    playing "fast and loose with the facts" in this discussion,  arguing

13 that "discriminatory effect is apparent from the undisputed fact
    that S&P alone of the three major rating agencies was ultim

14 sued for statements all three made."  S&P Reply at 7 n.3.



1   fishing expedition through the Executive Branch in the hope that

2   this might turn up such evidence.[7]   *Armstrong* and the other cases

3   cited above and in the government's cross-motion preclude such

4   discovery.

5       S&P's efforts to seek discovery from the Executive Office of

6   the President ("EOP") in particular are not only precluded by S&P's

7   failure to make the showing required by *Armstrong* but also do not

8   come close to meeting the heightened standards for discovery from

9

10

11

12      [7] Among S&P's efforts to obtain discovery from the Executive
        Branch is its February 7, 2014, subpoena issued to Timothy Geithner
        pursuant to Rule 45, seeking documents in connection with this
13      litigation.  On February 20, 2014, the Department of the Treasury
        responded that Secretary Geithner is not authorized to produce
14      documents in connection with the subpoena until Treasury authorizes
        such a production pursuant to its Touhy regulation, which applies to
15      demands to both current and former employees.  *See* 31 C.F.R. §
        1.11(c).   (A copy of Treasury's letter to S&P is attached as Exhibit
16      1.)  Treasury's letter requested additional information to determine
        whether authorization is appropriate under the factors set forth in
17      the regulation, including the relevance of the requested material,
        whether it is available from other sources, and whether the requests
18      are reasonable in scope.  *See Id.* § 1.11(e).  As of the date this
        brief was filed, S&P had not provided any of the requested
19      information.  As a former Treasury Secretary, Mr. Geithner is also
        entitled to the protections derived from *United States v.* Morgan,
20      313 U.S. 409, 421-22 (1941), namely, that depositions of high-
        ranking public officials, current and former, are generally
21      prohibited absent extraordinary showings that the testimony sought
        is necessary and that all efforts have been made to obtain the
22      relevant information from alternative sources.  *See In re USA*, 624
        F.3d 1368, 1376 (11th Cir. 2010) ("*Morgan* suggests that a district
23      court should rarely, if ever, compel the attendance of a high-
        ranking official in a judicial proceeding"); *Thomas v. Cate*, 715 F.
24      Supp. 2d 1012, 1049-50 (E.D. Cal. 2010) ("general rule prohibiting
        depositions of high-ranking government officials applies to former
25      high-ranking officials, although in the case of former high-ranking
        government officials, one important rationale for the rule is
26      absent"). The justifications for this protection from depositions,
        namely, the burden on the former official, the intrusiveness on the
27      deliberative process, and the potential chilling effect on current
        and future senior officials, extend as well to the type of broad
28      document requests posed here.

9

1  EOP set out in *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542

2  U.S. 367 (2004).  S&P argues that *Cheney*'s heightened standards do

3  not apply to affirmative cases brought by the government, S&P Reply

4  at 12.  Nothing in the opinion, however, limits its holding to

5  defensive cases.  The opinion expresses serious concern about the

6  potential for discovery requests to interfere with the "public

7  interest" in the efficient administration of government, *Cheney*, 542

8  U.S. at 385, a concern that is equally as pressing when the United

9  States initiates enforcement actions.[8]

10  S&P's assertion that its requests to "White House employees are

11  reasonably tailored to what is known about specific statements made

12  by Secretary Geithner that directly relate to S&P's First Amendment

13  Retaliation Defense," S&P Reply at 11, is incorrect.  As an initial

14  matter, the two requests in this regard that are the subject of

15  S&P's motion to compel (requests 51 and 52 from S&P's first request

16  for production of documents) go well beyond this, seeking any

17  "documents constituting, referring or relating to any statement or

18  inquiry" concerning "the possibility of civil or criminal actions,

19  sanctions or other possible steps of any kind leading to adverse

20  consequences of any kind against S&P" by either Secretary Geithner

---

21  [8] Under S&P's approach, which disavows the applicability of
either *Armstrong* or *Cheney*, a defendant in an affirmative
22  enforcement action pursued by the United States could seek broad
discovery regarding the government's motives in pursuing the action
23  from EOP based simply on an allegation of a retaliatory motive.
Because S&P also asserts (S&P Reply at 3; see discussion in n. 9
24  below) that the *Iqbal/Twombly* pleading standard should not apply to
affirmative defenses, S&P's positions would require such discovery
25  even in the absence of any facts demonstrating the plausibility of
the allegation of retaliatory motive.  Taken as a whole, these
26  positions make no sense and, given the volume of affirmative civil
litigation initiated by the United States, would certainly pose the
27  risk of permitting frivolous discovery demands by defendants in such
case to "distract [the Executive Branch] from the energetic
28  performance of its constitutional duties."  *Cheney*, 542 U.S. at 382.

10

1   or NEC Director Gene Sperling.  With respect to S&P's subsequent

2   second request for documents from the United States, and its

3   subpoenas to Mr. Geithner and Mr. Checki, S&P has merely culled the

4   names of various White House officials listed in the Secretary's

5   public calendar entries, including members of the National Economic

6   Council, the White House Press Secretary, and a White House

7   speechwriter.  None of these requests is even remotely calculated to

8   "bridge the gap" between Secretary Geithner's alleged reaction to

9   the August 2011 downgrade and DOJ's three-year investigation of S&P.

10   Nor are the requests reasonably limited in scope; rather, they seek

11   all communications between those individuals and DOJ, the FBI, and

12   the SEC "related to S&P," between August 4, 2011 and February 28,

13   2013.  *See* Second Request for Production, Requests 30, 31.  S&P also

14   seeks "any documents created, received, or forwarded" by eight

15   different individuals including the White House Chief of Staff,

16   "relating to the possibility of civil or criminal actions, sanctions

17   or other possible steps *of any kind* leading to *adverse consequences*

18   *of any kind against S&P*."  *Id.*, Request 32 (emphasis added).

19   Further, S&P seeks discovery into the communications between

20   Secretary Geithner and the President himself over a three-day period

21   "relating to S&P or reactions to the downgrade."  *Id.*, Request 16.

22   This is precisely the sort of burdensome fishing expedition that

23   *Cheney* forecloses, and it is predicated on nothing more than the

24   scheduling of regular meetings between the President and the

25   Secretary of the Treasury – an absolutely unremarkable phenomenon.

26   Because "'a President's communications and activities encompass a

27   vastly wider range of sensitive material than would be true of any

28   ordinary individual,'" the courts must "'afford Presidential

confidentiality the greatest protection consistent with the fair administration of justice'" and "give recognition to the paramount necessity of protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties."   *Cheney,* 542 U.S. at 381, 382 (quoting *United States v. Nixon*, 418 U.S. 683, 715 (1974)) (internal quotation marks omitted).  Clearly, allowing discovery into the meetings between high-level White House advisors and a former cabinet secretary based on idle speculation is inconsistent with those standards.

Because S&P has failed to make the threshold showings required by *Armstrong* and *Cheney*, the court should grant the government's cross-motion for a protective order precluding S&P from further discovery on its asserted First Amendment retaliation claim.

**III. THE COURT SHOULD STRIKE S&P'S FIRST AMENDMENT RETALIATION DEFENSE**

S&P's claims regarding the timing of the United States' motion to strike S&P's First Amendment retaliation defense (its eleventh alleged affirmative defense), *see* S&P Reply at 3, do not provide a basis for denying the motion.  Rule 12(f) provides that a party may move to strike a pleading "within 21 days after being served with the pleading," Fed. R. Civ. P. 12(f)(2), but the same rule provides that the Court may strike the pleading "on its own" at any time. Fed. R. Civ. P. 12(f)(1).  *See also Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1399 (7th Cir. 1991) ("Courts have read Rule 12(f) to allow a district court to consider a motion to strike at any point in a case, reasoning that it is considering the issue of its own accord despite the fact that its attention was prompted by

12

1  an untimely filed motion."); *United States v. Wang*, 404 F. Supp. 2d

2  1155, 1157 (N.D. Cal. 2005) ("courts in other jurisdictions have

3  held that 'a party has the right to challenge the legal sufficiency

4  of a defense at any time' and therefore a court can consider the

5  merits of an untimely motion to strike") (quoting *Oregon Laborers–*

6  *Employers Trust Funds v. Pacific Fence & Wire Co.*, 726 F. Supp. 786,

7  788 (D. Or. 1989)).[9]  DOJ has asked the Court to strike the defense

8  at this time because S&P has now plainly failed to make the

9  preliminary showing required by *Armstrong.*  As a result, there is no

10  plausible basis for the affirmative defense, and no basis for

11  leaving it pending in this case.  *See, e.g., Vogel v. Huntington*

12  *Oaks Delaware Partners, LLC*, 291 F.R.D. 438, 440-41 (C.D. Cal. 2013)

13  (Wright, J.) (affirmative defense properly stricken where pleading

14  fails to set forth facts rendering it "plausible"; "[r]equiring a

15  defendant to bolster its affirmative defenses with some factual

16  support comports with *Iqbal*'s message that discovery should not be

17  used as a fishing expedition").[10]

18  _____

19  [9] S&P's complaints that the government has not complied with the
local rules are similarly without merit.  The government's combined
opposition and cross-motion (Dkt. 106) provided the date and time of

20  the motion hearing as required by Local Rule 7-4, was served on
opposing counsel, and clearly provides a "brief but complete

21  memorandum in support thereof and the points and authorities upon
which the moving party will rely" as well as "the evidence upon

22  which the moving party will rely in support of the motion" as
required by Local Rule 7-5.  To the extent the government did not

23  file a separate "notice of motion" with a hearing date no less than
28 days later, see Local Rule 6-1, it is because this is a cross-

24  motion that clearly relates to the issues raised by S&P's motion to
compel and should be heard at the same time.

25

[10] As this Court and others have recognized, the applicability

26  of *Iqbal* and *Twombly*'s heightened pleading standards to affirmative
defenses has not been resolved by either the Supreme Court or the

27  Ninth Circuit, with the result that there is a divide among the
district courts.  This court has come down, in a breach of contract

28  case, on the side of those district courts holding "that the
*Twombly/Iqbal* heightened pleading standard does not apply to

1  **IV.    CONCLUSION**

2      For all the reasons set forth above, the government's cross-

3  motion should be granted, and the court should issue an order

4  striking defendants' First Amendment retaliation defense and

5  precluding S&P from seeking further discovery related to that

6  defense.

7

8

9

10  pleading affirmative defenses.  Instead, an affirmative defense need only give a plaintiff 'fair notice of the defense.'"  *Enough for Everyone, Inc. v. Provo Craft & Novelty, Inc.*, 2012 WL 177576 at *2

11  (C.D. Cal. Jan. 20, 2012) (quoting *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1023 (9th Cir. 2010)).  A number of courts in this district

12  have reached the same conclusion.  See *Figueroa v. Marshalls of CA, LLC*, 2012 WL 1424400 at *1 (C.D. Cal. Apr. 23, 2012) (Klausner, J.)

13  (citing Central District cases).  Other courts in this district have held to the contrary.  *See Vogel* (Wright, J.) (cited in text above)

14  ("majority of district courts in this Circuit, including the entire Northern District and this Court, has consistently applied Twombly

15  and Iqbal to both claims and affirmative defenses"); *Figueroa v. Stater Bros. Markets, Inc.*, 2013 WL 4758231 at **2-3 (C.D. Cal. Sep.

16  3, 2013) (Olguin, J.) (applying standard in part because it "serves a valid purpose in requiring at least some valid factual basis for

17  pleading an affirmative defense and not add it to the case simply upon some conjecture that it may somehow apply." (quoting *Hayne v.*

18  *Green Ford Sales, Inc.*, 263 F.R.D. 647, 650 (D. Kan. 2009)). Whatever the debate over application of the Twombly/*Iqbal* standard

19  to ordinary affirmative defenses, consistency with *Armstrong* requires its application to affirmative defenses of selective or

20  vindictive prosecution.  Because *Armstrong* requires a preliminary showing before discovery on such defenses can be permitted, applying

21  the *Twombly/Iqbal* standards to strike such defenses absent a similar factual showing furthers one of the primary purposes of a motion to

22  strike -- avoiding "the expenditure of time and money that must arise from litigating spurious issues by dispensing with those

23  issues prior to trial."  *Enough for Everyone, Inc.*, 2012 WL at *1; *see also Dodson v. Strategic Restaurants Acquisition Co. II, LLC*,

24  289 F.R.D. 595, 599, 602 (E.D. Cal. 2013) ("*Simmons* does not address the application of *Twombly* and *Iqbal* to affirmative defenses"; "this

25  policy consideration -- refraining from unnecessarily imposing the costs and burdens of discovery -- weighs equally in favor of

26  requiring defendants to plead only plausible affirmative defenses"). In other words, because S&P has failed to make the threshold showing

27  required under *Armstrong* to justify any discovery on its First Amendment retaliation defense, there is no reason to leave that

28  defense pending in the case.

1    Dated: March 3, 2014

2

3    STUART F. DELERY                         ANDRÉ BIROTTE JR.
     Acting Assistant Attorney General       United States Attorney
     United States Department of Justice
4    Civil Division
     MAAME EWUSI-MENSAH FRIMPONG
5    Deputy Assistant Attorney General       /S//George S. Cardona/
     MICHAEL S. BLUME                         GEORGE S. CARDONA
6    Director, Consumer Protection Branch     LEON W. WEIDMAN
     ARTHUR R. GOLDBERG                       ANOIEL KHORSHID
7    Assistant Director, Fed.Prog.Branch      RICHARD E. ROBINSON
     JAMES T. NELSON                          Assistant U.S. Attorneys
8    BRADLEY COHEN
     JENNIE KNEEDLER
9    SONDRA L. MILLS
     THOMAS D. ZIMPLEMAN
10   Trial Attorneys, Civil Division

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15