```
 1  KEKER & VAN NEST LLP
    JOHN KEKER (SBN 49092)
 2  jkeker@kvn.com
    ELLIOT R. PETERS (SBN 158708)
 3  epeters@kvn.com
    633 Battery Street
 4  San Francisco, CA 94111-1809
    Telephone:  415 391 5400
 5  Facsimile:   415 397 7188

 6  CAHILL GORDON & REINDEL LLP
    FLOYD ABRAMS (pro hac vice)
 7  fabrams@cahill.com
    S. PENNY WINDLE (pro hac vice)
 8  pwindle@cahill.com
    80 Pine Street
 9  New York, New York 10005-1702
    Telephone: 212 701 3000
10  Facsimile: 212 269 5420

11  KELLER RACKAUCKAS LLP
    JENNIFER L. KELLER (SBN 84412)
12  keller@krlawllp.com
    18300 Von Karman Avenue, Suite 930
13  Irvine, CA 92612
    Telephone: 949 476 8700
14  Facsimile: 949 476 0900

15  Attorneys for Defendants THE MCGRAW-HILL
    COMPANIES, INC. and STANDARD & POOR'S
16  FINANCIAL SERVICES LLC
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MCGRAW-HILL COMPANIES, INC. and STANDARD & POOR'S FINANCIAL SERVICES LLC,<br><br>Defendants. | Case No. CV13-779 DOC (JCGx)<br><br>**MEMORANDUM IN OPPOSITION TO MOTION TO QUASH OF TIMOTHY F. GEITHNER AND IN RESPONSE TO MEMORANDUM OF TERRENCE J. CHECKI AND THE FEDERAL RESERVE BANK OF NEW YORK**<br><br>Date:   March 11, 2014 7:30 a.m.<br>Dept.:   Courtroom 9D<br>Judge:   Honorable David O. Carter<br><br>Complaint filed February 4, 2013 |

# TABLE OF CONTENTS

**Page**

I. Introduction .................................................................................................. 1

II. Argument ..................................................................................................... 3

    A. *U.S.* v. *Morgan* permits discovery where government officials possess direct, personal information responsive to a subpoena and such information is not available from other sources. ....................................................................................... 4

    B. Former Secretary Geithner's retirement from government service and Mr. Checki's impending retirement weaken any basis for resisting discovery. .................................................. 8

    C. *U.S.* v. *Morgan* has never been applied to prevent compliance with subpoenas for documentary information. ................. 10

III. Conclusion ................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bagley* v. *Blagojevich*,
    486 F. Supp. 2d 786 (C.D. Ill. 2007)..................................................................4-5

*Buono* v. *City of Newark*,
    249 F.R.D. 469 (D.N.J. 2008) ..............................................................................6-7

*Coleman* v. *Schwarzenegger*,
    2008 WL 4300437 (E.D. Cal. & N.D. Cal. Sept. 15, 2008) ...........................4, 6

*Energy Capital Corp.* v. *United States*,
    60 Fed. Cl. 315 (Fed. Cl. 2004)..............................................................................6

*Exxon Shipping Co.* v. *United States Department of Interior*,
    34 F.3d 774 (9th Cir. 1994)...................................................................................2n

*Hartman* v. *Moore*,
    547 U.S. 250 (2006) ..............................................................................................8

*Huskey* v. *City of San Jose*,
    204 F.3d 893 (9th Cir. 2000).................................................................................8

*Lederman* v. *New York City Department of Parks & Recreation*,
    731 F.3d 199 (2d Cir. 2013)...............................................................................3-4

*Payne* v. *District of Columbia*,
    279 F.R.D. 1 (D.D.C. 2011) ..................................................................................6

*Thomas* v. *Cate*,
    715 F. Supp. 2d 1012 (E.D. Cal. 2010)................................................... 5-6, 10-11

*United States* v. *Morgan*,
    313 U.S. 409 (1941) ......................................................................................*passim*

*United States* v. *Nixon*,
    418 U.S. 683 (1974) ...............................................................................................4

*United States* v. *Sensient Colors, Inc.*,
  649 F. Supp. 2d 309 (D.N.J. 2009) ................................................................. 10

*United States* v. *Wal-Mart Stores*,
  2002 WL 562301 (D. Md. Mar. 29, 2002) ......................................................... 6

*Victory* v. *Pataki*,
  2008 WL 4500202 (W.D.N.Y. Sept. 30, 2008) ............................................ 9, 9n

**Constitutional Provisions**

U.S. Const. Amend. I ............................................................................................ 1, 5, 7

**Rules**

Fed. R. Civ. P. 45 ........................................................................................................ 1

**Other Authorities**

Press Release, Federal Reserve Bank of New York, *Terrence Checki to Retire as Head of Emerging Markets and International Affairs Group* (Oct. 23, 2013), http://www.newyorkfed.org/newsevents/news/aboutthefed/2013/oa131023 ............................................................. 10, 10n

## I. INTRODUCTION

The submissions of non-parties Timothy F. Geithner, Terrence J. Checki and the Federal Reserve Bank of New York ("FRBNY") (collectively the "Non-Parties") are part of a continuing, coordinated effort to deprive S&P of highly relevant discovery relating to its affirmative defense that this action was filed in retaliation for its First Amendment protected speech about the creditworthiness of the United States. The Non-Parties' memoranda either repeat or join previously filed submissions of the United States, adding only that Messrs. Geithner and Checki should be relieved of their obligation to comply with S&P's Rule 45 demands unless and until S&P first exhausts other sources of the information it seeks. *See* Memorandum of Timothy F. Geithner ("Geithner Mem.") at 4 (arguing that S&P must show that "no discovery from any other source could eliminate the need" for the documents); Memorandum of Terrence J. Checki ("Checki Mem.") at 5-6 (arguing that S&P must first "demonstrate that the information sought is not available from other sources"). As this Court is well aware, S&P has already attempted to do precisely what the Non-Parties urge upon it.

Indeed, while there can be no substitute for information received directly from Messrs. Geithner and Checki related to the retaliation defense (including their discussions with Mr. McGraw), S&P is doing all it can to obtain relevant documents from every other likely source within the federal government. Notwithstanding the United States' failure to timely move to strike S&P's

affirmative defense, these requests have been met with wholesale refusals by the Government, requiring S&P's pending motion to compel. In support of its refusal to comply with S&P's requests, the Government has advanced circular arguments similar to those of the Non-Parties, contending that it, too, should be relieved of its discovery obligations until S&P gathers more facts to establish the merits of its affirmative defense. The Department of the Treasury has gone still farther to frustrate meaningful discovery, asserting that documents regarding the retaliation defense may not be produced absent the satisfaction of various regulatory prerequisites and the express authorization of the Department's General Counsel.[1] *See* February 20, 2014, letter from Brian J. Sonfield to Floyd Abrams, annexed to United States Reply in Support of its Cross Motion for a Protective Order ("DOJ Reply"), as Exhibit 1.

    Neither the United States (including Treasury), nor any of these Non-Parties has disputed the substance of the sworn Affidavit submitted by Mr. McGraw, and none has submitted any evidence of its own regarding the facts he asserts. Nor have they offered any valid legal basis for their refusals to produce documents. Instead, the central theme running through all of these "not us" arguments is that

---

[1] Treasury's position is based on an incorrect application of so-called *Touhy* regulations governing the release of information by federal agencies. *See Exxon Shipping Co.* v. *United States Department of Interior*, 34 F.3d 774 (9th Cir. 1994) (holding that *Touhy* regulations do not "authorize federal agency heads to withhold evidence sought under a valid federal court subpoena").

2
MEM. IN OPP. TO MOT. TO QUASH OF GEITHNER & IN RESP. TO MEM. OF CHECKI & FRBNY
CASE NO. CV13-779 DOC (JCGX)

S&P's discovery requests may be ignored for the blunt, simple reason that the retaliation defense is—in the opinion of the responders—"unsustainable" and "speculative." *See, e.g.*, Geithner Mem. at 2-3. The argument falls flat.

S&P is not required, as the Government and Non-Parties suggest, to make any preliminary showing before it can obtain discovery in connection with a valid affirmative defense. *See* S&P Mem. at 22. In any event, S&P has in fact submitted substantial evidence and a detailed chronology of relevant (and extraordinary) communications involving Messrs. Geithner, Checki and McGraw, which support its retaliation claim. *See, e.g.*, S&P Mem., Declaration of Floyd Abrams dated January 20, 2014, Exs. O & P. While the Department of Justice, Treasury and Mr. Geithner, Mr. Checki and the FRBNY may choose not to credit that this action was brought in retaliation for protected speech, S&P has asserted a viable affirmative defense and there is no valid basis for refusing to comply with discovery demands concerning it.

## II. ARGUMENT

The submissions of Mr. Geithner, Mr. Checki and the FRBNY are grounded in *United States* v. *Morgan*, 313 U.S. 409 (1941), which stands for the general proposition that, in some cases, government officials should not be required to provide oral testimony in civil litigation absent "exceptional circumstances." *See Lederman* v. *New York City Department of Parks & Recreation*, 731 F.3d 199, 203

3

(2d Cir. 2013). *Morgan* and its progeny do not bar discovery of such officials in all matters, but instead set forth well-settled exceptions that are discussed below. These cases are thus not inconsistent with the principles found in opinions such as *United States* v. *Nixon*, 418 U.S. 683 (1974), in which the Supreme Court recognized that "[t]he need to develop all relevant facts in the adversary system is both fundamental and comprehensive" and that "exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *Id.* at 709-10.

> **A.** ***U.S.* v. *Morgan* permits discovery where government officials possess direct, personal information responsive to a subpoena and such information is not available from other sources.**

*Morgan* provides that discovery of current and (less often) former government officials is appropriate where the officials are asked to provide testimony about matters that are part of their unique personal knowledge. Cases cited by Mr. Geithner, Mr. Checki and the FRBNY recognize this, making clear that government officials (including very high-ranking ones) may be required to give testimony if they "have direct personal factual information pertaining to material issues in an action, and the information to be gained is not available through any other sources." *Coleman* v. *Schwarzenegger*, 2008 WL 4300437, at *2 (E.D. Cal. & N.D. Cal. Sept. 15, 2008) (internal citations and quotation marks omitted); *see also Bagley* v. *Blagojevich*, 486 F. Supp. 2d. 786, 789-90 (C.D. Ill. 2007) (cited in *Coleman*) (ordering deposition of the Governor of Illinois where he

was "at least personally involved" in a First Amendment retaliation claim and "ha[d] not produced any evidence, such as an affidavit, to establish that [he] lack[ed] personal knowledge that relates to [p]laintiffs' claims").

This exception is plainly satisfied here, where there is no dispute that Messrs. Geithner and Checki have direct, personal knowledge of facts—including facts related to then-Secretary Geithner's calls to Mr. Checki and Mr. McGraw—that are the subject of S&P's subpoenas and will be critical to its retaliation defense. Some of this information will be available only from Messrs. Geithner and Checki, including firsthand accounts of communications leading up to, during and following their calls to Mr. McGraw. Mr. Checki all but admits the point in his memorandum, stating that it "may be true . . . [he] alone can describe what occurred during his calls with Secretary Geithner and Mr. McGraw." *See* Checki Mem. at 4. While it is of course true that some documents called for by the subpoenas to Messrs. Geithner and Checki may be in the hands of the United States, that is a response, not the basis of an objection. That the United States has refused to produce any of them is indefensible.

This case thus presents the very sort of "exceptional circumstances" in which courts have authorized discovery from current and former government officials. *See, e.g.*, *Thomas* v. *Cate*, 715 F. Supp. 2d 1012, 1040 (E.D. Cal. 2010) (ordering Governor of California to respond to interrogatories where "no other

source of the information sought exists [and] the Governor's conduct is the crux of Petitioner's claim"); *see also Energy Capital Corp.* v. *United States*, 60 Fed. Cl. 315, 318 (Fed. Cl. 2004) (ordering depositions of former HUD Secretary and General Counsel because they had "first-hand personal knowledge" regarding threatening statements allegedly made during a phone call, which were relevant to plaintiff's claim for attorney's fees); *Payne* v. *District of Columbia*, 279 F.R.D. 1, 8 (D.D.C. 2011) (holding that an official had personal knowledge unobtainable from another source because "it is only [he] who can testify about his recollection of the conversations, and offer a non-hearsay account of what he said").

The few cases cited in the submissions of Mr. Geithner, Mr. Checki and the FRBNY are readily distinguishable. *See Coleman*, 2008 WL 4300437, at *4 (finding no extraordinary circumstances for the deposition of the Governor of California where there was no allegation that he had "any personal knowledge that lower-ranking officials or policy experts do not have"); *Thomas*, 715 F. Supp. 2d at 1049 (finding no extraordinary circumstances for deposition where it was "highly likely that any information the Governor can provide is also available from other sources"); *United States* v. *Wal-Mart Stores*, 2002 WL 562301, at *5 (D. Md. Mar. 29, 2002) (rejecting request for deposition where defendant "failed to make a *prima facie* showing of . . . personal involvement"). *See generally Buono* v. *City of Newark*, 249 F.R.D. 469, 470 n.2 (D.N.J. 2008) (declining to authorize

deposition of the Mayor of Newark, N.J., where there was "no allegation that the deponent played any role in the events about which plaintiff complains" and he was not "in a position to [be] privy to discussions with" relevant actors).

In addition to their own submissions, the Non-Parties have also incorporated the filings of the Government on these issues.[2] The Government's submissions have failed to include any support for requiring S&P to make a threshold showing before seeking discovery related to its affirmative defense. Most of the authorities cited by the Government (*see* DOJ Reply at 2-3) concern selective prosecution defenses made in criminal cases that have no bearing on the First Amendment

---

[2] The March 3, 2014 reply brief of the United States in further support of its Motion for a Protective Order significantly mischaracterizes both the facts and law applicable to the pending motions. It is simply not the case, as the Government asserts, that S&P's Motion to Compel relies solely on evidence of the telephone call between former Treasury Secretary Geithner and then-McGraw Hill Chairman and CEO, Harold McGraw III, and information contained in the former Secretary's calendar. Significant as those documents are, S&P has put forward a great deal more, including the undisputed propositions that (i) S&P's ratings on the securities the United States has put at issue were generally identical to those of the other two major rating agencies and (ii) comparable language relating to "independence" and "objectivity" was communicated by those two agencies, but only S&P downgraded the debt of the United States and only S&P has been sued by the United States. *See* S&P Memorandum in Support of Motion to Compel ("S&P Mem.") at 16-18. S&P's brief also cited examples of a number of prominent third party observers who, even before the disclosure of the calls to Mr. McGraw, voiced concern about the likelihood of retaliation. *Id*. at 20. Taken together—along with the extraordinary series of phones calls described in the McGraw Affidavit and the former Secretary's calendar entry describing a meeting with the President immediately prior to his call to Mr. McGraw—this presents a more than credible basis on which to permit discovery, especially in light of the broad scope of the Federal Rules.

retaliation defense asserted here.  *See* S&P Mem. at 23-27.  Moreover, while the Government's recent submission argues that there must be a substantial "causal connection" demonstrated before discovery is permitted in support of a retaliation defense, the cases it cites actually say nothing of the sort.  For example, the Supreme Court in *Hartman* v. *Moore*, 547 U.S. 250, 263 (2006) (DOJ Reply at 5), held that "*at the trial stage*, some evidence must link the allegedly retaliatory official to a prosecutor whose action has injured the plaintiff." (emphasis added).  Similarly, in *Huskey* v. *City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (DOJ Reply at 5), the Ninth Circuit held, in connection with a summary judgment decision, that the evidence previously obtained in discovery failed to demonstrate any "nexus" between the plaintiffs' statements and the alleged retaliatory action.  The fact that these decisions required a "nexus" before adjudicating the merits of a case has no bearing on whether a party such as S&P is entitled to pre-trial discovery in support of its retaliation defense.  To the contrary, these cases are more relevant at this stage of the proceeding for the fact that the defendants there were permitted to obtain discovery regarding their retaliation claims and, only later, were they required to prove their theory.

  **B.  Former Secretary Geithner's retirement from government service and Mr. Checki's impending retirement weaken any basis for resisting discovery.**

  Numerous courts have held that where, as here, a government official is no longer in office, the policy reasons underlying *Morgan* are largely removed and the

8

bar for compelling discovery is lowered.  One such case is *Victory* v. *Pataki*, 2008 WL 4500202, at *2 (W.D.N.Y. Sept. 30, 2008), in which the court ordered a deposition of the former Governor of New York.  The court compelled the Governor's deposition so that it could "lay to rest lingering questions regarding his possible involvement in [a] highly unusual" decision to rescind the plaintiff's parole.  *Id.*  Among other things, the court found that the plaintiff "should be able to inquire whether former Governor Pataki had any personal involvement in and/or knowledge of plaintiff's parole proceedings, including whether he engaged in any conversations with his staff or other individuals regarding plaintiff."  *Id.*  In reaching its decision, the court held "[t]here can be no question . . . that a deposition of a former official can no longer pose the risk of interfering with governmental duties." *Id.*[3]

Because Secretary Geithner has left office, there is little risk that ongoing governmental activities will be disturbed by subjecting him to the targeted discovery contemplated by S&P's subpoena.  Mr. Checki has also announced that he will be retiring from the FRBNY during the first quarter of 2014, so he too can

---

[3]  Here, unlike in *Victory*, there is no dispute that the subpoenaed individuals had personal involvement in, and knowledge of, the issues that are the subject of the requested discovery, *e.g.*, their highly unusual, threatening communications with Mr. McGraw.  *See Victory*, 2008 WL 4500202, at *1-2.  Thus, there is an even stronger basis for finding "exceptional circumstances" in this case than there was in *Victory*, where it was not clear that the Governor had any role in the events that were the subject of the Plaintiff's discovery requests.  *Id.*

comply with little disruption to any official role.  *See* October 23, 2013 Press Release of FRBNY;[4] *see also United States* v. *Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 326 n.14 (D.N.J. 2009) ("Concerns regarding fulfillment of duties without interruption are no longer present once the individual leaves office" and "one less impediment exists for a party who seeks to depose a former high-ranking government official.").

### C. *U.S.* v. *Morgan* has never been applied to prevent compliance with subpoenas for documentary information.

The submissions of Mr. Geithner, Mr. Checki and the FRBNY each fail to deal with the fact that *Morgan* and its progeny have historically been applied only to deny depositions.  While S&P may well seek testimony from Messrs. Geithner and Checki in the near future (and is confident that it can meet any legal test applied to such efforts), at this time, the Court is only asked to enforce demands for narrow categories of documentary evidence.  The *Morgan* line of cases simply provides no relief from such discovery obligations.  Indeed, Mr. Geithner, Mr. Checki and the FRBNY do not cite a single case in which *Morgan* was held to relieve a government official from the obligation of responding to a subpoena seeking the production of documents.  In fact, the only non-deposition case cited by Mr. Geithner, Mr. Checki and the FRBNY is *Thomas* v. *Cate*, in which the

---

[4] Press Release, Federal Reserve Bank of New York, *Terrence Checki to Retire as Head of Emerging Markets and International Affairs Group* (Oct. 23, 2013), http://www.newyorkfed.org/newsevents/news/aboutthefed/2013/oa131023.

court *compelled* the Governor of California to produce documents and answer interrogatories following its determination that "no other source of the information sought exists [and] the Governor's conduct is the crux of Petitioner's claim." 715 F. Supp. 2d at 1040.

### III. CONCLUSION

For the reasons set forth herein and in S&P's memoranda in support of its Motion to Compel the United States, the Court should deny former Secretary Geithner's Motion to Quash and the Cross-Motion for a Protective Order filed by the United States.

Dated:  March 6, 2014                    CAHILL GORDON & REINDEL LLP


                                         By:  /s/ Floyd Abrams
                                              Floyd Abrams