KEKER & VAN NEST LLP
JOHN KEKER (SBN 49092)
jkeker@kvn.com
ELLIOT R. PETERS (SBN 158708)
epeters@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:   415 397 7188

CAHILL GORDON & REINDEL LLP
FLOYD ABRAMS (*pro hac vice*)
fabrams@cahill.com
S. PENNY WINDLE (*pro hac vice*)
pwindle@cahill.com
80 Pine Street
New York, New York 10005-1702
Telephone: 212 701 3000
Facsimile: 212 269 5420

KELLER RACKAUCKAS LLP
JENNIFER L. KELLER (SBN 84412)
keller@krlawllp.com
18300 Von Karman Avenue, Suite 930
Irvine, CA 92612
Telephone: 949 476 8700
Facsimile: 949 476 0900

Attorneys for Defendants THE MCGRAW-HILL
COMPANIES, INC. and STANDARD & POOR'S
FINANCIAL SERVICES LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MCGRAW-HILL COMPANIES, INC. and STANDARD & POOR'S FINANCIAL SERVICES LLC,<br><br>Defendants. | Case No. CV13-779 DOC (JCGx)<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL DISCOVERY FROM THIRD PARTY NATIONAL CREDIT UNION ADMINISTRATION**<br><br>Date:        April 28, 2014 8:30 a.m.<br>Dept.:       Courtroom 9D<br>Judge:      Honorable David O. Carter<br><br>Complaint filed February 4, 2013 |

# **TABLE OF CONTENTS**

**Page**

Table of Authorities ............................................................................................ ii

I.      Preliminary Statement ................................................................................ 1

II.     Factual Background .................................................................................... 4

        A.      NCUA's Regulatory Responsibilities ............................................. 4

        B.      NCUA's Relevance to this Litigation ............................................. 4

        C.      The NCUA Subpoena ..................................................................... 6

III.    Argument .................................................................................................... 9

        A.      NCUA's *Touhy* Regulations Do Not Exempt It from Complying with the Subpoena. ........................................................ 9

        B.      S&P's Subpoena Is Reasonably Calculated to Lead to the Discovery of Admissible Evidence And Not Overbroad. ................. 12

                1.      S&P Seeks Information that Is Both Unique to NCUA and Central to this Litigation. .................................... 13

                2.      NCUA's Privilege Objections Lack Merit and Have Not Been Properly Asserted. .................................... 15

IV.     Conclusion ................................................................................................ 18

i

1

2

# <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

## Cases

5

6
*Aguilar* v. *County of Fresno*,
  2009 WL 3617984 (E.D. Cal. Oct. 29, 2009) .................................................... 14

7

8
*Berwick* v. *Hartford Fire Insurance Co.*,
  2012 WL 2856117 (D. Ariz. July 11, 2012) ...........................................10, 12-13

9

10
*Brown* v. *Brown*,
  2014 WL 172407 (N.D. Cal. Jan. 15, 2014) ..................................................... 13

11

12
*Compaq Computer Corp.* v. *Packard Bell Electronics, Inc.*,
  163 F.R.D. 329 (N.D. Cal. 1995) ..................................................................... 13

13

14
*In re Countrywide Financial Corp. Securities Litigation*,
  2009 WL 5125089 (C.D. Cal. Dec. 28, 2009) .............................................17-18

15
*Degulis* v. *LXR Biotechnology, Inc.*,
  176 F.R.D. 123 (S.D.N.Y. 1997)....................................................................... 14

16

17
*Department of Economic Development* v. *Arthur Andersen*,
  139 F.R.D. 295 (S.D.N.Y. 1991) ...................................................................... 17

18

19
*EPA* v. *General Electric Co.*,
  197 F.3d 592 (2d Cir. 1999) ..........................................................................11n

20

21
*Exxon Shipping Co.* v. *United States Department of Interior*,
  34 F.3d 774 (9th Cir. 1994)........................................................................*passim*

22

23
*FDIC* v. *Hatziyannis*,
  180 F.R.D. 292 (D. Md. 1998) ......................................................................... 17

24

25
*FDIC* v. *St. Paul Fire & Marine Insurance Co.*,
  53 F.R.D. 260 (W.D. Okla. 1971) .................................................................... 17

26

27
*Friedman* v. *Bache Halsey Stuart Shields, Inc.*,
  738 F.2d 1336 (D.C. Cir. 1984) ....................................................................... 16

28

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL DISCOVERY FROM THIRD
PARTY NATIONAL CREDIT UNION ADMINISTRATION
CASE NO.  CV13-779 DOC (JCGX)

*FTC* v. *Warner Communications Inc.*,
  742 F.2d 1156 (9th Cir. 1984) .................................................................. 16

*Gardner* v. *Michigan State University*,
  2013 WL 5320282 (W.D. Mich. Sept. 20, 2013) ........................................ 11-12

*Green* v. *Baca*,
  226 F.R.D. 624 (C.D. Cal. 2005) ............................................................... 17

*Greenpeace* v. *National Marine Fisheries Service*,
  198 F.R.D. 540 (W.D. Wash. 2000) ............................................................ 17

*Halliburton Energy Services, Inc.* v. *M-1, LLC*,
  2006 WL 2663948 (S.D. Tex. Sept. 15, 2006) ............................................. 6n

*Miller* v. *Ghirardelli Chocolate Co.*,
  2013 WL 6774072 (N.D. Cal. Dec. 20, 2013) .............................................. 6n

*In re ML-Lee Acquisition Fund II, L.P.*,
  151 F.R.D. 37 (D. Del. 1993) .................................................................... 14

*National Credit Union Administration Board as Conservator for Western
  Corporate Federal Credit Union* v. *Robert A. Siravo*,
  No. 10-1597 (C.D. Cal.) ........................................................................... 6

*National Credit Union Administration Board as Liquidating Agent of Western
  Corporate Federal Credit Union* v. *RBS Securities Inc.*,
  No. 11-05887 (C.D. Cal.) .......................................................................... 6

*National Credit Union Administration Board* v. *J.P. Morgan Securities LLC*,
  No. 11-02341 (D. Kan.) ............................................................................ 6

*Oppenheimer Fund, Inc.* v. *Sanders*,
  437 U.S. 340 (1978) ................................................................................ 10

*Owings* v. *Hunt & Henriques*,
  673 F. Supp. 2d 1104 (E.D. Cal. 2009) ...................................................... 12

*In re Pacific Pictures Corp.*,
  679 F.3d 1121 (9th Cir. 2012) ................................................................... 8n

*Regents of University of California* v. *Kohne*,
  166 F.R.D. 463 (S.D. Cal. 1996) ............................................................... 6n

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL DISCOVERY FROM THIRD
PARTY NATIONAL CREDIT UNION ADMINISTRATION
CASE NO.  CV13-779 DOC (JCGX)

*Roberts* v. *Americable International, Inc.*,
    883 F. Supp. 499 (E.D. Cal. 1995) ................................................................... 17

*Seafirst Corp.* v. *Jenkins*,
    644 F. Supp. 1160 (W.D. Wash. 1986) .......................................................... 16

*SEC* v. *Collins & Aikman Corp.*,
    256 F.R.D. 403 (S.D.N.Y. 2009) ................................................................... 15

*SEC* v. *Strauss*,
    2009 WL 3459204 (S.D.N.Y. Oct. 28, 2009) .................................................. 16

*In re Subpoena*,
    967 F.2d 630 (D.C. Cir. 1992) ...................................................................... 16

*United States ex rel. Schwartz* v. *TRW, Inc.*,
    211 F.R.D. 388 (C.D. Cal. 2002) ...............................................................13-14

*United States ex rel. Touhy* v. *Ragen*,
    340 U.S. 462 (1951) ...............................................................................2, 10-11

*United States* v. *Deloitte LLP*,
    610 F.3d 129 (D.C. Cir. 2010) ...................................................................... 16

*United States* v. *Ernstoff*,
    183 F.R.D. 148 (D.N.J. 1998) ....................................................................15-17

*United States* v. *Menendez*,
    2013 WL 828926 (C.D. Cal. Mar. 6, 2013) .................................................. 14

*United Western Bank* v. *Office of Thrift Supervision*,
    853 F. Supp. 2d 12 (D.D.C. 2012) ............................................................... 17

*Wultz* v. *Bank of China Ltd.*,
    2014 WL 572527 (S.D.N.Y. Feb. 13, 2014) .................................................. 6n

**Statutes**

5 U.S.C. § 301 (2012) .................................................................................3, 10, 12

**Regulations**

12 C.F.R. § 792.42 ............................................................................................... 7

12 C.F.R. § 792.43(c)-(e) .................................................................................. 9n

iv

**Rules**

Fed. R. Civ. P. 26.................................................................................... 12

Fed. R. Civ. P. 26(b) .........................................................................13-14

Fed. R. Civ. P. 26(b)(3)(A)(ii) ................................................................ 17

Fed. R. Civ. P. 45................................................................................*passim*

Fed. R. Civ. P. 45(c)(2)(A) ..................................................................... 6n

Fed. R. Civ. P. 45(d) ............................................................................... 10

**Treatises**

26A Charles Alan Wright & Kenneth W. Graham, Federal Practice and Procedure
   § 5690 (1992)...................................................................................... 15

**Other Authorities**

NCUA Corporate Examiner's Guide, May 2008,
   http://www.ncua.gov/Resources/Documents/Corp/CE%20Guide%20For%20N
   CUA%20Library.pdf, last visited Mar. 20, 2014 ................................. 5

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL DISCOVERY FROM THIRD
PARTY NATIONAL CREDIT UNION ADMINISTRATION
CASE NO.  CV13-779 DOC (JCGX)

## I.  PRELIMINARY STATEMENT

The National Credit Union Administration ("NCUA") has refused to comply with S&P's[1] non-party subpoena issued under Federal Rule of Civil Procedure 45 on the ground that S&P has failed to satisfy certain administrative rules of NCUA's own creation.  This attempt to stand behind internal regulations in avoidance of clear obligations imposed by the Federal Rules marks the latest in a series of efforts by agencies of the United States to prevent S&P from obtaining documents that are highly relevant to its defense in this case.[2]  Although S&P provided a detailed written articulation of its need for the subpoenaed material, NCUA claimed to be unsatisfied and demanded that S&P supply additional justifications beyond anything that Rule 45 requires.  Last week, counsel for NCUA purported to issue a "final determination" that the agency would not produce any of the subpoenaed materials.  This latest chapter in the Government's pattern of non-production has no basis in law and is in fact contrary to well-established statutory and Ninth Circuit authority.

There can be no serious dispute that NCUA possesses relevant documents related to its role as the regulator and supervisor of federal credit unions, including five entities that the Government alleges in this action incurred hundreds of millions of dollars in losses.  NCUA participated in regular communications with these credit unions about various subjects, including but not limited to the policies governing their investments in the very securities put at issue by the United States in this case.  Published reports also indicate that NCUA regularly conveyed policy

---

[1] "S&P" refers collectively to defendants McGraw Hill Financial, Inc. and Standard & Poor's Financial Services LLC.

[2] *See* S&P's January 20, 2014 Motion to Compel, and the United States' February 17, 2014 Cross-Motion for a Protective Order, joined by Non-Parties Federal Reserve Bank of New York, Timothy F. Geithner and Terrence J. Checki.

instructions to the credit unions about their reliance on credit ratings, *e.g.*, that ratings are not a substitute for prudent due diligence and should only be considered as one factor in an investment decision.  Such communications—and to whom, when and why they were made—are plainly relevant in this case where the Government contends that the credit unions' investment losses resulted from their reliance on S&P's ratings.

S&P also seeks (and NCUA has also refused to produce) documents underlying NCUA's publicly released analyses of the causes of the credit unions' investment losses.  These analyses, known as Material Loss Reviews ("MLRs"), contain stark findings, including, for example, that management of the credit unions "did not implement appropriate risk management practices" and followed an overly aggressive investment strategy that "contributed directly" to their failure.  Documents related to these findings are again directly relevant in this action where the Government alleges that the credit unions' losses were caused not by their own poor risk management, or failure to follow investment guidelines, but solely by their reliance on S&P's rating opinions.  S&P has sought production of additional documents as well, but in every case has been rebuffed.

While NCUA has raised a host of objections to S&P's subpoena, the primary, overriding basis for its refusal to comply stems from the application of internal rules, known as *Touhy* regulations, which purport to require that a party satisfy a number of administrative prerequisites before gaining access to NCUA's documents.  These regulations—named after the Supreme Court's decision in *United States ex rel. Touhy* v. *Ragen*, 340 U.S. 462 (1951)—require parties to describe in detail why requested documents are relevant to their claims or defenses and why their need for such documents outweighs NCUA's purported need to maintain confidentiality and minimize burden, among other things.  Even after such showings are made, the regulations purport to grant wide discretion to the

General Counsel of NCUA to decide whether to produce material based on a variety of flexible factors.

Although S&P made a submission to NCUA that included the showings required by its *Touhy* regulations, NCUA has refused to comply.  In a "final determination" letter dated March 13, 2014—nearly two months after S&P's subpoena was issued—NCUA's counsel stated that S&P's submission failed to pass muster under the *Touhy* regulations because:  (i) it did not sufficiently explain S&P's need for the material it seeks, (ii) some of the material may be obtained from other third parties and (iii) the documents are otherwise covered by a blanket assertion of privileges and protections.  The letter concluded by stating flatly that "NCUA does not intend to produce documents in response to S&P's request." (Declaration of Janet A. Beer ("Beer Decl.") Ex. C) at 2.

NCUA's delay and ultimate refusal to comply with S&P's subpoena is inconsistent not only with the desire of counsel and this Court to move forward promptly with discovery, but also well-settled law.  The statutory authority underlying all *Touhy* regulations (known as the federal housekeeping statute) expressly states that it "does not authorize withholding information . . . or limiting the availability of records to the public."  5 U.S.C. § 301 (2012).  Accordingly, the Ninth Circuit has flatly rejected efforts such as NCUA's to utilize *Touhy* regulations to avoid compliance with Rule 45 subpoenas.  In *Exxon Shipping Co.* v. *United States Department of Interior*, the court held that the housekeeping statute and related *Touhy* regulations do not "authorize federal agency heads to withhold evidence sought under a valid federal court subpoena."  34 F.3d 774, 777 (9th Cir. 1994).  Other courts have similarly recognized that while agencies may utilize their *Touhy* regulations to organize the custody, use and preservation of their records, such regulations cannot override the application of the federal rules, which already provide sufficient mechanisms to protect agencies from subpoenas

3

that are unduly broad or otherwise objectionable.

For these reasons, explained further below, S&P's motion to compel the production of documents by NCUA should be granted.[3]

## II.   FACTUAL BACKGROUND

### A.   NCUA's Regulatory Responsibilities

NCUA is the agency of the United States government that regulates, charters and supervises federally insured credit unions, including over 150 such entities in the Central District of California.  (Beer Decl. ¶ 10).  These credit unions fall into two categories: (i) "natural person credit unions," of which there are thousands, and (ii) corporate credit unions (like the ones at issue in this action), which are far fewer in number.  Natural person credit unions provide financial services to individuals, whereas corporate credit unions provide liquidity to the natural person credit unions and typically have billions of dollars under management.  Material Loss Review of Western Corporate Federal Credit Union ("WesCorp MLR") (Beer Decl. Ex. E) at 3.

### B.   NCUA's Relevance to this Litigation

In this action, the United States alleges that S&P engaged in a scheme to defraud twenty-one entities with respect to their investments in over 150 collateralized debt obligations ("CDOs") and residential mortgage backed securities ("RMBS").  Among these investors, the Government has identified five credit unions (referred to herein as the "Identified Credit Unions") that are alleged to have purchased 42 securities, incurring hundreds of millions of dollars in alleged

---

[3] This motion is filed directly with the Court based on its instructions at the March 11, 2014 hearing regarding the expeditious handling of discovery disputes with third parties.

loss.[4]

NCUA actively supervised each of the Identified Credit Unions.  Of the five entities at issue, WesCorp, U.S. Central and Southwest were subject to "Type III supervision," meaning that each was assigned a full-time examiner who was required to be on-site on a monthly basis.  *See* WesCorp MLR (Beer Decl. Ex. E) at 10 n.21; U.S. Central MLR (Beer Decl. Ex. F) at 7 n.9; Southwest MLR (Beer Decl. Ex. G) at 10 n.21; *see also* NCUA Corporate Examiner's Guide, Chapter 103, page 103-1 (May 2008), *available at* http://www.ncua.gov/Resources/ Documents/Corp/CE%20Guide%20For%20NCUA%20Library.pdf,   last   visited Mar. 20, 2014.  NCUA also provided information and advice to each Identified Credit Union on a wide range of issues, including credit risk, investment products, and—especially relevant here—the appropriate use of credit ratings.  Among other things, NCUA instructed the credit unions that:

> A credit rating is not a substitute for prudent due diligence and should only be considered as one factor in an investment decision.  The ratings and other opinions issued by rating agencies are not recommendations to buy securities and there is not a warranty on the accuracy, timeliness, completeness or fitness of the information provided.  WesCorp MLR (Beer Decl. Ex. E) at 15.

By the end of 2010, each of the Identified Credit Unions had failed and was placed into NCUA's conservatorship.  Subsequently, NCUA's Office of Inspector General (OIG) authored MLRs identifying material factors causing the collapse of each entity.  Although the reports did not purport to provide an exhaustive list of factors, each pointed to poor risk management, NCUA's own sub-standard

---

[4] The five Identified Credit Unions are:  Members United Corporate Federal Credit Union ("Members United"); Southwest Corporate Federal Credit Union ("Southwest"); U.S. Central Federal Credit Union ("U.S. Central"); Eastern Financial Florida Credit Union ("Eastern Financial"); and Western Corporate Federal Credit Union ("WesCorp").  One of these entities (WesCorp) was based in this District until it was taken into federal conservatorship in 2009.  (Beer Decl. ¶ 11).

supervision and an improper use of credit ratings. *See, e.g.*, WesCorp MLR (Beer Decl. Ex. E) at 40 ("WesCorp over-relied on the credit ratings assigned by the [NRSROs]"); Southwest MLR (Beer Decl. Ex. G) at 41 (same as to Southwest); *see also* Members United MLR (Beer Decl. Ex. H) at 3 ("We determined NCUA failed to adequately assess or timely identify key risks related to Members United's investment portfolio related to the concentration of mortgage-backed securities, until it was too late.").

These same MLRs also placed blame on issuers and arrangers of the investments purchased by the Identified Credit Unions, ultimately leading to more than a dozen lawsuits, including actions against entities such as RBS and settlements with Citigroup, Deutsche Bank and HSBC relating to losses stemming from the credit unions' investments in RMBS. *See, e.g.*, *National Credit Union Administration Board as Liquidating Agent of Western Corporate Federal Credit Union* v. *RBS Securities Inc.*, No. 11-05887 (C.D. Cal.); *National Credit Union Administration Board* v. *J.P. Morgan Securities LLC*, No. 11-02341 (D. Kan.); *see also National Credit Union Administration Board as Conservator for Western Corporate Federal Credit Union* v. *Robert A. Siravo*, No. 10-1597 (C.D. Cal.) (suit against WesCorp's board of directors and executive officers). These lawsuits sought recovery in connection with a number of different securities, including *nineteen* of the thirty RMBS bonds designated by the United States in this action as having been purchased by the Identified Credit Unions. (Beer Decl. ¶ 12).

## C.    The NCUA Subpoena

On January 17, 2014, S&P issued to NCUA a Rule 45 subpoena at its Regional Office in Tempe, Arizona, designating a place of compliance within this District. (Beer Decl. Ex. A-1).[5]  On the same day, S&P sent a courtesy copy of the

---

[5] Recent revisions to Rule 45 provide that the place of compliance for production

6

subpoena to NCUA's General Counsel and OIG, along with a cover letter explaining the relevance of the material requested and providing other information called for by NCUA's *Touhy* regulations, 12 C.F.R. § 792.42.  January 17, 2014 Letter of Paven Malhotra to Elizabeth Whitehead (the "January 17 Letter") (Beer Decl. Ex. A-2).

Between January 27, 2014 and February 6, 2014, S&P issued four additional Rule 45 subpoenas to NCUA in its capacity as custodian of records for WesCorp, Members United, Southwest and U.S. Central (the "Credit Union Subpoenas"). On February 3, 2014, counsel for NCUA and S&P participated in an initial meet-and-confer at which time NCUA requested that S&P formally direct its initial subpoena and accompanying January 17 Letter to NCUA's General Counsel in Alexandria, Virginia.  S&P immediately issued an identical copy of the subpoena and January 17 Letter to NCUA's General Counsel on February 6, 2014.  (Beer Decl. Exs. B-1, B-2).

---

of documents must be "a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A); *see also Miller* v. *Ghirardelli Chocolate Co.*, 2013 WL 6774072, at *5 (N.D. Cal. Dec. 20, 2013).  The phrase "regularly transacts business in person" means what it says.  *Regents of University of California* v. *Kohne*, 166 F.R.D. 463, 464 (S.D. Cal. 1996) (citation omitted).  A physical office is not required as long as the entity engaged in regular visits.  *Halliburton Energy Services, Inc.* v. *M-1, LLC*, 2006 WL 2663948, at *2 (S.D. Tex. Sept. 15, 2006) (regularly transacts business with four visits per year of approximately ten days per visit over a span of ten years). Nor is it required that the subpoena be related to the business conducted in person. *Wultz* v. *Bank of China Ltd.*, 2014 WL 572527, at *5 (S.D.N.Y. Feb. 13, 2014). Here, NCUA regularly transacts business in person in this District on matters that are the subject of the subpoena.  It regulates well over 150 credit unions in this district—a process that includes, among other things, periodic on-sight supervision.  Moreover, WesCorp, one of the Identified Credit Unions alleged to have incurred losses in connection with securities at issue in this litigation, was headquartered in San Dimas, California, and NCUA was required to assign personnel on site at WesCorp on a monthly basis.

On February 7, 2014, the parties engaged in a second meet-and-confer discussion.  While NCUA indicated a willingness to produce some subset of documents responsive to the four Credit Union Subpoenas, it took a very different position with respect to the January 17 subpoena relating to NCUA's role as regulator and supervisor.  Specifically, counsel stated that NCUA would not treat that subpoena as a demand under Rule 45, but rather as an administrative request governed solely by the agency's *Touhy* regulations.  NCUA's counsel followed this call with a letter on February 11, 2014, reiterating its position and asserting a host of other blanket objections, including that the subpoena is overbroad, unduly burdensome and seeks material protected by various privileges and protections. The letter also stated, however, that NCUA would continue to "consider" the requests contained in the January 17 subpoena and that S&P should stand by for a decision.  Letter from Andrew M. Hetherington to Dean Ringel and Michelle Ybarra (Beer Decl. Ex. D) at 5.

NCUA's "final determination" came on  March 13, 2014, in a letter from its General Counsel stating that the agency would not produce *any* documents responsive to the January 17 subpoena because S&P had failed to show how "any of the documents sought by its 44 requests have any relevance" to this litigation. Letter from Michael J. McKenna to Dean Ringel and Michelle Ybarra (Beer Decl. Ex. C) at 2.  Putting aside that this approach is contrary to well-settled law (see below), it also subjects S&P to substantial prejudice considering that (i) NCUA already made a production of documents to the United States in connection with the FIRREA investigation giving rise to this lawsuit, and (ii) NCUA has refused to permit the United States to produce those materials to S&P pending NCUA's determination of whether they are protected by privilege.[6]

---

[6] Neither NCUA nor the United States has explained why materials produced by NCUA to the Department of Justice in connection with the FIRREA investigation

## III.   ARGUMENT

NCUA's refusal to produce relevant documents is contrary to controlling authority which holds that *Touhy* regulations do not authorize federal agencies to withhold evidence sought pursuant to a valid federal court subpoena.  These courts have held that Rule 45 provides sufficient protection to such agencies and that it— not the agencies' *Touhy* regulations—governs subpoenas like the one served here. In this case, S&P's subpoena seeks documents that are reasonably calculated to lead to admissible evidence and is not overbroad, thus requiring production under Rule 45.  In any event, even in the absence of dispositive authorities holding that *Touhy* rules provide no basis for non-compliance, NCUA would still be required to produce the requested material because S&P has already made a written submission that is more than sufficient to satisfy those rules.[7]

### A.   NCUA's *Touhy* Regulations Do Not Exempt It from Complying with the Subpoena.

Rule 45 permits the discovery of "'any nonprivileged matter that is relevant to any party's claim or defense,'" including "'any matter that bears on, or that

---

would necessitate a privilege review before being turned over to S&P.  *See In re Pacific Pictures Corp.*, 679 F.3d 1121, 1127 (9th Cir. 2012) (holding that production of documents to federal government in response to grand jury subpoena waived attorney-client privilege).

[7] NCUA's *Touhy* regulations require a submission that includes: (i) the categories of information sought with detailed descriptions of the information's relevance and substance; (ii) a statement explaining "how the need for the information outweighs the need to maintain . . . confidentiality" and "the burden on the NCUA;" and (iii) "[a] statement indicating that the information sought is not available from another source." 12 C.F.R. § 792.43(c)-(e).  S&P provided this information in the January 17 Letter sent to NCUA's General Counsel simultaneously with service of the Subpoena.  January 17 Letter (Beer Decl. Ex. A-2).  That letter, and, indeed this memorandum, explain why each factor NCUA considers—relevance, need and burden—has been satisfied and weighs in favor of discovery.

reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"  *Berwick* v. *Hartford Fire Insurance Co.*, 2012 WL 2856117, at *1 (D. Ariz. July 11, 2012) (quoting *Oppenheimer Fund, Inc.* v. *Sanders*, 437 U.S. 340, 351 (1978)).  When served with a Rule 45 subpoena, a third party, including an administrative agency or officer of the federal government, must produce documents and appear for depositions.  Fed. R. Civ. P. 45; *see also Exxon Shipping Co.* v. *United States Department of Interior*, 34 F.3d 774, 777-79 (9th Cir. 1994). If a third party believes a subpoena is improper, Rule 45 provides various protections, including the right to file a motion to quash in the district where compliance is required.  Fed. R. Civ. P. 45(d).

The *Touhy* regulations are the offspring of the federal housekeeping statute, 5 U.S.C. § 301, which was enacted to provide an orderly way for agencies to reply to requests for documents.  *See Exxon Shipping Co.*, 34 F.3d at 777 (explaining that the original housekeeping statute, signed into law in 1789, "was enacted 'to help General Washington get his administration underway by spelling out the authority for executive officials to set up offices and file Government documents'") (citation omitted).  The Ninth Circuit has made clear that "nothing in [the housekeeping statute's] legislative history indicated that Congress intended the statute to be a grant of authority to withhold information from the public." *Id.*

In its seminal decision in *United States ex rel. Touhy* v. *Ragen*, the Supreme Court held that a public employee could not be held in contempt for refusing to produce documents over an objection by the Attorney General.  The decision focused on the need for administrative agencies to maintain a process for determining which of their employees are best positioned to respond to a request for information.  Importantly, *Touhy* did not hold that agencies' housekeeping regulations provide authority to refuse production pursuant to a federal subpoena. *Touhy*, 340 U.S. at 467 ("We find it unnecessary, however, to consider the ultimate

10

reach of the authority of the Attorney General to refuse to produce at a court's order the government papers in his possession[.]").   Subsequent decisions have answered the question dispositively, holding that the housekeeping statute and related regulations grant no such authority.

In *Exxon Shipping Co.*, for example, the plaintiff sought testimony from ten employees of various federal administrative agencies in a dispute related to the Exxon Valdez oil spill.   The agencies instructed a number of the employees not to appear and limited the topics on which others would be permitted to testify, citing principles of sovereign immunity and various *Touhy* regulations.  *Exxon*, 34 F.3d at 775-76.  The Ninth Circuit flatly rejected the argument, finding that the agencies' position "would authorize the executive branch to make conclusive determinations on whether federal employees may comply with a valid federal court subpoena" and that this "would raise serious separation of powers questions." *Id.* at 778.  The court concluded that:

> In summary, the district court erred in holding that [*Touhy* regulations] authorize[] federal agencies to refuse to comply with proper discovery requests.   [The regulations do] not create an independent privilege to withhold government information or shield federal employees from valid subpoenas.  Rather, district courts should apply the federal rules of discovery when deciding on discovery requests made against government agencies, whether or not the United States is a party to the underlying action. Under the balancing test authorized by the rules, courts can ensure that the unique interests of the government are adequately considered. *Id.* at 780.

Thus, *Exxon* establishes that federal agencies, like any other third party, must abide by the procedures set forth in Rule 45.  Other courts around the country have reached the same conclusion.[8]   *See, e.g., Gardner* v. *Michigan State University*, 2013 WL 5320282, at *4 (W.D. Mich. Sept. 20, 2013) (rejecting

---

[8] While some courts outside the Ninth Circuit have disagreed with *Exxon*, *see, e.g., EPA* v. *General Electric Co.*, 197 F.3d 592, 598 (2d Cir. 1999), the decision plainly controls here.

11

argument "that sovereign immunity deprives the court of jurisdiction to enforce the subpoena and that the procedures set forth in the agency's *Touhy* regulations are plaintiff's exclusive recourse."); *Owings* v. *Hunt & Henriques*, 673 F. Supp. 2d 1104, 1106-07 (E.D. Cal. 2009) ("The U.S. Army's Touhy regulations do not authorize the Army to ignore discovery requests or court orders addressing those discovery requests in a pending federal action.") (citing *Exxon Shipping Co.*, 34 F.3d at 780).

These decisions are fully consistent with the plain language of the federal housekeeping statute itself, which was amended in 1958, seven years after *Touhy* was decided, to include a new sentence stating that: "This section does not authorize withholding information from the public or limiting the availability of records to the public." 5 U.S.C. § 301; *see also Exxon Shipping Co.*, 34 F.3d at 777. The amendment was intended expressly to preclude federal agencies, like NCUA here, from relying on the statute as a basis for limiting the availability of documents to the public. *See Exxon Shipping Co.*, 34 F.3d at 777 ("According to the legislative history, Congress was concerned that the statute had been 'twisted from its original purpose as a "housekeeping" statute into a claim of authority to keep information from the public and, even, from the Congress.'") (citation omitted).

It is thus well-settled, contrary to NCUA's position, that *Touhy* regulations provide no basis to avoid compliance with a Rule 45 subpoena.

### B.   S&P's Subpoena Is Reasonably Calculated to Lead to the Discovery of Admissible Evidence And Not Overbroad.

Rule 45, like the Federal Rules generally, affords parties the right to broad discovery. "The scope of discovery under a Rule 45 subpoena to non-parties is the same as that permitted under Rule 26. . . . [which is] construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter

12

that could bear on, any issue that is or may be in the case." *Berwick* v. *Hartford Fire Insurance Co.*, 2012 WL 2856117, at *1 (D. Ariz. July 11, 2012) (citations omitted); *see also Brown* v. *Brown*, 2014 WL 172407, at *2 (N.D. Cal. Jan. 15, 2014) ("The scope of the discovery that can be requested through a subpoena under Rule 45 is the same as the scope under Rule 26(b).") (citation and quotation omitted); *United States ex rel. Schwartz* v. *TRW, Inc.*, 211 F.R.D. 388, 392 (C.D. Cal. 2002).   Where discovery sought is relevant and cannot easily be attained elsewhere, courts typically compel production.  *See, e.g.*, *Berwick*, 2012 WL 2856117, at *1; *Compaq Computer Corp.* v. *Packard Bell Electronics, Inc.*, 163 F.R.D. 329, 338-39 (N.D. Cal. 1995).

### 1.    S&P Seeks Information that Is Both Unique to NCUA and Central to this Litigation.

NCUA has unique first-hand knowledge of issues relevant to this litigation, such as the factors and policies—including those regarding the use of credit ratings—applicable to investment decisions that led to hundreds of millions of the losses alleged in this action.  NCUA was in regular contact with each of the Identified Credit Unions and maintained a monthly on-site presence at some of them, sufficient to provide a "working knowledge of the [credit union's] operations, especially in the capital markets areas (investments, asset and liability management, risk monitoring, etc.)." WesCorp MLR (Beer Decl. Ex. E) at 10. Thus, there can be little dispute that NCUA possesses documents relevant to this case—a point that NCUA effectively conceded when it produced material to the United States in connection with the FIRREA investigation giving rise to this action.  *See supra* note 6 and accompanying text.

Moreover, as noted, NCUA also conducted reviews of losses incurred by the Identified Credit Unions and placed blame for those losses on poor risk management, NCUA's own sub-standard supervision and—most relevant here—

13

the credit unions' improper use of credit ratings.  *See supra* pp. 5-6.  Such statements by the regulator and supervisor of the entities alleged to have suffered losses from their reliance on S&P's ratings—and documents supporting those statements—are at a minimum discoverable, if not potentially dispositive on the issue of S&P's liability.  Put another way, S&P should not be denied access to documents that, according to NCUA's own statements, address potential alternative explanations for the very losses that S&P is alleged to have caused.  *See United States ex rel. Schwartz*, 211 F.R.D. at 392 ("Rule 26(b) is liberally interpreted to permit wide-ranging discovery"); *Degulis* v. *LXR Biotechnology, Inc.*, 176 F.R.D. 123, 125-27 (S.D.N.Y. 1997) (requiring production of documents concerning plaintiff's investment decision in a securities fraud suit); *In re ML-Lee Acquisition Fund II, L.P.*, 151 F.R.D. 37, 39-40 (D. Del. 1993) (same); *see also United States* v. *Menendez*, 2013 WL 828926, at *8-9 (C.D. Cal. Mar. 6, 2013) (finding that question of extent to which fraudulent "conduct caused [a financial institution] to suffer a loss" was relevant to assessing penalties in a FIRREA suit).

As noted, NCUA has also taken significant steps to recover losses allegedly suffered by the Identified Credit Unions—filing more than fifteen lawsuits across the country against various issuers, arrangers and others, including some of the same entities that the United States claims were also affected by S&P's alleged fraud.  S&P of course has no need or desire to become involved in these other actions; the point is simply that NCUA's allegations in those cases prove that it possesses highly relevant documents and information that may show, among other things, that S&P's ratings were not the cause of the losses the Government has put at issue in this case and that, at the very least, they can hardly provide a basis for any penalty being imposed on S&P.  *See Aguilar* v. *County of Fresno*, 2009 WL 3617984, at *5 (E.D. Cal. Oct. 29, 2009) (defendants entitled to discovery on alternative theories of damages).

S&P's subpoena is narrowly tailored and focused on documents directly relevant to the Government's theory in this action.  Moreover, any burden faced by NCUA is overcome by the fact that the Government has put the subpoenaed documents directly at issue by alleging that S&P is responsible for losses suffered by federal credit unions overseen by NCUA.  To the extent NCUA has concerns about the burden imposed by S&P's subpoena, the proper remedy would have been to serve Rule 45 objections and engage in a meet-and-confer process regarding the negotiation of search terms and the like—not to engage in self-help by simply ignoring the requirements of the Federal Rules.  *See SEC* v. *Collins & Aikman Corp.*, 256 F.R.D. 403, 417 (S.D.N.Y. 2009) ("Without even an attempt to negotiate search terms that would weed out privileged, protected, or irrelevant e-mails, the SEC cannot reasonably assert that a routine aspect of modern discovery—search and review of a party's e-mail—is beyond its capability.").

### 2.     NCUA's Privilege Objections Lack Merit and Have Not Been Properly Asserted.

NCUA has made broad claims invoking the bank examiner privilege, the deliberative process privilege and work product protection.    NCUA Final Determination Letter (Beer Decl. Ex. C) at 2.   None of these privileges or protections bars production in this case.

Initially, there is substantial question whether the bank examiner or deliberative process privileges lie at all in a civil case initiated by the Government. *See* 26A Charles Alan Wright & Kenneth W. Graham, Federal Practice and Procedure § 5690, at 252 (1992) ("Some of the cases, taking the position that the government cannot 'have its cake and eat it too,' have held that by initiating a civil action the government waives its privileges for any information necessary to resolve the cases." (Footnotes omitted)).  At the very least the privileges are greatly diminished.    *United States* v. *Ernstoff*, 183 F.R.D. 148, 153 (D.N.J. 1998)

15

("[C]ourts have severely restricted the use of the [deliberative process] privilege by government agencies that are seeking affirmative judicial relief.").

But, even if one were to assume that such privileges still could be asserted here, NCUA simply does not provide a basis for its wholesale refusal to respond. First, none of the privileges identified by NCUA precludes production of the *factual* material S&P seeks—including documents generated by third parties and factual discussions of the Identified Credit Unions' conduct and NCUA's oversight. *FTC* v. *Warner Communications Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (deliberative process privilege only shields predecisional and deliberative materials, not factual material); *Ernstoff*, 183 F.R.D. at 153 (same); *In re Subpoena*, 967 F.2d 630, 634 (D.C. Cir. 1992) (same for bank-examination); *Seafirst Corp.* v. *Jenkins*, 644 F. Supp. 1160, 1163 (W.D. Wash. 1986) (same); *United States* v. *Deloitte LLP*, 610 F.3d 129, 138-39 (D.C. Cir. 2010) (same for work product); *SEC* v. *Strauss*, 2009 WL 3459204, at *10 (S.D.N.Y. Oct. 28, 2009) (same).

Second, even if some of the material could theoretically be protected, NCUA has failed to make the specific showings necessary to properly invoke the privileges it has raised. For example, to withold documents under the deliberative process or bank examination privileges, an agency must (i) submit precise reasons for asserting the privilege and (ii) identify the specific information or documents that are purportedly protected. *See Friedman* v. *Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341-42 (D.C. Cir. 1984) (requirements for asserting government privilege); *Ernstoff*, 183 F.R.D. at 152 (same for deliberative process privilege); *Seafirst Corp.* v. *Jenkins*, 644 F. Supp. 1160, 1164 (W.D. Wash. 1986) (bank examination privilege is a subset of deliverative process privilege). Here, by contrast, NCUA has made a simple, one-line assertion of privilege and has not even bothered to transmit a privilege log, thus depriving S&P and this Court any

16

opportunity to detemine which responsive documents exist and which privileges, if any, justify NCUA's refusal to comply with S&P's subpoena.

Third, even if NCUA had properly invoked the deliberative process and bank-examiner privileges, the policies underlying those privileges are inapplicable here because each of the Identified Credit Unions is currently out of operation, removing any potential chilling effect on the examination process. *See United Western Bank* v. *Office of Thrift Supervision*, 853 F. Supp. 2d 12, 18 (D.D.C. 2012) (fact that "the bank has been shut down and placed in receivership" minimizes risk that disclosure chills the examination process). It would also be fundamentally unfair for S&P to be deprived of relevant documents possessed by a Government agency in an action brought against it by the United States particularly where, as here, some of those documents have been shared with the DOJ. *See FDIC* v. *Hatziyannis*, 180 F.R.D. 292, 293-94 (D. Md. 1998) ("[W]hen the Government seeks affirmative relief, it is fundamentally unfair to allow it to evade discovery of materials that a private plaintiff would have to turn over."); *Ernstoff*, 183 F.R.D. at 153; *Department of Economic Development* v. *Arthur Andersen*, 139 F.R.D. 295, 298-99 (S.D.N.Y. 1991); *FDIC* v. *St. Paul Fire & Marine Insurance Co.*, 53 F.R.D. 260, 262 (W.D. Okla. 1971).

Finally, each of the privileges and protections asserted by NCUA is qualified and can be overcome by a showing of need. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii) (work product protection overcome if party "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means"); *Green* v. *Baca*, 226 F.R.D. 624, 652 (C.D. Cal. 2005) (addressing work product protection); *Roberts* v. *Americable International, Inc.*, 883 F. Supp. 499, 506-07 (E.D. Cal. 1995) (same); *Greenpeace* v. *National Marine Fisheries Service*, 198 F.R.D. 540, 543 (W.D. Wash. 2000) (addressing deliberative process privilege); *In re Countrywide Financial Corp.*

17

*Securities Litigation*, 2009 WL 5125089, at *2 (C.D. Cal. Dec. 28, 2009) (addressing bank-examination privilege).  Here, for all the reasons set forth above, S&P has demonstrated a compelling need for the material it seeks.

**IV.   CONCLUSION**

      For all the foregoing reasons, this Court should order NCUA to comply with S&P's subpoena.

Dated: March 21, 2014          CAHILL GORDON & REINDEL LLP

                         By:  /s/ Floyd Abrams
                               Floyd Abrams