# Exhibit B

New York    Paris
Menlo Park  Madrid
Washington DC   Tokyo
São Paulo   Beijing
London      Hong Kong

# Davis Polk

**James P. Rouhandeh**

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017

212 450 4835 tel
212 701 5835 fax
rouhandeh@davispolk.com

April 18, 2014

Re:  *NCUA v. Goldman, Sachs & Co.*, No. 11-cv-6521 (C.D. Cal.)
     *NCUA v. RBS Securities, LLC*, No. 11-cv-5887 (C.D. Cal.)
     *NCUA v. Wachovia Capital Markets LLC*, No. 11-cv-2649 (D. Kan.)
     *NCUA v. RBS Securities, LLC*, No. 11-cv-2340 (D. Kan.)
     *NCUA v. UBS Securities, LLC*, No. 12-cv-2591 (D. Kan.)
     *NCUA v. Credit Suisse Securities (USA) LLC*, No. 12-cv-2648 (D. Kan.)
     *NCUA v. Morgan Stanley & Co.*, No. 13-cv-2418 (D. Kan.)
     *NCUA v. Morgan Stanley & Co.*, No. 13-cv-6705 (S.D.N.Y.)
     *NCUA v. Wachovia Capital Markets LLC*, No. 13-cv-6719 (S.D.N.Y.)
     *NCUA v. Goldman, Sachs & Co.*, No. 13-cv-6721 (S.D.N.Y.)
     *NCUA v. RBS Securities, LLC*, No. 13-cv-6726 (S.D.N.Y.)
     *NCUA v. Barclays Capital Inc.*, No. 13-cv-6727 (S.D.N.Y.)
     *NCUA v. UBS Securities, LLC*, No. 13-cv-6731 (S.D.N.Y.)
     *NCUA v. Credit Suisse Securities (USA) LLC*, No. 13-cv-6736 (S.D.N.Y.)

The Honorable Denise L. Cote
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

The Honorable George H. Wu
United States District Court for the Central District of California
312 North Spring Street
Los Angeles, CA 90012-4701

The Honorable John W. Lungstrum
The Honorable James P. O'Hara
United States District Court for the District of Kansas
500 State Avenue, Suite 517
Kansas City, KS 66101

Case 2:13-cv-00779-DOC-JCG Document 179-2 Filed 05/20/14 Page 3 of 11 Page ID #:4378
Case 1:13-cv-06705-DLC Document 109 Filed 04/18/14 Page 2 of 4

2

April 18, 2014

Dear Judges Cote, Wu, Lungstrum, and O'Hara,

I write on behalf of all Defendants with respect to two discovery disputes with NCUA that are common to all Defendants.

NCUA Custodians. NCUA has taken the position that it should be shielded from nearly all discovery in this matter. Other than including as custodians two individuals involved with a discrete issue relating to re-securitization of RMBS purchased by the credit unions, NCUA has refused even to identify any current or former NCUA employees with knowledge relevant to the claims and defenses in these cases, let alone designate any such individuals as document custodians or agree to review and produce relevant documents for them.[1] This refusal is unjustifiable for several reasons.

First, NCUA is the named plaintiff in these actions and was obviously integral to the review of the credit unions' RMBS holdings and evaluation of their potential claims. It would be highly inequitable if Defendants cannot take discovery from the entity suing them. Second, it appears that NCUA was heavily involved with issues relevant to these actions before and after assuming the role of conservator. For example, Defendants understand that NCUA actively monitored the credit unions before their failure, including performing reviews of RMBS investments, and undertook other relevant analyses such as material loss reviews after the credit unions' failure. These communications are relevant to various issues in these cases, including the quality of the mortgages underlying the RMBS at issue, credit unions' awareness of RMBS-related risks, their knowledge of potential claims, and the cause of their alleged losses.[2] Moreover, internal NCUA communications regarding the credit unions will not be captured by a search of credit union custodians' data. Third, to the extent that NCUA employed or otherwise engaged individuals from the credit unions following the conservatorship date to assist in issues related to the credit unions' RMBS purchases, Defendants are entitled to relevant communications from these individuals. Fourth, the master discovery protocol expressly contemplates the designation of NCUA custodians. See Master Discovery Protocol § 8(c) ("NCUA and all Defendants shall use best efforts to agree on a set of search terms and relevant time periods that NCUA will employ to locate and gather the electronic documents of each credit union *and for NCUA* for all Actions.") (emphasis added); see also 4/2 Tr. at 41 (specifically contemplating that NCUA personnel will be subject to depositions). Finally, to whatever extent NCUA intends to assert a bank examiner or deliberative process privilege over certain categories of communications relevant to this case, that does not relieve NCUA of its obligation to search for such documents and to produce a log of any that it argues should be withheld.[3]

Credit Union Custodians. Defendants believe that there are functions and groups for all four credit unions that may be relevant but from which NCUA has identified no custodians. For example, NCUA sued over two dozen individuals from WesCorp for breaching their fiduciary duties in connection with WesCorp's investments in RMBS. These individuals are highly likely to have information relevant to the defenses in these cases, including notice and statute of limitations, but have not been designated as custodians by NCUA. Nor has NCUA designated fifteen of the individuals from U.S. Central to whom it apparently sent demand letters concerning U.S. Central's

---

[1] NCUA also improperly has refused to provide NCUA organizational charts in response to Judge Cote's order at the November 14, 2013 conference in the SDNY Actions.

[2] Nor is NCUA correct that all Defendants seek is to impute NCUA's knowledge to the credit unions. NCUA's files may contain discoverable information related to the causes of NCUA's alleged losses, as well as the *credit unions'* knowledge of potential claims and awareness of RMBS-related risks.

[3] As a substantive matter, Defendants disagree with NCUA's apparent intent to assert a blanket privilege at this early stage, and would request an opportunity to brief the issue more completely if the Courts deem the issue relevant to the scope of NCUA's obligation to identify document custodians.

Case 2:13-cv-00779-DOC-JCG   Document 179-2   Filed 05/20/14   Page 4 of 11   Page ID #:4379
Case 1:13-cv-06705-DLC   Document 109   Filed 04/18/14   Page 3 of 4

3                                                                                April 18, 2014

investment losses. In addition, NCUA has failed to designate custodians from U.S. Central's wholly-owned subsidiary, Charlie Mac LLC, which acquired loans (including loans that underlie at least one of the offerings at issue in these actions) and would likely have relevant information concerning, among other things, U.S. Central's knowledge of loan origination practices.[4] Defendants currently lack sufficient information regarding the credit unions that is necessary to identify individuals from the credit unions who should be designated as document custodians but expect to obtain additional relevant information through the course of document discovery. Accordingly, Defendants anticipate requesting that NCUA designate additional custodians from the credit unions after additional discovery and reserve all rights to do so.

Search Terms. Over Defendants' objection, NCUA is asking the Courts to enter a search term proposal that it provided to Defendants this afternoon and as to which it is fully aware that active consideration and discussion is still taking place. Indeed, NCUA itself views the proposal as non-final in that it does not account for various plaintiff-specific search terms proposed by Defendants, which NCUA told Defendants today that it is still considering. NCUA's proposed search terms contain several highly problematic proposals that would create enormous burdens on Defendants if they are implemented as proposed. Defendants request that the parties be afforded an additional two weeks to discuss the proposal and to narrow the scope of their disagreements before the Courts rule. If the Courts are inclined to consider the proposal NCUA has submitted, Defendants would request an opportunity to complete their review of the proposal and to provide a joint submission explaining their areas of concern and offering a counter-proposal.

Defendants do not have the space in this submission to recount the complete history of the parties' negotiations with respect to search terms, but note that they strongly disagree with NCUA's characterization of that history. Defendants have encountered repeated obstacles in attempting to engage NCUA in a discussion of search terms, including two instances in which NCUA restarted the process from scratch by disregarding proposals provided by Defendants and proposing entirely new search protocols instead of revising those provided by Defendants. This occurred first in January and most recently on March 21, when NCUA again provided a brand new proposal that ignored many of the burden issues Defendants had already raised, and introduced for the first time the premise that NCUA should not have to run any searches that Defendants themselves do not run, notwithstanding the fact that the parties are differently situated in fundamental ways with respect to issues of burden and relevance. After failing to dissuade NCUA or obtain any meaningful movement on the assortment of Defendant-specific burden issues that remained, Defendants submitted a joint proposal on April 16 that attempted to be as responsive as possible (on a coordinated basis) to NCUA's position that search terms should be reciprocal between Defendants and NCUA. Indeed, Defendants' proposal incorporated numerous terms that would presumptively be run across all parties' custodians, while also including plaintiff-specific searches – which NCUA's March 21 proposal itself contemplated – to account for the fact that the parties are differently situated. It is NCUA's partial response to that proposal sent to Defendants today that NCUA has submitted for consideration by the Courts. Given that discussions are still ongoing and no impasse has been reached, Defendants request the opportunity to continue negotiations.

---

[4] While NCUA has demanded that Defendants designate all members of relevant groups, NCUA has provided little or no explanation of its failure to designate all members of Southwest's "Credit Department," "Investments Department," and "Leadership Team," U.S. Central's "Asset / Liability and Research and Development Departments" and "Credit / Market Risk Department," and WesCorp's "Investments Department" and "Risk Assessment / Internal Audit Department." NCUA has likewise failed to explain its omission of any custodians from Southwest's "Finance Department," WesCorp's "Business Development & Marketing Department," "Finance & Accounting Department," "Leadership Team," and "Asset and Liability Committee," and U.S. Central's "Member Relations & Sales Department," "Communications Department," "Accounting & Finance Department" and "Executive Management Team."

4                                                                April 18, 2014

Very truly yours,

/s/ James P. Rouhandeh

James P. Rouhandeh

Cc:   Counsel of Record (via ECF)

<u>Electronic Filing</u>

KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.

SUMNER SQUARE

1615 M STREET, N.W.

SUITE 400

WASHINGTON, D.C. 20036-3209

———

(202) 326-7900

FACSIMILE:
(202) 326-7999

May 2, 2014

*Via ECF*

The Honorable Denise L. Cote
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

The Honorable John W. Lungstrum
The Honorable James P. O'Hara
United States District Court for the District of Kansas
500 State Avenue, Suite 517
Kansas City, KS 66101

The Honorable George H. Wu
United States District Court for the Central District of California
312 North Spring Street
Los Angeles, CA 90012-4701

   Re:  *NCUA v. Morgan Stanley & Co.*, No. 13-6705 (S.D.N.Y.) and related actions

must be reviewed for the bank examiner privilege. For comparison, Defendants have refused to run general terms not tied to the specific RMBS or originators at issue.

- **Plaintiff Search String #7, 8, 9, 10, 11** – NCUA modified portions of these search strings because they appeared facially overbroad. Defendants' proposals generate hits whenever the states Texas, Illinois, California, or Kansas are mentioned in the same document as "claim," "note," etc. Because the credit unions were located in those states, numerous documents contain state names in signatures and addresses, thus causing hits for many documents just because they contained the generic words "claim" and "note."[15]

- **Plaintiff Search String #12, 13, 15** – These terms appear to target specific documents. NCUA believes it would be more appropriate to discuss the production of these documents, to the extent they are relevant, in the context of specific document requests. To the extent Defendants seek communications about these documents (as they have asserted), these terms need some connection to the specific securities at issue for them to produce relevant information for Defendants' affirmative defenses. For example, Defendants seek all documents mentioning the Asset and Liability Committee at the credit unions, which had functions and roles beyond overseeing RMBS investments. NCUA has already agreed to run terms designed to capture documents regarding the specific securities at issue.

- **Plaintiff Search String #16, 17** – NCUA has already proposed reasonable terms targeting documents relating to Defendants' statute of limitations defenses (#3, 6, 7, 8, 9, 10, 11). These strings are far broader. They hit on combinations such as a Defendants' name and the general terms "class," "action," "claim." They also are not tied to the specific securities at issue, and thus, will not yield discoverable documents for the statute of limitations defense. Nor are these string necessary. Defendants already will receive any document mentioning the deal names or CUSIPs at issue, which will include any documents mentioning lawsuits in connection with those deal names (to the extent they are not privileged).

    **B.    NCUA as Agency**

These lawsuits involve the purchase of RMBS securities by four credit unions two to three years before NCUA first became conservator and liquidating agent for those credit unions. Therefore, NCUA has agreed to produce a large quantity of documents from all credit union employees who, based on NCUA's reasonable investigation, made purchase decisions and conducted relevant credit analysis regarding the securities at issue, as well as senior-level employees (including the chief investment officer) who made policy decisions regarding these securities.

Had the credit unions survived to bring these claims on their own, there would be no basis to seek discovery from NCUA as an agency regarding the credit unions' purchases of the RMBS Certificates or when the credit unions allegedly discovered the claims asserted in these actions, which are the focus of Defendants' requests for discovery in these cases. Discovery from NCUA as an agency is no more appropriate here simply because NCUA has brought the same lawsuits on behalf of failed credit unions that could not bring lawsuits themselves. As the Supreme Court has explained, NCUA "'steps into the shoes'" of the failed credit union and "'succeed[s] to [its] rights,

---

[15] As noted above, Defendants proposed some limitations on these searches at 7:34 p.m., and NCUA has not had a chance to consider those changes

Judges Cote, Lungstrum, O'Hara, and Wu
May 2, 2014
Page 18

titles, powers, and privileges.'" *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86 (1994) (describing and quoting 12 U.S.C. § 1821(d)(2)(A), an identically phrased statute that applies to the Federal Deposit Insurance Corporation ("FDIC")); *see* 12 U.S.C. § 1787(b)(2)(A) (same language).

**Damages:** In a resecuritization process known as the NCUA Guaranteed Notes ("NGN") program, NCUA participated in selling the RMBS certificates in 2010 and 2011, after the credit unions had failed. For this litigation, that participation is the only relevant act that occurred after conservatorship of the credit unions. The parties have agreed on an initial search protocol for NGN information that applies to NCUA and to Barclays, who was hired to assist with the NGN program.

**Other elements of the strict liability offenses:** Many defendants have asked NCUA to designate additional NCUA employees as custodians apart from the NGN program. NCUA has explained that NCUA employees are unlikely to have discoverable information because they were not responsible for purchasing or performing credit analyses on the RMBS at issue. NCUA merely brought these cases on behalf of the credit unions because those credit unions failed.

In their April 18 submission, Defendants provided four reasons why NCUA's documents would be relevant to this litigation. Each is unpersuasive.[16] *First*, Defendants assert that it would be "highly inequitable" to prohibit discovery from "the entity suing them." ECF No. 109 at 2. That is a fundamental misconception. As NCUA has repeatedly explained, these claims are brought by the credit unions, and there is no dispute that Defendants will receive broad discovery from the credit unions that are "the entit[ies] suing them." The only role of NCUA in this litigation is to bring the claims as liquidating agent for the failed credit unions. *O'Melveny & Myers*, 512 U.S. at 86 (in bringing suit as liquidating agent, NCUA "'steps into the shoes'" of the failed credit union). Defendants suggest that NCUA was involved in the "review of the credit unions' RMBS holdings and evaluations of their potential claims," but make no effort to explain how these *ex-post* legal evaluations and work product could be discoverable.

*Second*, Defendants claimed that NCUA "actively monitored the credit unions," and that such regulatory oversight would be relevant to this litigation on the following issues: (1) "the quality of the mortgages underlying the RMBS at issue"; (2) the "credit unions' awareness of RMBS-related risks [and] their knowledge of potential claims"; and (3) "the cause of the [credit unions'] alleged losses." That is legally and factually incorrect.

As for the first two issues, Defendants will receive documents from each credit union employee responsible for purchasing and performing credit analyses on the RMBS at issue, including any non-privileged communications with NCUA. Defendants fail to explain why or how NCUA is likely to have additional discoverable information. Indeed, it is undisputed that NCUA did not participate in the purchases of the RMBS at issue in this litigation. Furthermore, Defendants did not (and cannot) argue that NCUA's own knowledge is relevant to this litigation. *See NCUA v. Fisher*, 653 F. Supp. 349, 350 (E.D. Mo. 1986) (holding that NCUA's knowledge cannot be imputed to credit unions as a matter of law). Thus, at best, Defendants hope to find internal NCUA documents (not shared with the credit unions) that discuss what the credit unions knew. For those documents

---

[16] Defendants made several of these arguments for the first time in their April 18th submission. To the extent that Defendants rely on new arguments in their May 2nd submission, NCUA respectfully requests an opportunity to respond.

Judges Cote, Lungstrum, O'Hara, and Wu
May 2, 2014
Page 19

to be relevant to the strict liability claims asserted in these actions by the liquidated credit unions, they must both (1) reflect the credit unions' actual knowledge and (2) pertain to the RMBS specifically at issue in this case, not RMBS generally. *See supra* note 11. It would be a pure fishing expedition to search an agency's files for such documents. By Defendants' logic, the documents of one Defendant need to be searched on the off chance that they discuss what another Defendant knew or should have known.

As to the third issue (the cause of the RMBS losses), Defendants do not explain what documents NCUA might have that could be relevant. Loss causation is an objective issue.[17] This is a subject of expert testimony, and such experts almost certainly will rely on objective market information to determine the cause of the losses. Any opinion that NCUA employees may have expressed as to the cause of the losses is irrelevant. Indeed, any information that NCUA may have pertaining to the cause of the losses would be no more probative than the information possessed by innumerable sophisticated investors, advisors, and regulators. *Cf. NCUA v. Morgan Stanley & Co.*, 2014 WL 241739, at *14 n.14 (S.D.N.Y. Jan. 22, 2014) ("From the perspective of the Credit Unions, the NCUA reports regarding the mortgage industry were no different from reports authored by any other organization."). If NCUA's thoughts about loss causation are discoverable, then so too are those from numerous analysts and individuals from each Defendant regarding the failures in the RMBS market, the housing downturn, and the recession in general. Defendants would need to expand greatly their own search protocols to include their proprietary trading groups, their investment advisory groups, and their market research groups, among others – which, of course, they are not willing to do.

*Third*, Defendants claim they are entitled to communications from former credit union employees if NCUA employed or engaged them following conservatorship. Again, Defendants do not explain why such communications from dates long after the purchases of the RMBS at issue would be relevant. If they were relevant, Defendants would be required to produce all communications from their own employees for similar periods of time. But Defendants generally have refused to produce information after late 2009 (and sometimes earlier). Moreover, the parties have agreed that the relevant end date for the credit union searches is the date of conservatorship for each liquidated credit union. Defendants offer no reason why an expanded date range is somehow appropriate for NCUA, which had no role in the purchases of the securities at issue.

*Fourth*, Defendants incorrectly suggest that § 8(c) of the Master Discovery Protocol's ("MDP") supports their position. The MDP provides no guidance regarding the appropriate scope of discovery from NCUA, as this issue was not before the Court.

---

[17] *See Cromer Fin. Ltd. v. Berger*, 2003 WL 21436164, at *7 (S.D.N.Y. June 23, 2003) (Cote, J.) ("'[T]he issue of loss causation is an objective one."); *see also Nathenson v. Zonagen Inc.*, 267 F.3d 400, 413 (5th Cir. 2001) (contrasting loss causation – which "refers to a direct causal link between the misstatement and the claimant's economic loss" – with the "subjective" element of reliance) (internal quotations omitted).

Respectfully submitted,

/s/  David C. Frederick

| | |
|---|---|
| David C. Frederick | Erik Haas |
| Wan J. Kim | Peter W. Tomlinson |
| Gregory G. Rapawy | Philip R. Forlenza |
| Andrew C. Shen | Henry J. Ricardo |
| KELLOGG, HUBER, HANSEN, TODD, | PATTERSON BELKNAP WEBB & TYLER LLP |
|   EVANS & FIGEL, P.L.L.C. | 1133 Avenue of the Americas |
| Sumner Square | New York, NY 10036 |
| 1615 M Street, N.W., Suite 400 | Tel:  (212) 336-2000 |
| Washington, D.C. 20036 | Fax:  (212) 336-2222 |
| Tel:  (202) 326-7900 | ehaas@pbwt.com |
| Fax:  (202) 326-7999 | pwtomlinson@pbwt.com |
| dfrederick@khhte.com | prforlenza@pbwt.com |
| wkim@khhte.com | hjricardo@pbwt.com |
| grapawy@khhte.com | |
| ashen@khhte.com | David H. Wollmuth |
| | Frederick R. Kessler |
| George A. Zelcs | Steven S. Fitzgerald |
| KOREIN TILLERY LLC | Ryan A. Kane |
| 205 North Michigan Avenue, Suite 1950 | WOLLMUTH MAHER & DEUTSCH LLP |
| Chicago, IL 60601 | 500 Fifth Avenue, 12th Floor |
| Tel:  (312) 641-9750 | New York, NY 10110 |
| Fax:  (312) 641-9751 | Tel:  (212) 382-3300 |
| gzelcs@koreintillery.com | Fax:  (212) 382-0050 |
| | dwollmuth@wmd-law.com |
| Stephen M. Tillery | fkessler@wmd-law.com |
| Greg G. Gutzler | sfitzgerald@wmd-law.com |
| Robert L. King | rkane@wmd-law.com |
| KOREIN TILLERY LLC | |
| 505 North Seventh Street, Suite 3600 | |
| St. Louis, MO 63101 | |
| Tel:  (314) 241-4844 | |
| Fax:  (314) 241-3525 | |
| stillery@koreintillery.com | |
| ggutzler@koreintillery.com | |
| rking@koreintillery.com | |

*Attorneys for Plaintiff National Credit Union Administration Board*

Judges Cote, Lungstrum, O'Hara, and Wu
May 2, 2014
Page 21

cc:     Counsel of Record (via ECF)

       Re:     *NCUA v. RBS & Wachovia*, Nos. 12-cv-2340 & 11-cv-2649
              *NCUA v. Credit Suisse Securities (USA) LLC*, No. 12-cv-2648
              *NCUA v. UBS Securities, LLC*, No. 12-cv-2591
              *NCUA v. Morgan Stanley & Co.*, No. 13-cv-2418

       Re:     *NCUA v. Goldman, Sachs & Co.*, No. 11-cv-6521
              *NCUA v. RBS Securities, LLC*, No. 11-cv-5887