O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　Plaintiff,<br><br>　　vs.<br><br>MCGRAW-HILL COMPANIES, INC.<br>and STANDARD & POOR'S FINANCIAL<br>SERVICES LLC,<br><br>　　Defendants. | Case No.: CV 13-0779-DOC (JCGx)<br><br><br>ORDER RE: MOTIONS TO COMPEL<br>[201] [202] [204] [206] [207] [208] |

## I.　　　　BACKGROUND

As the Court previously explained, "[t]his is a case about credit ratings—how they are created, whose interests they serve, and how they may or may not have been manipulated during the period leading up to this country's financial meltdown."  Order, July 16, 2013 (Dkt.

1   34).  The Government alleges that S&P deliberately misrepresented the integrity of its ratings

2   in pursuit of financial gain.  *See generally* Compl. (Dkt. 1).

3          Since the Court denied S&P's motion to dismiss, the parties have been engaging in

4   discovery.  S&P has repeatedly insisted that both the Government and non-parties have

5   "stiffed" it on its discovery requests.  *See, e.g.*, Hearing Tr. at 82:21–83:14 (Mar. 11, 2014)

6   (Dkt. 148).  On April 15, 2014, the Court denied S&P's Motion for Phased Trials and partially

7   granted its Motion to Compel Discovery from the Government.  Order, April 15, 2014 (Dkt.

8   166).  To break the discovery logjam, the Court ordered S&P to "file motions to compel against

9   the five largest third parties with respect to the presently outstanding Rule 45 subpoenas."

10  Order, May 28, 2014 (Dkt. 186).

11         Now, S&P moves to compel production from six non-parties: (1) RBS Securities Inc.

12  (Dkt. 201); (2) the National Credit Union Administration (Dkt. 202); (3) Bank of America and

13  Merrill Lynch (Dkt. 204); (4) Countrywide Securities Corporation (Dkt. 206); (5) Deutsche

14  Bank Securities, Inc. (Dkt. 207); and (6) Citigroup Global Markets, Inc. and Citibank, N.A.

15  (Dkt. 208).

16  **II.    ANALYSIS**

17      **A. Motions to Compel**

18         The Court heard argument during a day-long session on July 29, 2014.  By the end of the

19  session, S&P and each of the non-parties represented that all disputes—except those related to

20  costs—had been resolved.  Therefore, the Court issues no ruling as to the scope of any

21  discovery request.

22      **B. Cost-Shifting Under Rule 45**

23         All of the non-parties have objected to the subpoenas and request that the Court order

24  S&P to bear any significant expenses related to production.

25         If a court orders a non-party to comply with a subpoena over that non-party's objection,

26  then the court must shift any "significant expenses resulting from compliance" to the requesting

27  party. Fed. R. Civ. P. 45(d)(2)(B)(ii); *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th

28  Cir. 2013).  "[O]nly two considerations are relevant" to the cost-shifting inquiry: "(1) whether

1    the subpoena imposes expenses on the non-party, and (2) whether those expenses are

2    'significant.'" *Legal Voice*, 738 F.3d at 1184 (adopting the rule set out by *Linder v. Calero-*

3    *Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001)).  A court "must order the party seeking

4    discovery to bear at least enough of the cost of compliance to render the remainder 'non-

5    significant.'"  *Id.* (citing *Linder*, 251 F.3d at 182).

6                  **1.      Multi-Factor Analysis**

7          Historically, there are at least seven factors that courts have considered when

8    determining whether to shift costs: the non-party's interest, if any, in the outcome of the case,

9    *Pollitt v. Mobay Chem. Corp.*, 95 F.R.D. 101, 105 (S.D. Ohio 1982); the relative ability of the

10   parties to bear the costs, *id.*; the public importance of the litigation, *United States v. IBM Corp.*,

11   62 F.R.D. 526, 528–29 (S.D.N.Y. 1974); the scope of discovery, *United States v. CBS, Inc.*,

12   666 F.2d 364, 371 n.9 (9th Cir. 1982); the invasiveness of the request, *id.*; the extent to which

13   the producing party must separate responsive information from privileged or irrelevant

14   material, *id.*; and the reasonableness of the costs of production, *id.*

15         These factors predate the 1991 amendment of Rule 45.  At least one court has remarked

16   that "there is no indication that [the drafters of the new Rule 45] intended to overrule prior Rule

17   45 case law, under which a non-party can be required to bear some or all of its expenses where

18   the equities of a particular case demand it."  *In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C.

19   1992).  Several district courts within the Ninth Circuit concur, holding that these seven factors

20   survive the 1991 amendment.  *See, e.g.*, *CallWave Communs., Inc. v. WaveMarket, Inc.*, No. C

21   14-80112, 2014 U.S. Dist. LEXIS 88073, at *10–11 (N.D. Cal. June 26, 2014).

22         However, the Court doubts that these factors survive the 1991 amendment.  First and

23   foremost, several of the factors cannot be squared with the Ninth Circuit's plain holding that,

24   "the *only question* before the court in considering whether to shift costs is whether the

25   subpoena imposes *significant expense* on the non-party."  *Legal Voice*, 738 F.3d at 1184

26   (emphasis added).  Many of the factors, like the public importance of the litigation, do not bear

27   on the question of whether "the subpoena imposes significant expense on the non-party."  *See*

28

1    *id.* Absent a strained definition of "significant," for example, a non-party's expenses are not

2    made less significant by the fact that the litigation is important to the general public.

3        Second, the pre-1991 Rule 45 did not contain the phrase "significant expense" at all.  It

4    provided:

5        A subpoena may also command the person to whom it is directed to produce the

6        books, papers, documents, or tangible things designated therein; but the court,

7        upon motion made promptly and in any event at or before the time specified in the

8        subpoena for compliance therewith, *may* (1) quash or modify the subpoena if it is

9        unreasonable and oppressive or (2) *condition denial of the motion upon the*

10       *advancement by the person in whose behalf the subpoena is issued of the*

11       *reasonable cost of producing the books, papers, documents, or tangible things.*

12   Fed. R. Civ. P. 45(b) (March 1, 1990) (emphasis added).  Given that, now, the "only question"

13   is whether the subpoena imposes a "significant expense" and the old Rule 45 made no mention

14   of a "significant expense," the seven factors developed under the old Rule 45 are only

15   marginally instructive, if at all.

16       Third, all seven factors were developed to guide the court's exercise of discretion, which

17   was eliminated by the 1991 amendment.  The pre-1991 Rule 45 provided that courts "*may . . .*

18   condition denial of [a motion to quash] upon the advancement . . . of the reasonable cost of

19   [production]." *Id.* (emphasis added).  Each factor was posited and considered on the premise

20   that the courts were determining whether to exercise their discretion. *See CBS*, 666 F.2d at 371

21   n.9 (identifying four factors that courts have considered when applying the "discretionary

22   mechanism for awarding costs"); *Pollitt*, 95 F.R.D. at 105 ("Pursuant to the discretion granted

23   by [R]ule 45(b), this Court must be sensitive to the potential burden imposed on a non-party

24   during discovery, by balancing [factors]."); *IBM*, 62 F.R.D. at 528–29 (considering factors "[i]n

25   exercising [its] discretion").  Four of the factors were identified in *CBS*, where the Ninth Circuit

26   "decline[d] to curtail district courts' discretion over the discovery process by adopting formal

27   guidelines favoring nonparty reimbursement[.]"  666 F.2d at 371.  The 1991 amendment,

28   however, did exactly that. *See Legal Voice*, 738 F.3d at 1184; *Linder*, 251 F.3d at 182; *Exxon*

1    *Valdez*, 142 F.R.D. at 383.  The factors provided guidance for courts to exercise discretion that

2    they no longer have.

3         Fourth, Rule 45 was amended to make cost-shifting a matter of course.  Even prior to the

4    1991 amendment, the Ninth Circuit noted that, "[n]onparty witnesses are powerless to control

5    the scope of litigation and discovery, and should not be forced to subsidize an unreasonable

6    share of the costs of a litigation to which they are not a party."  *CBS*, 666 F.2d at 371.  The

7    purpose of the 1991 amendment was to, in part, "clarify and enlarge the protections afforded

8    persons who are required to assist the court by giving information or evidence[.]"  Fed. R. Civ.

9    P. 45 advisory committee's note to the 1991 amend.  The drafters intended for costs to be more

10   routinely shifted, i.e. not subject to equitable balancing by the courts, in order to avoid

11   burdening non-parties who are compelled to "assist the court by giving information or

12   evidence."  *See id.*  The decision in *Legal Voice* simply gave effect to the amendment's

13   purpose.

14        Someone must pay the costs of production—the issue is whether those costs should fall

15   on a party to the suit or a non-party who is powerless to control the scope of discovery.  The

16   Ninth Circuit has clarified that the former bears the burden, to the extent that the expenses are

17   significant.  *See Legal Voice*, 738 F.3d at 1184 (emphasis added).  This is both fair and

18   efficient, building in an incentive for the requesting party to keep requests as narrow as

19   possible.  Consequently, the multi-factor analysis—which helped courts decide whether to shift

20   costs—is now obsolete.

21                    **2.      Two-Step Test for Shifting Costs**

22        "[O]nly two considerations are relevant" to the cost-shifting inquiry: "(1) whether the

23   subpoena imposes expenses on the non-party, and (2) whether those expenses are 'significant.'"

24   *Legal Voice*, 738 F.3d at 1184.  The shifting of significant expenses is mandatory, *id.*, but the

25   analysis is not mechanical; neither the Federal Rules nor the Ninth Circuit has defined

26   "significant expenses," which is a term that readily lends itself to myriad interpretations

27   depending on the circumstances of a particular case.

28

1    First, courts must determine what counts as an "expense." *See id.*  The touchstone is

2  whether the expense "result[s] from compliance" with the court's order compelling production.

3  *See* Fed. R. Civ. P. 45(d)(2)(B)(ii).  Without knowing what the non-parties intend to claim, it

4  would be premature for the Court to catalogue the types of expenses that fall on either side of

5  the line between expenses and non-expenses.  But, one thing is certain: an unreasonably

6  incurred expense is not an expense "resulting from compliance." *See Michael Wilson &*

7  *Partners, Ltd. v. Sokol Holdings, Inc. (In re Michael Wilson & Partners, Ltd.)*, 520 Fed. Appx.

8  736, 741 (10th Cir. 2013) (affirming the shifting of only half the costs where the non-parties

9  "assume[d], rather than demonstrate[d], that all of their requested attorney's fees are

10  reasonable").  In addition, the Court is skeptical that "services provided by an attorney to a non-

11  party for the non-party's sole benefit and peace of mind" can be counted as "expenses." *See*

12  *O'Chesky v. Koehler (In re Am. Hous. Found.)*, No. 12-cv-00222, 2013 Bankr. LEXIS 2268, at

13  *13 (N.D. Tex. June 4, 2013).  In other words, Rule 45 does not cut a blank check to non-

14  parties—unnecessary or unduly expensive services do not "result from compliance" and,

15  therefore, do not count as "expenses."

16    Second, courts must determine "whether those expenses are 'significant.'" *Linder*, 251

17  F.3d at 182; *Legal Voice*, 738 F.3d at 1184.  Courts should consider the ability of the producing

18  non-party to bear the costs of production.  The Ninth Circuit endorsed the D.C. Circuit's

19  analysis in *Linder*, which, in turn, noted that "a court might take into account the financial

20  ability of the non-party to bear some costs," 251 F.3d at 182.  *See Legal Voice*, 738 F.3d at

21  1184 ("We agree with the D.C. Circuit's analysis of the amended rule[.]").  This consideration

22  makes practical sense—an expense might be "significant," for instance, to a small family-run

23  business, while being "insignificant" to a global financial institution.

24    The Court looks to other decisions for benchmarks as to what expenses are "significant"

25  for certain types of non-parties.  The D.C. Circuit "had no trouble concluding that" estimated

26  expenses of nearly $200,000 were significant for the Defense Department, the State

27  Department, and the CIA.  *See Linder*, 251 F.3d at 179–80, 182–83.  The Ninth Circuit had "no

28  trouble concluding that $20,000 is 'significant'" for a non-profit legal advocacy group.  *See*

1   *Legal Voice*, 738 F.3d at 1181, 1185. In a case cited by both the Ninth and D.C. Circuits, a

2   district court held that $9,000 might be "significant" for two attorneys. *See Williams v. City of*

3   *Dallas*, 178 F.R.D. 103, 113–14 (N.D. Tex. 1998). This range provides guidance to courts to

4   determine the amount of expenses that is "significant" for a particular non-party.

5          It is highly probable that some portion of the costs of production will shift to S&P.[1]

6   However, at this point, the Court can only speculate as to the precise amount. Therefore, after

7   documents have been produced and a meaningful record has been established, the Court will

8   review motions for cost-shifting from the non-parties, if such motions are in fact filed. To

9   perhaps underscore the obvious, it behooves both S&P and the non-parties to reach an

10  agreement on their own, bearing in mind the mandate of Rule 45 and *Legal Voice* and the non-

11  parties' burden to demonstrate that the costs are reasonable and "resulted from compliance"

12  with the Court's order. *See Michael Wilson & Partners*, 520 Fed. Appx. at 741 (affirming the

13  shifting of only half the costs where the non-parties "assume[d], rather than demonstrate[d],

14  that all of their requested attorney's fees are reasonable"). The Court expects that each non-

15  party's account of its claimed expenses will be specific and lean.

16  **III.    DISPOSITION**

17         Within fifteen days of this Order, S&P and each of the non-parties shall meet and confer

18  to discuss whether the scope of the discovery requests should be modified in any way. All

19  production shall be completed within thirty days after that fifteen-day period. In other words,

20  the non-parties shall complete all production pursuant to the pending subpoenas, or

21  modifications thereof, within forty-five days of this Order. At that point, the Court will

22  entertain motions for (1) sanctions brought by S&P against any non-parties who fail to fully

23  comply with the Court's Order and (2) cost-shifting brought by the non-parties, which must

24  _____

25  [1] In addition, the Court finds that even under the multi-factor analysis, S&P should bear a portion of the costs of production.
    *See CallWave*, 2014 U.S. Dist. LEXIS 88073, at *10–11. Admittedly, this is a case of notable public importance, inquiring

26  into who is to blame for a financial crisis that wreaked terrible havoc. *See IBM*, 62 F.R.D. at 528–29. It is also true that
    these are not purely disinterested non-parties, considered by many to deserve the lion's share of the blame. *See Pollitt*, 95

27  F.R.D. at 105; *In re First Am. Corp.*, 184 F.R.D. 234, 242 (S.D.N.Y. 1998). However, the scope of discovery is incredibly
    broad in all of these instances, obliging the non-parties to produce tens of millions of pages of documents; the requests are

28  incredibly invasive, requesting internal communications from all of these institutions; and, consequently, the producing non-
    parties will need to devote substantial resources to sort responsive material from privileged or irrelevant material. *See CBS*,
    666 F.2d at 371 n.9.

include a careful accounting of all expenses, how they "resulted from compliance," and an explanation as to their reasonableness.

DATED:        August 1, 2014

David O. Carter

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE