1

1

2

3                    **UNITED STATES DISTRICT COURT**

4                   **CENTRAL DISTRICT OF CALIFORNIA**

5            **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

6                      – – – – – – –

7    UNITED STATES OF AMERICA,        )
                                      )
8             Plaintiff,              )
                                      )
9        vs.                          )   No. 2:13-CV-0779-DOC
                                      )
10   McGRAW-HILL COMPANIES, INC.,     )
     and STANDARD & POOR'S FINANCIAL  )
11   SERVICES, LLC,                   )
                                      )
12            Defendants.             )
     _____ )

13

14

15                       (Volume 2)

16            REPORTER'S TRANSCRIPT OF PROCEEDINGS

17                    Hearing on Motions

18                   Santa Ana, California

19                  Tuesday, July 29, 2014

20

21   SHARON SEFFENS
     Federal Official Court Reporter
22   United States District Court
     411 West 4th Street, Room 1-053
23   Santa Ana, California 92701
     (714) 543-0870

24

25

1    **APPEARANCES:**

2

   FOR THE UNITED STATES OF AMERICA:

3

4        OFFICE OF UNITED STATES ATTORNEY
         BY:  George S. Cardona
5            Chief Assistant United States Attorney
         312 North Spring Street
6        12th Floor
         Los Angeles, California 90012-4700
7        213-894-2434

8

9        OFFICE OF UNITED STATES ATTORNEY
         Civil Division - Federal Building
         BY:  Anoiel Khorshid
10           Assistant United States Attorney
         300 North Los Angeles Street
11       Room 7616
         Los Angeles, California 90012
12       213-894-6086

13

14

  FOR DEFENDANT McGRAW-HILL COMPANIES, INC. and STANDARD &
15   POOR'S FINANCIAL SERVICES LLC:

16

17       KEKER AND VAN NEST LLP
         BY:  John W. Keker
18           Attorney at Law
         710 Sansome Street
         San Francisco, California 94111
19       415-391-5400

20

21       KEKER AND VAN NEST LLP
         BY:  Steven K. Taylor
             Attorney at Law
22       633 Battery Street
         San Francisco, California 94111
23       415-391-5400

24

25

**APPEARANCES (Continued):**

    KEKER AND VAN NEST LLP
    BY:  Michelle Ybarra
         Attorney at Law
    633 Battery Street
    San Francisco, California 94111
    415-391-5400


    KEKER AND VAN NEST LLP
    BY:  Paven Malhotra
         Attorney at Law
    710 Sansome Street
    San Francisco, California 94111
    415-391-5400


    KELLER RACKAUCKAS UMBERG ZIPSER LLP
    BY:  Jennifer L. Keller
         Attorney at Law
    18300 Von Karman Avenue
    Suite 930
    Irvine, California 92612
    949-476-8700


    CAHILL GORDON AND REINDEL LLP
    BY:  Floyd Abrams
         Attorney at Law
    80 Pine Street
    New York, New York 10005
    202-862-8900


    CAHILL GORDON AND REINDEL LLP
    BY:  Brian T. Markley
         Attorney at Law
    80 Pine Street
    New York, New York 10005
    202-701-3000

1    **APPEARANCES (Continued):**

2

ALSO PRESENT:

3

 FOR NON-PARTY CITIGROUP GLOBAL MARKETS, INC., and
4    CITBANK, NA:

5        PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
         BY:  Susanna M. Buergel
6            Attorney at Law
         1285 Avenue of the Americas
7        New York, New York 10019
         212-373-3553

8

9
     FOR NON-PARTY NATIONAL CREDIT UNION ADMINISTRATION (NCUA):
10
         KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, PLLC
11       BY:  Andrew M. Hetherington
             Attorney at Law
12       1615 M Street, N.W.
         Suite 400
13       Washington, D.C. 20036
         202-326-7900

14

15    FOR NON-PARTY DEUTSCHE BANK SECURITIES, INC.:

16       PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
         BY:  Jessica S. Carey
17           Attorney at Law
         1285 Avenue of the Americas
18       New York, New York 10019
         212-373-3566

19

20    FOR NON-PARTY BANK OF AMERICA and MERRILL LYNCH:

21       CLEARY GOTTLIEB STEEN & HAMILTON LLP
         BY:  Antonio M. Pozos
22           Attorney at Law
         2000 Pennsylvania Avenue, N.W.
23       Washginton, D.C. 20006
         202-974-1500

24

25

1    **APPEARANCES (Continued):**

2    FOR NON-PARTY COUNTRYWIDE SECURITIES CORPORATION:

3        REEDSMITH LLP
         BY:  Michael Garabed
4            Attorney at Law
         355 South Grand Avenue
5        Suite 2900
         Los Angeles, California 90071
6        213-457-8086

7

     FOR NON-PARTY RBS SECURITIES, INC.
8
         WILMER CUTLER PICKERING HALE AND DORR LLP
9        BY:  Theresa Titolo
             Attorney at Law
10       1875 Pennsylvania Avenue, N.W.
         Washington, D.C. 20006
11       202-663-6527

12
         WILMER CUTLER PICKERING HALD AND DOOR LLP
13       BY:  Allyson Fortier
             Attorney at Law
14       350 South Grand Avenue
         Suite 2100
15       Los Angeles, California 90071
         213-443-5307
16       allyson.fortier@wilmerhale.com

17
         WILMER CUTLER PICKERING HALE AND DOOR LLP
18       BY:  Michael Mugmon
             Attorney at Law
19       950 Page Mill Road
         Palo Alto, CA 93404
20       650-858-6103
         michael.mugmon@wilmerhale.com

21

22

23

24

25

6

SANTA ANA, CALIFORNIA; TUESDAY, JULY 29, 2014; 12:06 P.M.

11:48   2          (Vol. 1 reported by Debbie Gale.)

12:06   3          THE COURT:  Thank you for your courtesy.  I hope

12:06   4   that was enough time for you.  The next person to address

12:06   5   the Court.  And once again, I know you but the record

12:06   6   doesn't each time, so reintroduce yourself.

12:06   7          MS. CAREY:  Yes, Your Honor.  Jessica Carey from

12:06   8   Paul Weiss for Deutsche Bank Securities, Inc.

12:06   9          Your Honor, I just wanted to comment briefly.

12:06  10   First of all, we agree with the arguments that have already

12:06  11   been made by counsel for Bank of America and are fully

12:06  12   supportive of cost shifting here and argue for that in our

12:06  13   own papers.  We do think that cost shifting here is

12:06  14   mandatory under Ninth Circuit law that was cited by counsel

12:06  15   for Bank of America, and the shifting needs to occur so as

12:07  16   to make compliance by nonparties not significant.

12:07  17          So, Your Honor, just to respond to a couple of

12:07  18   points that were made by counsel for S&P, there are -- I

12:07  19   think there was a bit of confusion about what actually we

12:07  20   are seeking to shift, so the documents that I referred to

12:07  21   earlier today, the upwards of 50 million pages of documents

12:07  22   that have been produced to the government, we're not seeking

12:07  23   any costs associated with those productions.  That ship has

12:07  24   sailed.  Those costs have been incurred, and we are not

12:07  25   seeking to make S&P reimburse us for those costs.

12:07  1        THE COURT:  I was going to get back to that with

12:07  2   other counsel in just a moment.  Let me repeat that back to

12:07  3   you.

12:07  4        You already produced these documents to the

12:07  5   government; didn't you?

12:07  6        MS. CAREY:  We have produced some large quantity

12:07  7   of documents, but there are other documents that S&P is

12:07  8   requesting that we make available to it.  That is that

12:07  9   subsequent production that will need to be made.

12:08  10       THE COURT:  Let me come back and say it a

12:08  11  different way.  I just want to focus on the 15 million

12:08  12  documents that you produced -- or pages.

12:08  13       MS. CAREY:  Correct.  Pages.

12:08  14       THE COURT:  Pages, not documents.

12:08  15       MS. CAREY:  Correct.

12:08  16       THE COURT:  I don't want to address for a moment

12:08  17  the documents and pages in contention in the future that you

12:08  18  are seeking the cost shift for.  There's a difference

12:08  19  between the argument, Judge, we've already produced them, so

12:08  20  we're not requesting cost -- that's water under the

12:08  21  bridge -- versus we have already produced them and we also

12:08  22  produced them to the government.  So we will start again.

12:08  23  Of these 50 million pages, were these previously produced

12:08  24  and given to the government?

12:08  25       MS. CAREY:  Yes, Your Honor.

12:08  1          THE COURT:  Okay.  So if there was a cost shift,

12:08  2    if I accepted your argument, a strong argument would be if

12:09  3    these have already been given to the government and S&P has

12:09  4    to bear the cost, they shouldn't have to bear the cost of

12:09  5    documents already produced to the government.

12:09  6          MS. CAREY:  Yes, Your Honor.

12:09  7          THE COURT:  Okay.  Fair enough.

12:09  8          MS. CAREY:  Yes, Your Honor.

12:09  9          THE COURT:  Now, what that also does is place S&P

12:09  10   in the position of going back very carefully and going

12:09  11   through their document requests and not making certain that

12:09  12   they're overburdened or duplicative, which is a strain on

12:09  13   the bank, of course.

12:09  14         MS. CAREY:  Yes, Your Honor.

12:09  15         THE COURT:  Okay.  Please continue.

12:09  16         MS. CAREY:  Your Honor, I wanted to respond also

12:09  17   to this concept that has been, I guess, discussed in the

12:09  18   papers and in the complaint in this action but that certain

12:09  19   banks were victims of S&P, that they incurred losses and it

12:09  20   is those losses that the government is suing on.  And as it

12:10  21   pertains specifically to Deutsche Bank, to DBSI, we don't

12:10  22   understand the basis and there hasn't been an allegation at

12:10  23   least in S&P's papers that Deutsche Bank was a, quote,

12:10  24   unquote, victim here.

12:10  25         The discovery that's been sought from us largely

12:10    1    is in connection with what Deutsche Bank as a market

12:10    2    participant understood about S&P and its ratings and its own

12:10    3    structuring and underwriting of products, of mortgage

12:10    4    products during this relevant time period.

12:10    5         So as it goes to the equitable considerations,

12:10    6    Your Honor has already referenced the seven equitable

12:10    7    considerations that Courts have discussed in this context.

12:10    8    Interest in the outcome we think again as it pertains to

12:10    9    Deutsche Bank is not -- we are struggling to see the

12:10   10    interest in the outcome on behalf of our client.

12:10   11         Your Honor, Mr. Keker didn't address some of the

12:11   12    other factors that I think comprise the seven equitable

12:11   13    factors that are sometimes discussed, one of them being

12:11   14    scope of discovery, another being the need to review

12:11   15    documents for privilege, the invasiveness of the request,

12:11   16    and the reasonable costs of the production.  I just want to

12:11   17    make a couple of comments about those factors.

12:11   18         THE COURT:  Let me have a conversation with you

12:11   19    about that also, so you have plenty of time.  I heard the

12:11   20    fallback argument by Mr. Keker, and that was don't shift the

12:11   21    cost; but if you do, there are certain costs that shouldn't

12:11   22    be incurred.  One of those would be starting with attorney's

12:11   23    fees and then the argument that New York or Washington

12:11   24    attorneys charged a greater amount.  I guess the West Coast

12:11   25    has to catch up, so -- I am just joking with you.

12:11  1      Why isn't this an associate -- if I did incur

12:12  2  costs -- and I will ask this to Mr. Keker just to consider

12:12  3  in your rebuttal argument -- why wouldn't I put those as

12:12  4  associate rates, and why would I be paying $800 or $900 an

12:12  5  hour?  So that's the first question.

12:12  6      Number two, why would I necessarily allow the

12:12  7  banks to charge for going through privilege logs, for

12:12  8  instance?  Why would I allow attorney time?  In other words,

12:12  9  reasonable means reasonable, and from my perspective it may

12:12 10  not be reasonable from a firm's perspective.  The bank may

12:12 11  come back and say, gee, we had to go X amount of attorney

12:12 12  time; we had to go through privilege logs.  I think my

12:13 13  tentative response would be that's your choice.  If I do

12:13 14  cost shift, reasonable might not include those.  So in your

12:13 15  argument I am forewarning you to please address that.

12:13 16      MS. CAREY:  Your Honor, I'd be happy to.  So I

12:13 17  think again with the standard being that cost shifting must

12:13 18  occur so as to make the compliance not significant, when you

12:13 19  look at the breakdown -- and, Your Honor, we provided a

12:13 20  breakdown of how we thought the costs would shake out under

12:13 21  different scenarios in our papers, those scenarios having

12:13 22  shifted somewhat since we have agreed to certain compromises

12:13 23  that aren't reflected in our papers but just as sort of a

12:13 24  ballpark.

12:13 25      The component that is the largest component of the

12:13  1   costs associated with this nonparty subpoena compliance

12:13  2   would be attorney time spent reviewing documents.  Speaking

12:13  3   on behalf of Deutsche Bank, in this age of litigation

12:13  4   against banks we have become -- I think Deutsche Bank has

12:14  5   become quite sophisticated in making production costs

12:14  6   efficient.

12:14  7          THE COURT:  Let's balance that out for a moment.

12:14  8   Equitably Courts need to be concerned by a defendant making,

12:14  9   you know, voluminous requests that may be duplicative -- and

12:14  10  I'm not insinuating that that's occurred here, but that's a

12:14  11  policy that is spoken to on many occasions.

12:14  12         But we have to be equally respectful and concerned

12:14  13  about what we see in terms of privilege logs.  Many of those

12:14  14  are spurious, and quite frankly -- well, I will just leave

12:14  15  it there.

12:14  16         MS. CAREY:  Sure, Your Honor.

12:14  17         THE COURT:  So when I balance the two of those,

12:14  18  you need to push back very hard in our discussion right now

12:14  19  about privilege logs and why I am going to give attorney

12:14  20  hours for that.

12:14  21         MS. CAREY:  Your Honor, just to, I guess, add one

12:14  22  more point that I think is relevant to this and then I will

12:15  23  address the point about privilege logs.  The attorney review

12:15  24  time, the way that that review would be conducted from my

12:15  25  client is that there are reviewers offshore who conduct a

| | | |
|---|---|---|
| 12:15 | 1 | first-level pass of all of the documents, the e-mail |
| 12:15 | 2 | communications that would be produced. |
| 12:15 | 3 | THE COURT: Offshore? |
| 12:15 | 4 | MS. CAREY: Correct. There's a vendor, yes, in |
| 12:15 | 5 | India where, to keep costs down, all the documents would be |
| 12:15 | 6 | first-level reviewed by reviewers in another jurisdiction |
| 12:15 | 7 | who are qualified to conduct that review. But to keep costs |
| 12:15 | 8 | down, lawyers at Paul Weiss would only be doing a second |
| 12:15 | 9 | pass. And, Your Honor, we're conscious to not having |
| 12:15 | 10 | partner rates charged for routine document review and |
| 12:15 | 11 | production. |
| 12:15 | 12 | THE COURT: I just want to hear this correctly. I |
| 12:15 | 13 | am not sure I heard that correctly. |
| 12:15 | 14 | MS. CAREY: Yes, Your Honor. |
| 12:16 | 15 | THE COURT: Somebody in whatever country -- and |
| 12:16 | 16 | India is my favorite country, by the way -- is reviewing |
| 12:16 | 17 | American citizens' banking records. I want to make sure I |
| 12:16 | 18 | just heard that correctly. I want to repeat what I think I |
| 12:16 | 19 | just heard. Citizens of another country are reviewing |
| 12:16 | 20 | American citizens' banking records. |
| 12:16 | 21 | MS. CAREY: Your Honor -- |
| 12:16 | 22 | THE COURT: Did I hear that correctly? |
| 12:16 | 23 | MS. CAREY: I don't know if it's American |
| 12:16 | 24 | citizens' banking records that are being reviewed here. |
| 12:16 | 25 | THE COURT: So these are all foreign people |

12:16    1    investing with American banks, then?

12:16    2              MS. CAREY:  Well, Deutsche Bank outsources some of

12:16    3    its document review to vendors, whether they be in India or

12:16    4    in Ohio.

12:16    5              THE COURT:  Sure.  I understand that.  What

12:16    6    percentage of records would be -- I guess in international

12:17    7    age I am not offended with that.  I just find that very

12:17    8    interesting.

12:17    9              MS. CAREY:  Your Honor, the point I just wanted to

12:17   10    make -- I didn't want to introduce any new diversions to the

12:17   11    dialogue, but the point is that the review is constructed to

12:17   12    be efficient.

12:17   13              THE COURT:  Well, what do you charge for that per

12:17   14    hour?

12:17   15              MS. CAREY:  I wouldn't know the rates off the top

12:17   16    of my --

12:17   17              THE COURT:  What would you charge for that per

12:17   18    hour?

12:17   19              MS. CAREY:  Significantly less than would be

12:17   20    charged in the U.S.

12:17   21              THE COURT:  How much?

12:17   22              MS. CAREY:  Your Honor, I don't know if actually I

12:17   23    have the rates.

12:17   24              THE COURT:  You have all the time in the world to

12:17   25    find out that information.

12:17   1          MS. CAREY:  I would be happy to find out that

12:17   2   information.

12:17   3          THE COURT:  What is the reasonable rate?

12:17   4          MS. CAREY:  Your Honor, there would be a review

12:17   5   still conducted by lawyers at Paul Weiss, and then the

12:17   6   documents would be produced.  So I wanted to just make

12:17   7   clear that --

12:17   8          THE COURT:  Do you have a sinking feeling right

12:17   9   now?

12:17   10         MS. CAREY:  I do, Your Honor.

12:17   11         THE COURT:  Good.  I'm glad you do.  It's just

12:17   12   appropriate you might have a very sinking feeling.

12:18   13         MS. CAREY:  I was trying to be brief, Your Honor.

12:18   14   I somehow got myself down a rabbit hole here.

12:18   15         THE COURT:  You should have a sinking feeling

12:18   16   right now.

12:18   17         MS. CAREY:  So, Your Honor, let me wrap up by

12:18   18   saying that I think again the costs of the production, even

12:18   19   as negotiated has been narrowed since where we started with

12:18   20   the scope of the subpoena, we think still would be

12:18   21   significant to Deutsche Bank and we would do whatever we

12:18   22   could to minimize the cost to S&P; but we think S&P is

12:18   23   required to bear those costs under Legal Voice in Ninth

12:18   24   Circuit precedent.

12:18   25         THE COURT:  That's one decision:  Who bears the

12:18    1    cost?

12:18    2              MS. CAREY:  Yes, Your Honor.

12:18    3              THE COURT:  The second thing is what's reasonable.

12:18    4              MS. CAREY:  Your Honor, in terms of what's

12:18    5    reasonable and in terms of what would make the compliance

12:18    6    not significant in terms of a cost perspective would

12:18    7    essentially be I think anything over and above anything

12:18    8    requiring search terms and custodians to be reviewed as

12:19    9    would by its nature as outlined in our papers incur

12:19   10    significant costs.

12:19   11              THE COURT:  And I have got to deal with those

12:19   12    search terms.  If I do cost shift, you may find that I pass

12:19   13    that back for further scrutinization by S&P.  So I know

12:19   14    Mr. Keker is listening and absorbing this.  Hypothetically

12:19   15    if the cost did shift back to S&P, which is not what you

12:19   16    want, of course, then those search terms, I may pass that

12:19   17    back to you to decide what those are because you're directly

12:19   18    bearing the cost.  So I want to give you another crack at

12:19   19    going through and trying to narrow those, because if they're

12:19   20    too broad and you find yourself with 40 million pages

12:19   21    instead of the four million, you know -- and you might be

12:19   22    the most responsible person to look at that and control

12:19   23    those costs.

12:19   24              Counsel, you're doing great.

12:19   25              MS. CAREY:  Your Honor, just to address because I

12:19   1    haven't yet your point about the privilege logs, I think

12:19   2    that those can be done again in the way that we do

12:20   3    productions efficiently because the privilege logs are

12:20   4    automatically populated once the reviewer goes through and

12:20   5    tags the documents.  So I don't anticipate significant

12:20   6    amounts of time and energy spent making the privilege logs.

12:20   7    I also wouldn't anticipate, given the nature of the

12:20   8    documents being sought here, disputes about privilege coming

12:20   9    up in the context of our production.

12:20   10            THE COURT:  And they may not be for Deutsche Bank.

12:20   11   You may have a very efficient and good system.  I don't know

12:20   12   about the other banks yet, but I can assure you we're having

12:20   13   our own motions, et cetera.  If you notice, I'm not farming

12:20   14   anything out right now.

12:20   15            MS. CAREY:  Understood, Your Honor.  That's all I

12:20   16   have.

12:20   17            THE COURT:  Okay.  Well, thank you very much.

12:20   18            Have the arguments concluded?  Let me just make

12:20   19   certain.  Bank of Scotland, you're going to --

12:20   20            MS. TITOLO:  Teresa Titolo for RBS Securities,

12:21   21   Inc.  I agree with the arguments made by counsel for Bank of

12:21   22   America.  So unless the Court has questions for me, I don't

12:21   23   think there's anything more that I need to add.

12:21   24            THE COURT:  Let me just make sure.  Citibank.

12:21   25            MS. BUERGEL:  Nothing to add, Your Honor.

12:21    1            THE COURT:  Okay.  Countrywide.

12:21    2            MR. GARABED:  Nothing to add, Your Honor.

12:21    3            THE COURT:  I just want to be courteous and make

12:21    4    sure.  We've heard from Deutsche Bank.

12:21    5            Then NCUA.  Counsel.

12:21    6            MR. HETHERINGTON:  Thank you, Your Honor.

12:21    7            With regard to the case law, I'm sure you won't be

12:21    8    surprised to hear that we also agree with the cogent

12:21    9    analysis of the other lawyers.  There are just a couple of

12:21   10    things that were mentioned with regard to the Legal Voice

12:21   11    case that obviously we all rely on substantially.

12:21   12            The first is that rightly or wrongly, that case is

12:22   13    in our view ambiguous on this issue, and it expressly states

12:22   14    that cost shifting is not discretionary.  The only question

12:22   15    is the significance of the cost.  That Court did not

12:22   16    consider the fact that it was a nonprofit.  It just said

12:22   17    $20,000 is enough money to shift even that.  And it also

12:22   18    included attorneys' fees, Legal Voice, including the fees

12:22   19    expended getting the order, they have to pay costs, and then

12:22   20    including the fees in appealing.  So I think it is a very

12:22   21    broad case.

12:22   22            Unless you have any questions about that, I would

12:22   23    move on to the issues that are specific to NCUA.

12:22   24            We believe that even if the equitable test that

12:22   25    Legal Voice abandoned and, we think, overruled is applied if

12:22  1   favors cost shifting here, we are not arguing by the way

12:22  2   that S&P should have to bear the entire cost.  We have

12:23  3   already expended a lot of money.  We are not asking for that

12:23  4   back.  We're not asking for the documents back.  This is

12:23  5   going forward.

12:23  6          NCUA is not an interested party here.  The concept

12:23  7   of the interested party goes back to the Exxon Valdez case

12:23  8   that's cited in S&P's brief.  In that case the Court noted

12:23  9   that the party that had received the subpoena depended on

12:23  10  Exxon Valdez for a substantial portion of its income, had a

12:23  11  financial outcome in what essentially could have been the

12:23  12  company litigation.

12:23  13         Here S&P is not a party to the case.  S&P is an

12:23  14  independent federal agency.  We are not even funded by the

12:23  15  same part of the government that funds DOJ.  What DOJ is

12:23  16  seeking here are financial penalties, not reimbursement.

12:23  17  And the government certainly has given no indication that it

12:23  18  intends to share that money out and still less that NCUA

12:23  19  would benefit in any way from this case.

12:23  20         Now, I am anticipating the response would be,

12:24  21  well, we have some sort of abstract interest as part of the

12:24  22  government and the government prevailing in litigation.

12:24  23  That would be true of virtually any case that the government

12:24  24  brings.  That's why I think it's too broad.  Also in the

12:24  25  Legal Voice case the nonprofit there had precisely that kind

12:24  1    of abstract interest in the case succeeding.  In fact, Legal

12:24  2    Voice had brought some of the complaints that resulted in

12:24  3    the litigation.  So the nonprofit there absolutely had an

12:24  4    abstract interest, and that obviously did not bar the Ninth

12:24  5    Circuit from shifting costs there.

12:24  6            With regard to the common interest agreement, it

12:24  7    sounds great on paper that there was a common interest

12:24  8    agreement, therefore we are an interested party in this

12:24  9    case.  In July 2010, long before S&P issued any subpoenas to

12:24  10   NCUA, NCUA and DOJ were independently engaged in

12:25  11   investigations arising from some of the same conduct.  There

12:25  12   was a little overlap in the RMBS, that investigations were

12:25  13   independent; but because some of the facts particularly with

12:25  14   regard to the rating agencies were common, we entered into a

12:25  15   written common interest agreement with the government so

12:25  16   that we could share some privileged documents without

12:25  17   worrying about confidentiality or privilege issues.  But the

12:25  18   common interest was that, at least from the perspective of

12:25  19   NCUA, our interest was in conducting our own investigation.

12:25  20           Ultimately, we did not bring a case against the

12:25  21   rating agencies, but that was the interest we had.  The

12:25  22   interest was not in the government prevailing in its case

12:25  23   against S&P.  We don't really have a dog in that fight as

12:25  24   the NCUA.

12:25  25           NCUA is not better able to bear costs than S&P.

12:25  1   McGraw-Hill had income of almost $5 million revenue last

12:25  2   year.  NCUA is not funded by the taxpayers.  It's funded by

12:26  3   the credit unions that it regulates that are ultimately by

12:26  4   the members of those credit unions, some of whom may be in

12:26  5   this courtroom today.

12:26  6          We think that another balance of the interest test

12:26  7   you've mentioned yourself, Your Honor, requiring S&P to bear

12:26  8   the cost of the more burdensome subpoenas will ensure that

12:26  9   S&P only asks for what it really needs and not for the

12:26  10  entire universe of documents.

12:26  11         In terms of the importance of this case, I

12:26  12  certainly understand S&P's position that it's a very

12:26  13  important case for S&P.  I don't know that it's any more

12:26  14  important than any other case that the government has

12:26  15  brought against it.  The many people that it brings cases

12:26  16  against doesn't involve any constitutional issues, for

12:26  17  example.

12:26  18         To address a couple of the points that you raised

12:26  19  with other counsel, anticipating that you will want to raise

12:26  20  them with me, one issue with the privilege logs, Your Honor,

12:26  21  is that we are getting pulled in two directions here.  On

12:27  22  one hand S&P says that it shouldn't have to pay for

12:27  23  attorneys to make privilege calls and create privilege logs.

12:27  24         On the other hand, it specifically moves the Court

12:27  25  to add additional hurdles for NCUA to jump through when it

12:27  1  asserts privilege so that it not only has to log the

12:27  2  documents, but it has to come up with a declaration and move

12:27  3  the Court for a protective order in order to assert those

12:27  4  privileges.

12:27  5          So I think -- I'm not sure how to balance their

12:27  6  concern with not paying for privilege work with this great

12:27  7  concern that NCUA does a lot more work than it otherwise

12:27  8  would have to do; find out whether they have litigated case

12:27  9  with Cahill in the past where both parties agreed not to

12:27  10  produce privilege logs because that would be much more

12:27  11  efficient.  I am not suggesting that's an option here, but

12:27  12  certainly counsel recognize that it costs money to do that.

12:28  13  If you're pushing for additional privilege work, I think it

12:28  14  rings hollow to complain about the cost that that would

12:28  15  impose.

12:28  16          I also would note, Your Honor, that a 30-day

12:28  17  deadline for complete compliance that S&P is asking for

12:28  18  would vastly increase the expense for whoever ends up paying

12:28  19  for this.  New people are going to have to be hired; they're

12:28  20  going to have to be trained; things are going to have to

12:28  21  work.  People are going to have to take time off from other

12:28  22  cases.  People at NCUA won't be able to do their jobs.

12:28  23          So again we are hearing on the one hand the burden

12:28  24  on S&P, that cost shifting should be reduced, but on the

12:28  25  other hand the Court should increase the burden on NCUA

12:28    1    without us paying for it.

12:28    2              I believe those are all of the points that you

12:28    3    raised with other counsel, Your Honor.  If I missed

12:28    4    anything, I am happy to address it.

12:28    5              THE COURT:  Counsel, thank you very much.

12:28    6              All right.  Mr. Keker on behalf of S&P.

12:28    7              MR. KEKER:  Thank you, Your Honor.

12:29    8              I won't go over the ground that I covered before.

12:29    9    I have been listening to your questions.  One thing that

12:29   10    should be clear is that with respect to this concept of cost

12:29   11    shifting, every single case says that the Court has a lot of

12:29   12    discretion about either whether to do it or how much.  And

12:29   13    then, as you put your finger on, the further question is

12:29   14    once you have shifted costs, what are reasonable costs to be

12:29   15    talking about shifting.  So you can talk about significant.

12:29   16    You can talk about lack of significance.  But it's really

12:29   17    what are we talking about.

12:29   18              Here what we're suggesting is -- and let me go

12:29   19    back.  The Bank of America counsel cited the Blue Shield

12:29   20    case, and he was quite happy about that case.  In that case

12:29   21    the judge said:  I don't think that you're an interested

12:30   22    party.  You may be a slightly interested party.  I think

12:30   23    it's of public importance.  But I am going to shift the

12:30   24    cost, but I am going to shift 15 percent of the cost.

12:30   25              So start with that, that there is an awful lot of

12:30    1    discretion here.  We are asking if you do shift any cost,

12:30    2    please don't shift any attorneys' fees, don't shift any

12:30    3    prior costs.  I am not hearing from anybody that they think

12:30    4    that that should happen.

12:30    5          Let me assure you we have spent a lot of time

12:30    6    because we were aware of this issues because the banks have

12:30    7    been whining about it for five months.

12:30    8          THE COURT:  They're responding.

12:30    9          MR. KEKER:  Responding.  But one man's responding

12:30   10    is another man's whining.  It's not what you say.  It's what

12:30   11    the other person hears, I always say.  But in any event, the

12:30   12    banks have been pointing out to us this issue of cost.

12:30   13    We're not going to give you anything unless you give us

12:30   14    costs -- some of them have -- for a long time.  And we

12:30   15    thought about it --

12:31   16          THE COURT:  Can I have a discussion with you about

12:31   17    that?

12:31   18          MR. KEKER:  Yes, sir.

12:31   19          THE COURT:  Can Mr. Cardona join you for a moment?

12:31   20    Don't go away.

12:31   21          MR. KEKER:  I'm not going anywhere.  Just moving

12:31   22    to give him room.

12:31   23          THE COURT:  One of the reasons we were trying to

12:31   24    anticipate this a month, two months, three months ago, was

12:31   25    that I made what you considered a very burdensome order on

12:31   1   you was exactly what we are facing now, because I was

12:31   2   anticipating when the case first came to me trying to look

12:31   3   ahead to the unfairness of the argument by S&P eventually

12:31   4   that the government had received all of these documents.

12:31   5   But then either the banks or S&P, however this motion was

12:31   6   going to eventually come before me months in the future, and

12:31   7   here we are now, would have to pay or the banks would be in

12:31   8   the argument of saying we have to reproduce at great cost.

12:32   9           Now, the government doesn't do this.  I know this.

12:32   10   But just by virtue of being the United States government, it

12:32   11   carries tremendous power.  You never want to say U.S. versus

12:32   12   in front of your name.  It just doesn't make a good day.  So

12:32   13   when these documents came to you, by explanation now I can

12:32   14   say what I couldn't say before.  The reason you got what you

12:32   15   perceived was a burdensome order by the Court was, having

12:32   16   received those documents for a year or two years of

12:32   17   investigation, you were ordered to turn that over to S&P

12:32   18   because I didn't think it was fair that you got it for free

12:32   19   and that S&P had to go through the complete process, if you

12:32   20   will, of getting maybe those same documents where the banks

12:32   21   came back and pushed back with no filter from the

12:32   22   government.

12:32   23           I said, what, you're asking for 10 million pages.

12:32   24   Here are your 10 million.  And we find out that 7.5 million

12:33   25   have already been turned over to the government.

12:33  1          So on one hand, you should already have, when

12:33  2   these large numbers are thrown at me, 100 million pages.

12:33  3   You should already have a large number of those pages in

12:33  4   your possession.  And now the burden may be you going back

12:33  5   and carefully sifting through what you have so it's not

12:33  6   being duplicated by the banks.  And potentially if you lose

12:33  7   this portion of the motion in terms of cost shifting, you

12:33  8   have a way of ameliorating these costs by just checking your

12:33  9   own records.

12:33  10         So that's, Mr. Cardona, three months ago when I

12:33  11  couldn't have that discussion.  I know you struggled to keep

12:33  12  up with that, but thank you.  That's a thank-you.

12:33  13         Now, Mr. Keker, I don't agree you have a

12:33  14  tremendous amount of what you're asking from the bank.

12:33  15         MR. KEKER:  Let me push back on that a little bit,

12:33  16  Your Honor, because the case proceeded with this wide-open

12:34  17  complaint, and then it was what the government calls

12:34  18  narrowed to 150 securities.  And it turns out that the

12:34  19  government was not focusing on those securities when it did

12:34  20  its investigation and subpoenaed the banks, so in many

12:34  21  instances --

12:34  22         THE COURT:  Just a moment.  I agree that there are

12:34  23  millions or 100 million documents out there.  We don't have

12:34  24  a dispute, and you can point to the exception.  But you also

12:34  25  have a tremendous amount of material already.

| | | |
|---|---|---|
| 12:34 | 1 | MR. KEKER:  Fair enough.  And what I was trying to |
| 12:34 | 2 | say before just a minute ago, we have what we think is bent |
| 12:34 | 3 | over backwards.  We had a lot of discussion among our team |
| 12:34 | 4 | about let's not ask for more than we can handle.  Let's not |
| 12:34 | 5 | overreach.  Let's ask for things so that we're not in a |
| 12:34 | 6 | position of standing before the judge and it sounds like a |
| 12:34 | 7 | fishing expedition.  I know that there's millions of |
| 12:35 | 8 | documents here, but we have worked very hard in these |
| 12:35 | 9 | meet-and-confers and narrowing of the subpoena already to |
| 12:35 | 10 | try to just get down to what we think we need. |
| 12:35 | 11 | I will give you one example that I'm very familiar |
| 12:35 | 12 | with.  With custodians we have saying you have missed a |
| 12:35 | 13 | couple of custodians to Citi.  I have seen the custodians |
| 12:35 | 14 | that they missed and that we were arguing about and now |
| 12:35 | 15 | we've agreed, but they were people that I know and I have |
| 12:35 | 16 | heard them testify.  I mean, those are people whose |
| 12:35 | 17 | documents would be very, very important in this area because |
| 12:35 | 18 | they were very important in CDOs.  That's simply what I knew |
| 12:35 | 19 | from past experience. |
| 12:35 | 20 | So we have tried to do that with everybody, and I |
| 12:35 | 21 | think we have succeeded.  We really have gotten down -- and |
| 12:35 | 22 | I'm grateful to the banks and NCUA that since your May 28 |
| 12:35 | 23 | order which basically said, everybody, get real, get |
| 12:35 | 24 | something done, we have got a lot done.  I mean, mostly we |
| 12:36 | 25 | are here agreeing about the scope. |

12:36  1        THE COURT:  Just a moment.  That's very nice

12:36  2  praise and I'll wholeheartedly accept it.  Thank you.

12:36  3        Now, that's not the reality of what happened.

12:36  4  Think of it from my perspective.  I am very appreciative

12:36  5  that there have been negotiations as late as today; but if

12:36  6  that process continued in the future, my trial dates might

12:36  7  not have relevance.

12:36  8        MR. KEKER:  Agreed.

12:36  9        THE COURT:  Because everybody can take their time,

12:36  10 but you will find from now on -- and it's not a threat.  I

12:36  11 just enjoy everybody's company.  I am lonely.  It's going to

12:36  12 be 24/7 from this point forward until I'm adequately

12:36  13 satisfied that we're on track.  I mean, Bank of America is

12:36  14 going to find that you're joining me on Saturday and Sunday,

12:36  15 so I'm just forewarning you.  You're working this weekend

12:36  16 with me.  You haven't made the call yet, but as soon as you

12:36  17 can get your person here and maybe you'll have Sunday off.

12:37  18 Otherwise, you're going to be here.  Maybe NCUA is here

12:37  19 also -- I don't know yet -- and we're going to sort out this

12:37  20 discovery request.

12:37  21       But what really happened was everybody thought at

12:37  22 the very beginning of the case that you had time to respond,

12:37  23 write back, respond, or do nothing.  The whole scenario has

12:37  24 changed.  So I am just saying that gratuitously right now,

12:37  25 but I have a much different view.  I think things only took

12:37   1    place because all of you had to come to court today for a

12:37   2    hearing, and finally there were some serious negotiations

12:37   3    out in that hallway and there were some serious negotiations

12:37   4    beforehand, but it's only because the Court had a date.  If

12:37   5    I didn't have a date today and this would have been October,

12:37   6    I can guarantee you that you would be arguing in front of me

12:37   7    saying that the banks hadn't complied, and you find yourself

12:37   8    in that position.  So I think these dates have meaning.

12:37   9           MR. KEKER:  The only reason that all this progress

12:37   10   happened is that you gave an order that included this date.

12:37   11   You told us to file these motions.  We filed the motions and

12:37   12   we had this date, and all of a sudden everybody gets

12:38   13   together.

12:38   14          THE COURT:  And that isn't denigration of the

12:38   15   parties or the banks.  It's just the reality of what

12:38   16   happened.  Parties don't touch cases unless there is a date

12:38   17   certain, quite frankly, because there's numerous other

12:38   18   clients and other needs.

12:38   19          MR. KEKER:  We agree completely.  And when I was

12:38   20   talking about the May 28 order, that's what we meant.

12:38   21   Because of the order and because of this process and because

12:38   22   of your onerous demand of the government that they get

12:38   23   everything done by a certain date, all of a sudden things

12:38   24   happen.

12:38   25          THE COURT:  And I think the government has made a

| 12:38 | 1 | very good-faith effort in this.  Here's the detriment:  The |
| 12:38 | 2 | government is paying for this for a change also, so the |
| 12:38 | 3 | government can decrease their costs in the future because I |
| 12:38 | 4 | know that Mr. Cardona is not only motivated and ethical and |
| 12:38 | 5 | will get this done.  But, second, it's going to cost if they |
| 12:38 | 6 | don't because all these depositions are coming back if I see |
| 12:38 | 7 | noncompliance, no matter what the reasons.  So how the |
| 12:38 | 8 | government wants to foot that bill depends upon how speedily |
| 12:38 | 9 | they produce.  And I think you've produced or are attempting |
| 12:39 | 10 | to do so.  Thank you. |
| 12:39 | 11 | MR. KEKER:  I would really like on behalf of S&P |
| 12:39 | 12 | to talk to you about what we're talking about now but get |
| 12:39 | 13 | the cost part talked about, because I think they're sort of |
| 12:39 | 14 | separate issues.  Let me just finish with the cost part. |
| 12:39 | 15 | I don't need to tell you that there was an |
| 12:39 | 16 | argument made by Deutsche Bank that somehow they don't have |
| 12:39 | 17 | any dog in this fight.  I mean, the government, they |
| 12:39 | 18 | arranged seven of the CDOs that the government is coming |
| 12:39 | 19 | here and saying their losses that S&P should pay for |
| 12:39 | 20 | Deutsche Bank arranged.  And they're saying S&P should pay |
| 12:39 | 21 | hundreds of millions of dollars because of losses on those |
| 12:39 | 22 | CDOs, and Deutsche Bank purchased seven other CDOs and they |
| 12:39 | 23 | have been defendants in litigation about -- for example, |
| 12:39 | 24 | there's a Gemstone CDO in this case that Deutsche Bank got |
| 12:39 | 25 | sued on.  They paid $55 million to settle it.  This is all |

12:40   1   public.  And the Gemstone CDO and losses on the Gemstone CDO

12:40   2   is what the government is claiming S&P should pay for in

12:40   3   this case.  I mean, they're saying we defrauded Deutsche

12:40   4   Bank.  Deutsche Bank paid $55 million out for that

12:40   5   particular CDO that they arranged, and so on.

12:40   6        Same with RBS.  They have nine CDOs that they were

12:40   7   the arranging bank.  There is losses on eight of those nine.

12:40   8   We're trying to get to the bottom of it.  Whose fault is

12:40   9   that?  I mean, what was the problem there?  Whose fault was

12:40   10  it that they lost money on those?  That's ten percent of the

12:40   11  losses that the government is saying.

12:40   12       So for these folks to say that they're

12:40   13  disinterested parties we think is just plain wrong.  NCUA,

12:40   14  final point about them, the idea that they belong to some

12:40   15  different part of the government because they only deal with

12:40   16  credit unions, they are a regulator.  They go out and sue

12:41   17  the people that these credit unions -- and try to get money

12:41   18  back because of losses that the credit unions -- the

12:41   19  government is saying in this case that S&P ought to pay for

12:41   20  the losses of those credit unions.

12:41   21       I mean, the idea that we should pay NCUA a part

12:41   22  which we believe is part of the government with a common

12:41   23  interest privilege to get discovery from them about

12:41   24  securities that they have investigated where they have

12:41   25  criticized the credit unions for, quote, overreliance on

12:41  1  rating agencies.  And basically what those investigations

12:41  2  say is you didn't follow your own guidelines.  You're not

12:41  3  supposed to just blindly say, well, if it's rated by some

12:41  4  agency, we're going to go ahead and buy it.  You're supposed

12:41  5  to think.  You're supposed to look at it.  So the idea that

12:41  6  we can't get that discovery without having to pay for it

12:41  7  seems to us inequitable.

12:42  8          THE COURT:  Let me repeat back to you what I

12:42  9  heard.  That is:  Judge, if you cost shifted, besides the

12:42 10  reasonableness review that you would need to go through,

12:42 11  NCUA should be treated differently than the five banks

12:42 12  before the Court.  In other words, one size doesn't fit all

12:42 13  and NCUA is more analogous to a government regulatory

12:42 14  entity.

12:42 15          MR. KEKER:  They are a regulator.

12:42 16          THE COURT:  Okay.  And should be treated

12:42 17  differently?

12:42 18          MR. KEKER:  Well, no, they shouldn't be.  They

12:42 19  should be treated the same as the banks, that you shouldn't

12:42 20  shift costs.  And if you shift costs, it ought to be

12:42 21  diminimus cost shifting for all the equitable reasons that I

12:42 22  talked about before, and it should be limited -- what you

12:42 23  say you're shifting are the reasonable costs.  The

12:42 24  reasonable costs shouldn't include attorneys' fees,

12:42 25  shouldn't include past fees, shouldn't include privilege

| | | |
|---|---|---|
| 12:43 | 1 | review, shouldn't include responsiveness review unless |
| 12:43 | 2 | there's a very good reason why that -- many of these are |
| 12:43 | 3 | just please give us the files that you already turned over |
| 12:43 | 4 | in litigation.  Let us see what is happening in that |
| 12:43 | 5 | litigation so that we can go through it and decide for |
| 12:43 | 6 | ourselves.  You've been sued or you're suing, and you've got |
| 12:43 | 7 | all these files.  You just give us those files.  Give us the |
| 12:43 | 8 | depositions.  Give us what's going on in that case.  Let us |
| 12:43 | 9 | review it and see if it's relevant in this case.  That |
| 12:43 | 10 | should cost them nothing, and it shouldn't require attorney |
| 12:43 | 11 | review or anything else. |
| 12:43 | 12 | THE COURT:  So in the reasonableness review, |
| 12:43 | 13 | besides attorneys' fees, privilege logs, responsiveness |
| 12:43 | 14 | reviews, you would also -- |
| 12:43 | 15 | MR. KEKER:  Minimal production costs.  I mean, how |
| 12:43 | 16 | much does it cost to go get another CD of what you've |
| 12:44 | 17 | already produced -- |
| 12:44 | 18 | THE COURT:  You're also saying that S&P shouldn't |
| 12:44 | 19 | bear substantial costs or whatever the word is for documents |
| 12:44 | 20 | that have already been gathered, for instance. |
| 12:44 | 21 | MR. KEKER:  Yes, sir. |
| 12:44 | 22 | THE COURT:  And that the Court should do its own |
| 12:44 | 23 | review or special masters make certain that at least those |
| 12:44 | 24 | documents that are readily available through another case or |
| 12:44 | 25 | claim should have certainly no attorneys' fees attached to |

12:44   1    them.  In other words, they're simply a hunt-and-gather

12:44   2    because they're already there, already accumulated

12:44   3    someplace.

12:44   4           MR. KEKER:  B of A is a great example of this high

12:44   5    grade -- biggest security in this case is the high-grade CDO

12:44   6    in the Bank of America instance.  There is litigation galore

12:45   7    about it.  We have been asking for those litigation -- just

12:45   8    give us what you have turned over to other people.

12:45   9           THE COURT:  So I should require an attestation

12:45   10   that this hasn't been gathered before from each bank if I --

12:45   11          MR. KEKER:  Yes, sir.  And sometime today if we

12:45   12   could talk a little bit more about what you have told us

12:45   13   your idea about the depositions and the trial date and so

12:45   14   on, we would just like to have some pretrial conference type

12:45   15   discussion for a few minutes.

12:45   16          THE COURT:  Well, I will set that up with you in

12:45   17   August.

12:45   18          MR. KEKER:  Okay.

12:45   19          THE COURT:  I let me tell you why.  Although I

12:45   20   have been very pleased with what I have heard from the

12:45   21   special masters, I am not on the front line, so I have to

12:45   22   rely upon their input.  I need to make certain that the

12:45   23   parties minimally comply with the 25 depositions.  In other

12:45   24   words, if they're completed -- in fact, I am even thinking

12:45   25   about cutting back eventually the special master's

12:45  1   participation.  But all that is dependent upon, you know,

12:46  2   what my final product is.  What does it really look like on

12:46  3   August 30th?  Do I really need a special master at each one

12:46  4   of these if everybody is playing fairly and the objections

12:46  5   aren't voluminous or specious?  Maybe I can cut back on my

12:46  6   special master's participation.  There is no reason to have

12:46  7   them at each of the 25.  But I have to see the product

12:46  8   first, so I will have that conversation with you August 30th

12:46  9   or before.

12:46  10          MR. KEKER:  Could I say a couple of things,

12:46  11  though, just to put in your mind about where we'll be going

12:46  12  in that conversation?  The depositions, the 105 depositions,

12:46  13  were not 105 depositions.  They were 105 people with

12:46  14  knowledge of the case identified in the government's

12:46  15  interrogatories.  Of those, around 50 had investigative

12:46  16  transcripts which we have gotten.  Many of those are S&P

12:46  17  employees.  The S&P employees and many of the people for

12:46  18  whom we have investigative transcripts will probably not be

12:46  19  deposed by either side in this case.

12:46  20          The other 50 were the ones that we were arguing

12:47  21  about, and they're the ones that we're focusing the 25

12:47  22  depositions on, were people that we didn't have

12:47  23  investigative transcripts and we have asked the government

12:47  24  in the interrogatory answer:  Tell us what those people told

12:47  25  you before.  They said work product.

12:47  1            THE COURT:  If you want to get into that

12:47  2    discussion right now for just a moment, I can do that.

12:47  3            MR. KEKER:  Yes.

12:47  4            THE COURT:  I will.  Mr. Cardona, I will need your

12:47  5    participation.  I initially believed that you wanted at

12:47  6    least 100 depositions.

12:47  7            MR. KEKER:  It may be 100, but the depositions

12:47  8    that we're talking about are different depositions.

12:47  9            THE COURT:  Just a moment.  That's fine.  If you

12:47  10   want 50, that's fine.  If you want 150, that's fine.

12:47  11           MR. KEKER:  The depositions that we are

12:47  12   anticipating are depositions that will come out of getting

12:47  13   these documents from the banks.  They'll be people involved

12:48  14   in the arranging -- trustees, managers.  That will be the

12:48  15   bulk of the depositions, and they can't effectively

12:48  16   happen -- with or without a clawback, they can't effectively

12:48  17   happen until we have gotten these documents, digested them,

12:48  18   figure how who we want to depose, and go do it.  And we will

12:48  19   be doing that, and I think that it will be several

12:48  20   depositions per bank, but it won't be a hundred.

12:48  21               The other depositions that will be contentious

12:48  22   will be government officials, which Mr. Abrams can talk

12:48  23   about if he wants to, but there's not going to be that many

12:48  24   of those and there will be fights about that.  And then

12:48  25   possibly a few other depositions of people who used to work

| | | |
|---|---|---|
| 12:48 | 1 | at S&P. |
| 12:48 | 2 | Once we get our arms around the documents and |
| 12:48 | 3 | figure out what we're doing with the banks and the managers |
| 12:48 | 4 | and trustees, it's something that we can handle.  Our |
| 12:48 | 5 | request to you is let's talk about the trial date.  We'd |
| 12:48 | 6 | like to talk about that, but fix a trial date.  I've been |
| 12:49 | 7 | told by Ms. Keller since we began this case that once Judge |
| 12:49 | 8 | Carter starts, fixes a trial date, that's it.  Don't even |
| 12:49 | 9 | think you can -- that's going to be the trial date. |
| 12:49 | 10 | So we're all prepared for that.  We will have a |
| 12:49 | 11 | discovery cutoff date.  We will know the rules.  And then |
| 12:49 | 12 | let us play within those rules, because I know of your |
| 12:49 | 13 | concern, with periodic status conferences, one every two |
| 12:49 | 14 | months, one every month and a half, whatever you want.  We |
| 12:49 | 15 | will come down and tell you how we're doing, where there are |
| 12:49 | 16 | problems if we think they are, all the time knowing that one |
| 12:49 | 17 | answer is not going to be therefore, Judge, let's have a |
| 12:49 | 18 | different trial date.  I mean, we get that. |
| 12:49 | 19 | The idea of having 25 depositions or some fixed |
| 12:49 | 20 | number of depositions at certain times when we are hoping to |
| 12:49 | 21 | be coping with all this voluminous document production and |
| 12:49 | 22 | trying to sort it through and figure out how to best deal |
| 12:49 | 23 | with depositions is something that I hope you will let us |
| 12:50 | 24 | work out, and I believe we can without fixed rules, although |
| 12:50 | 25 | we will come and report to you as often as you want to about |

| | | |
|---|---|---|
| 12:50 | 1 | how we're doing. |
| 12:50 | 2 | So that was going to be what I wanted to talk |
| 12:50 | 3 | about in August or whenever.  I guess that's it.  I mean, we |
| 12:50 | 4 | get it.  You're going to have a date for trial.  The Jewish |
| 12:50 | 5 | holidays, by the way, are in September and not later.  And |
| 12:50 | 6 | my 50th wedding anniversary is 9/11, so I'm sort of hoping I |
| 12:50 | 7 | will get to have dinner with the person I have known for |
| 12:50 | 8 | that long. |
| 12:50 | 9 | THE COURT:  You will. |
| 12:50 | 10 | MR. KEKER:  Anyway, whatever the trial date is, we |
| 12:50 | 11 | will figure it out.  We get it.  We are all people who have |
| 12:50 | 12 | done this before. |
| 12:50 | 13 | THE COURT:  We have gone off on a tangent and it's |
| 12:50 | 14 | my fault.  I accept responsibility.  Any comment, and then I |
| 12:51 | 15 | will make a comment back? |
| 12:51 | 16 | MR. CARDONA:  Your Honor, we are happy to do it |
| 12:51 | 17 | either way. |
| 12:51 | 18 | THE COURT:  Thank you.  That's great.  That's |
| 12:51 | 19 | refreshing.  Here is the bottom line.  You are going to have |
| 12:51 | 20 | 25 depositions completed by August 30th, and you already |
| 12:51 | 21 | have set those depositions.  You're doing spectacularly |
| 12:51 | 22 | well.  My compliments.  Get it? |
| 12:51 | 23 | MR. KEKER:  Sure. |
| 12:51 | 24 | THE COURT:  Okay.  You can have 25 in September |
| 12:51 | 25 | again, and part of that is going to be the banks' compliance |

12:51  1    with whatever I decide today.  In other words, they are

12:51  2    going to be at warp speed also.  One of them may decide to

12:51  3    test me, and that will be interesting.  So you're going to

12:51  4    get these documents pretty quick, quicker than you can

12:52  5    probably absorb them.

12:52  6            Number three, when I set the trial date, if you

12:52  7    come to me with a request for a continuance, I am going to

12:52  8    advance it.  So that's just a fair warning to you.  I will

12:52  9    just move it up a week.  And if you don't believe that, the

12:52  10   Aryan Brotherhood, which your office had -- quite frankly a

12:52  11   little story.  You sent it in May when it came down to me

12:52  12   from George King.  Then the U.S. Attorney decided to try to

12:52  13   get a continuance on that case, didn't tell the Court, and I

12:52  14   got a stipulation from all parties moving it back a year,

12:52  15   and I advanced it three months.  So don't come to me with a

12:52  16   continuance request.  That's fair warning, so now you know

12:52  17   it.

12:52  18           If you notice, I didn't ask the government to give

12:52  19   me a witness list now, because I have seen other Courts do

12:52  20   that in the past.  You are in my court.  It's a complex

12:52  21   case.  I demand your witness list now, and then the chance

12:52  22   to vary that is unfair to the government.

12:53  23           But sometime in January or so I will ask you for a

12:53  24   witness list, but there's going to be some wiggle room in

12:53  25   there.  There's going to be some things that occur.  I also

12:53   1   know there will be some additional depositions they may

12:53   2   need, but they'll be few.  I'm going to get the bulk of them

12:53   3   out of the way now.

12:53   4         I think your advice is excellent.  I am just not

12:53   5   going to follow it.  The reason for that is that you're

12:53   6   going to get what I call the majority of the witnesses that

12:53   7   you have to logistically wade through out of the way now,

12:53   8   and if I need to call them back, I will.  It may be

12:53   9   expensive.  It may be a little time-consuming, but that's

12:53   10  why you have got January and February.  That's why I'm not

12:53   11  presiding over your case in May.

12:53   12        Now, as far as staffing this, that will fall on

12:53   13  deaf ears from the banks' inability to carry out whatever I

12:53   14  order today, banks, or I am going to sanction you.  And

12:53   15  you're going to do 24/7 also if you need to get it done.  Is

12:54   16  that understood by everybody?

12:54   17        You don't know what I'm going to do yet, but I am

12:54   18  just forewarning you from the bench that I won't be very

12:54   19  tolerant of institutions who are initiating these charges

12:54   20  quite frankly and then telling me that they can't comply.

12:54   21  Trust me.  If this was a deal on Wall Street worth X billion

12:54   22  of dollars, you'd have it out very quickly.  So you will

12:54   23  have it out in my court very quickly.

12:54   24        Number three, you have seen me start down the line

12:54   25  with Bank of America already.  So it's Bank of America.  It

12:54   1   could have been any other of the banks.  But this idea that
12:54   2   counsel come into court and arguing in a legal sense and
12:54   3   then can't stay with me and make the dispositive and
12:54   4   difficult decisions on behalf of their client is falling on
12:54   5   deaf ears.  So if you have house of counsel who has that
12:54   6   authority, I suggest that they're here from this point
12:54   7   forward.  If not, then I'm going to bring in the
12:54   8   vice-president or president of your bank, believe it or not.
12:54   9   I know you don't believe me on that, so test me on it and
12:55   10  find out.  I want people here who make decisions.
12:55   11          Number four, I don't think I'm speaking out of two
12:55   12  sides of my mouth.  I told you to work 24/7.  The banks
12:55   13  don't realize that yet, Mr. Keker.  You do, Mr. Cardona.
12:55   14  You do and you guys get it.  The banks don't.  You're here
12:55   15  for the first time.  You're 24/7.  You're here Saturdays and
12:55   16  Sundays if I choose you to be here.  So I just want to
12:55   17  forewarn you about that.
12:55   18          Beyond all of that parade of horribles, none of
12:55   19  which are going to occur because I've got excellent banks,
12:55   20  excellent counsel -- I want that on the record -- the finest
12:55   21  attorneys in my court arguing ably, if I say that from the
12:55   22  bench, then you won't have any misgivings in the future.
12:55   23  You can convey that back to whoever you're calling and tell
12:55   24  them that you're in a very difficult court.  That will give
12:55   25  you some leeway as counsel so that you're not standing in

| | | |
|---|---|---|
| 12:55 | 1 | the shadow of your client who is yelling at you about why |
| 12:55 | 2 | can't you control that judge.  So it's a courtesy to you. |
| 12:55 | 3 | I am going to hear the rest of the arguments, but |
| 12:56 | 4 | as soon as I am done, I am not convinced yet that I should |
| 12:56 | 5 | change the tentative I'm about to give you.  So I want to |
| 12:56 | 6 | get on with these arguments, hand down the tentative to you, |
| 12:56 | 7 | and then have you poke holes in it -- so you have something |
| 12:56 | 8 | in writing. |
| 12:56 | 9 | But one thing I haven't weighed yet -- well, I |
| 12:56 | 10 | will come back to it in just a moment. |
| 12:56 | 11 | So we will talk about dates in a moment, but you |
| 12:56 | 12 | know that I want to take a run at August.  I am not sure |
| 12:56 | 13 | yet, and because I am not sure yet, I didn't set the date. |
| 12:56 | 14 | I just intimated in September, and everybody believes it's |
| 12:56 | 15 | September and I think it's September.  It could be August. |
| 12:56 | 16 | If I could get you down to August, I would, because I need a |
| 12:56 | 17 | straight run in terms of trial time up before that |
| 12:56 | 18 | Thanksgiving weekend. |
| 12:56 | 19 | Now, a large part of that depends, Mr. Keker, on |
| 12:56 | 20 | how long you think your case is going to take and the |
| 12:56 | 21 | government.  That's what I don't have a handle on yet.  To |
| 12:56 | 22 | be fair, I'm trying to delay that a little bit.  You may be |
| 12:56 | 23 | right.  When you first came in here, I think you both |
| 12:57 | 24 | proposed 80 days, and I thought, gosh, that's not very much |
| 12:57 | 25 | time.  Then you moved to 100; then you moved to 120.  In |

12:57   1   other words, you went up the ladder on me, thinking that

12:57   2   that was going to cause a reaction.  It's a pleasure to have

12:57   3   both counsel here as long as you like to litigate it.

12:57   4          So I'm not worried about time, but I am worried

12:57   5   about fairness to the jury and how I send out that jury

12:57   6   summons.  I don't know if it's a 120-day case.  I don't know

12:57   7   if the government cuts it down, and neither do you in

12:57   8   fairness right now.  But you're going to have time to

12:57   9   litigate this.  Understood?  You're going to have time to

12:57   10  defend this, and you're going to have time to put on your

12:57   11  case.

12:57   12         In good faith when we get together in January, we

12:57   13  will pretty well know our case.  But unless I press now,

12:57   14  folks, we're going to be in the same position in January,

12:57   15  trust me, as we are right now.  So I would just as soon

12:57   16  start off on the onerous and tough road now.  We can always

12:57   17  loosen up.  But I've got to see 25 in August.  If I see that

12:57   18  compliance which I believe you are well on your way to, I am

12:57   19  not going to impose unnecessary costs on you.

12:57   20         I'm probably going to go down to 12 or 13

12:57   21  depositions that you have to have a special master at, have

12:58   22  you pick those, have you tell me why or where.  I will keep

12:58   23  the pressure off you.  But maybe I don't need 25.  Maybe

12:58   24  there's some diminimus people out there that we just don't

12:58   25  need that cost.  Okay?

12:58   1          A large part of that depends upon the banks,

12:58   2   though.  I haven't seen the privilege logs yet.  I haven't

12:58   3   seen the pushback.  But on one or two banks I could have an

12:58   4   interesting discussion with them, I think.  And how I react

12:58   5   to them and how they react to me will set the tone for the

12:58   6   trial, and I think we will have that resolved probably by

12:58   7   Sunday.

12:58   8          MR. KEKER:  Could I come back to something that

12:58   9   doesn't involve the banks?  It's about these depositions.

12:58  10   The way we got --

12:58  11          THE COURT:  Now, I am going to get my special

12:58  12   masters here in a moment, so I want to make sure that there

12:58  13   is nothing that involves them because --

12:58  14          MR. KEKER:  Only in the sense -- this involves you

12:58  15   because it's a discovery issue.  The reason that we're

12:58  16   having 25 depositions, as I understood it originally, was we

12:58  17   came in complaining that the government wouldn't tell us

12:58  18   what people had told them, the ones where we don't have

12:58  19   investigative transcripts.  There were about 50.  You said

12:59  20   go out and take 25 depositions and then we will come back

12:59  21   and see what's going to happen.  So that's who we're taking

12:59  22   depositions of, people that they say have knowledge that we

12:59  23   don't know what they're going to say.

12:59  24          So we have been going out and trying to find out

12:59  25   and ask them if they remember what they told the government,

44

12:59  1    which is clearly not privileged, and lots of them don't

12:59  2    remember what they told the government.  So we will be

12:59  3    coming back to you again after the 25 saying, Judge, please

12:59  4    give us -- we have shown enough particularized need for the

12:59  5    government's work product.  Tell us not impressions but what

12:59  6    they said when they interviewed these people who they didn't

12:59  7    transcribe.

12:59  8           One way to cut through this and to get on to more

12:59  9    meaningful depositions is to make them give us that right

12:59  10   now.  I mean, I don't know why we have to go through 25.

12:59  11   They clearly don't remember.  So we go to take a deposition.

01:00  12   What did you tell the government?  Well, I talked about

01:00  13   this --

01:00  14          THE COURT:  Not initially.  We'll have this

01:00  15   discussion on August 30th.  I'll be more fairly balanced

01:00  16   than at this point.  But remember, the government is now

01:00  17   paying the cost.  That's the government's responsibility.

01:00  18   How much they want to run up the bill and pay for it is up

01:00  19   to them also.

01:00  20          But I will have a better indication in August when

01:00  21   I have 25 behind me at a baseline.  Right now Judge Smith

01:00  22   tells me that he has had two.  I think Roberts told me that

01:00  23   he has got two or three out of the way.  I think you've got

01:00  24   six scheduled in New York, and then you've got eight, and I

01:00  25   forget which one has them in which order.  I will have a

01:00    1    pretty good indication from my special masters by

01:00    2    August 30th.  I've got a pretty good baseline.  Then we'll

01:00    3    have a thoughtful discussion about it.  If I can save you

01:00    4    some money, I will.  I'll cut it back.

01:00    5            MR. KEKER:  August 30th is the Saturday of Labor

01:00    6    Day, Your Honor.

01:00    7            THE COURT:  Well, I am going to be here, counsel.

01:00    8    I know you're not going to be here.  Don't worry about it.

01:00    9    The week after.  How's that?  Okay.  Pick a date that's

01:00   10    convenient for you and we'll make it that day.

01:01   11            Now, counsel, the banks.  I don't care which

01:01   12    particular order.

01:01   13            Okay.  Are you ready for the tentative, then?  Let

01:01   14    me go back and work it.  I am going to send you to lunch for

01:01   15    about an hour, and here's why:  For Citi, Deutsche Bank, and

01:01   16    Countrywide, I don't want you to appear in the light that

01:01   17    you did in the tentative, so I want to do some excising

01:01   18    apparently.  There has been some resolutions.  I don't want

01:01   19    your name out there in any unnecessary way.

01:01   20            Since you have resolved it, there is no reason for

01:01   21    me to comment or make a ruling about it.  I take that

01:01   22    resolution on the record.  For the others I am being a

01:01   23    gentleman about it, but I think that -- now, if any of you

01:01   24    reach a resolution in the meantime, you better inform me

01:01   25    very, very quickly, because I am going to work for about an

01:01    1    hour.

01:01    2              So, please, counsel.

01:01    3              MS. TITOLO:  Your Honor, for RBS I think you can

01:02    4    add us to the list of having reached a resolution.

01:02    5              THE COURT:  Resolved?

01:02    6              MS. TITOLO:  Resolved.

01:02    7              THE COURT:  Okay.  S&P agree with that or not?

01:02    8              MR. MARKLEY:  Yes, Your Honor.

01:02    9              THE COURT:  Okay.

01:02   10              MS. TITOLO:  Thank you, Your Honor.

01:02   11              THE COURT:  Okay.  Counsel, then why don't you go

01:02   12    to lunch.  Is an hour enough time for all of you to get a

01:02   13    lunch?  I need at least an hour to excise and take out.  The

01:02   14    opinion is rather long, and I think I can cut the opinion in

01:02   15    half quite frankly.  And remember, this is a draft.  By

01:02   16    giving it to you and let you read it and push back and let

01:02   17    you tell me why I am wrong so as a courtesy to you, you have

01:02   18    a chance to be heard.

01:02   19              And by the way, I am wrong a lot of times and I

01:02   20    can reverse myself.  But you know when a judge is issuing a

01:02   21    tentative, after he has listened to the argument and it

01:02   22    hasn't changed the initial tentative, you better be pushing

01:02   23    back pretty strong with some pretty good reasons.

01:03   24              Now, one thing I don't know that I've really

01:03   25    ferreted out yet is is it, by cost shift, if I move this to

01:03    1    S&P, I need to struggle with the reasonableness standard,

01:03    2    and I'm not certain I've defined that well enough yet.  That

01:03    3    may be an ongoing process.

01:03    4           For instance, for some entities like Deutsche Bank

01:03    5    and others, I don't know why I am paying 950 an hour or why

01:03    6    you're paying 950 an hour, et cetera.  And I am not sure

01:03    7    about a couple of other things that may make these costs not

01:03    8    onerous at all, in other words.

01:03    9           But you may find yourself in the position of

01:03   10    having to sort it out and I may give you 15 days or I may

01:03   11    give you 15 to 30 days.  So you can talk about it over lunch

01:03   12    to have a chance for 15 days to go back and look again at

01:03   13    your discovery requests and see what you really need.  It's

01:03   14    kind of a message but a cost shift.

01:03   15           The second thing is in that 15 days you may be

01:04   16    able to voluntarily narrow it; you may not.  But then my

01:04   17    responsibility is to make certain it's reasonable and to

01:04   18    take into account the categories that you have argued to me.

01:04   19    The banks are paying a portion tentatively of this also, and

01:04   20    you will see that.  But I think we can avoid extravagant

01:04   21    costs quite frankly, and I am going to work with you anyway

01:04   22    and work with the banks.

01:04   23           That's what I mean by the 24/7.  If you come in

01:04   24    with a complaint, we're going to respond to it or to make

01:04   25    sure it's reasonable along the way.  I think the bright-line

01:04    1    test has been set by the Ninth Circuit, but you'll see that

01:04    2    in writing.  And I'll also probably deal with the

01:04    3    seven-factor test, although I don't think it's applicable

01:04    4    anymore.

01:04    5             Counsel, we'll see you at 2:00.

01:04    6                  (Recess taken at 1:04 p.m.;

01:30    7                  proceeding resumed at 2:04 p.m.)

02:04    8             THE COURT:  We are back on the record.  During the

02:04    9    recess I kept hearing a problem concerning search terms, and

02:04   10    I have anticipated that and the breadth of it.  Regardless

02:04   11    of cost shifting I think you are going to be in a dispute

02:05   12    over search terms; aren't you?

02:05   13             Let's make it simple.  Judge Smith is coming down

02:05   14    at 9:00 tonight.  He's bringing up his calendar, so I'm

02:05   15    going to need you here when he arrives.  And for each bank

02:05   16    and for S&P we are going to go through those search terms

02:05   17    tonight and start.  That's his available time.

02:05   18             So I have got your special master coming down.

02:05   19    The government is going to be ordered to be present as well.

02:05   20    We're going to sort out the search terms and see how

02:05   21    voluminous these issues really are, and we'll start tonight

02:05   22    with it.

02:05   23             The second thing is during the recess somebody

02:05   24    came back and informed me that Bank of America and

02:05   25    Standard & Poor's have reached a resolution, but I don't

02:05    1   know what that is.  I appreciate the courtesy.  So this

02:05    2   needs to be on the record and I need to understand what's

02:05    3   occurring.

02:05    4         MS. YBARRA:  Your Honor, Michelle Ybarra from

02:05    5   Keker & Van Nest for defendants.

02:06    6         THE COURT:  Thank you.

02:06    7         MS. YBARRA:  During the recess Mr. Posoz and I

02:06    8   reached agreement on the outstanding issues, the outstanding

02:06    9   disputes between Bank of America and S&P.  And I will go

02:06   10   through those and --

02:06   11         THE COURT:  I want to hear those on the record

02:06   12   since we took a long time laying those out, and I want to be

02:06   13   certain that this has really occurred.

02:06   14         MS. YBARRA:  Okay.  And, Mr. Posoz, please correct

02:06   15   me if I've gotten anything incorrect.

02:06   16         On the production of lost documents from the six

02:06   17   custodians we discussed earlier today, Bank of America has

02:06   18   agreed to produce documents from those six custodians and

02:06   19   they have agreed to complete production within 30 days.

02:06   20         On the production of materials that the bank has

02:06   21   produced in other litigation, specifically with respect to

02:06   22   the high-grade CDO, Tricadia CDO, and Templepoint Funding II

02:06   23   and the two Merrill Lynch RMBS that we discussed earlier

02:07   24   today, Bank of America has agreed to produce those

02:07   25   productions to S&P within 30 days, including deposition

02:07 1  transcripts, expert reports, and copies of unredacted

02:07 2  filings.  And that resolves our dispute as to that category

02:07 3  of documents.

02:07 4          THE COURT:  Does Bank of America agree?

02:07 5          MR. POSOZ:  We do, Your Honor.

02:07 6          THE COURT:  Okay.

02:07 7          MS. YBARRA:  On the last category, the government

02:07 8  oversight documents, in light of the concerns raised by Bank

02:07 9  of America today and their willingness to cooperate with us

02:07 10 in getting the materials we want, we have decided on a plan

02:07 11 of action that S&P is agreeable to and I believe Bank of

02:07 12 America is as well.  By the end of the week Bank of America

02:07 13 is going to identify custodians at Merrill Lynch and Bank of

02:07 14 America that have been in regular contact with government

02:07 15 regulators about the securities at issue in this case and

02:08 16 are going to provide us a list of those custodians and a

02:08 17 list of regulators that they are regularly in contact with

02:08 18 by Friday of this week.

02:08 19         Then we agreed that some production from those

02:08 20 custodians is going to be made.  We are going to meet and

02:08 21 confer when Bank of America produces that list to make it --

02:08 22         THE COURT:  When will that list be produced?

02:08 23         MR. POZOS:  Your Honor, the list would be by

02:08 24 Friday.  And hopefully if we can keep this set of documents

02:08 25 focused, it will be on 30 days along with the priority

02:08  1    documents.

02:08  2              THE COURT:  Would you repeat that for me.

02:08  3              MR. POSOZ:  Yes, Your Honor.  We are targeting 30

02:08  4    days out, assuming that everybody agrees on the final list

02:08  5    of custodians.

02:08  6              THE COURT:  And how will I know that?  In other

02:08  7    words, I don't want to delay 30 days if there is an issue

02:08  8    because it's harming the rest of my schedule, and the banks

02:08  9    aren't going to be in that position dictating.  So would you

02:09  10   have that discussion privately for a moment and let me know

02:09  11   your date.

02:09  12             (Counsel conferring)

02:09  13             MS. YBARRA:  Your Honor, we can provide a joint

02:09  14   status update to the Court by a week from Friday on where we

02:09  15   are in that production if that's acceptable to you.

02:09  16             THE COURT:  It is.  And what I am waiting on is

02:09  17   the depositions taking place and who those are with.  I

02:09  18   don't know specifically if that influences.  I am assuming

02:09  19   it doesn't, so --

02:09  20             MS. YBARRA:  I don't think it will -- it will not

02:09  21   influence any of the depositions that are currently

02:09  22   scheduled.

02:09  23             THE COURT:  Okay.  That's what I was trying to

02:09  24   think through because I didn't want to claw back those

02:09  25   people.

02:09   1          Is that acceptable to S&P?

02:09   2          MS. YBARRA:  Yes, it is.

02:09   3          THE COURT:  And to the bank?

02:09   4          MR. POSOZ:  It is, Your Honor.

02:09   5          THE COURT:  Now, let me discuss with the two of

02:09   6   you and with NCUA and the other banks what those search term

02:10   7   disputes were.  You're one of the entities that brought up

02:10   8   the breadth of the search term and pushed back, and I don't

02:10   9   want an overly broad sweep because right now it's going to

02:10   10  cost S&P some money.

02:10   11         MS. YBARRA:  Yes, Your Honor.  We have proposed to

02:10   12  Bank of America a search term methodology.  Some of the

02:10   13  search terms are necessarily somewhat broad, but they will

02:10   14  only pick up documents if they also hit on specific security

02:10   15  names of the securities at issue in this case.

02:10   16         THE COURT:  You understand that tentatively you

02:10   17  are controlling the costs.  In other words, how you dictate

02:10   18  those search terms depends on what the bill is.  That's one

02:10   19  area where I won't help lessen the cost.  You have the

02:10   20  unique ability to get information through this Court.  It's

02:10   21  going to be very generous about that, but you're not going

02:10   22  to run rampant with broad search terms and not pay for them.

02:11   23         MS. YBARRA:  Of course not.

02:11   24         THE COURT:  Okay.  And I think what I'm going to

02:11   25  propose in a few moments is giving 45 days, 15 days for S&P

02:11   1    to go back and have a thoughtful discussion about if you

02:11   2    want to narrow some of your discovery requests, but --

02:11   3         MS. YBARRA:  Your Honor, with respect to search

02:11   4    terms, I'll say what we have asked Bank of America to do and

02:11   5    what I believe they have agreed to do is run -- do a

02:11   6    preliminary assessment of what the volume of documents that

02:11   7    our proposed search terms is going to generate, how many

02:11   8    documents we're going to get on those hits.  And then we can

02:11   9    come back and --

02:11   10        THE COURT:  I think it would be the opposite.  I

02:11   11   would think it's incumbent upon you to narrow your terms and

02:11   12   be specific.

02:11   13        MS. YBARRA:  We have narrowed them as best we can.

02:11   14   I think the bank is still concerned that they are going to

02:11   15   pick up a great volume of documents, so we've asked them to

02:11   16   do this preliminary assessment search.

02:11   17        THE COURT:  I am going to want to go through that.

02:11   18   Unfortunately I thought we had that resolved, but we don't.

02:11   19   I want to see those terms tonight.  I don't have time right

02:11   20   now to get into the depth of that discovery with you, but

02:12   21   Judge Smith will be here tonight and we'll go through those.

02:12   22   I want to see them.

02:12   23        MS. YBARRA:  Okay.

02:12   24        THE COURT:  Okay.  Thank you.

02:12   25        Anybody else before we turn back to the parties

02:12    1    concerning this tentative?

02:12    2            Okay, Mr. Keker.  Push back on this.  You have the

02:12    3    tentative.

02:12    4            MR. KEKER:  Well, I have done my pushing

02:12    5    unsuccessfully and understand what you have put down here.

02:12    6    I think that the devil is in the details.  The $200,000

02:12    7    limitation is a reasonable number, it seems to us, if there

02:12    8    is going to be some number like that.

02:12    9            But the real question is going to be what are the

02:12    10   reasonable costs incurred.  If they don't include attorneys'

02:12    11   fees, if they are forward-looking costs, if they don't

02:12    12   include charges for document productions that have been

02:12    13   given to somebody else and they're just basically flipping

02:13    14   document productions, and they don't include privilege

02:13    15   reviews and responsiveness reviews, then we think all of

02:13    16   this we can live with and we will have to work with the

02:13    17   banks to figure it out.

02:13    18            I am concerned about trying to solidify search

02:13    19   terms tonight at 9:00 when what we need to do now that we've

02:13    20   gotten this order from you is to go back, as you have said,

02:13    21   look at what we're asking for, work with the banks -- in

02:13    22   short, take that 15 days to sort through the search terms as

02:13    23   it will be affecting the cost order.  I don't think we can

02:13    24   do that effectively tonight at 9:00 or tomorrow or the next

02:13    25   day.  I think we're going to need that 15 days to do it.  We

02:13    1    would ask you to let us do that and sort of finalize things

02:14    2    and then report to you 15 days from now.

02:14    3              THE COURT:  This is going to sound very

02:14    4    unreasonable to you, so I'm going to own what I'm going to

02:14    5    say.  I can't go back and call up people and say:  Are you

02:14    6    available tonight?  Judge, you know what?  I can come down,

02:14    7    but I'm in the middle of mediation.  I'll break my schedule

02:14    8    up.  I can be there by 9:00.  And then five minutes have

02:14    9    somebody come into chambers and say, oh, by the way, we've

02:14   10    resolved X, Y, and Z.  It doesn't work that way.

02:14   11              Judge Smith will be here at 9:00, and we're going

02:14   12    to start on the search terms.  I don't know if we're going

02:14   13    to finish them or not.  I have no idea.  But I am going to

02:14   14    have a better understanding of the breadth and depth of what

02:14   15    you're requesting tonight.  And it may be very reasonable,

02:14   16    but it's going to start governing how I view your

02:14   17    reasonableness request.

02:14   18              So if I see search terms that cover the waterfront

02:15   19    tonight and Judge Smith and I sit there and say, you know,

02:15   20    this is completely unreasonable, there is a price to pay for

02:15   21    that.  If these are reasonable, there is a price to pay for

02:15   22    that.  So how you're presenting this, a large part of this

02:15   23    is going to depend upon what you're requesting.

02:15   24              MR. KEKER:  Which is exactly why you ought to give

02:15   25    us 15 days to sort through this, figure out what can be

| | | |
|---|---|---|
| 02:15 | 1 | characterized as unreasonable, and not make us do it at 9:00 |
| 02:15 | 2 | at night when everybody is tired and Judge Smith has been in |
| 02:15 | 3 | a mediation all day.  The way to do it now that we have your |
| 02:15 | 4 | guidance and now that you have made very, very clear to the |
| 02:15 | 5 | banks what your expectations are, and I think everybody in |
| 02:15 | 6 | this room gets it, we can work this out, but we need a |
| 02:15 | 7 | little bit of time to do it. |
| 02:15 | 8 | THE COURT:  Let me get off the bench and call |
| 02:15 | 9 | Judge Smith right now, because this call was placed 45 |
| 02:15 | 10 | minutes ago and now I don't want to influence and call again |
| 02:15 | 11 | after that call and he's, you know, doing things that I |
| 02:15 | 12 | think are on the table and now the scenario has changed. |
| 02:15 | 13 | So I will bow to that wisdom.  Okay?  But once |
| 02:16 | 14 | I -- in the future when I place that call -- this is the |
| 02:16 | 15 | first and last time.  When I place it from now on, that's |
| 02:16 | 16 | the end of it.  Understood by everybody? |
| 02:16 | 17 | MR. KEKER:  Yes, sir. |
| 02:16 | 18 | THE COURT:  Okay.  Get down to business.  Do it |
| 02:16 | 19 | beforehand.  But once I place that call, this is the |
| 02:16 | 20 | generous part of Judge Carter right now, to accede to your |
| 02:16 | 21 | wishes. |
| 02:16 | 22 | MR. KEKER:  Got it. |
| 02:16 | 23 | THE COURT:  Okay.  I'll be back in just a moment. |
| 02:16 | 24 | I'm going to place that call. |
| 02:16 | 25 | Does anybody else need search terms ferreted out |

02:16  1   tonight, because we're not coming back without a price to

02:16  2   pay?  Just let me know.  I have got the resources tonight,

02:16  3   but this is not, oh, Judge, in 15 days we have a problem.

02:16  4          So, NCUA, you're the next problem I had.  You

02:16  5   raised these search terms.  You come up here and tell me if

02:16  6   I have got a problem with these terms.  So have a seat,

02:16  7   counsel.  Let's go through these one at a time.  I want your

02:16  8   representations on the record.

02:16  9          MR. HETHERINGTON:  As I understand it, Your

02:16  10  Honor --

02:16  11         THE COURT:  You raised search terms, the breadth

02:16  12  of the search terms, the impossibility of complying.  That

02:17  13  was before, of course, you had the tentative which

02:17  14  tentatively cost shifts.  Having read that, you may have

02:17  15  changed a portion of your opinion, but I'm not going to hear

02:17  16  quibbling later on.  I have got the resources tonight; I've

02:17  17  got them tomorrow.  I don't know that I have got them a week

02:17  18  or two from now, and I'm not going to go through this again.

02:17  19         MR. HETHERINGTON:  I believe with regard to the

02:17  20  search terms, I don't think there is much of an issue.  We

02:17  21  had already run --

02:17  22         THE COURT:  Have you or not and is there an issue?

02:17  23  Yes or no.

02:17  24         MR. HETHERINGTON:  I am trying to explain, Your

02:17  25  Honor.  With regard to the files of the credit unions, we

02:17    1    ran the requested search terms and we had to modify them

02:17    2    slightly just for technical reasons, but it made them

02:17    3    slightly broader.  I don't think there is a problem there.

02:17    4              With regard to the files of NCUA, my understanding

02:17    5    is that there were two search terms that we eliminated in

02:17    6    trying to run some metrics and I don't think they're going

02:17    7    to be controversial.  I think it was like NCUA, which --

02:17    8              THE COURT:  I am sorry.  I don't have the

02:18    9    slightest idea what you're talking about.

02:18   10              MR. HETHERINGTON:  Well, see as we tested how many

02:18   11    documents are going to come back if we ran the same search

02:18   12    terms that S&P requested --

02:18   13              THE COURT:  I am going to take a recess, and you

02:18   14    are going to talk to opposing counsel.  This is a waste of

02:18   15    my time.

02:18   16              MR. HETHERINGTON:  I think we can resolve this

02:18   17    within two minutes, Your Honor.

02:18   18              THE COURT:  Let me know.  I am going to hold off

02:18   19    on calling the judge now.

03:11   20                     (Recess taken at 2:18 p.m.;

03:11   21                      proceeding resumed at 3:11 p.m.)

03:11   22              THE COURT:  Judge Smith will not be back tonight.

03:11   23              All the parties are present.  Let me tell you the

03:11   24    part of the tentative that I am concerned with.  I gave it

03:11   25    to you before lunch just so you could read it over lunch.

03:11   1   There is one portion that I realized I wish I would have

03:11   2   excised.  I am concerned about the portion in that tentative

03:11   3   which I would have stricken upon reflection.  I just did

03:11   4   that too quickly, chopped the tentative.  You haven't seen

03:11   5   the last part of probably the 15 pages with each bank and

03:11   6   each finding, et cetera, which is good.

03:11   7        My setting of the mark for significant expense of

03:12   8   $200,000, that's drawn from the D.C. circuit case of Linder.

03:12   9   I believe that while that's a benchmark set out by Linder

03:12   10  and Legal Voice, that they're instructive but not

03:12   11  controlling.

03:12   12       So I think a much fairer way but a lot more work

03:12   13  for me is I would have preferred to have taken more time and

03:12   14  not given you that last few lines and simply said that I am

03:12   15  going to review each incremental expense on a case-by-case

03:12   16  basis.  I therefore can evaluate the overall significance

03:12   17  and reasonableness of the expense presented by each

03:12   18  nonparty.

03:12   19       That gives you each a really fair opportunity to

03:13   20  come back to me, but it gives me a very fair record in a

03:13   21  sense.  It's just going to be very, very burdensome, but it

03:13   22  also gives you a chance to negotiate out.  In other words,

03:13   23  it gives you a chance to sit down reasonably between the

03:13   24  parties.

03:13   25       The second thing I am convinced of, and it was in

03:13  1  the original tentative on page 30, in cost shifting I have

03:13  2  written that within 15 days the parties shall meet and

03:13  3  confer to revise or narrow their requests as necessary and

03:13  4  then the nonparties shall produce all responsive documents

03:13  5  within 30 days.  So I have given you 45 days in this process

03:13  6  because I wanted S&P to have the opportunity to go back and

03:13  7  really see what the panoply of this discovery was and how

03:13  8  much duplication was truly there and how much wasn't, and

03:13  9  especially search terms.

03:13  10      I think that's about the fairest position I could

03:14  11  be in right now for both parties.  I am giving you each a

03:14  12  little wiggle room.  So I'm going to now turn over to S&P

03:14  13  for a moment for any comments, and then I'll turn back to

03:14  14  each of the respective banks.

03:14  15      MR. KEKER:  Your Honor, we appreciate the

03:14  16  modification.  We think that's exactly the way to do it, not

03:14  17  have a fixed number but have a reasonable standard that we

03:14  18  will talk about as necessary and hopefully, as has happened

03:14  19  here, negotiate and work out something.

03:14  20      THE COURT:  You understand, though, you're going

03:14  21  to be spending a lot more time with me.  I mean, the benefit

03:14  22  is if I set an arbitrary standard, as Linder, it's easier

03:14  23  for me and it's easier for all of you in a sense when I am

03:14  24  setting this on an incremental basis, that's a lot of work

03:14  25  for this Court, but it's a lot of work for all of you.  So

03:14   1   if you get into a dispute and you can't negotiate it back,

03:14   2   you're back in my court a lot of times.

03:14   3            It will be fair, by the way.  It will be a good

03:15   4   record, and I will know who is causing the problem, quite

03:15   5   frankly, and what's reasonable or not along the way.  It's a

03:15   6   fair way but it's going to be a lot of work.

03:15   7            MR. KEKER:  Even with the $200,000 threshold, I

03:15   8   think there is still going to be a lot of negotiation and

03:15   9   discussion about what's a reasonable charge.

03:15   10           THE COURT:  And I'd prefer to put that in your

03:15   11  ballpark first respectively as the litigants if at all

03:15   12  possible, because then you're controlling your own future.

03:15   13  I think that's a little bit fairer way than an arbitrary

03:15   14  standard, so --

03:15   15           MR. KEKER:  Agreed.  The only modification I would

03:15   16  make to what you said is, yes, 15 days, we will work on

03:15   17  that.  But in the meantime I would hope that the banks would

03:15   18  start giving us the documents that we have all agreed on at

03:15   19  least in certain, and we can within days say how about

03:15   20  giving us this production and that production and that

03:15   21  production and getting it sooner than 45 days from now, i

03:15   22  guess is what I'm saying.  It's going to be a lot of work to

03:15   23  go through it.

03:15   24           THE COURT:  Well, I don't know if there's pushback

03:16   25  from the banks.  I assume that that was going to occur, but

03:16    1    at some point I have got to have faith.  But maybe I don't.

03:16    2    Let's find out from the banks' position, because they're

03:16    3    certainly not going to control the litigation, but I don't

03:16    4    think they're trying to.

03:16    5         Some of the questions I had also if there was

03:16    6    going to be pushback concerning past costs, there was

03:16    7    somewhat of a flaying in different positions that I was

03:16    8    hearing.

03:16    9         So let me just start with Bank of America.  Are

03:16   10    you going to be seeking to recover the past costs of already

03:16   11    disclosed material?

03:16   12         MR. POSOZ:  No, Your Honor.

03:16   13         THE COURT:  Okay.  In giving this extra 15 days

03:16   14    instead of 30, what problems am I going to have between you

03:16   15    and S&P that you foresee?  Then I'm going to hear the

03:17   16    problems from S&P's perspective.

03:17   17         MR. POSOZ:  Your Honor, just to address the first

03:17   18    concern, we are not planning to wait 45 days to begin

03:17   19    production.  We are planning to do rolling production

03:17   20    beginning hopefully this week for prior litigation material.

03:17   21    So, Your Honor, we don't anticipate abusing the 15 days.

03:17   22         THE COURT:  Do I need to set a status conference

03:17   23    in 15 days and order each of you back to make sure that

03:17   24    that's being carried forward?  Could I trust you on this?

03:17   25         MR. POSOZ:  Your Honor, we're happy to come, but

03:17  1    we believe that that would be unnecessary.

03:17  2              THE COURT:  Okay.  The glass is always half full

03:17  3    until proven differently.  Okay.  That's all I need.  In

03:17  4    other words, at some point the Court would prefer to have it

03:17  5    that way.

03:17  6              RBS, let me hear your position.  We'll deal with

03:17  7    NCUA in just a moment.

03:17  8              MS. TITOLO:  Thank you, Your Honor.  Teresa

03:17  9    Titolo.  We are not planning to seek past costs, and we have

03:17  10   already put the wheels in motion to provide materials.  So

03:17  11   we will be making productions within the first 15 days.

03:18  12             THE COURT:  What problems are occurring between

03:18  13   the two of you?  Are there any, or can I accept this on both

03:18  14   of your parts?  In other words, I don't want to arbitrarily

03:18  15   order you back in 15 days, but I'll have you back tomorrow

03:18  16   if I need to.

03:18  17             MS. TITOLO:  I don't believe we have any issues

03:18  18   that we need to take up at this time.

03:18  19             MR. MARKLEY:  I agree.  It wouldn't be necessary,

03:18  20   Your Honor.

03:18  21             THE COURT:  Okay.  The glass is half full, all

03:18  22   right, until proven differently.

03:18  23             Citi.

03:18  24             MS. BARZELAY:  Your Honor, we have already made

03:18  25   substantial productions, and we have almost completed

| | | |
|---|---|---|
| 03:18 | 1 | everything from prior productions we plan to flip.  We've |
| 03:18 | 2 | continued to proceed forward, and we're not seeking costs -- |
| 03:18 | 3 | THE COURT:  That was my impression also on behalf |
| 03:18 | 4 | of Citi.  I didn't see any issue, but let me turn to S&P. |
| 03:18 | 5 | MR. KEKER:  We agree, Your Honor. |
| 03:18 | 6 | THE COURT:  Okay.  So no mandatory 15 days.  Let's |
| 03:18 | 7 | S&P go back and -- you may not be even an issue, okay, but |
| 03:19 | 8 | they need to go back and really reflect if they want to |
| 03:19 | 9 | narrow their discovery requests, and they'll have 15 days to |
| 03:19 | 10 | do it. |
| 03:19 | 11 | Deutsche Bank.  And this pertains to past costs, |
| 03:19 | 12 | and it also pertains to going forward. |
| 03:19 | 13 | MS. CAREY:  Yes, Your Honor.  We are not seeking |
| 03:19 | 14 | reimbursement for past costs, and we are going to negotiate |
| 03:19 | 15 | search terms hopefully very shortly and have no need, we |
| 03:19 | 16 | think, to come back in 15 days. |
| 03:19 | 17 | THE COURT:  Okay.  Now, I am going to once again |
| 03:19 | 18 | give you that opportunity with search terms.  Tonight, as |
| 03:19 | 19 | you heard, we were starting down the line with B of A, and |
| 03:19 | 20 | you were next, and then whatever.  I'm just going to take |
| 03:19 | 21 | that once again as the glass is half full and not half |
| 03:19 | 22 | empty.  Okay? |
| 03:19 | 23 | I don't care where you come out, but I need to |
| 03:19 | 24 | know quickly because what you can't do along with S&P is get |
| 03:19 | 25 | into a bickering match over search terms and then come back |

03:20  1  to the Court and say, whoops, we've got to have additional

03:20  2  time.

03:20  3          MS. CAREY:  Understood, Your Honor.

03:20  4          THE COURT:  Okay.  Fair enough.  The glass is half

03:20  5  full, then.

03:20  6          Then Countrywide.  And I think you're in the same

03:20  7  position as Citi, quite frankly.

03:20  8          MR. GARABED:  Yes, Your Honor.  We're not seeking

03:20  9  past costs.  We plan to concern our production on a rolling

03:20  10  basis, hopefully within a week.  I don't see any reason I

03:20  11  would need to come back in 15 days.

03:20  12          THE COURT:  Okay.  S&P.

03:20  13          MR. KEKER:  Agreed, Your Honor.

03:20  14          THE COURT:  Okay.  Now, NCUA.

03:20  15          MR. HETHERINGTON:  Is that two questions?

03:20  16          THE COURT:  I am waiting for you.

03:20  17          MR. HETHERINGTON:  I don't think we have an issue

03:20  18  with search terms.  I talked to Mr. Markley while you were

03:20  19  out, and we resolved the ambiguity that I mentioned.  With

03:20  20  regard to past --

03:20  21          THE COURT:  And we'll see about the 15 days,

03:20  22  trying to narrow that for you.

03:20  23          MR. HETHERINGTON:  Well, I think the search terms

03:20  24  are probably workable.  There are other issues that we will

03:21  25  need to discuss, but I don't think it's going to be search

03:21   1   terms.  I am confident that we can resolve them.

03:21   2               THE COURT:  What are those other issues?

03:21   3               MR. HETHERINGTON:  The number of custodians.  I

03:21   4   mean, all of this is in S&P's --

03:21   5               THE COURT:  I am not too certain that any bank is

03:21   6   ever going to be satisfied.  I don't think S&P is ever going

03:21   7   to be fully satisfied; I don't think your side is going to

03:21   8   be fully satisfied.  But I am not certain how much faith I

03:21   9   have in the ability of S&P and NCUA to compromise, frankly,

03:21   10  and I'm wondering if you need my guidance.

03:21   11              MR. HETHERINGTON:  Well, Your Honor, why don't I

03:21   12  answer the questions you have been asking everybody else,

03:21   13  and then you can decide that.

03:21   14              THE COURT:  Please.

03:21   15              MR. HETHERINGTON:  All right.  I think for us, one

03:21   16  of our main concerns is with the cost of privilege review.

03:21   17  That's something that may be an outstanding issue between us

03:21   18  and S&P that we may need your guidance on as we proceed.

03:22   19              With regard to past costs, we were never going to

03:22   20  seek reimbursement of those costs.  I recognize that if you

03:22   21  had come out and said $20,000, then I could have felt a bit

03:22   22  foolish about that.  But we do ask that the almost $200,000

03:22   23  that we have spent be considered as going towards or taken

03:22   24  into account when Your Honor decides what are appropriate

03:22   25  costs.  In other words, we don't want any of that back, but

03:22  1   we would like it to be recognized as we go forward as you

03:22  2   make decisions about what our reasonable costs are, that

03:22  3   it's taken into account that we have already spent that

03:22  4   money.

03:22  5          The last thing is -- and I realize this wasn't

03:22  6   really being posed as a question, and I am reluctant to say

03:22  7   this but I think it's necessary.  With regard to a 30-day

03:22  8   turnaround in production, we obviously commit that we will

03:22  9   did our level best to comply with any deadline that you set

03:22  10  for us.

03:22  11         Just having dealt with vendors, running search

03:23  12  terms, I just have to go on the record now rather than come

03:23  13  to you later when it's too late and say that I very much

03:23  14  doubt based on my experience that it is going to be possible

03:23  15  to do that.  We will make every effort to do it.  We will

03:23  16  give you a good accounting of why any delays happen, but I

03:23  17  would rather be up front about that now than hear it from

03:23  18  your later as to why we haven't done it.

03:23  19         THE COURT:  Well, I appreciate it, but it's quite

03:23  20  the opposite reaction that you might expect, because if I

03:23  21  have got that problem, I need to start on that problem

03:23  22  almost immediately.  You see, it puts me in the box of

03:23  23  having a future dispute or conflict that I can deal with now

03:23  24  in a timely fashion or this weekend -- I mean, right now as

03:23  25  opposed to delaying it 15 days and having this same

03:23  1   discussion in 15 days.

03:24  2          That's why I called Judge Smith initially, was to

03:24  3   get this started tonight, and then I heard 9:00 was too

03:24  4   late.  And I heard S&P saying they wanted the opportunity to

03:24  5   sort out these terms.  So I respect your position.  I have

03:24  6   no disagreement with you.  You may be absolutely right.  But

03:24  7   I'm about to go back and reinvigorate this.

03:24  8          Now, if I make that call again, that's it.  Okay?

03:24  9   I'm not running a colleague back in here a second time.  So

03:24  10  you two have a real quick conversation one more time, and I

03:24  11  want to be certain.  But if I hear the same thing, then,

03:24  12  counsel, we're off and running.  So you two have a

03:24  13  conversation.

03:24  14          (Counsel conferring)

03:25  15          THE COURT:  I am concerned about this last entity,

03:25  16  but it's not going to impose on your time.

03:25  17          Counsel.

03:25  18          MR. HETHERINGTON:  Your Honor, I believe that we

03:25  19  will be able to work this out.

03:25  20          THE COURT:  Okay.

03:25  21          Mr. Keker.

03:25  22          MR. KEKER:  We're good with that.

03:25  23          THE COURT:  Once again, I am going to accept that.

03:25  24  Okay?  But trust me.  I do not want to deal with this in 15

03:25  25  days.  I've got the resources now, and I don't want to waste

03:25    1    my time by hearing this conversation again.  Now, in good

03:25    2    faith if you come back to me, I'll deal with it as a

03:25    3    colleague and a judge.

03:25    4          All right.  Then what else do you need this

03:25    5    evening?

03:25    6          MR. KEKER:  One thing, Your Honor.  You said you

03:25    7    wanted to set the end of August.  We have met and conferred.

03:26    8    There is a motion that deals with deliberative process

03:26    9    privilege that is currently set for August 25th.  I can't be

03:26   10    here August 25th.  I am in Judge Breyer's court for a

03:26   11    hearing.  But we've talked.  If we could be heard the week

03:26   12    after Labor Day, September 4th is preferable.  September 5th

03:26   13    -- September 4th is preferable.

03:26   14          THE COURT:  Absolutely.  Say hi to Judge Breyer

03:26   15    and tell him that he's far senior to me, much older-looking

03:26   16    and -- I'm just kidding, counsel.  He's a good friend.

03:26   17          Why don't you pick the date that week, but bear

03:26   18    with me.  I'll be in trial that week, so -- no.  Time out.

03:26   19    I may not be available.  It has to be the following week.

03:26   20    It either has to be August -- because of my schedule it

03:26   21    could be August 20th, August 18th, 19th; or it could be

03:26   22    September 8, 9, or 10.

03:27   23          MR. KEKER:  How about the 10th.  Does the 10th

03:27   24    work, September 10?

03:27   25          THE COURT:  Let me give those dates to you again.

03:27    1          MR. KEKER:  But we won't be finished.  In August

03:27    2    we won't be finished with all the depositions.  By September

03:27    3    we will be able to say we did them all, and we will give you

03:27    4    a full report.

03:27    5          THE COURT:  That's fine.  But, trust me, I am

03:27    6    talking to the special masters, you know, three or four

03:27    7    times a week.  So I have got a running dialogue.  I know

03:27    8    exactly where you two are.

03:27    9          How about -- in fact, we will be partway into

03:27   10    September.  It was really a courtesy to each of you.  The

03:27   11    reason I was doing that early is if I don't need special

03:27   12    masters there, I can cut back.  But I need to see the

03:27   13    production of those first 25 frankly or more just in good

03:27   14    faith to know that --

03:28   15          MR. KEKER:  Then could we unhook the two things.

03:28   16    One thing is this deliberative privilege motion, that can be

03:28   17    whenever --

03:28   18          THE COURT:  I can hear that earlier.

03:28   19          MR. KEKER:  But the status conference -- if

03:28   20    Mr. Cardona and I could be here for a status conference that

03:28   21    previous week, if there's any time that previous week,

03:28   22    Thursday or Friday we could do it.

03:28   23          THE COURT:  Well, you won't have the depos

03:28   24    completed, though, by the 28th or the 29th.  So here is what

03:28   25    I am going to do.  I am simply going to schedule it for

03:28  1    September 9th.  It's a Wednesday.  Are you available,

03:28  2    Mr. Cardona, on Wednesday, the 9th?  There's not going to be

03:28  3    any --

03:28  4              MR. CARDONA:  I think that's a Tuesday.

03:28  5              MR. KEKER:  September 9th is good with us.  And

03:28  6    that's true; it's a Tuesday.

03:28  7              THE COURT:  Maybe I should get the correct year.

03:28  8    Doesn't that give you a lot of confidence, counsel?  I've

03:28  9    moved from 2014 to 2015.  Isn't that a confidence builder?

03:29  10             MR. KEKER:  Sure.

03:29  11             THE COURT:  Hold on.  Either the 9th or the 10th,

03:29  12   either Tuesday or Wednesday.  Either good for you?

03:29  13             MR. CARDONA:  Either of those dates will work for

03:29  14   me, Your Honor.

03:29  15             THE COURT:  Okay.

03:29  16             MR. KEKER:  Your Honor, I can't do it the 10th.

03:29  17             THE COURT:  Let's do September 9th.  I will have

03:29  18   all of my August results in.  I'll know if reality is really

03:29  19   reality.  And then, trust me, I will lighten up in some way

03:29  20   so that I am not running up expenses.  Okay?

03:29  21             MR. CARDONA:  Your Honor, I guess the next

03:29  22   question is:  Are you leaving NCUA's motion on for

03:29  23   August 25th?

03:29  24             THE COURT:  I am going to advance it because I am

03:29  25   not certain I'm available.  I am going to advance it to the

03:29  1   19th, August 19th, Tuesday.  I am going to move it up, not

03:29  2   back.

03:29  3            MR. KEKER:  Your Honor, that's one that I can't be

03:29  4   there, but I don't need to be there.  So if that's okay with

03:29  5   you, I won't be there on that date.

03:29  6            THE COURT:  That's fine.

03:29  7            MR. KEKER:  I will be there for the status

03:30  8   conference on the 9th.  The status conference, if it could

03:30  9   be in the afternoon, that would make it easier for people to

03:30  10  get here, if that's possible.  You've had 3:00 p.m. hearings

03:30  11  in this case.

03:30  12           THE COURT:  I was hoping for the 7:30.  I'm not

03:30  13  going to put you on the 8th because I've got a calendar --

03:30  14  I'm thinking out loud.  I wanted you at 7:30 because I'm

03:30  15  going to be in trial.  I don't want to impose an extra night

03:30  16  on you.  I will try at 3:00, but you've got to be patient

03:30  17  with me.  If I'm in trial that day, I'm not going to hear

03:30  18  you until whenever.  You're going to sit.

03:30  19           MR. KEKER:  That's better for Mr. Abrams, who's

03:30  20  coming from Florida where he has an argument the day before.

03:30  21  So we will come and wait.

03:30  22           THE COURT:  Okay.  Well, then, the 9th.  Let's

03:30  23  make it at 3:00, brief status conference.  And on the 19th,

03:30  24  I'm going to advance your motion to that date.

03:30  25           MR. HETHERINGTON:  3:00?

| | | |
|---|---|---|
| 03:30 | 1 | THE COURT:  Where are you coming from? |
| 03:30 | 2 | MR. HETHERINGTON:  Washington, D.C. |
| 03:30 | 3 | THE COURT:  Yeah.  Can you catch a morning flight, |
| 03:30 | 4 | and that way you don't have to spend the night?  Okay, 3:00. |
| 03:30 | 5 | Okay.  Anything else? |
| 03:31 | 6 | MR. KEKER:  Thank you, Your Honor. |
| 03:31 | 7 | THE COURT:  Thank you. |
| 03:31 | 8 | Well, then, we will hand down this ruling in |
| 03:31 | 9 | written form. |
| 03:31 | 10 | Let me see if there is anything else that I have. |
| 03:31 | 11 | Counsel, I don't think so.  I think I am satisfied if all of |
| 03:31 | 12 | you are satisfied today. |
| 03:31 | 13 | Have a good day.  Thank you. |
| 03:31 | 14 | MR. KEKER:  Thank you, Your Honor. |
| 03:31 | 15 | MR. HETHERINGTON:  Thank you, Your Honor. |
| 03:31 | 16 | (Proceeding concluded at 3:51 p.m.) |
| 03:51 | 17 | *    *    * |
| 03:51 | 18 | |
| 03:51 | 19 | |
| 03:51 | 20 | |
| 03:51 | 21 | |
| 03:51 | 22 | |
| 03:51 | 23 | |
| 03:51 | 24 | |
| 03:51 | 25 | |

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:  August 1, 2014

/s/   Sharon A. Seffens  8/1/14
_____
SHARON A. SEFFENS, U.S. COURT REPORTER

**$**

$20,000 [2] 17/17 66/21
$200,000 [4] 54/6 59/8 61/7
  66/22
$5 [1] 20/1
$5 million [1] 20/1
$55 [2] 29/25 30/4
$55 million [2] 29/25 30/4
$800 [1] 10/4
$900 [1] 10/4

**/**

/s [1] 74/16

**0**

053 [1] 1/22
0870 [1] 1/23

**1**

1-053 [1] 1/22
10 [2] 69/22 69/24
10 million [2] 24/23 24/24
100 [5] 25/2 25/23 35/6 35/7
  41/25
10005 [2] 3/16 3/20
10019 [2] 4/7 4/18
105 [3] 34/12 34/13 34/13
10th [4] 69/23 69/23 71/11
  71/16
11 [1] 37/6
12 [1] 42/20
120 [1] 41/25
120-day [1] 42/6
1285 [2] 4/6 4/17
12:06 [1] 6/1
12th [1] 2/6
13 [1] 42/20
14 [1] 74/16
15 [26] 47/10 47/11 47/12
  47/15 52/25 54/22 54/25 55/2
  55/25 57/3 59/5 60/2 61/16
  62/13 62/21 62/23 63/11 63/15
  64/6 64/9 64/16 65/11 65/21
  67/25 68/1 68/24
15 million [1] 7/11
15 percent [1] 22/24
150 [2] 25/18 35/10
1500 [1] 4/23
1615 [1] 4/12
18300 [1] 3/11
1875 [1] 5/10
18th [1] 69/21
19th [4] 69/21 72/1 72/1 72/23
1:04 [1] 48/6

**2**

2000 [1] 4/22
20006 [2] 4/23 5/10
20036 [1] 4/13
2010 [1] 19/9
2014 [4] 1/19 6/1 71/9 74/14
2015 [1] 71/9
202-326-7900 [1] 4/13
202-663-6527 [1] 5/11
202-701-3000 [1] 3/21
202-862-8900 [1] 3/17
202-974-1500 [1] 4/23
20th [1] 69/21
2100 [1] 5/14
212-373-3553 [1] 4/7
212-373-3566 [1] 4/18
213-443-5307 [1] 5/15
213-457-8086 [1] 5/6

213-894-2434 [1] 2/7
213-894-6086 [1] 2/12
24/7 [15] 27/22 39/15 40/12
  40/15 47/23
2434 [1] 2/7
25 [14] 33/23 34/7 34/21 36/19
  37/20 37/24 42/17 42/23 43/16
  43/20 44/3 44/10 44/21 70/13
25th [3] 69/9 69/10 71/23
28 [3] 26/22 28/20 74/8
28th [1] 70/24
29 [2] 1/19 6/1
2900 [1] 5/5
29th [1] 70/24
2:00 [1] 48/5
2:04 [1] 48/7
2:13-CV-0779-DOC [1] 1/9
2:18 [1] 58/20

**3**

30 [9] 47/11 49/19 49/25 50/25
  51/3 51/7 60/1 60/5 62/14
30-day [2] 21/16 67/7
300 [1] 2/10
3000 [1] 3/21
30th [6] 34/3 34/8 37/20 44/15
  45/2 45/5
312 [1] 2/5
350 [1] 5/14
355 [1] 5/4
3553 [1] 4/7
3566 [1] 4/18
3:00 [5] 72/10 72/16 72/23
  72/25 73/4
3:11 [1] 58/21
3:51 [1] 73/16

**4**

40 million [1] 15/20
400 [1] 4/12
411 [1] 1/22
415-391-5400 [4] 2/19 2/23 3/4
  3/8
45 [5] 52/25 56/9 60/5 61/21
  62/18
4700 [1] 2/6
4th [3] 1/22 69/12 69/13

**5**

50 [4] 34/15 34/20 35/10 43/19
50 million [2] 6/21 7/23
50th [1] 37/6
5307 [1] 5/15
5400 [4] 2/19 2/23 3/4 3/8
543-0870 [1] 1/23
5th [1] 69/12

**6**

6086 [1] 2/12
6103 [1] 5/20
633 [2] 2/22 3/3
650-858-6103 [1] 5/20
6527 [1] 5/11

**7**

7.5 million [1] 24/24
710 [2] 2/18 3/7
714 [1] 1/23
753 [1] 74/7
7616 [1] 2/11
7900 [1] 4/13
7:30 [2] 72/12 72/14

**8**

8/1/14 [1] 74/16

80 [3] 3/16 3/20 41/24
8086 [1] 2/12
8700 [1] 3/13
8900 [1] 3/17
8th [1] 72/13

**9**

9/11 [1] 37/6
90012 [1] 2/11
90012-4700 [1] 2/6
90071 [2] 5/5 5/15
92612 [1] 3/12
92701 [1] 1/23
930 [1] 3/12
93404 [1] 5/19
94111 [4] 2/18 2/22 3/4 3/8
949-476-8700 [1] 3/13
950 [3] 5/19 47/5 47/6
9:00 [5] 48/14 55/8 55/11 56/1
  68/3
9:00 or [1] 54/24
9:00 when [1] 54/19
9th [7] 71/1 71/2 71/5 71/11
  71/17 72/8 72/22

**A**

abandoned [1] 17/25
ability [2] 52/20 66/9
able [5] 19/25 21/22 47/16
  68/19 70/3
ably [1] 40/21
about [81]
above [2] 15/7 74/10
above-entitled [1] 74/10
Abrams [3] 3/15 35/22 72/19
absolutely [3] 19/3 68/6 69/14
absorb [1] 38/5
absorbing [1] 15/14
abstract [3] 18/21 19/1 19/4
abusing [1] 62/21
accede [1] 56/20
accept [4] 27/2 37/14 63/13
  68/23
acceptable [2] 51/15 52/1
accepted [1] 8/2
account [3] 47/18 66/24 67/3
accounting [1] 67/16
accumulated [1] 33/2
action [2] 8/18 50/11
actually [2] 6/19 13/22
add [6] 11/21 16/23 16/25 17/2
  20/25 46/4
additional [4] 20/25 21/13
  39/1 65/1
address [9] 6/4 7/16 9/11
  10/15 11/23 15/25 20/18 22/4
  62/17
adequately [1] 27/12
ADMINISTRATION [1] 4/9
advance [4] 38/8 71/24 71/25
  72/24
advanced [1] 38/15
advice [1] 39/4
affecting [1] 54/23
after [5] 44/3 45/9 46/21
  56/11 69/12
afternoon [1] 72/9
again [18] 6/5 7/22 9/8 10/17
  14/18 16/2 21/23 37/25 44/3
  47/12 56/10 57/18 64/17 64/21
  68/8 68/23 69/1 69/25
against [5] 11/4 19/20 19/23
  20/15 20/16
age [2] 11/3 13/7

# A

agencies [5] 19/12 19/21 31/1
agency [2] 18/14 31/4
ago [4] 23/24 25/10 26/2 56/10
agree [10] 6/10 16/21 17/8
 25/13 25/22 28/19 46/7 50/4
 63/19 64/5
agreeable [1] 50/11
agreed [12] 10/22 21/9 26/15
 27/8 49/18 49/19 49/24 50/19
 53/5 61/15 61/18 65/13
agreeing [1] 26/25
agreement [4] 19/6 19/8 19/15
 49/8
agrees [1] 51/4
ahead [2] 24/3 31/4
all [45] 6/10 12/1 12/5 12/25
 13/24 16/15 17/11 22/2 22/6
 24/4 28/1 28/9 28/12 28/23
 29/6 29/5 31/12 31/21 32/7
 34/1 36/10 36/16 36/21 37/1
 38/14 40/18 46/12 47/8 54/15
 56/3 58/23 60/4 60/23 60/25
 61/11 61/18 63/3 63/21 66/4
 66/15 69/4 70/2 70/3 71/18
 73/11
allegation [1] 8/22
allow [2] 10/6 10/8
Allyson [1] 5/13
allyson.fortier [1] 5/16
almost [4] 20/1 63/25 66/22
 67/22
along [4] 47/25 50/25 61/5
 64/24
already [25] 6/10 7/4 7/19
 7/21 8/3 8/5 9/6 18/3 24/25
 25/1 25/3 25/25 26/9 32/3
 32/17 32/20 33/2 33/2 37/20
 39/25 57/21 62/10 63/10 63/24
 67/3
also [26] 4/2 7/21 8/9 8/16
 9/19 16/7 17/8 17/17 18/24
 21/16 25/24 27/19 29/2 32/14
 32/18 38/2 38/25 39/15 44/19
 47/19 48/2 52/14 59/22 62/5
 64/3 64/12
although [1] 33/19 36/24 48/3
Alto [1] 5/19
always [3] 23/11 42/16 63/2
am [71] 9/25 10/15 11/19 12/13
 13/7 18/20 21/11 22/4 22/23
 22/24 23/3 27/4 27/11 27/24
 33/21 33/24 38/7 39/4 39/14
 39/17 41/3 41/4 41/4 41/12
 41/13 42/4 42/18 43/11 45/7
 45/14 45/22 45/25 46/17 46/19
 47/5 47/6 47/21 51/16 51/18
 53/17 54/18 55/13 57/24 58/8
 58/13 58/18 58/24 59/2 59/14
 59/25 60/11 60/23 62/14 64/17
 65/16 66/1 66/5 66/8 67/6
 68/15 68/23 69/10 70/5 70/25
 70/25 71/20 71/24 71/24 71/25
 72/1 73/11
ambiguity [1] 65/19
ambiguous [1] 17/13
ameliorating [1] 25/8
AMERICA [24] 1/7 2/2 4/20 6/11
 6/15 16/22 22/19 27/13 33/6
 39/25 39/25 48/24 49/9 49/17
 49/24 50/4 50/9 50/12 50/12
 50/14 50/21 52/12 53/4 62/9
American [4] 12/17 12/20 12/23

 13/1
Americas [2] 2/6 4/17
among [1] 26/7
amount [4] 9/24 10/11 25/14
 25/25
amounts [1] 16/6
Ana [3] 1/18 1/23 6/1
analogous [1] 31/13
analysis [1] 17/9
Andrew [1] 4/11
Angeles [5] 2/6 2/10 2/11 5/5
 5/15
anniversary [1] 37/6
Anoiel [1] 2/9
another [8] 9/14 12/6 12/19
 15/18 20/6 23/10 32/16 32/24
answer [3] 34/24 36/17 66/12
anticipate [4] 16/5 16/7 23/24
 62/21
anticipated [1] 48/10
anticipating [4] 18/20 20/19
 24/2 35/12
Antonio [1] 4/21
any [31] 6/23 13/10 17/22
 18/19 18/23 19/9 20/13 20/14
 20/16 23/1 23/2 23/2 23/11
 29/17 37/14 40/1 40/22 45/19
 45/23 51/21 60/13 63/13 63/17
 64/4 65/10 66/5 66/25 67/9
 67/16 70/21 71/3
anybody [3] 23/3 53/25 56/25
anymore [1] 48/4
anything [10] 15/7 15/7 16/14
 16/23 22/4 23/13 32/11 49/15
 73/5 73/10
anyway [2] 37/10 47/21
anywhere [1] 23/21
apparently [1] 45/18
appealing [1] 17/20
appear [1] 45/16
APPEARANCES [4] 2/1 3/1 4/1
 5/1
applicable [1] 48/3
applied [1] 17/25
appreciate [3] 49/1 60/15
 67/19
appreciative [1] 27/4
appropriate [2] 14/12 66/24
arbitrarily [1] 63/14
arbitrary [2] 60/22 61/13
are [108]
area [2] 26/17 52/19
aren't [4] 10/23 34/5 48/12
 51/9
argue [1] 6/12
argued [1] 47/18
arguing [6] 18/1 26/14 28/6
 34/20 40/2 40/21
argument [12] 7/19 8/2 8/2
 9/20 9/23 10/3 10/15 24/3 24/8
 29/16 46/21 72/20
arguments [5] 6/10 16/18 16/21
 41/3 41/6
arising [1] 19/11
arms [1] 36/2
around [2] 34/15 36/2
arranged [3] 29/18 29/20 30/5
arranging [2] 30/7 35/14
arrives [1] 48/15
Aryan [1] 38/10
as [57] 6/15 8/20 9/1 9/5 9/8
 10/3 10/18 10/23 14/19 15/8
 15/9 18/21 19/23 22/13 27/5
 27/5 27/16 27/16 31/19 36/25

 36/25 39/12 39/12 40/25 41/4
 41/4 42/3 42/6 42/15 42/15
 43/16 46/1 47 48/19 50/2 50/12
 53/13 54/20 54/22 56/1 57/9
 58/10 60/3 60/18 60/18 60/22
 61/11 64/18 64/21 65/7 66/18
 66/23 67/1 67/1 67/6 67/18
 67/24 69/2
ask [8] 10/2 26/4 26/5 38/18
 38/23 43/25 55/1 66/22
asked [3] 34/23 53/4 53/15
asking [9] 18/3 18/4 21/17
 23/1 24/23 25/14 33/7 54/21
 66/12
asks [1] 20/9
assert [1] 21/3
asserts [1] 21/1
assessment [2] 53/6 53/16
Assistant [2] 2/5 2/10
associate [2] 10/1 10/4
associated [6] 6/23 11/1
assume [1] 61/25
assuming [2] 51/4 51/18
assure [2] 16/12 23/5
attached [1] 32/25
attempting [1] 29/9
attestation [1] 33/9
attorney [26] 2/4 2/5 2/8 2/10
 2/17 2/21 3/3 3/7 3/11 3/15
 3/19 4/6 4/11 4/17 4/22 5/4
 5/9 5/13 5/18 10/8 10/11 11/2
 11/19 11/23 32/10 38/12
attorney's [1] 9/22
attorneys [3] 9/24 20/23 40/21
attorneys' [6] 17/18 23/2
 31/24 32/13 32/25 54/10
August [24] 33/17 34/3 34/8
 37/3 37/20 41/12 41/15 41/16
 42/17 44/15 44/20 45/2 45/5
 69/7 69/9 69/10 69/20 69/21
 69/21 70/1 71/18 71/23 72/1
 74/14
August 18th [1] 69/21
August 19th [1] 72/1
August 20th [1] 69/21
August 25th [3] 69/9 69/10
 71/23
August 30th [6] 34/3 34/8
 37/20 44/15 45/2 45/5
authority [1] 40/6
automatically [1] 16/4
available [7] 7/8 32/24 48/17
 55/6 69/19 71/1 71/25
Avenue [7] 3/11 4/6 4/17 4/22
 5/4 5/10 5/14
avoid [1] 47/20
aware [1] 23/6
away [1] 23/20
awful [1] 22/25

# B

back [69] 7/1 7/2 7/10 8/10
 10/11 11/18 15/13 15/15 15/17
 18/4 18/4 18/7 22/19 24/21
 24/21 25/4 25/15 27/23 29/6
 30/18 31/8 33/25 34/5 37/15
 38/14 39/8 40/23 41/10 43/8
 43/20 44/3 45/4 45/14 46/16
 46/23 47/12 48/8 48/24 51/24
 52/8 53/1 53/9 53/25 54/2
 54/20 55/5 56/23 57/1 58/11
 58/22 59/20 60/6 60/13 61/1
 61/2 62/23 63/15 63/15 64/7
 64/8 64/16 64/25 65/11 66/25

**B**

back [5] 88/7 88/9 69/2
70/12 72/2
back and [1] 53/9
backwards [1] 26/3
balance [4] 11/7 11/17 20/6
21/5
balanced [1] 44/15
ballpark [2] 10/24 61/11
bank [57] 4/15 4/20 6/8 6/11
6/15 8/13 8/21 8/23 9/1 9/9
10/10 11/3 11/4 13/2 14/21
16/10 16/19 16/21 17/4 22/19
25/14 27/13 29/16 29/20 29/22
29/24 30/4 30/4 30/7 33/6
33/10 35/20 35/25 39/25 40/8
45/15 47/4 48/15 48/24 49/9
49/17 49/20 49/24 50/4 50/8
50/11 50/12 50/13 50/21 52/3
52/12 53/4 53/14 59/5 62/9
64/11 66/5
banking [3] 12/17 12/20 12/24
banks [38] 8/19 10/7 11/4 13/1
16/12 23/6 23/12 24/5 24/7
24/20 25/6 25/20 26/22 28/7
28/15 31/11 31/19 35/13 36/3
39/14 40/1 40/12 40/14 40/19
43/1 43/3 43/9 45/11 47/19
47/22 51/8 52/6 54/17 54/21
56/5 60/14 61/17 61/25
banks' [3] 37/25 39/13 62/2
bar [1] 19/4
based [1] 67/14
baseline [2] 44/21 45/2
basically [3] 26/23 31/1 54/13
basis [4] 8/22 59/16 60/24
65/10
Battery [2] 2/22 3/3
be [166]
bear [8] 8/4 8/4 14/23 18/2
19/25 20/7 32/19 69/17
bearing [1] 15/18
bears [1] 14/25
because [48] 15/17 15/19 15/25
16/3 19/13 21/10 23/6 23/6
24/1 24/18 25/16 26/17 27/9
28/1 28/4 28/17 28/21 28/21
28/21 29/3 29/6 29/13 29/21
30/15 30/18 33/2 36/12 38/19
40/19 41/13 41/16 43/13 43/15
45/25 51/8 51/24 52/9 56/9
57/1 60/6 61/12 62/2 64/24
67/20 69/20 71/24 72/13 72/14
become [2] 11/4 11/5
been [30] 6/11 6/22 6/24 8/3
8/17 8/22 8/25 14/19 18/11
22/9 23/7 23/12 24/25 27/5
28/5 29/23 32/6 32/20 33/7
33/10 33/20 36/6 40/1 43/24
45/18 48/1 50/14 54/12 56/2
66/12
before [17] 19/9 22/8 24/6
24/14 26/2 26/6 31/12 31/22
33/10 34/9 34/25 37/12 41/17
53/25 57/13 58/25 72/20
beforehand [2] 28/4 56/19
began [1] 36/7
begin [1] 62/18
beginning [2] 27/22 62/20
behalf [6] 9/10 11/3 22/6
29/11 40/4 64/3
behind [1] 44/21
being [10] 9/13 9/14 10/17

12/24 16/8 24/10 25/6 45/22
62/24 67/6
believe [15] 7/24 22/2 30/22
36/24 38/5 40/6 40/9 42/18
50/11 53/5 57/19 59/9 63/1
63/17 68/18
believed [1] 35/5
believes [1] 41/14
belong [1] 30/14
bench [3] 39/18 40/22 56/8
benchmark [1] 59/9
benefit [2] 18/19 60/21
bent [1] 26/2
besides [2] 31/9 32/13
best [3] 36/22 53/13 67/9
better [6] 19/25 44/20 45/24
46/22 55/14 72/19
between [6] 7/19 49/9 59/23
62/14 63/12 66/17
Beyond [1] 40/18
bickering [1] 64/25
biggest [1] 33/5
bill [3] 29/8 44/18 52/18
billion [1] 39/21
bit [7] 6/19 25/15 33/12 41/22
56/7 61/13 66/21
blindly [1] 31/3
Blue [1] 22/19
both [5] 21/9 41/23 42/3 60/11
63/13
bottom [2] 30/8 37/19
bow [1] 56/13
box [1] 19/4
breadth [4] 48/10 52/8 55/14
57/11
break [1] 55/7
breakdown [2] 10/19 10/20
Breyer [1] 69/14
Breyer's [1] 69/10
Brian [1] 3/19
bridge [1] 7/21
brief [3] 14/13 18/8 72/23
briefly [1] 6/9
bright [1] 7/24
bright-line [1] 47/25
bring [2] 19/20 40/7
bringing [1] 48/14
brings [2] 18/24 20/15
broad [6] 15/20 17/21 18/24
52/9 52/13 52/22
broader [1] 58/3
Brotherhood [1] 38/10
brought [3] 19/2 20/15 52/7
Buergel [1] 4/5
builder [1] 71/9
Building [1] 2/9
bulk [2] 35/15 39/2
burden [3] 21/23 21/25 25/4
burdensome [4] 20/8 23/25
24/15 59/21
business [1] 56/18
buy [1] 31/4

**C**

CA [1] 5/19
CAHILL [3] 3/14 3/18 21/9
calendar [2] 48/14 72/13
CALIFORNIA [13] 1/4 1/18 1/23
2/6 2/11 2/18 2/22 3/4 3/8
3/12 5/5 5/15 6/1
call [27] 27/16 39/6 39/8 55/5
56/8 56/9 56/10 56/11 56/14
56/19 56/24 68/8
called [1] 68/2

calling [2] 40/23 58/19
calls [2] 20/23 35/17
came [7] 21/23 24/13 44/21
38/11 41/23 43/17 48/24
can [51] 16/2 16/12 22/15
22/16 22/16 23/19 24/13 25/24
26/4 27/9 27/17 28/6 29/3 32/5
34/5 35/2 35/22 36/4 36/9
36/24 37/24 38/4 40/23 42/16
45/3 46/3 46/14 46/20 47/11
47/20 50/24 51/13 53/8 53/13
54/16 54/23 55/6 55/8 55/25
56/6 58/16 59/16 61/19 63/13
66/1 66/13 67/23 70/12 70/16
70/18 73/3
can't [12] 31/6 35/15 35/16
39/20 40/3 41/2 55/5 61/1
64/24 69/9 71/16 72/3
Cardona [8] 2/4 23/19 25/10
29/4 35/4 40/13 70/20 71/2
care [2] 45/11 64/23
carefully [2] 8/10 25/5
Carey [2] 4/16 6/7
carried [1] 62/24
carries [1] 24/11
carry [1] 39/13
CARTER [3] 1/5 36/8 56/20
case [48] 17/7 17/11 17/12
17/21 18/7 18/18 18/13 18/19
18/23 18/25 19/1 19/9 19/20
19/22 20/11 20/13 20/14 21/8
22/11 22/20 22/20 22/20 24/2
25/16 27/22 29/24 30/3 30/19
32/8 32/9 32/24 33/5 34/14
34/19 36/7 38/13 38/21 39/11
41/20 42/6 42/11 42/13 50/15
52/15 59/8 59/15 59/15 72/11
case-by-case [1] 59/15
cases [3] 20/15 21/22 28/16
catch [2] 9/25 73/3
categories [1] 47/18
category [2] 50/2 50/7
cause [1] 42/2
causing [1] 61/4
CD [1] 32/16
CDO [7] 29/24 30/1 30/1 30/5
33/5 49/22 49/22
CDOs [5] 26/18 29/18 29/22
29/22 30/6
CENTRAL [1] 1/4
certain [18] 8/11 8/18 9/21
10/22 16/19 28/17 28/23 32/23
33/22 36/20 47/2 47/17 49/13
61/19 66/5 66/8 68/11 71/25
certainly [5] 18/17 20/12
21/12 32/25 62/3
CERTIFICATE [1] 74/5
certify [1] 74/7
cetera [3] 16/13 47/6 59/6
chambers [1] 55/9
chance [5] 38/21 46/18 47/12
59/22 59/23
change [2] 29/2 41/5
changed [4] 27/24 46/22 56/12
57/15
characterized [1] 56/1
charge [4] 10/7 13/13 13/17
61/9
charged [3] 9/24 12/10 13/20
charges [2] 39/19 54/12
checking [1] 25/8
Chief [1] 2/5
choice [1] 10/13
choose [1] 40/16

Case 2:13-cv-00779-DOC-JCG Document 129-16 Filed 02/14 Page 1 of 1
#:6873

## C

chopped [1] 59/4
circuit [5] 6/14 14/24 19/5
 48/1 59/8
CITBANK [1] 4/4
cited [3] 6/14 18/8 22/19
Citi [5] 26/13 45/15 63/23
 64/4 65/7
Citibank [1] 16/24
CITIGROUP [1] 4/3
Citizens [1] 12/19
citizens' [3] 12/17 12/20
 12/24
Civil [1] 2/9
claim [1] 32/25
claiming [1] 30/2
claw [1] 51/24
clawback [1] 35/16
clear [3] 14/7 22/10 56/4
clear that [1] 14/7
clearly [2] 44/1 44/11
CLEARY [1] 4/21
client [4] 9/10 11/25 40/4
 41/1
clients [1] 28/18
Coast [1] 9/24
Code [1] 74/8
cogent [1] 17/8
colleague [2] 68/9 69/3
come [30] 7/10 10/11 21/2 24/6
 28/1 35/12 36/15 36/25 38/7
 38/15 40/2 41/10 43/8 43/20
 47/23 53/9 55/6 55/9 57/5
 58/11 59/20 62/25 64/16 64/23
 64/25 65/11 66/21 67/12 69/2
 72/21
coming [9] 16/8 29/6 29/18
 44/3 48/13 48/18 57/1 72/20
 73/1
comment [4] 6/9 37/14 37/15
 45/21
comments [2] 9/17 60/13
commit [1] 67/8
common [6] 19/6 19/7 19/14
 19/15 19/18 30/22
communications [1] 12/2
COMPANIES [2] 1/10 2/14
company [2] 18/12 27/11
complain [1] 21/14
complaining [1] 43/17
complaint [3] 8/18 25/17 47/24
complaints [1] 19/2
complete [3] 21/17 24/19 49/19
completed [4] 33/24 37/20
 63/25 70/24
completely [2] 28/19 55/20
complex [1] 38/20
compliance [7] 6/16 10/18 11/1
 15/5 21/17 37/25 42/18
complied [1] 28/7
compliments [1] 37/22
comply [3] 33/23 39/20 67/9
complying [1] 57/12
component [2] 10/25 10/25
comprise [1] 9/12
compromise [1] 66/9
compromises [1] 10/22
concept [3] 8/17 18/6 22/10
concern [5] 21/6 21/7 36/13
 62/18 65/9
concerned [7] 11/8 11/12 53/14
 54/18 58/24 59/2 68/15
concerning [3] 48/9 54/1 62/6

concerns [2] 50/8 66/16
concluded [2] 29/16 48/23 46/2
conduct [2] 29/25 42/7 59/11
conducted [9] 41/24 14/5
conducting [1] 19/19
confer [2] 50/21 60/3
conference [8] 33/14 62/22
 70/19 70/20 72/8 72/8 72/23
 74/12
conferences [1] 36/13
conferred [1] 69/7
conferring [2] 51/12 68/14
confers [1] 26/9
confidence [2] 71/8 71/9
confident [1] 66/1
confidentiality [1] 19/17
conflict [1] 67/23
conformance [1] 74/11
confusion [1] 6/19
connection [1] 9/1
conscious [1] 12/9
consider [2] 10/2 17/16
considerations [2] 9/5 9/7
considered [2] 23/25 66/23
constitutional [1] 20/16
constructed [1] 13/11
consuming [1] 39/9
contact [2] 50/14 50/17
contention [1] 7/17
contentious [1] 35/21
context [2] 9/7 16/9
continuance [3] 38/7 38/13
 38/16
continue [1] 8/15
continued [5] 3/1 4/1 5/1 27/6
 64/2
control [3] 15/22 41/2 62/3
controlling [3] 52/17 59/11
 61/12
controversial [1] 58/7
convenient [1] 45/10
conversation [6] 9/18 34/8
 34/12 68/10 68/13 69/1
convey [1] 40/23
convinced [2] 41/4 59/25
cooperate [1] 50/9
copies [1] 50/1
coping [1] 36/21
CORPORATION [1] 5/2
correct [6] 7/13 7/15 12/4
 49/14 71/7 74/9
correctly [4] 12/12 12/13
 12/18 12/22
cost [48] 6/12 6/13 7/18 7/20
 8/1 8/4 8/4 9/21 10/14 10/17
 14/22 15/1 15/6 15/12 15/15
 15/18 17/14 17/15 18/1 18/2
 20/8 21/14 21/24 22/10 22/24
 22/24 23/1 23/12 24/8 25/7
 29/5 29/13 29/14 31/9 31/21
 32/10 32/16 42/25 44/17 46/25
 47/14 48/11 52/10 52/19 54/23
 57/14 60/1 66/16
costs [48] 6/24 6/24 6/25 9/16
 9/21 10/2 10/20 11/1 11/5 12/5
 12/7 14/18 14/23 15/10 15/23
 17/19 19/5 19/25 21/12 22/14
 22/14 23/3 23/14 25/8 29/3
 31/20 31/20 31/23 31/24 32/15
 32/19 42/19 47/7 47/21 52/17
 54/10 54/11 62/6 62/10 63/9
 64/2 64/11 64/14 65/9 66/19
 66/20 66/25 67/2
could [21] 14/22 18/11 19/16

33/12 34/10 40/1 41/15 41/16
43/3 43/8 58/25 69/10 69/24
66/21 69/11 69/21 69/21 70/15
70/20 70/22 72/8
couldn't [2] 24/14 25/11
counsel [31] 6/11 6/14 6/18
 7/2 15/24 16/21 17/5 20/19
 21/12 22/3 22/5 22/19 40/2
 40/5 40/20 40/25 42/3 45/7
 45/11 46/2 46/11 48/5 51/12
 57/7 58/14 68/12 68/14 68/17
 69/16 71/8 73/11
country [3] 12/15 12/16 12/19
COUNTRYWIDE [4] 5/2 17/1 45/16
 65/6
couple [7] 6/17 9/17 17/9
 20/18 26/13 34/10 47/7
course [4] 8/13 15/16 52/23
 57/13
court [30] 1/3 1/21 1/22 6/5
 16/22 17/15 18/8 20/24 21/3
 21/25 22/11 24/15 28/1 28/4
 31/12 32/22 38/13 38/20 39/23
 40/2 40/21 40/24 51/14 52/20
 60/25 61/2 63/4 65/1 69/10
 74/17
courteous [1] 17/3
courtesy [5] 6/3 41/2 46/17
 49/1 70/10
courtroom [1] 20/5
Courts [3] 9/7 11/8 38/19
cover [1] 55/18
covered [1] 22/8
crack [1] 15/18
create [1] 20/23
credit [9] 4/9 20/3 20/4 30/16
 30/17 30/18 30/20 30/25 57/25
criticized [1] 30/25
currently [2] 51/21 69/9
custodians [11] 15/8 26/12
 26/13 26/13 49/17 49/18 50/13
 50/16 50/20 51/5 66/3
cut [5] 34/5 44/8 45/4 46/14
 70/12
CUTLER [3] 5/8 5/12 5/17
cutoff [1] 36/11
cuts [1] 42/7
cutting [1] 33/25
CV [1] 1/9

## D

D.C [5] 4/13 4/23 5/10 59/8
 73/2
date [23] 28/4 28/5 28/10
 28/12 28/16 28/23 33/13 36/5
 36/6 36/8 36/9 36/11 36/18
 37/4 37/10 38/6 41/13 45/9
 51/11 69/17 72/5 72/24 74/14
dates [5] 27/6 28/8 41/11
 69/20 71/13
DAVID [1] 1/5
day [12] 21/16 24/12 42/6 45/6
 45/10 54/25 56/3 67/7 69/12
 72/17 72/20 73/13
days [37] 41/24 47/10 47/11
 47/12 47/15 49/19 49/25 50/25
 51/4 51/7 52/25 52/25 54/22
 54/25 55/2 55/25 57/3 60/2
 60/5 60/5 61/16 61/19 61/21
 62/13 62/18 62/21 62/23 63/11
 63/15 64/6 64/9 64/16 65/11
 65/21 67/25 68/1 68/25
DBSI [1] 8/21
deadline [2] 21/17 67/9

**D**

deal [9]  15/11 30/15 36/22 39/21 48/2 63/6 67/23 68/24 69/2
deals [1]  69/8
dealt [1]  67/11
Debbie [1]  6/2
decide [5]  15/17 32/5 38/1 38/2 66/13
decided [2]  38/12 50/10
decides [1]  66/24
decision [1]  14/25
decisions [3]  40/4 40/10 67/2
declaration [1]  21/2
decrease [1]  29/3
defend [1]  42/10
defendant [2]  2/14 11/8
defendants [3]  1/12 29/23 49/5
defined [1]  47/2
defrauded [1]  30/3
delay [2]  41/22 51/7
delaying [1]  67/25
delays [1]  67/16
deliberative [2]  69/8 70/16
demand [2]  28/22 38/21
denigration [1]  28/14
depend [1]  55/23
depended [1]  18/9
dependent [1]  34/1
depends [4]  29/8 41/19 43/1 52/18
depos [1]  70/23
depose [1]  35/18
deposed [1]  34/19
deposition [2]  44/11 49/25
depositions [32]  29/6 32/8 33/13 33/23 34/12 34/12 34/13 34/22 35/6 35/7 35/8 35/11 35/12 35/15 35/20 35/21 35/25 36/19 36/20 36/23 37/20 37/21 39/1 42/21 43/9 43/16 43/20 43/22 44/9 51/17 51/21 70/2
depth [2]  53/20 55/14
details [1]  54/6
detriment [1]  29/1
DEUTSCHE [21]  4/15 6/8 8/21 8/23 9/1 9/9 11/3 11/4 13/2 14/21 16/10 17/4 29/16 29/20 29/22 29/24 30/3 30/4 45/15 47/4 64/11
devil [1]  54/6
dialogue [2]  13/11 70/7
dictate [1]  52/17
dictating [1]  51/9
did [12]  10/1 12/22 15/15 17/15 19/4 19/20 25/19 44/12 45/17 59/3 67/9 70/3
didn't [13]  7/5 9/11 13/10 24/18 28/5 31/2 34/22 38/13 38/18 41/13 44/6 51/24 64/4
difference [1]  7/18
different [7]  7/11 10/21 27/25 30/15 35/8 36/18 62/7
differently [4]  31/11 31/17 63/3 63/22
difficult [2]  40/4 40/24
digested [1]  35/17
diminimus [2]  31/21 42/24
dinner [1]  37/7
directions [1]  20/21
directly [1]  15/17
disagreement [1]  68/6
disclosed [1]  62/11
discovery [12]  9/8 25/9 30/19 37/19 30/21 31/5 38/11 43/15 47/13 53/2 53/20 60/9 64/9
discretion [2]  22/12 23/1
discretionary [1]  17/14
discuss [2]  52/5 65/25
discussed [5]  8/17 9/7 9/13 49/17 49/23
discussion [13]  11/18 23/16 25/11 26/3 33/15 35/2 43/4 44/15 45/3 51/10 53/1 61/9 68/1
disinterested [1]  30/13
dispositive [1]  40/3
dispute [5]  25/24 48/11 50/2 61/1 67/23
disputes [3]  16/8 49/9 52/7
DISTRICT [3]  1/3 1/4 1/22
diversions [1]  13/10
Division [1]  2/9
do [58]  6/13 9/21 10/13 13/13 14/8 14/10 14/11 14/21 15/12 16/2 21/8 21/12 21/22 22/12 23/1 24/9 26/20 27/23 29/10 32/22 34/3 35/2 35/18 37/16 38/19 39/15 39/17 40/13 40/14 42/7 45/17 50/5 53/4 53/5 53/5 53/16 54/19 54/24 54/25 55/1 56/1 56/3 56/7 56/18 60/16 62/19 62/22 64/10 64/24 66/22 67/15 67/15 68/24 69/4 70/22 70/25 71/16 71/17
do it [1]  71/16
DOC [1]  1/9
document [6]  8/11 12/10 13/3 36/21 54/12 54/14
documents [46]  6/20 6/21 7/4 7/7 7/7 7/12 7/14 7/17 8/5 9/15 11/2 12/1 12/5 14/6 16/5 16/8 18/4 19/16 20/10 21/2 24/4 24/13 24/16 24/20 25/23 26/8 26/17 32/19 32/24 35/13 35/17 36/2 38/4 49/16 49/18 50/3 50/8 50/24 51/1 52/14 53/6 53/8 53/15 58/11 60/4 61/18
does [7]  8/9 21/7 32/16 34/2 50/4 56/25 69/23
doesn't [9]  6/6 20/16 24/9 24/12 31/12 43/9 51/19 55/10 71/8
dog [2]  19/23 29/17
doing [9]  12/8 15/24 35/19 36/3 36/15 37/1 37/21 56/11 70/11
DOJ [3]  18/15 18/15 19/10
dollars [2]  29/21 39/22
don't [86]
done [10]  16/2 26/24 26/24 28/23 29/5 37/12 39/15 41/4 54/4 67/18
done again [1]  16/2
DOOR [1]  5/12 5/17
DORR [1]  5/8
doubt [1]  67/14
down [20]  12/5 12/8 14/14 26/10 26/21 36/15 38/11 39/24 41/6 41/16 42/7 42/20 48/13 48/18 54/5 55/6 56/18 59/23 64/19 73/8
draft [1]  46/15
drawn [1]  59/8
duplicated [1]  25/6
duplication [1]  60/8
duplicative [3]  8/12 11/9 30/23 31/6 37/8 60/13
during [4]  9/4 48/8 48/23 49/7
DVI [1]  1/9

**E**

e-mail [1]  12/1
each [14]  6/6 33/10 34/3 34/7 48/15 59/5 59/6 59/15 59/17 59/19 60/11 60/14 62/23 70/10
earlier [4]  6/21 49/17 49/23 70/18
early [1]  70/11
ears [2]  39/13 40/5
easier [3]  60/22 60/23 72/9
effectively [3]  35/15 35/16 54/24
efficient [4]  11/6 13/12 16/11 21/11
efficiently [1]  16/3
effort [2]  29/1 67/15
eight [2]  30/7 44/24
either [9]  22/12 24/5 34/19 37/17 69/20 71/11 71/12 71/12 71/13
eliminated [1]  58/5
else [8]  32/11 53/25 54/13 56/25 66/12 69/4 73/5 73/10
employees [2]  34/17 34/17
empty [1]  64/22
end [3]  50/12 56/16 69/7
ends [1]  21/18
energy [1]  16/6
engaged [1]  19/10
enjoy [1]  27/11
enough [8]  6/4 8/7 17/17 26/1 44/4 46/12 47/2 65/4
ensure [1]  20/8
entered [1]  19/14
entire [2]  18/2 20/10
entities [2]  47/4 52/7
entitled [1]  74/10
entity [2]  31/14 68/15
equally [1]  11/12
equitable [5]  9/5 9/6 9/12 17/24 31/21
Equitably [1]  11/8
especially [1]  60/9
essentially [2]  15/7 18/11
et [3]  16/13 47/6 59/6
ethical [1]  29/4
evaluate [1]  59/16
EVANS [1]  4/10
even [8]  14/18 17/17 17/24 18/14 33/24 36/8 61/7 64/7
evening [1]  69/5
event [1]  23/11
eventually [3]  24/3 24/6 33/25
ever [2]  66/6 66/6
every [4]  22/11 36/13 36/14 67/15
everybody [13]  26/20 26/23 27/9 27/21 28/12 34/4 39/16 41/14 51/4 56/2 56/5 56/16 66/12
everybody's [1]  27/11
everything [2]  28/23 64/1
exactly [4]  24/1 55/24 60/16 70/8
example [4]  20/17 26/11 29/23 33/4
excellent [3]  39/4 40/19 40/20
exception [1]  25/24
excise [1]  46/13

## E

excised [1] 99/2
excising [1] 45/17
expect [1] 67/20
expectations [1] 56/5
expedition [1] 26/7
expended [2] 17/19 18/3
expense [4] 21/18 59/7 59/15
 59/17
expenses [1] 71/20
expensive [1] 39/9
experience [2] 26/19 67/14
expert [1] 50/1
explain [1] 57/24
explanation [1] 24/13
expressly [1] 17/13
extra [2] 62/13 72/15
extravagant [1] 47/20
Exxon [2] 18/7 18/10

## F

facing [1] 24/1
fact [4] 17/16 19/1 33/24 70/9
factor [1] 48/3
factors [3] 9/12 9/13 9/17
facts [1] 19/13
fair [11] 8/7 24/18 26/1 38/8
 38/16 41/22 59/19 59/20 61/3
 61/6 65/4
fairer [2] 59/12 61/13
fairest [1] 60/10
fairly [2] 34/4 44/15
fairness [2] 42/5 42/8
faith [6] 29/1 42/12 62/1 66/8
 69/2 70/14
faith to [1] 70/14
fall [1] 39/12
fallback [1] 9/20
falling [1] 40/4
familiar [1] 26/11
far [2] 39/12 69/15
farming [1] 16/13
fashion [1] 67/24
fault [3] 30/8 30/9 37/14
favorite [1] 12/16
favors [1] 18/1
February [1] 39/10
federal [3] 1/21 2/9 18/14
feeling [3] 14/8 14/12 14/15
fees [10] 9/23 17/18 17/18
 17/20 23/2 31/24 31/25 32/13
 32/25 54/11
felt [1] 66/21
ferreted [2] 46/25 56/25
few [5] 33/15 35/25 39/2 52/25
 59/14
FIGEL [1] 4/10
fight [2] 19/23 29/17
fights [1] 35/24
figure [6] 35/18 36/3 36/22
 37/11 54/17 55/25
file [1] 28/11
filed [1] 28/11
files [5] 32/3 32/7 32/7 57/25
 58/4
filings [1] 50/2
filter [1] 24/21
final [3] 30/14 34/2 51/4
finalize [1] 55/1
finally [1] 28/2
financial [4] 1/10 2/15 18/11
 18/16
find [14] 13/7 13/25 14/1

finding [1] 55/6
fine [5] 35/9 35/10 35/10 70/5
 72/6
finest [1] 40/20
finger [1] 22/13
finish [2] 29/14 55/13
finished [2] 70/1 70/2
firm's [1] 10/10
first [14] 6/10 10/5 12/1 12/6
 17/12 24/2 34/8 40/15 41/23
 56/15 61/11 62/17 63/11 70/13
first-level [2] 12/1 12/6
fishing [1] 26/7
fit [1] 31/12
five [3] 23/7 31/11 55/8
fix [1] 36/6
fixed [3] 36/19 36/24 60/17
fixes [1] 36/8
flaying [1] 62/7
flight [1] 73/3
flip [1] 64/1
flipping [1] 54/13
Floor [1] 2/6
Florida [1] 72/20
Floyd [1] 3/15
focus [1] 7/11
focused [1] 50/25
focusing [1] 25/19 34/21
folks [2] 30/12 42/14
follow [2] 31/2 39/5
following [1] 69/19
foolish [1] 66/22
foot [1] 29/8
foregoing [1] 74/8
foreign [1] 12/25
foresee [1] 62/15
forewarn [1] 40/17
forewarning [3] 10/15 27/15
 39/18
forget [1] 44/25
form [1] 73/9
format [1] 74/11
Fortier [1] 5/13
forward [8] 18/5 27/12 40/7
 54/11 62/24 64/2 64/12 67/1
forward-looking [1] 54/11
four [3] 15/21 40/11 70/6
four million [1] 15/21
Francisco [4] 2/18 2/22 3/4
 3/8
frankly [10] 11/14 28/17 38/10
 39/20 46/15 47/21 61/5 65/7
 66/9 70/13
free [1] 24/18
Friday [4] 50/18 50/24 51/14
 70/22
friend [1] 69/16
front [4] 24/12 28/6 33/21
 67/17
full [6] 63/2 63/21 64/21 65/5
 70/4
fully [3] 6/11 66/7 66/8
funded [3] 18/14 20/2 20/2
Funding [1] 49/22
funds [1] 18/15
further [2] 15/13 22/13
future [8] 7/17 24/6 27/6 29/3
 40/22 56/14 61/12 67/23

## G

Gale [1] 6/2

galore [1] 33/6
Gasabed [1] 5/3
GARRISON [2] 4/5 4/16
gather [1] 33/1
gathered [2] 32/20 33/10
gave [2] 28/10 58/24
gee [1] 10/11
Gemstone [3] 29/24 30/1 30/1
generate [1] 53/7
generous [2] 52/21 56/20
gentleman [1] 45/23
George [2] 4/24 38/12
get [42] 7/1 26/10 26/23 26/23
 27/17 28/22 29/5 29/12 30/8
 30/17 30/23 31/6 32/16 35/1
 36/2 36/18 37/4 37/7 37/11
 37/22 38/4 38/13 39/2 39/6
 39/15 40/14 41/6 41/16 42/12
 43/11 44/8 46/12 52/20 53/8
 53/20 56/8 56/18 61/1 64/24
 68/3 71/7 72/10
gets [2] 28/12 56/6
getting [6] 17/19 20/21 24/20
 35/12 50/10 61/21
give [24] 11/19 15/18 23/13
 23/13 23/22 26/11 32/3 32/7
 32/7 32/8 33/8 38/18 40/24
 41/5 44/4 44/9 47/10 47/11
 55/24 64/18 67/16 69/25 70/3
 71/8
given [7] 7/24 8/3 16/7 18/17
 54/13 59/14 60/5
gives [4] 59/19 59/20 59/22
 59/23
giving [6] 46/16 52/25 60/11
 61/18 61/20 62/13
glad [1] 14/11
glass [4] 63/2 63/21 64/21
 65/4
GLOBAL [1] 4/3
go [35] 10/11 10/12 22/8 22/18
 23/20 24/19 30/16 31/4 31/10
 32/5 32/16 35/18 42/20 43/20
 44/10 44/11 45/14 46/11 47/12
 48/16 49/9 53/1 53/17 53/21
 54/20 55/5 57/7 57/18 60/6
 61/23 64/7 64/8 67/1 67/12
 68/7
goes [3] 9/5 16/4 18/7
going [139]
gone [1] 37/13
good [19] 14/11 16/11 24/12
 29/1 32/2 42/12 45/1 45/2
 46/23 59/6 61/3 67/16 68/22
 69/1 69/16 70/13 71/5 71/12
 73/13
good-faith [1] 29/1
GORDON [2] 3/14 3/18
gosh [1] 41/24
got [30] 14/14 15/11 24/14
 24/18 26/24 29/24 32/6 38/14
 39/10 40/19 42/17 43/10 44/23
 44/23 44/24 45/2 48/18 56/22
 57/2 57/6 57/16 57/17 57/17
 62/1 65/1 67/21 68/25 70/7
 72/13 72/16
gotten [5] 26/21 34/16 35/17
 49/15 54/20
GOTTLIEB [1] 4/21
governing [1] 55/16
government [49] 6/22 7/5 7/22
 7/24 8/3 8/5 8/20 18/15 18/17
 18/22 18/22 18/23 19/15 19/22
 20/14 24/4 24/9 24/10 24/22

## G

government [30] 9 24/25 25/17
25/19 28/22 28/25 29/2 29/3
29/8 29/17 29/18 30/2 30/11
30/15 30/19 30/22 31/13 34/23
35/22 38/18 38/22 41/21 42/7
43/17 43/25 44/2 44/12 44/16
48/19 50/7 50/14
government's [3] 34/14 44/5
44/17
grade [1] 33/5 33/5 49/22
Grand [2] 5/4 5/14
grateful [1] 26/22
gratuitously [1] 27/24
great [7] 15/24 19/7 21/6 24/8
33/4 37/18 53/15
greater [1] 9/24
ground [1] 22/8
guarantee [1] 28/6
guess [7] 8/17 9/24 11/21 13/6
37/3 61/22 71/21
guidance [3] 56/4 66/10 66/18
guidelines [1] 31/2
guys [1] 40/14

## H

had [28] 10/11 10/12 18/9
18/10 18/25 19/2 19/3 19/21
20/1 24/4 24/19 26/3 27/22
28/1 28/4 28/12 34/15 38/10
43/18 44/22 53/18 57/4 57/13
57/21 58/1 62/5 66/21 72/10
hadn't [1] 28/7
HALD [1] 5/12
HALE [2] 5/8 5/17
half [7] 36/14 46/15 63/2
63/21 64/21 64/21 65/4
hallway [1] 28/3
HAMILTON [1] 4/21
hand [7] 20/22 20/24 21/23
21/25 25/1 41/6 73/8
handle [3] 26/4 36/4 41/21
HANSEN [1] 4/10
happen [6] 23/4 28/24 35/16
35/17 43/21 67/16
happened [5] 27/3 27/21 28/10
28/16 60/18
happening [1] 32/4
happy [6] 10/16 14/1 22/4
22/20 37/16 62/25
hard [2] 11/18 26/8
harming [1] 51/8
has [32] 6/23 8/3 8/17 9/6
9/25 11/4 14/19 16/22 18/17
20/14 21/1 21/2 22/11 27/23
28/25 40/5 44/22 44/23 44/25
45/18 46/21 48/1 49/13 49/17
49/20 49/24 56/2 56/12 60/18
69/19 69/20 72/20
hasn't [3] 8/22 33/10 46/22
have [213]
haven't [7] 16/1 27/16 41/9
43/2 43/2 59/4 67/18
having [13] 10/21 12/9 16/12
24/15 31/6 36/19 43/16 46/4
47/10 57/14 67/11 67/23 67/25
he [7] 22/20 35/23 44/22 44/23
46/21 48/15 72/20
he's [4] 48/14 56/11 69/15
69/16
hear [12] 12/12 12/22 17/8
41/3 49/11 57/15 62/15 63/6
67/17 68/11 70/18 72/17

heard [13] 9/19 12/13 12/18
12/19 17/4 26/16 31/9 33/23
46/14 64/12 68/3 68/4 69/11
hearing [8] 1/27 21/23 23/3
28/2 48/9 62/8 69/1 69/11
hearings [1] 72/10
hears [1] 23/11
held [1] 74/10
help [1] 52/19
here [45] 6/12 6/13 8/24 11/10
12/24 14/14 16/8 18/1 18/6
18/13 18/16 20/21 21/11 22/18
23/1 24/7 24/24 26/8 26/25
27/17 27/18 27/18 29/19 37/19
40/6 40/10 40/14 40/15 40/16
41/23 42/3 43/12 45/7 45/8
48/15 53/21 54/5 55/11 57/5
60/19 68/9 69/10 70/20 70/24
72/10
here and [1] 27/17
here's [2] 29/1 45/15
hereby [1] 74/7
Hetherington [1] 4/11
hi [1] 69/14
high [3] 33/4 33/5 49/22
high-grade [2] 33/5 49/22
HILL [3] 1/10 2/14 20/1
him [2] 23/22 69/15
hired [1] 21/19
his [2] 48/14 48/17
hit [1] 52/14
hits [1] 53/8
hold [2] 58/18 71/11
hole [1] 14/14
holes [1] 41/7
holidays [1] 37/5
hollow [1] 21/14
Honor [76]
HONORABLE [1] 1/5
hope [3] 6/3 36/23 61/17
hopefully [5] 50/24 60/18
62/20 64/15 65/10
hoping [3] 36/20 37/6 72/12
horribles [1] 40/18
hour [9] 10/5 13/14 13/18
45/15 46/1 46/12 46/13 47/5
47/6
hours [1] 11/20
house [1] 40/5
how [29] 10/20 13/21 21/5
22/12 29/7 29/8 32/15 35/18
36/15 36/22 37/1 41/20 42/5
43/4 43/5 44/18 48/20 51/6
52/17 53/7 55/16 55/22 58/10
60/7 60/8 61/19 66/8 69/23
70/9
How's [1] 45/9
however [1] 24/5
HUBER [1] 4/10
hundred [1] 35/20
hundreds [1] 29/21
hunt [1] 33/1
hunt-and-gather [1] 33/1
hurdles [1] 20/25
Hypothetically [1] 15/14

## I

I'd [2] 10/16 61/10
I'll [12] 27/2 44/15 45/4 48/2
53/4 55/7 56/23 60/13 63/15
69/2 69/18 71/18
I'm [44] 11/10 14/11 16/13
17/7 21/5 23/21 26/11 26/22
27/12 27/15 37/6 39/2 39/10

39/17 40/7 40/11 41/5 41/22
42/4 42/20 47/2 48/14 52/4
55/4 55/4 55/7 56/24 57/15
57/18 60/12 61/22 62/15 64/20
66/10 68/7 68/9 69/16 71/25
72/12 72/14 72/14 72/17 72/17
72/24
I've [11] 36/6 40/19 42/17
45/2 46/24 47/2 49/15 57/16
68/25 71/8 72/13
idea [8] 30/14 30/21 31/5
33/13 36/19 40/1 55/13 58/9
identified [1] 34/14
identify [1] 50/13
II [1] 49/22
immediately [1] 67/22
importance [2] 20/11 22/23
important [4] 20/13 20/14
26/17 26/18
impose [4] 21/15 42/19 68/16
72/15
impossibility [1] 57/12
impression [1] 64/3
impressions [1] 44/5
inability [1] 39/13
INC [7] 1/10 2/14 4/3 4/15 5/7
6/8 16/21
include [8] 10/14 31/24 31/25
31/25 32/1 54/10 54/12 54/14
included [2] 17/18 28/10
including [3] 17/18 17/20
49/25
income [2] 18/10 20/1
incorrect [1] 49/15
increase [2] 21/18 21/25
incremental [2] 59/15 60/24
incumbent [1] 53/11
incur [2] 10/1 15/9
incurred [4] 6/24 8/19 9/22
54/10
independent [2] 18/14 19/13
independently [1] 19/10
India [3] 12/5 12/16 13/3
indication [3] 18/17 44/20
45/1
inequitable [1] 31/7
influence [2] 51/21 56/10
influences [1] 51/18
inform [1] 45/24
information [3] 13/25 14/2
52/20
informed [1] 48/24
initial [1] 46/22
initially [1] 35/5 44/14 68/2
initiating [1] 39/19
input [1] 33/22
insinuating [1] 11/10
instance [4] 10/8 32/20 33/6
47/4
instances [1] 25/21
instead [2] 15/21 62/14
institutions [1] 39/19
instructive [1] 59/10
intends [1] 18/8
interest [14] 9/8 9/10 18/21
19/1 19/4 19/6 19/7 19/15
19/18 19/19 19/21 19/22 20/6
30/23
interested [5] 18/6 18/7 19/8
22/21 22/22
interesting [3] 13/8 38/3 43/4
international [1] 13/6
interrogatories [1] 34/15
interrogatory [1] 34/24

## I

interviewed [1] 44/6
intimated [1] 41/14
introduce [1] 13/10
invasiveness [1] 9/15
investigated [1] 30/24
investigation [3] 19/19 24/17 25/20
investigations [3] 19/11 19/12 31/1
investigative [4] 34/15 34/18 34/23 43/19
investing [1] 13/1
involve [2] 20/16 43/9
involved [1] 35/13
involves [2] 43/13 43/14
Irvine [1] 3/12
is [174]
isn't [3] 10/1 28/14 71/9
issue [13] 17/13 20/20 23/12 43/15 50/15 51/7 52/15 57/20 57/22 64/4 64/7 65/17 66/17
issued [1] 19/9
issues [10] 17/23 19/17 20/16 23/6 29/14 48/21 49/8 63/17 65/24 66/2
issuing [1] 46/20
it [177]
it's [53] 12/23 14/11 18/24 20/2 20/12 20/13 22/16 22/23 23/10 23/10 25/5 27/10 27/11 28/4 28/15 29/5 31/3 32/9 36/4 37/13 38/20 39/25 41/2 41/14 41/15 42/2 42/6 43/9 43/15 47/13 47/17 47/25 48/3 51/8 52/9 52/20 53/11 55/16 59/21 60/22 60/23 60/25 61/5 61/6 61/22 65/25 67/3 67/7 67/13 67/19 68/16 71/1 71/6
its [8] 9/2 9/2 13/3 15/9 18/10 19/22 25/20 32/22

## J

January [4] 38/23 39/10 42/12 42/14
Jennifer [1] 3/10
Jessica [2] 4/16 6/7
Jewish [1] 37/4
jobs [1] 21/22
John [1] 2/17
join [1] 23/19
joining [1] 27/14
joint [1] 51/13
joking [1] 9/25
judge [26] 1/5 7/19 22/21 26/6 31/9 36/7 36/17 41/2 44/3 44/21 46/20 48/13 53/21 55/6 55/11 55/19 56/2 56/9 56/20 57/3 58/19 58/22 68/2 69/3 69/10 69/14
Judicial [1] 74/12
July [3] 1/19 6/1 19/9
July 2010 [1] 19/9
July 29 [1] 1/19
jump [1] 20/25
jurisdiction [1] 12/6
jury [2] 42/5 42/5
just [69] 6/9 6/17 7/2 7/11 9/16 9/25 10/2 10/23 11/14 11/21 12/12 12/18 12/19 13/7 13/9 14/6 14/11 15/25 16/18 16/24 17/3 17/9 17/16 23/21 24/10 24/12 25/8 25/22 26/2

26/10 27/1 27/11 27/15 27/24 28/15 29/14 30/12 31/3 32/2 32/5 32/17 33/14 34/11 35/2 35/9 38/7 38/20 39/4 39/18 40/16 41/10 41/14 42/15 42/24 54/13 56/23 57/2 58/2 58/25 59/3 59/21 62/9 62/17 63/7 64/20 67/11 67/12 69/16 70/13

## K

Karman [1] 3/11
keep [5] 12/5 12/7 25/11 42/22 50/24
KEKER [16] 2/16 2/17 2/20 3/2 3/6 9/11 9/20 10/2 15/14 22/6 25/13 40/13 41/19 49/5 54/2 68/21
KELLER [3] 3/10 3/10 36/7
KELLOGG [1] 4/10
kept [1] 48/9
Khorshid [1] 2/9
kidding [1] 69/16
kind [2] 18/25 47/14
King [1] 38/12
knew [1] 26/18
know [50] 6/5 11/9 12/23 13/15 13/22 15/13 15/21 16/11 20/13 24/9 25/11 26/7 26/15 27/19 29/4 34/1 36/11 36/12 38/16 39/1 39/17 40/9 41/12 42/6 42/6 42/13 43/23 44/10 45/8 46/20 46/24 47/5 49/1 51/6 51/10 51/18 55/6 55/12 55/19 56/11 57/2 57/17 58/18 61/4 61/24 64/24 70/6 70/7 70/14 71/18
knowing [1] 36/16
knowledge [2] 34/14 43/22
known [1] 37/7

## L

Labor [2] 45/5 69/12
lack [1] 22/16
ladder [1] 42/1
large [6] 7/6 25/2 25/3 41/19 43/1 55/22
largely [1] 8/25
largest [1] 10/25
last [7] 20/1 50/7 56/15 59/5 59/14 67/5 68/15
late [3] 27/5 67/13 68/4
later [4] 37/5 57/16 67/13 67/18
law [17] 2/17 2/21 3/3 3/7 3/11 3/15 3/19 4/6 4/11 4/17 4/22 5/4 5/9 5/13 5/18 6/14 17/7
lawyers [3] 12/8 14/5 17/9
laying [1] 49/12
least [6] 8/23 19/18 32/23 35/6 46/13 61/19
leave [1] 11/14
leaving [1] 71/22
leeway [1] 40/25
legal [8] 14/23 17/10 17/18 17/25 18/25 19/11 40/2 59/10
less [2] 13/19 18/18
lessen [1] 52/19
let [31] 7/2 7/10 9/18 14/17 16/18 16/24 22/18 23/5 25/15 29/14 31/8 32/4 32/8 33/19 36/12 36/23 45/13 46/16 46/16 51/10 52/5 55/1 56/8 57/2 58/18 58/23 62/9 63/6 64/4

69/25 73/10
let's [22] 13/7 26/4 26/4 26/5 36/9 36/21 48/13 57/17 62/2 64/6 71/17 72/22
level [2] 12/1 12/6 67/9
light [2] 45/16 50/8
lighten [1] 71/19
like [10] 26/6 29/11 33/14 34/2 36/6 42/3 47/4 54/8 58/7 67/1
limitation [1] 54/7
limited [1] 31/22
Linder [3] 59/8 59/9 60/22
line [5] 33/21 37/19 39/24 47/25 64/19
lines [1] 59/14
list [10] 38/19 38/21 38/24 46/4 50/16 50/17 50/21 50/22 50/23 51/4
listened [1] 46/21
listening [2] 15/14 22/9
litigants [1] 61/11
litigate [2] 42/3 42/9
litigated [1] 21/8
litigation [12] 11/3 18/12 18/22 19/3 29/23 32/4 32/5 33/6 33/7 49/21 62/3 62/20
litigation about [1] 29/23
little [9] 19/12 25/15 33/12 38/11 39/9 41/22 56/7 60/12 61/13
live [1] 54/16
LLC [2] 1/11 2/15
LLP [14] 2/16 2/20 3/2 3/6 3/10 3/14 3/18 4/5 4/16 4/21 5/3 5/8 5/12 5/17
log [1] 21/1
logistically [1] 39/7
logs [13] 10/7 10/12 11/3 11/19 11/23 16/1 16/3 16/6 20/20 20/23 21/10 32/13 43/2
lonely [1] 27/11
long [7] 19/9 23/14 37/8 41/20 42/3 46/14 49/12
look [7] 10/19 15/22 24/2 31/5 34/2 47/12 54/21
looking [2] 54/11 69/15
loosen [1] 42/17
Los [5] 2/6 2/10 2/11 5/5 5/15
lose [1] 25/6
losses [9] 8/19 8/20 29/19 29/21 30/1 30/7 30/11 30/18 30/20
lost [2] 30/10 49/16
lot [17] 18/3 21/7 22/11 22/25 23/5 26/3 26/24 46/19 59/12 60/21 60/24 60/25 61/2 61/6 61/8 61/22 71/8
lots [1] 44/1
loud [1] 72/14
lunch [6] 45/14 46/12 46/13 47/11 58/25 58/25
LYNCH [3] 4/20 49/23 50/13

## M

made [12] 6/11 6/18 7/9 16/21 23/25 27/16 28/25 29/16 50/20 56/4 58/2 63/24
mail [1] 12/1
main [1] 66/16
majority [1] 39/6
make [36] 6/16 6/25 7/8 9/17 10/18 12/17 13/10 14/6 15/5 16/18 16/24 17/3 20/23 24/12

## M

make [22] 32/23 33/22 37/15
 40/3 40/10 43/12 44/9 45/10
 45/21 47/7 47/17 47/24 48/13
 50/21 56/1 61/16 62/23 67/2
 67/15 68/8 72/9 72/23
making [5] 8/11 11/5 11/8 16/6
 63/11
Malhotra [1] 3/6
man's [2] 23/9 23/10
managers [2] 35/14 36/3
mandatory [2] 6/14 64/6
many [10] 11/11 11/13 20/15
 25/20 32/2 34/16 34/17 35/23
 53/7 58/10
mark [1] 59/7
market [1] 9/1
MARKETS [1] 4/3
Markley [2] 3/19 65/18
master [3] 34/3 42/21 48/18
master's [2] 33/25 34/6
masters [6] 32/23 33/21 43/12
 45/1 70/6 70/12
match [1] 64/25
material [3] 25/25 62/11 62/20
materials [3] 49/20 50/10
 63/10
matter [2] 29/7 74/10
may [34] 10/9 10/10 11/9 15/12
 15/16 16/10 16/11 20/4 22/22
 25/4 26/22 28/20 35/7 38/2
 38/11 39/1 39/8 39/9 39/11
 41/22 47/3 47/7 47/9 47/10
 47/10 47/15 47/16 55/15 57/14
 64/7 66/17 66/18 68/6 69/19
maybe [8] 24/20 27/17 27/18
 34/5 42/23 42/23 62/1 71/7
McGRAW [3] 1/10 2/14 20/1
McGRAW-HILL [3] 1/10 2/14 20/1
me [72] 7/2 7/10 9/18 14/17
 16/18 16/22 16/24 20/20 22/18
 23/5 24/2 24/6 25/2 25/15
 27/14 27/16 28/6 29/14 31/8
 33/19 38/3 38/7 38/11 38/15
 38/19 39/20 39/21 39/24 40/3
 40/9 40/9 42/1 42/15 42/22
 43/5 44/21 44/22 44/22 45/14
 45/21 45/24 46/17 47/18 48/24
 49/15 51/2 51/10 52/5 56/8
 57/2 57/5 58/18 58/23 59/13
 59/20 59/20 60/21 60/23 62/9
 63/6 64/4 67/22 68/24 69/2
 69/15 69/18 69/25 70/5 71/14
 71/19 72/17 73/10
mean [15] 26/16 26/24 27/13
 29/17 30/3 30/9 30/21 32/15
 36/18 37/3 44/10 47/23 60/21
 66/4 67/24
meaning [1] 28/8
meaningful [1] 44/9
means [1] 10/9
meant [1] 28/20
meantime [2] 45/24 61/17
mediation [2] 55/7 56/3
meet [3] 26/9 50/20 60/2
meet-and-confers [1] 26/9
members [1] 20/4
mentioned [3] 17/10 20/7 65/19
MERRILL [3] 4/20 49/23 50/13
message [1] 47/14
met [1] 69/7
methodology [1] 52/12
metrics [1] 58/6

Michael [2] 5/3 5/18
michael mugmon [1] 1/5/20
middle [2] 23/2 49/4
middle [1] 65/7
might [5] 10/14 14/12 15/21
 27/6 67/20
Mill [1] 5/19
million [13] 6/21 7/11 7/23
 15/20 15/21 20/1 24/23 24/24
 24/24 25/2 25/23 29/25 30/4
millions [3] 25/23 26/7 29/21
mind [1] 34/11
Minimal [1] 32/15
minimally [1] 33/23
minimize [1] 14/22
minute [1] 26/2
minutes [4] 33/15 55/8 56/10
 58/17
misgivings [1] 40/22
missed [3] 22/3 26/12 26/14
modification [2] 60/16 61/15
modify [1] 58/1
moment [15] 7/2 7/16 11/7
 23/19 25/22 27/1 35/2 35/9
 41/10 41/11 43/12 51/10 56/23
 60/13 63/7
moments [1] 52/25
money [9] 17/17 18/3 18/18
 21/12 30/10 30/17 45/4 52/10
 67/4
month [1] 23/24 36/14
months [7] 23/7 23/24 23/24
 24/6 25/10 36/14 38/15
more [16] 11/22 16/23 20/8
 20/13 21/7 21/10 26/4 31/13
 33/12 44/8 44/15 59/12 59/13
 60/21 68/10 70/13
morning [1] 73/3
mortgage [1] 9/3
most [1] 15/22
mostly [1] 26/24
motion [7] 24/5 25/7 63/10
 69/8 70/16 71/22 72/24
motions [4] 1/17 16/13 28/11
 28/11
motivated [1] 29/4
mouth [1] 40/12
move [5] 17/23 21/2 38/9 46/25
 72/1
moved [3] 41/25 41/25 71/9
moves [1] 20/24
moving [2] 23/21 38/14
Mr [8] 23/19 25/10 40/13 40/13
 41/19 49/14 65/18 68/21
Mr. [14] 9/11 9/20 10/2 15/14
 22/6 25/13 29/4 35/4 35/22
 49/7 54/2 70/20 71/2 72/19
Mr. Abrams [2] 35/22 72/19
Mr. Cardona [4] 29/4 35/4
 70/20 71/2
Mr. Keker [7] 9/11 9/20 10/2
 15/14 22/6 25/13 54/2
Mr. Posoz [1] 49/7
Ms [1] 36/7
much [16] 13/21 16/17 21/10
 22/5 22/12 27/25 32/16 41/24
 44/18 57/20 59/12 60/8 60/8
 66/8 67/13 69/15
Mugmon [1] 5/18
must [1] 10/17
my [32] 10/9 10/12 11/24 12/16
 13/16 27/4 27/6 34/2 34/5 37/6
 37/14 37/22 38/20 39/23 40/12
 40/21 43/11 45/1 47/16 51/8

54/4 55/7 58/4 58/15 59/7 61/2
 64/3 66/10 67/14 69/1 69/20
 71/18
myself [2] 14/14 46/20

## N

N.W [3] 4/12 4/22 5/10
NA [1] 4/4
name [2] 24/12 45/19
names [1] 52/15
narrow [7] 15/19 47/16 53/2
 53/11 60/3 64/9 65/22
narrowed [3] 14/19 25/18 53/13
narrowing [1] 26/9
NATIONAL [1] 4/9
nature [2] 15/9 16/7
NCUA [28] 4/9 17/5 17/23 18/6
 18/18 19/10 19/10 19/19 19/24
 19/25 20/2 20/25 21/7 21/22
 21/25 26/22 27/18 30/13 30/21
 31/11 31/13 52/6 57/4 58/4
 58/7 63/7 65/14 66/9
NCUA's [1] 71/22
necessarily [2] 10/6 52/13
necessary [4] 60/3 60/18 63/19
 67/7
need [43] 7/9 9/14 11/8 11/18
 16/23 26/10 29/15 31/10 33/22
 34/3 35/4 39/2 39/8 39/15
 41/16 42/23 42/25 44/4 46/13
 47/1 47/13 48/15 49/2 54/19
 54/25 56/6 56/25 62/22 63/3
 63/16 63/18 64/8 64/15 64/23
 65/11 65/25 66/10 66/18 67/21
 69/4 70/11 70/12 72/4
needs [4] 6/15 20/9 28/18 49/2
negotiate [4] 59/22 60/19 61/1
 64/14
negotiated [1] 14/19
negotiation [1] 61/8
negotiations [3] 27/5 28/2
 28/3
neither [1] 42/7
NEST [5] 2/16 2/20 3/2 3/6
 49/5
never [2] 24/11 66/19
new [12] 3/16 3/16 3/20 3/20
 4/7 4/7 4/18 4/18 9/23 13/10
 21/19 44/24
next [5] 6/4 54/24 57/4 64/20
 71/21
nice [1] 27/1
night [3] 56/2 72/15 73/4
nine [2] 30/6 30/7
Ninth [4] 6/14 14/23 19/4 48/1
no [15] 1/9 18/17 24/21 29/7
 31/18 32/25 34/6 45/20 55/13
 57/23 62/12 64/6 64/15 68/6
 69/18
NON [6] 4/3 4/9 4/15 4/20 5/2
 5/7
NON-PARTY [6] 4/3 4/9 4/15
 4/20 5/2 5/7
noncompliance [1] 29/7
none [1] 40/18
nonparties [2] 6/16 60/4
nonparty [2] 11/1 59/18
nonprofit [3] 17/16 18/25 19/3
North [2] 2/5 2/10
not [114]
not going [1] 71/2
note [1] 21/16
noted [1] 18/8
nothing [5] 16/25 17/2 27/23

**N**

nothing [2] 32/10 49/13
notice [2] 16/13 38/18
now [62] 8/9 11/18 14/9 14/16
 16/14 18/20 24/1 24/7 24/9
 24/13 25/4 25/13 26/14 27/3
 27/10 27/24 29/12 35/2 38/16
 38/19 38/21 39/3 39/7 39/12
 41/19 42/8 42/13 42/15 42/16
 43/11 44/10 44/16 44/21 45/11
 45/23 46/24 52/5 52/9 53/20
 54/19 55/2 56/3 56/4 56/9
 56/10 56/12 56/15 56/20 57/18
 58/19 60/11 60/12 61/21 64/17
 65/14 67/12 67/17 67/23 67/24
 68/8 68/25 69/1
number [10] 10/6 25/3 36/20
 38/6 39/24 40/11 54/7 54/8
 60/17 66/3
numbers [1] 25/2
numerous [1] 28/17

**O**

objections [1] 34/4
obviously [3] 17/11 19/4 67/8
occasions [1] 11/11
occur [5] 6/15 10/18 38/25
 40/19 61/25
occurred [2] 11/10 49/13
occurring [2] 49/3 63/12
October [1] 28/5
off [9] 13/15 21/21 27/17
 37/13 42/16 42/23 56/8 58/18
 68/12
offended [1] 13/7
office [3] 2/4 2/8 38/10
Official [1] 1/21
officials [1] 35/22
offshore [2] 11/25 12/3
often [1] 36/25
oh [2] 55/9 57/3
Ohio [1] 13/4
okay [44] 8/1 8/7 8/15 16/17
 17/1 31/16 33/18 37/24 42/25
 45/9 45/13 46/7 46/9 46/11
 49/14 50/6 51/23 52/24 53/23
 53/24 54/2 56/13 56/18 56/23
 62/13 63/2 63/3 63/21 64/6
 64/7 64/17 64/22 65/4 65/12
 65/14 68/8 68/20 68/24 71/15
 71/20 72/4 72/22 73/4 73/5
older [1] 69/15
older-looking [1] 69/15
once [10] 6/5 16/4 22/14 36/2
 36/7 56/13 56/19 64/17 64/21
 68/23
one [32] 9/13 9/22 11/21 14/25
 20/20 20/22 21/23 22/9 23/9
 23/23 25/1 26/11 31/12 34/3
 36/13 36/14 36/16 38/2 41/9
 43/3 44/8 44/25 46/24 52/7
 52/18 57/7 59/1 66/15 68/10
 69/6 70/16 72/3
onerous [3] 28/22 42/16 47/8
ones [3] 34/20 34/21 43/18
ongoing [1] 47/3
only [12] 12/8 17/14 20/9 21/1
 27/25 28/4 28/9 29/4 30/15
 43/14 52/14 61/15
open [1] 25/16
opinion [3] 46/14 46/14 57/15
opportunity [4] 59/19 60/6
 64/18 68/4

opposed [1] 67/25
opposing [1] 38/14
opposite [2] 33/10 67/20
option [1] 21/91
order [16] 17/19 21/3 21/3
 23/25 24/15 26/23 28/10 28/20
 28/21 39/14 44/25 45/12 54/20
 54/23 62/23 63/15
ordered [2] 24/17 48/19
original [1] 60/1
originally [1] 43/16
other [39] 7/2 7/7 9/12 10/8
 16/12 17/9 20/14 20/19 20/24
 21/21 21/25 22/3 23/11 28/17
 28/18 29/22 31/12 33/1 33/8
 33/23 34/20 35/21 35/25 38/1
 38/19 40/1 42/1 47/7 47/8
 49/21 51/6 52/6 52/17 59/22
 63/4 63/14 65/24 66/2 66/25
others [2] 45/22 47/5
otherwise [2] 21/7 27/18
ought [3] 30/19 31/20 55/24
our [21] 6/12 9/10 10/21 10/23
 11/18 15/9 16/9 16/13 17/13
 19/19 19/19 26/3 36/2 36/4
 42/13 50/2 53/7 65/9 66/16
 67/2 67/9
ourselves [1] 32/6
out [55] 10/20 11/7 13/25 14/1
 16/14 18/18 21/8 23/12 24/24
 25/18 25/23 27/19 28/3 30/4
 30/16 35/12 36/3 36/22 36/24
 37/11 39/3 39/7 39/13 39/22
 39/23 40/10 40/11 42/5 42/24
 43/20 43/24 43/24 44/23 45/19
 46/13 46/25 47/10 48/20 49/12
 51/4 54/17 55/25 56/6 56/25
 59/9 59/22 60/19 62/2 64/23
 65/9 66/21 68/5 68/19 69/18
 72/14
outcome [3] 9/8 9/10 18/11
outlined [1] 15/9
outsources [1] 13/2
outstanding [3] 49/8 49/8
 66/17
over [13] 15/7 22/8 24/17
 24/25 26/3 32/3 33/8 39/11
 47/11 48/12 58/25 60/12 64/25
overall [1] 59/16
overburdened [1] 8/12
overlap [1] 19/12
overly [1] 52/9
overreach [1] 26/5
overreliance [1] 30/25
overruled [1] 17/25
oversight [1] 50/8
own [9] 6/13 9/2 16/13 19/19
 25/9 31/2 32/22 55/4 61/12

**P**

P reimburse [1] 6/25
P's [5] 8/23 18/8 20/12 62/16
 66/4
p.m [7] 6/1 48/6 48/7 58/20
 58/21 72/10 73/16
page [3] 5/19 60/1 74/11
pages [11] 6/21 7/12 7/13 7/14
 7/17 7/23 15/20 24/23 25/2
 25/3 59/5
paid [2] 29/25 30/4
Palo [1] 5/19
panoply [1] 60/7
paper [1] 19/7
papers [6] 6/13 8/18 8/23

 10/21 10/23 15/9
passage [1] 40/18
part [14] 9/15 18/24 23/13
 29/14 30/15 30/21 30/22 37/25
 41/19 43/1 55/22 56/20 58/24
 59/5
participant [1] 9/2
participation [3] 34/1 34/6
 35/5
particular [2] 30/5 45/12
particularized [1] 44/4
particularly [1] 19/13
parties [11] 21/9 28/15 28/16
 30/13 33/23 38/14 53/25 58/23
 59/24 60/2 60/11
partner [1] 12/10
parts [1] 63/14
partway [1] 70/9
party [11] 4/3 4/9 4/15 4/20
 5/2 5/7 18/6 18/7 18/9 18/13
 19/8 22/22 22/22
pass [4] 12/1 12/9 15/12 15/16
past [12] 21/9 26/19 31/25
 38/20 62/6 62/10 63/9 64/11
 64/14 65/9 65/20 66/19
patient [1] 72/16
PAUL [5] 4/5 4/16 6/8 12/8
 14/5
Paven [1] 3/6
pay [14] 17/19 20/22 24/7
 29/19 29/20 30/2 30/19 30/21
 31/6 44/18 52/22 55/20 55/21
 57/2
paying [9] 10/4 21/6 21/18
 22/1 29/2 44/17 47/5 47/6
 47/19
penalties [1] 18/16
Pennsylvania [2] 4/22 5/10
people [24] 12/25 20/15 21/19
 21/21 21/22 26/15 26/16 30/17
 33/8 34/13 34/17 34/22 34/24
 35/13 35/25 37/11 40/10 42/24
 43/18 43/22 44/6 51/25 55/5
 72/9
per [3] 13/13 13/17 35/20
perceived [2] 24/15
percent [2] 22/24 30/10
percentage [1] 13/6
period [1] 9/4
periodic [1] 36/13
person [5] 6/4 15/22 23/11
 27/17 37/7
perspective [6] 10/9 10/10
 15/6 19/18 27/4 62/16
pertains [4] 8/21 9/8 64/11
 64/12
pick [5] 42/22 45/9 52/14
 53/15 69/17
PICKERING [3] 5/8 5/12 5/17
Pine [2] 3/16 3/20
place [7] 8/9 28/1 51/7 56/14
 56/15 56/19 56/24
placed [1] 56/9
plain [1] 30/13
Plaintiff [1] 1/8
plan [3] 50/10 64/1 65/9
planning [3] 62/18 62/19 63/9
play [1] 36/12
playing [1] 34/4
please [8] 8/15 10/15 23/2
 32/3 44/3 46/2 49/14 66/14
pleased [1] 33/20
pleasure [1] 42/2
plenty [1] 9/19

**P**

PAGE [1] 4/10
point [12] 11/22 11/23 13/9
 13/11 16/1 25/24 27/12 30/14
 40/6 44/16 62/1 63/4
pointing [1] 23/12
points [3] 6/18 20/18 22/2
poke [1] 41/7
policy [1] 11/11
POOR'S [3] 1/10 2/15 48/25
populated [1] 16/4
portion [6] 18/10 25/7 47/19
 57/15 59/1 59/2
posed [1] 67/6
position [12] 8/10 20/12 26/6
 28/8 42/14 47/9 51/9 60/10
 62/2 63/6 65/7 68/5
positions [1] 62/7
Posoz [2] 49/7 49/14
possession [1] 25/4
possible [3] 61/12 67/14 72/10
possibly [1] 35/25
potentially [1] 25/6
power [1] 24/11
Pozos [1] 4/21
praise [1] 27/2
precedent [1] 14/24
precisely [1] 18/25
prefer [2] 61/10 63/4
preferable [2] 69/12 69/13
preferred [1] 59/13
preliminary [2] 53/6 53/16
prepared [1] 36/10
present [3] 4/2 48/19 58/23
presented [1] 59/17
presenting [1] 55/22
president [2] 40/8 40/8
presiding [2] 1/5 39/11
press [1] 42/13
pressure [1] 42/23
pretrial [1] 33/14
pretty [6] 38/4 42/13 45/1
 45/2 46/23 46/23
prevailing [2] 18/22 19/22
previous [2] 70/21 70/21
previously [1] 7/23
price [1] 55/20 55/21 57/1
prior [3] 23/3 62/20 64/1
priority [1] 50/25
privately [1] 51/10
privilege [26] 9/15 10/7 10/12
 11/13 11/19 11/23 16/1 16/3
 16/6 16/8 19/17 20/20 20/23
 20/23 21/1 21/6 21/10 21/13
 30/23 31/25 32/13 43/2 54/14
 66/16 69/9 70/16
privileged [2] 19/16 44/1
privileges [1] 21/4
probably [7] 34/18 38/5 42/20
 43/6 48/2 59/5 65/24
problem [7] 30/9 48/9 57/3
 57/4 57/6 58/3 61/4 67/21
 67/21
problems [4] 36/16 62/14 62/16
 63/12
proceed [2] 64/2 66/18
proceeded [1] 25/16
proceeding [3] 48/7 58/21
 73/16
proceedings [2] 1/16 74/10
process [6] 24/19 27/6 28/21
 47/3 60/5 69/8
produce [5] 21/10 29/9 49/18
 49/24 60/4
produced [15] 9/6 6/23 7/4 7/5
 17/11 19/1 29/2 71/8 72/9 73/5
 12/2 14/6 29/9 32/17 49/21
 50/22
produces [1] 50/21
product [4] 34/2 34/7 34/25
 44/5
production [21] 7/9 9/16 11/5
 12/11 14/18 16/9 32/15 36/21
 49/16 49/19 49/20 50/19 51/15
 61/20 61/20 61/21 62/19 62/19
 65/9 67/8 70/13
productions [8] 6/23 16/3
 49/25 54/12 54/14 63/11 63/25
 64/1
products [2] 9/3 9/4
progress [1] 28/9
propose [1] 52/25
proposed [3] 41/24 52/11 53/7
protective [1] 21/3
proven [2] 63/3 63/22
provide [3] 50/16 51/13 63/10
provided [1] 10/19
public [2] 22/23 30/1
pulled [1] 20/21
purchased [1] 29/22
pursuant [1] 74/7
push [4] 11/18 25/15 46/16
 54/2
pushback [3] 43/3 61/24 62/6
pushed [2] 24/21 52/8
pushing [3] 21/13 46/22 54/4
put [8] 10/3 22/13 34/11 42/10
 54/5 61/3 63/10 72/13
puts [1] 67/22

**Q**

qualified [1] 12/7
quantity [1] 7/6
question [6] 10/5 17/14 22/13
 54/9 67/6 71/22
questions [6] 16/22 17/22 22/9
 62/5 65/15 66/12
quibbling [1] 57/16
quick [2] 38/4 68/10
quicker [1] 38/4
quickly [5] 39/22 39/23 45/25
 59/4 64/24
quite [11] 11/5 11/14 22/20
 28/17 38/10 39/20 46/15 47/21
 61/4 65/7 67/19
quote [2] 8/23 30/25

**R**

rabbit [1] 14/14
RACKAUCKAS [1] 3/10
raise [1] 20/19
raised [5] 20/18 22/3 50/8
 57/5 57/11
rampant [1] 52/22
ran [2] 58/1 58/11
rate [1] 14/3
rated [1] 31/3
rates [4] 10/4 12/10 13/15
 13/23
rather [3] 46/14 67/12 67/17
rating [3] 19/14 19/21 31/1
ratings [1] 9/2
RBS [5] 5/7 16/20 30/6 46/3
 63/6
reach [1] 45/24
reached [3] 46/4 48/25 49/8
react [1] 43/4 43/5
reaction [2] 42/2 67/20
read [3] 30/16 57/14 58/25
ready [1] 32/24
ready [1] 45/13
real [3] 26/23 54/9 68/10
reality [4] 27/3 28/15 71/18
 71/19
realize [2] 40/13 67/5
realized [1] 59/1
really [18] 19/23 20/9 22/16
 26/21 27/21 29/11 34/2 34/3
 46/24 47/13 48/21 49/13 59/19
 60/7 64/8 67/6 70/10 71/18
reason [9] 24/14 28/9 32/2
 34/6 39/5 43/15 45/20 65/10
 70/11
reason why [1] 32/2
reasonable [21] 9/16 10/9 10/9
 10/10 10/14 14/3 15/3 15/5
 22/14 31/23 31/24 47/17 47/25
 54/7 54/15 50/15 55/21 60/17
 61/5 61/9 67/2
reasonableness [5] 31/10 32/12
 47/1 55/17 59/17
reasonably [1] 59/23
reasons [5] 23/23 29/7 31/21
 46/23 58/2
reasons we [1] 23/23
rebuttal [1] 10/3
received [3] 18/9 24/4 24/16
recess [6] 48/6 48/9 48/23
 49/7 58/13 58/20
recognize [2] 21/12 66/20
recognized [1] 67/1
record [10] 6/5 40/20 45/22
 48/8 49/2 49/11 57/8 59/20
 61/4 67/12
records [5] 12/17 12/20 12/24
 13/6 25/9
recover [1] 62/10
reduced [1] 21/24
REEDSMITH [1] 5/3
referenced [1] 9/6
referred [1] 6/20
reflect [1] 64/8
reflected [1] 10/23
reflection [1] 59/3
refreshing [1] 37/19
regard [10] 17/7 17/10 19/6
 19/14 57/19 57/25 58/4 65/20
 66/19 67/7
Regardless [1] 48/10
regular [1] 50/14
regularly [1] 50/17
regulates [1] 20/3
regulations [1] 74/12
regulator [2] 30/16 31/15
regulators [2] 50/15 50/17
regulatory [1] 31/13
reimburse [1] 6/25
reimbursement [3] 18/16 64/14
 66/20
REINDEL [2] 3/14 3/18
reintroduce [1] 6/6
reinvigorate [1] 68/7
relevance [1] 27/7
relevant [3] 9/4 11/22 32/9
reluctant [1] 67/6
rely [2] 17/11 33/22
remember [5] 43/25 44/2 44/11
 44/16 46/15
repeat [4] 7/2 12/18 31/8 51/2
report [3] 36/25 55/2 70/4
reported [2] 6/2 74/9

**R**

Reporter [2] 0/21 74/17
REPORTER'S [1] 1/16
reports [1] 50/1
representations [1] 57/8
reproduce [1] 24/8
request [6] 9/15 27/20 36/5
  38/7 38/16 55/17
requested [2] 58/1 58/12
requesting [4] 7/8 7/20 55/15
  55/23
requests [6] 8/11 11/9 47/13
  53/2 60/3 64/9
require [2] 32/10 33/9
required [1] 14/23
requiring [2] 15/8 20/7
resolution [4] 45/22 45/24
  46/4 48/25
resolutions [1] 45/18
resolve [2] 58/16 66/1
resolved [7] 43/6 45/20 46/5
  46/6 53/18 55/10 65/19
resolves [1] 50/2
resources [3] 57/2 57/16 68/25
respect [4] 22/10 49/21 53/3
  68/5
respectful [1] 11/12
respective [1] 60/14
respectively [1] 61/11
respond [5] 6/17 8/16 27/22
  27/23 47/24
responding [3] 23/8 23/9 23/9
response [2] 10/13 18/20
responsibility [3] 37/14 44/17
  47/17
responsible [1] 15/22
responsive [1] 60/4
responsiveness [3] 32/1 32/13
  54/15
rest [2] 41/3 51/8
resulted [1] 19/2
results [1] 71/18
resumed [2] 48/7 58/21
revenue [1] 20/1
reverse [1] 46/20
review [17] 9/14 11/23 11/24
  12/7 12/10 12/13 13/11 14/4
  31/10 32/1 32/1 32/9 32/11
  32/12 32/23 59/15 66/16
reviewed [3] 12/6 12/24 15/8
reviewer [1] 16/4
reviewers [2] 11/25 12/6
reviewing [3] 11/2 12/16 12/19
reviews [3] 32/14 54/15 54/15
revise [1] 60/3
RIFKIND [2] 4/5 4/16
right [22] 11/18 14/8 14/16
  16/14 22/6 27/24 35/2 41/23
  42/8 42/15 44/9 44/21 52/9
  53/19 56/9 56/20 60/11 63/22
  66/15 67/24 68/6 69/4
rightly [1] 17/12
rings [1] 21/14
RMBS [2] 19/12 49/23
road [2] 5/19 42/16
Roberts [1] 44/22
rolling [2] 62/19 65/9
room [6] 1/22 2/11 23/22 38/24
  56/6 60/12
routine [1] 12/10
rules [3] 36/11 36/12 36/24
ruling [2] 45/21 73/8
run [7] 41/12 41/17 44/18

  52/22 53/5 57/21 58/6
  running [5] 26/11 68/9 68/12
  70/7 71/20

**S**

said [12] 17/16 22/21 24/23
  26/23 34/25 43/19 44/6 54/20
  59/14 61/16 66/21 69/6
sailed [1] 6/24
same [10] 18/15 19/11 24/20
  30/6 31/19 42/14 58/11 65/6
  67/25 68/11
San [4] 2/18 2/22 3/4 3/8
sanction [1] 39/14
Sansome [2] 2/18 3/7
Santa [3] 1/18 1/23 6/1
satisfied [6] 27/13 66/6 66/7
  66/8 73/11 73/12
Saturday [2] 27/14 45/5
Saturdays [1] 40/15
save [1] 45/3
say [27] 7/10 10/11 23/10
  23/11 24/11 24/14 24/14 26/2
  30/12 31/2 31/3 31/23 34/10
  40/21 43/22 43/23 53/4 55/5
  55/5 55/9 55/19 61/19 65/1
  67/6 67/13 69/14 70/3
saying [14] 14/18 24/8 26/12
  27/24 28/7 29/19 29/20 30/3
  30/11 30/19 32/18 44/3 61/22
  68/4
says [2] 20/22 22/11
scenario [2] 27/23 56/12
scenarios [2] 10/21 10/21
schedule [4] 51/8 55/7 69/20
  70/25
scheduled [2] 44/24 51/22
scope [3] 9/14 14/20 26/25
Scotland [1] 16/19
scrutinization [1] 15/13
search [36] 15/8 15/12 15/16
  48/9 48/12 48/16 48/20 52/6
  52/8 52/12 52/13 52/18 52/22
  53/3 53/7 53/16 54/18 54/22
  55/12 55/18 56/25 57/5 57/11
  57/12 57/20 58/1 58/5 58/11
  60/9 64/15 64/18 64/25 65/18
  65/23 65/25 67/11
seat [1] 57/6
second [7] 12/8 15/3 29/5
  47/15 48/23 59/25 68/9
Section [1] 74/7
securities [10] 4/15 5/2 5/7
  6/8 16/20 25/18 25/19 30/24
  50/15 52/15
security [2] 33/5 52/14
see [25] 9/9 11/13 29/6 32/4
  32/9 34/7 42/17 42/17 43/21
  47/13 47/20 48/1 48/5 48/20
  53/19 53/22 55/18 58/10 60/7
  64/4 65/10 65/21 67/22 70/12
  73/10
seek [2] 63/9 66/20
seeking [9] 6/20 6/22 6/25
  7/18 18/16 62/10 64/2 64/13
  65/8
seeking costs [1] 64/2
seems [2] 31/7 54/7
seen [6] 26/13 38/19 39/24
  43/2 43/3 59/4
SEFFENS [3] 1/21 74/16 74/17
send [2] 42/5 45/14
senior [1] 69/15
sense [4] 40/2 43/14 59/21

  60/23
  sent [1] 13/6
  separate [2] 29/14
  September [15] 37/5 37/24
  41/14 41/15 41/15 69/12 69/12
  69/13 69/22 69/24 70/2 70/10
  71/1 71/5 71/17
  September 4th [1] 69/12
  September 5th [1] 69/12
  September 8 [1] 69/22
  September 9th [3] 71/1 71/5
  71/17
  serious [2] 28/2 28/3
  SERVICES [2] 1/11 2/15
  set [13] 33/16 37/21 38/6
  41/13 43/5 48/1 50/24 59/9
  60/22 62/22 67/9 69/7 69/9
  setting [2] 59/7 60/24
  settle [1] 29/25
  seven [5] 9/6 9/12 29/18 29/22
  48/3
  seven-factor [1] 48/3
  several [1] 35/19
  shadow [1] 41/1
  shake [1] 10/20
  shall [2] 60/2 60/4
  share [2] 18/18 19/16
  SHARON [3] 1/21 74/16 74/17
  Shield [1] 22/19
  shift [17] 6/20 7/18 8/1 9/20
  10/14 15/12 15/15 17/17 22/23
  22/24 23/1 23/2 23/2 31/20
  31/20 46/25 47/14
  shifted [3] 10/22 22/14 31/9
  shifting [15] 6/12 6/13 6/15
  10/17 17/14 18/1 19/5 21/24
  22/11 22/15 25/7 31/21 31/23
  48/11 60/1
  shifts [1] 57/14
  ship [1] 6/23
  short [1] 54/22
  shortly [1] 64/15
  should [22] 14/15 18/2 21/24
  21/25 22/10 23/4 25/1 25/3
  29/19 29/20 30/2 30/21 31/11
  31/16 31/19 31/22 32/10 32/22
  32/25 33/9 41/4 71/7
  shouldn't [11] 8/4 9/21 20/22
  31/18 31/19 31/24 31/25 31/25
  32/1 32/10 32/18
  shown [1] 44/4
  side [2] 34/19 66/7
  sides [1] 40/12
  sifting [1] 25/5
  significance [3] 17/15 22/16
  59/16
  significant [8] 6/16 10/18
  14/21 15/6 15/10 16/5 22/15
  59/7
  Significantly [1] 13/19
  simple [1] 48/13
  simply [4] 26/18 33/1 59/14
  70/25
  since [6] 10/22 14/19 26/22
  36/7 45/20 49/12
  single [1] 22/11
  sinking [3] 14/8 14/12 14/15
  sir [4] 23/18 32/21 33/11
  56/17
  sit [3] 55/19 59/23 72/18
  six [3] 44/24 49/16 49/18
  size [1] 31/12
  slightest [1] 58/9
  slightly [3] 22/22 58/2 58/3

**S**

Smith [3]  24/21 48/13 53/21
 55/11 55/19 56/2 56/9 58/22
 68/2
so [113]
solidify [1]  54/18
some [36]  7/6 9/11 13/2 18/21
 19/2 19/11 19/13 19/16 20/4
 23/14 28/2 28/3 30/14 31/3
 33/14 36/19 38/24 38/25 39/1
 40/25 42/24 45/4 45/17 45/18
 46/23 47/4 50/19 52/10 52/12
 53/2 54/8 58/6 62/1 62/5 63/4
 71/19
somebody [4]  12/15 48/23 54/13
 55/9
somehow [2]  14/14 29/16
someplace [1]  33/3
something [7]  26/24 36/4 36/23
 41/7 43/8 60/19 66/17
sometime [1]  33/11 38/23
sometimes [1]  9/13
somewhat [3]  10/22 52/13 62/7
soon [3]  27/16 41/4 42/15
sooner [1]  61/21
sophisticated [1]  11/5
sorry [1]  58/8
sort [12]  10/23 18/21 27/19
 29/13 36/22 37/6 47/10 48/20
 54/22 55/1 55/25 68/5
sought [2]  8/25 16/8
sound [1]  55/3
sounds [2]  19/7 26/6
South [2]  5/4 5/14
speaking [2]  11/2 40/11
special [11]  32/23 33/21 33/25
 34/3 34/6 42/21 43/11 45/1
 48/18 70/6 70/11
specific [3]  17/23 52/14 53/12
specifically [4]  8/21 20/24
 49/21 51/18
specious [1]  34/5
spectacularly [1]  37/21
speed [1]  38/2
speedily [1]  29/8
spend [1]  73/4
spending [1]  60/21
spent [5]  11/2 16/6 23/5 66/23
 67/3
spoken [1]  11/11
Spring [1]  2/5
spurious [1]  11/14
staffing [1]  39/12
standard [8]  1/10 2/14 10/17
 47/1 48/25 60/17 60/22 61/14
standing [2]  26/6 40/25
start [11]  7/22 22/25 39/24
 42/16 48/17 48/21 55/12 55/16
 61/18 62/9 67/21
started [2]  14/19 68/3
starting [2]  9/22 64/19
starts [1]  36/8
states [12]  1/3 1/7 1/22 2/2
 2/4 2/5 2/8 2/10 17/13 24/10
 74/8 74/12
status [8]  36/13 51/14 62/22
 70/19 70/20 72/7 72/8 72/23
stay [1]  40/3
STEEN [1]  4/21
stenographically [1]  74/9
Steven [1]  2/21
still [5]  14/5 14/20 18/18
 53/14 61/8

stipulation [1]  38/14
story [1]  38/1
straight [2]  41/17
strain [1]  48/12
Street [11]  1/22 2/5 2/10 2/18
 2/22 3/3 3/7 3/16 3/20 4/12
 39/21
stricken [1]  59/3
strong [2]  8/2 46/23
structuring [1]  9/3
struggle [1]  47/1
struggled [1]  25/11
struggling [1]  9/9
subpoena [4]  11/1 14/20 18/9
 26/9
subpoenaed [1]  25/20
subpoenas [2]  19/9 20/8
subsequent [1]  7/9
substantial [3]  18/10 32/19
 63/25
substantially [1]  17/11
succeeded [1]  26/21
succeeding [1]  19/1
sudden [2]  28/12 28/23
sue [1]  30/16
sued [2]  29/25 32/6
suggest [1]  40/6
suggesting [2]  21/11 22/18
suing [2]  8/20 32/6
Suite [4]  3/12 4/12 5/5 5/14
summons [1]  42/6
Sunday [3]  27/14 27/17 43/7
Sundays [1]  40/16
supportive [1]  6/12
supposed [1]  31/3 31/4 31/5
sure [16]  11/16 12/13 12/17
 13/5 16/24 17/4 17/7 21/5
 37/23 41/12 41/13 43/12 47/6
 47/25 62/23 71/10
surprised [1]  17/8
Susanna [1]  4/5
sweep [1]  52/9
system [1]  16/11

**T**

table [1]  56/12
tags [1]  16/5
take [13]  21/21 27/9 41/12
 41/20 43/20 44/11 45/21 46/13
 47/18 54/22 58/13 63/18 64/20
taken [5]  48/6 58/20 59/13
 66/23 67/3
taking [2]  43/21 51/17
talk [12]  22/15 22/16 29/12
 33/12 35/22 36/5 36/6 37/2
 41/11 47/11 58/14 60/18
talked [5]  29/13 31/22 44/12
 65/18 69/11
talking [7]  22/15 22/17 28/20
 29/12 35/8 58/9 70/6
tangent [1]  37/13
targeting [1]  51/3
taxpayers [1]  20/2
Taylor [1]  2/21
team [1]  26/3
technical [1]  58/2
tell [14]  29/15 33/19 34/24
 36/15 38/13 40/23 42/22 43/17
 44/5 44/12 46/17 57/5 58/23
 69/15
telling [1]  39/20
tells [1]  44/22
Templepoint [1]  49/22
ten [1]  30/10

ten percent [1]  30/10
tentative [14]  10/13 41/5 41/6
 45/18 45/17 46/21 46/22 54/1
 54/3 57/13 58/24 59/2 59/4
 60/1
tentatively [3]  47/19 52/16
 57/14
Teresa [1]  16/20 63/8
term [3]  52/6 52/8 52/12
terms [43]  11/13 15/4 15/5
 15/6 15/8 15/12 15/16 20/11
 25/7 41/17 48/9 48/12 48/16
 48/20 52/13 52/18 52/22 53/4
 53/7 53/11 53/19 54/19 54/22
 55/12 55/18 56/25 57/5 57/6
 57/11 57/12 57/20 58/1 58/5
 58/12 60/9 64/15 64/18 64/25
 65/18 65/23 66/1 67/12 68/5
test [6]  17/24 20/6 38/3 40/9
 48/1 48/3
tested [1]  58/10
testify [1]  26/16
than [12]  13/19 19/25 20/14
 21/7 26/4 31/11 38/4 44/16
 61/13 61/21 67/12 67/17
thank [19]  6/3 16/17 17/6 22/5
 22/7 25/12 25/12 27/2 29/10
 37/18 46/10 49/6 53/24 63/8
 73/6 73/7 73/13 73/14 73/15
thank-you [1]  25/12
Thanksgiving [1]  41/18
that [444]
that's [60]  7/20 8/25 10/5
 10/13 11/10 11/10 14/25 16/15
 18/8 18/24 21/11 25/10 25/12
 26/18 27/1 27/3 28/20 30/10
 35/9 35/10 35/10 36/8 36/9
 37/3 37/18 37/18 38/8 38/16
 39/9 39/10 41/21 41/24 43/21
 44/17 45/9 47/23 48/17 51/15
 51/23 52/18 56/15 59/8 59/9
 60/10 60/16 60/24 61/13 62/24
 63/3 66/17 68/2 68/8 70/5 71/4
 71/6 72/3 72/4 72/6 72/10
 72/19
their [7]  8/11 21/5 21/22
 27/9 29/3 29/19 33/22 40/4
 50/9 60/3 64/9
them [38]  7/19 7/21 7/22 9/13
 20/20 23/14 26/16 30/14 30/23
 32/10 33/1 34/7 35/17 38/2
 38/5 39/2 39/8 40/24 43/4 43/5
 43/13 43/18 43/25 44/1 44/9
 44/19 44/25 52/22 53/13 53/15
 53/22 55/13 57/17 57/17 58/1
 58/2 66/1 70/3
them because [1]  43/13
then [50]  9/23 11/22 13/1 14/5
 15/16 17/5 17/19 22/13 24/5
 25/17 35/24 36/11 37/14 38/12
 38/21 39/20 40/3 40/7 40/22
 41/7 41/25 41/25 43/20 44/24
 45/2 45/13 46/11 47/16 50/19
 53/8 54/15 55/2 55/8 60/4
 60/13 61/12 62/15 64/20 64/25
 65/5 65/6 66/13 66/21 68/3
 68/11 69/4 70/15 71/19 72/22
 73/8
there [63]  6/18 6/19 7/7 8/1
 8/22 9/21 11/15 11/25 14/4
 17/9 18/25 19/3 19/5 19/7
 19/11 22/25 25/22 25/23 27/5
 28/2 28/3 28/16 29/15 30/7
 30/9 33/2 33/6 34/6 35/24

**T**

**there** [34]   36/15 38/25 39/1
42/24 43/12 43/19 45/18 45/19
45/20 51/7 54/7 55/8 55/19
55/20 55/21 57/20 57/22 58/3
58/3 58/5 59/1 60/8 61/8 62/5
62/6 63/13 65/24 69/8 70/12
72/4 72/4 72/5 72/7 73/10
**there's** [14]   7/18 12/4 16/23
26/7 28/17 29/24 32/2 35/23
38/24 38/25 42/24 61/24 70/21
71/2
**therefore** [3]   19/8 36/17 59/16
**Theresa** [1]   5/9
**these** [32]   7/4 7/23 7/23 8/3
12/25 24/4 24/13 25/2 25/8
26/8 28/8 28/11 29/6 30/12
30/17 32/2 32/7 34/4 35/13
35/17 38/4 39/19 41/6 43/9
44/6 47/7 48/21 55/21 57/5
57/6 57/7 68/5
**they** [61]   8/4 8/19 13/3 16/10
17/19 21/8 23/3 26/14 26/15
26/18 28/22 29/5 29/9 29/16
29/17 29/22 29/25 30/5 30/6
30/6 30/10 30/14 30/15 30/16
30/16 30/24 30/24 31/15 31/18
31/18 34/13 34/25 35/15 35/16
36/16 38/1 39/1 39/20 43/5
43/22 43/25 43/25 44/2 44/6
44/6 44/6 44/11 44/18 49/19
50/17 52/13 52/14 53/5 53/14
54/10 54/11 54/11 54/14 64/8
64/8 68/4
**they'll** [3]   35/13 39/2 64/9
**they're** [19]   8/12 15/19 21/19
23/8 29/13 29/20 30/3 30/12
33/1 33/2 33/24 34/21 40/6
43/23 54/13 58/6 59/10 62/2
62/4
**thing** [11]   15/3 22/9 41/9
46/24 47/15 48/23 59/25 67/5
68/11 69/6 70/16
**things** [11]   17/10 21/20 26/5
27/25 28/23 34/10 38/25 47/7
55/1 56/11 70/15
**think** [90]
**think that** [1]   45/23
**think you** [1]   36/9
**thinking** [3]   33/24 42/1 72/14
**this** [119]
**those** [61]   6/23 6/24 6/25 8/20
9/17 9/22 10/3 10/14 10/21
11/13 11/17 14/23 15/11 15/16
15/17 15/19 15/23 16/2 20/4
21/3 22/2 24/16 24/20 25/3
25/19 26/16 29/21 30/7 30/10
30/20 31/1 32/7 32/23 33/7
34/15 34/16 34/24 35/24 36/12
37/21 42/22 48/16 49/10 49/11
49/12 49/18 49/24 50/16 50/19
51/17 51/24 52/6 52/18 53/8
53/19 53/21 66/2 66/20 69/25
70/13 71/13
**though** [4]   34/11 43/2 60/20
70/24
**thought** [5]   10/20 23/15 27/21
41/24 53/18
**thoughtful** [2]   45/3 53/1
**threat** [1]   27/10
**three** [7]   23/24 25/10 38/6
38/15 39/24 44/23 70/6
**threshold** [1]   61/7

**through** [26]   8/11 10/7 10/12
15/19 16/4 20/25 24/19 25/16
31/10 32/5 32/24 36/22 39/7/14
44/8 44/16 48/19 49/10 51/24
52/20 53/17 53/21 54/22 55/25
57/7 57/18 61/23
**thrown** [1]   25/2
**Thursday** [1]   70/22
**time** [42]   6/4 6/6 9/4 9/19
10/8 10/12 11/2 11/24 13/24
16/6 21/21 23/5 23/14 27/9
27/22 36/16 39/9 40/15 41/17
41/25 42/4 42/8 42/9 42/10
46/12 48/17 49/12 53/19 56/7
56/15 57/7 58/15 59/13 60/21
63/18 65/2 68/9 68/10 68/16
69/1 69/18 70/21
**time-consuming** [1]   39/9
**timely** [1]   67/24
**times** [4]   36/20 46/19 61/2
70/7
**tired** [1]   56/2
**Title** [1]   74/8
**Titolo** [3]   5/9 16/20 63/9
**today** [12]   6/21 20/5 27/5 28/1
28/5 33/11 38/1 39/14 49/17
49/24 50/9 73/12
**TODD** [1]   4/10
**together** [2]   28/13 42/12
**told** [9]   28/11 33/12 34/24
36/7 40/12 43/18 43/25 44/2
44/22
**tolerant** [1]   39/19
**tomorrow** [3]   54/24 57/17 63/15
**tone** [1]   43/5
**tonight** [16]   48/14 48/17 48/21
53/19 53/21 54/19 54/24 55/6
55/15 55/19 57/1 57/2 57/16
58/22 64/18 68/3
**too** [6]   15/20 18/24 59/4 66/5
67/13 68/3
**took** [2]   27/25 49/12
**top** [1]   13/15
**touch** [1]   28/16
**tough** [1]   42/16
**towards** [1]   66/23
**track** [1]   27/13
**trained** [1]   21/20
**transcribe** [1]   44/7
**transcript** [3]   1/16 74/9 74/11
**transcripts** [5]   34/16 34/18
34/23 43/19 50/1
**treated** [3]   31/11 31/16 31/19
**tremendous** [3]   24/11 25/14
25/25
**trial** [15]   27/6 33/13 36/5
36/6 36/8 36/9 36/18 37/4
37/10 38/6 41/17 43/6 69/18
72/15 72/17
**Tricadia** [1]   49/22
**tried** [1]   26/20
**true** [3]   18/23 71/6 74/8
**truly** [1]   60/8
**trust** [6]   39/21 42/15 62/24
68/24 70/5 71/19
**trustees** [2]   35/14 36/4
**try** [4]   26/10 30/17 38/12
72/16
**trying** [15]   14/13 15/19 23/23
24/2 26/1 30/8 36/22 41/22
43/24 51/23 54/18 57/24 58/6
62/4 65/22
**Tuesday** [6]   1/19 6/1 71/4 71/6
71/12 72/1

**turn** [5]   24/17 53/25 60/12
69/13 64/4
**turnaround** [1]   67/8
**turned** [3]   24/25 32/3 33/8
**turns** [1]   25/18
**two** [21]   10/6 11/17 20/21
23/24 24/16 36/13 40/11 43/3
44/22 44/23 49/23 52/5 57/18
58/5 58/17 63/13 65/15 68/10
68/12 70/8 70/15
**type** [1]   33/14

**U**

**U.S** [4]   13/20 24/11 38/12
74/17
**ultimately** [2]   19/20 20/3
**UMBERG** [1]   3/10
**under** [4]   6/14 7/20 10/20
14/23
**understand** [8]   8/22 13/5 20/12
49/2 52/16 54/5 57/9 60/20
**understanding** [2]   55/14 58/4
**understood** [7]   9/2 16/15 39/16
42/9 43/16 56/16 65/3
**underwriting** [1]   9/3
**unfair** [1]   38/22
**unfairness** [1]   24/3
**Unfortunately** [1]   53/18
**unhook** [1]   70/15
**UNION** [1]   4/9
**unions** [8]   20/3 20/4 30/16
30/17 30/18 30/20 30/25 57/25
**unique** [1]   52/20
**UNITED** [11]   1/3 1/7 1/22 2/2
2/4 2/5 2/8 2/10 24/10 74/8
74/12
**universe** [1]   20/10
**unless** [6]   16/22 17/22 23/13
28/16 32/1 42/13
**unnecessary** [3]   42/19 45/19
63/1
**unquote** [1]   8/24
**unreasonable** [3]   55/4 55/20
56/1
**unredacted** [1]   50/1
**unsuccessfully** [1]   54/5
**until** [5]   27/12 35/17 63/3
63/22 72/18
**up** [25]   9/25 14/17 16/9 21/2
21/18 25/12 33/16 38/9 41/17
42/1 42/17 44/18 44/18 48/14
52/7 52/14 53/15 55/5 55/8
57/5 63/18 67/17 71/19 71/20
72/1
**update** [1]   51/14
**upon** [7]   29/8 33/22 34/1 43/1
53/11 55/23 59/3
**upwards** [1]   6/21
**us** [35]   6/25 8/25 22/1 23/12
23/13 28/11 31/7 32/3 32/4
32/7 32/7 32/8 32/8 33/8 33/12
34/24 36/12 36/23 43/17 44/4
44/5 44/9 46/4 50/9 50/16 54/7
55/1 55/25 56/1 61/18 61/20
66/15 66/17 67/10 71/5
**used** [1]   35/25

**V**

**Valdez** [2]   18/7 18/10
**VAN** [5]   2/16 2/20 3/2 3/6 49/5
**vary** [1]   38/22
**vastly** [1]   21/18
**vendor** [1]   12/4
**vendors** [2]   13/3 67/11

## V

versus [2] 7/21 24/11
very [38] 8/10 11/18 13/7
14/12 16/11 16/17 17/20 20/12
22/5 23/25 26/8 26/11 26/17
26/17 26/18 27/1 27/4 27/22
29/1 32/2 33/20 39/18 39/22
39/23 40/24 41/24 45/25 45/25
52/21 55/3 55/15 56/4 56/4
59/20 59/21 59/21 64/15 67/13
vice [1] 40/8
vice-president [1] 40/8
victim [1] 8/24
victims [1] 8/19
view [3] 17/13 27/25 55/16
virtually [1] 18/23
virtue [1] 24/10
Voice [7] 14/23 17/10 17/18
17/25 18/25 19/2 59/10
Vol [1] 6/2
volume [3] 1/15 53/6 53/15
voluminous [4] 11/9 34/5 36/21
48/21
voluntarily [1] 47/16
Von [1] 3/11

## W

wade [1] 39/7
wait [2] 62/18 72/21
waiting [2] 51/16 65/16
Wall [1] 39/21
want [47] 7/11 7/16 9/16 12/12
12/17 12/18 13/10 15/16 15/18
17/3 20/19 24/11 35/1 35/10
35/10 35/18 36/14 36/25 40/10
40/16 40/20 41/5 41/12 43/12
44/18 45/16 45/17 45/18 49/11
49/12 50/10 51/7 51/24 52/9
53/2 53/17 53/19 53/22 56/10
57/7 63/14 64/8 66/25 68/11
68/24 68/25 72/15
wanted [10] 6/9 8/16 13/9 14/6
35/5 37/2 60/6 68/4 69/7 72/14
wants [2] 29/8 35/23
warning [2] 38/8 38/16
warp [1] 38/2
was [52] 6/4 6/14 6/19 7/1 8/1
8/23 9/20 14/13 17/16 19/7
19/12 19/18 19/19 19/21 19/22
22/20 23/24 24/1 24/1 24/5
24/15 24/15 24/18 25/17 25/19
26/1 27/21 28/19 29/15 30/9
30/9 37/2 39/21 42/2 43/16
51/23 56/9 57/13 58/7 59/25
60/7 60/8 61/25 62/5 62/6 62/7
64/3 68/2 68/3 70/10 70/11
72/12
Washginton [1] 4/23
Washington [4] 4/13 5/10 9/23
73/2
wasn't [2] 60/8 67/5
waste [2] 58/14 68/25
water [1] 7/20
waterfront [1] 55/18
way [30] 7/11 11/24 12/16 16/2
18/1 18/19 25/8 37/5 37/17
39/3 39/7 42/18 43/10 44/8
44/23 45/19 46/19 47/25 55/9
55/10 56/3 59/12 60/16 61/3
61/5 61/6 61/13 63/5 71/19
73/4
way we [1] 43/10
we [220]

we ran [1] 58/11
we'd [1] 36/5
we'll [9] 14/21 14/14 45/2
45/10 48/5 48/21 53/21 63/6
65/21
we're [35] 6/22 7/20 12/9
16/12 18/4 22/18 23/13 26/5
27/13 27/19 29/12 30/8 31/4
34/21 35/8 36/3 36/10 36/15
37/1 42/14 43/15 43/21 47/24
48/20 53/8 54/21 54/25 55/11
55/12 57/1 62/25 64/2 65/8
68/12 68/22
we've [9] 7/19 17/4 26/15
53/15 54/19 55/9 64/1 65/1
69/11
wedding [1] 37/6
Wednesday [3] 71/1 71/2 71/12
week [15] 38/9 45/9 50/12
50/18 51/14 57/17 62/20 65/10
69/11 69/17 69/18 69/19 70/7
70/21 70/21
weekend [3] 27/15 41/18 67/24
weighed [1] 41/9
WEISS [5] 4/5 4/16 6/8 12/8
14/5
well [26] 11/14 13/2 13/13
16/17 18/21 31/3 31/18 33/16
37/22 41/9 42/13 42/18 44/12
45/7 47/2 48/19 50/12 54/4
58/10 61/24 65/23 66/11 67/19
70/23 72/22 73/8
went [1] 42/1
were [28] 6/18 7/23 8/19 17/10
19/10 19/12 19/14 23/6 23/23
24/17 26/14 26/15 26/18 28/2
28/3 30/6 34/13 34/13 34/20
34/20 34/22 43/19 52/7 58/5
64/19 64/20 65/18 66/19
West [2] 1/22 9/24
WHARTON [2] 4/5 4/16
what [95]
what's [7] 15/3 15/4 32/8
43/21 49/2 51/6 51/9
whatever [8] 12/15 14/21 32/19
36/14 37/10 38/1 39/13 64/20
wheels [1] 63/10
when [27] 10/18 11/17 20/25
24/2 24/13 25/1 25/10 25/19
28/19 36/20 38/6 38/11 41/23
42/12 44/6 44/20 46/20 48/15
50/21 50/22 54/19 56/2 56/14
56/15 60/23 66/24 67/13
whenever [3] 37/3 70/17 72/18
where [15] 12/5 14/19 21/9
24/20 30/24 34/11 36/15 42/22
43/18 51/14 52/19 64/23 70/8
72/20 73/1
whether [3] 13/3 21/8 22/12
which [18] 8/12 15/15 26/23
30/22 34/16 35/22 38/10 40/19
42/18 44/1 44/25 44/25 45/11
55/24 57/13 58/7 59/3 59/6
while [2] 59/9 65/18
whining [1] 23/7 23/10
who [14] 11/25 12/7 14/25
35/18 35/25 37/11 39/19 40/5
40/10 41/1 43/21 44/6 51/17
61/4
who's [1] 72/19
whoever [2] 21/18 40/23
whole [1] 27/23
wholeheartedly [1] 27/2
whom [2] 20/4 34/18

whoops [1] 65/1
whose [13] 26/16 39/8 39/9
why [25] 7/10 7/16 9/14 10/6
10/8 11/19 18/24 32/2 33/19
39/10 39/10 41/1 42/22 44/10
45/15 46/11 46/17 47/5 47/5
55/24 66/11 67/16 67/18 68/2
69/17
wide [1] 25/16
wide-open [1] 25/16
wiggle [2] 38/24 60/12
will [86]
willingness [1] 50/9
WILMER [3] 5/8 5/12 5/17
wilmerhale.com [2] 5/16 5/20
wisdom [1] 56/13
wish [1] 59/1
wishes [1] 56/21
within [9] 36/12 49/19 49/25
58/17 60/2 60/5 61/19 63/11
65/10
without [6] 19/16 22/1 31/6
35/16 36/24 57/1
witness [3] 38/19 38/21 38/24
witnesses [1] 39/6
won't [11] 17/7 21/22 22/8
35/20 39/18 40/22 52/19 70/1
70/2 70/23 72/5
wondering [1] 66/10
word [1] 32/19
words [13] 10/8 31/12 33/1
33/24 38/1 42/1 47/8 51/7
52/17 59/22 63/4 63/14 66/25
work [27] 21/6 21/7 21/13
21/21 34/25 35/25 36/24 40/12
44/5 45/14 45/25 47/21 47/22
54/16 54/21 55/10 56/6 59/12
60/19 60/24 60/25 61/6 61/16
61/22 68/19 69/24 71/13
workable [1] 65/24
worked [1] 26/8
working [1] 27/15
world [1] 13/24
worried [2] 42/4 42/4
worry [1] 45/8
worrying [1] 19/17
worth [1] 39/21
would [61] 8/2 9/22 10/4 10/6
10/8 10/13 10/20 11/2 11/24
12/2 12/5 12/8 13/6 13/17
13/19 14/1 14/4 14/6 14/20
14/21 15/5 15/6 15/9 17/22
18/19 18/20 18/23 21/8 21/10
21/14 21/16 21/18 24/7 24/7
26/17 28/5 28/6 29/11 31/10
32/14 33/14 41/16 42/15 50/23
51/2 51/9 53/10 53/11 55/1
59/1 59/3 59/13 61/15 61/17
61/17 63/1 63/4 65/11 67/1
67/17 72/9
wouldn't [5] 10/3 13/15 16/7
43/17 63/19
wrap [1] 14/17
write [1] 27/23
writing [2] 41/8 48/2
written [3] 19/15 60/2 73/9
wrong [3] 30/13 46/17 46/19
wrongly [1] 17/12

## Y

Ybarra [2] 3/2 49/4
Yeah [1] 73/3
year [4] 20/2 24/16 38/14 71/7
years [1] 24/16

**Y**

yelling [1]  41/1
yes [21]   6/7 7/25 8/6 8/8 8/14
 12/4 12/14 15/2 23/18 32/21
 33/11 35/3 46/8 51/3 52/2
 52/11 56/17 57/23 61/16 64/13
 65/8
yet [14]   16/1 16/12 27/16
 27/19 39/17 40/13 41/4 41/9
 41/13 41/13 41/21 43/2 46/25
 47/2
York [10]   3/16 3/16 3/20 3/20
 4/7 4/7 4/18 4/18 9/23 44/24
you [326]
you that [1]   29/15
you'd [1]   39/22
you'll [2]   27/17 48/1
you're [44]   15/17 15/24 16/19
 21/13 22/21 24/23 25/14 27/14
 27/15 27/18 31/2 31/4 31/5
 31/23 32/6 32/18 37/4 37/21
 38/3 39/5 39/15 40/14 40/15
 40/15 40/23 40/24 40/25 42/8
 42/9 42/10 45/8 47/6 52/7
 52/21 55/15 55/22 55/23 57/4
 58/9 60/20 61/2 61/12 65/6
 72/18
you've [9]   20/7 29/9 32/6 32/6
 32/16 44/23 44/24 72/10 72/16
your [127]
yourself [5]   6/6 15/20 20/7
 28/7 47/9

**Z**

ZIPSER [1]   3/10