KEKER & VAN NEST LLP
JOHN KEKER (SBN 49092)
jkeker@kvn.com
ELLIOT R. PETERS (SBN 158708)
epeters@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

CAHILL GORDON & REINDEL LLP
FLOYD ABRAMS (*pro hac vice*)
fabrams@cahill.com
S. PENNY WINDLE (*pro hac vice*)
pwindle@cahill.com
BRIAN T. MARKLEY (*pro hac vice*)
bmarkley@cahill.com
80 Pine Street
New York, New York 10005-1702
Telephone: 212 701 3000
Facsimile: 212 269 5420

KELLER RACKAUCKAS LLP
JENNIFER L. KELLER (SBN 84412)
keller@krlawllp.com
18300 Von Karman Avenue, Suite 930
Irvine, CA 92612
Telephone: 949 476 8700
Facsimile: 949 476 0900

Attorneys for Defendants MCGRAW HILL FINANCIAL, INC. and STANDARD & POOR'S FINANCIAL SERVICES LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MCGRAW-HILL COMPANIES, INC. and STANDARD & POOR'S FINANCIAL SERVICES LLC,<br><br>Defendants. | Case No. CV13-779 DOC (JCGx)<br><br>**[REDACTED] REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTIONS TO COMPEL DISCOVERY OF UNITED STATES AND TIMOTHY F. GEITHNER RELATING TO DEFENDANTS' FIRST AMENDMENT RETALIATION / SELECTIVE PROSECUTION AFFIRMATIVE DEFENSE**<br><br>Date: September 9, 2014 3:00 p.m.<br>Dept.: Courtroom 9D<br>Judge: Honorable David O. Carter<br><br>Complaint filed February 4, 2013 |

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................... ii

I.  Introduction ........................................................................................................ 1

II. Argument ........................................................................................................... 2

    A.    The Government Has Failed to Provide Any Justification for Redacting Portions of Admittedly Responsive Documents, Let Alone for Withholding Some Such Admittedly Responsive Documents in Their Entirety .................................................. 2

        1.    Neither the Work Product Protection Generally nor the Opinion Work Product Protection of that Doctrine Supports Non-Disclosure Here ............................................. 3

        2.    The Government Improperly Redacted Purportedly Non-Responsive Materials ................................................................ 8

    B.    The Government Has Failed to Identify Any Basis for Refusing to Complete Its Search of DOJ and Treasury ...................... 11

    C.    Mr. Geithner Improperly Redacted Purportedly Non-Responsive Materials ................................................................................. 13

III. Conclusion ...................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson* v. *Marion County Sheriff's Department*,
220 F.R.D. 555 (S.D. Ind. 2004) ..................................................................... 5

*Athridge* v. *Aetna Casualty and Surety Co.*,
184 F.R.D. 181 (D.D.C. 1998) ....................................................................... 9

*Brown* v. *Stroud*,
2010 WL 3339524 (N.D. Cal. Aug. 24, 2010) ............................................... 9

*Cheney* v. *U.S. District Court for the District of Columbia*,
542 U.S. 367 (2004) ................................................................................. 12-13

*Committee on the Judiciary, U.S. House of Representatives* v. *Miers*,
558 F. Supp. 2d 53 (D.D.C. 2008) ................................................................ 13

*CREW* v. *Department of Homeland Security*,
2008 WL 2872183 (D.D.C. Jul. 22, 2008) .................................................. 12n

*Doubleday* v. *Ruh*,
149 F.R.D. 601 (E.D. Cal. 1993) ................................................................... 5

*Green* v. *Baca*,
226 F.R.D. 624 (C.D. Cal. 2005) ............................................................ 6n, 8n

*Holmgren* v. *State Farm Mutual Automobile Insurance Co.*,
976 F.2d 573 (9th Cir. 1992) ......................................................................... 5

*Kelley* v. *Billings Clinic*,
2013 WL 1414442 (D. Mont. Apr. 8, 2013) ................................................. 9

*Live Nation Merchandise, Inc.* v. *Miller*,
2014 WL 1877912 (N.D. Cal. May 9, 2014) .............................................. 10

*Roberts* v. *Warden, San Quentin State Prison*,
2012 WL 5523430 (E.D. Cal. Nov. 14, 2012) ............................................... 5

*In re Sealed Case*,
121 F.3d 729 (D.C. Cir. 1997) ....................................................................... 5

ii

REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTIONS TO COMPEL DISCOVERY OF UNITED STATES AND TIMOTHY F. GEITHNER RELATING TO DEFENDANTS' FIRST AMENDMENT RETALIATION / SELECTIVE PROSECUTION AFFIRMATIVE DEFENSE - CASE # CV13-779 DOC (JCGX)

*Sommer v. United States*,
   2011 WL 4433631 (S.D. Cal. Sept. 22, 2011)......................................................................5

*United States* v. *Armstrong*,
   517 U.S. 456 (1996)..........................................................................................................4

*United States* v. *Nixon*,
   418 U.S. 683 (1974)........................................................................................................11

## Other Authorities

Timothy F. Geithner, *Stress Test: Reflections on
   Financial Crises* (2014). ......................................................................................14n, 15n

## I. INTRODUCTION

When the Government initially urged this Court to deny S&P any discovery into its motivation for commencing this litigation, it maintained that "[t]here [wa]s no plausible nexus" between S&P's downgrade of the United States and the commencement of this action. (Feb. 17, 2014 Govt. Brief (Dkt. 106) at 11) Quoting Attorney General Holder, it asserted that there was "no connection" between one and the other. (*Id.* at 13 n.13) Discovery having now commenced pursuant to this Court's April 15th ruling, the Government has been obliged to produce (although too often in redacted form) e-mails from and between DOJ attorneys involved in the investigation leading to the commencement of this action.

Those documents reveal repeated communications between those attorneys, including DOJ signatories of the Complaint in this action, that refer to the downgrade, propose meetings to discuss it, query the methodology used by S&P, and forward to each other articles that comment adversely about the downgrade. (*See* Abrams Decl. Exs. A-1, A-7, A-8, A-9, A-11) Documents withheld altogether by the Government reflect questions by DOJ attorneys of an analysis of the downgrade made by an S&P consultant. (Nelson Decl. ¶ 5.a) The Government offers no reason why its attorneys, charged with determining whether any action should be commenced against S&P, were engaged in making such inquiries about a subject that supposedly played no role in their investigation. If there were truly no "plausible nexus" or "connection" between S&P's assessment of U.S. debt and the Government's decision to commence this action, it is difficult to explain the repeated focus by DOJ lawyers on it.

Unsurprisingly, the Government disagrees and continues to maintain that neither the documents already produced (with or without redactions), nor the responsive documents withheld altogether that are at issue on this motion, *prove* S&P's case. But this is hardly the time for any such assessment. As the

1

REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTIONS TO COMPEL DISCOVERY OF UNITED STATES AND TIMOTHY F. GEITHNER RELATING TO DEFENDANTS' FIRST AMENDMENT RETALIATION / SELECTIVE PROSECUTION AFFIRMATIVE DEFENSE - CASE # CV13-779 DOC (JCGX)

Government itself acknowledges, the truly relevant question before the Court is whether the discovery may "assist S&P in preparing" its defense. (Government's Opposition to Defendants' Motion to Compel ("Govt. Opp.") at 8-9) Nevertheless, the Government objects to further discovery even as it concedes that some of the withheld material "is conceivably responsive to certain of S&P's document requests." (Govt. Opp. at 12)

S&P's position is straightforward: Since a core issue with respect to this defense is, as this Court observed in its April 15th Opinion, whether the Government commenced this action with "discriminatory intent," S&P is entitled to review the redacted and otherwise unproduced material to "assist S&P in preparing" its defense, to formulate questions to ask of those who wrote such statements, and to understand the nature of the linkage which the Government has denied but which already produced (or described) documents reflect. And because S&P's First Amendment retaliation / selective prosecution defense turns on the motivation of governmental actors, the opinions of those actors—reflected in documents admittedly responsive to discovery requests this Court has already held should be responded to—should be provided, whether characterized as "opinion work product" or otherwise.

It is, of course, far too early in this case to predict the full breadth of the disclosures to come. But it is not too early to determine that, consistent with this Court's Orders of April 15th relating to the United States and May 13th relating to former Secretary Geithner, both must respond fully to the discovery served upon them.

## II. ARGUMENT

### A. The Government Has Failed to Provide Any Justification for Redacting Portions of Admittedly Responsive Documents, Let Alone for Withholding Some Such Admittedly Responsive Documents in Their Entirety

The dispute on this motion to compel with respect to documents identified to

2

date at the Department of Justice relates entirely to documents that are concededly responsive to S&P document requests that this Court identified in its April 15 Order as properly bearing on the Eleventh Affirmative defense and as to which it directed production. The Government's basis for withholding all or part of such documents is variously the work product doctrine, the attorney opinion component of that doctrine and the naked assertion that the discovery rules should be interpreted to allow the Government to withhold information from an admittedly responsive document on the grounds that the Government is best suited to determine what material in that document will "assist" S&P in pursuing that affirmative defense. None of these rationales is supported by the case law and none can survive the slightest scrutiny in the context of a case where the Court has rightly emphasized the public's interest in the transparency of the process.

### 1. Neither the Work Product Protection Generally nor the Opinion Work Product Protection of that Doctrine Supports Non-Disclosure Here[1]

The Government does not dispute that the Court's April 15 Order "requires it to produce materials that the work product doctrine would otherwise shield." (Govt. Opp. at 8) Nonetheless, it now argues that "opinion-work product" should be understood to have been implicitly carved-out from the Court's order requiring

---

[1] The arbitrary character of the Government's refusal to produce all or part of documents admitted to be responsive to the document requests results in a complex grouping of materials in the Khorshid and Nelson Declarations. It is difficult to determine from them which documents have been redacted on what basis and which materials supplied *in camera* are intended to constitute the whole of a category, or which are simply meant as examples. In an effort to minimize confusion, this reply will discuss the documents by reference to the basis for withholding: opinion work product, work product generally and non-responsiveness and will cite to specific examples either by reference to the partially produced documents or to the Government's description of wholly withheld documents.

production of materials responsive to S&P's First Amendment retaliation / selective prosecution defense.

The Government's contention ignores that S&P's defense places directly at issue whether "the prosecutor has brought the charge for reasons forbidden by the Constitution." April 15 Order at 15-16 (quoting *United States* v. *Armstrong*, 517 U.S. 456, 463 (1996)). At the heart of this inquiry is the role played by S&P's downgrade of the United States in the decision to bring this action against S&P. The *opinions* of Government officials are not peripheral to that inquiry; they are central to it. Why, for example, did Government investigators prepare an interview outline apparently including questions related to an S&P consultant's discussions of the downgrade? (Nelson Decl. ¶ 5.a) Why, having interviewed the S&P witness on that subject (supposedly irrelevant to its decision to bring this case), did the Government choose to memorialize the responses first in notes and then in a "report of the interview." (Govt. Opp. at 6; Nelson Decl. ¶ 5.a) Whatever the specific substance of that inquiry and those notes and report, S&P is entitled to understand how and why a Government official came to think such an inquiry was relevant and appropriate to the FIRREA investigation. That information may be contained in other portions of the document; it may be something that can be understood only after depositions are conducted. But it is information at the heart of the inquiry related to the affirmative defense and production of the wholly withheld documents relating to these matters is a necessary step on the path to learning the truth of what happened.

As the Government recognized in producing what it acknowledged was work product material, this Court's Order necessarily required the production of just that sort of material. The Government points to no language in the Court's order that would carve *opinion* work product out from other work product. And it is, in any event, settled law in the Ninth Circuit that opinion work product

4

protection is not absolute and is discoverable "when mental impressions are at issue" and "the need for the material is compelling." *Holmgren* v. *State Farm Mutual Automobile Insurance Co.*, 976 F.2d 573, 577 (9th Cir. 1992). In cases like this one where the Government's intent or motivation is at issue and the sought after material is not otherwise available, courts have rejected efforts to withhold information bearing on such subjects by resort to the work product protection. *See, e.g.*, *Roberts* v. *Warden, San Quentin State Prison*, 2012 WL 5523430, at *4 (E.D. Cal. Nov. 14, 2012) (ordering production of opinion work product in a habeas petition proceeding alleging prosecutorial misconduct where the prosecutor's intent and mental impressions were at issue); *Sommer* v. *United States*, 2011 WL 4433631, at *7 (S.D. Cal. Sept. 22, 2011) (ordering production of opinion work product in an action where mental impressions of prosecutors were at issue and the information was not available elsewhere); *Doubleday* v. *Ruh*, 149 F.R.D. 601, 608 (E.D. Cal. 1993) (same); *see also In re Sealed Case,* 121 F.3d 729, 746 (D.C. Cir. 1997) ("the [deliberative process] privilege disappears altogether when there is any reason to believe government misconduct occurred"); *Anderson* v. *Marion County Sheriff's Department*, 220 F.R.D. 555, 560-61 (S.D. Ind. 2004) (same).

Even under a generous approach to the protection of opinion work product, the materials must still be produced because it is not an absolute privilege and S&P has a compelling need for the disputed materials. The Government has withheld in part or in their entirety 24 documents on the basis of opinion work product.[2] Each

---

[2] The opinion work product objection is invoked by the Government with respect to a total of 24 documents, 5 of which are entirely withheld and 19 of which are partially redacted. (Nelson Decl. ¶¶ 3.b (5 documents), 3.c (15 documents); Khorshid Decl. ¶ 3.b (4 documents)) That objection had, prior to the filing of the Government's opposition brief, been lodged with respect to only five documents. In its Opposition papers, the Government has for the first time asserted that it redacted 19 documents that contained responsive material on the basis of its

5

REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTIONS TO COMPEL DISCOVERY OF UNITED STATES AND TIMOTHY F. GEITHNER RELATING TO DEFENDANTS' FIRST AMENDMENT RETALIATION / SELECTIVE PROSECUTION AFFIRMATIVE DEFENSE - CASE # CV13-779 DOC (JCGX)

document in this category (i) relates to the downgrade; (ii) reflects the thought-processes of government attorneys working on this case; and (iii) was prepared in connection with the decision to bring this litigation. When the very subject matter S&P's defense places at issue is the thought-processes of those deciding to sue S&P, such documents are precisely what S&P is most entitled to see.

The importance of these documents is confirmed by the facts S&P now knows about them. Three documents wholly withheld relate to an interview of ███████████████████████████████████████████████ The DOJ attorney's[4] pre-examination outline setting out questions for the witness apparently included references to his memorandum discussing S&P's decision to downgrade

---

"opinion work product" objection. ███████████████████████████
███████████████████████████████████████████████████
███████████████████████████████ All else aside, the Government has failed to meet its burden to describe the redacted material with sufficient detail. *See Green* v. *Baca*, 226 F.R.D. 624, 652 (C.D. Cal. 2005) (the party seeking to withhold work product "must make a 'clear showing' that the asserted objection applies").

[3] ███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

[4] ███████████████████████████████████████████████
███████████████████████████████████████████████

the United States' credit rating. The other documents (which, like the outline, the Government concedes are "responsive to defendants' document requests") are notes of the interview and a memorandum summarizing the interview and each references the downgrade. (Govt. Opp. at 6; Nelson Decl. ¶ 5.a) These documents demonstrate that as part of the FIRREA investigation of S&P, an investigation which supposedly had nothing to do with S&P's decision to downgrade the United States, the DOJ actively *investigated* the downgrade.[5]

The same is true for the 19 responsive documents "merely" redacted on the basis of opinion work product. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ What the Government thought about this issue bears directly on a central question posed by S&P's defense: the Government's state of mind in bringing this action challenging the objectivity of S&P and how its view of the downgrade affected that analysis. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[5] The two other responsive documents withheld in their entirety are described as containing attorney comments about the downgrade with respect to a "draft legal filing" in this action. (Nelson Decl. ¶ 5.b) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The unanswered question is this: Why was a DOJ attorney commenting about the downgrade when drafting documents to be used to sue S&P under FIRREA?

While the Government argues these materials should be protected because they are not relevant to S&P's affirmative defense (Govt. Opp. at 8-9), this is a merits argument about what the documents mean, not a valid response to a discovery motion. As the Court observed in granting S&P's prior motion to compel, such "open questions are properly answered after—not before—discovery." April 15 Order at 18.

### 2. The Government Improperly Redacted Purportedly Non-Responsive Materials

The Government has made two types of redactions based on asserted irrelevance. The first are redactions that are purely for non-responsiveness. The second is to a so-called set of "non-responsive work product."[6]

The Government states that it redacted material in these categories if, in the Government's opinion, the material would not "assist" S&P in its defense (Govt. Opp. at 8-9). But "[i]t is not for a party to determine, by a unilateral review of

---

[6] As explained above, the Government has recognized that this Court's Order makes no exception for work product and it has produced general work product materials. (*See supra* at 3-4) In that regard, the Court's order requires that the Government "produce those *documents* that are related to the selective prosecution claim." April 15 Order at 19-20 (emphasis added) The Order did not provide for selective editing of responsive documents by the Government. Moreover, the Government's claim of work product protection over pieces of these documents is, in any event, deficient procedurally because it failed to give the Court and S&P proper notice of the materials that fit into this newly crafted "non-responsive work product" category. *See Green*, 226 F.R.D. at 652. In total, it appears that the Government has produced 166 documents that contain redactions. (Nelson Decl. ¶ 4; Khorshid Decl. ¶ 4) As noted *supra* note 2, 19 of the documents contain redactions for opinion work product. The remaining 147 contain redactions for non-responsiveness and/or general work product. (Nelson Decl. ¶ 3.d (85 documents); Khorshid Decl. ¶ 3.c (62 documents)) And some of those 147 documents are said to contain non-responsive work product. (*Id.*) But the Government has not distinguished between these categories.

documentation, whether information is relevant to the case." *Kelley* v. *Billings Clinic*, 2013 WL 1414442, at *8 (D. Mont. Apr. 8, 2013) (quotation omitted); *see also Brown* v. *Stroud*, 2010 WL 3339524, at *7 (N.D. Cal. Aug. 24, 2010) (expressing concern over a party's apparent withholding of responsive documents based on unilateral relevance determinations); *Athridge* v. *Aetna Casualty. and Surety Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998) (rejecting a party's ability to "determine what documents are relevant and produce those documents only"). Nor when discovery related to this defense is in its initial stages is the Government (or perhaps even the Court) in the best position to define the precise contours of relevance, excising supposedly non-responsive sentences from otherwise responsive documents. Documents yet to be produced may give context to what the Government claims are non-responsive materials and a supposedly non-responsive sentence may lead to other avenues of discovery.

An illustration of this problem is seen in the review the Government contemplated when it submitted a subset of the disputed documents for *in camera* inspection. The Government submitted only four[7] of the 95 documents redacted for non-responsiveness and/or general work product that contain comments by DOJ attorneys on S&P's decision to put on credit watch or downgrade the United States.[8] Any comment by a DOJ attorney on the credit watch or downgrade is relevant since DOJ had *no* legitimate role in connection with those matters. The same is true of the 52 redacted documents constituting the Government's emails

---

[7] See Government Exhibits 3, 4, 5 and 27 submitted *in camera* and under seal. (Nelson Decl. ¶ 4.b; Khorshid Decl. ¶ 4.b)

[8] A total of 114 documents in this category are listed as redacted in the Nelson and Khorshid Declarations (*see* Nelson Decl. ¶ 4.b (58 documents) and Khorshid Decl. ¶ 4.b (56 documents)); 19 of these relate to opinion work product, which is dealt with elsewhere in this brief.

9

REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTIONS TO COMPEL DISCOVERY OF UNITED STATES AND TIMOTHY F. GEITHNER RELATING TO DEFENDANTS' FIRST AMENDMENT RETALIATION / SELECTIVE PROSECUTION AFFIRMATIVE DEFENSE - CASE # CV13-779 DOC (JCGX)

circulating Question and Answers relating to the filing of this lawsuit in which the Government sought to prepare its public explanation for why this lawsuit was not in retaliation for S&P's decision to downgrade the United States. (Nelson Decl. ¶ 4.a (42 documents); Khorshid Decl. ¶ 4.a (10 documents)) Seeing three examples of these redacted documents[9] does not really answer the basic question, which is how the response to this pointedly relevant inquiry evolved. A full review of these materials would require the Court or a special master to become familiar with the entirety of the Government's productions and other materials relevant to S&P's defense and to then sift through all 147 documents to determine if S&P might make any use of any of the redacted materials in connection with moving discovery forward. Even then the review would be speculative and incomplete because of the existence of other documents that are relevant to the defense and have not yet been produced.

The Government argues that the non-responsive materials that have been redacted constitute "very sensitive material." (Govt. Opp. at 14 n.6) But the only fact that makes these materials sensitive is that they reflect the DOJ's thought-processes, the very subject of S&P's defense and the very subject matter on which the Court has ordered discovery.

The Government also fails to explain why the Protective Order entered by this Court is insufficient to address its confidentiality concerns. Indeed, the cases disfavor the submission of discoverable material for *in camera* review because it "illustrates the delays and burden imposed on the Court and the litigants by the practice of unilateral redaction." *Live Nation Merchandise, Inc.* v. *Miller*, 2014 WL 1877912, at *3 (N.D. Cal. May 9, 2014). One need only consider the

---

[9] See Government Exhibits 1, 2 and 26 submitted *in camera* and under seal. (Nelson Decl. ¶ 4.a; Khorshid Decl. ¶ 4.a)

10

REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTIONS TO COMPEL DISCOVERY OF UNITED STATES AND TIMOTHY F. GEITHNER RELATING TO DEFENDANTS' FIRST AMENDMENT RETALIATION / SELECTIVE PROSECUTION AFFIRMATIVE DEFENSE - CASE # CV13-779 DOC (JCGX)

Government's efforts to distinguish cases frowning on relevance redactions (Govt. Opp. at 14 n.6) to appreciate the heavy lifting the Government needs to undertake to justify its broad redacting.

As this Court recently observed, "exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." Aug. 21 Opinion at 13 (quoting *United States v. Nixon*, 418 U.S. 683, 710 (1974)).

### B. The Government Has Failed to Identify Any Basis for Refusing to Complete Its Search of DOJ and Treasury

The Government misstates S&P's position concerning communications with the Executive Office of the President. S&P asks at this time only that the Government complete its Court-ordered searches for responsive materials within the DOJ and Treasury and turn over responsive documents as to which it is not prepared to assert the presidential privilege. For documents withheld, S&P asks that the Government prepare a log describing the nature of the withheld documents in a manner that will enable S&P to assess the privilege.[10]

The Government, without any basis, decided not to search the files of DOJ and Treasury for *any* communications with the Executive Office of the President. S&P is entitled to have that search conducted and to receive all responsive documents from the files of DOJ and Treasury which the Government is not prepared to assert are subject to presidential privilege. S&P is not currently asking for any search to be conducted within the Executive Office of the President. Nor is it asking the Government even to commence the significant steps required to

---

[10] Unlike the steps required to formally invoke presidential privilege, this can be done entirely by the DOJ without any of the burden associated with a formal invocation of privilege which raises the potential separation of powers concerns referred to by the Government. (*See* Govt. Opp. at 20)

invoke formally the presidential privilege for any document that it may determine is privileged. (The Court discussed the procedural burdens attendant on invoking the deliberative process privilege in its August 21 Order. It is precisely those burdens, more substantial in the presidential privilege context, that S&P is *not* seeking to impose at this time.)

The Government may not refuse to complete this search simply because it may uncover documents subject to presidential privilege.[11] The Government's incomplete search of DOJ and Treasury documents has thus far revealed two documents that it asserts were potentially subject to presidential privilege, one in DOJ's files and the other in Treasury's files. (Govt. Opp. at 20 n.8.) This suggests that a more complete search could lead to the identification of additional responsive documents; at that time the parties will have the information needed to assess any privilege. If the Government's argument that the mere specter of identifying potentially privileged documents were enough to justify avoiding a search, this Court's April 15 Order would be effectively neutered.

Finally, the Government argues that *Cheney's* concerns protect "the Executive Branch as a whole" and that if the Government is ordered to comply with S&P's requests it will interfere with the Executive's "energetic performance

---

[11] The Government complains that S&P has a "cramped view" of presidential privilege and it points to a narrow exception to the general rule that a document must have been sent to or from the President or his advisers for the privilege to apply. (Govt. Opp. at 21 n. 9 (citing *CREW* v. *Department of Homeland Security*, 2008 WL 2872183 (D.D.C. Jul. 22, 2008))) In *CREW*, the document at issue was privileged even though the President and his staff did not see it because it "memorialize[d] actual communications with the President or his staff." *CREW*, 2008 WL 2872183, at *3. The nature of such a document will be obvious to any DOJ reviewer and poses no additional review burden. If anything, *CREW* highlights the narrowness (not the breadth) of the privilege's scope.

of its constitutional duties." (Govt. Opp. at 19) (quotation omitted) But that proves far too much, because it is at war with the rationale of the April 15 Order permitting discovery on the affirmative defense.

In any event, the Government misreads *Cheney,* a case that involved broad discovery requests solely to determine whether the Federal Advisory Committee Act's disclosure requirements applied to the creation of the National Energy Policy Development Group. *Cheney* v. *U.S. District Court for D.C.*, 542 U.S. 367, 387 (2004) (requests included "[a]ll documents concerning any communication relating to the activities of the Task Force, the activities of any Sub-Groups, or the preparation of the Report"). The Supreme Court's concerns about discovery in that case were driven by: (i) a desire to avoid needless invocation of presidential privilege, *id.* at 389-90; and (ii) avoidance of unduly burdensome requests on the executive. *Committee on the Judiciary, U.S. House of Representatives* v. *Miers*, 558 F. Supp. 2d 53, 106 n.38 (D.D.C. 2008) ("In *Cheney*, the Supreme Court focused on the heavy burden imposed by the wide breadth of the request for information.") Neither concern is present here. S&P's requests are focused and narrow and there is no need to invoke presidential privilege at this point. S&P's narrow and calibrated discovery requests, seeking only those materials related to this action and the downgrade, have, to date, brought forth a manageable production of about 1,200 documents from the DOJ. While S&P believes it is entitled to additional documents, there is no reason to believe the scope of identification or production will be vastly larger.

C. **Mr. Geithner Improperly Redacted Purportedly Non-Responsive Materials**

The concerns about the Government's unilateral redactions for non-responsiveness (Section A.2 above) also apply to Mr. Geithner's redaction of

13

purportedly non-responsive material.[12]  *In camera* review of these materials would be highly burdensome (requiring familiarization with the entire universe of materials relevant to S&P's defense in addition to a review of the 42 documents in dispute), imperfect (being performed before the entire known universe of relevant materials is available) and unfair.  The redacted material should be produced forthwith.[13]

Mr. Geithner claims he is entitled to particular solicitude because he is the

---

[12] Beyond redacting materials that he deems to be non-responsive, Mr. Geithner has gone so far as to delete ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Nothing more need to be said of these redaction decisions of Mr. Geithner other than that they are evidently intended to dilute the full force of his animus to S&P for the downgrade, a very relevant matter here.  Such after-the-fact self-editing decisions cannot be left for him to make.

[13] Mr. Geithner asks that in the event he is ordered to produce the redacted material "review by the United States . . . may be necessary" to permit review of the materials for privilege.  Geithner Opposition to Motion to Compel ("Geithner Opp.") at 4 n.2. But neither he nor the Government made any such objections on a timely basis and the time for asserting them has come and gone.

14

former Secretary of the Treasury. (Geithner Opp. at 3-4) But in support of this position Mr. Geithner cites the same authority the Court considered and rejected in ruling that he must comply with S&P's discovery demands in the first place. May 13 Order at 3 (finding that any special treatment is narrow and limited to deposition testimony and to the extent those protections apply to document discovery, which is "at best, seldom[ ]," they would not apply to Mr. Geithner because his role is "related to the crux" of S&P's defense).[14]

Finally, Mr. Geithner argues that this Court's protective order is insufficient because there was a leak of his deposition testimony by other parties in an unrelated case. (Geithner Opp. at 4 n.3) That provides no basis at all to discount the protections—and the sanctions—afforded by the protective order in this case. If Mr. Geithner had legitimate, non-speculative concerns, the appropriate mechanism would have been to enhance the protective order, not to limit discovery.

### III. CONCLUSION

For all the foregoing reasons, this Court should grant S&P's motions to compel.

Dated: September 3, 2014                CAHILL GORDON & REINDEL LLP

                                        By:     /s/ Floyd Abrams
                                                Floyd Abrams

---

[14] Mr. Geithner's reliance on the need to protect "the private thoughts of a former cabinet-level official regarding his time in office" (Geithner Opp. at 3) is particularly unpersuasive since his recently published tell-all book, "Stress Test," is touted on its inside cover as offering the "inside story" of his tenure as Treasury Secretary and of "tak[ing] readers behind the scenes of the crisis."