**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

- - - - - - -

```
UNITED STATES OF AMERICA,        )
                                 )    CERTIFIED
        Plaintiff,               )
                                 )
    vs.                          )  No. 2:13-CV-0779-DOC
                                 )      Volume III
McGRAW-HILL COMPANIES, INC., and )
STANDARD & POOR'S FINANCIAL      )
SERVICES, LLC,                   )
                                 )
        Defendants.              )
_____)
```

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Hearing on Motions

Santa Ana, California

Tuesday, September 9, 2014

Debbie Gale, CSR 9472, RPR, CCRR
Federal Official Court Reporter
United States District Court
411 West 4th Street, Room 1-053
Santa Ana, California 92701
(714) 558-8141

13cv0779 McGraw-Hill 2014-09-09 V3

```
 1   APPEARANCES OF COUNSEL:

 2

     FOR THE UNITED STATES OF AMERICA:
 3

 4       OFFICE OF US ATTORNEY
         BY:  George S. Cardona
 5            Chief Assistant United State Attorney
         312 North Spring Street
 6       12th Floor
         Los Angeles, California 90012-4700
 7       213-894-2434

 8
         Anoiel Khorshid
 9       AUSA - Office of US Attorney
         Civil Division – Federal Building
10       300 North Los Angeles Street
         Room 7616
11       Los Angeles, California 90012
         213-894-6086
12

13       James T. Nelson, Trial Attorney
         United States Department of Justice
14       P.O. Box 386
         Washington, D.C. 20044
15       202-616-2376

16

17
     FOR DEFENDANTS McGRAW-HILL COMPANIES, INC. and STANDARD &
18   POOR'S FINANCIAL SERVICES LLC:

19       John W. Keker
         KEKER AND VAN NEST LLP
20       710 Sansome Street
         San Francisco, California 94111
21       415-391-5400

22
         Jennifer L. Keller
23       KELLER RACKAUCKAS UMBERG ZIPSER LLP
         18300 Von Karman Avenue
24       Suite 930
         Irvine, California 92612
25       949-476-8700
```

```
 1    APPEARANCES OF COUNSEL (Continued):

 2
          Floyd Abrams (pro hac vice)
 3        CAHILL GORDON AND REINDEL LLP
          80 Pine Street
 4        New York, New York 10005
          212-701-3000
 5
          Brian T Markley (pro hac vice)
 6        CAHILL GORDON AND REINDEL LLP
          80 Pine Street
 7        New York, New York 10157
          212-701-3000
 8        bmarkley@cahill.com

 9        Paven Malhotra
          KEKER AND VAN NEST LLP
10        710 Sansome Street
          San Francisco, California 94111
11        415-391-5400

12        Michelle S. Ybarra
          KEKER AND VAN NEST LLP
13        633 Battery Street
          San Francisco, California 94111
14        415-391-5400
          mybarra@kvn.com
15

16
      FOR OBJECTOR TIMOTHY F. GEITHNER:
17
          Nicholas C. Tompkins (pro hac vice)
18        DEBEVOISE & PLIMPTON LLP
19        919 Third Avenue
          New York, New York 10022
20        212-606-6949
          ntompkins@debevoise.com
21

22

23

24

25
```

## **I N D E X**

| PROCEEDINGS | PAGE |
|---|---|
| Hearing continued | 5 |
| Court orders | 12 |
| Documents provided to the Court by government counsel | 18 |

**SANTA ANA, CALIFORNIA, TUESDAY, SEPTEMBER 9, 2014**

**Volume III**

*(Live switch at 11:51 a.m.)*

*(Previous proceedings reported by Maria Dellaneve in Volume II.)*

THE COURT: A lot of these center around the head of the Federal Reserve for Mr. Geithner. Those seem to be the two people that we get involved in, in a lot of the issues that you're arguing about, Mr. Abrams, especially Mr. Geithner. And my question is, When will I resolve these issues? And the reason I'm raising that: The sooner the better.

If you're right on behalf of the government, let's put this to rest. And counsel for Mr. Geithner, let's put this to rest. But if you're wrong on this, and if he's going to be deposed in any manner, I want you to "think" what I'm thinking in a very speculative way.

First, do I send my magistrate judge back there? Because I prefer to have a government entity dealing with a government entity. I'd prefer to have a judicial member of the branch. *(Verbatim.)*

No. I'm not sending my magistrate judge back there. It's not gonna happen.

Does Mr. Geithner come out here? Because I don't, in a sense, have jurisdiction without going through letters.

```
 1   I really don't want to cause that kind of notoriety and make
 2   him look like he's hiding.  He's entitled, if he's going to
 3   respond and wants to do that voluntarily, to be deposed back
 4   there.  But then, who do I send back there?  Do I send
 5   Robert O'Brien or do I send Judge Smith?
 6             I would probably send a judicial officer.  I would
 7   probably send Judge Smith because he's no better or worse
 8   than Robert O'Brien.  I would just prefer to have "judge"
 9   behind the name, frankly, than a special master coming from
10   any firm.
11             Now, if you two stipulate to a special master,
12   that's different and I'll accept a stipulation.
13             Number three, do I try to order Mr. Geithner to
14   come out here?  You know, I can cause a real ruckus, whether
15   I prevail or not.
16             (To the audience:) You folks in the press would
17   just love to write about that probably.
18             But I don't think -- I think it's unseemly.  I
19   don't have to do that.  So I'm speaking, Counsel -- because
20   you said at one time he would voluntarily come out here.
21             MR. TOMPKINS:  (Raises hand.)
22             THE COURT:  Well -- no, no.  You don't have to
23   make that decision right now.  Just send a message back.
24             MR. TOMPKINS:  (Raises hand.)
25             THE COURT:  No, no.  Just listen right now.  We're
```

just anticipating.

If he doesn't come out here and if he is going to be deposed -- if the government loses on this motion, and you do -- then my special master has to be really knowledgeable about some of the redactions, you know, some of the issues that I'm looking at and my law clerks are looking at. But I don't want a special master going into that situation not knowing the full parameters. And I haven't shared that with the special master and don't intend to.

And Judge Smith is not a judicial officer, so now it catches me in the bind that I can't use Magistrate Gandahi to do that. So it's gonna kind of become your choice, if we get that far. Okay? I am anticipating all the problems if we get that far.

But this needs to be resolved sooner rather than later. This shouldn't be a January or February issue. This should be on my plate within weeks or a month, in terms of briefing and decision by the Court, so we know where we're going. Plus, I hope it would resolve a lot of these privilege issues that are coming up.

Now, I saw that you wanted to -- I just wanted you to hear, not rulings, but things that I'm starting to anticipate.

MR. TOMPKINS: Yes, sir. I just wanted to

```
 1   clarify.  I -- I think we had had some discussion at the
 2   last session out here about the Court's jurisdiction.
 3              THE COURT:  You told me I didn't have it.  And I
 4   kind of nodded, but you said, "Oh, my client would come out
 5   here."  But I'm not holding you to that.
 6              MR. TOMPKINS:  Yeah.  Our -- our view is that, if
 7   our -- if it comes to the point where Mr. Geithner would be
 8   deposed -- and I think we'll be arguing about that in the
 9   near future -- our view is it should be within the 100 mile
10   limits by the federal rules.
11              THE COURT:  Okay.  Now hold on.  I'm duty-bound to
12   follow the law.
13              Now, I want to picture what can happen:  You get
14   your client into a deposition, and because it's not right
15   across the street, and I'm sitting here till midnight and
16   everybody can explain what the objection was and I can
17   resolve it immediately, my special master has to.  And that
18   comes back to me, and I don't think that's fair or complete,
19   or we have to deal with the motion, I'm going to send him
20   right back into a deposition.
21              MR. TOMPKINS:  Understood.
22              THE COURT:  And if it takes 17 times -- like
23   Mr. Larian -- it'll go right back into a deposition.
24              So really think that out.  Because I don't know if
25   I want the drama of reaching out, et cetera, to a colleague.
```

```
 1   I don't know if I'm going to fly my -- you know, I don't
 2   look favorably on that.  But let me just tell you what I'm
 3   thinking:
 4            He can't come out here?
 5            He's gonna be potentially coming out here to
 6   testify.
 7            MR. TOMPKINS:  I -- I think --
 8            THE COURT:  He's selling books at Costco.  He
 9   can't come out here?
10            MR. TOMPKINS:  I think that's something -- we
11   would like to cross that bridge when it becomes necessary.
12            THE COURT:  I think you would too.
13            So, before you take a definitive position, I think
14   you might want to talk to your client.
15            MR. TOMPKINS:  Will do so.
16            I just wanted to clarify I believe what our
17   position was previously.
18            THE COURT:  I think you might want to talk to your
19   client.
20            MR. TOMPKINS:  Will do so.
21            THE COURT:  Okay.  Reputations get put on the line
22   very quickly.
23            Okay.  All right.  Now I want to go Mr. Cardona,
24   then Mr. Abrams.
25            Then, Mr. Cardona, any other thoughts?
```

```
 1                MR. CARDONA:  No, Your Honor.
 2                MR. ABRAMS:  The only thing I thought was useful
 3   for Your Honor to know:  We -- we are taking Mr. Checki's
 4   deposition next Tuesday.
 5                THE COURT:  Where is that?
 6                MR. ABRAMS:  That's in New York, at my office.
 7   And he is the person from the New York Fed, who --
 8                THE COURT:  I don't anticipate the potential
 9   problems or the privilege --
10                MR. ABRAMS:  Nor do I, Your Honor.
11                THE COURT:  -- or the "executive" that I seem to
12   be running into with Mr. Geithner or any other government --
13                MR. ABRAMS:  I just wanted you to know that it's
14   happening.
15                THE COURT:  I think that'll go very smoothly.
16                Who's the special master?  Do you know yet?
17                MR. ABRAMS:  No.
18                MR. CARDONA:  Actually -- I'm sorry -- I believe
19   it's Judge Smith.
20                MR. ABRAMS:  Oh.  All right.
21                THE COURT:  Okay.  Well, let me take a recess for
22   just a moment, just because I want to talk to my team,
23   right? -- since all of you have a team -- and see what I'm
24   missing and some of the things that we've been discussing in
25   chambers.  So why don't I meet you at 12:30.  Okay?  And
```

Case 2:13-cv-00779-DOC-JCG   Document 325   Filed 09/23/14   Page 11 of 19   Page ID #:7473
2:13-CV-0779-DOC - 9/9/2014 - Volume III

11

1   give us half an hour.
2         *(Recess held at 11:58 a.m.)*
3         *(Proceedings resumed at 12:59 p.m.)*
4               THE COURT:  Counsel, thank you for your patience.
5               And we've taken a little bit longer in chambers to
6   sort out a couple of thoughts that may save you coming back
7   prematurely.
8               By the way, as a matter of courtesy, if anybody
9   has any further comments, I --
10              Mr. Cardona?
11              MR. CARDONA:  No.  No, Your Honor.  Nothing from
12  us.
13              THE COURT:  Mr. Keker?
14              MR. KEKER:  No, Your Honor.
15              THE COURT:  Mr. Abrams?
16              MR. ABRAMS:  No, Your Honor.
17              THE COURT:  All right.
18              Well, in the interest of fairness and due process,
19  this Court will make final rulings on these two motions,
20  only after it considers all the materials in dispute.  In
21  fact, it appears that this is one issue to which all of the
22  parties agree.
23              Just an hour or two ago, on behalf of S&P,
24  Mr. Abrams implored the Court to consider all of the
25  materials, not only those attached to the parties'

Case 2:13-cv-00779-DOC-JCG   Document 325   Filed 09/23/14   Page 12 of 19   Page ID #:7474
2:13-CV-0779-DOC - 9/9/2014 - Volume III

12

```
 1   opposition briefs.  On behalf of the government, Mr.
 2   Cardona's invited the Court to inspect all of the materials
 3   in dispute and has thoughtfully brought them to court today,
 4   which I appreciate.
 5           And on behalf of secretary -- or former
 6   Secretary Geithner, counsel have requested in their reply
 7   brief that,
 8               "If," quote, "the Court does not deny
 9               S&P's motion outright, then it should
10               refer redactions for in camera review."
11                          COURT ORDERS
12           THE COURT:  Therefore, the Court orders the
13   following from the bench, and I'll put this in a minute
14   order so that there's absolutely "absolute" clarity:
15           First, the government shall submit for in camera
16   review the unredacted versions of the documents in dispute.
17           Second, Secretary Geithner shall submit for in
18   camera review the unredacted versions of all 42 redacted
19   responsive documents that S&P has put in dispute.
20           Now, let me stop before I ask two questions, or at
21   least one question.
22           I don't think that that has any argument that it
23   could possibly delay this trial.  In other words, that's one
24   area of discovery that's proceeding.  You've got the
25   material from the banks coming in by the 15th that you're
```

Case 2:13-cv-00779-DOC-JCG   Document 325   Filed 09/23/14   Page 13 of 19   Page ID #:7475
2:13-CV-0779-DOC - 9/9/2014 - Volume III

13

1  going to be going through.  And you've got whatever
2  depositions -- and I don't mean to refer to them
3  derogatorily as "minnows," but those people, if you need
4  clean up, with five or ten.  So we can be plenty busy in
5  that time.  So this isn't a February 20th or, you know,
6  March issue that should cause concern in terms of delay.
7             My first question, and maybe my only question is:
8  Pursuant to your discovery obligations, has the government
9  searched for responsive communications between
10 Secretary Geithner and other high-level executive officials,
11 excluding officials from the Executive Office of the
12 President?
13            MR. CARDONA:  Your Honor, my understanding is
14 yes --
15            THE COURT:  Okay.
16            MR. CARDONA:  -- the Treasury has done searches
17 that would cover those.
18            THE COURT:  If so, has the government produced
19 those documents?
20            MR. CARDONA:  My understanding is, yes, to the
21 extent there were any that were found.  I believe there were
22 not that many that were found.
23            THE COURT:  But the answer's yes?
24            MR. CARDONA:  I believe so.  I would have to --
25            THE COURT:  Why don't you wait and get back to me.

Case 2:13-cv-00779-DOC-JCG   Document 325   Filed 09/23/14   Page 14 of 19   Page ID #:7476
2:13-CV-0779-DOC - 9/9/2014 - Volume III

14

```
 1                MR. CARDONA:  I would have to confirm with the
 2    Treasury.
 3                THE COURT:  Can you call 'em?
 4                MR. CARDONA:  Um.
 5                THE COURT:  I don't want to have you sit around
 6    until midnight with me.
 7                MR. CARDONA:  I can try.
 8                THE COURT:  Okay.  Why don't you get on the phone
 9    and try.
10                MR. CARDONA:  Right now?
11                THE COURT:  Yeah.
12                MR. CARDONA:  Okay.
13                THE COURT:  It just saves you -- I'd like to get
14    out of here, if I can.  I'd like to find out.
15                MR. CARDONA:  Okay.
16                THE COURT:  By the way, they should still be at
17    work.  4:00 o'clock.
18                Sir, why don't you -- let me take another matter
19    for just a moment.
20                MR. KEKER:  Your Honor, we'd be willing to -- for
21    Mr. Cardona to get an absolutely accurate answer, which is
22    important to us -- I can see it taking a day.
23                THE COURT:  No, no.
24                Go get on the phone.  I mean, if you're here
25    tomorrow, it doesn't matter to me from this point forward.
```

```
 1   Let's find out.  I'm not going to get any more clarity than
 2   I am on a phone call right now.  If we need to come back
 3   tomorrow, we'll be back tomorrow.  But let's get this done
 4   now.
 5             All right.  I want to call another matter.
 6        (Pause in the proceedings at 1:03 p.m.)
 7        (Proceedings resumed at 1:48 p.m.)
 8             THE COURT:  Now, we're back in session.  All
 9   counsel are present.
10             Mr. Cardona, thank you for those efforts today,
11   whatever they were.
12             MR. CARDONA:  Certainly.
13             So I think I can answer your question, Your Honor.
14   I have -- I spoke with a representative at Treasury.
15             They did do a search of all of Mr. Geithner's
16   e-mail that was broad enough to pick up communications with
17   people other than the White House.
18             THE COURT:  Okay.
19             MR. CARDONA:  The confusion that I had in my mind
20   was that search may also have been broad enough to pick up
21   communications with the White House.  If there were any,
22   they were not logged or produced.  But it did pick up
23   communications with people other than the White House.  And
24   those were produced to the extent they were responsive.
25             THE COURT:  Okay.
```

Case 2:13-cv-00779-DOC-JCG   Document 325   Filed 09/23/14   Page 16 of 19   Page ID #:7478
2:13-CV-0779-DOC - 9/9/2014 - Volume III

16

```
 1                So the answer to my question is yes.
 2                And I'm going to repeat back:  The Treasury has in
 3    fact produced responsive communications between former
 4    Secretary Geithner and high-level executive officials,
 5    excluding officials from the Executive Office of the
 6    President.
 7                Is that a correct statement?
 8                MR. CARDONA:  Yes.  That is my understanding based
 9    on my conversations with Treasury.
10                THE COURT:  Who did you speak to?
11                MR. CARDONA:  I spoke to the Senior Adviser to the
12    General Counsel.
13                THE COURT:  Excellent.  Name?
14                MR. CARDONA:  Laurie Richardson.  L-A-U-R-I-E.
15    Last name Richardson, R-I-C-H-A-R-D-S-O-N.
16                THE COURT:  Thank you very much.  I appreciate
17    that call.
18                Well, then, let me stop.
19                Is there anything further today?
20                MR. KEKER:  No, Your Honor.
21                MR. ABRAMS:  I don't think there's anything
22    further today.
23                That leaves open whatever else we've argued to
24    you, of course, with respect to our request that the
25    government look into, try to find unprivileged documents
```

```
 1   with the Executive Office of the President.
 2            THE COURT:  Okay.
 3            Mr. Cardona, anything further?
 4            MR. CARDONA:  No, Your Honor.  We stated our
 5   position on that.
 6            THE COURT:  Okay.
 7            Ms. Keller?
 8            MS. KELLER:  Nothing from me.
 9            THE COURT:  Mr. Keker?
10            MR. KEKER:  Nothing.
11            THE COURT:  Mr. Abrams?
12            MR. ABRAMS:  No, Your Honor.
13            THE COURT:  Then have a good day.
14            MR. KEKER:  Thank you.
15            MR. ABRAMS:  Thank you, Your Honor.
16         (Proceedings adjourned at 1:51 p.m.)
17         (Government returns to the courtroom.)
18         (Defense counsel not present.)
19         (Further proceedings reported at 1:58 p.m. as
20      follows:)
21            THE COURT:  Back on the record.
22            Mr. Cardona has been kind enough to hand the
23   documents to the clerk of the Court.  We now have them in
24   our possession.
25
```

```
 1           (Documents provided to the Court.)
 2           THE COURT:  If you would like a document back from
 3   the clerk that they've been obtained by the court, we're
 4   happy to --
 5           THE CLERK:  We'll put it in our minute order.
 6           MR. CARDONA:  What we're giving you is all of the
 7   DOJ documents that were either redacted or withheld.
 8           THE COURT:  Thank you.
 9           MR. CARDONA:  Other than there was a set of
10   documents that related to the Executive Office of President.
11           THE COURT:  I understand.
12           MR. CARDONA:  And those we have not provided.
13           If the Court decides you want those, just let us
14   know and we can get those as well.
15           THE COURT:  Thank you very much.  Okay.
16           (Proceeding adjourned at 1:59 p.m.)
17                              -oOo-
18
19
20
21
22
23
24
25
```

Case 2:13-cv-00779-DOC-JCG   Document 325   Filed 09/23/14   Page 19 of 19   Page ID #:7481
2:13-CV-0779-DOC - 9/9/2014 - Volume III

19

-oOo-

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date:   September 16, 2014


                                /s/ Debbie Gale
                                _____
                                DEBBIE GALE, U.S. COURT REPORTER
                                CSR NO. 9472, RPR, CCRR