# JONES DAY

3161 MICHELSON DRIVE • SUITE 800 • IRVINE, CALIFORNIA 92612.4408
TELEPHONE: +1.949.851.3939 • FACSIMILE: +1.949.553.7539

Direct Number: (949) 553-7585
Paul Bartholomew Green

January 20, 2015

<u>VIA CM/ECF</u>

The Honorable David O. Carter
United States District Court
Central District of California
411 W. Fourth Street, 9th Floor
Santa Ana, CA 92701

      Re:    *United States v. McGraw Hill Companies, Inc., et al.*, No. 2:13-cv-0779-DOC (JCGx)

Dear Judge Carter:

      Non-party U.S. Bank National Association in its capacity as trustee (the "Trustee") for securitization transactions that issued certain covered Securities[1] (the "Securitizations") submits this letter (1) to oppose the motion to compel [Dkt. No. 351-1] (the "Motion") filed by Defendants McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services, LLC (collectively, "S&P") demanding additional documents beyond those that the Trustee has produced in response to two subpoenas (the "Subpoenas"), and (2) to request an Order pursuant to Fed. R. Civ. P. 45(d) protecting the Trustee and the Securitizations from the additional significant expense of collecting, reviewing, and producing further documents responsive to the broad categories demanded by S&P.[2]

      For the following reasons, the Court should deny the Motion:

1. Pursuant to commitments made during meet and confer sessions, the Trustee already has produced more than 18,700 pages of documents in response to the Subpoenas.

2. Producing additional documents requested by S&P, many of which are not relevant to this dispute, represents undue burden both to the Trustee and to the Securitizations, which would ultimately bear the resulting expense pursuant to the agreements governing the Securitizations (the "Governing Agreements").

Accordingly, the Trustee respectfully requests that the Court deny the Motion or, alternatively, require S&P to pay all additional collection, review, and production-related expenses.

---

[1] Capitalized terms that are not otherwise defined herein shall have the meaning ascribed to them in the Subpoenas.

[2] On January 2, 2015, the Trustee consented to transfer the Motion from the U.S. District Court for the Southern District of Ohio to this Court [Dkt. No. 351-3]. The Trustee complies with the Court's standing order concerning the format of motion to compel briefing [Dkt. No. 327], notwithstanding S&P's non-compliance.

JONES DAY

The Hon. David O. Carter
January 20, 2015
Page 2

## ARGUMENT[3]

The Trustee's role in the Securitizations is markedly different than that of other non-party financial institutions from which S&P previously sought to compel discovery. The Trustee does not originate, buy, sell, or select loans or other collateral backing the Securities. It does not make representations and warranties concerning the quality of that collateral. It does not structure the Securitizations or sell the Securities. The Trustee is not among the group of "issuers, arrangers, sponsors, underwriters, or sellers of the specific RMBS and CDOs at issue in this action" described in the Court's Order dated April 15, 2014, and is not one of the institutions with investment losses giving rise to this lawsuit. *See, e.g.*, Motion to Compel Third Party RBS Securities Inc. [Dkt. No. 201], at 2 ("In other words, RBS itself structured, arranged, and/or funded most of the very securities in which it allegedly later lost money – losses that the Government attributes to RBS's reliance on S&P's credit ratings."). Unlike these entities, from which S&P has already obtained expansive discovery, the Trustee's role is administrative and involves only the ministerial tasks identified in the Governing Agreements, such as certain recordkeeping, payment distribution, and providing or forwarding notices to other parties.

### A. The Trustee Has Already Produced More Than 18,700 Document Pages

S&P's contention that the Trustee "refuses" to produce documents in connection with the Subpoenas is flat out wrong. Throughout 2014, based on commitments made to S&P, the Trustee made productions totaling some 18,706 pages of documents in addition to Excel spreadsheet files representing thousands of pages of data sought by S&P. These productions included the following document categories responsive to Subpoena requests 4, 6-10, 13-19, and 21:

(a) documents pertaining to the Securities' ratings, including correspondence, rating agency letters and confirmations, private placement memoranda, and liquidation and termination files;

(b) periodic trustee reports, including access to all documents concerning the Securitizations (reflecting the various payments, performance, and status of the Securities) available on U.S. Bank's Trust Investor Reporting website ("TIR");

(c) loan tapes and schedules concerning the collateral backing the Securities;

---

[3] The Trustee incorporates by reference herein the arguments made in Wells Fargo Bank N.A.'s ("Wells Fargo") Jan. 20, 2015 response to Defendants' motion to compel directed to Wells Fargo [Dkt. No. 336]. Like Wells Fargo, the Trustee was not involved in investment decisions made by other institutions giving rise to the Government's claims against S&P. The documents in the Trustee's possession, custody, and control are not relevant to this dispute for the same reasons noted in Wells Fargo's submission.

**JONES DAY**

The Hon. David O. Carter
January 20, 2015
Page 3

    (d) documents concerning the liquidation or acceleration of CDO Securities, including acceleration notices, event of default notices, liquidation and termination notices, liquidation and settlement spreadsheets, liquidation invoices, collateral retention notices, default notices, notices of public auctions/sales and invitations to bid, notices of disposition of collateral/preservation of collateral notices, audited financials, FINRA reports, distribution summaries, and liquidation, termination, and final maturity reports; and

    (e) U.S. Bank's document retention policy, pursuant to which email messages are retained on U.S. Bank's mail system for 90 calendar days.

The Trustee also authorized the reproduction to S&P of documents that the Trustee produced in response to certain subpoenas issued by the U.S. Department of Justice in connection with its investigations of other parties concerning issuance of RMBS.[4]

S&P filed the Motion without advance notice to the Trustee notwithstanding this production and numerous good faith attempts to reach a negotiated resolution. S&P seeks "four principal categories of documents," discussed below.

    **1.    Documents Concerning the Securities**

During the meet and confer process, S&P represented that it was interested in (a) the Trustee's use of ratings, (b) the extent to which the ratings should be relied upon, (c) how the ratings are to be used or considered in the process of evaluating and monitoring the performance of the Securities, and (d) Trustee personnel attitudes about or opinions on ratings.[5] The Trustee produced responsive documents in its possession, custody, or control that related to these categories of information. S&P is not satisfied and contends that the Trustee should produce *all* documents that "concern" the Securities. S&P's request is overbroad.

First, S&P fails to appreciate how the Trustee maintains its files. While S&P suggests that the Trustee need only review and produce documents in "deal files," the Trustee does not maintain all documents related to a particular Securitization in a unique file or in any other single repository or location. For example, documents sought by this request are kept in hard copy and electronic format and are spread out over at least four different offices in Delaware, Illinois, Massachusetts, and Minnesota. Some of the information sought by S&P is saved in computer shared drives, some is in central paper files, and some is in the immediate possession of the Trustee's account management and account administration personnel for each Securitization. In

---

[4] The Trustee does not possess any documents responsive to requests 11 and 12 concerning its "use of, access to or validation of any [Nationally Recognized Statistical Rating Organization's] models used in rating RMBS" and/or CDOs. These requests are not covered by S&P's Motion.

[5] S&P's assertion that the Trustee's production "touches on fewer than half of the RMBS securities" is misleading. To the extent that ratings-related documents concerning certain Securitizations were not produced and are not available on TIR, it is because the Trustee does not have possession, custody, or control of such documents.

JONES DAY

The Hon. David O. Carter
January 20, 2015
Page 4

addition, the information is interspersed among significant quantities of non-responsive documents organized by subject matter rather than by Securitization.

Second, while the Trustee remains willing to work with S&P, asking a third party to produce *all* documents "concerning" the Securities is improper and unreasonable. *See* Fed. R. Civ. P. 45(d)(1) (requiring "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena"); Fed. R. Civ. P. 34(b) (requests served on parties must describe documents sought for production "with reasonable particularity"). S&P should identify a reasonable scope of additional documents that have not already been produced. S&P's current formulation of its request is unreasonable, presents an undue burden, and should be denied.

### 2. Email Communications Related to the Securities

The Trustee has repeatedly explained to S&P that any search of U.S. Bank's email servers for email communications "related" to the Securities from the "Relevant Date Range" (2004-2008) would not yield responsive documents because U.S. Bank only retains email messages electronically for 90 days, with a 5 day backup system. The Trustee produced its retention policy to S&P on May 5, 2014. The Trustee simply does not in the ordinary course of business maintain on its email servers electronic mail from the "Relevant Date Range."

S&P insists that U.S. Bank must have documents on its email servers responsive to this category because the Trustee has produced some emails from that timeframe. This argument is a red herring. These emails were not identified through a search of U.S. Bank's email servers. In some instances, a U.S. Bank employee retained a copy or placed in a relevant paper file or shared drive an email responsive to S&P's requests, and the Trustee retrieved, copied, and produced such emails. Thus, S&P's request that the Trustee incur the time and expense of a search of its email servers is neither warranted nor authorized, and S&P's motion to compel such an action should be denied. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii) (discovery must be limited where "the burden or expense of the proposed discovery outweighs its likely benefits").

### 3. Documents Produced by The Trustee in Other Litigations

S&P's demand for re-production of documents concerning the Securities that the Trustee produced in other lawsuits is improper because it represents an undue burden on the Trustee. The suit referenced in the Motion, for example, involved approximately fifty securitizations, only one of which is at issue here. (Motion at 10.) Rather than requiring the Trustee to cull from these productions documents concerning a single Securitization, S&P should simply identify with reasonable particularity additional documents sought for production from the Trustee's business records.

### 4. Organizational Charts and Policies

S&P has not articulated how the Trustee's organizational charts and policies are relevant to the lawsuit such that the Trustee should be compelled to produce this information. In any

JONES DAY

The Hon. David O. Carter
January 20, 2015
Page 5

event, the Trustee has not identified documents responsive to S&P's request because it does not maintain in the ordinary course of business policies or organizational charts as they existed during the 2004 through 2008 time frame.

### B. Any Further Expenses Should be Paid by S&P

The Trustee has already incurred significant time and expense providing documents to S&P. Unchecked submission to S&P's remaining overbroad demands imposes an undue burden on the Trustee and on the Securitizations, which would ultimately absorb the related additional expenses. *See* Fed. R. Civ. P. 45(d)(1). Thus, if the Court grants the Motion in whole or in part, the Trustee respectfully requests that the Court require S&P to pay all further related expenses. As the Ninth Circuit has acknowledged, "Rule 45(d)(2)(B)(ii) states that, when a court orders compliance with a subpoena over an objection, the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." *Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) (finding $20,000 to be a significant expense) (internal quotation marks omitted); *see Tessera, Inc. v. Micron Tech., Inc.*, Case No. C-06-80024-MISC-JW (PVT), 2006 U.S. Dist. LEXIS 25114, *33 (N.D. Cal. Mar. 22, 2006) (where a third party "may incur significant costs in producing documents responsive to [a] subpoena *duces tecum*, an award to cover such costs may be appropriate"). Production of additional documents in this case would entail potentially hundreds of hours of document searches and reviews both for responsiveness and privilege, and would expose third parties to "significant" expense well in excess of $20,000. An order shifting these costs to S&P is appropriate in these circumstances.

### CONCLUSION

The Trustee respectfully requests that the Court deny the Motion or, in the alternative, enter an Order shifting to S&P all further expenses related to further document production.

Respectfully submitted,

JONES DAY

Paul Bartholomew Green
3161 Michelson Drive, Suite 800
Irvine, California 92612-4408
Telephone: (949) 851-3939
Facsimile: (949) 553-7859

cc: Counsel of record (via ECF)