2:13-CV-0779-DOC - 1/27/2015 - 9:04 A.M.

1

1          **UNITED STATES DISTRICT COURT**

2          **CENTRAL DISTRICT OF CALIFORNIA**

3      **HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

4              – – – – – – –

5  UNITED STATES OF AMERICA,        )
                                    )        **CERTIFIED**
6          Plaintiff,               )
                                    )
7      vs.                          ) No. LACV 13-0779 DOC
                                    )        9:04 A.M.
8  McGRAW-HILL COMPANIES, INC., et  )
   al.,                             )
9                                   )
           Defendants.              )
10 _____)

11

12

13          REPORTER'S TRANSCRIPT OF PROCEEDINGS

14                  Status Conference

15               Santa Ana, California

16             Tuesday, January 27, 2015

17

18

19

20

21

22

23  Debbie Gale, CSR 9472, RPR, CCRR
    Federal Official Court Reporter
24  United States District Court
    411 West 4th Street, Room 1-053
25  Santa Ana, California 92701
    (714) 558-8141

Case 2:13-cv-00779-DOC-JCG  Document 370  Filed 01/29/15  Page 2 of 57  Page ID #:10311
2:13-CV-0779-DOC - 1/27/2015 - 9:04 A.M.

2

```
1    APPEARANCES OF COUNSEL:

2
     FOR THE UNITED STATES OF AMERICA:
3

4        UNITED STATES DEPARTMENT OF JUSTICE
         OFFICE OF UNITED STATES ATTORNEY
5        BY:  George S. Cardona
              Chief Assistant United States Attorney
6        312 North Spring Street
         12th Floor
7        Los Angeles, California 90012
         213-894-2434
8        USACAC.Criminal@usdoj.gov

9
         UNITED STATES DEPARTMENT OF JUSTICE
10       OFFICE OF UNITED STATES ATTORNEY
         Civil Division - Federal Building
11       BY:  Anoiel Khorshid
              Assistant United States Attorney
12       300 North Los Angeles Street
         Room 7616
13       Los Angeles, California 90012
         213-894-6086
14       anoiel.khorshid@usdoj.gov

15

16   FOR THE DEFENDANT MCGRAW-HILL COMPANIES, INC., ET AL.:

17
         KEKER AND VAN NEST LLP
18       BY:  John W. Keker
              Attorney at Law
19       710 Sansome Street
         San Francisco, California 94111
20       415-391-5400
         jkeker@kvn.com
21

22       KELLER RACKAUCKAS LLP
         BY:  Jennifer L. Keller
23            Attorney at Law
         18300 Von Karman Avenue
24       Suite 930
         Irvine, California 92612
25       949-476-8700
         jkeller@krlawllp.com
```

1    **APPEARANCES OF COUNSEL:   (Continued)**

2

3    FOR THE DEFENDANT MCGRAW-HILL COMPANIES, INC., ET AL.:

4

5        CAHILL GORDON AND REINDEL LLP
         BY:  S. Penny Windle  *(pro hac vice)*
6            Attorney at Law
         80 Pine Street
7        New York, New York 10005
         212-701-3000
8        pwindle@cahill.com

9        KEKER AND VAN NEST LLP
         BY:  Paven Malhotra
10           Attorney at Law
         710 Sansome Street
11       San Francisco, California 94111
         415-391-5400
12       pmalhotra@kvn.com

13
         KEKER AND VAN NEST LLP
14       BY:  Steven K. Taylor  *(pro hac vice)*
             Attorney at Law
15       633 Battery Street
         San Francisco, California 94111
16       415-391-5400
         staylor@kvn.com

17

18
         KELLER RACKAUCKAS LLP
19       BY:  Thomas H. Kao
             Attorney at Law
20       18300 Von Karman Ave
         Suite 930
21       Irvine, California 92612
         949-476-8700
22       tkao@krlawllp.com

23

24

25

1    **ADDITIONAL APPEARANCES:**

2

     FOR NON-PARTY U.S. BANK:
3
         JONES DAY
4        BY:  Brian Hershman
             Attorney at Law
5        555 South Flower Street
         50th Floor
6        Los Angeles, California 90071
         213-489-3939
7        bhershman@jonesday.com

8

     FOR NON-PARTY WELLS FARGO:
9
         MUNGER, TOLLES & OLSON LLP
10       BY:  David H. Fry
             Attorney at Law
11       560 Mission Street
         27th Floor
12       San Francisco, California 94105
         415-512-4082
13       David.Fry@mto.com

14

15   ALSO PRESENT:

16       Khari J. Tillery  *(not on court docket)*
         Attorney at Law
17       KEKER & VAN NEST LLP
         633 Battery Street
18       San Francisco, California 94111
         415-773-6621
19       ktillery@kvn.com

20
         Honorable James L. Smith (Ret.), Special Master
21       Robert O'Brien, Special Master
         Honorable Jay C. Gandhi, Magistrate Judge
22

23

24

25

Case 2:13-cv-00779-DOC-JCG   Document 370   Filed 01/29/15   Page 5 of 57   Page ID #:10314
2:13-CV-0779-DOC - 1/27/2015 - 9:04 A.M.

5

1                      **I N D E X**

2    **PROCEEDINGS**                              **PAGE**

3    Status Conference                              6

4    Stipulations                                  20

5    Discussion re items still in dispute          25

6    Agreement read into record by Judge Smith     54

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | **SANTA ANA, CALIFORNIA, TUESDAY, JANUARY 27, 2015** |
| 2 | (9:04 a.m.) |
| 3 | **STATUS CONFERENCE** |
| 4 | THE COURT:  Counsel, let me talk to you for just a |
| 5 | moment, and go on the record in United States of America v. |
| 6 | McGraw-Hill. |
| 7 | Why don't you come up for a moment.  Let me |
| 8 | initially get a record of who's here. |
| 9 | MR. CARDONA:  Good morning, Your Honor.  George |
| 10 | Cardona and Anoiel Khorshid for the United States. |
| 11 | MR. KHORSHID:  Good morning, Your Honor. |
| 12 | Assistant United States Attorney Anoiel Khorshid. |
| 13 | MR. KEKER:  Good morning, Your Honor.  John Keker |
| 14 | and Steven Taylor of Keker & Van Nest. |
| 15 | MR. TAYLOR:  Good morning, Your Honor. |
| 16 | MS. KELLER:  And Jennifer Keller of Keller |
| 17 | Rackaukas also for Standard & Poor's.  And Thomas Kao -- |
| 18 | THE COURT:  Why don't the associates make an |
| 19 | individual appearance. |
| 20 | MS. WINDLE:  Penny Windle from -- |
| 21 | THE COURT:  Thank you. |
| 22 | MS. WINDLE:  -- for Standard and Poor's. |
| 23 | MR. MALHOTRA:  Paven Malhotra, Keker Van Nest, for |
| 24 | Standard and Poor's. |
| 25 | THE COURT:  Thank you. |

```
 1              MR. TILLERY:  Khari Tillery for Standard and

 2   Poor's.

 3              MR. KAO:  Thomas Kao, Keller Rackaukas, Standard &

 4   Poor's.

 5              THE COURT:  Thank you.

 6              MR. HERSHMAN:  Good morning, Your Honor.  Brian

 7   Hershman of Jones Day.  I'm here on behalf of United States

 8   Bank.  We submitted a stipulation.  We --

 9              THE COURT:  I'm going to cover that in just a

10   moment.  That's why we took a little bit of extra time in

11   the back.

12              MR. FRY:  Good morning, Your Honor.  David Fry of

13   Munger, Tolles & Olson for non-party Wells Fargo Bank.

14              THE COURT:  Thank you very much.

15              Let me start with the agreement that apparently

16   has been reached between U.S. Bank National Association,

17   U.S. Bank National Association, as successor to La Salle

18   Bank.  I have just received this a few minutes ago.  And by

19   stipulation it appears that each of you have worked out

20   your -- well, you've decided to go forward with your best

21   efforts to resolve this, and you've reached an accommodation

22   and a stipulation concerning the Motion to Compel, which I

23   assume would not be heard by the Court.

24              Is that correct, Counsel?

25              MR. HERSHMAN:  That's my understanding,
```

1   Your Honor.

2           THE COURT:  Mr. Keker?

3           MR. KEKER:  Yes, Your Honor.

4           THE COURT:  So you're both satisfied?

5           MR. KEKER:  Yes, sir.

6           THE COURT:  That's been signed by the Court.  I'm

7   going to give that to Debbie.  And, Debbie, you can make

8   certified copies for counsel.

9           THE CLERK:  Okay.

10          THE COURT:  Let me then speak to counsel

11  representing Wells Fargo Bank.

12          You would be the only Motion to Compel before the

13  Court today.  I have Special Masters Judge Smith, Robert

14  O'Brien, and Judge Gandhi here.  And I want to make certain

15  that before we start the Motion to Compel, that you've had

16  an opportunity on all sides to see if there's an ability to

17  resolve this without a formal hearing.

18          MR. HERSHMAN:  Your Honor --

19          THE COURT:  I'm convinced that your client is

20  unwilling or unable to enter into such a, you know,

21  bargained-for, in a sense, agreement.  Or is this what I

22  call the "all or nothing" approach?  If so, then I'd like to

23  hear the motion immediately.

24          MR. HERSHMAN:  Your Honor, I think that there are

25  different categories of requests that fall into different

1  buckets.

2          THE COURT:  Okay.

3          MR. HERSHMAN:  I had a conversation with Counsel

4  for S&P yesterday where we talked about the request for

5  e-mails, um, and a, uh, somewhat narrower group of people.

6          We've agreed to provide working group lists, to

7  the extent we find them, and identify people who worked on

8  these deals in certain jobbing contacts, people who are vice

9  presidents or senior analysts, several different categories

10  of people, uh, and they're looking to at that list.  And

11  we're gonna have a conversation about whether it's

12  reasonable for us to, um, produce all of the e-mails from

13  that group of people.

14          And so on that aspect, I think that we have an

15  ongoing discussion and it's not at impasse.

16          THE COURT:  But no agreement.

17          MR. HERSHMAN:  We do not have an agreement, except

18  we have an agreement as to a process to try to determine --

19          THE COURT:  Sure.

20          MR. HERSHMAN:  -- the reasonable scope.

21          THE COURT:  Do you have authority to make those

22  decisions today?  Or is there, you know, house counsel that

23  you work through?  In other words, I'm trying to see how

24  much could be accomplished today, if anything, or, you know,

25  the motion's going forward today.

1      MR. HERSHMAN:  Your Honor, I'm not sure what the

2  decisions would be.  There are decisions that I could make

3  and decisions that I could not make.

4      THE COURT:  Okay.

5      MR. HERSHMAN:  But we don't know how many people

6  are involved.  And I don't know whether S&P, um, is prepared

7  to -- without, uh, knowing how many people are involved --

8  make an agreement about what the scope should be.  Um,

9  whether they're gonna want more people, if it's a small

10  group, or whether they're gonna want to, uh, potentially

11  incur, uh, expenses if it's a very large group.  So I'm not

12  sure whether we have a basis on making an agreement on that

13  aspect today.

14      THE COURT:  Well, let me ask you simply.  I'd

15  always rather not use the Court's authority.  Anytime the

16  parties can reach a resolution, with a little bit of pain on

17  both sides, it's a much more workmanlike accommodation.  But

18  if those discussions are exhausted, then I want to take the

19  Motion to Compel today and simply make a ruling either for

20  or against.

21      If the motions are in a bargaining state, I want

22  to know throughout the day, and I want people here who can

23  make those decisions so we can find out what the universe

24  is.  And maybe there's an impossibility of reaching a

25  resolution, or maybe there's a narrower area that you wish

Case 2:13-cv-00779-DOC-JCG  Document 370  Filed 01/29/15  Page 11 of 57  Page ID #:10320
2:13-CV-0779-DOC-17/27/2015 - 9:04 A.M.

11

1   the Court to decide between the parties.  I'm trying to give

2   the authority back, not take it.

3           Regardless ^regardless of the number of people

4   involved, how those search terms are set forth is a

5   tremendous burden.  It's a huge decision.  The

6   \breath\breadthdth can cause a wholesale search or

7   narrowing, and that's only on the assumption that your

8   motion was not successful.

9           Now, if it's successful, you have no issues or no

10  problems.  So I have the special masters here partially for

11  that purpose.  And I asked them in partially so that, if

12  there was as chance of either -- previously, the

13  Wells Fargo -- or U.S. Bank to enter into that discussion, I

14  wanted to today before I got into the position of making

15  rulings that would affect the parties.

16          So let's put that on the table for just a moment.

17  If you want the motion to go forward today, we're prepared

18  to hear that motion.  I may be even prepared to rule on it.

19  I'm just not certain what I'm going to hear in argument.

20  But once I make that decision, you two are going to have to

21  bargain awfully hard if it's adverse to you to have any

22  other decision, except my decision.

23          If, in fact, once again, the decision is favorable

24  to you, then that relieves all the stress that you bear at

25  the present time.  And I'm just not certain 'cause

1    oftentimes I get lawyers, who are excellent lawyers like

2    yourself, but they don't have the final authority to make

3    the final definitive decision about the \breath\breadthdth

4    and the search terms.  And I don't -- I'm hearing that you

5    need to have other people present to make those finite

6    decisions.

7          MR. HERSHMAN:  Your Honor, I'm frankly not sure

8    how we would make all of those decisions.  There's been no

9    list of search terms proposed.

10         THE COURT:  Oh, but there would be today.

11         MR. HERSHMAN:  Okay.

12         THE COURT:  You see, there we would be doing

13   business today.  And all I'm giving you is the opportunity,

14   if you want, and not pushing you -- I'm very good at making

15   bad decisions quickly -- okay? -- but giving you the

16   opportunity to shape and control between S&P what this looks

17   like; otherwise, you give it to me to control, and I'm quite

18   good at that

19         MR. HERSHMAN:  Well, I would like the opportunity

20   to have that discussion with S&P today, Your Honor.

21         THE COURT:  Well, my special masters would be in

22   charge because, although I admire your work on Sunday, ^you

23   haven't reached an accommodation.  So I'm going to have a

24   special master with you to help guide you.

25         MR. HERSHMAN:  That's -- that's --

Case 2:13-cv-00779-DOC-JCG   Document 370   Filed 01/29/15   Page 13 of 57   Page ID #:10322
2:13-CV-0779-DOC — 1/27/2015 - 9:04 A.M.

13

 1          THE COURT:  If you want to, I'm giving that to

 2   you.  If you don't want to, I'm happy to hear your motion.

 3          MR. HERSHMAN:  I think I would like that.

 4          THE COURT:  In a few moments, we're going to go

 5   nextdoor.  One or two special masters will be involved.  I

 6   think we'll know quickly, within an hour or so, if this can

 7   be reached between the two of you.  If not, let's get back

 8   into session.  Okay?

 9          And I'm assuming that one of the able associates

10   probably is an expert in this area.

11          MR. KAO:  It would be me, Your Honor.

12          THE COURT:  There's my expert.

13          And I want the sides not to be out-weighted.  If

14   you want to call somebody, we can set up teleconferencing in

15   New York or whatever.

16          MR. HERSHMAN:  Thank you, Your Honor.

17          THE COURT:  Now, I'd like to do this.

18          Mr. Keker, a year ago or whatever, you came into

19   court and you listened to an informal conversation where we

20   were negotiating another case, totally unrelated to you, and

21   I think you made the comment, a year or so ago, "You know,

22   we ought to have that kind of session, Judge, at some

23   point."  I'm prepared to do that.  In other words, to get

24   off the bench, come down, and sit with you and take some of

25   the formality away, but only with your consent.

Case 2:13-cv-00779-DOC-JCG  Document 370  Filed 01/29/15  Page 14 of 57  Page ID #:10323
2:13-CV-0779-DOC-1/27/2015 - 9:04 A.M.

14

```
 1            And how many -- I know there's a number of people

 2      from the press; would you just raise your hand for a moment?

 3            (Show of hands.)

 4            THE COURT:  I have no intention to exclude you.

 5      Transparency is transparency.  You can listen to the

 6      conversation.  I'm proposing to go off the record --

 7      whatever you report is going to be in your presence.  It's a

 8      little bit more comfortable.  And then we'll memorialize

 9      things on the record -- if you want that, what I call,

10      spit-and-growl session.

11            MR. KEKER:  Yes, Your Honor.

12            THE COURT:  I invite the associates to gather

13      around also.  I think we might accomplish a lot informally.

14            Mr. Cardona, does that meet with your approval?

15            MR. CARDONA:  That's fine, Your Honor.

16

17            THE COURT:  Right here in court.  And I'm going to

18      take off the robe and -- and everybody gather around for a

19      moment.

20            I think I'll get your best input, quite frankly.

21      Let me come down and join you.

22            Deb, rest your hands for a moment, but stay.  You

23      might be back on the record.

24            (further proceedings held off the record at

25         9:16 a.m.)
```

2:13-CV-0779-DOC  1/27/2015 - 9:04 A.M.

15

```
 1            (Proceedings resumed on the record at

 2        10:14 a.m.)

 3            THE COURT:  Okay.  Then we're on the record in the

 4    United States of America v. McGraw-Hill.  All counsel have

 5    previously made their appearances.

 6            The Court's had an informal discussion with

 7    counsel, mostly for the comfort level of the Court, but the

 8    public and press has not been excluded.

 9            A number of things were discussed:  That's the

10    preparation of a tentative witness list by the government,

11    30 days from today's date, with a representation by the

12    Court that the government is not held absolutely to that

13    list; that you can change the order.  It's just a good faith

14    attempt to give me some idea of the time.  But, right now,

15    Mr. Cardona represented that it might be six weeks to eight

16    weeks, someplace in that range.  You're not held to that

17    representation.

18            After that, the Court is going to ask for a

19    witness list from the defendants.  But the Court is going to

20    wait because there are further depositions taking place that

21    may lend a little bit more finiteness to their list as well

22    as the decisions.  But, once again, the same representation.

23            What I don't want, though, is just every possible

24    witness who might be called because, remember, I'm giving

25    you latitude to substitute witnesses.  So don't give me 150
```

DEBBIE GALE, U.S. COURT REPORTER

1   people on each side.

2        By agreement of counsel, the motion cutoff

3   hearing, which will be the date that the Court will have

4   hearings in this matter for all dispositive motions, will be

5   July 20th.  The pretrial will be August 31st.  The trial

6   date is now set firmly on September 29th.

7        I want to compliment, Counsel.  They've thought

8   through the trial dates very well.  If they hadn't, the

9   Court would start a little bit earlier because of my concern

10  about the holidays.  But I think their wisdom prevails on

11  this.  It will be September 29th.

12       The Court also discussed my greatest concern, and

13  that is that there are third-party entities involved that

14  neither party controls.  I've asked the special masters,

15  Robert O'Brien, Judge Smith, and Judge Gandhi to be present.

16  I've asked counsel to notify me immediately if there's

17  pushback because I don't want these third-party entities

18  controlling trial dates where a multitude of witnesses are

19  subpoenaed, brought to court, and the last moment

20  non-acquiescence would cause unfairness to one of these

21  parties.

22       I don't anticipate that happening.  All of these

23  parties seem to have conducted themselves in good faith, and

24  I want that record at this point.  But it's the Court's

25  greatest concern.

Case 2:13-cv-00779-DOC-JCG  Document 370  Filed 01/29/15  Page 17 of 57  Page ID #:10326
2:13-CV-0779-DOC - 1/27/2015 - 9:04 A.M.

17

```
 1            If there is what I call pushback, it could be in

 2    the form of 30(b)(6) witnesses, which were discussed by the

 3    Court, and those 30(b)(6) witnesses not being ably or aptly

 4    prepared and the problem of getting back to a deposition at

 5    a later time, which then shoves the discovery back in time

 6    and causes potential prejudice to the parties in preparing

 7    their motions.

 8            We've discussed a time-qualification letter that

 9    would go out to the jurors.  We've discussed the number of

10    jurors.  And the Court's inclined to seat eight, with six to

11    eight alternates, depending upon the final time estimates of

12    counsel.  We've discussed the alternates not being in

13    sequential order, as seated, but in a random draw so that

14    each pays attention.  We've discussed the questionnaire.

15    And I've encouraged the parties no more than seven pages in

16    length.  It's just not a workable document.

17            We've also discussed that, actually, we would

18    bring the jury in at least a week earlier -- and I think a

19    week is adequate -- so that they would come into the

20    courthouse, fill out the questionnaire, leave the

21    questionnaire.  The Court would have a day to turn those

22    around, which we've typically been able to do with jury

23    pools as large as 170.  And then counsel would have at least

24    three or four days, plus the weekend, to go through those

25    before the actual trial selection started.
```

Case 2:13-cv-00779-DOC-JCG  Document 370  Filed 01/29/15  Page 18 of 57  Page ID #:10327
2:13-CV-0779-DOC  1/27/2015 - 9:04 A.M.

18

1       The Court's encouraged counsel to staff up.  By

2  that, I mean bring associates to help with the presentation

3  of the evidence as it's presented and to give the Court also

4  a copy of the particular document that's being presented to

5  the witness, or series of documents, so that I'm not going

6  through volumes, and I can pay attention to realtime, make

7  notes, and also the witness, rather than searching through

8  volumes of material presented to the Court.

9       Oh, we've talked about voir dire and the length of

10  time.  Right now, so the parties have no anguish, I'm giving

11  them each an hour with the general panel.  One party thinks

12  that 30 minutes is sufficient.  Let's just say an hour now,

13  and then discuss this with me later on.  So you can take

14  that burden off of you in terms of not getting some direct

15  contact with the jurors.  The follow up, though, is five,

16  ten minutes.

17       I think that covers it.  I may be missing

18  something.

19       Mr. Cardona, what am I missing that we might have

20  discussed?

21       MR. CARDONA:  You encouraged the parties to

22  discuss and see if we could arrive at an agreement as to the

23  number of peremptories.

24       THE COURT:  The number of peremptories.  Thank

25  you.

```
 1              And that is, the rules call for three.  If you
 2   want more, by stipulation, I'll give those, as long as it's
 3   agreeable with the Court -- some modicum.  But that's up to
 4   you; otherwise, it's three.
 5              Anything else, Mr. Cardona?
 6              MR. CARDONA:  No.  I think that covers it,
 7   Your Honor.
 8              THE COURT:  Mr. Keker, what am I missing?
 9              MR. KEKER:  I think that covers it, Your Honor.
10              THE COURT:  Okay.  Associates?
11              (To the law clerks:) Team?
12              (To the special masters:)  Jim?  Robert?  Jay?
13              Okay.  Then we're in recess.  Thank you very much.
14              We'll come back to the motion to compel in just a
15   moment.
16         (Recess held at 10:21 a.m.)
17         (Proceedings resumed at 1:08 p.m.)
18              THE COURT:  We can go on the record in the matter
19   of United States of America v. McGraw-Hill.
20              And, Counsel, I know you, but would you make your
21   appearances one more time, please.
22              MR. FRY:  Certainly, Your Honor.  David Fry of
23   Munger, Tolles and Olson for Wells Fargo Bank NA.
24              THE COURT:  And for Standard & Poor's.
25              MR. KAO:  Afternoon, Your Honor.  Thomas Kao of
```

Case 2:13-cv-00779-DOC-JCG  Document 370  Filed 01/29/15  Page 20 of 57  Page ID #:10329
2:13-CV-0779-DOC  1/27/2015 - 9:04 A.M.

20

1    Keller Rackauckas for Standard & Poor's.

2                          **STIPULATIONS**

3          THE COURT:  I've got basically a term sheet.  And

4    I want to make certain, as I read through this and create my

5    record, that this is acceptable to each you.

6          Judge Smith represented that you've gone over

7    these points with Judge Smith, and that you'll be back to

8    the Court within 24 to 48 hours in a final form.  But this

9    would be the essence of the agreement, and that it would be

10   binding; and that is, first, concerning "Communications":

11              "Within two days, Standard & Poor's will

12              send Wells Fargo the deal names and

13              CUSIP numbers to run searches on

14              communications for the key custodians.

15              "Within seven days of today, Wells Fargo

16              will provide a list of names for the key

17              custodians, the vice presidents, the

18              relationship managers, and the

19              most-senior analysts involved in each

20              security.

21              "Within two days, Standard & Poor's will

22              respond with the names from the list for

23              which it requests production."

24               -- and I crossed out "and the."  It was a typo.

25              "Within 21 days of today, Wells Fargo

2:13-CV-0779-DOC - 1/27/2015 - 9:04 A.M.

```
 1              will provide a search result list for
 2              the custodians Standard & Poor's
 3              selects.
 4              "Within 30 days of today, Wells Fargo
 5              will begin a rolling production of
 6              documents for the custodians Standard &
 7              Poor's selects, as well as
 8              communications from shared drives, and
 9              will complete production within 60 days
10              of today's date.
11              "The parties will submit a status report
12              to Judge Smith in 30 days.
13              "Because of the compressed timeline and
14              the expectation that discovery will need
15              to be completed in May, there is no
16              indication from Wells Fargo that there
17              will be any difficulty in scheduling
18              depositions in April."
19              Now let me take that first section concerning
20   "Communications" and the bullet points which are set out,
21   which is the essence of the materiality of this agreement.
22              Is this acceptable to Standard & Poor's?
23              MR. KAO:  Yes, Your Honor.
24              THE COURT:  Is this acceptable to Wells Fargo?
25              MR. FRY:  Yes, Your Honor.  We have some basic
```

Case 2:13-cv-00779-DOC-JCG  Document 370  Filed 01/29/15  Page 22 of 57  Page ID #:10331
2:13-CV-0779-DOC 1/27/2015 - 9:04 A.M.

22

1   background understandings, like this doesn't mean we'll

2   produce privilege documents, and that sort of thing --

3            THE COURT:  I see.

4            MR. FRY:  -- but, yes.

5            THE COURT:  Second, "Deal Files and Policies."

6                  "Wells Fargo will produce policies for

7                  document retention, conflict of

8                  interests relating to trustee

9                  department, or the performance of

10                 trustee functions relating to RMBS or

11                 CDOs.

12                 "Wells Fargo will provide deal files

13                 from its shared drives for each

14                 security.

15                 "Wells Fargo will produce the deal files

16                 and policies within 45 days of today's

17                 date."

18            Concerning the deal files and policies, on behalf

19   of Standard & Poor's, is this the agreement?

20            MR. KAO:  Yes, Your Honor.

21            THE COURT:  On behalf of Wells Fargo, is this the

22   agreement?

23            MR. FRY:  Yes, Your Honor.  That's fine.

24            THE COURT:  Let me turn to the third, entitled --

25   or the third heading, entitled "Litigation Documents."

Case 2:13-cv-00779-DOC-JCG   Document 370   Filed 01/29/15   Page 23 of 57   Page ID #:10332
2:13-CV-0779-DOC - 1/27/2015 - 9:04 A.M.

23

```
1              "Within 7 days of producing or

2              exchanging documents in other matters

3              that involve the same securities at

4              issue in this case, Wells Fargo will

5              either produce a copy of the production

6              to Standard & Poor's or will make a

7              motion to the Court or, subject to the

8              Court's approval, to Judge Smith, to

9              withhold certain productions or parts of

10             the production based on further

11             objections.  Such motions will be heard

12             on the letter brief schedule pursuant to

13             Docket 327.  The parties will agree to

14             any expedited schedule set by

15             Judge Smith or Judge Carter."

16             Let me turn to that fourth grouping called

17    "Litigation Documents."  Is this acceptable to Standard &

18    Poor's?

19             MR. KAO:  Yes, Your Honor, with the caveat that we

20    mean the motion should be submitted to the Court, or to

21    Judge Smith subject to the Court's approval.

22             THE COURT:  I'm sorry.  Say that again.

23             MR. KAO:  At the third line down, what we mean to

24    say is that any motion Wells Fargo makes should be submitted

25    to the Court or, subject to the Court's approval,
```

1    Judge Smith.

2              THE COURT:  Okay.  And I hope it reads that way.

3              "Or will make a motion to the Court or,

4              subject to the approval, to

5              Judge Smith."

6              MR. KAO:  Yes.

7              THE COURT:  Is this acceptable to Wells Fargo?

8              MR. FRY:  Yes, Your Honor.

9              THE COURT:  Then the last and fourth grouping:

10             "Subject to court approval, the parties

11             will contact Judge Smith to resolve all

12             disputes for this agreement."

13             Acceptable to S&P?

14             MR. KAO:  Yes, Your Honor.

15             THE COURT:  Acceptable to Wells Fargo?

16             MR. FRY:  Yes, Your Honor.

17             THE COURT:  Then this is binding on the parties.

18             Judge Smith said that you two would work with each

19   other and with Judge Smith in the next 24 hours and get this

20   in a finalized form to the Court, but I consider this

21   binding.

22             Gentlemen, I want to compliment you.  At least

23   you've been able to control the process, which is always

24   wise.

25             Is there anything further, then, before the Court

1    today?

2          MR. FRY:  Your Honor, I think that the parties

3    have a remaining dispute about litigation documents from

4    cases that don't involve any of the securities that are at

5    issue in this case.

6          MR. KAO:  We agree, Your Honor.  If I can address

7    the Court on that remaining portion of the motion?

8          THE COURT:  All right.  Just a moment.

9          *(Pause in the proceedings at 1:14 p.m.)*

10         *(Proceedings resumed at 1:16 p.m.)*

11         THE COURT:  All right.  Counsel, once again, would

12   you state your disagreement so I have a good record.

13         MR. KAO:  Yes, Your Honor.

14              **DISCUSSION RE ITEMS STILL IN DISPUTE**

15         MR. KAO:  The remaining disagreement is S&P

16   requests that Wells Fargo produce documents exchanged or

17   produced in other matters involving similar securities or

18   similar conduct by Wells Fargo.  And I believe Wells Fargo's

19   position is they'll only produce such documents if they

20   involve the same exact securities as those at issue in this

21   case.

22         THE COURT:  All right.

23         And then, Counsel, would you like to be heard?

24         MR. FRY:  Your Honor, I was just going to

25   interject that that is not how I would characterize their

DEBBIE GALE, U.S. COURT REPORTER

Case 2:13-cv-00779-DOC-JCG  Document 370  Filed 01/29/15  Page 26 of 57  Page ID #:10335
2:13-CV-0779-DOC  1/27/2015 - 9:04 A.M.

26

 1   request, and so not how I would characterize our dispute.

 2         The request was for any documents produced in

 3   litigation that involve Wells Fargo as trustee, as

 4   originator, or as sponsor of securitizations.  It didn't --

 5   it wasn't framed in terms of conduct that was similar in any

 6   way to what's at issue here.

 7         THE COURT:  Sounds like your rendition to me is a

 8   little narrower *(indicating)* and yours is a little broader

 9   *(indicating)*, but I could have that reversed.  So let me

10   ask:  Is it a relevance issue, a burden issue, or both?  In

11   other words, if there's pending litigation and there are

12   documents that may be of import to this case, that's simply

13   a matter of duplication.  In other words, they're already

14   being produced, so the financial issue may not be great.

15         The relevance issue I'm concerned with in terms of

16   \breath\breadth.  And I'm really not quite certain what S&P

17   means by "similar."  It's a very broad term.  And usually

18   lead counsel -- and I hope associate counsel -- have been

19   able to narrow that significantly.

20         MR. KAO:  Yes, Your Honor.  If I can respond to

21   that?

22         In terms of the "similar securities," what we mean

23   are similar RMBS and CDOs.  And a couple examples here would

24   help.  The cases we've cited in our reply and moving papers,

25   include *BSMF v. EMC.*

```
 1              THE COURT:  Just a moment.  Is it V-E-M-C?  Or "D"
 2    like dog?
 3              MR. KAO:  It's E like Ernie, M-C.  And the other
 4    party is BSMF.  And it's in our exhibits at page 122.
 5              THE COURT:  Let's focus on that litigation that's
 6    known by both parties.
 7              What's the concern in that specific litigation?
 8    Let me speak to Wells Fargo.
 9              MR. FRY:  Your Honor, the concern with respect to
10    that litigation and this entire category is really twofold.
11              First, there's an issue of relevance.  This does
12    not concern any security that's at issue before Your Honor.
13    As it is, it's our view that all the requests directed at
14    Wells Fargo are very far removed from the issues that are
15    before Your Honor.  They are, to our knowledge, the most
16    attenuated assertions of discoverability that have been made
17    in this case, notwithstanding the breadth of discovery
18    that's been undertaken, because Wells Fargo, uh, their role
19    was not as the arranger or sponsor of these securitizations.
20    They don't have documents that go to, um, the process by
21    which the securitization was created by the sponsor.
22              THE COURT:  Wells Fargo argues that, as trustee,
23    that it may have a mitigating role, depending upon your
24    contractual duties as trustee.  So it may go to damages.
25              MR. FRY:  Your Honor, I would contend that it
```

1   doesn't, but I don't need to go into that.

2           Let's just assume that's the case, um, that is, to

3   begin with, the most attenuated theory of relevance so far

4   asserted by S&P.  But these don't even go to that.  These

5   documents don't concern whether the losses on the securities

6   that the government might point to as being a measure of a

7   penalty in this case were caused by S&P or caused by

8   Wells Fargo or caused by somebody else.  'Cause these are

9   not securities that are in this case.

10          Their theory as to these is that something about

11  Wells Fargo's conduct as to this securitization might be

12  something they could use to show Wells Fargo's conduct as to

13  a different securitization to try and show that Wells Fargo

14  might have some responsibility for the losses that might be

15  the measure that the government uses for its penalty for

16  S&P, if S&P is found to have defrauded some financial

17  institutions into buying some other securities.

18          So this is like several steps removed at least

19  from what is really the core issue in the case.

20          THE COURT:  All right.  Now, I'd like to hear from

21  S&P for just a moment.

22          MR. FRY:  Your Honor, if I might, there's one

23  other issue besides the relevance issue that we think is

24  important.  And we submitted a letter to the Court last

25  summer on this issue, and we ended up resolving it with S&P

1    then, but that is the nature of the information that in

2    these productions.

3          These productions typically include very large

4    quantities of borrower confidential information, information

5    about people's finances, their Social Security numbers their

6    bank accounts, their incomes.  These are just chock-full of

7    that.  This is information that Congress and many state

8    legislatures have given special attention to and said this

9    is the kind of information that should not be disclosed,

10   absent very particular circumstances, and which poses real

11   risks to people who are not present here today, who are not

12   part of this litigation, if it escapes.

13         And, therefore, we think that there should be sort

14   of special consideration to how critical the information is

15   to the litigation before it gets produced.  And in a case

16   like the case that, uh, Counsel was just referring to, where

17   the whole issue is whether the loans in that securitization

18   complied with the representations and warranties, it makes

19   sense that that kind of information is gonna have to be

20   produced in order to evaluate whether the loans do comply or

21   not.

22         But in a case like this, where that is really not

23   core to what is at issue in the litigation, it's much harder

24   to justify producing that kind of borrower confidential

25   information as to loans that backed securities that aren't

```
1    at issue here, and take a risk with the confidential
2    information of those consumers because there might be some
3    very attenuated theory under which that information would be
4    relevant to the case.
5              THE COURT:  Okay.
6              MR. FRY:  Thank you, Your Honor.
7              THE COURT:  S&P?
8              MR. KAO:  Thank you, Your Honor.
9              I'll address Counsel's first point as to the role
10   of Wells Fargo.  I think it's incorrect in thinking of
11   Wells Fargo as only relevant to damages.  Our theory is that
12   Wells Fargo's relevant also to liability because Wells Fargo
13   acted as a gatekeeper in terms of the loan files that make
14   it into RMBS.
15             They review them --
16             THE COURT:  Are you seeking them as the originator
17   or a gatekeeper?  Or are you seeking them as trustee?
18             MR. KAO:  As trustee.  But the key --
19             THE COURT:  And what do I do with a divided house?
20   In other words, Wells Fargo's going to argue that, even if
21   they're the same corporate entity, that it's a divided
22   house, that they're acting in their capacity as a trustee,
23   much differently than they are as an originator.
24             MR. KAO:  Well, as to reviewing files for material
25   defects or breaches of reps and warranties.
```

Case 2:13-cv-00779-DOC-JCG  Document 370  Filed 01/29/15  Page 31 of 57  Page ID #:10340
2:13-CV-0779-DOC - 1/27/2015 - 9:04 A.M.

31

 1          THE COURT:  Breach of?

 2          MR. KAO:  Breaches of reps and warranties.

 3          THE COURT:  Okay.

 4          MR. KAO:  Wells Fargo has access to those

 5    documents as trustee.

 6          THE COURT:  What my court reporter got was the

 7    following:

 8        (Reads realtime.)

 9          THE COURT:  Good?

10          MR. KAO:  Yes.

11          THE COURT:  Excellent.

12          MR. KAO:  For that job, Wells Fargo has the

13    documents as the trustee.  This is not about a "divided

14    house" question.  Wells Fargo, as trustee, has those files.

15    It reviews those files to determine what should go into the

16    RMBS.  If it finds that there's a breach, it's supposed to

17    report it to S&P.

18          S&P relies on third-parties like originators and

19    sponsors for the loan data.  If it's getting data that's

20    inaccurate because there's fraud in the underlying

21    mortgages, that impacts how we rate the securities.  That

22    goes to liability; it goes to intent.

23          THE COURT:  You're back to a time period far

24    before your trustee argument.

25          MR. KAO:  It's the same time period of 2004.

Case 2:13-cv-00779-DOC-JCG   Document 370   Filed 01/29/15   Page 32 of 57   Page ID #:10341
2:13-CV-0779-DOC   1/27/2015 - 9:04 A.M.

32

```
 1            THE COURT:  No, no.  In the process, you're
 2   back -- and when you talk to the Court about a trustee,
 3   you're talking about the last -- well, in a string or series
 4   of events, you're talking about the last event, quite
 5   frankly, when Wells Fargo or another bank acts as trustee.
 6            You flipped your argument now to one of being
 7   almost an originator.
 8            MR. KAO:  No, Your Honor.  Wells Fargo is the last
 9   in the line between all the other parties and the investor,
10   but it is involved throughout the process.  And this is in
11   our moving papers and our reply that they were involved in
12   terms of the formation of the RMBC, CDO, and the management
13   the of the CDO.
14            THE COURT:  Let me say that again.  Maybe I
15   misspoke.
16            If Wells Fargo is only acting as a trustee and is
17   not an originator, then there may be a strong argument that
18   S&P has already made their rating and Wells Fargo wasn't
19   involved.  If you are arguing to the Court, though, that
20   Wells Fargo was an originator, and later could have been, in
21   fact, a trustee and have a divided house, then I understand,
22   you know, the totality of those events.
23            But what can't happen is the indefiniteness of how
24   Wells Fargo is acting and a blanket request.  So I'm going
25   to ask one more time; and that is, I asked if you were
```

```
 1   acting and arguing on behalf of Wells Fargo being a trustee,

 2   and your answer was yes.  And then the argument has now

 3   segued back to Wells Fargo acting as an originator whereupon

 4   S&P would then follow with a rating whereupon, in some later

 5   event, Wells Fargo might be acting as a trustee again.

 6           Wells Fargo's strongest argument may be an

 7   argument against the trustee relationship unless it's

 8   remediation.

 9           MR. KAO:  Your Honor, if I could respond to that

10   by -- with one of documents that we've provided to the

11   Court.

12           THE COURT:  One document doesn't cut it, Counsel.

13   In other words, you don't get a sweeping motion without

14   defining with specificity because the Court's not in the

15   habit of just handing over blanket requests.  That's why

16   we're going through these one by one.

17           And I'm going to ask again.  With BSMF and EMC,

18   are you asking as their trustee status or a combination of

19   their originator and trustee status?

20           MR. KAO:  They were not the originator.

21           THE COURT:  Okay.  So we're not an originator.

22           So you're asking for that as a trustee?

23           MR. KAO:  Yes.

24           THE COURT:  And now what's your theory as to that

25   specific entity?
```

DEBBIE GALE, U.S. COURT REPORTER

Case 2:13-cv-00779-DOC-JCG   Document 370   Filed 01/29/15   Page 34 of 57   Page ID #:10343
2:13-CV-0779-DOC-1/27/2015 - 9:04 A.M.

34

```
 1              MR. KAO:  As to BSMF v. EMC, Wells Fargo made a
 2   verified pleading that EMC had persuasively bad underwriting
 3   standards and that there was rampant fraud in those
 4   mortgages.  It brought that action to force a repurchase by
 5   the sponsor, because that's the trustee's duty:  To enforce
 6   that.
 7              Our case involves not the same exact tranche and
 8   security.  It involves BSMF 2006, which has the same
 9   originator and same sponsor and the same trustee:
10   Wells Fargo.  So our theory for this case is, if Wells Fargo
11   knew about pervasive problems with BSMF and EMC, then that
12   is relevant to what it knew about BSMF 2006, our case.
13              If there is a document there that shows
14   Wells Fargo ignored systemic errors, it would be relevant to
15   how it conducted itself and whether --
16              THE COURT:  And the eventual tranche that's before
17   the Court.
18              MR. KAO:  Right.
19              THE COURT:  Okay.  What's your next entity?
20              MR. KAO:  The next case, Your Honor, is the
21   Blackrock case.  The Blackrock case is brought by a group of
22   investors against Wells Fargo, as trustee, for breach of
23   their fiduciary duties.  And the theories are very similar
24   to what we've got here, which are that the trustee failed to
25   notify investors and rating agents about the problems at the
```

Case 2:13-cv-00779-DOC-JCG  Document 370  Filed 01/29/15  Page 35 of 57  Page ID #:10344
2:13-CV-0779-DOC  1/27/2015 - 9:04 A.M.

35

1  outset; and, further along the line, the trustee failed to

2  enforce repurchase actions when it could have, and failed to

3  carry out its fiduciary duties.

4          That case involves securities, including Option

5  One Mortgage Loan Trusts 2007-2.  That's the RMBS, and that

6  is exactly the same as the one here, as well as securitized

7  asset-backed receivables, SABR, and that's 2006.  And that's

8  a slightly different tranche or different issuance than the

9  security we have here.  But it's the same brand name, same

10 vintage.

11         So we think that, if Blackrock is suing

12 Wells Fargo for essentially falling asleep at the switch,

13 and a document comes out of that litigation and shows that

14 Wells Fargo engaged in any libel conduct, or didn't give S&P

15 the right information at the outset, that impacts liability;

16 it impacts damages.

17         THE COURT:  Let me repeat to you so I absolutely

18 understand.

19         We're not dealing with specific tranches to this

20 lawsuit.

21         MR. KAO:  No.  We're dealing with similar

22 securities.

23         THE COURT:  I understand.  Okay.

24         MR. KAO:  The third example is --

25         THE COURT:  No, no.  I'm going to have Counsel

Case 2:13-cv-00779-DOC-JCG  Document 370  Filed 01/29/15  Page 36 of 57  Page ID #:10345
2:13-CV-0779-DOC - 1/27/2015 - 9:04 A.M.

36

```
 1    respond now as to Blackrock-Wells Fargo.

 2              Thank you.

 3              MR. FRY:  Your Honor, all I was going to say is it

 4    sounded to me like Counsel represented that there was a

 5    securitization in Blackrock that is also in this case.  And

 6    if that is true, then Blackrock is subject to the agreement

 7    that the Court put on the record when we started out 'cause

 8    we have that agreement as to --

 9              THE COURT:  Just a moment.

10              Is that true or not?  I didn't hear Counsel say

11    that.  In fact, I heard him say that there was a "similar"

12    in the same time frame.

13              MR. KAO:  For Option --

14              THE COURT:  And I didn't hear there was a nexus to

15    a prior tranche that was dissimilar but was similar to a

16    subsequent tranche.

17              MR. KAO:  There's a nexus with Option One Mortgage

18    Loan --

19              THE COURT:  No, no.

20              Blackrock v. Wells Fargo.

21              MR. KAO:  Yes.

22              THE COURT:  Okay.

23              MR. KAO:  For that case, there's a nexus with

24    Option One Mortgage Loan Trust 2007-2.

25              THE COURT:  2007-2.
```

DEBBIE GALE, U.S. COURT REPORTER

Case 2:13-cv-00779-DOC-JCG   Document 370   Filed 01/29/15   Page 37 of 57   Page ID #:10346
2:13-CV-0779-DOC - 1/27/2015 - 9:04 A.M.

37

1          What about 2006?

2          MR. KAO:  2006.  No.

3          We're saying that for other securities, like SABR,

4    there is a similarity with other SABR --

5          THE COURT:  I understand that.  So it's a

6    similarity issue as to 2006.

7          MR. KAO:  Right, yes.

8          THE COURT:  Okay.  Now, how do I quickly find that

9    out without taking a recess and going back and looking?

10         You two should know the case better than I do.

11         So 2007-2?

12         MR. KAO:  It's in our exhibits, Your Honor.

13         THE COURT:  Well, show it to Counsel.  Maybe we

14   can get a quick agreement and cut down the paperwork.  Okay?

15         MR. KAO:  I'm showing Counsel 2007-2 for Option

16   One.

17         MR. FRY:  Your Honor, it appears to me that, if

18   that -- Counsel represented this securitization, the

19   00MLT2007-2 securitization, which is at issue --

20         THE COURT:  Let's just assume we have this dispute

21   going on later on out of my presence.  And I'm using this as

22   a test case.  I have two able lawyers back in an office

23   arguing about that.

24         MR. FRY:  Yes, Your Honor.

25         THE COURT:  You're calling Judge Smith; is that

Case 2:13-cv-00779-DOC-JCG  Document 370  Filed 01/29/15  Page 38 of 57  Page ID #:10347
2:13-CV-0779-DOC - 1/27/2015 - 9:04 A.M.

38

1    correct?

2           MR. FRY:  That -- well, Your Honor, I'm hoping

3    there will be no dispute.

4           THE COURT:  Well, tell me if there's a dispute

5    here or not.  Now we're in your offices.  I'm not there.

6    I'm kind of peering from wherever, and I want to hear how

7    we're gonna work this out.

8           MR. FRY:  Your Honor, I think, whether or not a

9    securitization is at issue in Blackrock is not difficult to

10   ascertain.

11          THE COURT:  Good.  Work it out in my presence.

12          MR. FRY:  I --

13          THE COURT:  Work it out in my presence.  You two

14   get together and tell me now.  I'm waiting.

15          MR. FRY:  Your Honor, this case is subject to our

16   agreement that was put on the record earlier.

17          THE COURT:  And what does that mean?

18          MR. FRY:  That means that we will produce

19   documents produced in this litigation, the *Blackrock*

20   litigation.

21          THE COURT:  Will you produce 2002 *(sic)*?

22          2007-2, will you produce that.  Is this similar?

23          In other words, this is my test run.  I don't mean

24   to be difficult.  But now I send you out of my court, and I

25   have two lawyers out of my presence, without my special

```
 1   masters here, and we're in this bickering either by phone,
 2   which could hold up my litigation, and I'm not hearing a
 3   resolution of a simple claim and dispute over 2007-2 -- one
 4   party claiming that this should be disclosed; the other
 5   party claiming it shouldn't be disclosed.
 6            MR. KAO:  Your Honor, if I may?
 7            THE COURT:  No.
 8            Now, how is this going to resolved?  I'd like to
 9   hear the two of you work together and tell me if you still
10   have a conflict, or tell me if this specific item should be
11   disclosed or not?  I'm waiting.
12            MR. KAO:  I think we can agree that this item
13   should be disclosed.
14            THE COURT:  No.  Just talk quietly.
15        (Counsel confer.)
16            THE COURT:  All right.  Counsel, disagreement or
17   agreement as to 2007-2?
18            MR. KAO:  Agreement, Your Honor.
19            THE COURT:  Counsel.
20            MR. FRY:  We have agreement, Your Honor.
21            THE COURT:  All right.
22            Still disagreement as to 2006; is that correct?
23            MR. KAO:  Yes, Your Honor.
24            THE COURT:  All right.  And still disagreement, of
25   course, as to VSMF v. EMF at Exhibit 22, correct?
```

1              MR. KAO:  Just to clarify BSMF 2007 versus 2006.

2              THE COURT:  Thank you.

3              MR. KAO:  Yes, there is a disagreement.

4              THE COURT:  Disagreement okay.

5              All right.  The next entity?

6              MR. KAO:  The next example case, Your Honor, is

7    the *NCUA* case.

8              THE COURT:  I'm sorry?

9              MR. KAO:  The next example case, Your Honor, is

10   the *NCUA* case against Wells Fargo.  It's a similar type of

11   case as the one brought by *Blackrock*.  And it involves

12   allegations that Wells Fargo again failed to notify

13   investors or rating agencies of problems and failed in its

14   fiduciary duties.  And here also there's an overlap in the

15   securities.  Option One Mortgage Loan Trust 2007-2, we

16   agreed --

17             THE COURT:  Now, just a moment.

18             MR. KAO:  Okay.

19             THE COURT:  Okay.  Counsel.

20             MR. KAO:  We agreed that those will be produced by

21   Wells Fargo.

22             The disagreement is over other vintage labels of

23   similar securities.  So, again, we have the SABR security,

24   SABR 2006FR3; whereas, here we have SABR.

25             THE COURT:  I didn't understand the word.

Case 2:13-cv-00779-DOC-JCG  Document 370  Filed 01/29/15  Page 41 of 57  Page ID #:10350
2:13-CV-0779-DOC-1/27/2015 - 9:04 A.M.

41

1    "Favor"?

2              MR. KAO:  Say-ber, S-A-B-R.

3              THE COURT:  Okay.  Thank you.

4              MR. KAO:  That's short for securitized

5    asset-backed receivable.

6              THE COURT:  Okay.  Thank you.

7              MR. KAO:  So the disagreement is over how similar

8    securities have to be in other matters for them to produce

9    documents.

10             And they've agreed already to provide policies and

11   procedures for other CDOs and RMBs.  We think relevance --

12   in their advisory notes that they cited, the committee said

13   relevance includes not just the particular incident but also

14   incidents of the same type.

15             So we think this is like saying different model

16   years of a car are so different that we can't have discovery

17   as to one to learn about problems in the other one.  So

18   these are related in terms of the same parties, the same

19   structure and, in the *EMC* case, the same type of practices:

20   pervasively bad underwriting.

21             THE COURT:  All right.

22             Counsel on behalf of Wells Fargo, please.

23             MR. FRY:  Your Honor, referring back to the

24   advisory committee notes that Counsel just referenced, it

25   does talk about, uh, incidents of the same type.  But it's

2:13-CV-0779-DOC - 1/27/2015 - 9:04 A.M.

42

1   talking about the "incident in suit."  And the incident in

2   suit in this case is S&P's rating of a variety of

3   securities.  The incident in suit is not Wells Fargo's role

4   as the trustee that has some theoretical potential

5   tangential relevance.

6        But now they're talking about not even that, but

7   Wells Fargo's similar conduct or potentially similar conduct

8   in other securitizations that aren't in issue in this case.

9        THE COURT:  In the same time frame?

10        MR. FRY:  Or in a different time frame.  Some of

11   'em are, you know, a year apart or more.

12        And what Wells Fargo knew or didn't know in 2007

13   is different than what it knew or -- knew a year earlier

14   than that.  So, um -- so, Your Honor, it seems to me like

15   this is all very, very tangential at best.

16        We've drawn the line at securities that are at

17   issue here versus securities that are not at issue here.

18   And we think that expanding that to these other

19   securitizations that aren't at issue here can't be -- can't

20   justify the risk that we're taking with the --

21        THE COURT:  Okay.  Now, besides the relevance that

22   you've pointed out, usually I hear from entities the

23   financial burden.  It's my impression that these documents

24   have already been produced in litigation.

25        MR. FRY:  That's the nature of the request --

DEBBIE GALE, U.S. COURT REPORTER

Case 2:13-cv-00779-DOC-JCG  Document 370  Filed 01/29/15  Page 43 of 57  Page ID #:10352
2:13-CV-0779-DOC - 1/27/2015 - 9:04 A.M.

43

1           THE COURT:  Okay.

2           MR. FRY:  -- and so it's true --

3           THE COURT:  Therefore, we wouldn't have the

4    normally egregious burden.  It's really a relevance

5    argument, isn't it?

6           MR. FRY:  That's correct, Your Honor.

7           THE COURT:  Okay.  Thank you very much.

8           Counsel, your next entity.

9           MR. KAO:  Your Honor, there's other entities.

10          THE COURT:  No, no.  Not "other."

11          Your next entity.

12          MR. KAO:  Yes, Your Honor.  I'm getting to the

13   other lawsuits that relate to the second prong.  We talked

14   about similar securities.  Let's talk about similar conduct.

15          There was similar conduct by the trustee in *BSMF*

16   and *NCUA*, but in terms of similar conduct as an originator.

17   Now we're talking about sort of the "divided house" issue

18   Your Honor raised.

19          THE COURT:  Now we're back to originator not

20   trustee?

21          MR. KAO:  Right.

22          THE COURT:  Okay.

23          MR. KAO:  Because Wells Fargo is unique in terms

24   of wearing different hats during this financial crisis.

25          They were one of the largest, if not the largest,

Case 2:13-cv-00779-DOC-JCG  Document 370  Filed 01/29/15  Page 44 of 57  Page ID
#:10353
2:13-CV-0779-DOC  17/27/2015 - 9:04 A.M.

44

```
 1   mortgage originators in the market.  We showed in our

 2   briefing they were also a servicer:  59 million in Charles

 3   Fort CDO alone.  And they were a trustee.

 4            As trustee, they had a duty to protect investors

 5   by looking at information available to them.  They may argue

 6   that it's a divided house; it's a different hat we're

 7   wearing.  But this is discovery, and we want to show that

 8   Wells Fargo, out of all these banks, knew the playbook, knew

 9   the tips and tricks of how to juice-up volume for defective

10   mortgages, and how to hide it from origin- -- arrangers and

11   rating agencies.

12            So these go to Wells Fargo's knowledge and state

13   of mind, as trustee.  It's conduct, as originator, bears on

14   its state of mind as trustee.

15            THE COURT:  But none of these tranches that you're

16   about to -- that you're going to start speaking about are

17   tranches involved in this suit; is that correct?

18            MR. KAO:  I don't know.

19            THE COURT:  Why?

20            MR. KAO:  Because I don't know the other disputes

21   that Wells Fargo is involved in, because some of them were

22   public; some of them were not.

23            So, I can tell you that we cite in our case the

24   U.S. v. Wells Fargo case and the FHLB Atlanta case.

25            Those cases deal with Wells Fargo's participation
```

Case 2:13-cv-00779-DOC-JCG   Document 370   Filed 01/29/15   Page 45 of 57   Page ID #:10354
2:13-CV-0779-DOC-1/27/2015 - 9:04 A.M.

45

1   in mortgage fraud.  So if it knew about mortgage fraud and

2   knew how it was done in the marketplace, that bears directly

3   on how it reviewed the collateral when it had its hat of

4   being trustee.  So if -- if they're gonna argue that

5   Wells Fargo didn't have an obligation to act because it

6   didn't suspect or didn't know --

7           THE COURT:  They were put on notice.

8           MR. KAO:  -- they were on notice.  And as that

9   case, *Policeman's Annuity*, says, Your Honor, they had to

10  have been living under a rock if they didn't know about

11  this.  And they had an obligation to pick up the scent as

12  trustee because they have a fiduciary obligation, again, to

13  the investors.

14          And I just want to address one other point Counsel

15  made about the privacy issue.  We've agreed already in meet

16  and confer to take off the table loan files, individual loan

17  files, because we struck a compromise.  There is gonna be

18  private information in a person's individual file.  But I

19  can see the considerations Wells Fargo had for declaring

20  something defective or in breach by looking at their

21  e-mails.  I don't necessarily need the loan files.  So we

22  put that to the side.

23          We also told them in meet and confer that we would

24  be willing to apply the protective order for any documents

25  that they produce to us.  And these are documents, as

Case 2:13-cv-00779-DOC-JCG  Document 370  Filed 01/29/15  Page 46 of 57  Page ID #:10355
2:13-CV-0779-DOC-17/27/2015 - 9:04 A.M.

46

1    Your Honor pointed out, that have already been produced.

2    They've already been reviewed, redacted, and given to

3    somebody else.  So I'm not sure what the overriding privacy

4    concern is here, given that they've given to someone

5    *(verbatim)* else and we're agreeing to the protective order

6    and additional measures.

7              I offered that we could do a form of a quick-peek

8    agreement, where we look at certain portions of their

9    productions that are specially confidential, and just take

10   samples after showing it to them.  And that's not been a

11   workable solution that we -- we've been able to agree to.

12   But there are things we can do to mitigate the privacy

13   concern.

14             THE COURT:  What concerns me is, if I ruled

15   unfavorably to Wells Fargo in this area, but I accepted the

16   need for confidentiality -- obviously including Social

17   Security numbers -- that would be a tremendous cost burden

18   on each of you.  And I have no guarantee that I'm going to

19   heap that on Wells Fargo.

20             Now, are you really prepared to accept that

21   argument, you know, in a practical way -- and if you need to

22   call your lead counsel, you might get on the phone -- if I

23   put this burden on S&P --

24             MR. KAO:  Your Honor, I have --

25             THE COURT:  -- for redactions?

Case 2:13-cv-00779-DOC-JCG  Document 370  Filed 01/29/15  Page 47 of 57  Page ID #:10356
2:13-CV-0779-DOC-1-27/2015 - 9:04 A.M.

47

```
 1          MR. KAO:  I haven't heard anything about
 2   additional burden.
 3          All I've heard is that -- what we've proposed is
 4   produce to us the documents you've already produced.
 5          THE COURT:  Just a moment.  For attorneys eyes
 6   only?
 7          MR. KAO:  Some of them may be confidential.  Some
 8   of them may be attorneys eyes only.
 9          The point is they would have already been stamped.
10   They would've already been redacted if they were
11   confidential.  So there's no marginal cost.
12          THE COURT:  How do I know?
13          Because they're involved in similar lawsuits --
14   you're assuming that because they were already produced once
15   that this has been resolved.
16          MR. KAO:  If they had a reason that things could
17   not be produced -- I don't believe that they would have sent
18   out DVD's to counter-parties.
19          THE COURT:  Thank you.
20          Let me hear from Wells Fargo for just a moment.
21          MR. FRY:  Your Honor, I think there are a couple
22   issues raised by Counsel's argument.
23          The first is we've now gone one further step
24   afield.  We're now not talking about litigation involving
25   Wells Fargo as the trustee, but rather, Wells Fargo as an
```

DEBBIE GALE, U.S. COURT REPORTER

Case 2:13-cv-00779-DOC-JCG  Document 370  Filed 01/29/15  Page 48 of 57  Page ID
#:10357
2:13-CV-0779-DOC - 1/27/2015 - 9:04 A.M.

48

 1    originator on deals that -- where it can't be the trustee

 2    'cause it's never the trustee where it's the originator of

 3    the loans.  And somehow the documents produced in that

 4    litigation are supposed to be relevant to the state of mind

 5    of entirely different people in an entirely different part

 6    of the company doing an entirely different job as to

 7    different deals.

 8            With respect to the burden issue and the privacy

 9    issue, these documents are generally produced without

10    redaction for the confidential -- borrower confidential

11    information because typically the borrower confidential

12    information is significant to the litigation.  It's issues

13    about people's, um, incomes, their FICO scores, their debts,

14    their bank accounts.  All of that stuff is relevant, and so

15    it -- it doesn't get redacted for that.

16            If you were to redact for that information, it

17    would be immensely burdensome.  But it would alleviate many

18    of my concerns about the privacy issue.

19            THE COURT:  Let me give you an idea.  I don't know

20    if I would ever reduce -- or redact a FICO score.  But I

21    would be concerned about a Social Security that linked that

22    person to a FICO score.  But there's a lot of ways around

23    that:  attorneys eyes only, random selection, limitations,

24    in camera -- I mean, it gets expensive.  And I don't think

25    either one of you may have taken that into account talking

Case 2:13-cv-00779-DOC-JCG  Document 370  Filed 01/29/15  Page 49 of 57  Page ID #:10358
2:13-CV-0779-DOC  1/27/2015 - 9:04 A.M.

49

1    to your lead counsel, and here's why:

2             Unrelated to this motion, on the last time we were

3    before the Court with a different motion that was

4    burdensome -- I think it was a hundred million pages from

5    Bank of America -- I think there was some very quick

6    back-peddling by counsel concerning costs.  And I don't know

7    if you two gentlemen are in the position to undertake that

8    responsibility today.  If you are, I want to continue.

9             You might wanna make some phone calls, but -- it's

10   just a suggestion because once I make the ruling, Counsel,

11   and impose the burden of who pays for it, you're not coming

12   back to the Court.

13            MR. KAO:  Your Honor --

14            THE COURT:  So I'm glad to see you're accepting

15   this responsibility apparently.  So why don't you continue

16   with your argument.

17            MR. KAO:  If I could just offer an alternative to

18   either producing wholesale confidential documents or

19   spending a lot of money redacting.  We offered alternatives.

20            And, to Your Honor's point in the last order,

21   Your Honor said that costs may be shifted if they're

22   significant in resulting from compliance.

23            If they're avoidable, if we proposed -- here's

24   what we did in other cases involving third-parties:  We went

25   to them and we said, "If you're especially concerned about

Case 2:13-cv-00779-DOC-JCG   Document 370   Filed 01/29/15   Page 50 of 57   Page ID #:10359
2:13-CV-0779-DOC- 1/27/2015 - 9:04 A.M.

50

```
1    this box, I'll review this box and I'll show you documents
2    that I think I want a sample.  And we can just go by that
3    sample.  We can redact those five sheets."
4            If there's a portion that contains -- we've
5    already taken away the loan files.  There's something that
6    contains confidential information -- personal information,
7    not just FICA scores -- we've offered alternatives to
8    mitigate the cost.
9            THE COURT:  Okay.
10           Counsel, any response?
11           And then I want to get into the specific loans.
12           MR. FRY:  Your Honor, it would certainly go far to
13   alleviate the confidentiality concerns if the review was
14   being done on a computer system where these documents are
15   already present, like our computer system, rather than
16   transferring them to a different computer system.  That
17   would go a significant way.  Although, I can't imagine that
18   they won't want us to then produce the documents and give
19   them copies that they would then put on a computer system.
20   And that's where I would start to have concerns.
21           But if -- it is the case that some of the steps
22   that Counsel has suggested would alleviate these concerns to
23   a meaningful degree.
24           THE COURT:  Okay.  Now, the specific tranches
25   concerning originations.
```

Case 2:13-cv-00779-DOC-JCG  Document 370  Filed 01/29/15  Page 51 of 57  Page ID #:10360
2:13-CV-0779-DOC - 1/27/2015 - 9:04 A.M.

51

```
 1          MR. KAO:  Could I just -- one point that Counsel
 2   just made, Your Honor?
 3          On the options, in the order that we both agreed
 4   to, one option Wells Fargo had is, if it wants to withhold
 5   certain files, it produces an objection or privilege log for
 6   particular files.  Because we're talking abstracts.  I don't
 7   know what the number of confidential files are.
 8          THE COURT:  You see, gentlemen.  You're both being
 9   tested by me right now.  In other words, I want to hear this
10   dispute now because it's giving me an overview about what I
11   might face as soon as you leave my courtroom.  And if that
12   causes hesitation, delay -- that's what I tried to warn lead
13   counsel about -- that's going to cause an issue.
14          And what I'm a little afraid of is, while you
15   reached the essence of some agreement, which I applaud you
16   for, that I'm about to get into some disagreements that are
17   going to be time-consuming that I can resolve today.
18          MR. KAO:  So, Your Honor, moving from the --
19          THE COURT:  Now, are you going to help me with the
20   specific tranches now?
21          MR. KAO:  Your Honor, apart from *BSMF* -- I'm
22   sorry -- the *Blackrock* case and *NCUA* case, those are the
23   cases we know about.
24          THE COURT:  Just a moment.
25          *Blackrock*?
```

Case 2:13-cv-00779-DOC-JCG  Document 370  Filed 01/29/15  Page 52 of 57  Page ID #:10361
2:13-CV-0779-DOC — 1/27/2015 - 9:04 A.M.

52

1           MR. KAO:  And *NCUA*.

2           THE COURT:  And -- Okay.

3           What other cases do you know about?

4           MR. KAO:  That's what we know about.

5           THE COURT:  What else are you seeking?

6           MR. KAO:  We're seeking the *EMC* case because it's

7    the same -- it's the sister RMBS of *BSMF*.

8           THE COURT:  What else are you seeking?

9           MR. KAO:  Documents from *FHLB Atlanta*.

10          And I want to clarify, when we talk about similar

11   conduct, we mean the same type of conduct in terms of breach

12   of fiduciary duty by the trustee or fraud in mortgage

13   origination.  So -- we don't know the scope of that world

14   because we need some transparency of what Wells Fargo has

15   faced.

16          So, if they will tell us what other disputes they

17   have that involved the same securities and similar

18   securities, I think we'd have a better understanding of

19   that.

20          THE COURT:  Those are big words unfortunately:

21   "Same" and "similar."

22          MR. KAO:  Right.

23          But I think, one -- one compromise we offered is,

24   if you'll provide us documents for the same brand -- if it's

25   not BSMF 2007, if it's BSMF 2006, the same brand name, that

Case 2:13-cv-00779-DOC-JCG   Document 370   Filed 01/29/15   Page 53 of 57   Page ID
#:10362
2:13-CV-0779-DOC   1/27/2015 - 9:04 A.M.

53

1    should be relevant; that should be a similar incident under

2    the committee notes.

3              THE COURT:  Okay.  Counsel, thank you.

4              On behalf of Wells Fargo.

5              MR. FRY:  Your Honor, we just disagree that that

6    information is relevant.  You know, the different

7    securitizations involve different, uh, loans.  They involve

8    different parties.  It's not clear right now to me what

9    litigation might be included in this, whether it extends to

10   cases wherein Wells Fargo is a party with respect to some

11   securitizations, but there's somebody else being sued for

12   securitizations that are the same, uh, "shelf" as something

13   that's at issue in this case.

14             It's not clear to me why, uh, Wells Fargo

15   origination practices -- which, as far as I know, are not at

16   issue in this case -- are the subject of -- of this

17   discovery.  And, uh, so we think this is too far afield,

18   and -- uh, obviously we could generate a list of litigation

19   that involves Wells Fargo and RMBS or CDOs.  But we think,

20   if it doesn't involve any of the securities or

21   securitizations that are in issue in this case, that it

22   doesn't make any sense and it, uh, is not really relevant to

23   this case.

24             THE COURT:  Okay.  All right.  Gentlemen, thank

25   you.

```
 1              Let me take a recess for a moment.  I want to talk

 2    to the magistrate judges for just a moment.

 3              If you would like to go get a cup of coffee down

 4    in the cafeteria or so, we can meet in about a half an hour.

 5    Okay?  If you would like to remain, so be it.

 6              MR. KAO:  Thank you, Your Honor.

 7              MR. FRY:  Thank you, Your Honor.

 8         (Pause in the proceedings at 1:56 p.m.)

 9         (Proceedings resumed at 4:04 p.m.)

10              THE COURT:  All right.  Then we're on the record,

11    and both counsel are present.

12              Judge Smith just approached me and stated the

13    following --

14              (To Judge Smith:) And would you read into the

15    record what the purported agreement is.

16              JUDGE SMITH:  Yes, Your Honor.

17                            AGREEMENT

18              JUDGE SMITH:  The parties have agreed that the

19    documents that have been characterized as the "other

20    litigation documents" will be produced under the existing

21    protective order and will be maintained by S&P's third-party

22    provider with an appropriate password protection.

23              THE COURT:  And Judge Smith said that you'd like

24    to include that in the stipulated order you reached earlier

25    this morning; is that correct?
```

```
 1              MR. FRY:  Your Honor, now that it's on the record,
 2   I think it's fine.  We don't need to include it in the
 3   stipulation.
 4              MR. KAO:  We agree, Your Honor.
 5              THE COURT:  All right.  So it doesn't need to be
 6   included in the order for tomorrow.
 7              JUDGE SMITH:  Well, I think there might be a
 8   disconnect here.
 9              I think counsel are suggesting that the
10   stipulation is not going to be required by the Court since
11   the court has entered the order on the record.
12              Is that correct, Gentleman?
13              MR. FRY:  No, no.  We anticipate putting in a
14   stipulation per our earlier written agreement.  I just meant
15   that this particular thing about how this production will be
16   done doesn't need to be included.
17              MR. KAO:  We have no problem with that,
18   Your Honor.
19              THE COURT:  All right.  So be it.  Then we'll just
20   work on the stipulation that we read into the record this
21   morning.
22              Then I'm going to vacate tomorrow's date, the
23   morning hearing.
24              Thank you, Counsel, very much for your courtesy.
25              MR. FRY:  Thank you, Your Honor.
```

Case 2:13-cv-00779-DOC-JCG  Document 370  Filed 01/29/15  Page 56 of 57  Page ID #:10365
2:13-CV-0779-DOC - 1/27/2015 - 9:04 A.M.

56

1           MR. KAO:  Thank you, Your Honor.

2           JUDGE SMITH:  Have a safe trip.

3           MR. FRY:  Thank you.

4           *(Proceedings adjourned at 4:05 p.m..)*

5                          -oOo-

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           -oOo-

2

3                        CERTIFICATE

4

5        I hereby certify that pursuant to Section 753,

6   Title 28, United States Code, the foregoing is a true and

7   correct transcript of the stenographically reported

8   proceedings held in the above-entitled matter and that the

9   transcript page format is in conformance with the

10  regulations of the Judicial Conference of the United States.

11

12  Date:  January 29, 2015

13

14

15                    /s/ Debbie Gale
    _____
16                    DEBBIE GALE, U.S. COURT REPORTER
                      CSR NO. 9472, RPR, CCRR
17

18

19

20

21

22

23

24

25